APPEAL, LC−1, RELEASED

# U.S. District Court
# U.S. District Court for the Northern District of Oklahoma (Tulsa)
# CRIMINAL DOCKET FOR CASE #: 4:09−cr−00043−SPF All Defendants

Case title: USA v. Springer et al                Date Filed: 03/10/2009
Other court case number:  09−5165 10th Circuit Court        Date Terminated: 04/30/2010

Assigned to: Judge Stephen P Friot

Appeals court case number:
'10−5055 (#340)' '10th Circuit'

**Defendant (1)**

**Lindsey Kent Springer**                represented by    **Lindsey Kent Springer**
*TERMINATED: 04/28/2010*                        #1189797
                                5147 S HARVARD AVE STE 116
                                TULSA, OK 74135
                                Email: lindsey@mindspring.com
                                PRO SE

                                **Jerold W Barringer**
                                P O BOX 213
                                NOKOMIS , IL 62075
                                217−563−2646
                                *LEAD ATTORNEY*
                                *ATTORNEY TO BE NOTICED*
                                *Designation: CJA or Other Appointment*

                                **Robert Scott Williams**
                                Taylor Ryan Schmidt &Van Dalsem, P.C.
                                1437 S BOULDER STE 850
                                TULSA , OK 74119
                                918−749−5566
                                Fax: 918−749−9531
                                Email: law@trsvlaw.com
                                *TERMINATED: 04/27/2010*
                                *LEAD ATTORNEY*
                                *Designation: Public Defender or Community Defender Appointment*

**Pending Counts**                        **Disposition**

18 USC 371: Conspiracy to Defraud            BOP 60 months; SR 3 years; Restitution $771,529;
the United States                    SMA $100
(1)

26 USC 7201: Tax Evasion                BOP 60 months consecutive to Ct 1; SR 3 years; SMA
(2)                                $100

| | |
|---|---|
| 26 USC 7201: Tax Evasion and 18 USC 2 (3) | BOP 60 months consecutive to Ct 12 SR 3 years; SMA $100 |
| 26 USC 7201: Tax Evasion and 18 USC 2 (4) | BOP 60 months concurrent to Ct 1,2,3; SR 3 years; SMA $100 |
| 26 USC 7203: Failure to File Tax Return (5–6) | BOP 12 months concurrent to Ct 1,2,3; SR 1 year; SMA $25 |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| **Complaints** | **Disposition** |
|---|---|
| None | |

---

Assigned to: Judge Stephen P Friot

Appeals court case number: '10–5057 (#348)' '10th Circuit'

**Defendant (2)**

| | | |
|---|---|---|
| **Oscar Amos Stilley** *TERMINATED: 04/28/2010* | represented by | **Oscar Amos Stilley** #10579–062 FCI Forrest City Low P O BOX 9000 FORREST CITY, AR 72336 PRO SE |
| | | **Charles Robert Burton , IV** Burton Law Firm PC 320 S BOSTON STE 2400 TULSA , OK 74103–4700 918–582–5100 Fax: 918–584–1425 Email: RobtBurton@aol.com *TERMINATED: 04/27/2010* *LEAD ATTORNEY* *Designation: Public Defender or Community Defender* |

*Appointment*

**Oscar Amos Stilley**
David L Moss Criminal Justice Center
300 N DENVER
TULSA , OK 74103
479–996–4109
Fax: 479–996–3409
Email: oscar@oscarstilley.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Waived or Self (Pro Se)*

**Terry Lee Weber**
Weber &Assoc PC
320 S BOSTON STE 825
TULSA , OK 74103
918–582–1910
Fax: 918–582–2015
Email: Terry.Weber@morelaw.com
*TERMINATED: 04/03/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: CJA or Other Appointment*

| Pending Counts | Disposition |
|---|---|
| 18 USC 371: Conspiracy to Defraud the United States (1) | BOP 60 months; SR 3 years; Restitution $776,280; SMA $100 |
| 26 USC 7201: Tax Evasion and 18 USC 2 (3–4) | BOP 60 months consecutive to Ct 1 and each other; SR 3 years; SMA $100 |

**Highest Offense Level (Opening)**

Felony

| Terminated Counts | Disposition |
|---|---|
| None | |

**Highest Offense Level (Terminated)**

None

| Complaints | Disposition |
|---|---|
| None | |

**Plaintiff**

**USA**

represented by **Charles Anthony O'Reilly**
US Department of Justice (Box 972)
P O Box 972
Washington , DC 20044
202–616–0115
Email: charles.a.o'reilly@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Kenneth P Snoke**
United States Attorney's Office (Tulsa)
110 W 7TH ST STE 300
TULSA , OK 74119–1013
918–382–2700
Fax: 918–560–7946
Email: ken.snoke@usdoj.gov
*TERMINATED: 06/08/2010*
*LEAD ATTORNEY*

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 03/10/2009 | 1 | | DEFENDANT INFORMATION SHEET(S) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/10/2009) Contains One or More Restricted PDFs |
| 03/10/2009 | 2 | 49 | INDICTMENT by USA as to Lindsey Kent Springer (1) count(s) 1, 2, 3–4, 5–6, Oscar Amos Stilley (2) count(s) 1, 3–4 (pll, Dpty Clk) (Entered: 03/10/2009) |
| 03/10/2009 | 3 | | SUMMONS Issued by Court Clerk as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 03/10/2009) Contains One or More Restricted PDFs |
| 03/10/2009 | 4 | | SUMMONS Issued by Court Clerk as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/10/2009) Contains One or More Restricted PDFs |
| 03/18/2009 | 5 | | MOTION for Electronic Access by Lindsey Kent Springer as to Lindsey Kent Springer (sjm, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 6 | 63 | MOTION for In Camera Review of Fifth Amendment Proffer by Lindsey Kent Springer (sjm, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 7 | 66 | BRIEF in Support of Motion (Re: 6 MOTION for In Camera Review of Fifth Amendment Proffer ) by Lindsey Kent Springer (sjm, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 8 | 81 | |

| | | | |
|---|---|---|---|
| | | | MOTION for Bill of Particulars by Lindsey Kent Springer (sjm, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 9 | | MINUTE ORDER *by Judge Payne, due to Court conflict*, recusing Judge James H Payne, *this case is hereby returned to the Court Clerk for further reassignment,* Court Clerk reassigned to case as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 10 | | MINUTES of Proceedings – held before Magistrate Judge Paul J Cleary: Initial Appearance held on 3/18/2009, Arraignment held on 3/18/2009, appointing CJA attorney Robert Scott Williams for Lindsey Kent Springer, setting/resetting bond as to Lindsey Kent Springer (Court Reporter: C1) (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 11 | 107 | ORDER by Magistrate Judge Paul J Cleary *(for purposes of initial appearance only)*, appointing CJA attorney as to Lindsey Kent Springer (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 12 | 108 | ORDER by Magistrate Judge Paul J Cleary, setting conditions of release as to Lindsey Kent Springer (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 13 | 113 | BOND approved by Magistrate Judge Paul J Cleary as to Lindsey Kent Springer (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 14 | | MINUTES of Proceedings – held before Magistrate Judge Paul J Cleary: Initial Appearance held on 3/18/2009, Arraignment held on 3/18/2009, appointing CJA attorney Terry Lee Weber for Oscar Amos Stilley, setting/resetting bond as to Oscar Amos Stilley (Court Reporter: C1) (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 15 | 114 | ORDER by Magistrate Judge Paul J Cleary *(for purposes of initial appearance only)*, appointing CJA attorney as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 16 | 115 | ORDER by Magistrate Judge Paul J Cleary, setting conditions of release as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/18/2009 | 17 | 120 | BOND approved by Magistrate Judge Paul J Cleary as to Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/18/2009) |
| 03/19/2009 | 18 | 121 | ORDER by Magistrate Judge Paul J Cleary *directing defendants regarding representation*, setting/resetting deadline(s)/hearing(s): *(copy of Order mailed to both* |

| | | | |
|---|---|---|---|
| | | | *defendants on 3/19/09)* ( Miscellaneous Deadline set for 3/30/2009) as to Lindsey Kent Springer, Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/19/2009) |
| 03/23/2009 | 19 | 122 | RESPONSE (Re: 8 MOTION for Bill of Particulars, 5 MOTION for Electronic Access, 7 Brief in Support of Motion, 6 MOTION for In Camera Review of Fifth Amendment Proffer ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 03/23/2009) |
| 03/24/2009 | 20 | 126 | MOTION to Withdraw Attorney(s) *R. Scott Williams* by Lindsey Kent Springer as to Lindsey Kent Springer (Williams, Robert) Modified on 3/25/2009 to reference to Oscar Stilley (tjc, Dpty Clk). (Entered: 03/24/2009) |
| 03/24/2009 | 21 | 128 | MOTION for Hearing (Re: 20 MOTION to Withdraw Attorney(s) ) by Lindsey Kent Springer as to Lindsey Kent Springer (Williams, Robert) Modified on 3/25/2009 to remove reference to Oscar Stilley (tjc, Dpty Clk). (Entered: 03/24/2009) |
| 03/25/2009 | | | NOTICE of Docket Entry Modification; Error: During e–filing the attorney was prompted to select a case, all defendants were selected; Correction: Edited docket text to remove Oscar Stilley as these pleadings did not name him (Re: 20 MOTION to Withdraw Attorney(s), 21 MOTION for Hearing ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 03/25/2009) |
| 03/25/2009 | 22 | | MINUTE ORDER by Magistrate Judge Paul J Cleary, setting/resetting deadline(s)/hearing(s): ( Miscellaneous Hearing set for 3/30/2009 at 02:30 PM before Magistrate Judge Paul J Cleary) as to Lindsey Kent Springer, Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 03/25/2009) |
| 03/30/2009 | 23 | | MINUTES of Proceedings – held before Magistrate Judge Paul J Cleary: Miscellaneous Hearing held on 3/30/2009 *re Representation; Defendants Waive Counsel*, ruling on motion(s)/document(s): #5 granted, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 5 MOTION for Electronic Access ) (Court Reporter: C1) (kjp, Dpty Clk) (Entered: 03/31/2009) |
| 03/31/2009 | 24 | | MINUTE ORDER *by Court Clerk at the direction of Chief Judge Claire V. Eagan*, reassigning case to Judge Stephen P Friot. Court Clerk no longer assigned to case, changing case number to 09–CR–43–SPF as to Lindsey Kent Springer, Oscar Amos Stilley (a–hc, Dpty Clk) (Entered: 03/31/2009) |

| 04/01/2009 | 25 | 130 | MOTION for Protective Order by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 04/01/2009) |
| 04/02/2009 | 26 | 144 | ORDER by Judge Stephen P Friot *(Protective Order)*, ruling on motion(s)/document(s): #25 Granted (Re: 25 MOTION for Protective Order ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/02/2009) |
| 04/03/2009 | 27 | 146 | ORDER by Magistrate Judge Paul J Cleary *Appointing Standby Counsel*, adding attorney Robert Scott Williams for Lindsey Kent Springer, Charles Robert Burton, IV for Oscar Amos Stilley, ruling on motion(s)/document(s): #20 and #21 moot (Re: 20 MOTION to Withdraw Attorney(s) *R. Scott Williams*, 21 MOTION for Hearing ) as to Lindsey Kent Springer, Oscar Amos Stilley (kjp, Dpty Clk) (Entered: 04/03/2009) |
| 04/06/2009 | 28 | 148 | MOTION to Permit Oscar Stilley to File by CM/ECF by Oscar Amos Stilley (s−srb, Dpty Clk) (Entered: 04/07/2009) |
| 04/07/2009 | 29 | 150 | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 4/22/2009 at 10:00 AM before Judge Stephen P Friot, Scheduling Conference set for 4/22/2009 at 10:00 AM before Judge Stephen P Friot) (Re: 8 MOTION for Bill of Particulars, 6 MOTION for In Camera Review of Fifth Amendment Proffer ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/07/2009) |
| 04/07/2009 | 30 | 151 | MOTION to Clarify *appointment of Honorable Judge Stephen P. Friot* by Lindsey Kent Springer (Springer, Lindsey) (Entered: 04/07/2009) |
| 04/08/2009 | 31 | 159 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #28 Granted (Re: 28 MOTION to Permit Oscar Stilley to File by CM/ECF ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/08/2009) |
| 04/08/2009 | 32 | 160 | ORDER by Judge Stephen P Friot *: setting Motion for hearing on 4/22/09* (Re: 30 MOTION to Clarify *appointment of Honorable Judge Stephen P. Friot* ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 04/08/2009) |
| 04/10/2009 | 33 | 161 | MOTION for Bill of Particulars by Oscar Amos Stilley as to Lindsey Kent Springer, Oscar Amos Stilley (Stilley, Oscar) (Entered: 04/10/2009) |
| 04/10/2009 | 34 | 164 | |

| | | | |
|---|---|---|---|
| | | | ORDER by Judge Stephen P Friot *: setting Motion for hearing on 4/22/09* (Re: 33 MOTION for Bill of Particulars, 29 Order,,,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/10/2009) |
| 04/13/2009 | 35 | 165 | MOTION for Protective Order *Pending Prospective Franks Hearing* by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 04/13/2009) |
| 04/13/2009 | 36 | 265 | MOTION to Unseal Document(s) *in 03−CR−55E* (Re: 35 MOTION for Protective Order *Pending Prospective Franks Hearing* ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 04/13/2009) |
| 04/13/2009 | 37 | 421 | MOTION Request for Release of Affidavit and Transcript surrounding issuance of Search Warrant dated 9.15.05 by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 04/13/2009) |
| 04/13/2009 | 38 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 4/22/2009 at 10:00 AM before Judge Stephen P Friot) (Re: 37 MOTION Request for Release of Affidavit and Transcript surrounding issuance of Search Warrant dated 9.15.05, 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 36 MOTION to Unseal Document(s) *in 03−CR−55E* ) as to Lindsey Kent Springer (hbo, Dpty Clk) (Entered: 04/13/2009) |
| 04/15/2009 | 39 | 470 | MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03−CR−055−CVE by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 04/15/2009) |
| 04/15/2009 | 40 | 473 | NOTICE NOTICE RE GOVERNMENT MOTION FOR LIMITED UNSEALING OF SEARCH WARRANT AFFIDAVIT AND MATERIALS FROM CASE 03−CR−043−CVE (Re: 39 MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03−CR−055−CVE ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 04/15/2009) |
| 04/16/2009 | 41 | 480 | ORDER by Judge Stephen P Friot *setting Motion for Hearing on 4/22/09* (Re: 39 MOTION Unopposed |

| | | | |
|---|---|---|---|
| | | | Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03−CR−055−CVE ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/16/2009) |
| 04/16/2009 | 42 | 481 | RESPONSE in Opposition to Motion *Consolidated* (Re: 37 MOTION Request for Release of Affidavit and Transcript surrounding issuance of Search Warrant dated 9.15.05, 33 MOTION for Bill of Particulars, 8 MOTION for Bill of Particulars, 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 30 MOTION to Clarify *appointment of Honorable Judge Stephen P. Friot*, 6 MOTION for In Camera Review of Fifth Amendment Proffer, 36 MOTION to Unseal Document(s) *in 03−CR−55E* ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 04/16/2009) |
| 04/22/2009 | 43 | 498 | MINUTES of Proceedings – held before Judge Stephen P Friot: Motion Hearing held on 4/22/2009, Scheduling Conference held on 4/22/2009, ruling on motion(s)/document(s): #30 Granted, #6, 8, 33 Denied, #36, 37, 39 Granted in Part, Denied in part, taking motion(s) under advisement, setting/resetting deadline(s)/hearing(s): ( Motions due by 6/1/2009, Responses due by 6/15/2009, Motion Hearing set for 7/9/2009 at 09:00 AM before Judge Stephen P Friot, Jury Instructions, Voir Dire &Trial Briefs due by 8/3/2009, Pretrial Conference set for 10/21/2009 at 10:00 AM before Judge Stephen P Friot, Jury Trial set for 10/26/2009 at 09:30 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 37 MOTION Request for Release of Affidavit and Transcript surrounding issuance of Search Warrant dated 9.15.05, 33 MOTION for Bill of Particulars, 8 MOTION for Bill of Particulars, 39 MOTION Unopposed Motion for Limited Unsealing of Search Warrant and Affidavit and Materials from Case 03−CR−055−CVE, 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 30 MOTION to Clarify *appointment of Honorable Judge Stephen P. Friot*, 6 MOTION for In Camera Review of Fifth Amendment Proffer, 36 MOTION to Unseal Document(s) *in 03−CR−55E* ) (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 04/22/2009) |
| 04/27/2009 | 44 | 500 | REPLY to Response to Motion (Re: 35 MOTION for Protective Order *Pending Prospective Franks Hearing* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 04/27/2009) |

| 04/29/2009 | 46 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Responses due by 5/11/2009) (Re: 44 Reply to Response to Motion ) as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) Modified on 5/1/2009 to seal PDF, as ENTERED IN ERROR; duplicate entry see Doc # 45 for correct entry (tjc, Dpty Clk). (Entered: 04/30/2009) Contains One or More Restricted PDFs |
| --- | --- | --- | --- |
| 04/30/2009 | 45 | 511 | ORDER by Judge Stephen P Friot *directing surreply* (Re: 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 44 Reply to Response to Motion ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 04/30/2009) |
| 05/01/2009 | | | NOTICE of Docket Entry Modification; Error: Duplicate entry, ENTERED IN ERROR; Correction: Sealed PDF as this was a duplicate entry; see Doc # 45 for correct entry (Re: 46 Order,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s),, ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 05/01/2009) |
| 05/01/2009 | 47 | 512 | NOTICE *of* Request pursuant to Fed.R.Cr.Pr.Rule 16(a)(1)(G) as to Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/01/2009) |
| 05/06/2009 | 48 | 514 | SURREPLY to Motion (Re: 35 MOTION for Protective Order *Pending Prospective Franks Hearing* ) by USA as to Lindsey Kent Springer (Snoke, Kenneth) (Entered: 05/06/2009) |
| 05/08/2009 | 49 | 522 | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *July 9, 2009, Hearing on Motion for Franks Issue and/or Suppress* (Re: 43 Minutes of Motion Hearing,,,,,, Minutes of Scheduling Conference,,,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting |

| | | | |
|---|---|---|---|
| | | | Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 05/08/2009) |
| 05/12/2009 | 50 | 530 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #49 Granted in Part, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 7/2/2009 at 09:00 AM before Judge Stephen P Friot) (Re: 49 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 05/12/2009) |
| 05/15/2009 | 51 | 531 | First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue* (Re: 2 Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | 52 | 534 | First BRIEF in Support of Motion (Re: 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue* ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | 53 | 555 | Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995* (Re: 2 Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | 54 | 558 | Second BRIEF in Support of Motion (Re: 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995* ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | 55 | 610 | Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein* (Re: 2 Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | 56 | 613 | Third BRIEF in Support of Motion (Re: 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |

| 05/15/2009 | <u>57</u> | 621 | Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element* (Re: <u>2</u> Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
|---|---|---|---|
| 05/15/2009 | <u>58</u> | 624 | Fourth BRIEF in Support of Motion (Re: <u>57</u> Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | <u>59</u> | 633 | Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds* (Re: <u>2</u> Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | <u>60</u> | 636 | Fifth BRIEF in Support of Motion (Re: <u>59</u> Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | <u>61</u> | 656 | Sixth MOTION to Dismiss Count(s) One, Two, Three and Four (Re: <u>2</u> Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | <u>62</u> | 659 | Sixth BRIEF in Support of Motion (Re: <u>61</u> Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | <u>63</u> | 664 | Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions* (Re: <u>2</u> Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | <u>64</u> | 667 | Seventh BRIEF in Support of Motion (Re: <u>63</u> Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | <u>65</u> | 673 | Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution* (Re: <u>2</u> Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | <u>66</u> | 676 | Eighth BRIEF in Support of Motion (Re: <u>65</u> Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution* ) |

| | | | |
|---|---|---|---|
| | | | by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 05/15/2009) |
| 05/15/2009 | 67 | 737 | MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment* (Re: 2 Indictment ) by Oscar Amos Stilley as to Oscar Amos Stilley (Stilley, Oscar) Modified on 5/18/2009 to remove defendant Lindsey Springer from text (lml, Dpty Clk). (Entered: 05/15/2009) |
| 05/15/2009 | 68 | 741 | BRIEF in Support of Motion *to dismiss for fraud and violation of the 5th Amendment* (Re: 67 MOTION to Dismiss Indictment/Information/Complaint ) by Oscar Amos Stilley as to Oscar Amos Stilley (Stilley, Oscar) Modified on 5/18/2009 to remove Lindsey Springer from text (lml, Dpty Clk). (Entered: 05/15/2009) |
| 05/15/2009 | 69 | 747 | JOINDER *of motions filed by Lindsey Springer* (in [51−66] Generally dispositive filed on May 15, 2009) by Oscar Amos Stilley as to Oscar Amos Stilley (Stilley, Oscar) Modified on 5/18/2009 to remove Lindsey Springer from text (lml, Dpty Clk). (Entered: 05/15/2009) |
| 05/18/2009 | | | NOTICE of Docket Entry Modification; Error: These documents were filed as to both defendants in error; Correction: Edited docket text and removed Lindsey Kent Springer from text (Re: 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 69 JOINDER (in [51−66] Generally dispositive filed on May 15, 2009), 68 Brief in Support of Motion ) as to Lindsey Kent Springer, Oscar Amos Stilley (lml, Dpty Clk) (Entered: 05/18/2009) |
| 05/26/2009 | 70 | 749 | ORDER by Judge Stephen P Friot *vacating the stay entered by the court on 4/22/2009 &directing government to turn over materials to defendant Stilley*, ruling on motion(s)/document(s): #35 denied (Re: 35 MOTION for Protective Order *Pending Prospective Franks Hearing*, 42 Response in Opposition to Motion,, 43 Minutes of Motion Hearing,,,,,, Minutes of Scheduling Conference,,,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking |

| | | | |
|---|---|---|---|
| | | | Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s), 44 Reply to Response to Motion, 48 Surreply to Motion ) as to Lindsey Kent Springer, Oscar Amos Stilley (djh, Dpty Clk) (Entered: 05/26/2009) |
| 05/29/2009 | 71 | 751 | RESPONSE in Opposition to Motion *Fifty−one through Sixty−seven* (Re: 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 69 JOINDER (in [51−66] Generally dispositive filed on May 15, 2009), 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 05/29/2009) |
| 06/01/2009 | 72 | 773 | MOTION to Suppress *Grand Jury testimony and evidence* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 06/01/2009) |
| 06/01/2009 | 73 | 776 | BRIEF in Support of Motion (Re: 72 MOTION to Suppress *Grand Jury testimony and evidence* ) by Oscar Amos Stilley (With attachments) (Stilley, Oscar) (Entered: 06/01/2009) |
| 06/01/2009 | 74 | 817 | MOTION to Suppress by Lindsey Kent Springer (Springer, Lindsey) Modified on 6/2/2009; This is a multi−part motion, see Doc # 77 for second event (tjc, Dpty Clk). (Entered: 06/01/2009) |

| 06/01/2009 | 75 | | BRIEF in Support of Motion (Re: 74 MOTION to Suppress *and For Franks Hearing* ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) Modified on 6/2/2009 to seal parts 22, 23 and 24 (s–srb, Dpty Clk). (Entered: 06/02/2009) Contains One or More Restricted PDFs |
| 06/01/2009 | 77 | | MOTION for Hearing *(submitted as part of Doc # 74* ) by Lindsey Kent Springer (tjc, Dpty Clk) (Entered: 06/02/2009) |
| 06/02/2009 | 76 | 820 | AFFIDAVIT in Support of Motion (Re: 74 MOTION to Suppress *and For Franks Hearing* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 06/02/2009) |
| 06/02/2009 | | | NOTICE of Docket Entry Modification; Error: Document # 74 is a two–part motion, but not all parts were filed; Correction: Filed the remaining motion part as Document # 77 (Re: 74 MOTION to Suppress ) as to Lindsey Kent Springer (tjc, Dpty Clk) (Entered: 06/02/2009) |
| 06/02/2009 | 78 | | SEALED MOTION (O'Reilly, Charles) (Entered: 06/02/2009) Contains One or More Restricted PDFs |
| 06/02/2009 | 79 | | SEALED ORDER (s–srb, Dpty Clk) Modified on 6/2/2009 to seal pdf and correct docket text(s–srb, Dpty Clk) (Entered: 06/02/2009) Contains One or More Restricted PDFs |
| 06/15/2009 | 80 | 824 | RESPONSE in Opposition to Motion *Consolidated* (Re: 77 MOTION for Hearing *(submitted as part of Doc # 74* ), 72 MOTION to Suppress *Grand Jury testimony and evidence*, 74 MOTION to Suppress ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 06/15/2009) |
| 06/15/2009 | 81 | 865 | REPLY to Response to Motion *to Dismiss* (Re: 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of* |

| | | | |
|---|---|---|---|
| | | | *Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 06/15/2009) |
| 06/15/2009 | 82 | 910 | MOTION for Bill of Particulars by Lindsey Kent Springer (Springer, Lindsey) (Entered: 06/15/2009) |
| 06/15/2009 | 83 | | MOTION to Accelerate/Extend/Reset Hearings/Deadlines for filing of motion for bill of particulars by Oscar Amos Stilley (Stilley, Oscar) Modified on 6/16/2009; this is a two–event document and combined documents are not allowed with CM/ECF; also changed text to reflect correct motion event (sac, Dpty Clk). (Entered: 06/15/2009) |
| 06/16/2009 | 84 | | MINUTE ORDER by Court Clerk, Having reviewed the docket entry and/or PDF for Dkt # *83*, the Court has determined that *this document contains two events and combined documents are not allowed with CM/ECF*. Attorney *Oscar Stilley* is hereby directed to re–file *his Adoption, using that event*. (Re: 83 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s)MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Oscar Amos Stilley (sac, Dpty Clk) (Entered: 06/16/2009) |
| 06/17/2009 | 85 | 913 | MINUTE ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 7/2/2009 at 09:00 AM before Judge Stephen P Friot), ruling on motion(s)/document(s): #83 Denied (Re: 82 MOTION for Bill of Particulars, 83 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s)MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/17/2009) |
| 06/17/2009 | 86 | 914 | MOTION to Strike Document(s) (Re: 81 Reply to Response to Motion,,, ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 06/17/2009) |
| 06/18/2009 | 87 | 916 | ORDER by Judge Stephen P Friot , *directing Sur–Reply*, ruling on motion(s)/document(s): #86 Denied (Re: 86 MOTION to Strike Document(s), 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to |

| | | | |
|---|---|---|---|
| | | | Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 69 JOINDER *of motions filed by Lindsey Springer* (in [51–66] Generally dispositive filed on May 15, 2009), 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/18/2009) |
| 06/18/2009 | 88 | | SEALED MOTION (s–srb, Dpty Clk) Modified on 6/19/2009 to correct event (s–srb, Dpty Clk). (Entered: 06/19/2009) Contains One or More Restricted PDFs |
| 06/19/2009 | 89 | | SEALED MINUTE ORDER (s–srb, Dpty Clk) (Entered: 06/19/2009) Contains One or More Restricted PDFs |
| 06/19/2009 | 90 | | MOTION for Leave to Exceed Page Limitation by USA as to Lindsey Kent Springer (Snoke, Kenneth) (Entered: 06/19/2009) |
| 06/23/2009 | 91 | 917 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #90 Granted (Re: 90 MOTION for Leave to Exceed Page Limitation, 67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, 59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, 63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, 51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, 53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, 65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of* |

| | | | |
|---|---|---|---|
| | | | *Fourth/Fifth Amendment and Selective Prosecution*, 57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, 61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/23/2009) |
| 06/23/2009 | 92 | 918 | JOINDER (in [81; 82] Springer's Reply Regarding Opposition to Springer's Motion to Dismiss; Motion for Bill of Particulars filed on 6/15/2009; 6/15/2009) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 06/23/2009) |
| 06/25/2009 | 93 | 920 | SURREPLY (Re: 51 First MOTION to Dismiss, 53 Second MOTION to Dismiss, 55 Third MOTION to Dismiss, 57 Fourth MOTION to Dismiss, 59 Fifth MOTION to Dismiss, 61 Sixth MOTION to Dismiss, 63 Seventh MOTION to Dismiss, 65 Eighth MOTION to Dismiss) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) Modified on 6/29/2009 to change text to reflect correct event and to change links to reflect base motions (sac, Dpty Clk). (Entered: 06/25/2009) |
| 06/29/2009 | | | NOTICE of Docket Entry Modification; Error: wrong event selected (Reply); wrong links made; Correction: changed text to reflect correct event (Surreply); created links to base motions (Re: 93 Reply, ) as to Lindsey Kent Springer, Oscar Amos Stilley (sac, Dpty Clk) (Entered: 06/29/2009) |
| 06/30/2009 | 94 | 936 | MOTION to Quash *Subpoenas* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 06/30/2009) |
| 06/30/2009 | 95 | | ***Remark: *9 subpoenas returned* as to Lindsey Kent Springer (s–srb, Dpty Clk) (Entered: 07/01/2009) |
| 07/01/2009 | 96 | 1023 | RESPONSE in Opposition to Motion (Re: 94 MOTION to Quash *Subpoenas* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 07/01/2009) |
| 07/01/2009 | 97 | 1041 | RESPONSE in Opposition to Motion (Re: 82 MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 07/01/2009) |
| 07/01/2009 | 98 | 1046 | Clarification of (Re: 94 MOTION to Quash ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) Modified on 7/2/2009 to correct title of event (pll, Dpty Clk). Modified on 7/2/2009 |

| | | | |
|---|---|---|---|
| | | | (pll, Dpty Clk). (Entered: 07/01/2009) |
| 07/01/2009 | <u>99</u> | 1048 | MOTION to Quash *subpoena* by Eddy Lynn Patterson as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) Modified on 7/6/2009 to correct file date (lml, Dpty Clk). (Entered: 07/02/2009) |
| 07/02/2009 | <u>100</u> | 1054 | MINUTES of Proceedings – held before Judge Stephen P Friot: Motion Hearing held on 7/2/2009, ruling on motion(s)/document(s): #51,53,55,57,59,61,63,65,67,69,72,74,77,92 Denied, #82 Granted in Part, Denied in part, #94 Moot, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Re:_67 MOTION to Dismiss Indictment/Information/Complaint *for fraud and violation of the 5th Amendment*, _59 Fifth MOTION to Dismiss Indictment/Information/Complaint *on Fifth Amendment Grounds*, _63 Seventh MOTION to Dismiss Indictment/Information/Complaint *for failure to allege certain specific provisions*, 77 MOTION for Hearing *(submitted as part of Doc #_74 )*, _92 JOINDER (in [81; 82] Springer's Reply Regarding Opposition to Springer's Motion to Dismiss; Motion for Bill of Particulars filed on 6/15/2009; 6/15/2009), _69 JOINDER (in [51−66] Generally dispositive filed on May 15, 2009), _55 Third MOTION to Dismiss Indictment/Information/Complaint *pursuant to CIR v. Duberstein*, _94 MOTION to Quash, _51 First MOTION to Dismiss Indictment/Information/Complaint *for lack of venue*, _53 Second MOTION to Dismiss Indictment/Information/Complaint *for violations of Paperwork Reduction Act of 1995*, _65 Eighth MOTION to Dismiss Indictment/Information/Complaint *violation of Fourth/Fifth Amendment and Selective Prosecution*, _57 Fourth MOTION to Dismiss Indictment/Information/Complaint *for failure to allege tax deficiency element*, _72 MOTION to Suppress *Grand Jury testimony and evidence*, _82 MOTION for Bill of Particulars, _61 Sixth MOTION to Dismiss Count(s) One, Two, Three and Four, _74 MOTION to Suppress ) (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) Modified on 7/8/2009 to indicate attached PDF has incorrect hearing date. Date hearing held was 7/2/2009 (pll, Dpty Clk). (Entered: 07/02/2009) |
| 07/02/2009 | 101 | | MINUTE ORDER by Judge Stephen P Friot *: Following the hearing held this date, the Motion to* |

| | | | |
|---|---|---|---|
| | | | *Quash filed by Eddy Lynn Patterson is hereby moot*, ruling on motion(s)/document(s): #99 Moot (Re: 99 MOTION to Quash *subpoena* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 07/02/2009) |
| 07/02/2009 | 103 | | SEALED EXHIBIT(S) to Order/Minutes (Re: 100 Minutes of Motion Hearing,,,,,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s) ) (pll, Dpty Clk) (Entered: 07/14/2009) Contains One or More Restricted PDFs |
| 07/08/2009 | 102 | 1055 | ORDER by Judge Stephen P Friot *re: jury instructions* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 07/08/2009) |
| 07/14/2009 | 104 | 1057 | BILL OF PARTICULARS (Re: 82 MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 07/14/2009) |
| 07/30/2009 | 105 | 1060 | Second MOTION for Bill of Particulars by Lindsey Kent Springer (Springer, Lindsey) (Entered: 07/30/2009) |
| 08/03/2009 | 106 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) by Lindsey Kent Springer (Springer, Lindsey) Modified on 8/4/2009 to correct title of event (lml, Dpty Clk). (Entered: 08/03/2009) |
| 08/03/2009 | 107 | 1070 | PROPOSED JURY INSTRUCTIONS by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 08/03/2009) |
| 08/03/2009 | 108 | 1120 | First PROPOSED JURY INSTRUCTIONS as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/03/2009) |
| 08/03/2009 | 109 | 1135 | First MOTION to Dismiss Count(s) 1 *Conspiracy charge* (Re: 2 Indictment ) by Oscar Amos Stilley |

| | | | |
|---|---|---|---|
| | | | (Stilley, Oscar) (Entered: 08/03/2009) |
| 08/03/2009 | 110 | 1138 | BRIEF in Support of Motion (Re: 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/03/2009) |
| 08/04/2009 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Motion for Miscellaneous Relief); Correction: Edited docket text to reflect correcte event (Re: 106 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Lindsey Kent Springer (lml, Dpty Clk) (Entered: 08/04/2009) |
| 08/04/2009 | 111 | 1145 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #106 Denied (Re: 106 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (cds, Dpty Clk) (Entered: 08/04/2009) |
| 08/05/2009 | 112 | 1146 | RESPONSE in Opposition to Motion (Re: 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) Modified on 8/6/2009 to delete "as to" defendant Springer (sac, Dpty Clk). (Entered: 08/05/2009) |
| 08/05/2009 | 113 | | MOTION to File Out of Time *Proposed Jury Instructions* by Lindsey Kent Springer (With attachments) (Springer, Lindsey) Modified on 8/6/2009 to change text to reflect correct event (sac, Dpty Clk). Modified on 8/7/2009 to seal attachment PDF as it was stricken per 117 (sac, Dpty Clk). (Entered: 08/05/2009) Contains One or More Restricted PDFs |
| 08/06/2009 | | | NOTICE of Docket Entry Modification; Error: wrong event selected (Motion to Accelerate/Extend/Reset Hearings/Deadlines); Correction: changed text to reflect correct event (Motion to File Out of Time) (Re: 113 MOTION to File Out of Time ) as to Lindsey Kent Springer (sac, Dpty Clk) (Entered: 08/06/2009) |
| 08/06/2009 | 114 | | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 04/22/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 132). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party |

| | | | |
|---|---|---|---|
| | | | needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 43 Minutes of Motion Hearing, Minutes of Scheduling Conference, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) Modified on 11/5/2009 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 08/06/2009) |
| 08/06/2009 | 115 | | TRANSCRIPT of Proceedings (Unredacted) of Motions Hearing held on 7/2/09 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 159). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 100 Minutes of Motion Hearing, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s)) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) Modified on 11/5/2009 to remove transcript access restriction (a–hc, Dpty Clk). (Entered: 08/06/2009) |
| 08/06/2009 | 116 | 1149 | RESPONSE in Opposition to Motion (Re: 105 Second MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) Modified on 8/7/2009 to delete "as to Oscar Amos Stilley" as this document states it is as to defendant Springer only (sac, Dpty Clk). (Entered: 08/06/2009) |
| 08/06/2009 | 117 | 1153 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #113 Denied, striking/withdrawing document(s) (Re: 113 MOTION to File Out of Time ) (Documents Terminated: 113 MOTION to File Out of Time ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 08/06/2009) |
| 08/07/2009 | 118 | 1155 | MOTION to Reconsider (Re: 111 Order, Ruling on Motion(s)/Document(s), 117 Order,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s) ) by Lindsey Kent Springer (Springer, Lindsey) |

| | | | |
|---|---|---|---|
| | | | (Entered: 08/07/2009) |
| 08/12/2009 | 119 | 1170 | RESPONSE in Opposition to Motion (Re: 118 MOTION to Reconsider ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 08/12/2009) |
| 08/12/2009 | 120 | 1174 | OBJECTION to Proposed Jury Instructions (Re: 108 Proposed Jury Instructions ) by USA as to Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 08/12/2009) |
| 08/12/2009 | 121 | 1182 | REPLY to Response to Motion (Re: 105 Second MOTION for Bill of Particulars ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 08/12/2009) |
| 08/12/2009 | 122 | 1188 | REPLY to Response to Motion (Re: 118 MOTION to Reconsider ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 08/12/2009) |
| 08/12/2009 | 123 | 1201 | Eighth MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six (Re: 2 Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 08/12/2009) |
| 08/12/2009 | 124 | 1204 | Eighth BRIEF in Support of Motion (Re: 123 Eighth MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 08/12/2009) |
| 08/13/2009 | 125 | 1227 | RESPONSE in Opposition to Motion (Re: 123 Eighth MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 08/13/2009) |
| 08/13/2009 | 126 | 1230 | NOTICE of Intent to Use Expert Witness Testimony by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 08/13/2009) |
| 08/17/2009 | 127 | 1237 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #118 denied (Re: 111 Order, Ruling on Motion, 117 Order, Ruling on Motion); (Re: 118 MOTION to Reconsider ) as to Lindsey Kent Springer (kjp, Dpty Clk) Modified on 8/18/2009 to add links to #111, 117 (kjp, Dpty Clk). (Entered: 08/17/2009) |
| 08/17/2009 | 128 | 1239 | OBJECTION to Proposed Jury Instructions (Re: 107 Proposed Jury Instructions ) as to Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 08/17/2009) |
| 08/17/2009 | 129 | 1292 | OBJECTION to Proposed Jury Instructions *Of the government* (Re: 108 Proposed Jury Instructions ) as |

| | | | |
|---|---|---|---|
| | | | to Oscar Amos Stilley (Stilley, Oscar) (Entered: 08/17/2009) |
| 08/19/2009 | 130 | 1301 | REPLY to Response to Motion (Re: 123 Eighth MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 08/19/2009) |
| 08/19/2009 | 131 | 1339 | REPLY to Response to Motion (Re: 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge* ) by Oscar Amos Stilley (With attachments) (Stilley, Oscar) (Entered: 08/19/2009) |
| 08/19/2009 | 132 | | JOINDER (SUBMITTED AS DOC # 131 )(in 123 Eighth Motion to Dismiss Count(s) filed on 8/12/09) as to Oscar Amos Stilley (lml, Dpty Clk) (Entered: 08/20/2009) |
| 08/19/2009 | 133 | | ADOPTION *(SUBMITTED AS DOC # 131 )* (of [124, 130] Eighth Brief in Support of Motion, Reply to Response to Motion filed on 8/12/09, 8/19/09) as to Oscar Amos Stilley (lml, Dpty Clk) (Entered: 08/20/2009) |
| 08/20/2009 | | | NOTICE of Docket Entry Modification; Error: Document No. 131 is a multi–event document and only one event was e–filed; Correction: Filed the remaining events (Joinder in Motion) and (Adoption) as Document Nos. 132 &133 (Re: 131 Reply to Response to Motion ) as to Oscar Amos Stilley (lml, Dpty Clk) (Entered: 08/20/2009) |
| 09/10/2009 | 134 | 1352 | NOTICE Pursuant to Federal Rule of Evidence 404(b) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 09/10/2009) |
| 09/16/2009 | 135 | 1361 | ORDER by Judge Stephen P Friot *re: Pretrial Conference* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/16/2009) |
| 09/18/2009 | 136 | 1362 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #105 denied; 109 denied; #123 denied (Re: 105 Second MOTION for Bill of Particulars, 109 First MOTION to Dismiss Count(s) 1 *Conspiracy charge*, 123 Eighth MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six ) as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) (Entered: 09/18/2009) |
| 09/21/2009 | 137 | 1365 | MOTION in Limine by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 09/21/2009) |

| 09/21/2009 | 138 | 1381 | TRIAL BRIEF by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 09/21/2009) |
|---|---|---|---|
| 09/21/2009 | 139 | 1414 | NOTICE of Government's Proposed Summary of Indictment by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) Modified on 9/22/2009 to reflect correct event (tjc, Dpty Clk). (Entered: 09/21/2009) |
| 09/21/2009 | 140 | 1419 | NOTICE of Summary of Indictment by Oscar Amos Stilley (Stilley, Oscar) Modified on 9/22/2009 to reflect correct event (tjc, Dpty Clk). (Entered: 09/21/2009) |
| 09/21/2009 | 141 | 1424 | MOTION for Subpoena(s) *under Rule 17* by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/21/2009) |
| 09/21/2009 | 142 | 1436 | TRIAL BRIEF as to Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 09/21/2009) |
| 09/21/2009 | 143 | 1497 | NOTICE Summary of Indictment by Lindsey Kent Springer (Springer, Lindsey) Modified on 9/22/2009 to reflect correct event (tjc, Dpty Clk). (Entered: 09/21/2009) |
| 09/21/2009 | 144 | 1503 | First MOTION in Limine by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/21/2009) |
| 09/21/2009 | 145 | 1507 | Second MOTION in Limine by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/21/2009) |
| 09/21/2009 | 146 | 1515 | Third MOTION in Limine by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/21/2009) |
| 09/21/2009 | 147 | 1519 | Fourth MOTION in Limine by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/21/2009) |
| 09/21/2009 | 148 | 1521 | Fifth MOTION in Limine by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/21/2009) |
| 09/21/2009 | 149 | 1523 | MOTION in Limine *regarding hearsay and confrontation issues* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/21/2009) |
| 09/21/2009 | 150 | 1525 | Sixth MOTION in Limine by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/21/2009) |
| 09/21/2009 | 151 | 1528 | Seventh MOTION in Limine by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/21/2009) |
| 09/21/2009 | 152 | 1531 | MOTION for Subpoena(s) *pursuant to Rule 17(b)* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/21/2009) |

| 09/21/2009 | 153 | 1535 | BRIEF in Support of Motion (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/21/2009) |
|---|---|---|---|
| 09/21/2009 | 154 | 1544 | OBJECTION to Prosecution 404(b) (Re: 134 Notice (Other) ) by Lindsey Kent Springer (Springer, Lindsey) Modified on 9/22/2009 to reflect correct event (tjc, Dpty Clk). (Entered: 09/21/2009) |
| 09/21/2009 | 155 | 1547 | JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 09/22/2009) |
| 09/22/2009 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Motion for Miscellaneous Relief); Correction: Edited docket text to reflect correct event *(Notice)* (Re: 139 MOTION Government's Proposed Summary of Indictment ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 09/22/2009) |
| 09/22/2009 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Motion for Miscellaneous Relief); Correction: Edited docket text to reflect correct event (Notice) (Re: 140 MOTION Summary of Indictment ) as to Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 09/22/2009) |
| 09/22/2009 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Motion for Miscellaneous Relief); Correction: Edited docket text to reflect correct event (Notice) (Re: 143 MOTION Summary of Indictment ) as to Lindsey Kent Springer (tjc, Dpty Clk) (Entered: 09/22/2009) |
| 09/22/2009 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Motion for Miscellaneous Relief); Correction: Edited docket text to reflect correct event (Objection) (Re: 154 MOTION Opposition to Prosecution 404(b) ) as to Lindsey Kent Springer (tjc, Dpty Clk) (Entered: 09/22/2009) |
| 09/22/2009 | 156 | | ORDER by Judge Stephen P Friot *: setting ex parte hearing*, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 10/9/2009 at 01:30 PM before Judge Stephen P Friot) (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)*, 141 MOTION for Subpoena(s) *under Rule 17* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/22/2009) |

| | | | |
|---|---|---|---|
| 09/22/2009 | 157 | | ORDER by Judge Stephen P Friot *re: 10/9/09 ex parte hearing* (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)*, 156 Order,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s),, 141 MOTION for Subpoena(s) *under Rule 17* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/22/2009) |
| 09/23/2009 | 158 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Motion Hearing set for 10/21/2009 at 09:00 AM before Judge Stephen P Friot) (Re: 145 Second MOTION in Limine, 150 Sixth MOTION in Limine, 137 MOTION in Limine, 146 Third MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues*, 148 Fifth MOTION in Limine, 144 First MOTION in Limine, 151 Seventh MOTION in Limine, 147 Fourth MOTION in Limine ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/23/2009) |
| 09/24/2009 | 159 | | MOTION Emergency Motion Regarding Denny Patridge by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/24/2009) |
| 09/25/2009 | 160 | | SEALED MOTION (O'Reilly, Charles) Modified on 10/9/2009; this document is STRICKEN per 183 (sac, Dpty Clk). (Entered: 09/25/2009) Contains One or More Restricted PDFs |
| 09/25/2009 | 161 | | RESPONSE in Opposition to Motion (Re: 159 MOTION Emergency Motion Regarding Denny Patridge ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 09/25/2009) |
| 09/25/2009 | 162 | 1549 | MOTION TAKE RULE 15 DEPOSITION by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 09/25/2009) |
| 09/27/2009 | 163 | 1555 | RESPONSE in Opposition to Motion (Re: 162 MOTION TAKE RULE 15 DEPOSITION ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/27/2009) |
| 09/28/2009 | 164 | | REPLY to Response to Motion (Re: 159 MOTION Emergency Motion Regarding Denny Patridge ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/28/2009) |
| 09/30/2009 | 165 | | MINUTE ORDER by Judge Stephen P Friot *: Until further notice, all hearings in this case will be held at the Boulder Courthouse, 224 S Boulder, 3rd Floor* |

| | | | |
|---|---|---|---|
| | | | *Courtroom, Tulsa, OK* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 09/30/2009) |
| 09/30/2009 | 166 | 1562 | Fourth MOTION for Bill of Particulars by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/30/2009) |
| 09/30/2009 | 167 | 1573 | MOTION to Reconsider (Re: 136 Order,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s) ) by Lindsey Kent Springer (Springer, Lindsey) Modified on 10/1/2009; this is a two–part motion of which only one part was efiled – see 169 for Motion to Clarify (sac, Dpty Clk). (Entered: 09/30/2009) |
| 09/30/2009 | 168 | 1587 | MOTION Daubert Hearing by Lindsey Kent Springer (Springer, Lindsey) (Entered: 09/30/2009) |
| 09/30/2009 | 169 | | MOTION to Clarify *(submitted as part of 167 )* (Re: 136 Order,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s) ) by Lindsey Kent Springer (sac, Dpty Clk) (Entered: 10/01/2009) |
| 10/01/2009 | | | NOTICE of Docket Entry Modification; Error: this is a two–part motion of which only one part was efiled; Correction: efiled Motion to Clarify – see 169 (Re: 167 MOTION to Reconsider ) as to Lindsey Kent Springer (sac, Dpty Clk) (Entered: 10/01/2009) |
| 10/01/2009 | 170 | | SEALED DOCUMENT (O'Reilly, Charles) Modified on 10/2/2009 to correct title of event (lml, Dpty Clk). (Entered: 10/01/2009) Contains One or More Restricted PDFs |
| 10/01/2009 | 171 | 1590 | RESPONSE in Opposition to Motion (Re: 168 MOTION Daubert Hearing ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 10/01/2009) |
| 10/05/2009 | 172 | | RESPONSE in Opposition to Motion *Supplemental* (Re: 170 SEALED DOCUMENT ) by Lindsey Kent Springer (Springer, Lindsey) Modified on 10/7/2009 to seal pdf pursuant to Court Order # 180 (s–srb, Dpty Clk). (Entered: 10/05/2009) Contains One or More Restricted PDFs |
| 10/05/2009 | 173 | 1593 | RESPONSE in Opposition to Motion (Re: 145 Second MOTION in Limine, 150 Sixth MOTION in Limine, 146 Third MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues*, 155 JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09), 148 Fifth MOTION in |

| | | | |
|---|---|---|---|
| | | | Limine, 144 First MOTION in Limine, 151 Seventh MOTION in Limine, 147 Fourth MOTION in Limine ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/05/2009) |
| 10/05/2009 | 174 | | SEALED MOTION (O'Reilly, Charles) (Entered: 10/05/2009) Contains One or More Restricted PDFs |
| 10/05/2009 | 175 | 1608 | RESPONSE in Opposition to Motion (Re: 152 MOTION for Subpoena(s) *pursuant to Rule 17(b)*, 155 JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09), 141 MOTION for Subpoena(s) *under Rule 17* ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/05/2009) |
| 10/05/2009 | 176 | 1617 | RESPONSE in Opposition to Motion (Re: 162 MOTION TAKE RULE 15 DEPOSITION ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/05/2009) |
| 10/05/2009 | 177 | | RESPONSE in Opposition to Motion (Re: 137 MOTION in Limine ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 10/05/2009) |
| 10/06/2009 | 178 | 1626 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #162 Granted (Re: 162 MOTION TAKE RULE 15 DEPOSITION ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/06/2009) |
| 10/06/2009 | 179 | 1628 | MOTION Compel Clerk of Court to Comply with 28 U.S.C. Section 1867(f) and Test v. U.S. by Lindsey Kent Springer (Springer, Lindsey) (Entered: 10/06/2009) |
| 10/07/2009 | 180 | | SEALED ORDER (s–srb, Dpty Clk) (Entered: 10/07/2009) Contains One or More Restricted PDFs |
| 10/07/2009 | 181 | | SEALED MOTION (O'Reilly, Charles) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/07/2009) |
| 10/07/2009 | 182 | | SEALED DOCUMENT (O'Reilly, Charles) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/07/2009) |
| 10/08/2009 | 183 | | ORDER by Judge Stephen P Friot, striking/withdrawing document(s) (Re: 160 SEALED MOTION ) (Documents Terminated: 160 SEALED MOTION ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/08/2009) |

| 10/08/2009 | 184 | 1636 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #166 granted (Re: 166 Fourth MOTION for Bill of Particulars ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 10/08/2009) |
| --- | --- | --- | --- |
| 10/08/2009 | 185 | 1638 | RESPONSE in Opposition to Motion (Re: 166 Fourth MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) Modified on 10/9/2009; this document contains two events and that is not allowed with CM/ECF – see 187 for Motion to Accelerate/Extend/Reset Hearings/Deadlines (sac, Dpty Clk). (Entered: 10/08/2009) |
| 10/08/2009 | 186 | | SEALED ORDER (s–srb, Dpty Clk) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/08/2009) |
| 10/08/2009 | 187 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *(to respond)* (Re: 166 Fourth MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer (sac, Dpty Clk) (Entered: 10/09/2009) |
| 10/09/2009 | | | NOTICE of Docket Entry Modification; Error: this document contains two events and combined documents are not allowed in CM/ECF; Correction: efiled Motion to Accelerate/Extend/Reset Hearings/Deadlines – see 187 (Re: 185 Response in Opposition to Motion, ) as to Lindsey Kent Springer (sac, Dpty Clk) (Entered: 10/09/2009) |
| 10/09/2009 | 188 | 1642 | RESPONSE in Opposition to Motion (Re: 187 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *(to respond)* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 10/09/2009) |
| 10/09/2009 | 189 | 1652 | NOTICE with Respect to Court's Order (Dkt#178) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 10/09/2009) |
| 10/09/2009 | 190 | 1654 | ERRATA/CORRECTION (Re: 189 Notice (Other) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) Modified on 10/13/2009 to correct title of event (lml, Dpty Clk). (Entered: 10/09/2009) |
| 10/09/2009 | 191 | | SEALED MINUTES (pll, Dpty Clk) (Entered: 10/13/2009) Contains One or More Restricted PDFs |
| 10/13/2009 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Notice–Other); Correction: Edited docket text to reflect correct event |

| | | | |
|---|---|---|---|
| | | | (Errata/Correction to Document) (Re: 190 Notice (Other) ) as to Lindsey Kent Springer, Oscar Amos Stilley (lml, Dpty Clk) (Entered: 10/13/2009) |
| 10/13/2009 | 192 | 1656 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #187 Granted in Part, denied in part (Re: 187 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *(to respond)*, 185 Response in Opposition to Motion, 166 Fourth MOTION for Bill of Particulars ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 10/13/2009) |
| 10/13/2009 | 193 | 1658 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #168 Granted in part, Denied in part (Re: 168 MOTION Daubert Hearing ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 10/13/2009) |
| 10/13/2009 | 194 | 1661 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #167, 169 Denied (Re: 169 MOTION to Clarify *(submitted as part of 167 )*, 167 MOTION to Reconsider ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 10/13/2009) |
| 10/13/2009 | 195 | | ***Remark: *arrest warrant issued for material witness* as to Lindsey Kent Springer, Oscar Amos Stilley (sjm, Dpty Clk) Modified on 10/14/2009 to unseal docket entry (sjm, Dpty Clk). (Entered: 10/14/2009) Contains One or More Restricted PDFs |
| 10/14/2009 | 196 | | Opposed MOTION ToOrder O'Reilly to Comply with this Court's Order on Rule 15 Deposition and schedule return flight that is reasonable and on Saturday, October 17, 2009, at 3:35 P.M. by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 10/14/2009) |
| 10/14/2009 | 197 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #196 Denied (Re: 196 Opposed MOTION ToOrder O'Reilly to Comply with this Court's Order on Rule 15 Deposition and schedule return flight that is reasonable and on Saturday, October 17, 2009, at 3:35 P.M. ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 10/14/2009) |
| 10/14/2009 | 198 | 1662 | RESPONSE in Opposition to Motion (Re: 179 MOTION Compel Clerk of Court to Comply with 28 U.S.C. Section 1867(f) and Test v. U.S. ) by USA as to Lindsey Kent Springer (Snoke, Kenneth) Modified on 10/15/2009 to delete "as to" Oscar Stilley since this document is only as to Lindsey Kent Springer (sac, Dpty Clk). (Entered: 10/14/2009) |

| 10/14/2009 | 199 | 1667 | RESPONSE (Re: 134 NOTICE ) by Oscar Amos Stilley (With attachments) (Stilley, Oscar) Modified on 10/15/2009 to change text to reflect correct event and change link (sac, Dpty Clk). (Entered: 10/14/2009) |
|---|---|---|---|
| 10/15/2009 | | | NOTICE of Docket Entry Modification; Error: all defendants were selected as to, but document only pertains to Lindsey Springer; Correction: deleted as to defendant Oscar Stilley (Re: 198 Response in Opposition to Motion, ) as to Lindsey Kent Springer, Oscar Amos Stilley (sac, Dpty Clk) (Entered: 10/15/2009) |
| 10/15/2009 | | | NOTICE of Docket Entry Modification; Error: wrong event selected (Response in Opposition to Motion); wrong link made; Correction: changed text to reflect correct event (Response); changed link (Re: 199 Response in Opposition to Motion ) as to Oscar Amos Stilley (sac, Dpty Clk) (Entered: 10/15/2009) |
| 10/16/2009 | 200 | 1790 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #179 granted with specific limitations (Re: 179 MOTION Compel Clerk of Court to Comply with 28 U.S.C. Section 1867(f) and Test v. U.S. ) as to Lindsey Kent Springer(djh, Dpty Clk) (Entered: 10/16/2009) |
| 10/19/2009 | 201 | 1792 | Second BILL OF PARTICULARS (Re: 184 Order, Ruling on Motion(s)/Document(s), 194 Order, Ruling on Motion(s)/Document(s), 166 Fourth MOTION for Bill of Particulars ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 10/19/2009) |
| 10/20/2009 | 202 | | SEALED MOTION (Snoke, Kenneth) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/20/2009) |
| 10/20/2009 | 203 | | SEALED ORDER (pll, Dpty Clk) Modified on 6/4/2010 to unseal per Order # 370 (lml, Dpty Clk). (Entered: 10/20/2009) |
| 10/20/2009 | 204 | | SEALED MOTION (O'Reilly, Charles) (Entered: 10/20/2009) Contains One or More Restricted PDFs |
| 10/20/2009 | 205 | | SEALED MOTION (O'Reilly, Charles) (Entered: 10/20/2009) Contains One or More Restricted PDFs |
| 10/20/2009 | 206 | 1796 | MOTION to Exclude MENTION OF THE TESTIMONY OF VIKKI WIGGINS PRIOR TO A REASONABLE TIME AFTER PRODUCTION OF THE TRANSCRIPT OF HER TESTIMONY by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/20/2009) |

| | | | |
|---|---|---|---|
| 10/21/2009 | <u>207</u> | 1800 | MINUTES of Proceedings – held before Judge Stephen P Friot: Motion Hearing held on 10/21/2009, Pretrial Conference held on 10/21/2009, ruling on motion(s)/document(s): #137,155 grant in part, deny in part; 144,146,147,150,151,159 denied; 148, 204, 205, 206 granted, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: <u>204</u> SEALED MOTION, <u>145</u> Second MOTION in Limine, <u>150</u> Sixth MOTION in Limine, <u>137</u> MOTION in Limine, <u>146</u> Third MOTION in Limine, <u>149</u> MOTION in Limine *regarding hearsay and confrontation issues,* <u>155</u> JOINDER (in [141, 142, 144, 145, 146, 147, 148, 150, and 151] Motions in Limine, for subpoenas pursuant to Rule 17(b), and trial brief filed on 9–21–09), <u>148</u> Fifth MOTION in Limine, <u>159</u> MOTION Emergency Motion Regarding Denny Patridge, <u>144</u> First MOTION in Limine, <u>205</u> SEALED MOTION, <u>206</u> MOTION to Exclude MENTION OF THE TESTIMONY OF VIKKI WIGGINS PRIOR TO A REASONABLE TIME AFTER PRODUCTION OF THE TRANSCRIPT OF HER TESTIMONY, <u>151</u> Seventh MOTION in Limine, <u>147</u> Fourth MOTION in Limine ) (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 10/22/2009) |
| 10/21/2009 | 208 | | ***Remark: *Deposition Transcript of Vikki Lynn Wiggins received by court* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/22/2009) |
| 10/24/2009 | <u>209</u> | 1802 | PROPOSED VOIR DIRE by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 10/24/2009) |
| 10/24/2009 | <u>210</u> | 1805 | MOTION to Quash *Testimony of Vikki Wiggins* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/24/2009) |
| 10/24/2009 | <u>211</u> | 1807 | BRIEF in Support of Motion (Re: <u>210</u> MOTION to Quash *Testimony of Vikki Wiggins* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 10/24/2009) |
| 10/26/2009 | <u>212</u> | 1811 | RESPONSE in Opposition to Motion (Re: <u>210</u> MOTION to Quash *Testimony of Vikki Wiggins* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) Modified on 10/27/2009 to remove Lindsey Kent Springer name from text, as his name should not have been selected, as this pleading does not pertain to him (tjc, Dpty Clk). (Entered: 10/26/2009) |
| 10/26/2009 | <u>213</u> | 1817 | NOTICE Regarding Defendants' Discovery by USA as to Lindsey Kent Springer, Oscar Amos Stilley |

| | | | |
|---|---|---|---|
| | | | (O'Reilly, Charles) (Entered: 10/26/2009) |
| 10/26/2009 | 214 | | SEALED DOCUMENT (s–srb, Dpty Clk) (Entered: 10/26/2009) Contains One or More Restricted PDFs |
| 10/26/2009 | 215 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Voir Dire/Jury Selection began as to Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/26/2009 | 216 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Voir Dire/Jury Selection held on 10/26/2009 as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/26/2009 | 217 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial began as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/26/2009 | 218 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held , *continued to following day*, setting/resetting scheduling order date(s): ( Jury Trial set for 10/27/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 10/26/2009) |
| 10/26/2009 | 219 | | JOINDER (in 210 Motion to Quash filed on 10/24/09 as to Lindsey Kent Springer (Springer, Lindsey) (Entered: 10/26/2009) |
| 10/27/2009 | 220 | 1820 | ORDER by Judge Stephen P Friot *ruling on Government's Oral Motion re: witness Philip Roberts* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) Modified on 10/27/2009 to correct title(pll, Dpty Clk). (Entered: 10/27/2009) |
| 10/27/2009 | 221 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, ruling on motion(s)/document(s): #210 and 219 denied as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 210 MOTION to Quash *Testimony of Vikki Wiggins*, 219 JOINDER (in 210 Motion to Quash filed on 10/24/09) ) (cds, Dpty Clk) (Entered: 10/27/2009) |
| 10/28/2009 | 222 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting deadline(s)/hearing(s): ( Jury Trial set for 10/29/2009 at 09:00 AM before Judge Stephen P Friot, Motion Hearing set for 11/3/2009 at 05:30 PM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (cds, Dpty Clk) (Entered: 10/28/2009) |

| | | | |
|---|---|---|---|
| 10/29/2009 | 223 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, ruling on motion(s)/document(s): #145 and 149 Denied, setting/resetting scheduling order date(s): ( Jury Trial set for 10/30/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (Re: 145 Second MOTION in Limine, 149 MOTION in Limine *regarding hearsay and confrontation issues* ) (cds, Dpty Clk) (Entered: 10/30/2009) |
| 10/30/2009 | 229 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): ( Jury Trial set for 11/2/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (cds, Dpty Clk) (Entered: 11/03/2009) |
| 11/01/2009 | 224 | | MOTION to Reconsider (Re: 100 Minutes of Motion Hearing,,,,,,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s), Striking/Terminating Deadline(s)/Hearing(s) ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) Modified on 11/2/2009 to SEAL pdfs per chambers(sac, Dpty Clk). (Entered: 11/01/2009) Contains One or More Restricted PDFs |
| 11/02/2009 | 225 | 1821 | RESPONSE in Opposition to Motion *and Motion to Seal Attachments* (Re: 224 MOTION to Reconsider ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 11/02/2009) |
| 11/02/2009 | 226 | | SEALED ORDER (s–srb, Dpty Clk) (Entered: 11/02/2009) Contains One or More Restricted PDFs |
| 11/02/2009 | 230 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following day* ( Jury Trial set for 11/3/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, |

| | | | |
|---|---|---|---|
| | | | Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (pll, Dpty Clk) (Entered: 11/03/2009) |
| 11/03/2009 | 227 | 1824 | OBJECTION *regarding "gift"* as to Lindsey Kent Springer (Springer, Lindsey) Modified on 11/4/2009 to correct event (tjc, Dpty Clk). (Entered: 11/03/2009) |
| 11/03/2009 | 228 | 1833 | NOTICE re: Proposed Jury Instructions by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) Modified on 11/4/2009 to correct event (tjc, Dpty Clk). (Entered: 11/03/2009) |
| 11/03/2009 | 231 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following day* ( Jury Trial set for 11/4/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/03/2009) |
| 11/03/2009 | 232 | | JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial* (in 224 ) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/03/2009) |
| 11/04/2009 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Proposed Jury Instructions); Correction: Edited docket text to reflect the correct event (Objection) (Re: 227 Proposed Jury Instructions ) as to Lindsey Kent Springer (tjc, Dpty Clk) (Entered: 11/04/2009) |
| 11/04/2009 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Proposed Jury Instructions); Correction: Edited docket text to reflect the correct event (Notice) (Re: 228 Proposed Jury Instructions ) as to Lindsey Kent Springer, Oscar Amos Stilley (tjc, Dpty Clk) (Entered: 11/04/2009) |
| 11/04/2009 | 233 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *(continued to following day)* ( Jury Trial set for 11/5/2009 at 08:15 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/04/2009) |
| 11/05/2009 | 234 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held *continued to following Monday*, setting/resetting scheduling order date(s): ( Jury Trial set for 11/9/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/05/2009) |

| | | | |
|---|---|---|---|
| 11/05/2009 | <u>235</u> | 1836 | ORDER by Judge Stephen P Friot *re: USM and witnesses* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/06/2009) |
| 11/08/2009 | <u>236</u> | 1837 | PROPOSED JURY INSTRUCTIONS *as to Venue, District Director and Materiality* as to Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 11/08/2009) |
| 11/08/2009 | <u>237</u> | 1851 | PROPOSED JURY INSTRUCTIONS *as to Venue* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (Snoke, Kenneth) (Entered: 11/08/2009) |
| 11/08/2009 | <u>238</u> | 1854 | ADOPTION *of Springer's requested jury instructions* (of <u>236</u> ) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/08/2009) |
| 11/09/2009 | 239 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held *, continued to following day*, setting/resetting scheduling order date(s): ( Jury Trial set for 11/10/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/09/2009) |
| 11/10/2009 | 240 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to Thursday* ( Jury Trial set for 11/12/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/10/2009) |
| 11/12/2009 | 241 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following day* ( Jury Trial set for 11/13/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/12/2009) |
| 11/13/2009 | 242 | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial held, setting/resetting scheduling order date(s): *continued to following Monday* ( Jury Trial set for 11/16/2009 at 09:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/13/2009) |
| 11/16/2009 | <u>243</u> | | MINUTES of Proceedings – held before Judge Stephen P Friot: Jury Trial completed, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (With attachments) |

| | | | |
|---|---|---|---|
| | | | (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/16/2009 | 244 | 1856 | JURY INSTRUCTIONS by Judge Stephen P Friot as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/16/2009 | 245 | 1915 | JURY VERDICT as to Lindsey Kent Springer (1) Guilty on Count 1,2,3–4,5–6 and Oscar Amos Stilley (2) Guilty on Count 1,3–4 (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/16/2009 | 246 | | SEALED EXHIBIT(S) to Order/Minutes (Re: 243 Minutes of Jury Trial Completed, Striking/Terminating Deadline(s)/Hearing(s) ) (pll, Dpty Clk) (Entered: 11/17/2009) Contains One or More Restricted PDFs |
| 11/17/2009 | 247 | 1918 | ORDER by Judge Stephen P Friot *setting supplemental conditions following trial*, ruling re: modification of conditions of pretrial release as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/17/2009) |
| 11/19/2009 | 248 | 1923 | MOTION Extension to File Motion for New Trial by Lindsey Kent Springer (Springer, Lindsey) Modified on 11/20/2009; This is a two–part motion, see Doc # 249 for second event (tjc, Dpty Clk). (Entered: 11/19/2009) |
| 11/19/2009 | 249 | | MOTION for Judgment of Acquittal *(submitted as part of Doc # 248 )* by Lindsey Kent Springer (tjc, Dpty Clk) Modified on 11/20/2009; ENTERED IN ERROR (tjc, Dpty Clk). (Entered: 11/20/2009) |
| 11/20/2009 | | | NOTICE of Docket Entry Modification; Error: Document # 248 is a two–part motion, but not all parts were filed; Correction: Filed the remaining motion part as Document # 249 (Re: 248 MOTION Extension to File Motion for New Trial ) as to Lindsey Kent Springer (tjc, Dpty Clk) Modified on 11/20/2009; ENTERED IN ERROR (tjc, Dpty Clk). (Entered: 11/20/2009) |
| 11/20/2009 | 250 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #248 Granted (Re: 248 MOTION Extension to File Motion for New Trial ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 11/20/2009) |
| 11/20/2009 | 251 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extending time to file for judgment of acquittal or new trial,* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 11/20/2009) |
| 11/20/2009 | 252 | 1931 | |

| | | | |
|---|---|---|---|
| | | | RESPONSE in Opposition to Motion (Re: 232 JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial (in* 224 *),* 224 MOTION to Reconsider ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 11/20/2009) |
| 11/23/2009 | 253 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #251 Granted (Re: 251 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Extending time to file for judgment of acquittal or new trial,* ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 11/23/2009) |
| 11/30/2009 | | | ***Remark: *Petition for writ of mandamus filed at 10th Circuit Court. Case number 09−5165* as to Lindsey Kent Springer (sam, Dpty Clk) (Entered: 11/30/2009) |
| 12/01/2009 | 254 | 1945 | MOTION To provide transcript at public expense by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/01/2009) |
| 12/01/2009 | 255 | 1950 | BRIEF in Support of Motion (Re: 254 MOTION To provide transcript at public expense ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/01/2009) |
| 12/04/2009 | 256 | | ORDER from Circuit Court *denying petition for writ of mandamus* (Re: Remark ) as to Lindsey Kent Springer (sam, Dpty Clk) (Entered: 12/04/2009) |
| 12/07/2009 | 257 | | REPLY to Response to Motion *to Dismiss, Mistrial and Reconsider* (Re: 224 MOTION to Reconsider ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) Modified on 12/10/2009 to seal PDF; Document STRICKEN per Order # 264 (tjc, Dpty Clk). (Entered: 12/07/2009) Contains One or More Restricted PDFs |
| 12/07/2009 | 258 | | REPLY to Response to Motion (Re: 232 JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial (in* 224 *) )* by Oscar Amos Stilley (Stilley, Oscar) Modified on 12/10/2009 to seal PDF; Document STRICKEN per Order # 264 (tjc, Dpty Clk). (Entered: 12/08/2009) Contains One or More Restricted PDFs |
| 12/08/2009 | 259 | 1955 | MOTION to Strike Document(s) (Re: 257 Reply to Response to Motion, 258 Reply to Response to Motion ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 12/08/2009) |
| 12/08/2009 | 260 | | MOTION for Judgment of Acquittal by Lindsey Kent Springer (Springer, Lindsey) Modified on 12/10/2009 |

| | | | |
|---|---|---|---|
| | | | to seal PDF; Document STRICKEN per Order # 264 (tjc, Dpty Clk). (Entered: 12/08/2009) Contains One or More Restricted PDFs |
| 12/08/2009 | 261 | | MOTION for Judgment of Acquittal *and*, MOTION for New Trial by Oscar Amos Stilley (With attachments) (Stilley, Oscar) Modified on 12/10/2009 to seal PDF; Document STRICKEN per Order # 264 (tjc, Dpty Clk). (Entered: 12/08/2009) Contains One or More Restricted PDFs |
| 12/08/2009 | 262 | 1960 | MOTION for New Trial by Lindsey Kent Springer (Springer, Lindsey) (Entered: 12/08/2009) |
| 12/08/2009 | 263 | | BRIEF in Support of Motion (Re: 261 MOTION for Judgment of Acquittal *and* MOTION for New Trial ) by Oscar Amos Stilley (Stilley, Oscar) Modified on 12/10/2009 to seal PDF; Document STRICKEN per Order # 264 (tjc, Dpty Clk). (Entered: 12/08/2009) Contains One or More Restricted PDFs |
| 12/09/2009 | 264 | 1976 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #259 Granted, striking/withdrawing document(s) (Re: 259 MOTION to Strike Document(s), 261 MOTION for Judgment of Acquittal *and* MOTION for New Trial, 257 Reply to Response to Motion, 258 Reply to Response to Motion, 260 MOTION for Judgment of Acquittal, 262 MOTION for New Trial ) (Documents Terminated: 257 Reply to Response to Motion, 261 MOTION for Judgment of Acquittal *and* MOTION for New Trial, 258 Reply to Response to Motion, 260 MOTION for Judgment of Acquittal ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 12/09/2009) |
| 12/10/2009 | 265 | 1978 | MOTION to Vacate/Set Aside *Order dated December 9, 2009*, MOTION Reinstate Docket # 257 and # 260 as properly filed under Local Criminal Rules 12.1, MOTION 10 days from date of order to refile docket # 257 and # 260 in accordance with Local Civil Rule 7.2 including extended page number therein (Re: 264 Order,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s),,, 257 Reply to Response to Motion, 260 MOTION for Judgment of Acquittal ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 12/10/2009) |
| 12/11/2009 | 266 | 1994 | RESPONSE in Opposition to Motion (Re: 265 MOTION to Vacate/Set Aside *Order dated* |

| | | | |
|---|---|---|---|
| | | | *December 9, 2009* MOTION Reinstate Docket # 257 and # 260 as properly filed under Local Criminal Rules 12.1 MOTION 10 days from date of order to refile docket # 257 and # 260 in accordance with Local Civil Rule 7.2 including extended page number therein ) by USA as to Lindsey Kent Springer (With attachments) (O'Reilly, Charles) (Entered: 12/11/2009) |
| 12/14/2009 | 267 | 2002 | MOTION to Reconsider (Re: 264 Order,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s),,, ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/14/2009) |
| 12/14/2009 | 268 | 2008 | BRIEF in Support of Motion (Re: 267 MOTION to Reconsider ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 12/14/2009) |
| 12/15/2009 | 269 | 2018 | RESPONSE in Opposition to Motion (Re: 267 MOTION to Reconsider ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 12/15/2009) |
| 12/28/2009 | 270 | 2022 | AFFIDAVIT of Lindsey K. Springer pursuant to Title 28, Section 144 as to Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 12/28/2009) |
| 12/28/2009 | 271 | 2083 | MOTION Disqualify, Recuse, Removal and for Random Reassignment by Lindsey Kent Springer (Springer, Lindsey) (Entered: 12/28/2009) |
| 12/28/2009 | 272 | 2086 | BRIEF in Support of Motion (Re: 271 MOTION Disqualify, Recuse, Removal and for Random Reassignment ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 12/28/2009) |
| 12/28/2009 | 273 | 2119 | MOTION to Strike Document(s) (Re: 266 Response in Opposition to Motion, 259 MOTION to Strike Document(s) ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 12/28/2009) |
| 12/28/2009 | 274 | 2125 | REPLY to Response to Motion (Re: 265 MOTION to Vacate/Set Aside *Order dated December 9, 2009* MOTION Reinstate Docket # 257 and # 260 as properly filed under Local Criminal Rules 12.1 MOTION 10 days from date of order to refile docket # 257 and # 260 in accordance with Local Civil Rule 7.2 including extended page number therein ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 12/28/2009) |

| | | | |
|---|---|---|---|
| 12/29/2009 | <u>275</u> | | SEALED DOCUMENT (s–srb, Dpty Clk) (Entered: 12/30/2009) Contains One or More Restricted PDFs |
| 01/07/2010 | <u>276</u> | 2135 | RESPONSE in Opposition to Motion (Re: <u>262</u> MOTION for New Trial ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 01/07/2010) |
| 01/07/2010 | <u>277</u> | 2150 | RESPONSE in Opposition to Motion (Re: <u>271</u> MOTION Disqualify, Recuse, Removal and for Random Reassignment ) by USA as to Lindsey Kent Springer (With attachments) (O'Reilly, Charles) (Entered: 01/07/2010) |
| 01/12/2010 | <u>278</u> | 2169 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #254 Denied (Re: <u>254</u> MOTION To provide transcript at public expense ) as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/12/2010) |
| 01/20/2010 | <u>279</u> | | MOTION for Leave to Exceed Page Limitation *in Reply Regarding Springer's Motion for New Trial*, by Lindsey Kent Springer (Springer, Lindsey) (Entered: 01/20/2010) |
| 01/20/2010 | <u>280</u> | 2171 | MOTION to Dismiss Count(s) ONE *for lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue* (Re: <u>2</u> Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 01/20/2010) |
| 01/20/2010 | <u>281</u> | 2174 | BRIEF in Support of Motion (Re: <u>280</u> MOTION to Dismiss Count(s) ONE *for lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue* ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 01/20/2010) |
| 01/20/2010 | <u>282</u> | 2289 | MOTION to Dismiss Count(s) Two, Three, Four, Five and Six *for Lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue* (Re: <u>2</u> Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 01/20/2010) |
| 01/20/2010 | <u>283</u> | 2292 | BRIEF in Support of Motion (Re: <u>282</u> MOTION to Dismiss Count(s) Two, Three, Four, Five and Six *for Lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 01/20/2010) |
| 01/20/2010 | <u>284</u> | 2319 | MOTION to Dismiss Indictment/Information/Complaint *for lack of Article III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of* |

| | | | |
|---|---|---|---|
| | | | *Title 28, United States Code, Section 547, and accompanying brief in support thereof* (Re: 2 Indictment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 01/20/2010) |
| 01/21/2010 | 285 | | MOTION to Strike Document(s) *276 and 277* (Re: 277 Response in Opposition to Motion, 276 Response in Opposition to Motion ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 01/21/2010) |
| 01/21/2010 | 286 | 2335 | REPLY to Response to Motion (Re: 271 MOTION Disqualify, Recuse, Removal and for Random Reassignment ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 01/21/2010) |
| 01/21/2010 | 287 | 2344 | REPLY (Re: 270 Affidavit ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 01/21/2010) |
| 01/21/2010 | 288 | 2355 | REPLY to Response to Motion (Re: 262 MOTION for New Trial ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 01/21/2010) |
| 01/22/2010 | 289 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #279 Granted (Re: 279 MOTION for Leave to Exceed Page Limitation *in Reply Regarding Springer's Motion for New Trial*,, 262 MOTION for New Trial ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 01/22/2010) |
| 01/22/2010 | 290 | | SCHEDULING ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Sentencing set for 4/19/2010 at 10:00 AM before Judge Stephen P Friot) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/22/2010) |
| 01/25/2010 | 291 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): ( Sentencing set for 4/21/2010 at 10:00 AM before Judge Stephen P Friot) (Re: 290 Scheduling Order, Setting/Resetting Deadline(s)/Hearing(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/25/2010) |
| 01/27/2010 | 292 | 2393 | RESPONSE in Opposition to Motion (Re: 282 MOTION to Dismiss Count(s) Two, Three, Four, Five and Six *for Lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue*, 280 MOTION to Dismiss Count(s) ONE *for lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue*, 285 MOTION to Strike Document(s) *276 and 277*, 284 MOTION to Dismiss Indictment/Information/Complaint *for lack of Article* |

| | | | |
|---|---|---|---|
| | | | *III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of Title 28, United States Code, Section 547, and accompanying brief in MOTION to Dismiss Indictment/Information/Complaint for lack of Article III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of Title 28, United States Code, Section 547, and accompanying brief in ) by USA as to Lindsey Kent Springer (Snoke, Kenneth) (Entered: 01/27/2010)* |
| 01/28/2010 | <u>293</u> | 2397 | OPINION AND ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #224,232,262,265,267,271,273,285 Denied (Re:<u> 265</u> MOTION to Vacate/Set Aside *Order dated December 9, 2009* MOTION Reinstate Docket # 257 and # 260 as properly filed under Local Criminal Rules 12.1 MOTION 10 days from date of order to refile docket # 257 and # 260 in accordance with Local Civil Rule 7.2 including extended page number therein,<u> 267</u> MOTION to Reconsider,<u> 232</u> JOINDER *in Springer's motion for reconsideration, dismissal, or mistrial* (in<u> 224</u> ),<u> 262</u> MOTION for New Trial,<u> 224</u> MOTION to Reconsider,<u> 273</u> MOTION to Strike Document(s),<u> 271</u> MOTION Disqualify, Recuse, Removal and for Random Reassignment,<u> 285</u> MOTION to Strike Document(s) *276 and 277* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 01/28/2010) |
| 02/01/2010 | <u>294</u> | 2423 | JOINDER (in [262, 265, 271, 272, 273, 274, 280, 281, 282, 283, 284, 285, 286, and 288] Multiple motions filed on 12/28/09 mostly) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/01/2010) |
| 02/01/2010 | <u>295</u> | 2425 | MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six *regarding regulations not in compliance with APA* (Re:<u> 2</u> Indictment ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 02/01/2010) |
| 02/01/2010 | <u>296</u> | 2440 | MOTION to Modify Conditions of Pretrial Release by Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/01/2010) |
| 02/01/2010 | <u>297</u> | 2443 | First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly* (Re:<u> 278</u> Order, Ruling on Motion(s)/Document(s),<u> 290</u> Scheduling Order, Setting/Resetting Deadline(s)/Hearing(s),<u> 291</u> Order,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s),,<u> 293</u> Opinion and Order,,,, Ruling on Motion(s)/Document(s), Ruling on |

| | | | |
|---|---|---|---|
| | | | Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), 24 Order,, Reassigning Case,, Changing Case Number,_264 Order,,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s), Striking/Withdrawing Document(s),,, 247 Order, Ruling Re: Modification of Conditions of Pretrial Release ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/01/2010) |
| 02/02/2010 | 298 | 2446 | BRIEF in Support of Motion (Re: 297 First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly,* 296 MOTION to Modify Conditions of Pretrial Release ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/02/2010) |
| 02/03/2010 | 299 | 2473 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #296 denied (Re: 296 MOTION to Modify Conditions of Pretrial Release ) as to Oscar Amos Stilley (sjm, Dpty Clk) Modified on 2/4/2010 to remove Lindsey Kent Springer from text (lml, Dpty Clk). (Entered: 02/03/2010) |
| 02/03/2010 | 300 | 2479 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #297 denied (Re: 297 First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly*First MOTION to Strike Document(s) *by Stephen P. Friot or Claire V. Eagan, particularly* #294 granted) as to Oscar Amos Stilley; (sjm, Dpty Clk) Modified on 2/3/2010 to correct entry ruling on #294 also(sjm, Dpty Clk). (Entered: 02/03/2010) |
| 02/03/2010 | 301 | | NOTICE of Docket Entry Modification; Error: omitted ruling on docket #294; Correction: corrected entry to include ruling on docket #294 (Re: Ruling on Joinder in Motion ) as to Oscar Amos Stilley (sjm, Dpty Clk) (Entered: 02/03/2010) |
| 02/04/2010 | 302 | 2480 | RESPONSE in Opposition to Motion (Re: 295 MOTION to Dismiss Count(s) One, Two, Three, |

| | | | |
|---|---|---|---|
| | | | Four, Five and Six *regarding regulations not in compliance with APA* ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 02/04/2010) |
| 02/05/2010 | 303 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s), Monthly MOTION Stay pending ruling from Supreme Court in 09–8701 *and brief* by Lindsey Kent Springer (With attachments) (Springer, Lindsey) Modified on 2/11/2010 to seal pdf as this document is STRICKEN per 307 (sac, Dpty Clk). (Entered: 02/05/2010) Contains One or More Restricted PDFs |
| 02/08/2010 | 304 | | MOTION to Strike Document(s) (Re: 303 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s)Monthly MOTION Stay pending ruling from Supreme Court in 09–8701 *and brief* ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) Modified on 2/11/2010 to seal pdf as this document is STRICKEN per 307 (sac, Dpty Clk). (Entered: 02/08/2010) Contains One or More Restricted PDFs |
| 02/08/2010 | 305 | | MOTION to Withdraw Document(s) (Re: 303 MOTION to Accelerate/Extend/Reset Hearings/Deadlines) as to Lindsey Kent Springer (Springer, Lindsey) Modified on 2/9/2010 to correct title of event (lml, Dpty Clk). (Entered: 02/08/2010) |
| 02/08/2010 | 306 | | MOTION Stay all Orders by Judge Friot pending determination by Surpeme Court in 09–8701 by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 02/08/2010) |
| 02/09/2010 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Notice); Correction: Edited docket text to reflect correct event (Motion to Withdraw Documents) (Re: 305 MOTION to Withdraw Document(s) ) as to Lindsey Kent Springer (lml, Dpty Clk) (Entered: 02/09/2010) |
| 02/10/2010 | 307 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #303 Stricken as Moot; #304 Stricken as Moot; #305 Granted, striking/withdrawing document(s) (Re: 304 MOTION to Strike Document(s), 305 MOTION to Withdraw Document(s), 303 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s)Monthly MOTION Stay pending ruling from Supreme Court in 09–8701 *and brief* ) (Documents Terminated: 303 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s)Monthly MOTION Stay pending ruling from Supreme Court in 09–8701 *and* |

| | | | |
|---|---|---|---|
| | | | *brief,* 305 MOTION to Withdraw Document(s), 304 MOTION to Strike Document(s) ) as to Lindsey Kent Springer (djh, Dpty Clk) (Entered: 02/10/2010) |
| 02/10/2010 | 308 | 2487 | REPLY to Response to Motion (Re: 282 MOTION to Dismiss Count(s) Two, Three, Four, Five and Six *for Lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue,* 280 MOTION to Dismiss Count(s) ONE *for lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue,* 284 MOTION to Dismiss Indictment/Information/Complaint *for lack of Article III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of Title 28, United States Code, Section 547, and accompanying brief in MOTION to Dismiss Indictment/Information/Complaint for lack of Article III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of Title 28, United States Code, Section 547, and accompanying brief in* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 02/10/2010) |
| 02/11/2010 | 309 | 2498 | JOINDER (in [295, 306, 308] Motion to dismiss...., Motion for Stay..., Reply filed on 2/1/10, 2/8/10, 2/10/10) as to Oscar Amos Stilley (Stilley, Oscar) (Entered: 02/11/2010) |
| 02/12/2010 | 310 | 2500 | RESPONSE in Opposition to Motion (Re: 306 MOTION Stay all Orders by Judge Friot pending determination by Surpeme Court in 09−8701, 309 JOINDER (in [295, 306, 308] Motion to dismiss...., Motion for Stay..., Reply filed on 2/1/10, 2/8/10, 2/10/10) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (With attachments) (O'Reilly, Charles) (Entered: 02/12/2010) |
| 02/18/2010 | 311 | 2568 | REPLY to Response to Motion (Re: 295 MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six *regarding regulations not in compliance with APA* ) by Lindsey Kent Springer (Springer, Lindsey) (Entered: 02/18/2010) |
| 02/22/2010 | 312 | 2575 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #280, 282, 284, 306 Denied, #309 Granted (Re: 282 MOTION to Dismiss Count(s) Two, Three, Four, Five and Six *for Lack of Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue,* 306 MOTION Stay all Orders by Judge Friot pending determination by Surpeme Court in 09−8701, 280 MOTION to Dismiss Count(s) ONE *for lack of* |

| | | | |
|---|---|---|---|
| | | | *Article III Subject Matter Jurisdiction, Article III Jurisdiction of the Facts and Article III Venue*, 309 JOINDER (in [295, 306, 308] Motion to dismiss...., Motion for Stay..., Reply filed on 2/1/10, 2/8/10, 2/10/10), 284 MOTION to Dismiss Indictment/Information/Complaint *for lack of Article III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of Title 28, United States Code, Section 547, and accompanying brief in MOTION to Dismiss Indictment/Information/Complaint for lack of Article III Standing of United States of America, (2) lack of Article III Case or Controversy, (3) for violation of Title 28, United States Code, Section 547, and accompanying brief in ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 02/22/2010)* |
| 02/23/2010 | 313 | 2580 | ORDER by Judge Stephen P Friot *re: consideration of non−standard conditions of supervised release* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 02/23/2010) |
| 02/25/2010 | 314 | 2583 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #295 Denied (Re: 295 MOTION to Dismiss Count(s) One, Two, Three, Four, Five and Six *regarding regulations not in compliance with APA* ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 02/25/2010) |
| 03/16/2010 | 315 | | SEALED DOCUMENT (O'Reilly, Charles) (Entered: 03/16/2010) Contains One or More Restricted PDFs |
| 03/25/2010 | 316 | 2586 | ORDER by Judge Stephen P Friot, ruling re: modification of conditions of pretrial release as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) Modified on 3/25/2010 to add PDF (pll, Dpty Clk). (Entered: 03/25/2010) |
| 03/25/2010 | 317 | | NOTICE of Docket Entry Modification; Error: Document not attached; Correction: Attached document and included here (Re: 316 Order, Ruling Re: Modification of Conditions of Pretrial Release ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 03/25/2010) |
| 03/30/2010 | 318 | 2587 | NOTICE *Regarding Defendants'* Reference to Variance in Objections to PSIR by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 03/30/2010) |
| 03/30/2010 | 319 | 2590 | EXHIBIT LIST *and Witness List for Sentencing* by USA as to Lindsey Kent Springer, Oscar Amos |

| | | | |
|---|---|---|---|
| | | | Stilley (With attachments) (O'Reilly, Charles) (Entered: 03/30/2010) |
| 03/30/2010 | 320 | | SEALED DOCUMENT (Stilley, Oscar) (Entered: 03/30/2010) Contains One or More Restricted PDFs |
| 03/30/2010 | 321 | 2605 | SENTENCING MEMORANDUM as to Lindsey Kent Springer (Springer, Lindsey) (Entered: 03/31/2010) |
| 04/04/2010 | 322 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Continuance of Sentencing* (Re: 290 Scheduling Order, Setting/Resetting Deadline(s)/Hearing(s), 291 Order,, Setting/Resetting Deadline(s)/Hearing(s), Setting/Resetting Deadline(s)/Hearing(s),, ) by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 04/04/2010) |
| 04/05/2010 | 323 | | RESPONSE in Opposition to Motion (Re: 322 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Continuance of Sentencing* MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Continuance of Sentencing* ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 04/05/2010) |
| 04/05/2010 | 324 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #322 denied (Re: 322 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Continuance of Sentencing* MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *Continuance of Sentencing* ) as to Lindsey Kent Springer (hbo, Dpty Clk) (Entered: 04/05/2010) |
| 04/06/2010 | 325 | 2621 | EXHIBIT LIST as to Lindsey Kent Springer (Springer, Lindsey) Modified on 4/7/2010; This is a multi−event document, see Document # 327 for second event (tjc, Dpty Clk). (Entered: 04/06/2010) |
| 04/06/2010 | 326 | | MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* by Oscar Amos Stilley (Stilley, Oscar) (Entered: 04/06/2010) |
| 04/06/2010 | 327 | | WITNESS LIST (*submitted as part of Doc # 325* ) as to Lindsey Kent Springer (tjc, Dpty Clk) (Entered: 04/07/2010) |
| 04/07/2010 | | | NOTICE of Docket Entry Modification; Error: This is a multi−event document, which is not allowed in CM/ECF; Correction: Filed the remaining event (Witness List) as Document # 327 (Re: 325 Exhibit List ) as to Lindsey Kent Springer (tjc, Dpty Clk) |

| | | | |
|---|---|---|---|
| | | | (Entered: 04/07/2010) |
| 04/07/2010 | 328 | | RESPONSE in Opposition to Motion (Re: 326 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* ) by USA as to Oscar Amos Stilley (O'Reilly, Charles) (Entered: 04/07/2010) |
| 04/07/2010 | 329 | | ORDER by Judge Stephen P Friot, setting/resetting deadline(s)/hearing(s): *(Government's response deadline to Stilley's Motion to Continue Sentencing [Dkt. #326])* ( Miscellaneous Deadline set for 4/13/2010 as to Oscar Amos Stilley (djh, Dpty Clk) (Entered: 04/07/2010) |
| 04/08/2010 | 330 | | REPLY to Response to Motion (Re: 326 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* ) by Oscar Amos Stilley (Stilley, Oscar) (Entered: 04/08/2010) |
| 04/09/2010 | 331 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #326 Denied (Re: 326 MOTION to Accelerate/Extend/Reset Hearing(s)/Deadline(s) *to continue sentencing until proper notice has been given* ) as to Oscar Amos Stilley Modified on 4/23/2010 to show Oscar Amos Stilley as single filer(cds, Dpty Clk). (Entered: 04/09/2010) |
| 04/09/2010 | 332 | 2623 | REPLY (Re: 321 Sentencing Memorandum ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 04/09/2010) |
| 04/16/2010 | 333 | | SEALED DOCUMENT (O'Reilly, Charles) (Entered: 04/16/2010) Contains One or More Restricted PDFs |
| 04/23/2010 | 336 | 2636 | MINUTES of Proceedings – held before Judge Stephen P Friot: Sentencing held on 4/23/2010, striking/terminating deadline(s)/hearing(s) as to Lindsey Kent Springer, Oscar Amos Stilley (Court Reporter: Tracy Washbourne) (With attachments) (pll, Dpty Clk) (Entered: 04/28/2010) |
| 04/23/2010 | 339 | 2677 | MOTION for Stay of Execution of Sentence, MOTION for Release Pending Appeal by Lindsey Kent Springer (s–srl, Dpty Clk) (Entered: 04/29/2010) |
| 04/23/2010 | 340 | 2685 | NOTICE OF APPEAL to Circuit Court (Re: 337 Judgment and Commitment, Entering Judgment ) as to Lindsey Kent Springer (s–srl, Dpty Clk) (Entered: 04/29/2010) |

| 04/23/2010 | 341 | | APPEAL FEES Paid in Full (Re: 340 Notice of Appeal to Circuit Court ) by Lindsey Kent Springer (s−srl, Dpty Clk) (Entered: 04/29/2010) |
|---|---|---|---|
| 04/23/2010 | | | ***Remark: *appeal forms given* (Re: 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer (s−srl, Dpty Clk) (Entered: 04/29/2010) |
| 04/23/2010 | 348 | 2693 | NOTICE OF APPEAL to Circuit Court (Re: 338 Judgment and Commitment, Entering Judgment ) as to Oscar Amos Stilley (s−srl, Dpty Clk) Modified on 4/30/2010 to correct file date (s−srl, Dpty Clk). (Entered: 04/30/2010) |
| 04/27/2010 | 334 | 2634 | ORDER by Judge Stephen P Friot *entered without prejudice to the right of standby counsel to apply for compensation for their services*, terminating attorney Charles Robert Burton, IV and Robert Scott Williams as to Lindsey Kent Springer, Oscar Amos Stilley (djh, Dpty Clk) (Entered: 04/27/2010) |
| 04/27/2010 | 335 | | ***Remark: *Order [Dkt. #334] mailed to each defendant c/o David L. Moss Correctional Center, 300 N. Denver Ave., Tulsa, OK 74103* (Re: 334 Order,, Adding/Terminating Attorney(s), Adding/Terminating Attorney(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (djh, Dpty Clk) (Entered: 04/27/2010) |
| 04/28/2010 | 337 | 2665 | JUDGMENT AND COMMITMENT by Judge Stephen P Friot, entering judgment as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 04/28/2010) |
| 04/28/2010 | 338 | 2671 | JUDGMENT AND COMMITMENT by Judge Stephen P Friot, entering judgment as to Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/28/2010) |
| 04/29/2010 | 342 | | PRELIMINARY RECORD Sent to Circuit Court (Re: 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer (With attachments) (s−srl, Dpty Clk) (Entered: 04/29/2010) |
| 04/29/2010 | 343 | | MOTION Transcript at Public Expense by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 04/29/2010) |
| 04/29/2010 | 344 | | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 10−5055 (#340) (Re: 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer (sam, Dpty Clk) (Entered: 04/29/2010) |
| 04/30/2010 | 345 | | MOTION Amended Request For Stay of Execution of Sentence and Judgement and Appeal Bond Pending Appeal (Re: 337 Judgment and Commitment, Entering Judgment ) by Lindsey Kent |

| | | | |
|---|---|---|---|
| | | | Springer (Springer, Lindsey) Modified on 5/3/2010 to seal PDF; Document STRICKEN per Order #_352 (tjc, Dpty Clk). (Entered: 04/30/2010) Contains One or More Restricted PDFs |
| 04/30/2010 | 346 | 2687 | ORDER by Judge Stephen P Friot *re: mailing addresses* as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 347 | 2688 | MOTION to Strike Document(s) (Re:_345 MOTION Amended Request For Stay of Execution of Sentence and Judgement and Appeal Bond Pending Appeal ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 04/30/2010) |
| 04/30/2010 | 349 | | PRELIMINARY RECORD Sent to Circuit Court (Re:_348 Notice of Appeal to Circuit Court ) as to Oscar Amos Stilley (With attachments) (s–srl, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 350 | 2694 | RESPONSE in Support of Motion (Re:_343 MOTION Transcript at Public Expense ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 04/30/2010) |
| 04/30/2010 | | | NOTICE of Docket Entry Modification; Error: incorrect file date; Correction: corrected file date (Re:_348 Notice of Appeal to Circuit Court ) as to Oscar Amos Stilley (s–srl, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 351 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #343 Granted (Re:_343 MOTION Transcript at Public Expense ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 352 | 2697 | ORDER by Judge Stephen P Friot, striking/withdrawing document(s) (Re:_345 MOTION Amended Request For Stay of Execution of Sentence and Judgement and Appeal Bond Pending Appeal ) (Documents Terminated:_345 MOTION Amended Request For Stay of Execution of Sentence and Judgement and Appeal Bond Pending Appeal ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 353 | | Amended PRELIMINARY RECORD Sent to Circuit Court (Re:_348 Notice of Appeal to Circuit Court, 349 Preliminary Record Sent ) as to Oscar Amos Stilley (With attachments) (s–srl, Dpty Clk) (Entered: 04/30/2010) |
| 04/30/2010 | 354 | | MOTION for Leave to Exceed Page Limitation *For Leave* by Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 04/30/2010) |

| 04/30/2010 | 355 | | APPEAL NUMBER INFORMATION from Circuit Court assigning Case Number 10–5057 (#348) (Re: 348 Notice of Appeal to Circuit Court ) as to Oscar Amos Stilley (sam, Dpty Clk) (Entered: 05/03/2010) |
|---|---|---|---|
| 05/03/2010 | 356 | 2698 | RESPONSE in Opposition to Motion (Re: 354 MOTION for Leave to Exceed Page Limitation *For Leave* ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 05/03/2010) |
| 05/03/2010 | 357 | 2703 | RESPONSE (Re: 339 MOTION for Stay of Execution of Sentence MOTION for Release Pending Appeal ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 05/03/2010) |
| 05/03/2010 | 358 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #354 Granted (Re: 354 MOTION for Leave to Exceed Page Limitation *For Leave*, 345 MOTION Amended Request For Stay of Execution of Sentence and Judgement and Appeal Bond Pending Appeal ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 05/03/2010) |
| 05/03/2010 | 359 | 2710 | MOTION For Stay Of Judgement (Re: 339 MOTION for Stay of Execution of Sentence MOTION for Release Pending Appeal ) by Lindsey Kent Springer (Springer, Lindsey) Modified on 5/4/2010; this is a two–part motion of which only one part was efiled – see 360 for Motion for Release Pending Appeal (sac, Dpty Clk). (Entered: 05/03/2010) |
| 05/03/2010 | 360 | | MOTION for Release Pending Appeal *(submitted as part of 359* ) by Lindsey Kent Springer (sac, Dpty Clk) (Entered: 05/04/2010) |
| 05/04/2010 | | | NOTICE of Docket Entry Modification; Error: this is a two–part motion of which only one part was efiled; Correction: efiled second part of motion – see 360 (Re: 359 MOTION for Stay Of Judgement ) as to Lindsey Kent Springer (sac, Dpty Clk) (Entered: 05/04/2010) |
| 05/06/2010 | 361 | 2742 | RESPONSE in Opposition to Motion (Re: 359 MOTION for Stay Of Judgement ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 05/06/2010) |
| 05/06/2010 | 362 | | ORDER from Circuit Court *partially consolidating appeals* (Re: 348 Notice of Appeal to Circuit Court, 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 05/06/2010) |
| 05/07/2010 | 363 | 2752 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #359, 360 Denied (Re: 360 |

| | | | |
|---|---|---|---|
| | | | MOTION for Release Pending Appeal *(submitted as part of 359 )*, 359 MOTION for Stay Of Judgement ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 05/07/2010) |
| 05/09/2010 | 364 | 2755 | MOTION For Delivery of Filed Documents by Lindsey Kent Springer (Springer, Lindsey) (Entered: 05/09/2010) |
| 05/24/2010 | 365 | | TRANSCRIPT ORDER FORM as to Lindsey Kent Springer (With attachments) (Springer, Lindsey) Modified on 5/25/2010 to seal the pdf as it is not fully executed and should have been submitted to the court reporter (sac, Dpty Clk). (Entered: 05/24/2010) Contains One or More Restricted PDFs |
| 05/25/2010 | | | NOTICE of Docket Entry Modification; Error: this document should have been submitted to the court reporter; Correction: notified Lindsey Springer that this document must first be submitted to the court reporter and that the court reporter will file it of record once it is fully executed (Re: 365 Transcript Order Form ) as to Lindsey Kent Springer (sac, Dpty Clk) (Entered: 05/25/2010) |
| 05/28/2010 | 366 | | MOTION to Unseal Document(s) (Re: 203 Sealed Order, 186 Sealed Order, 181 SEALED MOTION, 182 Sealed Document, 202 SEALED MOTION ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 05/28/2010) |
| 06/01/2010 | 367 | | DESIGNATION of Record on Appeal (Re: 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer (With attachments) (Springer, Lindsey) (Entered: 06/01/2010) |
| 06/01/2010 | 368 | 2758 | MOTION to Reconsider *Release Pending Appeal* (Re: 363 Order, Ruling on Motion(s)/Document(s) ) by Lindsey Kent Springer (Springer, Lindsey) Modified on 6/2/2010; This is two–part motion, see Doc # 369 for second event (tjc, Dpty Clk). (Entered: 06/01/2010) |
| 06/01/2010 | 369 | | MOTION for Hearing *(submitted as part of Doc # 368 )* by Lindsey Kent Springer (tjc, Dpty Clk) (Entered: 06/02/2010) |
| 06/02/2010 | | | NOTICE of Docket Entry Modification; Error: Document # 368 is a two–part motion, but not all parts were filed; Correction: Filed the remaining motion part as Document # 369 (Re: 368 MOTION to Reconsider *Release Pending Appeal* ) as to Lindsey Kent Springer (tjc, Dpty Clk) (Entered: 06/02/2010) |

| | | | |
|---|---|---|---|
| 06/03/2010 | 370 | | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #366 Granted, unsealing document(s) (Re: 366 MOTION to Unseal Document(s), 182 Sealed Document, 186 Sealed Order, 203 Sealed Order, 181 SEALED MOTION, 202 SEALED MOTION ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/03/2010) |
| 06/04/2010 | 371 | 2762 | Amended MOTION to Reconsider Re: 369 MOTION for Hearing *(submitted as part of Doc # 368 )*, 368 MOTION to Reconsider *Release Pending Appeal* ) by Lindsey Kent Springer (Springer, Lindsey) Modified on 6/7/2010 to correct event; also this is two−part motion, see Document # 372 for second event (tjc, Dpty Clk). (Entered: 06/04/2010) |
| 06/04/2010 | 372 | | Amended MOTION for Hearing *re: Evidentiary (submitted as part of Doc # 371 )* by Lindsey Kent Springer (tjc, Dpty Clk) (Entered: 06/07/2010) |
| 06/07/2010 | | | NOTICE of Docket Entry Modification; Error: This was filed using the incorrect event (Motion to Amend) and Document # 371 is a two−part motion, but not all parts were filed; Correction: Edited docket text to reflect the correct event and filed the remaining motion part as Document # 372 (Re: 371 MOTION to Reconsider ) as to Lindsey Kent Springer (tjc, Dpty Clk) (Entered: 06/07/2010) |
| 06/08/2010 | 373 | 2766 | MOTION to Withdraw Attorney(s) *Kenneth P. Snoke* by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 06/08/2010) |
| 06/08/2010 | 374 | 2768 | ORDER by Judge Stephen P Friot, terminating attorney Kenneth P Snoke, ruling on motion(s)/document(s): #373 Granted (Re: 373 MOTION to Withdraw Attorney(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk) (Entered: 06/08/2010) |
| 06/08/2010 | 375 | 2769 | RESPONSE in Opposition to Motion (Re: 371 MOTION to Reconsider, 368 MOTION to Reconsider *Release Pending Appeal* ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 06/08/2010) |
| 06/08/2010 | 376 | 2774 | ORDER by Judge Stephen P Friot, ruling on motion(s)/document(s): #364 moot (Re: 364 MOTION For Delivery of Filed Documents ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 06/08/2010) |
| 06/08/2010 | 377 | 2775 | ORDER by Judge Stephen P Friot, ruling on |

| | | | |
|---|---|---|---|
| | | | motion(s)/document(s): #368, 369, 371, 372 Denied (Re: 369 MOTION for Hearing *(submitted as part of Doc # 368 )*, 371 MOTION to Reconsider, 372 Amended MOTION for Hearing *re: Evidentiary (submitted as part of Doc # 371 )*, 368 MOTION to Reconsider *Release Pending Appeal* ) as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 06/08/2010) |
| 06/09/2010 | 378 | | TRANSCRIPT ORDER FORM (Transcripts ordered from Tracy Washbourne) (Re: 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer (s–srl, Dpty Clk) (Entered: 06/09/2010) |
| 06/10/2010 | 379 | | MINUTE ORDER by Court Clerk, directing Jerold W. Barringer to file by July 1, 2010 a Motion for Admission Pro Hac Vice per Local Civil Rule 83.2. Additionally, if you intend to practice in this district in the future and want to become a member of this district, please submit an application for attorney admission. as to Lindsey Kent Springer, Oscar Amos Stilley (lal, Dpty Clk) (Entered: 06/10/2010) |
| 06/11/2010 | | | MAIL to Oscar Amos Stilley Returned – marked return to sender – not in custody. Remailed on 6/14/10 to FCI Forrest Low, P O BOX 9000, FORREST CITY, AR 72336 – new address obtained from BOP website. (Re: 370 Order,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), Unsealing Document(s), Unsealing Document(s) ) as to Oscar Amos Stilley (s–srl, Dpty Clk) (Entered: 06/14/2010) |
| 06/16/2010 | 380 | | Supplemental CERTIFICATE of Service *Due to Returned Mail* (Re: 375 Response in Opposition to Motion, 373 MOTION to Withdraw Attorney(s), 366 MOTION to Unseal Document(s) ) by USA as to Lindsey Kent Springer, Oscar Amos Stilley (O'Reilly, Charles) (Entered: 06/16/2010) |
| 06/16/2010 | | | MAIL to Oscar Amos Stilley, David L. Moss Criminal Justice Center, 300 N Denver, Tulsa, OK 74103 Returned – marked Return to Sender – not in custody. Remailed on 06/17/10 to FCI Forrest City Low, PO Box 9000, Forrest City, AR 72336 – New address obtained from BOP Website. (Re: 376 Order, Ruling on Motion(s)/Document(s), 377 Order,, Ruling on Motion(s)/Document(s), Ruling on Motion(s)/Document(s), 374 Order, Adding/Terminating Attorney(s), Ruling on Motion(s)/Document(s) ) as to Oscar Amos Stilley (sdc, Dpty Clk) Modified on 6/18/2010 to remove additional Defendant (sdc, Dpty Clk). (Entered: 06/17/2010) |

| 07/07/2010 | <u>381</u> | 2777 | ORDER by Judge Stephen P Friot – *Certificate pursuant to 18 USC 3006A(d)(3) re: CJA voucher* as to Lindsey Kent Springer (pll, Dpty Clk) (Entered: 07/07/2010) |
|---|---|---|---|
| 07/12/2010 | <u>382</u> | | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 04/22/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 132). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re:<u>340</u> Notice of Appeal,<u>43</u> Minutes of Motion Hearing, Minutes of Scheduling Conference, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s),,, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s),,, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s),,, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s),,, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s),,, Ruling on Motion(s)/Document(s), Taking Motion(s) Under Advisement, Setting/Resetting Deadline(s)/Hearing(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk). Modified on 7/13/2010 to create link to<u>340</u> (sac, Dpty Clk). (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | <u>383</u> | | TRANSCRIPT of Proceedings (Unredacted) of Motion Hearing held on 07/02/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 159). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party</span> |

| | | | |
|---|---|---|---|
| | | | needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 100 Minutes of Motion Hearing, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 384 | | TRANSCRIPT of Proceedings (Unredacted) of Pretrial Hearing held on 10/21/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 139). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 207 Minutes of Motion Hearing, Minutes of Pretrial Conference, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),,, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),,, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),,, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s),,, Ruling on Motion(s)/Document(s), Striking/Terminating Deadline(s)/Hearing(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |

| 07/12/2010 | 385 | | TRANSCRIPT of Proceedings (Unredacted) of Voir Dire and Jury Trial held on 10/26/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne)(Pages: 1 to 242)(Re: 217 Minutes of Jury Trial Begun, 340 Notice of Appeal to Circuit Court, 218 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s), 216 Minutes of Voir Dire/Jury Selection Held) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk)(See Court Clerk to view this transcript) Modified on 7/13/2010 to include that Voir Dire is included in this transcript (sac, Dpty Clk). (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 386 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/27/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 243 to 515). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 221 Minutes of Jury Trial Held, Ruling on Motion(s)/Document(s),, Ruling on Motion(s)/Document(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 387 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/28/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 516 to 640). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 222 Minutes of Jury Trial Held, Setting/Resetting Deadline(s)/Hearing(s),, Setting/Resetting Deadline(s)/Hearing(s), 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) |

| | | | |
|---|---|---|---|
| | | | Contains One or More Restricted PDFs |
| 07/12/2010 | <u>388</u> | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/29/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 641 to 880). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re: <u>340</u> Notice of Appeal to Circuit Court, 223 Minutes of Jury Trial Held, Ruling on Motion(s)/Document(s), Setting/Resetting Scheduling Order Date(s),, Ruling on Motion(s)/Document(s), Setting/Resetting Scheduling Order Date(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | <u>389</u> | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 10/30/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 881 to 1130). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re: 229 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s),, Setting/Resetting Scheduling Order Date(s), <u>340</u> Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | <u>390</u> | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/02/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1131 to 1327). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party</span> |

| | | | |
|---|---|---|---|
| | | | needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 230 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s),, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 391 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/03/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1328 to 1608). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 231 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s),, Setting/Resetting Scheduling Order Date(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 392 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/04/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1609 to 1934). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 233 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s),, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 393 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/05/2009 before Judge Stephen P |

| | | | |
|---|---|---|---|
| | | | Friot (Court Reporter: Tracy Washbourne) (Pages: 1935 to 2202). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re: 340 Notice of Appeal to Circuit Court, 234 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s),, Setting/Resetting Scheduling Order Date(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 394 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/09/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2203 to 2454). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re: 239 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s),, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 395 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/10/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2455 to 2669). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re: 240 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order |

| | | | Date(s),, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
|---|---|---|---|
| 07/12/2010 | 396 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/12/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2670 to 2949). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 241 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s),, Setting/Resetting Scheduling Order Date(s), 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 397 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/13/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 2950 to 3056). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 340 Notice of Appeal to Circuit Court, 242 Minutes of Jury Trial Held, Setting/Resetting Scheduling Order Date(s),, Setting/Resetting Scheduling Order Date(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | 398 | | TRANSCRIPT of Proceedings (Unredacted) of Jury Trial held on 11/16/2009 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 3057 to 3090). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript |

| | | | |
|---|---|---|---|
| | | | <span style="color:red">may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re:_340 Notice of Appeal to Circuit Court,_243 Minutes of Jury Trial Completed, Striking/Terminating Deadline(s)/Hearing(s) ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | <u>399</u> | | TRANSCRIPT of Proceedings (Unredacted) of Sentencing held on 04/21/2010 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 1 to 210). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re:_336 Minutes of Sentencing, Striking/Terminating Deadline(s)/Hearing(s),, Striking/Terminating Deadline(s)/Hearing(s),_340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | <u>400</u> | | TRANSCRIPT of Proceedings (Unredacted) of Sentencing held on 04/22/2010 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 211 to 390). <span style="color:red">NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter.</span> (Re:_336 Minutes of Sentencing, Striking/Terminating Deadline(s)/Hearing(s),, Striking/Terminating Deadline(s)/Hearing(s),_340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/12/2010 | <u>401</u> | | |

| | | | |
|---|---|---|---|
| | | | TRANSCRIPT of Proceedings (Unredacted) of Sentencing held on 04/23/2010 before Judge Stephen P Friot (Court Reporter: Tracy Washbourne) (Pages: 391 to 469). NOTICE RE REDACTION OF TRANSCRIPTS: A party must file a Transcript Redaction Request within 21 calendar days. If a party fails to request redaction, this unredacted transcript may be made electronically available to the public without redaction after 90 calendar days. Any party needing a copy of the transcript to review for redaction purposes may view the transcript at the court public terminal at no charge or may purchase a copy from the court reporter. (Re: 336 Minutes of Sentencing, Striking/Terminating Deadline(s)/Hearing(s),, Striking/Terminating Deadline(s)/Hearing(s), 340 Notice of Appeal to Circuit Court ) as to Lindsey Kent Springer, Oscar Amos Stilley (sam, Dpty Clk) (Entered: 07/12/2010) Contains One or More Restricted PDFs |
| 07/13/2010 | 402 | | MOTION for Writ of Error Coram Nobis by Lindsey Kent Springer (s−srt, Dpty Clk) (Entered: 07/14/2010) |
| 07/13/2010 | 403 | | MOTION for Appointment of Counsel *Regarding Motion for Writ of Error Coram Nobis* by Lindsey Kent Springer (s−srt, Dpty Clk) (Entered: 07/14/2010) |
| 07/13/2010 | 404 | | BRIEF in Support of Motion (Re: 402 MOTION for Writ of Error Coram Nobis ) by Lindsey Kent Springer (s−srt, Dpty Clk) (Entered: 07/14/2010) |
| 07/13/2010 | 405 | | MOTION for Leave to Exceed Page Limitation by Lindsey Kent Springer (s−srt, Dpty Clk) (Entered: 07/14/2010) |
| 07/13/2010 | 406 | | AFFIDAVIT of Lindsey Kent Springer (titled "Declaration") as to Lindsey Kent Springer (s−srt, Dpty Clk) (Entered: 07/14/2010) |
| 07/13/2010 | 407 | | CERTIFICATE of Service (Re: 405 MOTION for Leave to Exceed Page Limitation, 402 MOTION for Writ of Error Coram Nobis, 404 Brief in Support of Motion, 403 MOTION for Appointment of Counsel *Regarding Motion for Writ of Error Coram Nobis*, 406 Affidavit ) as to Lindsey Kent Springer (s−srt, Dpty Clk) (Entered: 07/14/2010) |
| 07/15/2010 | | | MAIL to Oscar Amos Stilley, David L. Moss Criminal Justic Center, 300 N Denver, Tulsa OK 74103 Returned − marked return to sender − not in custody. Remailed on 7/15/10 − FCI Forrest City Low, PO Box 9000, Forrest City, AR 72336. (Re: |

| | | | |
|---|---|---|---|
| | | | 379 Order, Directing Attorney to File PHV Motion,, ) as to Oscar Amos Stilley (sdc, Dpty Clk) Modified on 7/16/2010 ro remove reference to Lindsey Springer (sdc, Dpty Clk). (Entered: 07/15/2010) |
| 07/16/2010 | 408 | | MOTION for Leave to Exceed Page Limitation by Lindsey Kent Springer (sdc, Dpty Clk) (Entered: 07/16/2010) |
| 07/16/2010 | 409 | | Second BRIEF in Support of Motion (Re: 402 MOTION for Writ of Error Coram Nobis ) by Lindsey Kent Springer (With attachments) (sdc, Dpty Clk) (Entered: 07/16/2010) |
| 07/16/2010 | 410 | | CERTIFICATE of Service (Re: 408 MOTION for Leave to Exceed Page Limitation, 409 Brief in Support of Motion ) as to Lindsey Kent Springer (sdc, Dpty Clk) (Entered: 07/16/2010) |
| 07/16/2010 | 411 | | RESPONSE in Opposition to Motion (Re: 405 MOTION for Leave to Exceed Page Limitation, 402 MOTION for Writ of Error Coram Nobis, 403 MOTION for Appointment of Counsel *Regarding Motion for Writ of Error Coram Nobis*, 408 MOTION for Leave to Exceed Page Limitation ) by USA as to Lindsey Kent Springer (O'Reilly, Charles) (Entered: 07/16/2010) |

*FILED*

MAR 1 0 2009

Phil Lombardi, Clerk
U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

Case No. **09 CR 043 JHP**

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| LINDSEY KENT SPRINGER, | ) |
| OSCAR AMOS STILLEY, | ) |
| | ) |
| Defendants. | ) |

**INDICTMENT**
[18 U.S.C. § 371, Conspiracy to
Defraud the United States;
26 U.S.C. § 7201, Tax Evasion;
26 U.S.C. § 7203, Failure to File
Tax Return]

**THE GRAND JURY CHARGES:**

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1.     **LINDSEY KENT SPRINGER** ("Defendant **SPRINGER**") was a resident of the City of Kellyville, in the Northern District of Oklahoma.

2.     Defendant **SPRINGER** used the name Bondage Breakers Ministry to solicit and receive money. Defendant **SPRINGER**'s stated purpose for Bondage Breakers Ministry was "to get rid of the Internal Revenue Service."

3.     **OSCAR AMOS STILLEY** ("Defendant **STILLEY**") was an attorney residing in Fort Smith, Arkansas.

1

4.      Defendant **STILLEY** maintained an Arkansas IOLTA Foundation Trust Account ("IOLTA account") at Arvest Bank; an IOLTA account is an interest-bearing account used to hold client funds.

5.      Defendants **SPRINGER** and **STILLEY** each earned income in various ways, including assisting individuals being investigated and prosecuted for federal tax violations. Defendant **SPRINGER** referred individuals to Defendant **STILLEY**, and provided assistance on many of these cases.

6.      Defendant **SPRINGER** last filed an individual income tax return with the Internal Revenue Service in the late 1980's.

7.      Defendant **STILLEY** last filed an individual income tax return with the Internal Revenue Service in the late 1980's.

## COUNT ONE
## [18 U.S.C. § 371]

8.      General Allegations paragraphs 1 through 7  are incorporated as if fully set forth herein.

### OBJECT OF THE CONSPIRACY

9.      Beginning in or about 2000, and continuing until on or about January 15, 2009, within the Northern District of Oklahoma, and elsewhere, Defendants **SPRINGER** and **STILLEY**, and others, both known and unknown to the Grand Jury, unlawfully and knowingly combined, conspired, confederated, and agreed together to defraud the United States by impeding, impairing, obstructing, and defeating the lawful government functions

2

of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment, and collection of revenue, that is, federal individual income taxes.

## MANNER AND MEANS OF THE CONSPIRACY

The object of the conspiracy was to be accomplished, and was accomplished, through the following manner and means:

10.     Defendants **SPRINGER** and **STILLEY** would and did use Defendant **STILLEY**'s IOLTA account to conceal Defendant **SPRINGER**'s income, assets, and personal expenses;

11.     Defendant **SPRINGER** would and did use Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses;

12.     Defendants **SPRINGER** and **STILLEY** would and did use cashier's checks, money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal Defendant **SPRINGER**'s income;

13.     Defendants **SPRINGER** and **STILLEY** would and did knowingly misrepresent the source and nature of Defendant **SPRINGER**'s income to Internal Revenue Service employees, the Grand Jury, and the Department of Justice; and

14.     Defendants **SPRINGER** and **STILLEY** would and did refrain from filing forms with the Internal Revenue Service, including Forms 1040 and 1099.

3

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to effect the object thereof, Defendants **SPRINGER** and **STILLEY**, and others known and unknown to the Grand Jury, committed the following overt acts, among others, in the Northern District of Oklahoma and elsewhere:

15.     On or about September 16, 2005, Defendant **SPRINGER** told Internal Revenue Service employees that all funds he receives are gifts and donations, that he does not have any income, and that he does not provide any services for payment.

16.     On or about January 20, 2006, Defendant **STILLEY** stated to Internal Revenue Service employees that people give money to Defendant **SPRINGER** for his ministry, and expect no services in return.

17.     On or about March 9, 2006, Defendant **STILLEY** provided the Grand Jury with a document titled "RESPONSE TO SUBPOENA" stating that "LINDSEY SPRINGER does not charge for his services," and purporting to list "any money paid, given, transferred, or provided to LINDSEY SPRINGER for any purpose."

18.     On or about June 24, 2003, Defendant **STILLEY** caused to be deposited a check for $112,500 into his IOLTA account.

19.     On or about June 30, 2003, Defendant **STILLEY** caused to be written a check for $14,359 from his IOLTA account to Defendant **SPRINGER**.

20.     On or about July 21, 2003, Defendant **STILLEY** caused to be written a check for $35,000 from his IOLTA account to Defendant **SPRINGER**.

4

21.     On or about July 31, 2003, Defendant **STILLEY**, using funds from his IOLTA account, purchased a $37,000 cashier's check for Defendant **SPRINGER**.

22.     On or about July 31, 2003, Defendant **SPRINGER** used the $37,000 cashier's check to purchase a Chevrolet Corvette.

23.     On or about November 6, 2003, Defendant **STILLEY** caused $375,059.90 to be transmitted to his IOLTA account.

24.     On or about November 7, 2003, Defendant **STILLEY** caused three cashier's checks payable to Defendant **SPRINGER** in the amount of $20,000 each to be issued from his IOLTA account.

25.     On or about  November 7, 2003, Defendant **STILLEY** purchased $18,000 in money orders for Defendant **SPRINGER** using funds from his IOLTA account.

26.     On or about August 8, 2005, Defendant **SPRINGER** sent an email to a third person containing the account number, routing number, and name of Defendant **STILLEY**'s IOLTA account.

27.     On or about August 11, 2005, Defendants **SPRINGER** and **STILLEY** caused $192,000 to be transmitted to Defendant **STILLEY**'s IOLTA account for Defendant **SPRINGER**.

28.     On or about August 15, 2005, Defendant **STILLEY** caused $166,000 to be transmitted from his IOLTA account for the purchase of a motor home titled in the name of Defendant **SPRINGER** and his wife.

5

29.     On or about August 18, 2005, Defendants **SPRINGER** and **STILLEY** caused $58,000 to be transmitted to Defendant **STILLEY**'s IOLTA account for Defendant **SPRINGER**.

30.     On or about August 26, 2005, Defendant **STILLEY** caused $5,560 to be transmitted from his IOLTA account to Oklahoma Truck and Trailer Sales for the purchase of a trailer titled in the name of Defendant **SPRINGER**.

31.     On or about September 1, 2005, Defendant **STILLEY** caused $25,813 to be transmitted from his IOLTA account to Lexus of Tulsa for the purchase of a Lexus titled in the name of Defendant **SPRINGER** and his wife.

32.     On or about September 19, 2005, Defendant **STILLEY** purchased two $10,000 cashier's checks payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

33.     On or about November 9, 2005, Defendant **STILLEY** purchased a $10,000 cashier's check payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

34.     On or about November 29, 2005, Defendant **STILLEY** purchased a $9,000 cashier's check payable to Defendant **SPRINGER** with funds from Defendant **STILLEY**'s IOLTA account.

35.    On or about December 9, 2005, Defendant **SPRINGER** caused $50,000 he earned from the sale of a motor home to be transmitted to Defendant **STILLEY**'s IOLTA account.

36.    On or about May 2, 2006, Defendant **STILLEY** caused to be written a $1,993.56 check from his IOLTA account to Defendant **SPRINGER**.

37.    On or about July 25, 2006, Defendant **STILLEY** caused to be deposited a $175,000 check in his IOLTA account.

38.    On or about August 3, 2006, Defendant **STILLEY** caused to be written a $25,000 check from his IOLTA account to Bondage Breakers Ministry.

39.    On or about January 15, 2009, Defendant **SPRINGER** represented that he earned no income and that the  money he received was given "without any expectation for anything from anybody."

All in violation of Title 18, United States Code, Section 371.

7

## COUNT TWO
## [26 U.S.C. § 7201]

40.    General Allegations paragraphs 1, 2, 5, and 6 are incorporated as if fully set forth herein.

41.    From on or about January 1, 2000, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing.  Well knowing and believing the foregoing facts, Defendant **SPRINGER** did willfully attempt to evade and defeat the individual income taxes due and owing by him to the United States of America for the calendar year 2000, by failing to file a United States Individual Income Tax Return as required by law, and by committing various affirmative acts of evasion, including:  receiving income in a fictitious name; directing individuals to write "donation" or "gift" on checks that were payment for services; directing individuals to pay for services by cashier's check; using a check-cashing business to cash checks; using money orders, cash, and other means to avoid creating the usual records of financial transactions and to conceal his income;  making false statements to agents and employees of the Internal Revenue Service; and, otherwise concealing and attempting to conceal from all proper officers of the United States of America his true and correct income.

All in violation of Title 26, United States Code, Section 7201.

<div style="text-align:center">8</div>

## COUNT THREE
### [26 U.S.C. § 7201 and 18 U.S.C. § 2]

42.    General Allegations paragraphs 1 through 7 are incorporated as if fully set forth herein.

43.    From on or about January 1, 2003, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing.   Well knowing and believing the foregoing facts, Defendants **SPRINGER** and **STILLEY** did willfully attempt to evade and defeat the individual income taxes due and owing by Defendant **SPRINGER** to the United States of America for the calendar year 2003, by failing to file a United States Individual Income Tax Return as required by law, and by committing various affirmative acts of evasion.   Defendant **SPRINGER** committed the following affirmative acts of evasion:  directing individuals to make checks payable to Bondage Breakers Ministry; using a check-cashing business to cash checks; and accepting collectible coins as payment for services.  Defendants **SPRINGER** and **STILLEY** committed, and aided and abetted the commission of, the following affirmative acts of evasion: using Defendant **STILLEY**'s IOLTA account; using Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses; using cashier's checks, money orders, cash, and other means to avoid usual records and to conceal income; making false statements to agents and employees of the Internal Revenue Service; and,

9

otherwise concealing and attempting to conceal from all proper officers of the United States of America Defendant **SPRINGER**'s true and correct income.

All in violation of Title 26, United States Code, Section 7201 and Title 18, United States Code Section 2.

10

## COUNT FOUR
### [26 U.S.C. § 7201 and 18 U.S.C. § 2]

44.    General Allegations paragraphs 1 through 7 are incorporated as if fully set forth herein.

45.    From on or about January 1, 2005, and continuing to on or about January 15, 2009, within the Northern District of Oklahoma and elsewhere, Defendant **SPRINGER** had and received taxable income, and upon that taxable income there was a substantial income tax due and owing.   Well knowing and believing the foregoing facts, Defendants **SPRINGER** and **STILLEY** did willfully attempt to evade and defeat the individual income taxes due and owing by Defendant **SPRINGER** to the United States of America for the calendar year 2005, by failing to file a United States Individual Income Tax Return despite earning income of sufficient amount to require the filing of an individual income tax return, and by committing various affirmative acts of evasion. Defendant **SPRINGER** committed the following affirmative acts of evasion:  directing individuals to make checks payable to Bondage Breakers Ministry; and using a check-cashing business to cash checks. Defendants **SPRINGER** and **STILLEY** committed, and aided and abetted the commission of, the following affirmative acts of evasion:  using Defendant **STILLEY**'s IOLTA account; using Defendant **STILLEY**'s credit card to pay Defendant **SPRINGER**'s personal expenses; using cashier's checks, money orders, cash, and other means of payment to avoid usual records and to conceal income; making false statements to agents and employees of the Internal Revenue

11

Service; and, otherwise concealing and attempting to conceal from all proper officers of the

United States of America Defendant **SPRINGER**'s true and correct income.

All in violation of Title 26, United States Code, Section 7201, and Title 18, United

States Code Section 2.

12

## COUNT FIVE
### [26 U.S.C. § 7203]

46.     General Allegations paragraphs 1, 2, 5, and 6 are incorporated as if fully set forth herein.

47.     During the calendar year 2002, Defendant **SPRINGER** had and received gross income in excess of $7,700.  By reason of such gross income, he was required by law, following the close of the calendar year 2002 and on or before April 15, 2003 to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Tulsa, Oklahoma, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing all of the foregoing, he did willfully fail, on or about April 15, 2003, in the Northern District of Oklahoma and elsewhere, to make and file an income tax return.

All in violation of Title 26, United States Code, Section 7203.

13

## COUNT SIX
### [26 U.S.C. § 7203]

48.     General Allegations paragraphs 1, 2, 5 and 6 are incorporated as if fully set forth herein.

49.     During the calendar year 2004, Defendant **SPRINGER** had and received gross income totaling in excess of $15,900.  By reason of that gross income, he was required by law, following the close of the calendar year 2004 and on or before April 15, 2005 to make an income tax return to the Internal Revenue Service Center, at Austin, Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Tulsa, Oklahoma, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Well knowing and believing all of the foregoing, he did willfully fail, on or about April 15, 2005, in the Northern District of Oklahoma and elsewhere, to make and file an income tax return.

All in violation of Title 26, United States Code, Section 7203.

DAVID E. O'MEILIA
UNITED STATES ATTORNEY

CHARLES A. O'REILLY
Trial Attorney, Tax Division
United States Department of Justice

KENNETH P. SNOKE
Assistant United States Attorney

A TRUE BILL

*/s/ Grand Jury Foreperson*
Grand Jury Foreperson

14

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

**F I L E D**

MAR 1 8 2009

Phil Lombardi, Clerk
U.S. DISTRICT COURT

UNITED STATES OF AMERICA

Plaintiff,[1]

Case No. 09-CR-043 JHP

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

Defendant.

## MOTION FOR IN CAMERA REVIEW OF FIFTH AMENDMENT PROFFER

Lindsey Kent Springer ("Springer"), by limited special appearance, and not

a general appearance, request this United States District of Oklahoma Northern

Division Court, to issue an order directing Lindsey Kent Springer be given an in

camera review by said District Court Judge regarding issues related to the Fifth and

Sixth Amendment, prior to arraignment set for March 18, 2009 at 2:00 pm. Springer

is prepared to explain the exercise of his Fifth Amendment in camera for this Court

to determine whether the Fifth Amendment was properly exercised by Springer in

regard to the specific requests for information allegedly not filed by Springer at the

time or times required by law at the place or places allegedly required to be

received.

---

[1]This is subject to future debate since purportedly a Grand Jury issued the
Indictment!

1

Case 4:09-cr-43   Document 6   Filed 03/18/2009   Page 2 of 3

Respectfully Submitted

Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Motion to for In Camera Review regarding Fifth Amendment proffer was not

served on:

The United States District Attorney
for the Northern Division of
the United States District of Oklahoma,
Honorable David O'Meilia
Assistant United States Attorney Kenneth P. Snoke,
U.S. Department of Justice's Attorneys
Scott Bradford and Charles O'Reilly,
110 West 7th Street, # 300,
in the City of Tulsa,
State of Oklahoma 74119.

Signature

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

Plaintiff,[1]

$$\textbf{FILED}$$

MAR **1 8** 2009

Phil Lombardi, Clerk
U.S. DISTRICT COURT

Case No. 09-CR-043 JHP

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

Defendant.

## MEMORANDUM IN SUPPORT OF MOTION FOR IN CAMERA REVIEW OF FIFTH AMENDMENT PROFFER

The Grand Jury has alleged that Lindsey Kent Springer's purpose through Bondage Breaker's Ministries, is to "get rid of the Internal Revenue Service." There can be no doubt this purpose was from the beginning in 1992.

The Fifth Amendment by its terms prevents a person from being "compelled in any criminal case to be a witness against himself." U.S. Const., Amdt. See Mitchell v. United States, 526 U.S. 314, 327 (1999) In Garner v. United States, 424 U.S. 648, 656 (1976) the Supreme Court stated that the "information revealed in the preparation and filing of an income tax return is, for purposes of Fifth Amendment analysis, the testimony of a 'witness," as that term is used herein."

Since Garner disclosed information on his returns instead of objecting, his Fifth Amendment claim would be defeated by an application of the general

---

[1]This is subject to future debate since purportedly a Grand Jury issued the Indictment!

1

requirement that witnesses must claim the privilege. Garner resisted the application of that requirement, arguing that incriminating disclosures made in lieu of objection are "compelled" in the tax-return context. He relied specifically on three situations in which incriminatory disclosures have been considered compelled despite a failure to claim the privilege. But in each of those narrowly defined situations the protection must be claimed. In each exception the relevant factor was held to deny the individual a "free choice to admit, to deny, or to refuse to answer." Lisenba v. California, 314 U.S. 219, 241 (1941).

Garner relied on Mackey v. United States, 401 U.S. 667 (1971), the relevance of which can be understood only in light of Marchetti v. United States, 390 U.S. 39 (1968), and Grosso v. United States, 390 U.S. 62 (1968). In the latter cases the Court considered whether the Fifth Amendment was a defense in prosecutions for failure to file the returns required of gamblers in connection with the federal occupational and excise taxes on gambling. The Court found that any disclosures made in connection with the payment of those taxes tended to incriminate because of the **pervasive criminal regulation** of gambling activities. Marchetti, supra, at 48-49; Grosso, supra, at 66-67. **Since submitting a claim of privilege in lieu of the returns also would incriminate, the Court held that the privilege could be exercised by simply failing to file**.

It is clear that a witness's Fifth Amendment privilege does not exonerate him from giving testimony merely because he declares that his answers would tend to

2

be incriminating. See Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118. It is for the trial judge in the **first** instance to decide whether the witness's silence is justified and to order him to answer only if it is "perfectly clear" that the witness is mistaken and that the answers "cannot possibly" tend to incriminate. Id. at 486, 488, 71 S.Ct. at 818, 819. In making this determination the judge must liberally construe the privilege in favor of the right it was intended to secure. Id. at 486, 71 S.Ct. at 818.  United States v. Nunez, 668 F.2d 1116 (10th Cir. 1981)

Where the circumstances supporting the privilege claim are already known to the court, as they were here, there is no error in failing to hold an in camera hearing to obtain additional evidence to support the claim.See In re Brogna, 589 F.2d 24, 28 & n. 5 (1st Cir.); see also United States v. Van Deveer, 577 F.2d 1016, 1018 (5th Cir.); United States v. Harris, 542 F.2d 1283, 1298 (7th Cir.); cert. denied, 430 U.S. 934, 97 S.Ct. 1558, 51 L.Ed.2d 779.

In Malloy v. Hogan, 378 U.S. 1 (1964), the Supreme Court applied the doctrine of Fourteenth Amendment due process incorporation to the Self-Incrimination Clause, so as to bind the States as well as the National Government to recognize the privilege. Malloy, however, established that "[t]he Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement - the right of a person to **remain silent** unless he chooses to speak in the unfettered exercise of his own will, and to suffer

3

no penalty . . . for such silence." 378 U.S., at 8.  United States v. Balsys, 524 U.S. 666, 681 (1998)

After Malloy, the Fifth Amendment limitation could no longer be seen as framed for one jurisdiction alone, each jurisdiction having instead become subject to the same claim of privilege flowing from the one limitation. Since fear of prosecution in the one jurisdiction bound by the Clause now implicated the very privilege binding upon the other, the Murphy opinion sensibly recognized that if a witness could not assert the privilege in such circumstances, the witness could be "whipsawed into incriminating himself under both state and federal law even though the constitutional privilege against self-incrimination is applicable to each." 378 U.S., at 55 (internal quotation marks omitted). The whipsawing was possible owing to a feature unique to the guarantee against self-incrimination among the several Fifth Amendment privileges. Malloy, 682

The Fifth Amendment protects against compelled self-incrimination. See Baxter v. Palmigiano, 425 U.S. 308, 316-318 (1976).  See also Ohio Adult Parole Authority v. Woodard, 523 U.S. 272, 286 (1998) If answering an agency's investigatory question could expose an employee to a criminal prosecution, he may exercise his Fifth Amendment right to remain silent. See Hale v. Henkel, 201 U.S. 43, 67 (1906); United States v. Ward, 448 U.S. 242, 248 (1980); LaChance v. Erickson, 522 U.S. 262, 267 (1998)

"[P]roper invocation of the Fifth Amendment privilege against compulsory

4

self-incrimination allows a witness to remain silent, but not to swear falsely." United

States v.

Page 405 Apfelbaum, 445 U.S. 115, 117 (1980). See also United States v. Wong, 431

U.S. 174, 180 (1977); Bryson v. United States, 396 U.S. 64, 72 (1969). See also Brogan

v. United States, 522 U.S. 398, 404 (1998)

"It is clear that the accused in a criminal case is exempt from giving answers

altogether, for (at least on the prosecution's assumption) they will disclose

incriminating information that the suspect harbors." Doe v. United States, 487 U.S.

201, 219 (1988)

"Under our system society carries the burden of proving its charge against the

accused not out of his own mouth. It must establish its case, not by interrogation of

the accused even under judicial safeguards, but by evidence independently

secured through skillful investigation. `The law will not suffer a prisoner to be made

the deluded instrument of his own conviction.' 2 Hawkins, Pleas of the Crown, c. 46,

§ 34 (8th ed. 1824). The requirement of specific charges, their proof beyond a

reasonable doubt, the protection of the accused from confessions extorted

through whatever form of police pressures, the right to a prompt hearing before a

magistrate, the right to assistance of counsel, to be supplied by government when

circumstances make it necessary, the duty to advise an accused of his

constitutional rights - these are all characteristics of the accusatorial system and

manifestations of its demands." Moran v. Burbine, 475 U.S. 412, 434 (1986); quoting

5

Watts v. Indiana, 338 U.S. 49, 54 (1949):

In Miranda v. Arizona, 384 U.S. 436, 467 (1966), the Court acknowledged that "the Fifth Amendment privilege is available outside of criminal court proceedings and serves to protect persons in all settings in which their freedom of action is curtailed in any significant way from being compelled to incriminate themselves." Estelle v. Smith, 451 U.S. 454, 467 (1981)

The Fifth Amendment privilege is "as broad as the mischief against which it seeks to guard," Counselman v. Hitchcock, 142 U.S. 547, 562 (1892), and the privilege is fulfilled only when a criminal defendant is guaranteed the right "to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence." Estelle at 468

A corollary to that principle is that the claim of privilege ordinarily must be presented to a "tribunal" for evaluation at the time disclosures are initially sought. See Albertson v. SACB, 382 U.S. 70, 78-79 (1965); Vajtauer v. Commissioner of Immigration, 273 U.S., at 113; Mason v. United States, 244 U.S. 362, 364-365 (1917). This early evaluation of claims allows the Government to compel evidence if the claim is invalid or if immunity is granted and therefore assures that the Government obtains all the information to which it is entitled. In the gambling tax cases, however, making a claim of privilege when the disclosures were requested, i. e., when the returns were due, **would have identified the claimant as a gambler.** The Court therefore forgave **the usual requirement that the claim of privilege be**

6

**presented for evaluation in favor of a "claim" by silence**. See Marchetti, 390 U.S., at 50. Nonetheless, it was recognized that one who "claimed" the privilege by **refusing to file could be required subsequently to justify his claim of privilege**. See id., at 61. If a particular gambler would not have incriminated himself by filing the tax returns, the privilege would not justify a failure to file. Garner, 658-659

In Groisso v. United States, 390 U.S. 62, 70 (1968) the Supreme Court concluded "that a taxpayer may not be convicted of conspiracy to evade payment of the tax, if the constitutional privilege would properly prevent his conviction for willful failure to pay it. Cf. Marchetti v. United States, supra, at 60-61

In United States v Sullivan, 274 U.S. 259 (1927), the Supreme Court "upheld a conviction for failure to file an income tax return on the theory that "[i]f the **form of return provided** called for answers that the defendant was privileged from making he could have raised the objection in the return, **but could not on that account refuse to make any return at all**." 274 U.S., at 263. "That declaration was based on the view, first, **that a self-incrimination claim against every question on the tax return, or based on the mere submission of the return, would be virtually frivolous**, and second, that to honor the claim of privilege not asserted at the time the return was due would make the taxpayer rather than a tribunal the final arbiter of the merits of the claim." Albertson v. SACB, 382 U.S. 70, 79 (1965)

"On the other hand, we know that where the governmental scheme clearly evidences the purposes of gathering information from citizens in order to secure

7

their conviction of crime, it contravenes the privilege." Grosso at 73

An application is "filed," as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record. See, e.g., United States v. Lombardo, 241 U.S. 73, 76 (1916) ("A paper is filed when it is delivered to the proper official and by him received and filed"); Black's Law Dictionary 642 (7th ed. 1999) (defining "file" as "[t]o deliver a legal document to the court clerk or record custodian for placement into the official record"). And an application is "properly filed" when its delivery and acceptance are in compliance with the applicable laws and rules governing filings. Artuz v. Bennett, 531 U.S. 4, 8 (2000)

"The testimony of defendants' former accountant that in years prior to 1981 defendants had filed tax returns is proper evidence of willfulness in failing to file returns, United States v. Bohrer, 807 F.2d 159, 161 (10th Cir. 1986)" See U.S. v. Dawes, 874 F.2d 746 (10th Cir. 1989)

The requirement concerning the place of filing of the individual income tax returns is provided in 26 U.S.C.A. § 6091(b)(1)(A) for persons other than corporations. It prescribes the place of filing as "in the internal revenue district in which is located the legal residence or principal place of business of the person making the return. . . ." The federal statute and regulations lay down the rule as a matter of federal law. U.S. v. Taylor, 828 F.2d 630 (10th Cir. 1987)

Beginning in 1992, Lindsey Kent Springer began receiving money through the

8

name Bondage Breaker's Ministries.    With hundreds of people around in the

Country in support, Springer set out to understand why he was being led to "get rid

of the Internal Revenue Service" and convince Congress to replace such collection

agency with a system that would both recognize basic rights while achieve uniform

tax collection as its only mission.

Springer has learned so many things about the tax collection system that

most would conclude it cannot be saved.  In the process between 1992 to the

present, Springer had been made aware he was being investigated in 1997 and

was not told that investigation was concluded until  July, 2005, when the U.S.

Department of Justice served upon Springer out of case filed in Oklahoma City,

under Rule 26 disclosures, Springer's master file which demonstrated the relevant

tax code mods showing the investigation began in 1997. The Master File Springer

has is dated March 25, 2005.

Beginning in 2003, then Revenue Agent Donna Meadors,[2] was doing a 26

U.S.C. § 6700 investigation against Springer and in early 2004, she informed Springer

of this investigation.  As this Court can read by the indictment alleged in this case,

the key question is whether money given to Springer were for "services" taxable to

_____

[2]At the conclusion of this investigation in 2005, Meadors explained she had been
approved to be CI and that her application was pending at the time she began her investigation of
Springer.  Meadors never disclosed her true intentions and never read Springer any rights
involving her investigation.  Springer cooperated with her request to contact each of Springer's
supporters under the condition she would not share the information with anyone else in the
Agency and that she was not doing any criminal investigation which as Springer can now show
was not true at the time she made the revelations.

9

Springer or were they "gifts" according to 26 U.S.C. § 102.

In CIR v. Duberstein, 363 U.S. 278, 288 (1960) the Supreme Court stated "**[S]pecifically, the trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability, or of the propriety, as a matter of fiduciary or corporate law, attaching to the conduct of someone else**."

In Bogardus v. CIR, 302 U.S. 34, 40 (1937) the Supreme Court stated that if "the sum of money under consideration was a gift and not compensation, it is exempt from taxation and **cannot be made taxable by resort to any form of subclassification**. If it be in fact a gift, that is an **end of the matter**; and inquiry whether it is a gift of one sort or another is irrelevant. This is necessarily true, for since all gifts are made non-taxable, there can be no such thing under the statute as a taxable gift. **A claim that it is a gift presents the sole and simple question** whether its designation as such is genuine or fictitious - that is to say, whether, though called a gift, it is in reality compensation. To determine that question we turn to the facts, which we have already detailed." Springer submits gifts are income but that they are not reportable or calculated within a persons "gross income." That has never been in dispute.

There is no question that no matter what Springer would have said on any "candid report"

Form 1040 or 1099, as the Grand Jury alleges, any thing Springer would have

10

Case 4:09-cr-43    Document 7    Filed 03/18/2009    Page 11 of 15

placed on any such "form of return" would have offered an appreciable possibility of being used against Springer.

Not just to demonstrate some type of knowledge of the reporting requirement in general, as would communicate knowledge of the law, and any willfulness element supporting evidence, had Springer reported the "transactions" receiving money Springer maintains was presented to him as a gift, as income, and then seeking a refund claiming it was then a gift, the United States would have had a field day with any such communication or testimony given. Under their current theory advanced by the Grand Jury everything given to Springer is not a Gift no matter what. Springer would have been subject to filing a false "return" or even a "false" claim for any refund. Had Springer presented the gifts on a Form 1040 the IRS could have used that report to claim that was a false return also. There simply is no way for Springer to have reported the gifts on any promulgated form that could then have allowed the IRS to pass on the question without anything Springer saying being used against him in any criminal case.

To understand this fully, gifts are not reported by the recipient no matter what the amount.  Congress never directed and no regulation says otherwise.

Not long after Springer was told in 2005 of the evidence of the criminal investigation beginning in 1997, that Springer was aware of in 1997, Springer's Master File shows code 914, Springer was, on September 16, 2005, raided and his entire home searched including money taken and any receipts accumulating for

11

the year 2005 were in the custody of the United States. There is three cases
regarding this before this Court. 08-004, 06-156, and 05-01 Misc dealing with Rule 41
Motion. Through out an Agent Report obtained by Springer from Robert D.
Metcalfe, Trial Attorney for the U.S. Department of Justice, Agents continue to speak
about whether CI is interested in Springer.    Springer has no way of explaining why
the issues in the Grand Jury indictment took 40 months to burst but this controversy
is here now.

There is no way Springer could have submitted anything for year 2005 as
alleged in Count Four without anything being said then being used against Springer
for that year or any other year.

Springer was under criminal investigation since at least 1997. There is no way
Springer could have said anything to the United States that would not have found
its way into a claim against Springer. The three times Springer answered questions
in 2004, 2005 and 2009, by the United States, never involving any current year,
allegedly contains some "false" statement regarding whether the money told to
Springer was given as a gift. This if the evidence presented to the Grand Jury
proves false would implicate 18 U.S.C. § 201.

Springer can definitely defend those claims if they need to be defended.

There is no way Springer could have presented any information on any Form
because of the right to remain silent instead of making disclosures that could have
been used against Springer. Again, even the submission of any Form could have

12

testimonial implications as it could testify records exist, transactions occurred, and that Springer was "aware" of such information.

The fifth amendment privilege against self-incrimination[fn7] "protects a person . . . against being incriminated by his own compelled testimonial communications." Fisher v. United States, 425 U.S. 391, 409, 96 S.Ct. 1569, 1580, 48 L.Ed.2d 39 (1976). It "can be asserted in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory." Kastigar v. United States, 406 U.S. 441, 445, 92 S.Ct. 1653, 1656, 32 L.Ed.2d 212 (1972). Accordingly, a taxpayer may invoke this privilege in response to requests for information in an IRS investigation.

'The central standard for the . . . application [of the fifth amendment privilege against self-incrimination is] whether the claimant is confronted by substantial and `real', and not merely trifling or imaginary, hazards of incrimination." Marchetti v. United States, 390 U.S. 39, 53, 88 S.Ct. 697, 705, 19 L.Ed.2d 889 (1968). The privilege applies only in "instances where the witness has reasonable cause to apprehend danger" of criminal liability. Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

In United States v. LaSalle Nat'l Bank, 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), the Supreme Court examined the nature of the IRS investigatory system, and, relying in part on the legislative history of the Internal Revenue Code, concluded that the system's "criminal and civil elements are inherently intertwined."

13

Id. at 309, 98 S.Ct. at 2363. See U.S. v. Argomaniz, 925 F.2d 1349 (11th Cir. 1991); see also Mathis v. United States, 391 U.S. 1, 4, 88 S.Ct. 1503, 1505, 20 L.Ed.2d 381 (1968)("tax investigations frequently lead to criminal prosecutions.")  "The witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself - his say-so does not of itself establish the hazard of incrimination. It is for the court to say whether his silence is justified. . . ." Hoffman v. United States, 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). See also Sharp, 920 F.2d at 1170 ("Whether there is sufficient hazard of incrimination is of course a question for the courts asked to enforce the privilege.").

Springer is asking the Court to enforce his proper exercise of remaining silent during the Over 11 year criminal investigation of Springer regarding the providing of any information to the United States.  Springer can show the Court in Camera clear evidence of being under criminal investigation for 11 years by the IRS because of his mission and support garnered from the public for that mission.

The Circumstances of this controversy warrant the finding that the Fifth Amendment, as extended, protects Springer from having to answer the charges alleged against him in the charges dated March 10, 2009.

A in camera review is warranted.

Respectfully Submitted

Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

14

Case 4:09-cr-43   Document 7   Filed 03/18/2009   Page 15 of 15

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Memorandum in Support of Motion to for In Camera Review regarding Fifth

Amendment proffer was not served on:

The United States District Attorney
for the Northern Division of
the United States District of Oklahoma,
Honorable David O'Meilia
Assistant United States Attorney Kenneth P. Snoke,
U.S. Department of Justice's Attorneys
Scott Bradford and Charles O'Reilly,
110 West 7th Street, # 300,
in the City of Tulsa,
State of Oklahoma 74119.

Signature

15

FILED

MAR 1 8 2009

Phil Lombardi, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

Plaintiff,[1]

Case No. 09-CR-043 JHP

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

Defendant.

## MOTION FOR BILL OF PARTICULARS

Lindsey Kent Springer ("Springer"), by limited special appearance, and not a general appearance, request this United States District of Oklahoma Northern Division Court to direct Counsel for the 28 U.S.C. § 1861-1878 United States Policy Grand Jury pursuant to Federal Rules of Criminal Procedure 7(f) to provide certain particulars regarding the "Grand Jury charges" in its indictment dated March 10, 2009.

### THE CHARGES ALLEGED

### Violation of 18 U.S.C. § 371

Count One charges that beginning on or about January 2000 that Lindsey Kent Springer and Oscar Amos Stilley within the United States District of Oklahoma did unlawfully conspire and agreed together to "defraud the United States" by

---

[1]This is subject to future debate since purportedly a Grand Jury issued the Indictment!

1

impeding, impairing, obstructing, and defeating, the lawful government functions

of the Internal Revenue Service in their effort to ascertain, compute, assess, and

collect "federal individual income taxes."

<div align="center">Violation of 26 U.S.C. § 7201</div>

Count Two alleges that beginning in January 2000, Springer willfully

attempted to evade "income taxes due and owing" by failing to provide

information for "calender year 2000" "as required by law" and that "upon that

'taxable income' there was a substantial income tax due and owing."

Count Three alleges that beginning in January 1, 2003, Springer willfully

attempted to evade "income taxes due and owing" by failing to provide

information for "calender year 2003" "as required by law" and that "upon that

'taxable income' there was a substantial income tax due and owing."

Count Four alleges that beginning in January 1, 2005, Springer willfully

attempted to evade "income taxes due and owing" by failing to provide

information for "calender year 2005" "as required by law" and that "upon that

'taxable income' there was a substantial income tax due and owing."

<div align="center">Violation of 26 U.S.C. § 7203</div>

Count Five alleges that Springer had received "gross income" in excess of $

7,700 during the 365 days of 2002, and was "required by law" on or before April 15,

2003, to make an income tax return to the Internal Revenue Service Center at

Austin, Texas, or at Internal Revenue Service in Tulsa, Oklahoma, or as "permitted"

<div align="center">2</div>

by the Commissioner of Internal Revenue, "stating specifically the items of his gross income" and that Springer willfully failed "to make any income tax return."

Count Six alleges that Springer had received "gross income" in excess of $15,900 during the 365 days of 2004, and was "required by law" on or before April 15, 2005, to make an income tax return to the Internal Revenue Service Center at Austin, Texas, or at Internal Revenue Service in Tulsa, Oklahoma, or as "permitted" by the Commissioner of Internal Revenue, "stating specifically the items of his gross income" and that Springer willfully failed to make any income tax return."

## ELEMENTS OF CONSPIRACY

The elements of conspiracy under 18 U.S.C. § 371 are "that (1) the defendant entered into an agreement; (2) the agreement involved a violation of the law; (3) one of the members of the conspiracy committed an overt act; (4) the overt act was in furtherance of the conspiracy's object; and (5) the defendant wilfully entered the conspiracy." *United States v. Weidner*, 437 F.3d 1023, 1033 (10th Cir. 2006). U.S. v. Thompson, 518 F.3d 832 (10th Cir. 2008).

## ELEMENTS OF TAX EVASION

"[T]he elements of § 7201 are willfulness[,] the existence of a tax deficiency, . . . and an affirmative act constituting an evasion or attempted evasion of the tax." *Sansone* v. *United States*, 380 U. S. 343, 351 (1965). The Courts of Appeals have divided over whether the Government must prove the tax deficiency is "substantial," see *United States* v. *Daniels*, 387 F. 3d 636, 640-641, and n. 2 (CA7 2004) (collecting

3

cases); we do not address that issue here. See Boulware v. U.S. 128 S.Ct 1168.

" The felony offense of willfully attempting to evade taxes is the 'capstone of a system of sanctions which singly or in combination were calculated to induce prompt and forthright fulfillment of every duty under the income tax law.' Spies v. United States, 317 U.S. 492, 497, 63 S.Ct. 364, 367, 87 L.Ed. 418 (1943). To obtain a conviction for evasion, the government must prove three elements: 1) the existence of a substantial tax liability, 2) willfulness, and 3) an affirmative act constituting an evasion or attempted evasion of the tax. Sansone v. United States, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); United States v. Payne, 978 F.2d 1177, 1178 (10th Cir. 1992), cert. denied, ___ U.S. ___, 113 S.Ct. 2441, 124 L.Ed.2d 659 (1993); United States v. Swallow, 511 F.2d 514, 519 (10th Cir.), cert. denied, 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66 (1975). An affirmative act requires more than the passive failure to file a tax return; rather, it requires a positive act of commission designed to mislead or conceal. Spies, 317 U.S. at 499, 63 S.Ct. at 368; Payne, 978 F.2d at 1178. It is the requirement of an affirmative act that distinguishes the offense of evasion from the misdemeanor offense of willful failure to file a tax return. Sansone, 380 U.S. at 351, 85 S.Ct. at 1010.

### ELEMENTS OF WILLFUL FAILURE TO MAKE

Under section 7203 t"his misdemeanor requires [proof of] only willfulness and the omission of the required act." SANSONE v. UNITED STATES, 380 U.S. 343,

4

351 (1965)

## PARTICULARS REQUESTED AS TO EACH COUNT

1.      Please identify what particular land located in the City of Kellyville is within the exclusive judicial power of the United States.   See paragraph 1, pg. 1

2.      Please identify with particularity the name of any "County" or "Counties" the 28 U.S.C. § 1861-1878 Policy Grand Jury found the violation of 18 U.S.C. § 371 alleged in Count One occurred within.

3.      Please explain with particulars whether the theory of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009, is that the State of Oklahoma is in the "Northern District of Oklahoma" for Tenth Amendment powers or whether the "Northern District of Oklahoma" is in the State of Oklahoma for Tenth Amendment Powers.

4.      Please provide with particularity the specific information as to how the Grand Jury was drawn, by whom drawn or picked, how many number of persons or people made up the 28 U.S.C. § 1861-1878 Policy Grand Jury, involving the charges dated March 10, 2009, giving specifics as to the date they were summoned, the place they were summoned, and how each of their names were derived.

5.      Please identify with particularity the date and place the 28 U.S.C. § 1861-1878 Policy Grand Jury was given power to return an indictment against Lindsey K. Springer including the name of any person who empowered them.

6.      Please identify with particularity how many of the Grand Jurors were

5

registered voters and from where they were registered.

7.    Please identify with particularity each Grand Juror's political affiliation listed with their voter registration.

8.    Please identify with particularity how many Grand Jurors were drawn solely from the Driver's License List from the County of Tulsa.

9.    Please identify with particularity how many Grand Jurors were drawn from the Driver's License list of any other County, other than the County of Tulsa.

10.   Please identify the particulars of the legal description of the "place" or "places" the alleged violation of 18 U.S.C. § 371 was first found to have been completed as alleged in Count One.

11.   Please identify the particulars of the place, date and time, the alleged conspiracy in Count One was first entered into by both Lindsey Kent Springer and Oscar Amos Stilley.

12.   Please identify with particularity what is meant by the term "income" as alleged in paragraph 5 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

13.   Please identify with particularity the meaning of the term "Income" as alleged in paragraph 5 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

14.   Please identify with particularity the meaning of "earned" the Grand Jury meant with particularly the name of any person relied upon to make such

6

determination, as alleged in paragraph 5 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

15.     Please identify with particularity how the "income" was "earned" by Lindsey Kent Springer as alleged in paragraph 5 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

16.     Please identify with particularity the names of each of the persons meant by the term "individuals," as alleged in paragraph 5 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009 and whether these persons testified before the Grand Jury rendering the charges dated March 10, 2009.

17.     Please identify with particularity the   place and times of any specific individual identified in paragraph 16, being "investigated," identifying the specific federal tax violations alleged involving such individual, as alleged in paragraph 5 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

18.     Please identify with particularity the place and times of any specific individual being "prosecuted," identifying the specific federal tax violations allegedly violated, as alleged in paragraph 5 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

19.     Please  identify with particularity the specific theory of each investigation or prosecution that encompasses or is intended by the Grand Juries meaning of the

7

phrase "federal tax violations," meant as alleged in paragraph 5 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.   20.

Please identify with particularity the names of each of the persons meant by the Grand Jury alleging term "individuals," that is meant by the phrase "referred individuals to Defendant Stilley," as alleged in paragraph 5 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.   21.

Please identify with particularity the meaning of the term "filed" meant by the Grand Jury as alleged in paragraph 6 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

22.   Please identify with particularity the meaning of the term "return" as meant by the Grand Jury alleged in paragraph 6 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

23.   Please identify with particularity the meaning of the phrase "lawful government functions" meant as alleged in paragraph 6 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

24.   Please identify with particularity the meaning of the term "return" meant by the "Grand Jury" as alleged in paragraph 7 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

25.   Please identify with particularity the meaning of the term "others" meant by the Grand Jury as alleged in paragraph 9 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

8

26.    Please identify with particularity the specific provision or provisions, statute, statutes, regulation, regulations, revenue ruling, revenue rulings, revenue procedure and revenue procedures, assigning the Internal Revenue Service the  function of "ascertainment," as alleged in paragraph 9 on page 2-3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

27.    Please identify with particularity the specific provision or provisions, statute, statutes, regulation, regulations, revenue ruling, revenue rulings, revenue procedure and revenue procedures, assigning the Internal Revenue Service the  function of "computation," as alleged in paragraph 9 on page 2-3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

28.    Please identify with particularity the specific provision or provisions, statute, statutes, regulation, regulations, revenue ruling, revenue rulings, revenue procedure and revenue procedures, assigning the Internal Revenue Service the  function of "assessment," as alleged in paragraph 9 on page 2-3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

29.    Please identify with particularity the specific provision or provisions, statute, statutes, regulation, regulations, revenue ruling, revenue rulings, revenue procedure and revenue procedures, assigning the Internal Revenue Service the  function of "collection of revenue" as alleged in paragraph 9 on page 2-3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

30.    Please identify with particularity the dates, places and times, each lawful

9

function of ascertainment, computation, assessment, and collection of revenue, the Grand Jury alleges was impeded, impaired, obstructed and defeated by Lindsey K. Springer, Oscar Amos Springer, or any one known or unknown to the Grand Jury as alleged in paragraph 9 on page 2-3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009, including the names of any person "known" or "unknown."

31.     Please identify with particularity the dates and amount of "income" the Grand Jury found Lindsey Kent Springer and Oscar Amos Stilley attempted to conceal by "use of Defendant Stilley's IOLTA account" alleged in paragraph 10 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

32.     Please identify with particularity the "assets" the Grand Jury alleges Lindsey Kent Springer and Oscar Amos Stilley attempted to conceal by "use of Defendant Stilley's Iolta account" alleged in paragraph 10 on page 2 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009, describing the asset attempting to be concealed.

33.     Please identify with particularity who the Grand Jury alleges Lindsey Kent Springer and Oscar Amos Stilley attempted to conceal from by "use of Defendant Stilley's IOLTA account" alleged in paragraph 10 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

34.     Please identify with particularity the dates and amounts of each cashier's

10

check, money order or cash transaction the Grand Jury found or was presented with that Lindsey Kent Springer and Oscar Amos Stilley "use[d]" to "avoid creating the usual records of financial transactions alleged in paragraph 12 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

35. Please identify with particularity what is meant by the Grand Jury when they use the phrase "other means" alleged in paragraph 12 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

36. Please identify with particularity what the Grand Jury determined the types of "usual records of financial transactions" were that Lindsey Kent Springer and Oscar Amos Stilley should have purportedly used other than "cashier's checks, money orders, cash, or other means" or "checks" alleged in paragraph 12 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

37. Please identify with particularity what "income" the Grand Jury found probable cause to believe was "concealed" by Lindsey K. Springer and Oscar Amos Stilley's "use of cashier's checks, money orders, cash, and other means alleged in paragraph 12 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

38. Please identify with particularity who the "income" the Grand Jury concluded was "concealed" from by Lindsey K. Springer and Oscar Amos Stilley's "use of cashier's checks, money orders, cash, and other means alleged in paragraph 12 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment

11

dated March 10, 2009.

39.    Please identify with particularity each transaction of income, including dates, amounts, and the name of any person who determined or was involved in the determination, that the Grand Jury concluded each transaction of income alleged in paragraph 12 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009, was to be reported.

40.    Please identify with particularity how each transaction of income alleged in paragraph 12 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009, was specifically determined by the Grand Jury to require a report, giving description of the way the Grand Jury determined such income was to be reported and to whom it was to be reported to for each transaction.

41.    Please identify with particularity the dates, places, and times, the Grand Jury concluded  Lindsey Kent Springer and Oscar Amos Stilley, misrepresented the source of Lindsey Kent Springer's income to the Internal Revenue Service employees, the Grand Jury, and the Department of Justice.

42.    Please identify with particularity the name of every "Internal Revenue Service employee" alleged in paragraph 13 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009, that the Grand Jury determined either Lindsey Kent Springer or Oscar Amos Stilley misrepresented the "nature" of Lindsey Kent Springer's "income."

43.    Please identify with particularity the meaning of the phrase "Grand Jury"

12

alleged in paragraph 13 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009, where either Lindsey Kent Springer or Oscar Amos Stilley misrepresented the "nature" of Lindsey Kent Springer's "income."

44.     Please identify with particularity the date, place, and time, either Lindsey Kent Springer or Oscar Amos Stilley misrepresented the "nature" of Lindsey Kent Springer's "income" to any "Grand Jury" alleged in paragraph 13 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

45.     Please identify with particularity the date, place, and time, either Lindsey Kent Springer or Oscar Amos Stilley misrepresented the "nature" of Lindsey Kent Springer's "income" to "Department of Justice" alleged in paragraph 13 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

46.     Please identify with particularity what the Grand Jury means by the phrase "Department of Justice" alleged in paragraph 13 on page 3 of the 28 U.S.C. § 1861-1878 Policy Grand Jury Indictment dated March 10, 2009.

47.     Please identify with particularity the name or names of any person who represented to the 28 U.S.C. § 1861-1878 Policy Grand Jury issuing the indictment giving rise to the summons in this Case, dated March 10, 2009, to which gave their testimony that either Lindsey Kent Springer or Oscar Amos Stilley misrepresented the "nature" of Lindsey Kent Springer's "income" to the "Department of Justice."

48.     Please identify with particularity which Forms 1040 and 1099s for which transactions of "income" did the 28 U.S.C. § 1861-1878 Policy Grand Jury issuing the

13

indictment giving rise to the summons in this Case, dated March 10, 2009, determine Lindsey Kent Springer and Oscar Amos Stilley were required not to "refrain from filing" as alleged in paragraph 14, on page 3.

49.     Please identify with particularity the name or names of any "Internal Revenue Service employees" who told the Grand Jury Lindsey Kent Springer "told" them "all funds he receives are gifts and donations, that he does not have income, and that he does not provide any services for payment" as alleged in paragraph 15, pg. 4, of the 28 U.S.C. § 1861-1878 Policy Grand Jury issuing the indictment giving rise to the summons in this Case, dated March 10, 2009,

50.     Please identify with particularity the name or names of any "Internal Revenue Service employees" that told any lawfully empaneled Grand Jury Oscar Amos Stilley had "stated" "people give money to Defendant Springer for his ministry and expect no services in return" as alleged in paragraph 16, pg. 4 of the 28 U.S.C. § 1861-1878 Policy Grand Jury issuing the indictment giving rise to the summons in this Case, dated March 10, 2009.

51.     Please identify with particularity the name or names of any person or persons who stated Oscar Amos Stilley told them "people give money to Defendant Springer for his ministry and expect no services in return" as alleged in paragraph 16, pg. 4 of the 28 U.S.C. § 1861-1878 Policy Grand Jury issuing the indictment giving rise to the summons in this Case, dated March 10, 2009,

52.     Please identify with particularity how the 28 U.S.C. § 1861-1878 Policy Grand

14

Jury issuing the indictment giving rise to the summons in this Case, dated March 10, 2009, was presented with the statements of Oscar Amos Stilly dated March 9, 2006, that "Lindsey Springer does not charge for his services," or "any money paid, given, transferred, or provided to Lindsey Springer for any purpose" as alleged by the Grand Jury in paragraph 17, pg. 4.

53.      Please identify with particularity the name of the payor and payee of the "check for $ 112,500," the date on said check, which particular bank it was drawn, including the specific location of the bank and any other identifying information thereon, as alleged in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009, in paragraph 18, pg. 4.

54.      Please identify with particularity what the Grand Jury means by using the term "IOLTA", by whom the Grand Jury received this information, giving dates, names, and times, as this term is used by the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

55.      Please identify with particularity the description of the transaction totaling $375,059.90, including where the Grand Jury determined this transaction came from, who the Grand Jury found this transaction was to or for, and how the Grand Jury determined it was received into Stilley's IOLTA account, as alleged in paragraph 23, page 5, of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

56.      Please identify with particularity the name of the "third party" alleged in

15

Case 4:09-cr-43   Document 8   Filed 03/18/2009   Page 16 of 26

paragraph 26, page 5, of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

57.    Please identify with particularity the name the check for $ 175,000 was from, the bank it was drawn, including the location of the bank and any other identifying information made available to the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009, as alleged in paragraph 37, pg. 7.

58.    Please identify with particularity the names of any person whom Lindsey K. Springer "represented" that he "earned **no income** and that the money he received was given 'without any expectation for anything from anybody'" as alleged in paragraph 39, pg. 7 by the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

59.    Please identify with particularity the names of any person who testified directly or indirectly to the Grand Jury issuing the March 10, 2009, indictment in this case that either the Grand Jury or the United States or any other Government Agency, State of Federal, offered concessions, for such testimony.

60.    Please identify with particularity the name of any person or persons, each who testified before the Grand Jury issuing the indictment dated March 10, 2009, who offered their testimony in exchange for immunity or any other concessions given them including any "benefit" lawfully entered into between them and the Grand Jury issuing the charges in this case.

16

61. Please identify with particularity the name of any person or persons, each who gave testimony to any person who testified before the Grand Jury issuing the indictment dated March 10, 2009, whose words were made available in exchange for immunity or any other concessions given them including any "benefit" or lawfully entered into agreement between each such person and the sovereign representing the Grand Jury claims in the March 10, 2009 charges.

62. Please identify with particularity the meaning or identity of the phrase "Individual Income Tax Return" the Grand Jury alleges in paragraph 41, 43, and 45, that they allege Lindsey Kent Springer was "required by law" to "file."

63. Please identify with particularity the meaning or identity of the phrase "Income Tax Return" alleged in paragraph 47 and 49, of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009, that Lindsey Kent Springer was "required by law" to "make."

64. Please identify with particularity what is meant by the Grand Jury in paragraph 41,43,45,47, and 49, by the meaning of the phrase "required by law" with specific citation to any such law relied upon by the Grand Jury in making such allegations as alleged in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009,.

65. Please identify with particularity what the Grand Jury means with specific names, places, dates and times, if made available to them, regarding the "affirmative acts of evasion" listed in Count Two the persons Lindsey Kent Springer

17

is alleged to have directed "to write 'donation' or 'gift' on checks that were payment for services" as alleged in paragraph 41, page 8, of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

66.   Please identify with particularity what the Grand Jury means with specific names, places, dates and times, if made available to them, regarding the "affirmative acts of evasion" listed in Count Two the person or persons Lindsey Kent Springer is alleged to have directed "to pay for services by cashier's check" alleged in paragraph 41, page 8, of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

67.   Please identify with particularity what the Grand Jury means by the phrase "usual records of financial transactions" alleged in Count Two, paragraph 41, page 8, Count Three, paragraph 43, page 9, Count Four, paragraph 45, page 11, of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

68.   Please identify with particularity the names of the "agents and employees of the Internal Revenue Service" alleged that Lindsey Kent Springer made "false statements" to, as stated in Count Two, paragraph 41, page 8, Count Three, paragraph 43, page 9, Count Four, paragraph 45, page 11, in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

18

69.    Please identify with particularity the dates, places, and times the "false statements" were made by Lindsey Kent Springer,  as stated in Count Two, paragraph 41, page 8, Count Three, paragraph 43, page 9, Count Four, paragraph 45, page 11, in  the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

70.    Please identify with particularity each material false statement the Grand Jury found Lindsey Kent Springer made, including how that statement was material, as stated in Count Two, paragraph 41, page 8, Count Three, paragraph 43, page 9, Count Four, paragraph 45, page 11, in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

71.    Please identify with particularity the meaning of the phrase "otherwise concealing" as stated Count Two, paragraph 41, page 8, Count Three, paragraph 43, page 9, Count Four, paragraph 45, page 11, , the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009, and state specifically any such act, the date of the act, who was involved in the concealing act, and who was concealed from by the act or acts itself.

72.    Please identify with particularity the meaning of the phrase "attempting to conceal" as stated Count Two, paragraph 41, page 8, Count Three, paragraph 43, page 9, Count Four, paragraph 45, page 11, in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009, and state specifically any such attempted act, the date of the attempted

19

act, who was involved in the attempted concealing act, and who was concealed from by the attempted act or acts itself.

73.    Please identify with particularity the meaning of the phrase "proper officer of the United States of America" as stated in Count Two, paragraph 41, page 8, Count Three, paragraph 43, page 9, Count Four, paragraph 45, page 11, in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009, and state specifically the name of any such proper officer, their location, including job description and where they can be served with subpoena, with disclosure as to whether that person testified before the March 10, 2009 Grand Jury or at any other time prior to March 10, 2009.

74.    Please identify with particularity what the Grand Jury means with specific names, places, dates and times, if made available to them, regarding the "affirmative acts of evasion" listed in Count Three the persons Lindsey Kent Springer is alleged to have directed "individuals to make checks payable to Bondage Breaker's Ministry" alleged in paragraph 43, page 9, and paragraph 45, at page 11, of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

75.    Please identify with particularity what the Grand Jury means with specific names, places, dates and times, if made available to them, regarding the "affirmative acts of evasion" listed in Count Three in paragraph 43, page 9, and Count Four in paragraph 45, page 11, regarding each use of "Defendant Stilley's

20

IOLTA account" alleged of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

76. Please identify with particularity the date, place, time and description, of each transaction by Lindsey Kent Springer and Oscar Amos Stilley of any "cashier's checks, money orders, cash, and other means" the Grand Jury alleges in Count Three at paragraph 43, page 9, and Count Four at paragraph 45, page 11, of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

77. Please identify with particularity the names of the "agents and employees of the Internal Revenue Service" alleged that Lindsey Kent Springer made "false statements" to, as stated in Count Three at paragraph 43, page 9, and Count Four at paragraph 45, page 11, in  the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

78. Please identify with particularity the dates, places, and times the "false statements" were made, by Lindsey Kent Springer,  as stated in Count Three in paragraph 43, page 9, and in Count Four at paragraph 45, page 11, in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

79. Please identify with particularity each material false statement the Grand Jury found Lindsey Kent Springer made, including how that statement was material, as stated in Count Three at paragraph 43, page 9, and Count Four at paragraph

21

45, page 11, in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

80.    Please identify with particularity the meaning of the phrase "otherwise concealing" as stated Count Three at paragraph 43, page 10, and Count Four at paragraph 45, page 12, in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009, and state specifically any such act, the date of the act, who was involved in the concealing act, and who was concealed from by the act or acts itself.

81.    Please identify with particularity the meaning of the phrase "attempting to conceal" as stated in Count Three, in paragraph 43, page 10, and Count Four, in paragraph 45, page 12, in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009, and state specifically any such attempted act, the date of the attempted act, who the Grand Jury found probable cause to believe was involved in the attempted concealing act, and who the Grand Jury found probable cause to believe was concealed from by the attempted act or acts of concealment.

82.    Please identify with particularity the meaning of the phrase "proper officer of the United States of America" as stated in Count Three, in paragraph 43, page 10, and Count Four, in paragraph 45, page 12, of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009, and state specifically the name of any such proper officer, their location,

22

including job description and where they can be served with subpoena, with disclosure as to whether that person testified before the March 10, 2009 Grand Jury or at any other time prior to March 10, 2009.

83.    Please identify with particularity the significance of the phrase "in excess of $7,700" as alleged in Count Five, paragraph 47, at page 13, and "totaling in excess of $15,900" in Count Six, relevant to the violation of 26 U.S.C. § 7203, including how that theory and amount were derived by the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

84.    Please identify with particularity which provision or provisions of the Internal Revenue Code were relied upon to find probable cause to believe Lindsey Kent Springer was required to "make an income tax return to the Internal Revenue Service Center, at Austin Texas, to a person assigned to receive returns at the local office of the Internal Revenue Service at Tulsa, Oklahoma, or to another Internal Revenue Service office permitted by the Commissioner of Internal Revenue, stating specifically the items of gross income and any deductions and credits to which he was entitled" alleged in Count Five and Six of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

85.    Please identify with particularity what the Grand Jury means by "required by law" in Count Five and Six, including any citation to any specific law they were presented in finding probable cause to allege such phrase as well as the person

23

or persons who testified specifically about these laws before the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

86.    Please identify with particularity what the Grand Jury means by "elsewhere" in Count Five and Six of the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009.

87.    Please identify with particularity the meaning of the term or phrases "income," "earned income," "individual income," "any income," "taxable income," "gross income," "true... income," "correct income," "funds," "earned," and "adjusted gross income" as used in each Count interchangeably in the 28 U.S.C. § 1861-1878 Policy Grand Jury indictment giving rise to the summons in this Case, dated March 10, 2009, including the name of any person who tendered such meaning of such terms to said Grand Jury and any specific provision of law relied upon to support finding probable cause to make such allegations against Lindsey Kent Springer.

88.    Please identify with particularity the territorial description of the place the Grand Jury found probable cause to believe each of the completed alleged crimes in their indictment were committed pursuant to 18 U.S.C. § 5, in an "internal revenue district" within the United States District of Oklahoma, Northern Division as created at 28 U.S.C. § 116.

89.    Please identify with particularity the name of the District Director the Grand

24

Case 4:09-cr-43    Document 8    Filed 03/18/2009    Page 25 of 26

Jury found probable cause to believe occupied the District Director's Office existing

for the internal revenue district encompassing the legal residence of Lindsey Kent

Springer for the calender year 2000, 2002, 2003, 2004 and 2005.


Lindsey Kent Springer reserves the right to amend this Motion in the event the

information provided warrants such amendment.

Respectfully Submitted

Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

25

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Motion for Bill of Particulars was served on March 18, 2009, to:

The United States District Attorney
for the Northern Division of
the United States District of Oklahoma,
Honorable David O'Meilia
Assistant United States Attorney Kenneth P. Snoke,
U.S. Department of Justice's Attorneys
Scott Bradford and Charles O'Reilly,
110 West 7th Street, # 300,
in the City of Tulsa,
State of Oklahoma 74119.

Signature

26

```
MIME-Version:1.0
From:CM-ECFMail_OKND@oknd.uscourts.gov
To:cmecf@okndlei.oknd.circ10.dcn
Bcc:cm-ecfIntake_oknd@oknd.uscourts.gov, INTAKEPSR_OKNP@oknd.uscourts.gov,
kathie.hall@usdoj.gov, ken.snoke@usdoj.gov
Message-Id:<828872@oknd.uscourts.gov>
Subject:Activity in Case 4:09-cr-00043-CLK USA v. Springer et al Order
```
Content-Type: text/html

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.'**

### U.S. District Court

### U.S. District Court for the Northern District of Oklahoma

#### Notice of Electronic Filing

The following transaction was entered on 3/18/2009 at 1:12 PM CDT and filed on 3/18/2009
**Case Name:**        USA v. Springer et al
**Case Number:**     4:09-cr-43
**Filer:**
**Document Number:** 9(No document attached)

**Docket Text:**
**MINUTE ORDER** *by Judge Payne, due to Court conflict,* **recusing Judge James H Payne,** *this case is hereby returned to the Court Clerk for further reassignment,* **Court Clerk reassigned to case as to Lindsey Kent Springer, Oscar Amos Stilley (pll, Dpty Clk)**

**4:09-cr-43-1 Notice has been electronically mailed to:**

Kenneth P Snoke      ken.snoke@usdoj.gov, kathie.hall@usdoj.gov

**4:09-cr-43-1 Notice has not been electronically mailed to:**

Charles A O'Reilly
US Dept of Justice
PO Box 972
Washington, DC 20044

**4:09-cr-43-2 Notice has been electronically mailed to:**

Kenneth P Snoke      ken.snoke@usdoj.gov, kathie.hall@usdoj.gov

Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 126

**4:09-cr-43-2 Notice has not been electronically mailed to:**

Charles A O'Reilly
US Dept of Justice
PO Box 972
Washington, DC 20044

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

United States of America,

       Plaintiff,

vs.                                  Case No. 09-cr-43-CLK

Lindsey Kent Springer,

       Defendant.

### ORDER APPOINTING COUNSEL

       Defendant has completed an affidavit as to his/her financial ability to employ counsel. Upon review, the Court finds that Defendant is financially unable to obtain counsel. In accordance with the Northern District of Oklahoma Plan for Implementing the Criminal Justice Act of 1984, the Court finds and orders as follows:

\_\_    _____, the Federal Public Defender is appointed to represent Defendant in all further proceedings until relieved by order of the Court.

\_\_    _____, an attorney from the Court's panel of private attorneys, established pursuant to the Criminal Justice Act for the Northern District of Oklahoma, is appointed to represent Defendant in all further proceedings until relieved by order of the Court.

\_\_    the Court finds that Defendant has the financial ability to make regular, periodic payments to reimburse the government for the reasonable costs of providing Defendant with representation. The Court hereby ORDERS that the defendant pay to the Clerk of the Court $_____ per month, on or before the 15th day of each month, continuing until the government has been fully reimbursed for all reasonable costs of providing representation to Defendant, or until further order of the Court.

\_\_    Defendant will reimburse the government for the reasonable cost of providing representation in accordance with his/her ability to pay as determined by further order of the court.

✓    ~~The~~ Robert Williams, CJA, is temporarily appointed to represent the above-named defendant for purposes of initial appearance only.

Date: March 18, 2009

Paul J. Cleary
United States Magistrate Judge

Order Appointing Counsel                                      CR-20 (10/06)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

United States of America,

        Plaintiff,

vs.                                  Case No. 09-cr-43-**CLK**

Lindsey Kent Springer,

        Defendant.

## ORDER SETTING CONDITIONS OF RELEASE

**IT IS ORDERED** that Defendant's release is subject to the following conditions:

(1)    Defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)    Defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing of any change in address and telephone number.

(3)    Defendant shall appear at all proceedings as required and shall surrender as directed for service of any sentence imposed. Defendant shall next appear at (if blank, you will be notified):

    Place:
    On:       at
    Before:

## RELEASE ON PERSONAL RECOGNIZANCE OR UNSECURED BOND

**IT IS FURTHER ORDERED** that the Defendant be released provided that:

(X)    (4)    Defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

(X)    (5)    Defendant executes a Unsecured bond binding Defendant to pay the United States the sum of Ten Thousand Dollars ($10,000) in the event of a failure to appear as required, or to surrender as directed for service of any sentence imposed.

## ADDITIONAL CONDITIONS OF RELEASE

Upon finding that release by one of the above methods will not by itself reasonably assure Defendant's appearance and the safety of other persons in the community, it is **FURTHER ORDERED** that Defendant's release is subject to the conditions marked below:

( )   (6)   The defendant is placed in the custody of:
              Name:
              Address:
              Phone:

who agrees (a) to supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Signed:       _____
                  Custodian or Proxy

(X)   (7)   **DEFENDANT WILL:**
(X)   (a)   report as directed by the U.S. Probation Office.
(X)   (b)   abide by the following travel restrictions: Travel is restricted to the Northern District of Oklahoma unless permission to travel outside that district is granted in advance from the U.S. Probation Office.
              (X) to include: Western District Oklahoma & KY, TX, Wash, DC for Depos.
(X)   (c)   allow the U.S. Probation Officer to visit the home, place of work, or any place deemed necessary to ensure the conditions of release are not violated.
( )   (d)   successfully participate in a program of testing and treatment (to include inpatient if necessary) for drug and alcohol abuse, as directed by the U.S. Probation Office. If a positive urinalysis occurs while on pretrial release, Defendant shall immediately surrender his/her driver's license to the U.S. Probation Office and Defendant shall not drive until reinstatement is ordered by a judicial officer.
( )   (e)   no alcohol use.
( )   (f)   not use or unlawfully possess a narcotic drug and other controlled substances unless prescribed by a medical practitioner.
( )   (g)   at the discretion of the U.S. Probation Office, successfully participate in a program of medical and/or mental health treatment (to include inpatient if necessary).
(X)   (h)   surrender any passport within (3) three working days and obtain no new passport.
( )   (i)   not possess a firearm, destructive device, or other dangerous weapon.
( )   (j)   successfully participate in the Home Confinement Program to include electronic monitoring. The entire cost of the program will be paid by the Defendant/U.S. Probation Office. Defendant may be removed from electronic monitoring, and be required to successfully participate in an inpatient substance abuse treatment program, at the discretion of the U.S. Probation Office. Upon completion, Defendant will be placed back on the Home Confinement Program.

( )   (k)   avoid contact with the following named persons:
             _____

(X)   (l)   maintain or actively seek employment.
( )   (m)   advise any possible third parties who may be at risk because of your past criminal conviction(s) and/or the charged offense.
( )   (n)   abide by the current conditions of supervision.

Order Setting Conditions of Release        -- 2 --        AO-199 Modified (9/07)

( )    (o)    execute a bond or an agreement to forfeit, upon failing to appear as required, the following sum of money or designated property:

_____

(X)    (p)    **FINANCIAL CONDITIONS:**

(X)    (1)    disclose any and all financial information and business records, to include execution of a Release of Financial Information form, as requested by the U.S. Probation Officer.

( )    (2)    not work directly or indirectly in any business, profession, or self-employment engaged in the offer, sale, purchase, trade, brokering, solicitation, or similar transaction of any real property, security or negotiable instrument, or the acquisition of any loan or appropriation or liquidation of any asset for another person or business.

( )    (3)    Not engage in telemarketing activities, to include any telephone sales or a solicitation-related business, campaign, venture, or transaction.

(X)    (4)    not make application for any loan or enter into any new credit arrangement, without first consulting the U.S. Probation Office.

(X)    (5)    not transfer, sell, give away, or otherwise convey any asset, without first consulting the U.S. Probation Office.

( )    (6)    not engage in any form of employment which would allow access to financial information, to include the following: personal identifiers, credit accounts, bank accounts of any individual, business, or other entity.

( )    (q)    **SPECIAL SEX OFFENDER CONDITIONS:**

( )    (1)    register as a sex offender in accordance with state law in the county of residence and provide verification to the U.S. Probation Office.

( )    (2)    participate in sex offender and/or mental health treatment as directed by the U.S. Probation Office, including submission to risk assessment and psychological testing. Assessment and treatment are to be conducted by a therapist approved in advance by the U.S. Probation Office.

( )    (3)    have no contact with children under the age of eighteen (18) without prior written permission of the U.S. Probation Office. Any unauthorized contact will be reported to the U.S. Probation office immediately.

( )    (4)    not engage in any occupation, business, or profession where you have access to children under the age of eighteen (18), unless written approval is received in advance by the U.S. Probation Office.

( )    (5)    not loiter within one-hundred (100) feet of schools, parks, playgrounds, arcades, or other places frequented by children under the age of eighteen (18).

( )    (6)    not possess sexually stimulating or sexually oriented material as deemed inappropriate by the U.S. Probation Office, or patronize any place where such material and entertainment is available.

( )    (7)    not enter the premises or loiter near where the victim resides, is employed, or frequents, except under circumstances approved in advance by the U.S. Probation Office.

( )    (8)    not subscribe to or use any Internet services. Any existing Internet services shall be terminated immediately and documentation provided within two weeks. Phone bills and service agreements shall be provided upon request of the U.S. Probation Office.

( )    (9)    The defendant shall, at the discretion of the U.S. Probation Officer, cooperate with and submit to the collection of a DNA sample for the submission to the combined DNA Index System.

( )    (r)    **SPECIAL COMPUTER RESTRICTION AND MONITORING CONDITIONS:**

( )    (1)    The defendant shall disclose all e-mail accounts, Internet connections and Internet connection devices, including screen names and passwords, to the U.S. Probation

Officer. The defendant shall immediately advise the U.S. Probation Officer of any changes in his or her e-mail accounts connections, devises, or password.

( )    (2)    If instructed by the U.S. Probation Officer, the defendant shall refrain from using e-mail, an internet connection, or an Internet connection device. The U.S. Probation Officer shall have authority to monitor all computer activity, to include all e-mail or Internet connections, to include but not limited to installation of remote computer monitoring software. Unless waived by the U.S. Probation Officer, the cost of the remote computer monitoring software shall be paid by the defendant.

( )    (3)    The defendant shall not access any on-line service using an alias, or access any on-line service using the Internet account, name, or designation of another person or entity. The defendant will report immediately to the U.S. Probation Officer access to any Internet site containing prohibited material.

( )    (4)    The defendant is prohibited from altering or using any form of encryption, cryptography, stenography, compression, password-protected files or other methods that limit access to, or change the appearance of data and/or images.

( )    (5)    The defendant is prohibited from altering or destroying records of computer use, including the use of computer software or functions designed to alter, clean or "wipe" computer media, block computer monitoring software, or restore a computer to a previous state.

( )    (6)    If instructed, the defendant shall provide all personal and business telephone phone records and all credit card statements to the U.S. Probation Officer.

( )    (s)    You are prohibited from engaging, directly or indirectly, in any form of gambling or game of chance. You shall not loiter about or enter any dwelling or enterprise whose principal business purpose is gambling or the offering of games of chance. You shall, at the discretion of the U.S. Probation Officer, successfully participate in a program of mental health treatment, to include but not limited to a program for the treatment of gambling addiction.

( )    (t)    **OTHER:**

## ADVISE OF PENALTIES AND SANCTIONS

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for Defendant's arrest, a revocation of release, an order of detention as provided in 18 U.S.C. § 3148, and a prosecution for contempt as provided in 18 U.S.C. § 401 which could result in a possible term of imprisonment or a fine. The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not less than two years nor more than ten years, if the offense is a felony; or a term of imprisonment of not less than ninety days nor more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

18 U.S.C. § 1503 makes it a criminal offense, punishable by up to five years of imprisonment and a \$250,000 fine, to intimidate or attempt to intimidate a witness, juror or officer of the court. 18 U.S.C. § 1510 makes it a criminal offense, punishable by up to five years of imprisonment and a \$250,000 fine, to obstruct a criminal investigation. 18 U.S.C. §1512 makes it a criminal offense, punishable by up to ten years of imprisonment and a \$250,000 fine, to tamper with a witness, victim or informant. 18 U.S.C. § 1513 makes it a criminal offense, punishable by up to ten years of imprisonment and a \$250,000 fine, to retaliate against a witness, victim or informant, or threaten or attempt to do so. It is a criminal offense under 18 U.S.C. § 3146, if after having been released, Defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If Defendant is released in connection with a charge of, or while awaiting sentencing, surrender for the service of a sentence, or appeal or *certiorari* after conviction, for:

(1)     an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen
        years or more, Defendant shall be fined not more than $250,000 or imprisoned for not more
        than ten years, or both;

(2)     an offense punishable by imprisonment for a term of five years or more, but less than fifteen
        years, Defendant shall be fined not more than $250,000 or imprisoned for not more than five
        years, or both;

(3)     any other felony, Defendant shall be fined not more than $250,000 or imprisoned not more
        than two years, or both;

(4)     a misdemeanor, Defendant shall be fined not more than $100,000 or imprisoned not more
        than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of
imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail
posted.

## ACKNOWLEDGMENT OF DEFENDANT

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release.
I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence
imposed. I am aware of the penalties and sanctions set forth above.

Lindsey Kent Springer
Tulsa, OK

## DIRECTIONS TO UNITED STATES MARSHAL

(X)     Defendant is **ORDERED** released after processing.

( )     The United States Marshal is **ORDERED** to keep Defendant in custody until notified by the
        clerk or a judicial officer that Defendant has posted bond and/or complied with all other
        conditions for release. Defendant shall be produced before the appropriate judicial officer
        at the time and place specified, if still in custody.

Date:

Paul J. Cleary
United States Magistrate Judge

Order Setting Conditions of Release          -- 5 --          AO-199 Modified (5/07)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

United States of America,

      Plaintiff,

vs.                      Case No. 09-cr-43-**CLK**

Lindsey Kent Springer,

      Defendant.

### APPEARANCE BOND

    Non-surety:    I, the undersigned Defendant acknowledge that I and my . . .

    Surety:  We, the undersigned, jointly and severally acknowledge that we and our . . .

personal representatives, jointly and severally, are bound to pay to the United States of America the sum of $~~10,000~~ 5,000, and there has been deposited in the Registry of the court the sum of $ in cash or .

      The conditions of this bond are that Defendant is to appear before this court, and at such other places as Defendant may be required to appear, in accordance with any and all orders and directions relating to Defendant's appearance in this case, including appearance for violation of a condition of Defendant's release as may be ordered or notified by this Court or any other United States District Court to which Defendant may be held to answer or the cause transferred. Defendant shall abide by any judgment entered in such a matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment.

      It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which shall continue until such time as the undersigned are exonerated.

      If Defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this bond, this bond is to be void, but if Defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith. Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach and, if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment maybe entered upon motion in such United States District Court against each the undersigned jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other laws of the United States.

Lindsey Kent Springer
Tulsa, OK

Surety's Signature: _____

Surety's Address: _____

    _____

Surety's Phone #: _____

Paul J. Cleary
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

United States of America,

      Plaintiff,

vs.                                     Case No. 09-cr-43-CLK

Oscar Amos Stilley,

      Defendant.

### ORDER APPOINTING COUNSEL

Defendant has completed an affidavit as to his/her financial ability to employ counsel. Upon review, the Court finds that Defendant is financially unable to obtain counsel. In accordance with the Northern District of Oklahoma Plan for Implementing the Criminal Justice Act of 1984, the Court finds and orders as follows:

\_\_\_  _____, the Federal Public Defender is appointed to represent Defendant in all further proceedings until relieved by order of the Court.

\_\_\_  _____, an attorney from the Court's panel of private attorneys, established pursuant to the Criminal Justice Act for the Northern District of Oklahoma, is appointed to represent Defendant in all further proceedings until relieved by order of the Court.

\_\_\_  the Court finds that Defendant has the financial ability to make regular, periodic payments to reimburse the government for the reasonable costs of providing Defendant with representation. The Court hereby ORDERS that the defendant pay to the Clerk of the Court $_____ per month, on or before the 15th day of each month, continuing until the government has been fully reimbursed for all reasonable costs of providing representation to Defendant, or until further order of the Court.

\_\_\_  Defendant will reimburse the government for the reasonable cost of providing representation in accordance with his/her ability to pay as determined by further order of the court.

✓  Terry Weber, CJA, is temporarily appointed to represent the above-named defendant for purposes of initial appearance only.

Date: March 18, 2009

Paul J. Cleary
United States Magistrate Judge

Order Appointing Counsel                                     CR-20 (10/06)

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

United States of America,

      Plaintiff,

vs.                                     Case No. 09-cr-43-CLK

Oscar Amos Stilley,

      Defendant.

## ORDER SETTING CONDITIONS OF RELEASE

**IT IS ORDERED** that Defendant's release is subject to the following conditions:

(1)    Defendant shall not commit any offense in violation of federal, state or local law while on release in this case.

(2)    Defendant shall immediately advise the court, defense counsel and the U.S. attorney in writing of any change in address and telephone number.

(3)    Defendant shall appear at all proceedings as required and shall surrender as directed for service of any sentence imposed. Defendant shall next appear at (if blank, you will be notified):

    Place:
    On:       at
    Before:

## RELEASE ON PERSONAL RECOGNIZANCE OR UNSECURED BOND

**IT IS FURTHER ORDERED** that the Defendant be released provided that:

(X)    (4)    Defendant promises to appear at all proceedings as required and to surrender for service of any sentence imposed.

(X)    (5)    Defendant executes a Unsecured bond binding Defendant to pay the United States the sum of Ten Thousand Dollars ($10,000) in the event of a failure to appear as required, or to surrender as directed for service of any sentence imposed.

## ADDITIONAL CONDITIONS OF RELEASE

Upon finding that release by one of the above methods will not by itself reasonably assure Defendant's appearance and the safety of other persons in the community, it is **FURTHER ORDERED** that Defendant's release is subject to the conditions marked below:

( )    (6)    The defendant is placed in the custody of:
                Name:
                Address:
                Phone:

who agrees (a) to supervise the defendant in accordance with all conditions of release, (b) to use every effort to assure the appearance of the defendant at all scheduled court proceedings, and (c) to notify the court immediately in the event the defendant violates any conditions of release or disappears.

Signed: _____
                    Custodian or Proxy

(X)    (7)    **DEFENDANT WILL:**

(X)    (a)    report as directed by the U.S. Probation Office.

(X)    (b)    abide by the following travel restrictions: Travel is restricted to the Northern District of Oklahoma unless permission to travel outside that district is granted in advance from the U.S. Probation Office.
                (X) to include: **Western & Eastern District of Arkansas**

(X)    (c)    allow the U.S. Probation Officer to visit the home, place of work, or any place deemed necessary to ensure the conditions of release are not violated.

( )    (d)    successfully participate in a program of testing and treatment (to include inpatient if necessary) for drug and alcohol abuse, as directed by the U.S. Probation Office. If a positive urinalysis occurs while on pretrial release, Defendant shall immediately surrender his/her driver's license to the U.S. Probation Office and Defendant shall not drive until reinstatement is ordered by a judicial officer.

( )    (e)    no alcohol use.

( )    (f)    not use or unlawfully possess a narcotic drug and other controlled substances unless prescribed by a medical practitioner.

( )    (g)    at the discretion of the U.S. Probation Office, successfully participate in a program of medical and/or mental health treatment (to include inpatient if necessary).

(X)    (h)    surrender any passport within (3) three working days and obtain no new passport.

( )    (i)    not possess a firearm, destructive device, or other dangerous weapon.

( )    (j)    successfully participate in the Home Confinement Program to include electronic monitoring. The entire cost of the program will be paid by the Defendant/U.S. Probation Office. Defendant may be removed from electronic monitoring, and be required to successfully participate in an inpatient substance abuse treatment program, at the discretion of the U.S. Probation Office. Upon completion, Defendant will be placed back on the Home Confinement Program.

( )    (k)    avoid contact with the following named persons: _____

(X)    (l)    maintain or actively seek employment.

( )    (m)    advise any possible third parties who may be at risk because of your past criminal conviction(s) and/or the charged offense.

( )    (n)    abide by the current conditions of supervision.

|       |       |                                                                                                                                                                                                                                                           |
|-------|-------|-----------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
| ( )   | (o)   | execute a bond or an agreement to forfeit, upon failing to appear as required, the following sum of money or designated property:                                                                                                                         |

<br>

**(X)  (p)  FINANCIAL CONDITIONS:**

| (X) | (1) | disclose any and all financial information and business records, to include execution of a Release of Financial Information form, as requested by the U.S. Probation Officer. |
|-----|-----|---|
| ( ) | (2) | not work directly or indirectly in any business, profession, or self-employment engaged in the offer, sale, purchase, trade, brokering, solicitation, or similar transaction of any real property, security or negotiable instrument, or the acquisition of any loan or appropriation or liquidation of any asset for another person or business. |
| ( ) | (3) | Not engage in telemarketing activities, to include any telephone sales or a solicitation-related business, campaign, venture, or transaction. |
| (X) | (4) | not make application for any loan or enter into any new credit arrangement, without first consulting the U.S. Probation Office. |
| (X) | (5) | not transfer, sell, give away, or otherwise convey any asset, without first consulting the U.S. Probation Office. |
| ( ) | (6) | not engage in any form of employment which would allow access to financial information, to include the following: personal identifiers, credit accounts, bank accounts of any individual, business, or other entity. |

**( )  (q)  SPECIAL SEX OFFENDER CONDITIONS:**

| ( ) | (1) | register as a sex offender in accordance with state law in the county of residence and provide verification to the U.S. Probation Office. |
|-----|-----|---|
| ( ) | (2) | participate in sex offender and/or mental health treatment as directed by the U.S. Probation Office, including submission to risk assessment and psychological testing. Assessment and treatment are to be conducted by a therapist approved in advance by the U.S. Probation Office. |
| ( ) | (3) | have no contact with children under the age of eighteen (18) without prior written permission of the U.S. Probation Office. Any unauthorized contact will be reported to the U.S. Probation office immediately. |
| ( ) | (4) | not engage in any occupation, business, or profession where you have access to children under the age of eighteen (18), unless written approval is received in advance by the U.S. Probation Office. |
| ( ) | (5) | not loiter within one-hundred (100) feet of schools, parks, playgrounds, arcades, or other places frequented by children under the age of eighteen (18). |
| ( ) | (6) | not possess sexually stimulating or sexually oriented material as deemed inappropriate by the U.S. Probation Office, or patronize any place where such material and entertainment is available. |
| ( ) | (7) | not enter the premises or loiter near where the victim resides, is employed, or frequents, except under circumstances approved in advance by the U.S. Probation Office. |
| ( ) | (8) | not subscribe to or use any Internet services. Any existing Internet services shall be terminated immediately and documentation provided within two weeks. Phone bills and service agreements shall be provided upon request of the U.S. Probation Office. |
| ( ) | (9) | The defendant shall, at the discretion of the U.S. Probation Officer, cooperate with and submit to the collection of a DNA sample for the submission to the combined DNA Index System. |

**( )  (r)  SPECIAL COMPUTER RESTRICTION AND MONITORING CONDITIONS:**

| ( ) | (1) | The defendant shall disclose all e-mail accounts, Internet connections and Internet connection devices, including screen names and passwords, to the U.S. Probation |
|-----|-----|---|

Order Setting Conditions of Release          -- 3 --          AO-199 Modified (9/07)

Officer. The defendant shall immediately advise the U.S. Probation Officer of any changes in his or her e-mail accounts connections, devises, or password.

( )    (2)    If instructed by the U.S. Probation Officer, the defendant shall refrain from using e-mail, an internet connection, or an Internet connection device. The U.S. Probation Officer shall have authority to monitor all computer activity, to include all e-mail or Internet connections, to include but not limited to installation of remote computer monitoring software. Unless waived by the U.S. Probation Officer, the cost of the remote computer monitoring software shall be paid by the defendant.

( )    (3)    The defendant shall not access any on-line service using an alias, or access any on-line service using the Internet account, name, or designation of another person or entity. The defendant will report immediately to the U.S. Probation Officer access to any Internet site containing prohibited material.

( )    (4)    The defendant is prohibited from altering or using any form of encryption, cryptography, stenography, compression, password-protected files or other methods that limit access to, or change the appearance of data and/or images.

( )    (5)    The defendant is prohibited from altering or destroying records of computer use, including the use of computer software or functions designed to alter, clean or "wipe" computer media, block computer monitoring software, or restore a computer to a previous state.

( )    (6)    If instructed, the defendant shall provide all personal and business telephone phone records and all credit card statements to the U.S. Probation Officer.

( )    (s)    You are prohibited from engaging, directly or indirectly, in any form of gambling or game of chance. You shall not loiter about or enter any dwelling or enterprise whose principal business purpose is gambling or the offering of games of chance. You shall, at the discretion of the U.S. Probation Officer, successfully participate in a program of mental health treatment, to include but not limited to a program for the treatment of gambling addiction.

( )    (t)    **OTHER:**

## ADVISE OF PENALTIES AND SANCTIONS

Violation of any of the foregoing conditions of release may result in the immediate issuance of a warrant for Defendant's arrest, a revocation of release, an order of detention as provided in 18 U.S.C. § 3148, and a prosecution for contempt as provided in 18 U.S.C. § 401 which could result in a possible term of imprisonment or a fine. The commission of any offense while on pretrial release may result in an additional sentence upon conviction for such offense to a term of imprisonment of not less than two years nor more than ten years, if the offense is a felony; or a term of imprisonment of not less than ninety days nor more than one year, if the offense is a misdemeanor. This sentence shall be consecutive to any other sentence and must be imposed in addition to the sentence received for the offense itself.

18 U.S.C. § 1503 makes it a criminal offense, punishable by up to five years of imprisonment and a $250,000 fine, to intimidate or attempt to intimidate a witness, juror or officer of the court. 18 U.S.C. § 1510 makes it a criminal offense, punishable by up to five years of imprisonment and a $250,000 fine, to obstruct a criminal investigation. 18 U.S.C. §1512 makes it a criminal offense, punishable by up to ten years of imprisonment and a $250,000 fine, to tamper with a witness, victim or informant. 18 U.S.C. § 1513 makes it a criminal offense, punishable by up to ten years of imprisonment and a $250,000 fine, to retaliate against a witness, victim or informant, or threaten or attempt to do so. It is a criminal offense under 18 U.S.C. § 3146, if after having been released, Defendant knowingly fails to appear as required by the conditions of release, or to surrender for the service of sentence pursuant to a court order. If Defendant is released in connection with a charge of, or while awaiting sentencing, surrender for the service of a sentence, or appeal or *certiorari* after conviction, for:

(1)     an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more, Defendant shall be fined not more than $250,000 or imprisoned for not more than ten years, or both;

(2)     an offense punishable by imprisonment for a term of five years or more, but less than fifteen years, Defendant shall be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3)     any other felony, Defendant shall be fined not more than $250,000 or imprisoned not more than two years, or both;

(4)     a misdemeanor, Defendant shall be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender shall be consecutive to the sentence of imprisonment for any other offense. In addition, a failure to appear may result in the forfeiture of any bail posted.

## ACKNOWLEDGMENT OF DEFENDANT

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and to surrender for service of any sentence imposed. I am aware of the penalties and sanctions set forth above.

Oscar Amos Stilley
Tulsa, OK

## DIRECTIONS TO UNITED STATES MARSHAL

(X)     Defendant is **ORDERED** released after processing.

( )     The United States Marshal is **ORDERED** to keep Defendant in custody until notified by the clerk or a judicial officer that Defendant has posted bond and/or complied with all other conditions for release. Defendant shall be produced before the appropriate judicial officer at the time and place specified, if still in custody.

Date: March 18, 2009

Paul J. Cleary
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

United States of America,

      Plaintiff,

vs.                                          Case No. 09-cr-43-**CLK**

Oscar Amos Stilley,

      Defendant.

### APPEARANCE BOND

    Non-surety:    I, the undersigned Defendant acknowledge that I and my . . .

    Surety:  We, the undersigned, jointly and severally acknowledge that we and our . . .

**$2,500**

personal representatives, jointly and severally, are bound to pay to the United States of America the sum of ~~$10,000~~, and there has been deposited in the Registry of the court the sum of $ in cash or .

    The conditions of this bond are that Defendant is to appear before this court, and at such other places as Defendant may be required to appear, in accordance with any and all orders and directions relating to Defendant's appearance in this case, including appearance for violation of a condition of Defendant's release as may be ordered or notified by this Court or any other United States District Court to which Defendant may be held to answer or the cause transferred.  Defendant shall abide by any judgment entered in such a matter by surrendering to serve any sentence imposed and obeying any order or direction in connection with such judgment.

    It is agreed and understood that this is a continuing bond (including any proceeding on appeal or review) which shall continue until such time as the undersigned are exonerated.

    If Defendant appears as ordered or notified and otherwise obeys and performs the foregoing conditions of this bond, this bond is to be void, but if Defendant fails to obey or perform any of these conditions, payment of the amount of this bond shall be due forthwith.  Forfeiture of this bond for any breach of its conditions may be declared by any United States District Court having cognizance of the above entitled matter at the time of such breach and, if the bond is forfeited and if the forfeiture is not set aside or remitted, judgment maybe entered upon motion in such United States District Court against each the undersigned jointly and severally for the amount above stated, together with interest and costs, and execution may be issued and payment secured as provided by the Federal Rules of Criminal Procedure and any other laws of the United States.

_____
Oscar Amos Stilley
Tulsa, OK

Surety's Signature:   _____

Surety's Address:     _____

Surety's Phone #:    _____

_____
Paul J. Cleary
United States Magistrate Judge

Appearance Bond

AO-98 Modified (3/06)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CR-43-CLK |
| | ) | |
| LINDSEY K. SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## O R D E R

Defendants Lindsey K. Springer and Oscar Amos Stilley appeared for Initial

Appearance and Arraignment on March 18, 2009.  At the Initial Appearance the Court

appointed counsel for the Defendants *for purposes of the Initial Appearance and*

*Arraignment only.*

Therefore, **by March 30, 2009** the Defendants must do one of the following:

(1)  Enter their appearance *pro se* advising the Court that either or
both Defendants intend to represent themselves;

(2)  Have retained counsel enter his/her appearance on behalf of
the Defendant(s); or

(3)  Submit to the Court an appropriate Financial Affidavit signed
under penalty of Perjury establishing that Defendant(s) do not have the
resources to hire private counsel and asking the Court to appoint counsel
to represent them herein.

DATED this 19th day of March 2009.

_____
Paul J. Cleary
United States Magistrate Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )　　**Case No.**　　**09-CR-043-CLK** |
| | ) |
| **LINDSEY KENT SPRINGER,** | ) |
| **OSCAR AMOS STILLEY,** | ) |
| | ) |
| **Defendants.** | ) |

## RESPONSE TO DEFENDANT SPRINGER'S PREMATURELY FILED MOTIONS

The United States of America, by and through its attorneys, David E. O'Meilia,

United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke,

Assistant United States Attorney, and Charles A. O'Reilly, Trial Attorney, United States

Department of Justice, hereby responds in opposition to Defendant Lindsey Kent Springer's

prematurely filed motions dated March 18, 2009: Motion for Electronic Access (Docket #5);

Motion for, and Memorandum in Support of Motion for, In Camera Review of Fifth

Amendment Proffer (Docket #'s 6 and 7); Motion for Bill of Particulars (Docket #8).  The

government also requests an extension of the time for filing responses should the Court

accept Defendant Springer's motions as filed.

Defendants Springer and Oscar Amos Stilley were arraigned before Magistrate Judge

Paul J. Cleary on Wednesday, March 18, 2009.  On the same date, and prior to arraignment,

United States District Court Judge James H Payne entered an order recusing himself due to

4091260.1

Court conflict, and returned the case to the Court Clerk for further reassignment (Docket #9).

As of the filing of this motion, the case has not been reassigned.

For purposes of the arraignment, Magistrate Judge Cleary appointed counsel to each

defendant for the purpose of that hearing only.  The defendants each entered not guilty pleas

and were released on bond.  On March 19, 2009, Magistrate Judge Cleary ordered that, by

March 30, 2009, each defendant must do one of the following:

(1)    Enter his appearance *pro se* advising the Court that the defendant intends to

represent himself;

(2)    Have retained counsel enter his or her appearance on behalf of the defendant;

or

(3)    Submit to the Court an appropriate Financial Affidavit signed under penalty

of perjury establishing that the defendant does not have the resources to hire private counsel

and asking the Court to appoint counsel to represent him  (Docket #19).

Local Criminal Rule 12.1 of the United States District Court for the Northern District

of Oklahoma provides in pertinent part:

> D.    <u>Time of Filing in Absence of Notice</u>.    All motions shall be
> filed with the court clerk within such time as the court may order.  Absent such
> special order, all such motions shall be filed with the clerk within eleven (11)
> days after arraignment, and a copy served contemporaneously on the United
> States Attorney, who shall respond within five (5) days of filing, unless a
> different time is fixed by statute or the Federal Rules of Criminal Procedure,
> or unless the court otherwise orders.

4091260.1

As of the date Defendant Springer's motions were filed, Defendant Springer was not represented by counsel, nor had Defendant Springer been authorized to represent himself.

THEREFORE, the United States enters its general opposition to Defendant Springer's motions, and requests that the Court enter a scheduling order setting a time for the filing of motions and responses thereto, taking into account the need for a *Faretta* hearing should either defendant elect to proceed *pro se*.  Should for the Court accept Defendant Springer's motions as filed, the United States requests an extension of time to file responses with respect to each motion, as well as any subsequent motions filed prior to the issue of representation be resolved in this matter.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney

 /s/ Kenneth P. Snoke
KENNETH P. SNOKE, OBA #08437
Assistant United States Attorney
CHARLES A. O'REILLY, CBA #160980
Special Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

4091260.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 23th day of March, 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Robert Williams
Temporary Attorney for Lindsey Kent Springer

Terry Weber
Temporary Attorney for Oscar Amos Stilley

and by United States Postal Service to the following defendants:

Lindsey K. Springer
5147 S. Harvard, #116
Tulsa, OK 74135

Oscar A. Stilley
7103 Race Track Loop
Ft. Smith, AR 72916

_/s/ Kenneth P. Snoke_____
Assistant United States Attorney

-4-                                                                    4091260.1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )
                               )
-vs-                           )   CASE NO: 09-CR-043-CLK
                               )
LINDSEY KENT SPRINGER, OSCAR   )
AMOS STILLEY,                  )
                               )
                Defendants.    )

**<u>MOTION TO WITHDRAW AS COUNSEL OF RECORD</u>**

COMES NOW attorney, Robert Scott Williams, counsel for Defendant, Lindsey Kent Springer, and does hereby pray the Court issue an Order allowing him to withdraw as counsel of record, stating in support as follows:

1.   The undersigned was appointed to represent the Defendant, Lindsey Kent Springer.

2.   The appointment was for purposes of the Defendant's initial appearance only.

3.   The undersigned has not been appointed by this Court to represent the interests of Mr. Springer beyond the initial appearance.

4.   The undersigned still appears as a counsel of record for Mr. Springer.

WHEREFORE, premises considered, the undersigned prays this Court enter an order allowing the immediate withdraw of the Robert Scott Williams as attorney of record for the Defendant, Lindsey Kent Springer, in the above captioned case.

Respectfully submitted,

TAYLOR, RYAN, SCHMIDT & VAN DALSEM, P.C.


By s/R. Scott Williams
  R. SCOTT WILLIAMS - OBA #19974
  Boulder Towers
  1437 S. Boulder Ave., Suite 850
  Tulsa, OK  74119
  (918) 749-5566


### CERTIFICATE OF SERVICE

    I, R. SCOTT WILLIAMS, hereby certify that on the 24th day of March, 2009, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Terry Weber
Attorney for Oscar Amos Stilley


and

### CERTIFICATE OF MAILING

    I, R. SCOTT WILLIAMS, hereby certify that on the 24th day of March, 2009, I mailed a true and correct copy of the above and foregoing instrument with proper postage thereon fully prepaid to:

Lindsey K. Springer
5147 S. Harvard #116
Tulsa, OK 74135

Oscar A. Stilley
7103 Race Track Loop
Ft. Smith, AR 72916


      S/R. Scott Williams
      R. SCOTT WILLIAMS


jma

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,          )
                                   )
                Plaintiff,         )
                                   )
-vs-                               )      CASE NO: 09-CR-043-CLK
                                   )
LINDSEY KENT SPRINGER, OSCAR       )
AMOS STILLEY,                      )
                                   )
                Defendants.        )

## REQUEST FOR HEARING

**COMES NOW** attorney R. Scott Williams of Taylor, Ryan, Schmidt & Van Dalsem, P.C., and moves this Court set for hearing his Motion to Withdraw as Counsel of Record for Defendant (Document 20), Lindsey Springer, on a date certain.

Respectfully submitted,

TAYLOR, RYAN, SCHMIDT & VAN DALSEM, P.C.

By S/R. Scott Williams
R. SCOTT WILLIAMS - OBA #19974
Boulder Towers
1437 S. Boulder Ave., Suite 850
Tulsa, OK  74119
(918) 749-5566

## CERTIFICATE OF SERVICE

I, R. SCOTT WILLIAMS, hereby certify that on the 24th day of March, 2009, I electronically transmitted the foregoring document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Terry Weber
Attorney for Oscar Amos Stilley

and

## CERTIFICATE OF MAILING

I, R. SCOTT WILLIAMS, hereby certify that on the 24th day of March, 2009, I mailed a true and correct copy of the above and foregoing instrument with proper postage thereon fully prepaid to:

Lindsey K. Springer
5147 S. Harvard #116
Tulsa, OK 74135

Oscar A. Stilley
7103 Race Track Loop
Ft. Smith, AR 72916

S/R. Scott Williams
R. SCOTT WILLIAMS

jma

```
MIME-Version:1.0
From:CM-ECFMail_OKND@oknd.uscourts.gov
To:cmecf@okndlei.oknd.circ10.dcn
Bcc:cm-ecfIntake_oknd@oknd.uscourts.gov, INTAKEPSR_OKNP@oknd.uscourts.gov,
Terry.Weber@morelaw.com, charles.a.o'reilly@usdoj.gov, friot-
orders@okwd.uscourts.gov, kathie.hall@usdoj.gov, ken.snoke@usdoj.gov,
law@trsvlaw.com, lindsey@mindspring.com, rwilliams@trsvlaw.com
Message-Id:<833262@oknd.uscourts.gov>
Subject:Activity in Case 4:09-cr-00043-SPF USA v. Springer et al Order
```
Content-Type: text/html

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.'**

<p align="center">**U.S. District Court**</p>

<p align="center">**U.S. District Court for the Northern District of Oklahoma**</p>

**Notice of Electronic Filing**

The following transaction was entered on 3/31/2009 at 3:32 PM CDT and filed on 3/31/2009

**Case Name:**        USA v. Springer et al
**Case Number:**      4:09-cr-43
**Filer:**
**Document Number:** 24(No document attached)

**Docket Text:**
**MINUTE ORDER *by Court Clerk at the direction of Chief Judge Claire V. Eagan*, reassigning case to Judge Stephen P Friot. Court Clerk no longer assigned to case, changing case number to 09-CR-43-SPF as to Lindsey Kent Springer, Oscar Amos Stilley (a-hc, Dpty Clk)**

**4:09-cr-43-1 Notice has been electronically mailed to:**

Charles Anthony O'Reilly     charles.a.o'reilly@usdoj.gov

Kenneth P Snoke     ken.snoke@usdoj.gov, kathie.hall@usdoj.gov

Lindsey Kent Springer     lindsey@mindspring.com

Robert Scott Williams     law@trsvlaw.com, rwilliams@trsvlaw.com

**4:09-cr-43-1 Notice has not been electronically mailed to:**

**4:09-cr-43-2 Notice has been electronically mailed to:**

Charles Anthony O'Reilly     charles.a.o'reilly@usdoj.gov

Kenneth P Snoke     ken.snoke@usdoj.gov, kathie.hall@usdoj.gov

Terry Lee Weber (Terminated)     Terry.Weber@morelaw.com

**4:09-cr-43-2 Notice has not been electronically mailed to:**

Oscar Amos Stilley
7103 Race Track Loop
Ft Smith, AR 72901

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.    09-CR-043-SPF** |
| | ) | |
| **LINDSEY KENT SPRINGER,** | ) | |
| **OSCAR AMOS STILLEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MOTION FOR PROTECTIVE ORDER

The United States of America, by and through its attorneys, David E. O'Meilia, United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke, Assistant United States Attorney, and Charles A. O'Reilly, Trial Attorney, United States Department of Justice, moves the Court pursuant to Fed.R.Crim.P. 6(e)(3)(E)(i), Title 26, United States Code, Sections 6103(i)(4)(A)(i) and (ii) and Title 18, United States Code, Sections 2516(1) and (3) and 2518(8)(b), for an order permitting disclosure, preliminarily to or in connection with the trial of *United States v. Lindsey Kent Springer and Oscar Amos Stilley*, Case No. 09-CR-043-SPF, of grand jury testimony, documents produced to the grand jury or its agents, income tax returns, taxpayer return information, and documents or other information in any form which contains the street address, telephone number, social security account number, date of birth, alien registration number, credit card number, bank account number, insurance policy number, membership number, employee identification number,

4084384.1

state or federal driver's license or identification card number, government passport number, employer or taxpayer identification number, email address or other means of identification. The Government also moves to have the order limit further disclosure and use of the materials referenced above, and in support thereof states as follows:

1.      A Grand Jury sitting in the Northern District of Oklahoma recently returned an Indictment in the matter of *United States v. Lindsey Kent Springer and Oscar Amos Stilley*, Case No. 09-CR-043-SPF.

2.      Plaintiff, the United States of America, hereinafter referred to as "the Government," possesses grand jury transcripts of prospective trial witnesses that it anticipates disclosing to the defendants as material required by the Jencks Act, 18 U.S.C. § 3500, Fed.R.Crim.P. 26.2, *Brady v. Maryland*, and/or *United States v. Giglio*.

3.      The Government possesses documents produced under subpoenas issued by the Grand Jury sitting in this District that must be made available to the defendants under Fed.R.Crim.P. 16.

4.      The Government possesses income tax returns and taxpayer return information of the defendants obtained as part of the grand jury investigation that is likely to be subject to discovery to the defendants under Fed.R.Crim.P. 16.

5.      The Government possesses materials obtained pursuant to a search warrant executed at the home of Lindsey Kent Springer that is likely to  be subject to discovery to the defendants under Fed.R.Crim.P. 16.

4084384.1

6.      For the sole purpose of preparing for trial, counsel for all parties may find it necessary to disclose grand jury documents and testimony to their prospective witnesses.

7.      For the sole purpose of preparing for trial, counsel for both parties may find it necessary to disclose grand jury documents and transcripts to experts, consultants, contractors, subcontractors and agents, including professional graphics and litigation support personnel, who will be assisting in counsels' preparation for trial. The Government estimates approximately 33,000 pages of discovery at the present time, however, the investigation is ongoing, and additional discovery of computer records, video recordings and audio recordings is anticipated.

8.      Disclosure of the materials identified above for trial preparation or for use at trial is appropriate, provided the disclosure is pursuant to a protective order regarding the maintenance of grand jury secrecy, taxpayer information and individual identification information in the continuing grand jury investigation.

9.      The Jencks Act requires the Government, on motion of the defendants, to produce an "statement" of a witness it has called that relates to the subject matter to which the witness has testified.  18 U.S.C. § 3500(b) (1988).  This includes a transcript of a witness's testimony before a grand jury. *Id.*, § 3500(e)(3); *United States v. Bailey*, 944 F.2d 911, 1991 WL 180087, at *1 (10th Cir. Sept. 11, 1991) (citing *United States v. Knowles*, 594

4084384.1

F.2d 753, 755 (9th Cir. 1979)).[1]

10.    Fed.R.Crim.P. 26.2(a) states that after a witness other than a defendant has testified on direct examination, the defendants are entitled to any statement of the witness that relates to the subject matter of the witness's testimony, which may include a transcript of the grand jury testimony of the witness.

11.    Fed.R.Crim.P. 6(e)(1) gives the United States Attorney custody and control of grand jury transcripts until the Court orders otherwise.  Rule 6(e)(2) states "an attorney for the government . . . shall not disclose matters occurring before the grand jury, except as otherwise provided in these rules."  There are several exceptions to the rule, and one exception allows grand jury transcripts to be released when directed by the Court.  Fed.R.Crim.P. 6(3)(E)(i).

12.    It is the practice in this District to voluntarily disclose grand jury transcripts during discovery, thereby preventing delays during the trial.

13.    In order to protect the witnesses from being threatened, harmed or intimidated before testifying, to protect the sanctity and the secrecy of the grand jury process, and to protect the Government attorneys if they disclose to counsel for the defendants, prior to trial, grand jury and other investigative materials to include Ex Parte Applications and Orders for Tax Return Information and those income tax returns, taxpayer return information, and

---

[1]  Pursuant to 10th Circuit Rule 36.3, a copy of *Bailey*, an unpublished opinion, is attached hereto because it has persuasive value with respect to a material issue that has not been addressed in a published opinion, and would assist the court in its disposition.

transcripts of undercover recorded conversations), which must be disclosed under normal

circumstances pursuant to the dictates of the *Jencks* Act, 18 U.S.C. § 3500; Fed.R.Crim.P.

16; *United States v. Giglio*, 405 U.S. 150 (1972); and *Brady v. Maryland*, 373 U.S. 83

(1963), a protective order should be entered requiring that the defendants shall:

> (a)    not disseminate the transcripts and other materials
> provided pursuant to discovery for any other purpose;
>
> (b)    return the transcripts and other materials provided
> pursuant to discovery to the United States Attorney's Office
> immediately after the testimony of the specific witness;
>
> (c)    not show the transcripts and other materials provided
> pursuant to discovery to anyone–with the exception of the
> defendants, defendants' attorneys of record in this case (if any)
> and those persons employed by the attorney or *pro se* defendant
> who are necessary to assist counsel of record or the *pro se*
> defendant in preparation for trial in this case;
>
> (d)    not reproduce the documents and transcripts for
> dissemination to any other persons or parties, and shall maintain
> complete custody and control over them, including all copies.

14.    Fed. R. Crim. P. 16(d)(1) provides that the Court may "for good cause, deny,

restrict or defer discovery or inspection, or grant other appropriate relief."  Fed.R.Crim.P.

16(d)(1).  The Supreme Court has noted that the courts may use protective orders to restrict

the use of materials produced in discovery.  Where appropriate, a trial court can and should

place a defendant and his attorney under enforceable orders against unwarranted disclosure

of the materials which they may be entitled to inspect.  *Alderman v. United States*, 394 U.S.

165, 185 (1969).

4084384.1

Fed.R.Crim.P. 6(e)(2) provides a general rule of grand jury secrecy for "matters occurring before the grand jury," *id.*, but Fed.R.Crim.P. 6(e)(3)(E)(i) permits disclosure "directed by the court preliminarily to or in connection with a judicial proceeding . . . in such manner, at such time, and under such conditions as the court may direct." *Id.* Under this rule, a party seeking disclosure must show with particularity that the "need for disclosure is greater than the need for continued secrecy." *United States v. Sells Engineering, Inc.*, 463 U.S. 418, 443 (1983), quoting *Douglas Oil Co. V. Petrol Stops Northwest*, 411 U.S. 211, 222-23 (1979).

In directing such a disclosure, the Court may impose protective limitations on the use of disclosed materials. *Douglas Oil*, 441 U.S. at 223. The United States requests that the Court limit defense counsels' and *pro se* defendants' use of the grand jury materials to their preparation for, or use at trial, and to forbid defense counsel and each (*pro se*) defendant from making further disclosure of the grand jury material for purposes unrelated to this trial. Such a limitation is necessary here not only to comply with Rule 6(e)'s requirement of grand jury secrecy, but also to protect the interests of the ongoing grand jury investigation that produced the instant Indictment. See *Id.* At 219 n. 10; *United States v. Proctor & Gamble Co.*, 356 U.S. 667, 681-82 n. 6 (1958). The proposed order is also necessary to protect the dignity and privacy of individuals whose information will be disclosed.

-6-

4084384.1

WHEREFORE, the United States requests that the Court enter a protective order for all discovery materials, to include grand jury transcripts and other investigative materials, income tax information and other information in any form which contains the street address, telephone number, social security account number, date of birth, alien registration number, credit card number, bank account number, insurance policy number, membership number, employee identification number, state or federal driver's license or identification card number, government passport number, employer or taxpayer identification number, email address or other means of identification, provided to the defendants during discovery, requiring the *pro se* defendants and/or their counsel to comply as set forth therein.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney


*/s/ Charles A. O'Reilly*
CHARLES A. O'REILLY, CBA #160980
Special Assistant United States Attorney
KENNETH P. SNOKE, OBA #08437
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

-7-                                            4084384.1

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of April, 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants, and by United States Postal Service to the following defendants:

Lindsey K. Springer, Pro Se Defendant
lindsey@mindspring.com

Oscar A. Stilley, Pro Se Defendant
7103 Race Track Loop
Ft. Smith, AR 72916


*/s/ Charles A. O'Reilly*
Assistant United States Attorney

4084384.1

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

944 F.2d 911 (Table)
944 F.2d 911 (Table), 1991 WL 180087 (10th Cir.(Colo.))
**Unpublished Disposition**
**(Cite as: 944 F.2d 911, 1991 WL 180087 (10th Cir.(Colo.)))**

NOTICE:  THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. Use FI CTA10 Rule 36.3 for rules regarding the citation of unpublished opinions.)

United States Court of Appeals, Tenth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Robert BAILEY, a/k/a James Robert Nicholson, Defendant-Appellant.
No. 90-1148.

Sept. 11, 1991.

D. Colo., No. 89-CR-395.

D.Colo.

AFFIRMED.

Before McKAY and SETH, Circuit Judges, and BROWN, Senior District Judge. [FN1]

ORDER AND JUDGMENT  [FN2]

McKAY, Circuit Judge.

**\*\*1** Defendant James Bailey appeals his conviction on four counts of unauthorized use of food coupons under 7 U.S.C. § 2024(b) (1988) and aiding and abetting another in the unauthorized use of food coupons under 18 U.S.C. § 2 (1988). Defendant filed a motion for a new trial that was denied by the district court.   He was sentenced to three years imprisonment on each of the counts, to be served concurrently.   This appeal followed.

I.

Defendant and co-defendant Sinnica Nicholson operated Seven Seas Seafood, a food store in Denver, Colorado.   They were authorized by the United States Department of Agriculture to redeem food coupons.  USDA initiated an investigation into the possible unauthorized use of food coupons after receiving a phone call from the manager of the bank where the defendant and Ms. Nicholson had opened an account.   The bank manager informed USDA agents that he was suspicious of defendant and Ms. Nicholson due to the extremely large volume of food stamps they had deposited into their account and because they were withdrawing the cash shortly after making deposits.

4084384.1

USDA conducted an investigation involving special agents and a civilian working as an undercover operative. On July 26, 1989, a special agent and the undercover operative entered Seven Seas Seafood. They asked defendant if he would redeem food stamps for cash. Defendant responded affirmatively and directed them to Ms. Nicholson who was in another part of the store. Ms. Nicholson exchanged $200 worth of USDA food coupons for $100 in cash.

On August 4, 1989, the undercover operative entered Seven Seas Seafood and contacted defendant. They left the store together, entered defendant's automobile, and drove behind the store into an alley. The undercover operative informed defendant that the food coupons she was about to exchange were stolen. Defendant paid $80 in cash for $160 in food coupons. The undercover operative also stated that she would have more food coupons to sell in the future. Defendant indicated that he was willing to purchase more coupons. This transaction was recorded through a device hidden on the undercover operative and was viewed by two federal agents.

The next exchange occurred on September 15, 1989. Following a phone conversation, co-defendant Nicholson met the undercover operative at the East Side Food Stamp Office in Denver. Ms. Nicholson exchanged $400 for $850 worth of USDA food coupons. The undercover operative saw defendant seated on a porch approximately one-half block from where the exchange occurred, and observed Ms.

Nicholson walk toward him after the exchange was completed.

On September 18, 1989, the undercover operative again met Ms. Nicholson at the East Side Food Stamp Office after arranging the meeting over the telephone. Ms. Nicholson arrived in a car driven by defendant. She and the undercover operative then exchanged $500 in cash for $1000 worth of food coupons. After the transaction, Ms. Nicholson got back into the car and drove away with defendant. This exchange was videotaped and observed by federal agents.

**2** The jury returned a verdict of guilty as to each of these transactions. Following a jury trial, appellant moved for a new trial on the basis of his allegation that the government failed to provide a complete transcript of the grand jury proceedings in violation of his discovery request. The district court denied the motion.

II.

Defendant alleges numerous errors that warrant reversal and a new trial. His first argument is that the district court erred in denying his motion for a new trial due to the failure of the government to produce a complete set of grand jury transcripts. He maintains that this alleged failure by the government to comply with his discovery request for Jencks Act material prejudiced his trial preparation. The government asserts that the only grand jury testimony upon which the indictment was based was the testimony of USDA Special Agent Hopko, and that the complete grand jury

transcript was provided to defense counsel.

 Whether to grant a motion for a new trial is a decision within the sound discretion of the district court.  We will not reverse the court's decision absent a plain abuse of that discretion.  *United States v. McIntyre,* 836 F.2d 467, 472 (10th Cir.1987); *United States v. Troutman,* 814 F.2d 1428, 1455 (10th Cir.1987).

 The Jencks Act requires that the government, on motion of the defendant, produce any "statement" of a witness it has called that relates to the subject matter to which the witness has testified. 18 U.S.C. § 3500(b) (1988). This material includes a transcript of a witness's testimony before a grand jury.  *Id.,* § 3500(e)(3);  *United States v. Knowles,* 594 F.2d 753, 755 (9th Cir.1979).

 Defendant points to passages in the grand jury transcript that he contends demonstrate the government did not produce the entire grand jury proceedings. The first example involves a statement by Agent Hopko that the USDA investigation of defendant stemmed from a Denver police complaint about defendant and Ms. Nicholson trafficking in food stamps and also possibly trafficking in narcotics.  The government then asked a question referring to "these various episodes, that the Grand Jurors heard about involving drugs" and sought to clarify that no exchange of drugs ever occurred.  Record, vol. 1, doc. 22, exh. 1 at 3.  Defendant asserts that this reference indicates that there was earlier grand jury testimony.

"Various episodes," however, could just as easily have been a reference to Agent Hopko's statement about the Denver police complaint.  Moreover, this excerpt does not demonstrate that the district court abused its discretion in failing to grant a new trial.

 Defendant also maintains that the government's reference to Agent Hopko's prior summary of nine food coupon transactions demonstrates that the witness had testified at a different grand jury proceeding about these transactions. *Id.* at 8.  Agent Hopko, however, had summarized the trafficking of food coupons a few moments earlier during his testimony on that day, and, thus, his statement does not establish that there was prior grand jury testimony.

 **\*\*3** Finally, defendant asserts that the Assistant United States Attorney improperly tainted the grand jury when, in response to a grand juror's concern about the ability of untrustworthy individuals to obtain authorization to redeem food coupons, the AUSA mentioned that defendant had an extensive criminal history but was able to obtain authorization.  The AUSA immediately cautioned the grand jury that they were not to take into consideration defendant's criminal history when deciding whether to return an indictment. *Id.* at 19-20.  In light of the fact that this information came out in response to a grand juror's question and that the AUSA properly cautioned the grand jury, we cannot conclude that the district court abused its discretion in

denying defendant's motion for a new trial.

### III.

Defendant maintains that the evidence was insufficient to support his convictions for wilfully assisting Ms. Nicholson in the unauthorized acquisition of food coupons on September 15, 1989, and September 18, 1989. Evidence is considered sufficient to support a criminal conviction if, viewing all the evidence--both direct and circumstantial--in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt. *United States v. Culpepper,* 834 F.2d 879, 881 (10th Cir.1987).

During the August 4, 1989, exchange of food coupons for cash, defendant stated that he was interested in acquiring additional food coupons in the future. Further, during the initial exchange on July 26, 1989, defendant directed the undercover operative and the special agent to Ms. Nicholson in order to consummate the exchange. In addition, evidence was presented showing that defendant and Ms. Nicholson were authorized to redeem food coupons, that they were co-signators on the bank account into which they deposited food coupons, that they both deposited coupons, and that they both withdrew large amounts cash from that account shortly after making deposits. Although defendant did not execute the transaction himself on September 18 but drove Ms. Nicholson to the site and drove away with her after the exchange was completed, a reasonable jury could infer that defendant

willfully assisted Ms. Nicholson by transporting her to and from the site. Similarly, on September 15, defendant waited one-half block from where the transaction occurred, and Ms. Nicholson walked towards him after the exchange. Although there was no evidence showing that defendant transported Ms. Nicholson to the site, a permissible inference from all the evidence presented is that he wilfully assisted her. Viewing the evidence and the reasonable inferences to be drawn therefrom in the light most favorable to the government, we conclude that the jury could find beyond a reasonable doubt that defendant wilfully assisted Ms. Nicholson in the unlawful acquisition of food coupons on both September 15 and September 18.

### IV.

Defendant contends that the district court abused its discretion by admitting extrinsic evidence of prior inconsistent statements to impeach Ms. Nicholson. He argues that the evidence was improperly admitted because she did not have an adequate opportunity to explain the prior statements as required by Rule 613(b) of the Federal Rules of Evidence. The decision of whether to admit evidence is a matter committed to the discretion of the district court. *United States v. Alexander,* 849 F.2d 1293, 1301 (10th Cir.1988).

**\*\*4** During the government's case-in-chief, Ms. Nicholson stated that defendant did not give her money to purchase food coupons. The government sought to impeach her by introducing the testimony

of government agents who testified that Ms. Nicholson had previously told them that the money came from defendant. Ms. Nicholson was given an opportunity to explain her prior statements, record, vol. 3, at 263, and the district court properly instructed the jury that the testimony of the government agents was for the limited purpose of impeaching Ms. Nicholson's credibility, and not to establish the truth of the prior statements. *Id.,* vol. 4 at 339. [FN3]  Under these circumstances, we conclude that the district court did not abuse its discretion in admitting the agents' testimony of Ms. Nicholson's prior inconsistent statements.

### V.

Defendant also argues that the district court erred by permitting a government agent to testify about a conversation he overheard between Ms. Nicholson and the undercover operative.  The conversation had been recorded, but the audio tape was inaudible.  Defendant argues that the admission of the testimony violated Rule 1004 of the Federal Rules of Evidence because the tape itself was the best evidence of the conversation and a proper foundation was not presented as to why the tape could not be produced at trial.  We must determine whether the district court abused its discretion in admitting the agent's testimony.  *Alexander,* 849 F.2d at 1301.

Defendant misapprehends the best evidence rule and the purposes for which the agent's testimony was offered.  The best evidence rule requires the production of a writing, recording, or photograph in order to prove its contents. Fed.R.Evid. 1002.   In this case, however, the government sought to establish the contents of Ms. Nicholson's conversation with the undercover operative, not the sounds preserved on the tape recording. Therefore, the best evidence rule is inapplicable.  *See United States v. Rose,* 590 F.2d 232, 237 (7th Cir.1978), *cert. denied,* 442 U.S. 929 (1979);   *United States v. Gonzales-Benitez,* 537 F.2d 1051, 1053-54 (9th Cir.), *cert. denied* 429 U.S. 923 (1976).   The district court did not abuse its discretion in admitting the agent's testimony.

### VI.

Defendant's last two contentions are not persuasive.   He argues that the district court erred in denying his motion for a mistrial based on a government witness's reference to a "criminal history check" in response to a question about the training of the undercover operative.  Record, vol. 4, at 303. Taken in context, this comment referred to the screening of individuals to determine their fitness as undercover operatives.   The district court's denial of defendant's motion for a mistrial was not an abuse of discretion.  *See United States v. Peveto,* 881 F.2d 844, 859 (10th Cir.), *cert. denied,* 110 S.Ct. 348 (1989).

Finally, defendant contends that the cumulative effect of the alleged errors require that we vacate his conviction.  In light of our determination that the district court did not err as defendant alleges, cumulative-error analysis is inappropriate.

-13-                                                        4084384.1

*See United States v. Rivera,* 900 F.2d 1462, 1470-71 (10th Cir.1990).

  **\*\*5** The district court's judgment is AFFIRMED.

> FN1. The Honorable Wesley E. Brown, Senior District Judge for the District of Kansas, sitting by designation.

> FN2. This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3.

> FN3. The extrinsic evidence presented was the testimony of the government agents based on their recollection of their earlier conversation with Ms. Nicholson. Record, vol. 4 at 341, 352-53. Contrary to defendant's position, Ms. Nicholson was not impeached by documentary evidence.

 944 F.2d 911 (Table), 1991 WL 180087 (10th Cir.(Colo.)) Unpublished Disposition

END OF DOCUMENT

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 09-CR-043-SPF** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **LINDSEY KENT SPRINGER,** | ) | |
| **OSCAR AMOS STILLEY,** | ) | |

**Defendants.**

## <u>PROTECTIVE ORDER</u> (Doc. 25)

Upon motion of the United States, the Court being advised as to the nature of this case and the applicability of Rule 6(e) of the Federal Rules of Criminal Procedure to certain materials requested by the Defendant,

IT IS HEREBY ORDERED that the Government attorney is protected if they disclose to counsel for the above, or to the defendants, *pro se*, prior to trial, grand jury and other investigative materials including tax returns, taxpayer return information and documents or other information, in any form, which contains the street address, telephone number, social security account number, date of birth, alien registration number, credit card number, bank account number, insurance policy number, membership number, employee identification number, state or federal driver's licence or identification and number, government passport number, employer or taxpayer identification number, e-mail address or other means of identification, which must be disclosed under normal circumstances pursuant to the dictates of the *Jencks* Act, 18 U.S.C. § 3500; Fed. R. Crim. P. 16; *United States v. Giglio*, 405 U.S. 150 (1972), and *Brady v. Maryland*, 373 U.S. 83 (1963).

It is held that the grand jury and other investigative materials are provided for purposes of the trial of the above-captioned case; that they are not to be disseminated for any other purpose; and that they will be returned to the United States Attorney's Office by defendants, *pro se*, or by defense counsel (if any) immediately after the testimony of the specific witness. The materials are not to be shown to anyone with the exception of the Defendants, Defendants' attorneys of record (if any), or to Defendants, *pro se*, in this case and those persons employed by Defendants, *pro se*, or their the attorneys who are necessary to assist them in preparation for trial. Defendants *pro se* or defense counsel shall not reproduce the documents and transcripts for dissemination to any other persons or parties, and shall maintain complete custody and control over them, including all copies. The attorneys for the Defendants and the Defendants, *pro se*, are bound by the secrecy provisions of Fed. R. Crim. P. 6(e).

Dated this 2nd day of April, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

Submitted by

Kenneth P. Snoke, OBA #8437
Assistant United States Attorney
Charles A. O'Reilly, CBA #160980
Special Assistant United States Attorney
110 West 7th St., Suite 300
Tulsa, OK 74119
(918) 382-2700

09-0043p001.PO.wpd

-2-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09-CR-43-SPF** |
| | ) | |
| **LINDSEY KENT SPRINGER and** | ) | |
| **OSCAR AMOS STILLEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## O R D E R

On March 30, 2009, in open court, Defendants Lindsey Kent Springer ("Springer") and

Oscar Amos Stilley ("Stilley") announced their desire to proceed herein *pro se*.  In accordance

with *Faretta v. California*, 422 U.S. 806 (1975), the Court then conducted a hearing to determine

whether Defendants' decision to represent themselves was voluntary and intelligent.  *See, for*

*example. Scroggins v. McDonough*, 2009 WL 651804 at *8-*10 (M.D.Fla. March 12, 2009).

After extensive questioning and after urging Defendants *not* to represent themselves, the Court

found that Springer and Stilley had waived their constitutional right to counsel and asserted their

right to self-representation.  The Court then proceeded, in the exercise of its inherent authority,

to appoint Standby Counsel to serve exclusively on behalf of the Court "to protect the integrity

and continuity of the proceedings."  *See The Guide to Judiciary Policies and Procedures*, vol. 7,

§ 2.17.  In this circumstance, Standby Counsel is appointed on behalf of the Court to consult

with Defendants and serve as a resource ensuring that Defendants receive a fair and expeditious

trial.  Standby Counsel are paid in the capacity of an expert or consultant pursuant to 5 U.S.C. §

3109, and appointment may be made regardless of whether Defendants are financially able to

obtain counsel.  Payment will be made using the regular CJA hourly rates as a guideline.

Communications between Standby Counsel and the Defendants are confidential and privileged.

THEREFORE, in accordance with the principles outlined above, the Court hereby appoints Robert Scott Williams and C. Robert Burton, IV, to serve as Standby Counsel herein.[1] Williams will consult with Defendant Springer and Burton will consult with Defendant Stilley.

DATED this 3rd day of April 2009.

Paul J. Cleary
United States Magistrate Judge

---

[1]     Terry Weber, who was appointed to consult with Defendant Stilley for purposes of the Initial Appearance/Arraignment only, will be allowed to withdraw as counsel with Mr. Burton's entry of appearance.  The appointments of Weber and Williams were effective March 18, 2009. [Dkt. Nos. 11 & 14].

**FILED**

APR 0 6 2009

Phil Lombardi, Clerk
U.S. DISTRICT COURT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                            Case No. 09-CR-043 JHP

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY                                          DEFENDANT

### MOTION TO PERMIT OSCAR STILLEY TO FILE BY CM/ECF

Comes now Oscar Stilley and for his motion to permit filing by CM/ECF,

and states:

1.      **OSCAR AMOS STILLEY** is an attorney by profession, now suspended in

Arkansas and some but not all other jurisdictions to which he is admitted.   One

of the jurisdictions of reciprocal suspension is the Northern District of Oklahoma.

As a result Defendant's CM/ECF login and password have been deactivated for

purposes of filing, although the login and password is still recognized by the

system.

2.      **OSCAR AMOS STILLEY** needs to have electronic filing privileges and

electronic notice of filings for many reasons.   Pleadings generated from  word

processor are compact, searchable, and more legible than scanned copies.

Pleadings filed directly via ECF have an electronically generated filemark, cost

less to file, may be filed more quickly, and require less clerk's office personnel

Page 1 of 2

time and effort.

3.   **OSCAR AMOS STILLEY** is an experienced user of CM/ECF in multiple

jurisdictions including the Northern District of Oklahoma.

WHEREFORE, **OSCAR AMOS STILLEY** prays that the Court grant CM/ECF filing

privileges to **OSCAR AMOS STILLEY**, and direct the Clerk to enable his

existing username and password to file pleadings in the instant case on his own

behalf; and for all such other and further relief as may be appropriate whether

or not specifically prayed.

<div align="center">Respectfully submitted,</div>

By: _____

Oscar Stilley, Attorney at Law
7103 Race Track Loop
Fort Smith, AR 72916
479-996-4109
479-996-3409 Fax
oscar@oscarstilley.com

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I, Oscar Stilley, by my signature above certify that I have this April 1,
2009, caused the Plaintiff to be served with a copy of this pleading by
CM/ECF to: Kenneth P. Snoke, United States Attorney's Office, 110 W 7th Street,
Suite 300, Tulsa , OK 74119-1013, ken.snoke@usdoj.gov; Charles A O'Reilly, US
Dept of Justice, PO Box 972, Washington , DC 20044, email
charles.a.o'reilly@usdoj.gov . Also by email to Lindsey K. Springer at
Gnutella@mindspring.com .

<div align="center">Page 2 of  2</div>

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
v.                              )        Case No.  09-CR-043-SPF
                                )
LINDSEY KENT SPRINGER,          )
OSCAR AMOS STILLEY,             )
                                )
            Defendants.         )

## ORDER FOR MOTION HEARING AND SCHEDULING CONFERENCE

This case is set for a motion hearing and scheduling conference on April 22, 2009, at 10:00 a.m., in Courtroom #4.  The personal appearance of the defendants is required.

Two motions are presently pending, namely Defendant Springer's Motion for *In Camera* Review of Fifth Amendment Proffer, doc. no. 6, and Defendant Springer's Motion for Bill of Particulars, doc. no. 8.  The court notes that the government has preliminarily responded to those motions.  **THE GOVERNMENT IS DIRECTED** to file its final response to those motions not later than April 17, 2009.

At the hearing to be held on April 22, 2009, at 10:00 a.m., the court will hear arguments on the pending motions and will establish a schedule to govern the further proceedings and trial setting in this case.

DATED April 7, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p002.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

      Plaintiff,

v.                    Case No. 09-CR-043 JHP

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

      Defendants

**MOTION FOR CLARIFICATION WITH RESPECT TO SPECIFIC LEGAL AUTHORITY FOR APPOINTMENT OF JUDGE IN TRIAL OF INSTANT CASE**

      Lindsey Kent Springer ("Springer"), by limited special appearance, and not a general appearance, and moves this Court for clarification as to the appointment of the Honorable Stephen P. Friot, United States District Judge for the Western Division of the United States District of Oklahoma, (28 U.S.C. § 116(C)) states as follows:

1.      It appears that the assignment of the Honorable Judge Friot is not authorized by any statute or constitutional provision.

2.      A decent respect for the opinions of this Court and the citizens of this state suggests that this Court should be apprised of the legal considerations of the parties, and given an opportunity to self-inspect, and to make such corrections without further pleadings by the parties.

**MEMORANDUM IN SUPPORT OF MOTION**

1

## BACKGROUND

Since at least 1997, the United States' Attorneys designated and holding office  in the State of Oklahoma, at Tulsa and Oklahoma City, have been conducting criminal investigations into whether Lindsey Kent Springer, in receiving certain monetary instruments from certain persons sharing in Springer's mission,[1] named Bondage Breaker's Ministries, was required to candidly report  the receipt of any such instruments[2] to the Internal Revenue Service upon any of its information request forms.

On March 10, 2009, and many United States Grand Juries later, purportedly empaneled pursuant to 28 U.S.C. § 1861-1878,[3] the United States Attorneys'

---

[1]      Paragraph 2 alleges the mission of Bondage Breaker's to be to "get rid of the Internal Revenue Service."

[2]      There are accusations that Defendant Springer received coins, presumably lawful money of the United States, the complaint there being an allegation that such were "collectible" coins, whatever that is shown to mean.

[3]These "Grand Juries" exist only at the control of the United States and are not empaneled pursuant to the meaning of the term "Grand Jury" under the Fifth Amendment.  The Supreme Court said in *United States v. Williams*, 504 U.S. 36, 47 (1992) "[R]ooted in long centuries of Anglo-American history," *Hannah v. Larche*, 363 U.S. 420, 490 (1960) (Frankfurter, J., concurring in result), the **grand jury** is mentioned in the Bill of Rights, but not in the body of the Constitution. **It has not been textually assigned**, therefore, **to any of the branches described in the first three Articles. It "`is a constitutional fixture in its own right**.'" *United States v. Chanen*, 549 F.2d 1306, 1312 (CA9 1977) (quoting *Nixon v. Sirica*, 159 U.S. App. D.C. 58, 70, n. 54, 487 F.2d 700, 712, n. 54 (1973)), cert. denied, 434 U.S. 825 (1977). In fact, the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. See *Stirone v. United States*, 361 U.S. 212, 218 (1960); *Hale v. Henkel*, 201 U.S. 43, 61 (1906); G. Edwards, *The Grand Jury* 28-32 (1906). Although the grand jury normally operates, of course, in the courthouse

2

Assistant, Honorable Kenneth Snoke and Charles O'Reilly, alleged the return of a purported Grand Jury indictment,[4] alleging violations of 18 U.S.C. § 371 (the defraud clause?)(Year 2000 through Present) , 26 U.S.C. § 7201 (apparently evasion of assessment but elements omitted)(Years ending 2000, 2003 and 2005)   and 26 U.S.C. § 7203 (willful failure to make a U.S. Individual Income Tax Return)(Years 2002 and 2004)(Springer only).

This charging instrument was labeled by the Clerk's Office as 09-CR-43-JLP. On March 18, 2009, Springer and Oscar Amos Stilley ("Stilley") were to be arraigned but  just prior to that arraignment, the Honorable Judge Payne recused himself citing to conflict of interest by minute entry without written docket number. Springer and Stilley were released on a signature bond and were ordered to

---

and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length."

In *Clawson v. United States,* 114 U.S. 477, 5 S.Ct. 949 (1885) before Utah became a State and at a time where it was a U.S. territory, the Supreme Court sitting with jurisdiction over U.S. Territory, expressed the words of Chief Justice MARSHALL, speaking of the law as it then existed, says: "It has been justly observed that no act of congress directs grand juries, or defines their powers. **955** By what authority, then, are they summoned, and whence do they derive their powers? The answer is that the laws of the United States have erected courts which are invested with criminal jurisdiction. This jurisdiction they are bound to exercise, **488** and it can only be exercised through the instrumentality of grand juries. They are, therefore, given by a necessary and indispensable implication. But how far is this implication necessary and indispensable? The answer is obvious. Its necessity is co-extensive with that jurisdiction to which it is essential."

[4]     Whether this indictment was actually returned in accordance with the law remains in dispute.

3

reappear on March 30, 2009, to determine their representation under the Sixth Amendment.

During this hearing Springer and Stilley were informed that a United States District Court Judge would be assigned by the end of the week (4.3.09).

On April 1, 2009, the Honorable Chief Judge Eagen, assignedJudge Friot by minute entry.  It cannot be disputed that Judge Friot's permanent post of duty[5] is the Western District of Oklahoma,  holding court in Oklahoma City.

## 1.     NEED FOR CLARIFICATION AS TO ASSIGNMENT OF HONORABLE JUDGE FRIOT.

According to the statutes and decisions a "chief judge of a circuit is empowered to designate any district judge of the circuit to hold a district court in any district within the circuit. 28 U.S.C. § 292(b)"  *United States v. Royals*, 777 F.2d 1089 (5th Cir. 1985)

Section 296 provides further that a "judge sitting by designation shall have all the powers of a judge of the district to which he is designated and assigned."

Section 295 establishes the procedure for any designation under either section 291 or 292.  See *Bessemer and Lake Erie R. R. Co. v. I. C. C.*, 691 F.2d 1104 (3rd Cir. 1982)("Chief Judge Seitz, pursuant to 28 U.S.C. § 292(a), designated Chief Judge Clarkson S. Fisher and Judge H. Curtis Meanor to hear them. Orders containing those designations are on file in the Office of the Clerk of this Court.")

The Eleventh Circuit in *Matters of Certain Complaints*, 783 F.2d 1488 (11th Cir.

---

[5]      By Congressional mandate in 28 U.S.C. § 116(C).

1986) stated that:

> "[U]nder Article III, the judicial power is invested in one Supreme Court 'and in such inferior Courts as the Congress may from time to time ordain and establish.' Pursuant to its latter power to ordain and establish the inferior courts, Congress has enacted many laws placing administrative duties on judges and supporting personnel in the judicial branch. For example, a chief judge of a circuit court is empowered to designate judges to sit in different courts within the circuit, 28 U.S.C. § 292(b)......Chief judges, circuit councils, court executives and clerks of court all hold, by law, specified court management responsibilities, the exercise of which are presumably believed by Congress to be "necessary and proper," Art. I, § 8, in order to 'ordain and establish' those inferior courts sharing in the 'judicial power' under Article III."

In *U.S. v. Ritter*, 273 F.2d 30, 32 (10th Cir. 1959) the Tenth Circuit designation

was likewise found to be authorized by the "Chief Judge of this Circuit, pursuant to

Section 292(b), Title 28 U.S.C..."

The Supreme Court followed the same reasoning when it reviewed Congress'

creation of non-Art. III courts in the District of Columbia. It noted that there was in

the District:

> "no division of powers between the general and state governments. Congress has the entire control over the district for every purpose of government; and it is reasonable to suppose, that in organizing a judicial department here, all judicial power necessary for the purposes of government would be vested in the courts of justice."
> *Kendall v. United States*, 12 Pet. 524, 619 (1838).

*Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. at 66

Undersigned is not aware of any statutory authority allowing a Chief Judge

of a Congressionally created District Court to assign to a case docketed in that

district to a judge from another Congressionally created district. Perhaps such a

law exists. Undersigned cannot find it. The assignment by Judge Eagan appears

5

to violate the constitution and the laws of the United States, namely 28 U.S.C. § 291, 292, and 295.

Undersigned is most sensitive to the considerations of comity and courtesy to judicial officers. This is a sensitive issue which should not be treated lightly or callously by anyone.

In fact, court decisions suggest that official conduct is presumed correct, regular, and compliant with the laws. See for example *National Archives and Records Admin. v. Favish*, 541 U.S. 157, 174,124 S.Ct. 1587 (2004)

> .... In *Department of State v. Ray*, 502 U.S. 164 (1991), **we held there is a presumption of legitimacy accorded to the Government's official conduct.** Id., at 178-179. The presumption perhaps is less a rule of evidence than a general working principle. However the rule is characterized, where the presumption is applicable, clear evidence is usually required to displace it. Cf. *United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("`[I]n the absence of clear evidence to the contrary, courts presume that [Government agents] have properly discharged their official duties'"); *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14-15 (1926) ("**The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties**"). ....
> (Emphases added)

This motion is filed solely in light of the fact that undersigned cannot discern any legal basis for this specific appointment. In the opinion of undersigned, Judges Eagan and Friot have a reasonable expectation of an opportunity to examine the constitutional and statutory underpinnings of the appointment, and take such action as either of them deem appropriate, prior to the consideration of any further action by undersigned. By this motion undersigned does not presume to suggest

6

whom might be appointed by the chief justice of the Supreme Court when a

certificate of necessity is made out by the Chief Judge of the10th Circuit, or other

authorized officer.

CONCLUSION

**WHEREFORE,** Lindsey Kent Springer respectfully requests this Court in its judicial

power, and not legislative management of any case or controversy, to identify a

statutorily and/or constitutionally authorized basis for the appointment of the

Honorable United States Judge Stephen Friot, from the United States' Western

District of Oklahoma by the Honorable Claire V. Eagan, United States' Northern

District of Oklahoma's Chief Judge, including any statutory citation or other

constitutional provisions enumerated to the United States, and any reference to

decisions by the Supreme Court of the United States or 10th Circuit explaining such

application and usage as relied upon to make such assignment; and for such other

and further relief as may be appropriate whether or not specifically prayed.


Respectfully Submitted

 /s/ Lindsey Kent Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)


7

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

First Motion for Clarification  was served through the Court's ecf system on April 7, 2009, to:

Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley

/s/ Lindsey Kent Springer
Signature

8

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,    )
            )
        Plaintiff,    )
            )
v.            )    Case No.  09-CR-043-SPF
            )
LINDSEY KENT SPRINGER,    )
OSCAR AMOS STILLEY,    )
            )
        Defendant.    )

## ORDER

Before the court is the Motion to Permit Oscar Stilley to File by CM/ECF, filed on April 6, 2009 (doc. no. 28).  Said motion is **GRANTED**.

DATED April 8, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p003.wpd

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER FOR MOTION HEARING

Before the court is defendant Lindsey Kent Springer's Motion for Clarification with Respect to Specific Legal Authority for Appointment of Judge in Trial of Instant Case, filed on April 7, 2009 (doc. no. 30).

The motion is set for hearing on April 22, 2009, at 10:00 a.m., in Courtroom #4. The personal appearance of the defendant is required.

DATED April 8, 2009.

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p004.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              Case No. 09-CR-043 CLK

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY                                          DEFENDANT

## MOTION FOR BILL OF PARTICULARS

Comes now **OSCAR AMOS STILLEY**[1] by limited special appearance, and

not a general appearance, and requests this United States District of Oklahoma

Northern Division Court to direct Counsel for the 28 U.S.C. § 1861-1878 United

States Policy Grand Jury pursuant to Federal Rules of Criminal Procedure 7(f) to

provide certain particulars regarding the "Grand Jury charges" in its indictment

dated March 10, 2009, more specifically as follows:

1.      **OSCAR AMOS STILLEY**  incorporates the bill of particulars signed and

submitted by Lindsey Springer as if set forth word for word herein.

2.      Please identify with particularity, with respect to the coins alleged in count

3 of the indictment, the following:

---

[1]      It is presumed that the plaintiff is master of his own complaint.  This
complaint is styled in the name of "**UNITED STATES OF AMERICA**" as opposed to
the people thereof, or any grand jury.  Plaintiff, whoever that may actually be,
named **OSCAR AMOS STILLEY** as a Defendant.  Therefore, **OSCAR AMOS
STILLEY** has appeared specially and limited, challenging jurisdiction, to
defend against the charges to the extent required so to do by the law.

Page 1 of  3

A)      The face value of the coin(s).

B)      The date of issuance of the coin(s).

C)      The name of the sovereign that issued the coins.

D)      Whether or not said coin(s) constituted legal tender.

E)      The reasons given to the Grand Jury why said coins were deemed
"collectible" as opposed to lawful money of the United States.

3.      Please identify with particularity the name, address, and phone number of
the District Director for the internal revenue district encompassing the legal
residence of **OSCAR AMOS STILLEY** for the calendar years 2002, 2003, 2004,  2005,
2006, 2007, and 2008.  If the government claims that other years are not barred
by limitations, please provide the same information with respect to all years for
which limitations has not run.

4.      Please identify the tax deficiency found by the grand jury with respect to
counts 1, 3, and 4, for which the grand jury alleged that **OSCAR AMOS
STILLEY** has some liability, or that the government intends to prove as an
element of tax evasion with respect to **OSCAR AMOS STILLEY** or Lindsey Kent
Springer.

5.      Please identify what the words "required by law" in counts 3 and 4 were
found by the grand jury to mean, as applied to Oscar Stilley.

6.      Please identify the specific provision of law the grand jury found which
identifies where the alleged crimes in counts 1, 3, and 4 occurred.

Page 2 of  3

Respectfully submitted,


By:_____/s/ Oscar Stilley_____
Oscar Stilley, Attorney at Law
7103 Race Track Loop
Fort Smith, AR 72916
479-996-4109
479-996-3409 Fax
oscar@oscarstilley.com

## CERTIFICATE OF SERVICE

I, Oscar Stilley, by my signature above certify that I have this April 10, 2009, caused the Plaintiff to be served with a copy of this pleading by CM/ECF to: Kenneth P. Snoke, United States Attorney's Office, 110 W 7th  Street, Suite 300, Tulsa , OK 74119-1013, ken.snoke@usdoj.gov; Charles A O'Reilly, US Dept of Justice, PO Box 972, Washington , DC 20044, email charles.a.o'reilly@usdoj.gov . Also by email to Lindsey K. Springer at Gnutella@mindspring.com .

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>ORDER FOR MOTION HEARING</u>

Before the court is defendant Oscar Amos Stilley's Motion for Bill of Particulars, filed on April 10, 2009 (doc. no. 33).

The motion is set for hearing on April 22, 2009, at 10:00 a.m., in Courtroom #4. The personal appearance of the defendant is required.

DATED April 10, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p005.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

     Plaintiff,

v.                       Case No. 09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

     Defendants.

MOTION FOR PROTECTIVE ORDER PENDING RESOLUTION OF PROSPECTIVE
FRANKS HEARING

Lindsey Kent Springer ("Springer"), by limited special appearance, and not a general appearance, moves this 28 U.S.C. § 116(a) United States District Court to direct the United States Attorney's Office for the Northern part of the United States' Oklahoma District to be temporarily prohibited from releasing certain discovery at issue in this Court's Order dated April 2, 2009, docket # 26, related to the illegal search of Springer's Home location, pending the outcome of any future Franks hearing pursuant to the Supreme Court's holding in Franks v. Deleware, 438 U.S. 154, 155 (1978).[1]  Springer is simultaneously herewith requesting the release of the

---

[1] In Franks v. Deleware, 438 U.S. 154, 155 (1978) the Supreme Court held that where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at

1

affidavits and other evidence presented on September 15, 2005, to obtain a search

warrant levied against Springer's Home Location on September 16, 2005.  Springer

is also simultaneously seeking the unsealing and release of certain events recorded

in 03-CR-55E.   A Rule 41 Motion is currently pending before United States District of

Oklahoma, Northern area Judge Gregory K. Frizzell in 05-M-1.  Springer would likely

ask for the Franks Hearing with 14 days from the date such evidence is tendered to

Springer at the direction of this Court.  Springer consulted with both Oscar Stilley

and Kenneth Snoke and neither of them had any stated opposition to this Motion.[2]

## BACKGROUND

Beginning in 1992, Springer announced his religious conviction from his God

to rid the earth of the Internal Revenue Service.   Indictment at 1.  Since at least

1997, Springer has been under criminal investigation by the Internal Revenue

Service for his relationship with Bondage Breaker's Ministries.   See Exhibit 1, IMF

Transcript, code 914 demonstrating Special Agent  Kathy Beckner, id # 73166200,

and her fellow investigators placing criminal hold on IRS records of Springer.

---

that hearing the allegation of perjury or reckless disregard is established by the
defendant by a preponderance of the evidence, and, with the affidavit's false
material set to one side, the affidavit's remaining content is insufficient to
establish probable cause, the search warrant must be voided and the fruits of
the search excluded to the same extent as if probable cause was lacking on
the face of the affidavit.

[2]Mr. Snoke informed Springer that Stilley had informed his legal assistant
that Stilley intended to pick up certain discovery on April 22, 2009, the date of
the current hearing scheduled by this Court.

2

For many year, the United States Department of Justice has conducted one criminal investigation after another attempting to reach the name Lindsey K. Springer in connection with some purported prohibited behavior. This investigation was not limited to the United States District of Oklahoma, Northern area, under 28 U.S.C. § 116(a), but also involved 28 U.S.C. § 116(c) known as the Western Division of the United States District of Oklahoma.   See Exhibit 2, Recusal in 05-466.

In or about 2002, Oscar Stilley was the recipient of prosecutorial misconduct involving the Assistant U.S. Attorneys Melody Noble Nelson ("Nelson"), Douglas Horn[3] ("Horn"), and an attorney from the Securities and Exchange Commission. See Exhibit 3, Stilley Amended Affidavit in 03-55, docket # 204 (Horn made threats to Stilley as well as sandbagged Eddy Patterson in connection with Grand Jury testimony involving SEC questioning).   Stilley's representation was in regard to Eddy Patterson. Id.

Sometime prior to 2003, Revenue Agent Donna Meadors ("Meadors") applied for the position of Special Agent with the IRS.[4]   She was turned down. Revenue Agent Meadors applied again and her application was pending during

---

[3]At all times relevant Douglas Horn was Chief over Criminal Cases in the United States District of Oklahoma's Northern area.

[4]Special Agent stands generally for Criminal Investigator.

her involvement with the criminal prosecution of Eddy and Judith Patterson.[56] Oscar Stilley represented Eddy Patterson in 03-CR-55E.   An attorney named Jerold Barringer represented Judith Patterson.

Revenue Agent Meadors worked with Nelson and Horn in the prosecution of both Eddy and Judith Patterson and gave testimony against both Pattersons during their trial.[7]   Pattersons' were found guilty by a jury on December 16, 2003 in 03-CR-55E.

On January 26, 2004, Revenue Agent Meadors informed Springer she was assigned to conduct a 6700 investigation of Springer.[8]   See Exhibit 4 (letter to Springer). Based upon certain conditions Springer agreed to answer certain questions of Meadors related to her 6700 investigation.   On September 3, 2004, Criminal Investigation ("CI") requested photos taken of something related to Springer. See Exhibit 5 (ICS History, pg. 9)   At some point Meadors made a criminal referral on Springer before December 2, 2004.

The 6700 investigation ended on December 2, 2004.  See Exhibit 6 (letter to Springer).    During the 6700 investigation Meadors informed Springer that she

---

[5]Springer took Meadors Depostion on April 9, 2009, in case 08-278, and said transcript shall be ready within 10 days or by April 19, 2009.

[6]Maybe as some sort of pre approval training.

[7]She was at all times present in the Court Room during the trial and at almost every phase of that case.

[8]Meadors swore on April 9, 2009, that she has been employed with the IRS since 1991 in case 08-278.

4

violated the terms of the agreement with Springer in that a Revenue Officer Fred

Rice ("Rice") was also being shared the information by Meadors that Springer

agreed could only be shown to Meadors.  See Exhibit 5 ("he was not happy")

Meadors also informed Springer her investigation of Springer would be her

last as a Revenue Agent as she was approved to be criminal Special Agent during

her investigation of Springer.   Group Manager Gregory Michael was also involved

in Meadors 6700 enquiry of Springer.   Meadors has been CI every since ending her

investigation under 6700 with Springer.

 After Rice chose to violate 26 U.S.C. § 6330 and leave a business card on

Springer's front door,[9] Springer filed action in the 28 U.S.C. § 116(c) Court in a case

styled Springer v. IRS, 05-466F.[10]  This action was commenced on April 25, 2005.

On April 26, 2005, the next day, someone[11] assigned Brian Shern, Special

_____

[9]Not the type of Notice Congress had in mind under the Reform and
Restructuring Act of 1998.  Rice was also deposed on February 24, 2009, in 08-
278, in which he was unaware of anything he had done.  He did not even
remember his employee ID numbers.

[10]The Honorable Stephen P. Friot was assigned after Judge LaGrange
recused herself.

[11]Springer was informed by deposition in 08-278 that David Reed was the
civil/criminal coordinator out of the Oklahoma City Area Counsel's office during
this time period.  Such an office would seem in and of itself to disqualify
whatever is left of the Supreme Court's reasoning behind United States v.
Sullivan, 274 U.S. 259 (1927)(although little remains if any).  Such an office would
also show why a day after Springer filed 05-466F that Shern was assigned to
purportedly begin another criminal investigation of Springer as well as it would
show how on September 15, 2005, just hours after Springer commenced 05-
1075F, Nelson sought a search warrant.

Agent with the IRS since February 11, 2005, to investigate Springer for tax evasion and willful failure to file tax returns.  See Exhibit 7, paragraph 5 (Declaration of Shern in 06-156).[12]

On August 16, 2005, Springer received two Notice of Determinations from the IRS civil/criminal coordinator stemming from a CDP Hearing conducted by Revenue Officer Penny and his supervisor.  Springer was given two options to appeal one to Tax Court and the other to the United States District Court in Oklahoma City.

On September 9, 2005, Robert D. Metcalfe submitted a declaration of Fred Rice in 05-466F informing that Court that no person with the IRS was planning to attempt collecting Bureau of Labor Statistics Taxes while the period of suspension prescribed by law was in place.  See Exhibit 8, paragraph 5 and 6.

On September 15, 2005, Springer commenced action in the 28 U.S.C. § 116(c) Court in Oklahoma City, case styled Springer v. IRS, 05-1075F.

Shortly after, and on the same day Springer commenced 05-1075, Melody Noble Nelson and Brian Shern presented a "declaration" for a search warrant to search a place outside of the United States external limits and clearly within the external limits of the State of Oklahoma to a U.S. Magistrate sitting in the United States Courthouse at Tulsa.  At 4:01 P.M. on September 15, 2005, and just hours after

---

[12]This case has been pending since February, 2006, and is scheduled for trial preparation on May 15, 2009.

6

Springer commenced 05-1075F, Nelson and Shern obtained a purported authorization to search Springer's home location.  See Exhibit 9, Declaration of Nelson in 06-156, pg. 23.    This warrant was unlawful in many ways.

On September 16, 2005, Special Agent Brian Shern and 10 other Special Agents, along with Horn and Nelson by phone directly, and for over 7 hours, Springer's home location was searched announcing they were working for a Federal Grand Jury.  Many things were taken and a search for many things not listed on any warrant was also sought.  No affidavit was tendered to Springer. Springer sought the affidavit and Nelson and Horn refused.  See Exhibit 9, pg. 10

Springer sought the return of certain things taken, including currency, to which Nelson and Horn resisted claiming the currency was evidence of a crime of "dealing in cash."  See Exhibit 9, pg. 39

In a declaration dated November 27, 2007, Nelson explained in case 06-156 that she refused to speak with Springer about the return of the currency because she said "I was uncomfortable with discussing matters with him over the telephone. Second, based on prior experience with Springer. I was concerned that anything I said to him might be taken out of context."  See Exhibit 9, pg. 5 Nelson also acknowledges in her declaration Springer asked her to recuse herself because of those past experiences which she "refused to do."  See Exhibit 9, pg. 4

On January 10, 2006, Springer was informed by Brian Shern that thousands of dollars was stolen from Springer on September 16, 2005.  See Exhibit 10, Order 06-

7

156.  Turns out that Nelson, Horn and Shern, were aware on September 16, 2005, money had been stolen from Springer yet they continued to argue to prevent its return to hide and cover up the theft that said currency should be retained as evidence of a tax evasion crime knowing the currency was not contraband and could not ever be retained under anyone's construction of any federal laws applicable in the State of Oklahoma.  See Exhibit 9, pg. 42, Court Order footnote. Nor was it evidence subject to forfeiture under either 18 U.S.C. § 981 and 982 or under Title 26, § 7203.  See Exhibit 7, Declaration of Brian Shern, pg. 20.

REASON FOR REQUEST OF THIS MOTION AND GRANTING OF SAME

On April 1, 2009, the United States sought protection by this Court involving certain discovery.  On April 2, 2009, without any time given to Springer to file any objection or opposition, this Court signed the proposed order presented to it by Kenneth Snoke.

On April 10, 2009, Springer received a phone call informing him that Springer needed to sign something and he could pick up 33,000 pages of electronic discovery.  Springer was informed by Oscar Stilley that he was also contacted and asked to provide the same written agreement over discovery in order to obtain the 33,000 pages.

If the 33,000 pages of discovery contains information obtained illegally by the Untied States from Springer then Stilley should not be allowed to take possession of that discovery.   That discovery will need to be suppressed.

8

There is no question that Meadors, Nelson, Horn, and Shern, with others possibly, obtained the search warrant on September 15, 2005, with false and misleading testimony and affidavit(s).

Springer has sought the affidavits for over 4 years and now its time those affidavits be turned over.

Springer is simultaneously requesting this Court to order the release of the sealed affidavits and other sealed information in 03-CR-55E so that Springer can properly move to suppress the evidence taken illegally by Meadors and the unlawful search warrant dated September 15, 2005.

Springer has a right to present proper request for a Franks Hearing. Springer has a Fourth Amendment Right regarding the seized property taken by both Meadors unlawfully and under false pretenses, as well as that property taken by the unlawful search warrant on September 16, 2005. See U.S. v. Edwards, 242 F.3d 928, 936 (10th Cir. 2001) quoting United States v. Martinez, 983 F.2d 968, 972 (10th Cir. 1992) (quoting United States v. Arango, 912 F.2d 441, 445 (10th Cir. 1990) (quoting Rakas v. Illinois, 439 U.S. 128, 139-40 (1978))). Meadors never informed Springer she was conducting a criminal investigation of Springer in her 6700 letters. See Exhibit 4 and 6.

If Stilley is tendered the information taken illegally from Springer in violation of the Fourth and Fifth Amendment, by both Meadors, Nelson, Shern and Horn, Springer's Fourth Amendment Right to be secure in his person, house, paper and

9

affects, will clearly have been violated.    This evidence should never have been used by anyone let alone seized.

Springer has a Rule 41 Motion pending in the District Court before Judge Frizzell.    Springer has a right to request a Franks Hearing before any potential discovery is turned over to Stilley or anyone else to be used or relied upon for any legitimate purpose.

Also, Springer has right to the information independent of whether Springer chooses to agree and accept the requirements of Fed.R.Cr.Pr. 16.

CONCLUSION

Lindsey Kent Springer requests this Court to issue a protective order directing the United States to cease turning over any discovery to anyone including Oscar Stilley until such time as Springer has had enough time to review the affidavits and other sealed information in connection with the gathering from Springer of information pursuant to 26 U.S.C. § 6700, and as that information and other information was presented by Melody Noble Nelson to obtain an illegal search warrant which was unlawfully relied upon to enter and search Springer's Home location in violation of the Fourth Amendment, and to allow Springer minimal time to make proper request for a Frank's Hearing.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

10

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Motion

for Protective Order was served by way of ECF System on April 13, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature

11

```
                                        MF-XTRCT-CYC>200512  SC-REASON-CD>6T
                                                         BOD-CD>WI
STS>72   MOD-BAL>          15,615.45  CYC>200513
STS>26   MOD-BAL>          15,615.45  CYC>200413  TODAYS-DT>03/31/2005   ICS>1
NDING TRANS    LAST-NOTICE>DAP   ARDI-CD>1   PRIMARY-LOC>7315
-----------------------                         COLLECT-LOC>30
D>05292005 FRZ>VT  -   |           AIMS-CD>1  COLLECTION-ASGMT>30142205
D>05292007 INTL>       |     FMS-CD>3      LIEN>4   MOD-YLD-SCOR>11002
D>04151995             |
-----------------------
CTRL-INFO>NO CASE CONTROLS
----------------------POSTED RETURN INFORMATION----------------------------
-RCVD-DT>02161996    MO-DELQ>5
3   NUM-EXEMPT>01
----------------------RETURN TRANSACTION---------------------------------
  T/C  POSTED     TRANS-AMOUNT      CYC    T      DLN
  150  10071996            0.00   199639    18210-251-00305-6    SFR
---------------------POSTED TRANSACTIONS SECTION------------------------
  T/C  POSTED     TRANS-AMOUNT      CYC    T      DLN
  424: 02261996            0.00   199610    73277-057-20000-6      SOURCE-CD>24
                                  PBC>000   SBC>00000  EGC>1137  PUSH-CD>021
  570  10071996            0.00   199639    18210-251-00305-6
loyee #6615428704 Page 001 of 005  PAGE  002
```

ODA        DOS>175Q   NET>10050.QX  PRD>099119nt: PLN-NUM>4267  NM-CTRL>SPRI 07/28/2010   Page: 199

```
 420   09271996           0.00   199641     73277-271-00000-6
                                   PBC>000   SBC>00000  EGC>1137
 300   01061997           0.00   199652     18247-754-10057-6 HOLD-CD>2
                                                            APPL-CD>254
                 DISP-CD>11
 520   01061997           0.00   199704     73277-006-00000-7  COLL-CLS-CD>72
                                   BLLC>24          APPL-CD>254
 560   03181997           0.00   199713     73277-077-77500-7       ASED>07101997
 370   05291997           0.00   199725     73251-149-13501-7
 300   05291997       7,979.00   199725     73251-149-13501-7
                           CSED>20070529
 160   05291997       1,995.00   199725     73251-149-13501-7
                                                CSED>20070529
 170   05291997         457.00   199725     73251-149-13501-7
                                                CSED>20070529
 190   05291997       5,184.45   199725     73251-149-13501-7
 914   01151998           0.00   199806     73277-416-30004-8
                                             AGENT-ID-NUM>73166200
 521   01041999           0.00   199904     73277-004-00000-9
 300   03011999           0.00   199907     18247-404-79007-9
                                             PRT-CD>2 APPL-CD>254
                 DISP-CD>01 ASED>05292005
loyee #6615428704 Page 002 of 005  PAGE  003
```

| 912 | 02191999 | 0.00 | 199909 | 18277-453-30010-9 | |
| | | | | | AGENT-ID-NUM>18000000 |
| 582 | 04301999 | 0.00 | 199919 | 73277-523-54137-9 | |
| | | | REGULAR LIEN | | |
| 530 | 07301999 | 0.00 | 199932 | 73277-614-56159-9 | |
| | | | | COLL-CLS-CD>12 | |
| 971 | 11242003 | 0.00 | 200347 | 28277-001-99999-3 | 971-CD>060 |
| 531 | 01082004 | 0.00 | 200404 | 57277-408-02088-4 | |
| 971 | 01102004 | 0.00 | 200404 | 63277-412-01952-4 | 971-CD>611 |
| 972 | 02092004 | 0.00 | 200405 | 28277-001-99999-4 | 971-CD>060 |
| 971 | 04122004 | 0.00 | 200413 | 18277-999-99999-4 | 971-CD>061 |
| 972 | 06282004 | 0.00 | 200424 | 18277-999-99999-4 | 971-CD>061 |
| 971 | 07052004 | 0.00 | 200426 | 28277-001-99999-4 | 971-CD>060 |
| 971 | 09142004 | 0.00 | 200438 | 49277-660-02312-4 | 971-CD>611 |
| 971 | 02112005 | 0.00 | 200508 | 49277-446-09983-5 | 971-CD>611 |
| 971 | 03022005 | 0.00 | 200511 | 49277-463-03311-5 | 971-CD>066 |
| 971 | 03022005 | 0.00 | 200511 | 49277-463-03312-5 | 971-CD>069 |

------------------------PENDING TRANSACTIONS SECTION------------------------

| 971 | 03252005 | 0.00 | 200514 | 49277-487-02475-5 | 971-CD>275 |
| 520 | 03282005 | 0.00 | 000001 | 57277-089-00000-5 | COLL-CLS-CD>77 |
| | | | BLLC>30 | | CSED-EXT-IND>P |

loyee #6615428704 Page 003 of 005 PAGE 004

```
OTICE          AMOUNT        CYC   S  AO
P71A           27,212.11    200343 M  15    SUPPRESS-CD>0
P504           27,425.65    200401 I  30    SUPPRESS-CD>0
PDP2           27,503.59    200405 I  15    SUPPRESS-CD>0
AP             15,615.45    200410 M  15
AP             27,620.94    200411 I  30    SCND-TDA-SEL>A
AP             27,668.59    200413 I  30
----------------------CONTROL BASE AND HISTORY INFORMATION---------------------
  STATUS    ACT-DT   ACTION-EMP   ACTIVITY   RCVD-DT  ASSIGN-TO  CAT  ORG F S
           03172004  3023647873  STAUP2200                                C
----------------------SERVICE CENTER HISTORY SECTION-----------------------
-STS   DATE        STATUS-AMOUNT     CYC
53    11032003        15,615.45    200343
58    01192004        15,615.45    200401
8D    02162004 NXT>505             200405 MIN-NUM-DELAY>06
0     03292004 NXT>505             200411 MIN-NUM-DELAY>00
2     03292004        15,615.45    200411
6     04132004        15,615.45    200413
2     04122005        15,615.45    200513
----------------------MASTER FILE HISTORY SECTION-----------------------
STS   DATE        STATUS-AMOUNT     CYC
loyee #6615428704 Page 004 of 005  PAGE  005
```

Case 4:09-cv-00 Document 35-2   Filed 04/13/2009   Page 5 of 5
Case: 1:05-cv-45 Document: 01018464267   Date Filed: 07/28/2010   Page: 202

| 12 | 01061997 | 15,615.45 | 199650 |
| 21 | 05291997 | 15,615.45 | 199725 |
| 58 | 07211997 | 15,615.45 | 199728 |
| 22 | 09011997 | 15,615.45 | 199734 |
| 26 | 09221997 | 15,615.45 | 199737 |
| 58 | 03151999 | 15,615.45 | 199909 |
| 26 | 03221999 | 15,615.45 | 199910 |
| 58 | 01192004 | 15,615.45 | 200401 |
| 22 | 03292004 | 15,615.45 | 200411 |
| 26 | 04122004 | 15,615.45 | 200413 |

·loyee #6615428704 Page 005 of 005  PAGE  001

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

LINDSEY K. SPRINGER,                          )
                                             )
              Plaintiff(s),                   )
                                             )
v.                                            )        Case No. CIV-05-466-M
                                             )
INTERNAL REVENUE SERVICE, et al.,             )
                                             )
              Defendant.                      )

# O R D E R

Pursuant to 28 U.S.C. § 455, I recuse as the judge to whom this case is assigned.  The Clerk

of the Court is directed to return this case to the regular procedure for random selection so

that a successor judge may be determined.

**IT IS SO ORDERED this __28th__ day of April, 2005.**

VICKI MILES-LaGRANGE
UNITED STATES DISTRICT JUDGE





FILED
OCT 18 2004
Phil Lombardi, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                        PLAINTIFF

v.                              Case No. 03CR 55 EA

EDDY PATTERSON and
JUDITH PATTERSON                                               DEFENDANTS

### AMENDED AND SUPPLEMENTAL
### AFFIDAVIT OF OSCAR STILLEY

STATE OF Arkansas )
                  )ss
County of Sebastian )

Before the undersigned, a Notary Public, duly qualified and acting in and for said County

and State, appeared Oscar Stilley, satisfactorily proven to be the affiant herein, who stated the

following under oath:

1.      I am over the age of eighteen years, of sound mind, and have personal knowledge of all

matters set forth within this affidavit.

2.      I received from Debra Lyons a fax dated July 27, 2004, to which was attached a copy of a

letter purportedly from Judith Patterson.

3.      I called Ms. Lyons and asked her if she had witnessed the signature. My log of the event

states: "Review fax from Debra Lyons, she says she sent the fax on behalf of her mother, would

not discuss whether she had witnessed the signature, she hung up on me."

1



4.      I was suspicious of the document, as it had not originated from the prison at which Judith

Patterson was confined.  Furthermore, Ms. Lyons was very hostile, and refused to provide

reasonable assurances that the faxed document was genuine.

5.      I caused to be made two phone calls, one on the 29th and one on August 10, 2004,

attempting to speak with Ms. Patterson and confirm whether or not she had written the letter.  I

had already called for her on July 26th, 2004, and knowing the speed of communications in

prison, felt it a useless act to call the day after a previous call.

6.      Judy Patterson has always spoken kindly and in a pleasant tone, in any conversations with

me.  She has always returned calls made under circumstances that I knew the message would be

received.

7.      Ms. Patterson knew that I was not her attorney of record for any of her criminal matters,

but nonetheless asked me to respond to some legal questions she had.  While she had always

shown a very high regard for Mr. Barringer, at times she felt more comfortable asking me about

various details, but always with the understanding that Mr. Barringer was her attorney and would

give her legal advice and maintain sufficient communication that she was well informed of her

case.

8.      Ms. Patterson told me that she definitely wanted to do an appeal, scant days before the

notice of appeal was filed.  She has never stated to me in any oral communication that she is or

was dissatisfied with the appeal.

9.      I still do not believe that the purported letter from Ms. Patterson, faxed to me July 27,

2004, has the genuine signature of Judith Patterson.  She has never confirmed to me that she

wrote that letter.  The lack of a notarization, on a document containing a place for a notarization,

is simply further indicia that photocopies of documents purporting to bear the signature of Ms. Patterson are not to be trusted.

10.    Steven Knorr told me in telephone conversations that he was fully aware that he could have obtained the immediate liberty of Eddy Patterson on a Blakely motion, the maximum legal sentence having already been served. Steven Knorr said that the government was threatening to reindict on supposedly slightly different charges, if Eddy Patterson exercised his legal rights and obtained his immediate liberty.

11.    Eddy Patterson attended a session of the grand jury to give testimony concerning the suggestion that was not compliant with certain unidentified tax laws. At the time of this visit, client's husband was also represented by a law firm of Hall Estill located in Tulsa, Oklahoma, concerning certain securities matters. I was never informed that the government intended to ask any questions unrelated to tax matters. To my knowledge, the attorneys at Hall Estill were also unaware of the plan to suprise Eddy Patterson with questions on security matters. Government attorneys asked Eddy Patterson numerous questions about the securities matters, although Eddy Patterson had not been given opportunity to consult with counsel on these issues prior to questioning before the grand jury.

12.    After the questioning before the grand jury, Mr. Horn, Mrs. Nelson and certain SEC staff attorneys, asked to visit with me and Mr. Patterson in a waiting room where I was directed to remain during grand jury proceedings. Mr. Horn approached me to a close and uncomfortable proximity, and with a very angry and hostile voice accused me of representing Mr. Patterson in such a manner that Mr. Patterson would go to prison what would likely amount to a life sentence. Mr. Horn pointedly and angrily informed Mr. Patterson that he had better get other

legal counsel lest he suffer a sentence amounting to a life sentence.

13.    I have read the above and foregoing statements and swear or affirm that they are true and correct to the best of my knowledge and belief.

Further Affiant sayeth not.

IN WITNESS WHEREOF, I hereunto set my hand this October 13, 2004.


_____
Oscar Stilley, Affiant


Subscribed to on oath or affirmation before me this October 13, 2004.

```
MARCUS COKER
Crawford County
My Commission Expires
October 7, 2013
```

_____              _____
My commission expires:                        Notary Public

Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 208
Area Director                                                    Internal Revenue Service

**Date:**   January 26, 2004

|  |  |
|---|---|
|  | **Examiner:** |
|  | Donna Meadors |
|  | **Telephone Number:** |
|  | (918)581-7030 x241 |
|  | **Refer Reply To:** |
|  | 1645 S. 101st E. Ave, Suite 226 |
|  | Mail Stop 4131:DM |
|  | Tulsa, OK  74128 |

Lindsey K. Springer
5147 S. Harvard, #116               **Date, Place & Time of Examination:**
Tulsa, OK  74135                    **Wednesday, February 11, 2004**
                                    **9:00 a.m.**
                                    **1645 S. 101st E. Avenue**
                                    **Taxpayer Service, 2nd Floor**

Dear   Mr. Springer:

We have reviewed certain materials with respect to your tax shelter promotion.  We are considering possible action under Section 6700 and 7408 of the Internal Revenue Code relating to penalties and an injunction action for promoting abusive tax shelters.  In addition, we plan to consider issuing "pre-filing notification" letters to the investors who have invested in this promotion.

You are requested to meet with the examiner at the above date, time and location.  Enclosed is a list of documents, books and records that you should have available and questions you should be prepared to reply to at that time.

If we conclude that penalties, injunction, and/or "pre-filing notification" action is appropriate, you will be afforded an opportunity to present any facts or legal arguments that you feel indicate that such action should not be taken.

                                    Sincerely,

                                    Donna Meadors
                                    Revenue Agent #  73-2558

Enclosures:
    Form 4564, Information Document Request
    Publication 3498
    Publication 1

ICS HISTORY TRANSCRIPT

CASE TIN: 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        CASE NAME: LINDSEY K SPRINGER

SYSTEMIC HISTORY: UNDO

REOPENING CIP INVENTORY   ERRONEOUSLY CREATED CIP      00000001

---

ACT DT: 09/03/2004 SYS DT: 09/07/2004 CONTACT: OTHER     CREATE ID: 30012713
    GENERAL HISTORY

CI requested copies of photos made copies on discs of the photos taken in
compatable format.

---

ACT DT: 09/07/2004 SYS DT: 09/07/2004 CONTACT: OTHER     CREATE ID: 30012713
    GENERAL HISTORY

Provided photo disc to CI.

---

ACT DT: 09/08/2004 SYS DT: 09/08/2004 CONTACT: OTHER     CREATE ID: 30012713
    GENERAL HISTORY

Met with Donna Meadors - she is receiving the summons information today and
has meeting scheduled at 9:30 with taxpayer. I will be able to be part of the
interview process and make initial contact. I will be provided with copies of
the summons documents first thing tommorrow morning which will allow me
minimal time to review and develop additional interview questions - reviewing
file and developing interview questions for tommorrows meeting. Taxpayer has
not filed a return since at least 1990 - all bal dues are SFR and Donna is
sure he will challenge the assessments.

---

ACT DT: 09/14/2004 SYS DT: 09/14/2004 CONTACT: OTHER     CREATE ID: 30012713
    GENERAL HISTORY

Spoke with Donna Meadors - she informed taxpayer of my involvement and he was
not happy about same - she also informed him that the summonsed info would be
provided to me - she is sending third party contacts to all names uncovered
through the summons process and will be interviewing them. She did not go

**Internal Revenue Service**                    **Department of the Treasury**

Examiner:

Donna Meadors

Date: December 2, 2004

Examiner's Employee Identification Number:
73-2558
Contact Telephone Number:
(918)581-7030x241
Fax Number:
(918)581-7094

Mr. Lindsey K. Springer
5147 S. Harvard, Suite 116
Tulsa, OK 74106

Dear Mr. Springer

We have reviewed materials regarding your participation in tax avoidance transactions. Based on the information provided, we are discontinuing the review at this time with respect to possible action under Internal Revenue Code sections 6694, 6695, 6700, 6701, 7402, 7407 and 7408 as they relate to these transactions. This letter should not be considered to mean that the Internal Revenue Service has approved the tax avoidance transactions; rather, it is a notice that our action under the above code sections has been discontinued.

Our review of the transaction does not constitute an examination of your income tax returns. We may examine your income tax returns for correct determination of any income tax liability.

Please contact me if you have any questions you would like to discuss.

Thank you for your cooperation.

Sincerely yours,

*Donna Meadors*

**Letter 1866 (Rev. 4-2004)**
Catalog Number 61481V

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF OKLAHOMA

LINDSEY K. SPRINGER, )
)
      Plaintiff, )
)
vs. )   Case No. 06-CV-156-GKF-FHM
)
DOUGLAS HORN, Individually; )
MELODY NOBLE NELSON, )
Individually; BRIAN SHERN, )
Individually; and 10 Unknown Agents )
of the Internal Revenue Service, )
Individually; and Others Unknown, )
Individually, )
)
      Defendants. )

## DECLARATION OF IRS SPECIAL AGENT BRIAN SHERN

I, BRIAN SHERN, declare that:

1.    I am a duly commissioned Special Agent with the Criminal Investigation Division of the Internal Revenue Service with post of duty in Tulsa, Oklahoma. I have been a Special Agent since February 11, 2005.

2.    This Declaration is being executed in support of the individual federal defendants' motion for summary judgment in the above-captioned civil action. I am one of the defendants in this civil action.

3.    Except where specifically noted to the contrary, I have personal knowledge of the facts set forth in this Declaration, and, if called upon to testify to said facts, could do so competently.

4.    As a Special Agent with the Internal Revenue Service – Criminal Investigation, I have the authority to perform all duties conferred upon such officers

2878673.1

under all laws and regulations administered by the Internal Revenue Service, including

the authority to investigate, execute and serve search warrants and arrest warrants, make

arrests without warrant, carry firearms, make seizures of property subject to forfeiture

and to require and receive information, as to all matters relating to such laws and

regulations.

5.      On or about April 26, 2005, I was assigned as the case agent to conduct an

investigation of Lindsey Springer for allegations of violations of Title 26, United States

Code, including tax evasion and failure to file income tax returns.  On September 15,

2005, I presented an application and affidavit for search warrant to search Springer's

residence in Kellyville, Oklahoma, to United States Magistrate Judge Frank H.

McCarthy.  On the same date, Magistrate Judge McCarthy signed a search warrant to

search Lindsey Springer's Kellyville, Oklahoma, residence.  A true and correct copy of

the Search Warrant (including Attachments A and B thereto) is attached to this

Declaration as Exhibit 4.

### The execution of the search warrant on September 16, 2005

6.      The authority of Special Agents of the Internal Revenue Service –

Criminal Investigation to execute search warrants is set forth in section 7608(b) of the

Internal Revenue Code (26 U.S.C.).  On September 16, 2005, I and ten other Special

Agents with the Internal Revenue Service – Criminal Investigation executed a search

warrant signed by U.S. Magistrate Judge Frank H. McCarthy on September 15, 2005,

with respect to the personal residence of Lindsey K. Springer in Kellyville, Oklahoma.

7.      I arrived at Lindsey Springer's residence in Kellyville, Oklahoma at

approximately 8:20 a.m. on the morning of September 16, 2005.  At the outset of the

execution of the search warrant, I explained to Mr. Springer that we were conducting a search of his residence in accordance with the search warrant signed by Magistrate Judge McCarthy on September 15, 2005. I showed Mr. Springer a copy of the search warrant. To ensure the safety of both Mr. Springer and the IRS Special Agents who were assigned to assist me in the execution of the search warrant, Mr. Springer was asked if any firearms or weapons were located in his home.

8.      In the presence of IRS Special Agent Donald G. Shoemake, I asked Mr. Springer if there was a more private place where we could speak to him. Mr. Springer led Agent Shoemake and myself to an upstairs bedroom where we interviewed Mr. Springer from approximately 8:27 a.m. to approximately 11:20 a.m.

9.      At the conclusion of the search on September 16, 2005, all of the evidence seized from Lindsey Springer's residence was placed in the back of Supervisory Special Agent William R. Taylor's vehicle to be transported back to the IRS-CI Office in Tulsa, Oklahoma.

### The seized currency is counted at Arvest Bank

10.      After contacting IRS Special Agent Mark Parsons, a forfeiture specialist, it was decided by Supervisory Special Agent Taylor and myself that the currency seized from Mr. Springer's residence would be taken to a bank and converted into a cashier's check.

11.      Upon leaving Springer's residence in Kellyville, Oklahoma, Supervisory Special Agent Taylor and myself traveled to the Arvest Bank located at 10615 E. 81st Street in Tulsa, Oklahoma. Once we arrived at the Bank, we informed the branch manager, Julie Powders, that we needed to obtain a cashier's check.

12.     We gave the sealed evidence bag containing the currency seized from Springer's residence to Ms. Powders, who gave the evidence bag to a teller on duty to count the cash using a currency counting machine. The teller opened the evidence bag in order to count the currency seized from Springer's residence, and counted it using a counting machine.

13.     The teller who counted the currency contained in the evidence bag informed Supervisory Special Agent Taylor and myself that there was $17,000 in the evidence bag. We requested the teller to count the currency a second time, which she did. The count of the currency again came to $17,000.

14.     We requested a check for $17,000, which we obtained from the teller who had counted the currency. The $17,000 cashier's check was subsequently given to Special Agent Parsons to deposit.

### Springer's motion for the return of currency and car titles

15.     After the execution of the search warrant on September 16, 2005, I was informed that Mr. Springer had filed a motion from the Court for the return of the currency and car titles seized from him on September 16, 2005. I was also informed that AUSA Nelson had responded to Mr. Springer's motion for the return of the currency and car titles, and that the District Court had denied Mr. Springer's motion.

16.     After the Court denied Mr. Springer's motion for the return of the currency and car titles, I was instructed by Assistant United States Attorney Douglas Horn to return the seized currency and car titles to Mr. Springer. I then made a request to Robin Bryant, a forfeiture specialist, to obtain the $17,000 to give back to Springer.

- 4 -

17.     On January 10, 2006, after I obtained a $17,000 Treasury Department check from Robin Bryant, I went to Springer's house in Kellyville, Oklahoma, to give him the $17,000 Treasury check.  A true and correct copy of the $17,000 Treasury check is attached to this Declaration as Exhibit 5

18.     After tendering the $17,000 Treasury check to Springer, I asked him to sign an Internal Revenue Service Release of Claim (hereinafter, "Release of Claim").  I wrote the handwritten words and figures that appear on the Release of Claim.  A true and correct copy of the Release of Claim signed by Lindsey Springer in my presence (and myself as witness), is attached to this Declaration as Exhibit 6.

19.     I was not present for the search of Mr. and Mrs. Springer's first-floor master bedroom, or the seizure of the currency pursuant to the search warrant issued by U.S. Magistrate Judge Frank H. McCarthy on September 15, 2005.  My sole involvement with the currency seized from Springer's residence was to take it, in a sealed evidence bag, to the Arvest Bank for counting.

20.     I did not steal any money from Lindsey K. Springer, or enter into any agreement or conspiracy with former Assistant United States Attorney Melody Nelson, Assistant United States Attorney Douglas Horn or any IRS Special Agent, or anyone else, to steal any money from Lindsey Springer.

## CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Executed on November 28, 2007.

_____
BRIAN SHERN
Special Agent
Internal Revenue Service

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the forgoing **DECLARATION** was filed

with the Clerk of the court electronically today, July 14, 2008, such that a service copy was sent

by way of the electronic filing system to the plaintiff and all counsel who have arranged for

electronic service of filings

<div style="margin-left: 50%;">

*/s/ Robert D. Metcalfe*
ROBERT D. METCALFE DC #423163
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington, D.C.  20044

</div>

AO 93 (Rev. 5/85) Search Warrant

# United States District Court

NORTHERN _____ District of _____ OKLAHOMA

In the Matter of the Search of

Name, address or brief description of person, property or premises to be searched)

Premises known as:
**25758 South 201st West Avenue**
**Kellyville, Oklahoma**

## SEARCH WARRANT

Case No. _____

To: Brian M. Shern and any Authorized Officer of the United States:

Affidavit(s) having been made before me by Brian M. Shern, who has reason to believe that on the premises known as

SEE ATTACHMENT A – LOCATION TO BE SEARCHED, ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE

in the Northern District of Oklahoma, there is now concealed certain property, namely

SEE ATTACHMENT B – ITEMS TO BE SEIZED, ATTACHED HERETO AND MADE A PART HEREOF BY REFERENCE

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before     **9-25-05**
                                                                        Date
(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) and if the person or property to be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to Magistrate Judge Frank H. McCarthy as required by law.

**9-15-05     4:01 PM**
Date and Time Issued                    at                    Tulsa, Oklahoma

Frank H. McCarthy, U.S. Magistrate Judge

Name and Title of Judicial Officer                    Signature of Judicial Officer

```
EXHIBIT

    4
```

**ATTACHMENT A**

**LOCATION TO BE SEARCHED**

Two-story residence and curtilage, surrounding outbuildings, appurtenances, buses, automobiles, and property (including locked containers) of LINDSEY SPRINGER located at 25758 SOUTH 201ST WEST AVENUE, KELLYVILLE, OKLAHOMA, 74039, more specifically described as follows:

A two-story residence located on the west side of South 201st West Avenue. The entrance of the residence faces northeast. The residence is made of reddish-brown colored brick with light colored grayish siding covering the majority of the front of the residence. The door and windows of the residence are white. There is an unattached two-car garage and two small outbuildings that are perpendicular to the residence and face southeast. South 201st West Avenue is not identified with a street sign. It is 1.2 miles west of the turnpike gate on State Highway 33, which can be accessed from exit number 211 off the Turner Turnpike, headed westbound from Sapulpa. Adjacent to the entrance of South 201st West Avenue from State Highway 33 is a gray mailbox on a wooden post with the numbers "12244". The residence located at 25758 South 201st West Avenue is approximately one quarter-mile on South 201st West Avenue from this mailbox.

Attached is a map showing the location of the residence, a satellite photograph of the residence and surrounding area, and some photographs of the residence and the mailbox adjacent to the road leading up to the residence.

Page 1 of 5







Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 222





# ATTACHMENT B

## ITEMS TO BE SEIZED

Based on the foregoing, I respectfully submit that there is probable cause to believe

that the following items, which constitute evidence of violations of Title 26, United

States Code Sections 7201 and 7203, will be found at the location described in

Attachment A in individual and business names including, but not limited to

LINDSEY SPRINGER, OSCAR STILLEY, and BONDAGE BREAKERS

MINISTRIES. All of the items to be seized as referenced below are for the year

beginning January 1, 2000 through the execution of the warrant including the

following:

1. Client billing records, fee schedules, contracts for employment, estimates for

   services, filed court documents, and correspondence (opened and unopened)

   relating to the above referenced items;

2. Currency and monetary instruments including cashier's checks, receipts of

   cashier's checks, money orders, traveler's checks, and other monetary

   instruments;

3. Bank records including bank statements, deposit tickets, cancelled checks, debit

   and credit memos, records of wire transfers, and records of safe deposit box

   rental and entry, financial statements, and correspondence (open and unopened)

   with banks and financial institutions;

4. Financial records including tax returns, documents relating to the preparation of

   his tax returns, documents related to the purchase and sale of automobiles or

other vehicles or machinery, documentation of business expenses,

documentation of other expenses, documentation of personal expenditures, and

credit card records;

5. Financial statement records including books, ledgers, notations, memoranda,

cash receipts and disbursements journals, general journals, accounts receivable

and payable ledgers, general ledgers, balance sheets, profit and loss statements,

and income distribution statements;

6. Loan records from any source whatsoever and payments relating thereto, as well

as loan applications, financial statements, and documents related to the

attainment of loans;

7. Address and/or telephone records reflecting names, addresses, and/or telephone

numbers;

8. Property records including documents related to the purchase and sale of real

estate;

9. Records of mailbox or drop box rentals;

10. Records of storage rentals;

11. Rental or lease agreements of real property, autos, electronics, equipment, and

machinery;

12. As used above, the terms records, documents, or statements include records,

documents, or statements created, modified, or stored in any form.

13. In searching for data capable of being read, stored or interpreted by a computer,

law enforcement personnel executing this search warrant will employ the

following procedure:

Page 2 of 5

a.  Upon securing the premises, law enforcement personnel trained in

searching and seizing computer data (the "computer personnel") will make

an initial review of any computer equipment and storage devices to

determine whether these items can be searched on-site in a reasonable

amount of time and without jeopardizing the ability to preserve the data.

b.  If the computer equipment and storage devices cannot be searched on-

site in a reasonable amount of time, then the computer personnel will

determine whether it is practical to copy the data during the execution of

the search in a reasonable amount of time without jeopardizing the ability

to preserve the data.

c.  If the computer personnel determine it is not practical to perform an on-

site search or make an on-site copy of the data within a reasonable

amount of time, then the computer equipment and storage devices will be

seized and transported to an appropriate law enforcement laboratory for

review.  The computer equipment and storage devices will be reviewed by

appropriately trained personnel in order to extract and seize any data that

falls within the list of items to be seized set forth herein.

d.  In searching the data, the computer personnel may examine all of the data

contained in the computer equipment and storage devices to view their

precise contents and determine whether the data falls within the items to

be seized as set forth herein.  In addition, the computer personnel may

search for and attempt to recover "deleted," "hidden" or encrypted data to

determine whether the data falls within the list of items to be seized as set

forth herein.

e.  If the computer personnel determine that the data does not fall within any

of the items to be seized pursuant to this warrant or is not otherwise

legally seized, the government will return these items within a reasonable

period of time not to exceed 60 days from the date of seizure unless

further authorization is obtained from the court.

14. In order to search for data that is capable of being read or interpreted by a

computer, law enforcement personnel will need to seize the following items,

subject to the procedures set forth above:

a.  Any computer equipment and storage device capable of being used to

commit, further or store evidence of the offense listed above;

b.  Any computer equipment used to facilitate the transmission, creation,

display, encoding or storage of data, including word processing

equipment, modems, docking stations, monitors, printers, plotters,

encryption devices, and optical scanners;

c.  Any magnetic, electronic or optical storage device capable of storing data,

such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs,

DVDs, optical disks, printer or memory buffers, smart cards, PC cards,

memory calculators, electronic dialers, electronic notebooks, and personal

digital assistants;

d.  Any documentation, operating logs and reference manuals regarding the

operation of the computer equipment, storage devices or software;

e.  Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f.  Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g.  Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.



# United States Treasury 15-51/000    P 987,971,615

Check No.

01 03 06    5  PHILADELPHIA, PA        2049 30301741
2049 30301741 70050800 M1  US CUSTOMS 0000B06014

Pay to
the order of    **LINDSEY SPRINGER**
C/O IRS CID ASSET FORFEITURE
55 N ROBINSON, STOP 9010
OKLAHOMA CITY, OK  73102                    $**17000*00



IRS7505006401
55863798 CURRENCY REFUND

**EXHIBIT**

5

Seizure Case Number: _____

Evidence <$500 Number: _____

Aftrak Number: _____

# INTERNAL REVENUE SERVICE
## RELEASE OF CLAIM

This agreement is made between

_LINDSEY K. SPRINGER_      _5147 South Harvard, #116, Tulsa, OK_
      (Name)                              (Address)

and the Internal Revenue Service of the United States Department of the Treasury. This agreement is made in consideration of the return of:

_$17,000.00   U.S._

_____

_____

_____

(Description of Property)

registered to/owned by:

_LINDSEY K. SPRINGER_      _5147 South Harvard, #116, Tulsa, OK_
                              (Name and Address)

which was seized pursuant to Title 18 U.S.C. Section 981 or 982/Title 26 U.S.C. Section 7302 in the course of a criminal or civil investigation, and for other consideration, the receipt of which is hereby acknowledged.

Being the    **OWNER AND/OR AUTHORIZED AGENT**    of the property as evidence by a
                    (Type of Interest)

_previous possession_ _____
                    (Title, Registration, Contract, Note, Etc.)

dated    _09/16/2005_ .

The registrant/owner hereby agrees to unconditionally release and hold harmless the Internal Revenue Service, its officers, employees and agents, from any and all claims, demands, damages, causes of action or suits, whether in official or individual capacity, of whatever kind and description, and wheresoever situated, that might now exist or hereafter exist by reason of, or growing out of, or affecting, directly or indirectly, the seizure, custody or return of the above-described property.

Executed this   _10th_   day of   _January_ , 20 _06_ .

```
EXHIBIT
   6
```

_____
Signature of Recipient

_____
Signature of Witness

Case 4:09-cr-43    Document 35-9    Filed 04/13/2009    Page 1 of 6

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDSEY K. SPRINGER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-05-466-F |
| | ) |
| UNITED STATES OF AMERICA, *et al.,* | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DECLARATION OF IRS REVENUE OFFICER FREDERICK J. RICE

I, FREDERICK J. RICE, also known as Fred Rice, declare that:

1.    I am a duly commissioned Revenue Officer who is employed by the Internal Revenue Service ("IRS") in Oklahoma City, Oklahoma.

2.    As a Revenue Officer, I am responsible for investigating and collecting the delinquent federal tax liabilities that have been assessed against taxpayers. I also conduct taxpayer delinquent investigations to secure the federal tax returns that taxpayers were required by law to file with the IRS, but failed to do so. I have been employed as a Revenue Officer for approximately 21 years.

3.    This Declaration is executed in support of the United States' Brief in Opposition to Plaintiff's Motion for Temporary Restraining Order.

4.    Except where specifically noted to the contrary, I have personal knowledge of the facts set forth in this Declaration, and, if called upon to testify to said facts, could do so competently.

5.     I was assigned to collect the federal income taxes and statutory additions to tax that were assessed against the taxpayer, Lindsey K. Springer ("Springer"), for the tax years ending December 31, 1990 through December 31, 1995, and his liability for the IRC § 6673 penalty imposed by the United States Tax Court.

6.     In accordance with the provisions of IRS § 6330 and the corresponding provisions of the Treasury Regulations and Internal Revenue Manual, I sent Springer an IRS "Final Notice – Notice of Intent to Levy and Notice of Your Right to a Hearing" (Letter 1058) on March 2, 2005, with respect to the federal tax liabilities described in paragraph 5, above.

7.     I suspended my efforts to collect the federal tax liabilities described in paragraph 5, above, after learning that Springer had filed a request for a collections due process hearing with respect to those federal tax liabilities on or about March 15, 2005. At the time that I suspended the collection of Springer's federal tax liabilities, I had not seized or levied upon any property or rights to property to satisfy Springer's federal tax liabilities.

8.     I have read, and am familiar with, the notices of determination that were issued to the taxpayer, Lindsey K. Springer, on August 16, 2005, with respect to his request for a collection due process hearing under IRC § 6330. Neither I, or, to my knowledge, any other IRS employee has undertaken to collect the federal tax liabilities described in paragraph 5, above. The collection of those federal tax liabilities will remain in suspension during the period prescribed by law.

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Executed on August _31ˢᵗ_, 2005.

FREDERICK J. RICE
Revenue Officer
Internal Revenue Service

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LINDSEY K. SPRINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-05-466-F |
| | ) | |
| UNITED STATES OF AMERICA, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF IRS REVENUE OFFICER FREDERICK J. RICE

I, FREDERICK J. RICE, also known as Fred Rice, declare that:

1.     I am a duly commissioned Revenue Officer who is employed by the Internal Revenue Service ("IRS") in Oklahoma City, Oklahoma.

2.     As a Revenue Officer, I am responsible for investigating and collecting the delinquent federal tax liabilities that have been assessed against taxpayers. I also conduct taxpayer delinquent investigations to secure the federal tax returns that taxpayers were required by law to file with the IRS, but failed to do so. I have been employed as a Revenue Officer for approximately 21 years.

3.     This Declaration is executed in support of the United States' Brief in Opposition to Plaintiff's Motion for Temporary Restraining Order.

4.     Except where specifically noted to the contrary, I have personal knowledge of the facts set forth in this Declaration, and, if called upon to testify to said facts, could do so competently.

5.      I was assigned to collect the federal income taxes and statutory additions to tax that were assessed against the taxpayer, Lindsey K. Springer ("Springer"), for the tax years ending December 31, 1990 through December 31, 1995, and his liability for the IRC § 6673 penalty imposed by the United States Tax Court.

6.      In accordance with the provisions of IRS § 6330 and the corresponding provisions of the Treasury Regulations and Internal Revenue Manual, I sent Springer an IRS "Final Notice – Notice of Intent to Levy and Notice of Your Right to a Hearing" (Letter 1058) on March 2, 2005, with respect to the federal tax liabilities described in paragraph 5, above.

7.      I suspended my efforts to collect the federal tax liabilities described in paragraph 5, above, after learning that Springer had filed a request for a collections due process hearing with respect to those federal tax liabilities on or about March 15, 2005. At the time that I suspended the collection of Springer's federal tax liabilities, I had not seized or levied upon any property or rights to property to satisfy Springer's federal tax liabilities.

8.      I have read, and am familiar with, the notices of determination that were issued to the taxpayer, Lindsey K. Springer, on August 16, 2005, with respect to his request for a collection due process hearing under IRC § 6330.  Neither I, or, to my knowledge, any other IRS employee has undertaken to collect the federal tax liabilities described in paragraph 5, above.  The collection of those federal tax liabilities will remain in suspension during the period prescribed by law.

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing

is true and correct.

Executed on August _31 st_, 2005.



FREDERICK J. RICE
Revenue Officer
Internal Revenue Service

- 3 -

## IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LINDSEY K. SPRINGER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 06-CV-156-GKF-FHM |
| ) | |
| DOUGLAS HORN, Individually; MELODY ) | |
| NOBLE NELSON, Individually; BRIAN ) | |
| SHERN, Individually; 10 UNKNOWN ) | |
| AGENTS OF THE INTERNAL REVENUE ) | |
| SERVICE, Individually; and OTHERS ) | |
| UNKNOWN, Individually, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## DECLARATION OF MELODY NOBLE NELSON

I, MELODY NOBLE NELSON, declare that:

1. I am presently employed as an Assistant Attorney General in the Oklahoma Attorney General's Office in Tulsa, Oklahoma, where I prosecute criminal and civil cases in the Patient Abuse and Medicaid Fraud Division of our office. I am one of the defendants in the above-captioned civil action.

2. This Declaration is being executed in support of the individual federal defendants' motion for summary judgment in the above-captioned civil action.

3. Except where specifically noted to the contrary, I have personal knowledge of the facts set forth in this Declaration, and, if called upon to testify to said facts, could do so competently.

4. I have read, and am familiar with, the allegations of the Bivens Complaint in this case.

2871148.1

5. I graduated from the University of Central Arkansas with a degree in Accounting in 1985, and from the University of Arkansas Law School in 1988. After passing the bar and obtaining my license to practice law in Arkansas, I was employed as a civil litigator at the firm of Crockett and Brown, P.A., in Little Rock, Arkansas, between July of 1988 and June of 1990. I was employed by the Pulaski County Prosecuting Attorney's Office between June of 1990 and December of 1992. I was admitted to the Texas Bar and served as an Assistant District Attorney for Bowie County, Texas, between April of 1993 and November of 1994. Between March of 1995 (when I was admitted to the Oklahoma Bar) and November of 2001, I served as an Assistant Attorney General for the State of Oklahoma.

6. From approximately December of 2001 until July of 2006, I served as an Assistant United States Attorney for the Northern District of Oklahoma in Tulsa, Oklahoma, where I prosecuted individuals for violations of federal law. In July of 2006, I left my job as an Assistant United States Attorney to return to my previous employment as an Assistant Attorney General for the State of Oklahoma.

### The investigation into the activities of Lindsey K. Springer and the search warrant for the search of his residence

7. While I was an Assistant United States Attorney for the Northern District of Oklahoma, I was assigned to a case involving an investigation by the Internal Revenue Service into the activities of the plaintiff, Lindsey K. Springer, for alleged violations of Title 26, United States Code (including, but not limited to, section 7201 of the Internal Revenue Code). As part of this investigation, I prepared a search warrant for the search of the plaintiff's residence in Kellyville, Oklahoma. On or about September 15, 2005, I presented the search warrant and the

-2-

2871148.1

supporting declaration of IRS Special Agent Brian M. Shern to United States Magistrate Judge

Frank H. McCarthy, who signed the search warrant and authorized the search of Springer's

residence.

8. A copy of the search warrant signed by Magistrate Judge McCarthy is attached to the

"Movant's Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search

Warrant (2) The Application for the Search Warrant and (3) Return of Certain Property Either

Not Items Listing in Search Warrant or Clearly Not Subject to Seizure" filed by Springer in In

the Matter of the Search of Premises Known as 25757 South 201st West Avenue, Kellyville,

Oklahoma, Case No. 05-SM-1 (N.D. Okla.) (hereinafter, "the Movant's Motion").  A true and

correct copy of the Movant's Motion, including Exhibits 1 and 2 thereto (the search warrant

issued by Magistrate Judge McCarthy on September 15, 2005, and the Inventory Listing of All

Items Seized at Search Warrant Site, respectively), is attached to this Declaration as Exhibit 1.

9. Listed among the items to be seized in paragraph 2 of Attachment B to the search

warrant (Exhibit 1 to this Declaration) for Springer's residence were "[c]urrency and monetary

instruments including cashier's checks, receipts of cashier's checks, money orders, traveler's

checks, and other monetary instruments."

**The search of Lindsey Springer's residence on September 16, 2005**

10. The search of Springer's residence pursuant to the search warrant authorized by

Magistrate Judge McCarthy took place on September 16, 2005.  I was not present for the search

of the plaintiff's residence by IRS Special Agent Brian Shern and other IRS Special Agents.

11. I have never traveled to Springer's residence in Kellyville, Oklahoma.

12. On the morning of the execution of the search warrant at Springer's residence on

<div align="center">-3-</div>

2871148.1

September 16, 2005, I received a telephone call from Supervisory Special Agent William R. Taylor, who was one of the Agents who was involved in the search of Springer's residence. During this conversation, Agent Taylor informed me that approximately $19,000 in U.S. currency had been discovered in the search of Springer's residence. I, along with Douglas Horn (the Chief of the Criminal Division of the United States Attorney's Office for the Northern District of Oklahoma) and Agent Taylor, determined that the currency should be seized pursuant to the search warrant signed by Magistrate Judge McCarthy as potential evidence of one or more violations of Title 26, United States Code, by Lindsey K. Springer.

13. On the afternoon of September 16, 2005, I received a telephone call from Supervisory Agent Taylor, who informed me that although they had thought they had about $19,000 in cash, the actual amount, as counted at a bank, was $17,000. I asked Agent Taylor if any Agent was ever alone with the cash, and he replied "no." I asked Agent Taylor to document who had been around the money, and what had happened.

### Subsequent contacts with Lindsey Springer

14. Shortly after the execution of the search warrant at Springer's residence on September 16, 2005, Lindsey Springer began to call me at my office at the United States Attorney's Office in Tulsa, Oklahoma. In several instances, Springer left messages for me at my office. All of the messages concerned the return of the currency and car titles.

15. IRS Special Agent Brian Shern called and told me that Lindsey Springer was calling him about the return of the currency and car titles. I told Agent Shern to refer Springer to me.

16. During the telephone conversations that I had with Lindsey Springer, he asked me to recuse myself from his case, which I declined to do. Springer also requested the return of the

-4-                                                    2871148.1

currency and car titles. Because I believed that the law did not require me to do so, I told him that I would not return the currency or car titles.

17. Springer informed me by telephone that he would file something with the Court for the return of the currency and car titles. I informed Springer that the currency and car titles would be returned to him if the Court ordered the Government to do so. I also asked him to stop calling me and to put any of his requests or concerns in writing. I did this for two reasons. First, Springer was the target of an investigation, and I was uncomfortable with discussing matters with him over the telephone. Second, based on prior experience with Springer, I was concerned that anything I said to him might be taken out of context.

### Springer's Rule 41 motion

18. On September 23, 2005, one week after the execution of the search warrant at his residence, Springer filed his "Movant's Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant (2) The Application for the Search Warrant and (3) Return of Certain Property Either Not Items Listing in Search Warrant or Clearly Not Subject to Seizure" in In the Matter of the Search of Premises Known as 25757 South 201st West Avenue, Kellyville, Oklahoma, Case No. 05-SM-1 (ND Okla.). The "Movant's Motion" sought the disclosure of the supporting declaration of IRS Agent Brian Shern (as well as any other supporting materials) and the return of the currency and car titles that were seized pursuant to the search warrant. A true and correct copy of the "Movant's Motion," together with all materials filed in support of that motion, is attached to this Declaration as Exhibit 1.

19. I prepared and filed the United States of America's Response to Movant's Motion for Copy of Sworn Testimony, Application for Search Warrant and Return of Certain Seized Items

-5-                                        2871148.1

(the "Response") that was filed with the Court on October 5, 2005. A true and correct copy of the Response is attached to this Declaration as Exhibit 2.

20. In an Order entered on October 28, 2005, Magistrate Judge McCarthy denied Springer's request for copies of the materials and/or testimony considered in connection with the issuance of the search warrant and the application for the search warrant. The Court also denied without prejudice Springer's motion for the return of the seized currency and car titles. A true and correct copy of the October 28, 2005 Order is attached to this Declaration as Exhibit 3.

21. After the denial of the Movant's Motion, Assistant United States Attorney Douglas Horn and myself made the decision to return the currency and the car titles that were seized pursuant to the search warrant to Springer. It is my recollection that Agent Shern went to Springer's residence in January of 2006 and gave him a Treasury check in the amount of $17,000.

22. I did not steal any money from the plaintiff in this civil action, or enter into any agreement or conspiracy with Assistant United States Attorney Douglas Horn or any IRS Special Agent, or anyone else, to steal any money from Lindsey Springer.

23. I did not, individually or in conjunction with any other party or individual, "cover up" or attempt to "cover up" any alleged discrepancy between the amount of currency shown on the "Inventory Listing of All Items Seized at Search Warrant Site" ("Approximately $19,000.00 in U.S. Currency") and the $17,000.00 amount shown on the Treasury Check tendered to the plaintiff, Lindsey K. Springer, in January of 2006. I opposed the "Movant's Motion," as described in paragraph 18, above, because of my good-faith belief that Springer had not demonstrated that he would suffer irreparable harm or injury (as he was required to do under

<div align="center">-6-</div>

2871148.1

Rule 41 of the Federal Rules of Criminal Procedure) if the money and car titles seized from his residence on September 16, 2005, were not returned to him immediately, and for the other reasons set forth in the United States' response to Springer's motion for the return of seized items.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

-7-

2871148.1

## CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed on November 27th, 2007.

MELODY NOBLE NELSON

-8-

2871148.1

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the forgoing **DECLARATION** was filed

with the Clerk of the court electronically today, July 14, 2008, such that a service copy was sent

by way of the electronic filing system to the plaintiff and all counsel who have arranged for

electronic service of filings

                                                    */s/ Robert D. Metcalfe*
                                                    ROBERT D. METCALFE DC #423163
                                                    Trial Attorney, Tax Division
                                                    U.S. Department of Justice
                                                    P.O. Box 7238
                                                    Ben Franklin Station
                                                    Washington, D.C.  20044

**FILED**

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

SEP 2 3 2005

Phil Lombardi, Clerk
U.S. DISTRICT COURT

In the Matter of the Search of

SEALED

RECEIVED

SEP 2 ? 2005

US ATTORNEY
N. D. OKLAHOMA

"Premises known as
25758 South 201ˢᵗ West Avenue
Kellyville, Oklahoma"

Case No

MOVANT'S MOTION  FOR (1) COPY OF ALL SWORN TESTIMONY
COURT CONSIDERED IN ISSUANCE OF SEARCH WARRANT
(2) THE APPLICATION FOR THE SEARCH WARRANT AND
(3) RETURN OF CERTAIN PROPERTY EITHER NOT ITEMS
LISTED IN SEARCH WARRANT OR CLEARLY NOT
SUBJECT TO SEIZURE.

Lindsey K. Springer (hereinafter referred to as "movant"), moves the

District Court for an order (1) directing the release to movant of all sworn

testimony the Court considered in its finding of probable cause to issue the search

warrant on September 15, 2005 regarding the search of the property known as

"25758 South 201ˢᵗ West Avenue, Kellyville, Oklahoma; and (2) directing release

of the "application" which the Court considered in reviewing the affidavit and

issuing the Search Warrant, and (3)  directing certain currency and documents be

returned immediately to movant and the property known as "25758 South 201ˢᵗ

West Avenue, Kellyville, Oklahoma".

**EXHIBIT**

1

1

Without the sworn testimony attached to the warrant or without the warrant making reference to the facts that support the finding of probable cause, the warrant violates the Fourth Amendment Rights of movant. Likewise seizing currency can in no way be evidence of any crimes under section 7201 or 7203 for the years 2000 to present. And finally, without seeing the affidavit and application, Movant is unable to make an exhaustive list of the seized property being outside the scope of the warrant and issues revealed therein, and at the conducted search, but certainly two vehicle titles wherein said vehicles are in need or registration can in no way be within any of the four listed reasons for issuance of a Search Warrant under Rule 41(c).

Currency derived from the cashing of a check in September 2005 is not "evidence of a crime". It is not contraband or fruits of a crime or otherwise illegally possessed. It is not property intended to be used to commit a crime and 41(c)(4) does not apply. There are no facts to support the seizure of the currency.

Vehicle titles are not evidence of a crime, nor contraband, fruits of a crime, illegally possessed, property designed for use, intended use or used in committing a crime. They were also not listed on the overbroad Search Warrant specifically or in some general way as to intend to be within its reach. There are no facts to support the seizure of these titles.

2

# BACKGROUND

On September 15, 2005, this Court issued a "Search Warrant" (hereinafter referenced as "warrant") directing Brian M. Shern ("hereinafter referred to as Serving Agent") and any Authorized Officer of the United States to "search on or before 9-25-2005 the premises known as 25758 South 201st West Avenue, Kellyville, Oklahoma". *Exhibit 1*

On September 16, 2005, Brian M. Shern and several other employees of the Criminal Investigation Division of the Internal Revenue Service, served said warrant upon movant at the property known as "25758 South 201st West Avenue, Kellyville, Oklahoma"

On September 16, 2005, Brian M. Shern tendered to movant an "Inventory Listing of all items Seized at Search Warrant Site" (hereinafter referred to as "seized property"). *Exhibit 2*


I.     MOTION TO RELEASE ALL SWORN TESTIMONY THE COURT
       CONSIDERED IN FINDING PROBABLE CAUSE TO ISSUE SEARCH
       WARRANT.

Federal Rules of Criminal Procedure Rule 41 authorize this Court to issue a warrant to an officer authorized to execute it.   *See Rule 41(e)(1) 2005 Edition.* The warrant may only be issued for the purpose of gathering evidence of a crime,

3

for contraband, fruits of crime, or other items illegally possessed, for property

designed for use, intended for use, or use in committing a crime, or for a person to

be arrested or for whom is unlawfully restrained. *See Rule 41(c)(1) through (4)*.

The Attachment "B" labeled "ITEMS TO BE SEIZED" states "Based on the

foregoing, I respectfully submit that there is probable cause to believe that the

following items, which constitute evidence of violations of Title 26, United States

Code Sections 7201 and 7203, will be found at the location described in

Attachment A in individual and business names including, but not limited to

Lindsey Springer, Oscar Stilley, and Bondage Breakers Ministries.   All the items

to be seized as referenced below are for the year beginning January 1, 2000,

through the execution of the warrant including the following...:"

"The Fourth Amendment protects the individual's privacy in a variety of

settings. In none is the zone of privacy more clearly defined than when bounded

by the unambiguous physical dimensions of an individual's home - a zone that

finds its roots in clear and specific constitutional terms: 'The right of the people

to be secure in their . . . houses . . . shall not be violated.' That language

unequivocally establishes the proposition that '[a]t the very core [of the Fourth

Amendment] stands the right of a man to retreat into his own home and there be

free from unreasonable governmental intrusion.'" *Payton v. New York*, 445 U.S.

4

573, 585, 589-90, 100 S.Ct. 1371, 1379, 1381-82, 63 L.Ed.2d 639 (1980)

(alterations in original) (citations omitted).  See also *U.S. v. Dahlman*, 13 F.3d

1391 (10th Cir. 1993)

The Fourth Amendment provides that "no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized." *U.S. Const. amend.*

*IV; United States v. Mesa-Rincon*, 911 F.2d 1433, 1436 (10th Cir. 1990); see also

*U.S. v. Janus Industries*, 48 F.3d 1548 (10th Cir. 1995)

The Supreme Court has stated that "probable cause is a fluid concept -

turning on the assessment of probabilities in particular factual contexts - not

readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*,

462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). "The task of the

issuing magistrate is simply to make a practical, common-sense decision whether,

given all the circumstances set forth in the **affidavit** before him . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular

place." Id. at 238, 103 S.Ct. at 2332; see also *Janus* **supra**.

The particularity requirement of the Fourth Amendment "prevents a

`general, exploratory rummaging in a person's belongings,' *Coolidge v. New*

*Hampshire*, 403 U.S. 443, 467 [91 S.Ct. 2022, 2038, 29 L.Ed.2d 564] (1971) and

5

`"makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."'" *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (quoting *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965)). It "`ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.'" *United States v. Leary*, 846 F.2d at 600 (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)); see also *United States v. Sullivan*, 919 F.2d at 1424; *United States v. Mesa-Rincon*, 911 F.2d at 1440. *U.S. v. Wicks*, 995 F.2d 964 (10th Cir. 1993)

It has been held that if "[T]he face of the warrant does not show the "facts" referred to, but they are contained in the affidavit used to support the request for the warrant which was attached to and served with the warrant" that this procedure "thus informed of the reasons for the search and its purposes". The affidavit was incorporated into the warrant, and we shall not require that the facts stated in the affidavit be recited again on the face of the warrant when they are served together. See *Clay v. United States*, 246 F.2d 298 (5th Cir.).

Clearly, the warrant dated September 15, 2005, is clearly in violation of the fourth amendment and the rights of movant.  It attaches no affidavit and makes no

6

reference to any facts derived from any affidavit.   It uses the boiler phrase "there

is probable cause" and lists two code sections from "Title 26 United States Code".

Movant enquired as to who the USAS was and movant was told it was Mrs.

Melody Noble Nelson of the United States Attorney's Office in the Northern

District of Oklahoma )(hereinafter referenced as "ASUA").

Movant asked to see the "affidavit" referenced in the infirm warrant and

was denied.  Movant asked if the affidavit was on site and was told that anymore

questions regarding the warrant would have to be addressed to the ASUA.

Movant enquired the ASUA for the affidavit and was denied access to it.

Movant telephoned the chambers of the Honorable Magisrate Judge for the

United States District Court Frank H McCarthy and was informed to make a

request for said affidavit.   LET THERE BE NO MISTAKE ABOUT THIS.

THIS IS MOVANT'S REQUEST FOR THE AFFIDAVIT THAT WAS RELIED

UPON BY THE HONORABLE JUDGE TO FIND "PROBABLE CAUSE".   The

affidavit was not attached to the warrant and the warrant makes no specific

reference to the facts claimed to  support the warrant.

When reviewing a warrant, "we read together all properly incorporated or

referenced components of the warrant, including the attached application and

affidavit." *United States v. Occhipinti*, 998 F.2d 791, 799 (10th Cir. 1993).

7

See also *U.S. v. Callwood*, 66 F.3d 1110 (10th Cir. 1995)

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the **factual** and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Id., at 175. Our observation in *United States v. Cortez*, 449 U.S. 411, 418 (1981), regarding "particularized suspicion," is also applicable to the probable-cause standard. *Illinois v. Gates*, 462 U.S. 213, 231 (1983)

As early as *Locke v. United States*, 7 Cranch 339, 348 (1813), Chief Justice Marshall observed, in a closely related context: "[T]he term `probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under *circumstances which warrant suspicion.*"

Movant respectfully requests this Court to release to movant all sworn or affirmed testimony the Court relied upon in issuing the warrant dated September 15, 2005 at 4:01 pm.

II.   MOVANT REQUESTS THIS COURT TO RELEASE THE APPLICATION MADE BY THE GOVERNMENT SEEKING SAID WARRANT TO SEARCH.

Based upon that absolute right of Movant to be served with a warrant that

8

satisfies the Fourth Amendment, Movant respectfully request this Court direct the release of any/all applications relied upon to obtain the warrant dated September 15, 2005 to Movant.

## III.  MOVANT REQUESTS THIS COURT DIRECT THE RETURN OF THE CURRENCY TAKEN PURSUANT TO THE WARRANT AS WELL AS DOCUMENTS TAKEN THAT WERE NOT PURSUANT TO THE WARRANT.

### A.  The Currency

On September 16, 2004, the Service Agent served upon Movant a deficient warrant which did not attach any affidavit under the Fourth Amendment requirements nor did it reference any facts within the warrant referencing the affidavit it claims probable cause was found to support.

The warrant directed that all "currency" be seized and any "money orders", "cashier checks", and "traveler's checks" and other "monetary instruments". There is nothing in the warrant itself that justifies the Government holding or maintaining the "currency" taken from Movant.   This currency was received through a local financial institution from the cashing of a check made payable to Movant and there is no way that this cashing could in any way relate to "violations of Title 26, United States Code Sections 7201 and 7203.

Movant requested U.S. Assistant Attorney Melody Noble Nelson agree to

9

return the seized currency and she informed Movant "not at this time".

Since there is no fact alleged in the warrant nor could there be any that would not be easily contradicted justifying the seizure of currency from Movant's home, nor is there any due process given to take such currency from Movant, Movant respectfully request this Court issue an order returning the currency to Movant immediately.

### B.  THE VEHICLE TITLES

There is nothing contained within the warrant that would direct the Service Agent to seize vehicle titles recently purchased by Movant.  The warrant is very ambiguous in this regard as it only mentions "documents related to the purchase and sale or other vehicles or machinery."  The Government can simply take copies of these documents but tender the originals back to Movant.  When asked for these to be returned to Movant U.S. Assistant Attorney Mrs. Melody Noble Nelson responded that she would give copies to Movant but not the originals. Movant then asked why and Mrs. Nelson responded that Movant had other vehicles and did not need these titles.

The warrant says the alleged probable cause violated sections are section 7201 and 7203.   There is nothing in either of these two sections that a grand jury maintaining the original titles of two vehicles would need to continue their

· 10

investigation.   The only reason the currency and the titles are attempting to be

maintained is because of an end run around section 6330(e) by the  seizing of

property belonging to Movant.   Mrs. Nelson is fully aware those vehicles cannot

be licenced correctly or tagged without the titles to the vehicles.   She was also

informed that the only collection issues between Movant and the IRS are under

stay in Oklahoma City pursuant to section 6330(e).   Mrs. Nelson responded that

that case was civil and her case is criminal.

"In dealing with probable cause, . . . as the very name implies, we deal with

probabilities. These are not technical; they are the **factual** and practical

considerations of everyday life on which reasonable and prudent men, not legal

technicians, act.' Id., at 175. Our observation in *United States v. Cortez*, 449 U.S.

411, 418 (1981), regarding "particularized suspicion," is also applicable to the

probable-cause standard. *Illinois v. Gates*, 462 U.S. 213, 231 (1983)

As early as *Locke v. United States*, 7 Cranch 339, 348 (1813), Chief Justice

Marshall observed, in a closely related context: "[T]he term `probable cause,'

according to its usual acceptation, means less than evidence which would justify

condemnation . . . . It imports a seizure made under *circumstances which warrant*

*suspicion*."

There can be no suspicion let alone condemnation regarding vehicle titles.

11

The vehicle titles have nothing to do with section 7201 nor section 7203.   They

do not change whether the money given to Movant that acquired them was

excludable under section 102 of the Internal Revenue Code.

Since the warrant did not contain any alleged facts which would authorize

the seizure of the two titles taken and no affidavit attached explaining the need for

the seizure of the titles, Movant respectfully request this Court issue an order

directing the return of the two original titles to Movant immediately.

## IV.   CONCLUSION

Movant respectfully request this Court release a copy of the application and

all sworn testimony it relied upon to find probable cause regarding the Search

Warrant issued on September 15, 2005 as well as order the return of the currency

seized and the titles seized on September 16, 2005 by the Service Agent.

Respectfully Submitted

Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of Movant's MOTION  FOR (1) COPY OF ALL SWORN TESTIMONY COURT CONSIDERED IN ISSUANCE OF SEARCH WARRANT (2) THE APPLICATION FOR THE SEARCH WARRANT AND (3) RETURN OF CERTAIN PROPERTY EITHER NOT ITEMS LISTED IN SEARCH WARRANT OR CLEARLY NOT SUBJECT TO SEIZURE was mailed to

U.S. Attorney Office
Attn.  Mrs. Melody Noble Nelson
110 West 7th St., Suite 300
Tulsa, Oklahoma 74119
918-382-2700

U.S. Department of Justice
Robert D. Metcalfe
Tax Division, Trial Section
555 4th Street, N.W. Room 8921C
Washington D.C. 2001
202-307-6525

Signature of Server

13

AO 93 (Rev. 5/85) Search Warrant

# United States District Court

NORTHERN _____ District of _____ OKLAHOMA _____

In the Matter of the Search of    **SEARCH WARRANT**
Name, address or brief description of person, property or premises to be searched)

Premises known as:    Case No. _____
25758 South 201st West Avenue
Kellyville, Oklahoma

To: Brian M. Shern and any Authorized Officer of the United States:

Affidavit(s) having been made before me by Brian M. Shern, who has reason to believe that on the premises known as

SEE ATTACHMENT A – LOCATION TO BE SEARCHED, ATTACHED HERETO AND MADE A PART HEREOF
BY REFERENCE

in the Northern District of Oklahoma, there is now concealed certain property, namely

SEE ATTACHMENT B – ITEMS TO BE SEIZED, ATTACHED HERETO AND MADE A PART HEREOF BY
REFERENCE

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or
property so described is now concealed on the person or premises above-described and establish grounds for the
issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before    *9-25-05* _____
                                                                                               Date

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and
making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) and if the person or property to be found there to seize
same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the
person or property seized and promptly return this warrant to Magistrate Judge Frank H. McCarthy as required by law.

*9-15-05    4:01 PM* _____    at    _____ Tulsa, Oklahoma _____
Date and Time Issued

Frank H. McCarthy, U.S. Magistrate Judge    _Frank H. McCarthy_ _____

Name and Title of Judicial Officer    Signature of Judicial Officer

AO 93 (Rev. 5/85) Search Warrant

## RETURN

| Date Warrant Received | Date and Time Warrant Executed | Copy of Warrant and Receipt for Items Left With |
|---|---|---|
| | | |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this _____ day of _____, 20_____.

_____    _____
U.S. Judge or Magistrate                                      Date

**ATTACHMENT A**

**LOCATION TO BE SEARCHED**

Two-story residence and curtilage, surrounding outbuildings, appurtenances, buses, automobiles, and property (including locked containers) of LINDSEY SPRINGER located at 25758 SOUTH 201ST WEST AVENUE, KELLYVILLE, OKLAHOMA, 74039, more specifically described as follows:

A two-story residence located on the west side of South 201st West Avenue. The entrance of the residence faces northeast. The residence is made of reddish-brown colored brick with light colored grayish siding covering the majority of the front of the residence. The door and windows of the residence are white. There is an unattached two-car garage and two small outbuildings that are perpendicular to the residence and face southeast. South 201st West Avenue is not identified with a street sign. It is 1.2 miles west of the turnpike gate on State Highway 33, which can be accessed from exit number 211 off the Turner Turnpike, headed westbound from Sapulpa. Adjacent to the entrance of South 201st West Avenue from State Highway 33 is a gray mailbox on a wooden post with the numbers "12244". The residence located at 25758 South 201st West Avenue is approximately one quarter-mile on South 201st West Avenue from this mailbox.

Attached is a map showing the location of the residence, a satellite photograph of the residence and surrounding area, and some photographs of the residence and the mailbox adjacent to the road leading up to the residence.

Page 1 of 5

Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 262











# ATTACHMENT B

## ITEMS TO BE SEIZED

Based on the foregoing, I respectfully submit that there is probable cause to believe

that the following items, which constitute evidence of violations of Title 26, United

States Code Sections 7201 and 7203, will be found at the location described in

Attachment A in individual and business names including, but not limited to

LINDSEY SPRINGER, OSCAR STILLEY, and BONDAGE BREAKERS

MINISTRIES. All of the items to be seized as referenced below are for the year

beginning January 1, 2000 through the execution of the warrant including the

following:

1. Client billing records, fee schedules, contracts for employment, estimates for

   services, filed court documents, and correspondence (opened and unopened)

   relating to the above referenced items;

2. Currency and monetary instruments including cashier's checks, receipts of

   cashier's checks, money orders, traveler's checks, and other monetary

   instruments;

3. Bank records including bank statements, deposit tickets, cancelled checks, debit

   and credit memos, records of wire transfers, and records of safe deposit box

   rental and entry, financial statements, and correspondence (open and unopened)

   with banks and financial institutions;

4. Financial records including tax returns, documents relating to the preparation of

   his tax returns, documents related to the purchase and sale of automobiles or

other vehicles or machinery, documentation of business expenses,

documentation of other expenses, documentation of personal expenditures, and

credit card records;

5. Financial statement records including books, ledgers, notations, memoranda,

cash receipts and disbursements journals, general journals, accounts receivable

and payable ledgers, general ledgers, balance sheets, profit and loss statements,

and income distribution statements;

6. Loan records from any source whatsoever and payments relating thereto, as well

as loan applications, financial statements, and documents related to the

attainment of loans;

7. Address and/or telephone records reflecting names, addresses, and/or telephone

numbers;

8. Property records including documents related to the purchase and sale of real

estate;

9. Records of mailbox or drop box rentals;

10. Records of storage rentals;

11. Rental or lease agreements of real property, autos, electronics, equipment, and

machinery;

12. As used above, the terms records, documents, or statements include records,

documents, or statements created, modified, or stored in any form.

13. In searching for data capable of being read, stored or interpreted by a computer,

law enforcement personnel executing this search warrant will employ the

following procedure:

a. Upon securing the premises, law enforcement personnel trained in searching and seizing computer data (the "computer personnel") will make an initial review of any computer equipment and storage devices to determine whether these items can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data.

b. If the computer equipment and storage devices cannot be searched on-site in a reasonable amount of time, then the computer personnel will determine whether it is practical to copy the data during the execution of the search in a reasonable amount of time without jeopardizing the ability to preserve the data.

c. If the computer personnel determine it is not practical to perform an on-site search or make an on-site copy of the data within a reasonable amount of time, then the computer equipment and storage devices will be seized and transported to an appropriate law enforcement laboratory for review. The computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein.

d. In searching the data, the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to

determine whether the data falls within the list of items to be seized as set forth herein.

e. If the computer personnel determine that the data does not fall within any of the items to be seized pursuant to this warrant or is not otherwise legally seized, the government will return these items within a reasonable period of time not to exceed 60 days from the date of seizure unless further authorization is obtained from the court.

14. In order to search for data that is capable of being read or interpreted by a computer, law enforcement personnel will need to seize the following items, subject to the procedures set forth above:

a. Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

b. Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

c. Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

d. Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software;

e.  Any applications, utility programs, compilers, interpreters, and other software used to facilitate direct or indirect communication with the computer hardware, storage devices or data to be searched;

f.  Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the computer equipment, storage devices or data; and

g.  Any passwords, password files, test keys, encryption codes or other information necessary to access the computer equipment, storage devices or data.



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH OF    )
                                 )
                                 )
PREMISES KNOWN AS                )
25758 SOUTH 201ST WEST AVENUE    )    CASE NO.
KELLYVILLE, OKLAHOMA             )

## UNITED STATES OF AMERICA'S RESPONSE TO MOVANT'S MOTION FOR COPY OF SWORN TESTIMONY, APPLICATION FOR SEARCH WARRANT AND RETURN OF CERTAIN SEIZED ITEMS

The United States, by its Assistant United States Attorney Melody Noble Nelson,

requests that the Court deny Movant's Motion, based on the following arguments and

authorities.

I.    **The Application for Search Warrant and Sworn Testimony in support of the Application should remained sealed.**

Movant, Lindsey Springer, requests release of all sworn testimony and the application

considered by this Court in issuing the search warrant served upon him at the property known

as "25758 South 201st West Avenue, Kellyville, Oklahoma". This information should not

be provided to Movant because the United States has a compelling government interest

justifying the sealing of the search warrant affidavits until the conclusion of the investigation.

"[There is] no right of access to search warrant materials while a pre-indictment

investigation is under way." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1211 (9th Cir.

1989). Although there is a common law right of access to court documents, this presumption

has not applied to materials properly under seal. *In the Matter of the Search of 1638 E. 2nd*

EXHIBIT

2

#215

Volume I V I of III - 271

*Street, Tulsa Oklahoma v. United States*, 993 F.3d 773, 775 (10th Cir. 1993) (internal citations omitted.) "[T]here is no right of access to documents which have traditionally been kept secret for important policy reasons." *Times Mirror Co.* at 873 F.2d 1219.

This search warrant was issued only after an ex parte application by the Government and in camera consideration by this Court. This Court determined sufficient reason existed to keep the warrant materials under seal. "The process of disclosing information to a neutral magistrate to obtain a search warrant [therefore] has always been considered an extension of the criminal investigation itself. It follows that the information disclosed to the magistrate in support of the warrant request is entitled to the same confidentiality accorded to other aspects of the criminal investigation." *Times Mirror Co.*, 873 F.2d at 1214. The Court, in *Times Mirror Co.*, recognized the importance that search warrant materials remain inaccessible while a pre-indictment investigation is ongoing. *See, Matter of the Search of Flower Aviation of Kansas, Inc.* 789 F. Supp. 366, 368 (D.Kan. 1992).

Often, a party providing information for an affidavit for a search warrant is protected by the "informer's privilege". Under this privilege, "the state is normally entitled to refuse to disclose the identity of the person who has furnished information relating to an investigation of a possible violation of law." *Hoffman v. Reali*, 973 F.2d 980, 987 (1st Cir. 1992). However, this privilege is not absolute. If the party seeking disclosure makes a proper showing of need, the privilege will give way. It will yield when " the identification of the informant or of a communication is essential to a balanced measure of the issues and

2

the fair administration of justice. The party opposing the privilege may overcome it upon showing his need for the information outweighs the government's entitlement to the privilege." *Doe v. Local 1942, IBEW,* 870 F.2d 368, 372-73 (7th Cir. 1989).

Movant has not established that his need for the affidavit or for sworn testimony is essential to fair justice. As of the date of this Response, Movant is not the subject of a criminal indictment. At this early stage of the investigation, the Government's need to protect informers outweighs Movant's need for the information. The informers' privilege is stronger since Movant's motion is civil in nature and the constitutional guarantees assured to criminal defendants are inapplicable. *See, Matter of Search of 1638 E. 2nd Street, Tulsa, Okl.,* 993 F.2d 773,775 (10th Cir. 1993) citing *Doe,* 870 F.2d at 372.

Movant has failed to allege any facts that would warrant unsealing the affidavit in a ongoing investigation case where the government is asserting an informer privilege.

**II.    Movant is not entitled to the return of the cash and car title seized during the execution of the search warrant.**

Movant has requested this Court order the Government return cash and a car title seized pursuant to the search warrant executed at his property. Requests for return of property taken pursuant a search warrant are governed by FED. R. CRIM. P. 41(g). Rule 41(g) provides,

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose

3

reasonable conditions to protect access to the property and its use in later proceedings.

Actions for return of property are governed by equitable principles which should be undertaken with "caution and restraint." *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988).[1]    Therefore, a district court may assume jurisdiction over a preindictment Rule 41(g) motion if a movant demonstrates that being deprived of actual possession of the seized property causes irreparable injury and must be otherwise without adequate remedy at law. *Floyd* at 860 F.2d 1003.    However, "the mere threat of imminent indictment does not establish irreparable injury as required for a motion under Rule 41(e)." *Blinder , Robinson & Co. v. United States (In re Matter of Search of 6455 South Yosemite, Englewood, Colo.)*, 897 F.2d 1549, 1557 (10th Cir. 1990).

Movant fails to establish that he will be irreparably harmed if the money and title are not returned to him immediately.    In addition, this evidence is needed to continue the investigation.

The elements of 26 U.S.C. § 7201 are 1) the existence of a tax deficiency, 2) an affirmative act constituting an evasion or attempted evasion of the tax, and 3) the defendant acted willfully. *United States v. Townsend*, 31 F.3d 262, 266 (5th Cir. 1994) citing *Sansone v. United States* 380 U.S. 343, 351 (1965), *United States v. Wisenbaker*, 14 F.3d 1022, 1024

---

[1]Effective December 1, 2002, Rule 41 was amended and reorganized.  What was formerly Rule 41(e) was changed to Rule 41(g) with minor stylistic changes.  Most of the cases cited by the Government were decided prior to the amendment and reorganization.  Therefore, the cited opinions will refer to Rule 41(e) instead of Rule 41(g).

4

(5th Cir. 1994). Dealing in cash has been held as evidence of an affirmative act for purposes

of tax evasion, 26 U.S.C. § 7201. *See, United States v. Daniel*, 956 F.2d 540, 543 (6th Cir.

1992). Therefore, the cash seized from Movant's home may constitute evidence should the

Government file criminal charges against Movant.

Movant requests his car title be returned. However, Movant has failed to allege how

the Government's retention of his car title will cause him irreparable harm. Movant currently

has four automobiles and two motor homes in his possession, therefore, he will have

transportation even if he does not have the original title to his new Lexus automobile.

In addition, evidence that shows any act taken by Movant in order to mislead or

conceal funds from the Government to avoid paying taxes could be used as an affirmative

act constituting evasion. *See, United States v. Voigt*, 89 F.3d 1050, 1090 (3rd Cir. 1996).

Accordingly, the title of Movant's recent car purchase is important as potential evidence

should the Government file charges.

Movant has not established that he will be irreparably harmed if his cash and car title

are not returned to him. Further, the cash and car title are needed in the event the

Government files criminal charges in this case. Therefore, the Government requests the

Court deny his request for return of his property.

**Conclusion**

Movant is not entitled to the affidavit and sworn statements in support of search

warrant sealed by this Court. The Government's interest in its ongoing investigation and the

5

protection of its informants outweigh Movant's interest in the affidavit and sworn statements

in support of search warrant.

In addition, Movant has failed to establish irreparable harm if his cash and car title are

not returned. Therefore, his Motion for return of these items should be denied.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney

MELODY NOBLE NELSON, OBA #16467
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119-1013
(918)382-2700

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2005, I served the foregoing
document by postage paid U.S. Mail, who are not registered participants of the ECF
System:

Lindsey K. Springer
5147 South Harvard, #116
Tulsa, Oklahoma 74135

MELODY NOBLE NELSON

6

Received

OCT 3 1 2005

**UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF OKLAHOMA**

In the Matter of the Search of

"Premises known as
25758 South 201st West Avenue
Kellyville, Oklahoma"



SEALED

Case No.

)
)
)
)

[UNDER SEAL]

## ORDER

Movant's Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance

of Search Warrant (2) The Application for the Search Warrant and (3) Return of Certain

Property Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure, is

before the Court for consideration. The motion concerns a search warrant issued in an on-

going criminal investigation. The application for the warrant and the affidavit in support of

the application were ordered sealed by the Court.

Movant asserts that the warrant was served on him at the address listed on the

warrant and that he was provided with an inventory of the items seized pursuant to the

warrant. Movant contends he is entitled to the application for the warrant and the sworn

testimony the Court considered in issuing the warrant because without that information the

warrant violates Movant's Fourth Amendment rights and also because he needs the

information to determine if items outside the scope of the warrant were seized. Movant

also contends that there was no basis for the seizure of currency and car title(s) and seeks

their return.

Initially the Court notes that Movant's motion fails to establish his lawful personal

interest in the property searched or the items seized which provides an independent basis

to deny the motion. Even assuming that Movant has a lawful personal interest, the law

EXHIBIT

3

Volume - Vol I of III   277

Case 4:09-cr-43     Document 35-10     Filed 04/13/2009     Page 42 of 44

does not support the relief requested. There is no right to access to the application or

affidavit in support of a search warrant during an on-going investigation. *Matter of Search*

*of 1638 E. 2nd Street, Tulsa, Okl.*, 993 F.2d 773 (10th Cir. 1993); *Times Mirror Co. v. U.S.*,

873 F.2d 1210 (9th Cir. 1989). If the investigation results in a criminal prosecution, access

to those materials may be sought in those proceedings. Movant's motion is DENIED as

to (1)Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant, and

(2) The Application for the Search Warrant.

Movant's request for the return of the seized currency and car title(s) is also

insufficient. Such motions are best deferred until the completion of the criminal

investigation unless irreparable harm will occur during the delay. *First Nat. Bank of Tulsa*

*v. U.S. Dept. of Justice*, 965 F.2d 217 (10th Cir. 1989). Here, Movant has not only failed

to establish his lawful personal interest in the seized items, he has also failed to establish

irreparable harm. The motion for the return of the currency and the car title(s) is, therefore,

DENIED WITHOUT PREJUDICE.[1]

SO ORDERED this 28th day of October, 2005.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

---

[1] If any subsequent proceedings arise concerning the currency or car title(s) the Government should address why its interests would not be fully met by making copies of the items for use in its investigation and returning these apparently non-contraband items to the lawful owner.

2

Case 4:09-cr-43    Document 35-10    Filed 04/13/2009    Page 43 of 44
Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 279
Case                          *SEALED*    Document 301  Filed in USDC ND/OK on 07/20/2006    Page 1 of 2

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

In the Matter of the Search of          )
                                        )    Case No.
"Premises known as                      )
25758 South 201st West Avenue           )
Kellyville, Oklahoma"                   )    [UNDER SEAL]

## ORDER

The Motion to Unseal Documents [Dkt. 285] filed by the United States is before the

Court for decision. A response to the motion [Dkt. 286] was filed by Mr. Lindsey Springer.

The motion requests that the Court unseal: Movant's Motion for (1) Copy of All Sworn

Testimony Court Considered in Issuance of Search Warrant (2) the Application for the

Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search

Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the United States of America's

Response to Movant's Motion for Copy of Sworn Testimony, Application for Search

Warrant and Return of Certain Seized Items [Dkt. 215]; and the Court's Order of October

28, 2005 [Dkt. 227], for use in a civil case, Case No. 06-CV-156-TCK-FHM.

After consideration of the papers on file, the Court concludes that the motion should

be granted as set forth herein. The documents sought to be unsealed were served on the

United States and Mr. Springer so they are aware of the contents of those documents and

making the documents available for use in the pending civil case, No. 06-CV-156-TCK-

FHM, would not jeopardize any ongoing investigation.

The Court, therefore, GRANTS the United State's Motion to Unseal Documents [Dkt.

285] to the following extent:  Both the United States and Mr. Springer are hereby

authorized to publicly disclose, including public filings in Case No. 06-CV-156-TCK-FHM,

c/USA & Springer

the Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant (2) the Application for the Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the United States of America's Response to Movant's Motion for Copy of Sworn Testimony, Application for Search Warrant and Return of Certain Seized Items [Dkt. 215]; and the Court's Order of October 28, 2005 [Dkt. 227].

The Court Clerk for the United States District Court for the Northern District of Oklahoma is hereby authorized to provide to the United States and to Mr. Springer copies of the Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant (2) the Application for the Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the United States of America's Response to Movant's Motion for Copy of Sworn Testimony, Application for Search Warrant and Return of Certain Seized Items [Dkt. 215]; and the Court's Order of October 28, 2005 [Dkt. 227]. The Court Clerk is also directed to provide a copy of this Order to the United States and to Mr. Springer.

However, the Court will not order the Court Clerk to unseal the documents in the Court's filing system as the documents are filed in the general sealed grand jury file.

SO ORDERED this _20th_ day of _JULY_, 2006.

Frank H. McCarthy

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

LINDSEY K. SPRINGER,                    )
                                        )
        Plaintiff,              )
                                        )
vs.                                     )
                                        )    Case No. 06-CV-156 -GKF-FHM
DOUGLAS HORN, *et al.*,                 )
                                        )
        Defendants.             )
                                        )
                                        )
                                        )

# O P I N I O N   A N D   O R D E R

     This matter comes before the court on the Motion for Summary Judgment of defendant

IRS Special Agents Brian Shern, Jason White, Marc Collins, Loy Smith, Donald Anderson,

Kathy Beckner, Christopher Albin, Scott A. Wells, Diana S. Megli, Donald G. Shoemake and

William Robert Taylor. [Doc. No. 156].  For the reasons set forth below, defendants' motion is

denied.

## I.  Background/Procedural History

     This *Bivens* suit arises from events surrounding the September 16, 2005, execution by

Internal Revenue Special Agents of a search warrant at the home of plaintiff in Kellyville,

Oklahoma.  During the search, agents seized currently they logged, tagged and inventoried as

"approximately $19,000 cash."  The currency was delivered to a local bank, where a teller

counted it and informed the agents the amount of cash was only $17,000.   When the money was

returned to plaintiff on January 10, 2006, the amount returned was $17,000.  Plaintiff sued two

assistant United States Attorneys [1] and the IRS agents.  The IRS agents filed motions to dismiss

for lack of jurisdiction and failure to state a claim upon which relief can be granted.  [Doc. Nos.

12, 29, 30].  Those motions were denied. [Doc. No. 41].  Defendants then filed a Motion for

Judgment on the Pleadings [Doc. No. 106], raising the doctrine of qualified immunity, arguing

the alleged theft or conversions was not a cognizable *Bivens* claim because plaintiff had a

remedy under the Federal Tort Claims Act, and asserting plaintiff had failed to alleged

defendants' personal participation in the alleged constitutional violations.  The motion was

denied [Doc. No. 155].

In support of their summary judgment motion, defendants once again raise qualified

immunity.  They argue plaintiff has not asserted a cognizable Fourth Amendment claim and is

precluded from asserting a Fifth Amendment *Bivens* claim because he had a remedy under the

Federal Tort Claims Act.  Moreover, they claim there is no evidence the amount of cash seized

was $19,000 rather than $17,000.  Fianlly, they allege plaintiff executed a release that bars this

action.

## II.  Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c).  When applying this standard, a court must examine the

factual record and reasonable inferences therefrom in the light most favorable to the party

---

[1]On November 28, 2008, the court granted the assistant United States Attorneys' Motion
for Summary Judgment. [Doc. No. 150].

2

opposing summary judgment.  *Wolf v. Prudential Insurance Co. of America*, 50 F.3d 793, 796

(10th Cir. 1995).  The movant for summary judgment must meet the initial burden of showing

the absence of a genuine issue of material fact, then the nonmovant bears the burden of pointing

to specific facts in the record "showing a genuine issue for trial as to those dispositive matters

for which it carries the burden of proof."  *Id.*

## III.  Analysis

### A.  Defendants' Qualified Immunity Defense

The IRS Special Agents contend they are entitled to summary judgment on plaintiffs'

claim on the basis of qualified immunity.  Qualified immunity protects government officials

from individual liability unless the official's conduct violates clearly established constitutional

rights.  *See Perez v. Unified Gov't of Wynadotte County,* 432 F.3d 1163, 1165 (10th Cir. 2005);

*Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  When a defendant raises a qualified immunity

defense, the plaintiff bears the burden of establishing (1) that the defendant's actions violated a

constitutional or statutory right; and (2) the constitutional or statutory rights was clearly

established at the time of the conduct at issue.  *Perez,* 432 F.3d at 1165*; Albright v. Rodriguez,*

51 F.3d 1531, 1534 (10th Cir. 1995).  The doctrine ensures that government actors have notice of

the constitutional restrictions on their behavior.  *Davis v. Scherer,* 468 U.S. 183, 195 (1984).

Defendants assert they are entitled to qualified immunity on plaintiff's Fourth

Amendment claim.  The court has already rejected defendants' argument that, as a matter of law,

no Fourth Amendment claim could exist. [Doc. 41, p. 4].  Defendants also contend they did not

seize $19,000, but only "approximately $19,000," which in reality was only $17,000.  The court

finds a material issue of fact remains concerning whether the amount of money discovered in

plaintiff's house was actually $19,000–as claimed by plaintiff's wife [Doc. No. 138, Ex. 2], or only *approximately* $19,000, as asserted by defendants. Further, a material issue of fact remains concerning whether, where and how $2,000 of the cash disappeared.[2]

Defendants also argue no Fifth Amendment *Bivens* claim is available to plaintiff because of the existence of an adequate post-deprivation remedy under the Federal Tort Claims Act. This argument, too, was addressed and rejected in the court's Opinion and Order denying defendants' Motion for Judgment on the Pleadings [Doc. No. 155].

Finally, defendants assert plaintiff has presented no evidence they seized $19,000 in cash. This is not correct. During the search of plaintiff's house, defendants identified a photo of the currency as "approximately $19,000," completed an evidence tag stating the currency seized was "approximately $19,000 cash," and inventoried the amount as "Approximately $19,000 in U.S. Currency." Defendants contend they did not count the money in each paper-clipped bundle of cash, and therefore the number was only approximate and the actual amount of cash could have been only $17,000 rather than $19,000. However, plaintiff's wife testified to the contrary, stating the "oldest man" in the group counted each note of each paper clip in her presence and in the presence of two other men and concluded there was $19,000 in paper clipped currency. [Doc. No. 138, Ex. 2]. Thus, a material issue of fact remains concerning the original amount of money counted by the agents and whether, how and when $2,000 disappeared after the agents counted the money.

---

[2]In the past, defendants have intimated plaintiff's wife took the money while agents were not present in the room with her. No such allegation is made in defendants' current motion. [Doc. No. 157]. Plaintiff's wife has testified that after an IRS agent counted the money and concluded there was $19,000 in paper-clipped bundles, she had no control over the currency and further that an agent was with her at all times during the search of the house. [Doc. 138, Ex. 2].

4

## B. The Release Executed by Plaintiff

Finally, defendants claim that a release signed by plaintiff bars his claim.  Plaintiff

executed the release when the IRS agents gave him a United States Treasury check for $17,000

on January 10, 2006.  The release [Doc. No. 135, Ex. 6] states, in pertinent part:

> ...This agreement is made in consideration of the return of: $17,000.00 U.S.
> registered to/owned by: Lindsey K. Springer...which was seized pursuant to
> Title 18 U.S.C. Section 981 or 981/Title 26 U.S.C. Section 7302 in the course
> of a criminal or civil investigation...
>
> <div align="center">* * * *</div>
>
> The registrant/owner hereby agrees to unconditionally release and hold harmless
> the Internal Revenue Service...from any and all claims, demands, damages,
> causes of action or suits... that might now exist or hereafter exist by reason of,
> or growing out of, or affecting, directly or indirectly, the seizure, custody or
> return of the above-described property.

[Doc. No. 135, Ex. 6].  A release is valid and enforceable when (1) an attempt to excuse one

party from liability is expressed in clear, definite and unambiguous language; (2) the contract is

made at arm's length with no vast disparity of bargaining power between the parties and (3) it is

not contrary to public policy.  *Trumbower v. Sports Car Club of America, Inc.,* 428 F.Supp.

1113, 1116  (W.D. Okla. 1976).  Under Oklahoma law, an exculpatory contract must be strictly

construed against the party excused from liability.  *See Mohawk Drilling Company v.*

*McCullough Tool Company,* 271 F.2d 627, 633 (10th Cir. 1957).  Exculpatory clauses have been

held *not* to include exemption from negligence unless an intent to do so is shown by "clear,

definite and unambiguous language."  *Id.* at 632.

Here, the release at issue is exculpatory in nature, and thus must be strictly construed

<div align="center">5</div>

against defendants.  On its face, the release references only the return of $17,000.  The release

does not address the fact that defendants had logged, tagged and inventoried "approximately

$19,000," nor does the document, by "clear, definite and unambiguous language," manifest an

intent to relieve defendants of liability for the missing cash.  Therefore, the release does not

absolve defendants of liability on plaintiff's claims.

## IV.  Conclusion

For the reasons set forth above, defendants' Motion for Summary Judgment [Doc. No.

156]  is denied.

ENTERED this 7th day of April, 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma

6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

      Plaintiff,

v.                                      Case No. 09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

      Defendants.

MOTION TO UNSEAL IN 03-CR-55E

Lindsey Kent Springer ("Springer"), by limited special appearance, and not

a general appearance, moves this 28 U.S.C. § 116(a) United States District Court to

ORDER the unsealing of certain matters docketed in case 03-CR-55E. Those docket

entries are as follows:

Docket Number 169, 173, 180, 182, 183, 181, 186, 188, 196, 197, and the

transcript of sentencing of Eddy Patterson which is sealed with no docket entry.[1]

BACKGROUND

On December 16, 2003, Melody Noble Nelson, Douglas Horn and Donna

Meadors, secured a guilty verdict in the criminal trial of Eddy Lynn Patterson and

Judith Ray Patterson. This Case is 03-CR-55E.

On August 23, 2004, Jerold Barringer representing Judith Patterson, moved for

---

[1]Springer spoke with Mr. Snoke who stated that he would reserve
opposition till after he read Springer's Motion.

1

a stay and release of sentence regarding Judith Patterson.  See Exhibit 1,  Docket

#178 in 03-CR-55E.  Mrs. Patterson had an appeal pending before the 10th Circuit.

On September 1, 2004, Honorable Judge Claire V. Eagan granted a

substantial assistance reduction for Judith Patterson under Fed.R.Cr.Pr. 35(b).  See

Exhibit 2.

On September 22, 2004, Judge Eagan issued a rule to show cause order

against Judith Patterson's Attorney Jerold Barringer.  See Exhibit 3.

On October 8, 2004, Jerold Barringer filed his show cause attaching his

declaration and the affidavit of Oscar Stilley.  See Exhibit 4,5 and 6.

Mr. Stilley amended his affidavit on October 18, 2004.  See Exhibit 7.

Mr. Barringer declared that Judith Patterson had never been contacted in

regard to providing any substantial assistance applicable to Rule 35(b).  See Exhibit

5.

During the seize of Springer's Home location, on September 16, 2005, Brian

Shern and others asked questions regarding Eddy Patterson and his relationship with

Springer to Springer directly.   Springer simultaneously herewith is requesting the

affidavits involved in obtaining the search warrant be made available to Springer.

It is believed that Nelson and Shern relied heavily on the knowingly altered words

of Eddy Patterson in obtaining their purported search warrant.

On December 15, 2005, Eddy and Judy Patterson, through the Richardson

Law Firm, filed a Petition in Tulsa County against Springer, Stilley and Jerold

2

Barringer.  This case is styled Eddy L. Patterson, et al., v. Lindsey K. Springer, et al., CJ 2005-07343.  See Exhibit 8.

After dismissal for failure to prosecute, Dave Marrs of the Richardson Law Firm out of time, attempted to refile Exhibit 8 only with case No. CJ 2008 02961.  Springer has pending in the State Supreme Court an action against the Richardson Law Firm for libel because the claims that firm advanced against Springer on behalf of both Pattersons is ridiculous and absolutely false.  This case was  CJ 2008 03198 which is on appeal to the Supreme Court as DF 106227.[2]

Just for one example of the misconduct in this case is the allegation by the Pattersons that "prior to being indicted by a federal grand jury, Eddy and Judith Patterson were hard working United States Citizens, had achieved the American Dream of Financial success, and had never been in criminal trouble."  See Exhibit 8, pg. 2.

On October 22, 2003, Melody Noble Nelson filed a document entitled "United States' Second Notice of Intent to Introduce Rule 404(b) evidence and brief in support" in case 03-CR-55E  See Exhibit 9.  In that Motion, Nelson discloses that in 1979 Eddy Patterson was investigated and indicted based upon "false invoices sold to Richards Capital."  This fact was known to Eddy Patterson and Judith Patterson at the time they commenced their action against Springer in 2005.  In

---

[2]For purpose of this motion this Court can take Judicial Notice of these case numbers to minimize exhibits.

3

fact, it was known by Eddy Patterson and Judy Patterson since at least 1979. This same fact was known to Nelson, Horn and Meadors, since at least 2003 obviously.

But wait, there is more. Nelson, Horn and Meadors, were prosecuting Eddy Patterson for Tax Evasion and Failure to File Returns. See Exhibit 10, the indictment. These charges include "filing false amended returns in June of 1997 for 1993 and 1995," having an accountant "prepare federal tax returns" and then "failed to file the returns," claiming in 1996 the IRS did not have jurisdiction over both Pattersons, instructed no withholding from their wages from 1996 to 2000, filed false W-4s from 1995 through 2000.

Patterson did not even meet Springer until the year 2000. See Exhibit 11.

Yet, Pattersons' allege in their 2005 Complaint "Patterson did not pay their income taxes for the years 1996, 1997, 1998, and 1999, relying upon the advice of Springer, Stilley and Barringer.." See Exhibit 8, paragraph 10. Mr. Richardson of the Richardson Law Firm is the Former U.S. Attorney where Douglas Horn currently resides as Chief Criminal Prosecutor. Eddy Patterson had done many things including suing the IRS in 1999. See Exhibit 12. None of the things alleged against Eddy Patterson or Judith Patterson by Horn, Nelson and Meadors, were in any way as a result of Springer or Stilley or Barringer. Yet, Nelson, Horn, Meadors, Shern, both Pattersons, and the Richardson Law Firm, each have attempted to proclaim publicly otherwise.

What has happened in this case is Nelson, Horn, Meadors and Shern, each

4

became so infatuated with stopping Springer and his mission to get rid of the IRS that they began to take evidence presented by them against Eddy and Judith Patterson used to obtain and sustain their convictions, while after those convictions were in jeopardy for various reasons stated in Barringer and Stilley's Declarations, Nelson, Horn, Meadors, and eventually Shern, began to falsely alter what happened to Eddy and Judith Patterson to obtain what purports to be an unlawfully issued search warrant to search Springer's Fourth Amendment protected home clearly located in the State of Oklahoma and not within the territorial limits of Congress' 28 U.S.C. § 116(a) United States District Oklahoma.   Rule 41 limits warrants to within the territorial limits of the District and 28 U.S.C. § 5 defines "United States" within the phrase United States District Court to mean "in a territorial sense, includes all places and waters, continental or insular, subject to the jurisdiction of the United States."   Springer's home was not nor has ever been subject to the jurisdiction of the United States.   See Harvard Law Review, Vol. XII, # 6, (1.25.1899)("The status of our new territories.)  See Exhibit 13.

Furthermore, Nelson and Horn, along with the civil/criminal coordinator out of Oklahoma City, David Reed, orchestrated a 6700 investigation of Springer, falsely misleading Springer that Donna Meadors had found a tape on the internet for sale and was making sure Springer was not benefitting from that sale as to the reason given for the 6700 investigation.  This evidence will be part of Springer's request for a Franks Hearing.

5

Meadors also falsely told Springer if Springer shared a list of names of persons who supported him that she would not share that information with anyone and was only seeking to discover whether any money was given to Springer for the purchase of some tax shelter program allegedly identified on some tape for sale on the internet which Meadors said she could not share with Springer during the investigation.  Meadors never informed Springer she was participating in a criminal investigation of Springer when at all times she was working with Nelson, Horn, and the civil/criminal coordinator in Oklahoma City named David Reed to do just that.

Horn has been shifted by DOJ to the Eastern District and Nelson left her Northern District job and returned to her former job with the State of Oklahoma. See Exhibit 9 attached to Motion for Protective Order filed simultaneously herewith.

With the disclosure of the sealed transactions made upon the docket in case 03-CR-55E, along with the affidavit of Brian Shern presented to obtain the search warrant relied upon to search Springer's Home location on September 16, 2005, and along with the facts of the case Horn and Nelson presented against Eddy and Judith Patterson at their trial and subsequent sentencing, such evidence will unanimously show that the search warrant dated September 15, 2005 was obtained in violation of the Fourth Amendment Rights of Lindsey Kent Springer and was without probable cause.

In Franks v. Deleware, 438 U.S. 154, 155 (1978) the Supreme Court held that where the defendant makes a substantial preliminary showing that a false

6

statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Docket Number 169, 173, 180, 182, 183, 181, 186, 188, 196, 197, and the transcript of sentencing of Eddy Patterson which is sealed with no docket entry, in 03-CR-55E are relevant to Springer's prospective request for a Franks Hearing and must be unsealed or at least turned over to Springer so he can make a proper Franks Hearing request.

CONCLUSION

Lindsey Kent Springer requests this Court to enter an order unsealing Docket Number 169, 173, 180, 182, 183, 181, 186, 188, 196, 197, and the transcript of sentencing of Eddy Patterson which is sealed with no docket entry in case No. 03-CR-55E, or at least the turning over of each of these documents and transcripts so Springer can make a proper request for a Franks Hearing.

7

Respectfully Submitted

/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

8

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Motion

to Unseal in 03-CR-55E was served by way of ECF System on April 13, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature

9

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA, )
)
Plaintiff, )
)
-vs- )   No. 03-CR-055-002-EA
)
Judith Patterson, )
)
Defendant, )

**MOTION AND MEMORANDUM FOR STAY OF REMAINING SENTENCE PENDING
APPEAL OR FOR BAIL**

Comes Now Judith Patterson, by and through her attorney, Jerold W. Barringer, and for

her Motion and Memorandum for Stay of the Remaining Sentence pending the outcome of her

appeal, or for release on bail pending the outcome of her appeal pursuant to 18 U.S.C. Sec.

3143(b), stating as follows:

**I.      LEGAL REQUIREMENTS**

There are 4 requirements for release pending appeal, pursuant to 18 U.S.C. Sec. 3143,

namely: 1) a showing, by clear and convincing evidence, that the person is not likely to flee; and,

2) a showing, by clear and convincing evidence, that the person is not likely to pose a danger to

the safety of any other person or the community; and, 3) a showing that the appeal is not for the

purpose of delay; and, 4) a showing that the appeal raises a substantial question of law or fact

likely to result in (I) reversal, (ii) an order for new trial, (iii) a sentence that does not include a

term of imprisonment, or (iv) a reduced sentence to a term of imprisonment less than the total of

the time already served plus the expected duration of the appeal process.

-1-

There is no suggestion that Judy Patterson is either a threat to any person or the community, or that she is likely to flee, or that her appeal is merely for the purpose of delay. With no evidence, and no suggestion that such evidence exists, the Court must find by clear and convincing evidence that she is not likely to flee, and that she poses no danger to any other person or the community. The sole question in the four part test is part 4.

Defendant must show, by a preponderance of evidence, that her appeal raises a "substantial question of law or fact" that would have the effect of eliminating her sentence of incarceration, or of reducing her incarceration below the time already served, plus the time of appeal.

"Section 3143(b)(2) as amended by the Bail Reform Act requires that bail pending appeal be denied unless the court finds that the appeal "raises a substantial question of law or fact likely to result in reversal or an order for a new trial' .... First, the court must decide that the appeal raises a "substantial" question of law or fact. Second, 'if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.'" *U.S. v. Affleck*, 765 F.2d 944 (10th Cir. 1985).

Recently, the Supreme Court ruled in *Blakely v. Washington*, ___ US ___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (U.S. Supreme Court decision June 24, 2004), that any fact that would be relied upon to set the base offense level or increase the amount of time the Judge imposes in sentencing any person to incarceration above the base offense level, that or those facts must be alleged in the indictment, presented to a Jury, and found beyond reasonable doubt by that Jury.

-2-

**1.    Finding of $188,291.00 "Tax Loss", not alleged in the Indictment and not found by the Jury beyond a reasonable doubt.**

The sentence this Court imposed upon Judy Patterson, as advanced by the Government and over the objection of Judy Patterson, relied upon "facts" which were not alleged in the indictment and were not found by the Jury beyond a reasonable doubt. Judy Patterson sits in prison today based upon an erroneous sentence of incarceration founded upon facts to which the Supreme Court holding in *Blakely* directly rejects. It is a near certainty that the Order of incarceration this Court entered against Judy Patterson will be reversed. For example:

The indictment never alleged how much Judy Patterson owed in "taxes". It simply alleged she willfully failed to file unspecified tax returns based upon a certain amount of income she personally earned. Yet, this Court imputed $188,291.00 of "tax loss" against Judy Patterson for income solely earned by her husband. The Government's own proposed exhibit, which Judy Patterson attempted to offer into evidence, demonstrated that Judy Patterson owed no more than $1,475.00 for her alleged failure to file tax returns. Judy and Eddy Patterson were not both charged with tax evasion involving "their" income. Each was prosecuted under the theory each had an independent duty to file returns and pay taxes.

**a.    Finding base offense level of 15 clearly erroneous**

Since all of the charges against Judy Patterson are "grouped" under U.S.S.G. Sec. 3D1.2, the issue remains whether attributing a base offense level of 15 is likely to be reversed. Judy Patterson claims that it certainly will be reversed.

For the conspiracy charge, the base offense level would either be U.S.S.G. Sec. 2T1.9 or Sec. 2T1.1 and 2T1.4. This would mean that with a "tax loss" of no more than $1,475.00, the

-3-

"offense level" would be 6. Since no "tax loss" was alleged in the indictment, this Court cannot

find this fact to increase any "base offense level". Sec. 2T1.9 says that the base offense level is

10 for the conspiracy under Sec. 2T1.9(a)(2). Though the Jury was not asked to specifically find

any amount of tax loss for Mrs. Patterson, this Court chose to place the "tax loss" of Eddy

Patterson at the feet of Judy Patterson, even though agent Meadors prepared and demonstrated in

a proposed exhibit that Judy Patterson's "tax loss" was $1,475.00. The assessment of

$188,291.00, which appeared in the probation report, presumably at the insistence of the

Government, was never alleged, never presented to the jury, and never found by the jury against

Judy Patterson in this case. This is exactly what *Blakely* has deemed wrong with the Court

making findings, when the Jury did not "find" such facts.

    The Court could not even use the $188,291.00 to sentence Mr. Patterson as this "fact"

was not alleged and not found by the Jury beyond a reasonable doubt against Mr. Patterson. This

fact certainly cannot be used against Mrs. Patterson. In fact, there are no applicable specific

offense characteristics, no related victim adjustments, no adjustments for a role in the offense, no

adjustments for obstruction of justice, no "not accepting responsbility". There is nothing, which

leaves the total possible offense level at 10 points.

    Pursuant to the sentencing table in Chapter Five, Part A, based upon a total offense level

of 10 and a Criminal History Category of I, the guideline range for imprisonment is in Zone B,

and would be 6 to 12 months as a maximum imprisonment. U.S.S.G. Sec. 5C1.1©) states that

even probation is clearly within the norm under this conditions. When was the last time the

Court sentenced a defendant to prison, rather than an alternative, with only 10 points. For this

reason alone, the Court should direct the release of Mrs. Patterson from the custody of the Bureau

-4-

of Prisons as she is incarcerated under an illegal sentence made clear by the recent holding of the

U.S. Supreme Court in *Blakely*.

**2.      Alternatively, the base offense level is 6 points because the object of the conspiracy was only a misdemeanor.**

Since Count 1 erroneously relied upon the defraud prong of 18 U.S.C. Sec. 371, and

because the "object" of the alleged conspiracy was clearly to not pay taxes and to not submit

information request forms to the Government that did not comply with the Paperwork Reduction

Act, both "acts" are only misdemeanors.  Even counts two and three, false statements, were a part

of the alleged conspiracy not to file tax returns and not to pay taxes.

For this reason, 18 U.S.C. Sec. 371 says, "If however, the offense, the commission of

which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy

shall not exceed the maximum punishment provided for such misdemeanor".  The maximum

punishment for Count 1 is then zero to six months in prison.  Any fact used to increase this zero

to six months would need to be clearly alleged in the indictment and found by the Jury beyond a

reasonable doubt.  Neither has occurred in this case, hence the maximum remains zero to six

months, with probation clearly warranted.

**CONCLUSION**

WHEREFORE, Judy Patterson respectfully requests this Court enter an Order staying the

remainder of her sentence pending the outcome of her appeal, releasing her from custody of the

Bureau of Prisons on the basis that if her conviction were upheld, nonetheless her sentence based

upon a base offense level of 15 would be clearly erroneous, and that either 6 or 10 would then be

the appropriate base offense level, resulting in either incarceration concluding before the appeal

was complete, but more justifiably, resulting in probation as the appropriate sentence in this

matter.

<div style="text-align: right;">

Respectfully Submitted,
Judy Patterson, Defendant,

By:

Jerold W. Barringer
Attorney at Law
P.O. Box 213
Nokomis, IL 62075
(217) 563-2646

</div>

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon the United States Attorney's Office, Melody Noble Nelson, Assistant U.S. Attorney 333 W. 4th St., Suite 3460 Tulsa, OK 74103, upon Oscar Stilley, Central Mall Plaza, Suite 520, 5111 Rogers Ave., Fort Smith AR 72903, and upon William Widell, 403 S. Cheyenne Penthouse Floor, Tulsa, OK 74103 on the 18th day of August, 2004.

Jerold W. Barringer

-6-

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

**F I L E D**

SEP 1 2004

Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 03-CR-0055-EA |
| | ) | |
| JUDITH RAY PATTERSON, | ) | |
| Defendants. | ) | |

## ORDER

Upon consideration of the Government's Motion for Sentencing Relief, and for good cause shown, the Government's Motion for Sentencing Relief shall be granted.

IT IS ORDERED that the Court will grant a sentence reduction of six (6) levels from her original offense level of fifteen (15) at the time of sentencing to a level nine (9) pursuant to Rule 35(b)(1) of the Federal Rules of Criminal Procedure. The Court further finds that the defendant is a Criminal History Category I which would provide a sentencing range of 4-10 months (Zone B).

Based upon the facts in the original Presentence Investigation Report and the additional information provided by the United States in their Rule 35 motion, the Court reduces the sentence of Judith Ray Patterson to four (4) months.

Dated this 1st day of September, 2004.

Claire V. Eagan

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

**F I L E D**

UNITED STATES OF AMERICA,       )

      Plaintiff,       )

v.       )

JUDITH RAY PATTERSON,       )

      Defendant.       )

SEP 2 2 2004

Phil Lombardi, Clerk
U.S. DISTRICT COURT

Case No. 03-CR-0055-EA

## SHOW CAUSE ORDER

On September 14, 2004, Jerold W. Barringer filed an "Amended Notice of Appeal" (Dkt. # 191) purportedly on behalf of his client, defendant Judith Ray Patterson. As detailed in the attached Certification of Representation of Counsel (Dkt. # 198), Judith Ray Patterson terminated Mr. Barringer as her attorney no later than late August 2004, and directed him to forward all correspondence and records to her present attorney, William P. Widell, Jr. Despite defendant's termination of her attorney-client relationship with Mr. Barringer, he filed the "Amended Notice of Appeal" without her knowledge or authorization, and she asks that the "Amended Notice of Appeal" be stricken. The Court finds that the "Amended Notice of Appeal" should be stricken as having been filed without authorization.

The Court has the power to punish contempt, such as misbehavior by attorneys, or to sanction for misrepresentations to the Court. Filing pleadings after termination of the attorney-client relationship and without the knowledge or authorization of a former client, refusal to file a motion to withdraw after termination, and misrepresentation of attorney status to a court is misbehavior and sanctionable conduct which causes the judicial process to have to respond to such improper actions.

199

Continuation of such behavior and refusal to move to withdraw may justify entry of a restraining order.

IT IS THEREFORE ORDERED that the "Amended Notice of Appeal" (Dkt. # 191) is hereby stricken.

IT IS FURTHER ORDERED that Jerold W. Barringer show cause, no later than October 8, 2004, why he should not be held in contempt and/or sanctioned for filing pleadings after termination of the attorney-client relationship and without the knowledge or authorization of a former client, for refusal to file a motion to withdraw after termination, and for misrepresentation of his attorney status to this Court. Mr. Barringer shall further show cause why a restraining order should not be entered against him from further representations that anything he does is on behalf of Judith Ray Patterson.

Dated this 22nd day of September, 2004.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE

2

**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

FILED

SEP 21 2004

Phil Lombardi, Clerk
U.S. DISTRICT COURT

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 03-CR-0055-EA |
| ) | |
| JUDITH RAY PATTERSON, ) | |
| ) | |
| Defendant. ) | |

## CERTIFICATION OF REPRESENTATION BY COUNSEL

The undersigned, Judith Ray Patterson, hereby certifies:

1.      That no later than late August, 2004, I terminated Jerold W. Barringer as my attorney in these criminal proceedings. I directed Mr. Barringer not to contact me further and to forward all correspondence and records to my present attorney, William P. Widell, Jr. Mr. Barringer no longer represents me in this or any other legal matter. My correspondence to Mr. Barringer and to Oscar Stilley, former counsel for my husband Eddy Lynn Patterson, is attached hereto.

2.      That William P. Widell, Jr. currently represents me in these proceedings and he is the only attorney authorized to file pleadings on my behalf.

3.      That I did not authorize Mr. Barringer to file the "Amended Notice of Appeal" (Dkt. #191), filed herein on September 14, 2004.

4.      I hereby request that the "Amended Notice of Appeal" (Dkt. # 191) be stricken, as having been filed without my authorization.

Dated this _21st_ day of September, 2004.

JUDITH RAY PATTERSON

CONSENTED TO:

William P. Widell, Jr.
Counsel for Judith Ray Patterson
403 S. Cheyenne, Penthouse
Tulsa, Oklahoma 74103
Telephone: (918) 605-1809
Facsimile: (918) 582-5063

2

# WILLIAM PATRICK WIDELL
## ATTORNEY AT LAW

403 S. Cheyenne St., Suite Penthouse, Tulsa Oklahoma 74103

| | | |
|---|---|---|
| Phone | (918) 605-1809 |
| Facsimile | (918) 582-5063 |

September 17, 2004

Jerold Barringer
P.O. Box 213
Nakomis, IL 62075

**VIA CERTIFIED MAIL**

In re    *United States vs. Patterson*
03CR 55 EA

Dear Mr. Barringer:

I want to make the following clear:

1.    I no longer want you to serve as my attorney;

2.    I want you to withdraw the 10th circuit appeal in case number 04-5048 and the Amended Notice of Appeal, filed contrary to my wishes, in case number 03CR55EA;

3.    Forward any documents necessary to demonstrate compliance with my wishes to Mr. Widell;

3.    Other than the above, I do not want you to take any other further action on my behalf.

I have attempted to terminate your services by letters to you and Mr. Stilly (attached); however, you have continued to file pleadings in my case. I have instructed Mr. Widell to make clear to you that I no longer want you to serve as my attorney. Mr. Widell informs me that you will not withdraw until you speak with me and advise me of my rights. Please understand, I do not wish to speak with you and I do not want your advise. I simply want you to comply with the above requests as soon as possible.

If you have any questions regarding my instructions, please contact Mr. Widell.

Judith Patterson

Cc: Attorney Registration and Discipline
Commission of Supreme Court of Illinois
One N. Old Capitol Plaza
Springfield, IL 62701

## VERIFICATION

STATE OF OKLAHOMA )
)  ss:
COUNTY OF TULSA )

I, *Judith Patterson*, of lawful age, being first duly sworn upon oath, states the following: that she is the
above-named defendant; that she has read the foregoing document, and understands same; and the facts
therein set forth are true and correct.

_____
Judith Patterson

Subscribed and sworn to before me this _____ day of _____, 2004.

_____
Notary Public

My commission expires:

_____

7/19/04.

Oscar,

This letter is to inform you that
I do not want you or Jerry Barringer
representing me in any legal issues what
so ever.
I want you to send all correspondence
and records regarding my case to:
Wm. Wider
403 S. Cheyenne
Penthouse Suite
Tulsa, OK  74103

I ask you do this asap.

Judith Patterson

Aug 15, 2006

From:

Judith Patterson
Federal Prison Camp
#09283-062
P O Box 2149
Bryan, Texas 77805

Mr. Jerold Barringer,
            This letter is to inform you that
I no longer want your service as Attorney.
I would appreciate it if you would
send all my papers to Wm Widen.
I would appreciate not hearing from you,
Oscar Stilly or Mr. Springer.


Judith Patterson




IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                    PLAINTIFF

v.                              Case No. 03CR 55 EA

EDDY PATTERSON and
JUDITH PATTERSON                                           DEFENDANTS

**RESPONSE OF JERRY BARRINGER TO SHOW CAUSE ORDER DATED
9-22-04**

Comes now Respondent, Jerold Barringer, and for his response to show

cause order states:

Counsel has done nothing sanctionable regarding the issues stated in the

Court's order.  If this fact does not become abundantly clear from a reading of this

response, undersigned counsel requests a hearing prior to this Court making its

final findings, decision and order, where all persons with knowledge relevant to

the issues raised by the Court's order may be brought before this Court for

testimony for the Court's consideration.

At such hearing, Respondent will need to present the testimony of Judith

and Eddy Patterson, Doug Horn, William Widell, Kevin Danielson, Melody

Nelson, and possibly the testimony of other persons.

1



# BACKGROUND

On or about in March 2000, Counsel was hired by Eddy Patterson ("client's husband") and Judy Patterson ("client") to represent Judy Patterson regarding all issues involving a criminal investigation out of the Northern District of Oklahoma.

On or about March 2000, client's husband hired Oscar Stilley of Fort Smith Arkansas to represent his interests in the same criminal case. Mr. Stilley did not represent client's husband in any SEC matters until late 2003.

Mr. Stilley numerous times attempted to get the U.S. Assistant Attorneys Melody Noble Nelson and Douglas Horn to identify the particular laws the Government claimed triggered the violations of their investigation. It appears that at least Ms. Nelson was in the beginning honestly ignorant of the law. After having been shown the state of the law, even to the satisfaction of the Court, Mr. Horn and Ms. Nelson continued to present an inaccurate picture to the jury, asking them to find the existence of legal provisions that both knew to be utter fiction.

Mr. Horn along with Mrs. Nelson and other agents of the Federal Government attended the meeting after client's husband appeared and gave testimony before the Federal Grand Jury sitting in the Northern District. At the time of this visit, client's husband was also represented by the law firm of Hall, Estill located in Tulsa, Oklahoma. The Government informed Mr. Stilley and the

2

firm of Hall, Estill that the issues to be discussed before the Grand Jury were

regarding taxes only.  While the Government had client's husband before the

Federal Grand Jury, Mr. Horn and Mrs. Nelson, proceeded to ask client's husband

questions to which no counsel for client's husband had been aware involving

Security and Exchange Commission violations.

  During the post Grand Jury interrogation by Mr. Horn, Mrs. Nelson and the

SEC staff attorneys, Mr. Patterson revisited the attorney waiting room where Mr.

Stilley was directed to remain.  While Mr. Patterson was speaking with Mr.

Stilley, Mr. Horn, Mrs. Nelson and the SEC staff attorneys abruptly barged into

the waiting room and approached Mr. Stilley directly within inches of his face and

shouted as he looked at Mr. Stilley, "this man is going to get you sent to prison for

the rest of your life."  Mr. Horn also turned to client's husband and pointed his

finger at client's husband saying "you better find another attorney because Mr.

Stilley is going to get you a sentence of life imprisonment."

  After the Grand Jury indictment was purportedly filed "in open court"

Counsel was notified of his client's arrest and immediately began preparation for

trial in Oklahoma.

  Counsel was in the process of obtaining the local counsel services, perhaps

of William J. Patterson.  Mr. Patterson was challenged by Mr. Horn and Mrs.

Nelson for a suspension issue arising over 5 years earlier which the Honorable

Judge Cook determined made Mr. Patterson unavailable as "local counsel."

When asked what the role of "local counsel" would be the Court responded that

local counsel would only be needed for emergency type hearings when Mr.

Barringer was unable to travel within the time the Court gave for the notice. At

no time did local counsel represent the client(s). Because of the embarrassment,

Mr. Patterson, who offices at 403 Cheyenne, Penthouse Suite, Tulsa, Oklahoma,

acquired the local counsel services of William P. Widell, who incidentally

likewise has an address of 403 Cheyenne, Penthouse Suite, Tulsa, Oklahoma, to

act as "local counsel" for undersigned.

At this same time, Mr. Horn and Mrs. Nelson mounted a vigorous offense

attempting to have Mr. Stilley disqualified as being the attorney of record for

client's husband. Mr. Stilley was a member in good standing with the Northern

District of Oklahoma Bar.

Once Judge Cook had accepted Mr. Stilley as the attorney of record for

client's husband, next Mr. Horn and Mrs. Nelson demanded Mr. Stilley have local

counsel even though he was a member of the Bar in the Northern District of

Oklahoma.

Mr. Stilley, on behalf of client's husband, asked for Judge Cook to recuse

4

himself as his bias against Mr. Stilley as the attorney, and client's husband had become obvious.   After this Court was assigned this case for trial Mr. Horn and Mrs. Nelson further attempted to make issue out of Mr. Stilley's representation of client's husband.   This Court was satisfied that Mr. Stilley would obey all orders of this Court and even recommended that it looked forward to future cases with Mr. Stilley after the trial was concluded.

As this Court is aware, after the verdict was entered, this Court allowed client to remain free on bond while incarcerating client's husband based upon the argument by Mr Horn and Mrs. Nelson that Mr. Patterson was going to have such a long sentence that there was no way he would serve it all prior to this Court announcing sentence, in addition to the concerns that client's husband would flee and not return for sentencing.

Between the jury verdict and the date of sentence for client, Respondent spoke to client numerous times.   In each instance, client directed Respondent to continue representation and that she was satisfied with said representation.  On numerous occasions client informed Counsel that client's husband wished and directed client to fire Counsel.  Each time, client informed Counsel that she was not going to fire counsel.

At some time in January 2004, local counsel William Widell visited Eddy

5

Patterson at the David Moss center without counsel's knowledge, and without

consulting Oscar Stilley, Eddy Patterson's attorney.

On this same day, Oscar Stilley visited client's husband at the David Moss

center, wherein client's husband presented a list of issues he wished Oscar Stilley

to address regarding why client's husband was being held pending sentencing.

Shortly thereafter Eddy Patterson informed Oscar Stilley that he wished to

fire Mr. Stilley.   Client's husband informed Oscar Stilley he had hired Steven

Knorr upon a recommendation by Eddy Patterson's cellmate, allegedly also a

client of Steven Knorr.

On or about March 1, 2004, undersigned counsel informed client that

undersigned counsel believed Eddy Patterson was unable to read and that this was

probably something the District Court should be aware of when considering the

proper sentence for Judy Patterson.  Undersigned counsel announced intention to

call client's husband to the March 23, 2004, sentencing hearing for this limited

purpose.

On or about March 14, 2004, Respondent  received a call from client

informing him that she would like to sell her interest in a company called Tulsa

Sales and Rental ("TSR") to her son and that she wondered how this would affect

the sentencing issues.

6

After several conversations with personnel at US Probation, Judy Patterson, and Judy Patterson's son Timothy Patterson, undersigned counsel advised Judy Patterson not to do anything with the TSR interest until after the Court imposed a sentence, however counsel told Judy Patterson that if she absolutely believed that this sale had to be done now, that it at least would not cause her harm since full disclosure to probation had been made. It appears Timothy Patterson had concluded that his interests would be best served by a quick sale to himself.

On or about March 21, 2004, less than three days before sentencing, client telephoned Counsel to discuss what could be expected at the sentencing hearing to be held on March 23, 2004, and client thanked Counsel saying that she appreciated all that was being done on her behalf.

Within 3 hours Judy Patterson called back and informed Counsel that she wished for Counsel to withdraw as her attorney and to request for a continuance of the sentencing date. Judy Patterson said that client's husband was hiring someone else to represent her.

On March 23, 2004, as this Court is aware, client did not know what to do when told she needed to decide whether she wished to be represented or whether she wished to proceed *pro se*. She asked Mr. Widell "what do I do," which the Court noted for the record.

7

This Court sentenced client to a term of incarceration of 18 months to begin on May 5, 2004.

At numerous times within the 10 day period after sentencing, client changed her mind regarding an appeal, finally deciding to appeal. Respondent was directed by client to file a notice of appeal as quickly as possible. Counsel was directed by client to file an appeal brief on her behalf. Client reported to prison on May 5, 2004.

Counsel filed Appellant's Brief on or about July 2, 2004 to the 10th Circuit Court of Appeals as required and mailed a copy to the following:

Doug Horn, United States Attorney's Office, 3460 U.S. Courthouse, 333 W. 4th Street, Tulsa, OK 74103;

Stephen Knorr, Attorney at Law

4815 South Harvard, Suite 525, Tulsa, OK 74135-3069; and

Oscar Stilley, Attorney at Law, 5111 Rogers Avenue, Fort Smith, AR 72903-2047.

Oscar Stilley provided assistance to undersigned at various times. Amongst other things, Oscar Stilley attempted to make contact with Judy Patterson, to obtain her consent for an extension of brief time requested by Kevin Danielson, Appellate division of the U.S. Attorneys Office in Tulsa. Mr. Danielson asked for

8

a 30 day extension of time on the appeal response brief by the government.

Undersigned would never have consented to an extension of time, had he been informed that the principal, if not sole reason, for the delay was so the government could manipulate Eddy Patterson into thinking that he could get his wife out of jail by waiving many of his own legal rights.

On August 23, 2004, Counsel, in the best interest of client, filed a request under 18 U.S.C. § 3143(b) asking this Court to enter a "stay" of the remaining sentence not yet served regarding client. It was believed that the case was going to be remanded to the District Court for one or more of the many defects in the prosecution. A dismissal of that appeal would not be in the best interests of the client.

On or about August 28, 2004, undersigned counsel then received a letter in the mail from a person named Debra Lyons which purported to be dated August 15, 2004, from client informing undersigned counsel that "I no longer want your services as Attorneys." This letter also directed undersigned counsel to send "all my papers to WM Widell." The letter concluded by saying "I would appreciate not hearing from you...." It appears that Ms. Lyons has a vested interest in divesting Judy Patterson of her stake in TSR.

On or about August 29, 2004, undersigned counsel placed a call to William

9

Widell on his cellular phone number 918-605-1809, in which undersigned counsel left a message regarding client and simply asked if he knew anything about what was going on with Judy Patterson.

On or about August 29, 2004, William Widell called undersigned counsel leaving a message on his answering machine that he did not know what was going on with client and that he had not spoken with her since the date of sentencing.

On or about August 30, 2004, undersigned counsel contacted William Widell and was told by Mr. Widell that he had not been hired by anyone to represent Judy Patterson, and that he did not know anything more than what counsel knew.

On September 1, 2004, this Court issued an Order to release Judy Patterson based upon a reduction under Federal Rules of Criminal Procedure 35(b).

On September 3, 2004, undersigned counsel became aware of the Court's September 1, 2004 Order and that the Court had arguably mooted the Motion for Stay of Sentence filed in August on behalf of Judy Patterson.

On or about September 7, 2004, undersigned counsel contacted William Widell regarding the order and release of Judy Patterson. Mr. Widell stated that he was notified on August 30, 2004, by Steven Knorr to contact Doug Horn regarding Judy Patterson. Widell informed undersigned counsel that Mr. Horn

10

faxed a "Rule 35(b)" motion to Widell's office and that was all he knew.    Widell also informed undersigned counsel that he showed up at a hearing the next day, September 1, 2004, and that "he got Judy out of jail." Widell was asked why wasn't the Rule 35 motion sent to undersigned counsel to which Widell replied that he would send it right away. Mr. Widell has not sent the motion to undersigned counsel. Mr. Widell also stated that he had waived any objections to the Court striking the motion for stay of sentence filed by Counsel.

Undersigned counsel has never seen any Rule 35(b) motion filed by the Government in this case.   From the docket, it appears to have been filed under seal, although undersigned counsel knows of no legitimate method whereby the government could have filed the document under seal, and furthermore without having served the pleading upon opposing counsel. Ms. Nelson informed counsel that the Court had determined that all attorneys, U.S. Attorneys and defense attorneys, were automatically discharged at the sentence, so undersigned counsel no longer was an attorney in the case.  Counsel knows of no order referencing an automatic discharge of all attorneys, and counsel does not know if all the attorneys then refiled entries of appearances on or about August 30, 2004.

William Widell again informed undersigned counsel that he had not seen or spoken with Judy Patterson until after the Court's September 1, 2004 Court order.

11

On September 8, 2004, undersigned counsel again contacted Mr. Widell

regarding his meeting with client on this date.  Widell informed undersigned

counsel that he was with the client, that Judy Patterson  was visiting probation,

and that as soon as she was done he would have her call undersigned counsel for a

discussion and determination of what to do with the appeal and other issues not

yet discussed.  No call ever came.

On September 14, 2004, having never received any other contact from

client, Counsel filed an "amended notice of appeal" preserving the issues already

contained and fully briefed in the jurisdiction of the 10th Circuit Court of Appeals.

On or about September 17, 2004, Counsel received a letter on the letterhead

of William Widell, with copy to the attorney disciplinary authorities in Illinois,

purportedly conveying a wish on the part of Judy Patterson that all appeals at the

10th Circuit be withdrawn.

Attorney Oscar Stilley spent considerable time and effort on appellate work

for Judy Patterson's appeal, under the direction and supervision of undersigned

counsel.  Judy Patterson in fact communicated to Oscar Stilley her desire for an

appeal.  Judy Patterson, according to the affidavit of Oscar Stilley, has never failed

to take or return his calls under circumstances where it could be verified that his

messages, either personal or by personnel, were being transmitted to Judy

<div style="text-align:center">12</div>

Patterson for her consideration.

Oscar Stilley's affidavit shows that he never received from Judith Patterson any letter dated 7-19-04 from Judith Patterson. He did receive a fax from Debra Lyons on July 29, 2004, which did purport to contain the referenced letter dated 7-19-04. Ms. Lyons would not say whether she had witnessed the signature, and hung up on Mr. Stilley.

Oscar Stilley attempted to call Judy Patterson at least on July 26, July 29, and August 10, 2004. Judy Patterson did not return any of these phone calls. Oscar Stilley concluded that the letter purportedly from Judy Patterson, and dated 7-19-04, was not genuine.

1.   **THE MOTION FOR SENTENCING RELIEF UNDER RULE 35(b) APPEARS TO BE IMPROPER.**

Based upon the facts set forth above, the government had no legitimate basis for filing a motion pursuant to Federal Rule of Criminal Procedure 35(b). Rule 35(b) requires "...a defendant's subsequent substantial assistance in investigating or prosecuting another person..." Mr. Widell stated that he had not represented Judy Patterson at any time that might permit the government to claim that he transmitted useful information from Judy Patterson to the government. Mr.

Widell also stated quite unequivocally that Judy Patterson had not spoken with the government, had no information to give to the government, and could not provide any substantial assistance in any way which would support the motion. Undersigned counsel, knowing what Judy Patterson had told him in their attorney-client relationship, also knows that Judy Patterson had no useful information to provide to the government. So, the basis for the Rule 35(b) motion, if that was the basis for her amended sentence, seems suspect to William Widell and to counsel.

It would certainly be a grave breach of ethics if any attorney for the government contacted Mrs. Patterson. Undersigned counsel does not believe that this happened. In fact, it appears that the motion for sentencing relief under Rule 35(b) is unsupported by any fact, and would therefore be a total fiction..

Otherwise, why would the government refuse to serve a copy of the pleading upon undersigned counsel. There is no rational basis for this failure. Undersigned counsel was unquestionably counsel of record at the time of the motion. If, in fact, information of another crime had been given to the government by Judith Patterson, the confidential nature of that information would have been maintained. There is only one reason that undersigned counsel can see for the failure to serve the pleading, namely that the document is altogether improper.

14

Pursuant to the due process provisions of the U.S. Constitution, Respondent is entitled to see the purported motion by the government. If the government has won the allegiance of Judith Patterson through a fraud on the Court, Respondent is entitled to show the Court that such allegiance was obtained by fraud, and the time that said allegiance was obtained. See *Kowalczyk v. INS*, 245 F.3d 1143 (10th Cir. 2001), where the Court said: "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations and citations omitted).

It is altogether of no consequence that Judith Patterson may be indifferent to the fraud, or even favorably disposed toward the fraud. If Respondent is to suffer for the fraud, he is entitled to relief. In *King v. Horizon Corp.*, 701 F.2d 1313 (10th Cir. 1983) the Court said:

> As noted in the classic case of Angerosa v. White Co., 248 App. Div. 425, 290 N.Y.S. 204 (1936):

>> To deny relief to the victim of a deliberate fraud because of his own negligence would encourage falsehood and dishonesty. . . .

>> . . . .

>> In this jurisdiction protection is given to one who is injured by falsehood or deception; fraud vitiates

<div align="center">15</div>

everything which it touches, and destroys the very
thing which it was devised to support; the law does
not temporize with trickery or duplicity.

The docket of the appellate case is attached. It is plain that the government

never meant to file a responsive brief. The government just asks for extension

after extension, a total of some 90 days, and now has obtained the dismissal of the

appeal. Respondent submits that as of this date, it is unlikely the government ever

truly attempted to prepare an appellate brief in light of *Blakely v. Washington*, and

the circumstances of this case.

## 2.    UNDERSIGNED COUNSEL IS NOT SATISFIED THAT A LETTER RECEIVED 2 DAYS BEFORE CLIENT WAS ORDERED RELEASED SATISFIES THE MINIMUM REQUIREMENTS OF COMPETENT LEGAL REPRESENTATION

The letter dated August 15, 2004, was sent to undersigned counsel through

Debra Lyons, someone undersigned counsel does not know.   The letter was

inconsistent with other directions client gave undersigned counsel regarding

representation. The letter was not an original, and the signature was not clearly

the signature of Judy Patterson to counsel. Further, no other phone calls or other

information had come from Judy Patterson regarding dissatisfaction with

representation, nor was there any additional work that needed to be performed. By

16

the time counsel received the letter, he had already submitted the Motion for Stay,

based in large part on *Blakely*, which was the only information that counsel had

received from Judy Patterson or anyone else; that being that a *Blakely* motion

ought to be filed.

When undersigned counsel contacted William Widell and he informed

undersigned counsel that he had not spoken with Judith Patterson, undersigned

counsel became more suspicious. The August 15, 2004 letter purports to direct

that all filings be sent to Mr. Widell, when no communications between Widell

and Judith Patterson allegedly had taken place.

With the letter containing false statements, and since the letter did not come

directly from the client, undersigned counsel did not conclude that the letter was

genuine, and certainly not such as to warrant the drastic measures the letter

purports to request.

Undersigned counsel respectfully submits that any finding by this Court that

"Judith Ray Patterson terminated Mr. Barringer as her attorney no later than late

August 2004" would be erroneous.

**3.    ALTHOUGH LETTER PURPORTS TO DIRECT COUNSEL TO
SEND CLIENT FILES TO WIDELL, WIDELL TWICE INFORMED
COUNSEL HE KNEW OF NO SUCH AGREEMENT BECAUSE HE HAD
NOT SPOKEN WITH CLIENT.**

17

The Court states in its show cause order that "Judith Ray Patterson...directed him to forward all correspondence and records to her present attorney, William P. Widell, Jr." Although it appears the August 15, 2004 letter does say that, William Widell has denied having any knowledge of any communication with Judith Patterson between sentencing and September 3, 2004, whatsoever.

**4. AMENDED NOTICE OF APPEAL WAS FILED TO PRESERVE THE RIGHT TO APPEAL UNTIL SUCH TIME AS COUNSEL COULD ASCERTAIN THE TRUE WISHES OF CLIENT AFTER FULL DISCLOSURE AND ADVICE OF COMPETENT COUNSEL, INCLUDING DISCLOSURE OF THE FRAUD UPON THIS HONORABLE COURT BY THE GOVERNMENT ATTORNEYS.**

The only reason the "amended notice of appeal" was filed was to preserve the issues already fully brief at the 10th Circuit. The filing of the amended and second amended judgments suggest an unfair attempt to disseize Ms. Patterson of her appellate rights. Undersigned counsel believes that Mr. Horn and Mrs. Nelson, along with Steven Knorr and William Widell, are obstructing the rights of Judith Patterson regarding issues for appeal for the actual or perceived benefit of Judith Patterson's husband only.

As of the filing of the Amended Notice of Appeal, undersigned counsel had no direct or credible evidence that client wished her appeal to be withdrawn. In

18

conversations with Widell, Widell said the only reason Eddy Patterson waived his

rights to Apprendi and Blakely violations was because the Government claimed

they would re-indict Eddy Patterson on other, slightly different charges.   When

undersigned counsel became aware that a Rule 35(b) motion had been filed on

Tuesday, August 30, 2004, and that at this time undersigned counsel was still

undersigned counsel for client according to the 10th Circuit and the District Court

for the Northern District (see Notice of Appeal filed and  Motion for Stay filed)

undersigned counsel became suspicious of exactly when and how Judith Patterson

gave substantial assistance to the government to warrant the 6 level departure this

Court granted in its September 1, 2004 Order.

 The claimed "substantial assistance" in the sealed, unserved Rule 35(b)

motion must have been at least alleged to have taken place prior to the filing of

that motion.   Rule 35 says " Correction or Reduction of Sentence" and further

states it applies to "defendant's subsequent substantial assistance in investigating

or prosecuting another person.."    If the government contacted Judith Patterson

regarding any "substantial assistance" without undersigned counsel's knowledge,

the government's problems are just beginning.   What is the name of the person

who contacted client directly and why did they not contact undersigned counsel?

 This conduct suggests an ethics violation on the part of someone in the U.S.

Attorney's office. If the motion is not totally false, then someone with the

Government must have contacted Judith Patterson, known to have been

represented by Jerold Barringer, without undersigned counsel's knowledge.

If a government attorney exerted the same type of influence on Judith

Patterson as was put on Mr. Patterson after he testified before the Federal Grand

Jury, this Court would have an independent duty to use its contempt power to

punish that attorney.

The inconsistent and implausible communications from various individuals

left undersigned counsel with more questions than answers regarding how Ms.

Patterson went from being satisfied with the appeal to claiming "William P.

Widell, Jr., currently represents me in these proceedings and he is the only

attorney authorized to file pleadings on my behalf." No other client has attempted

to fire me while steadfastly refusing to speak to me orally.

Accordingly, based upon all the unanswered, undersigned counsel felt

compelled to err, if at all, on the side of caution. If Judith Patterson truly wished

her appeal to be dismissed, after being advised of the legal implications of that act,

she could promptly obtain such a dismissal. So long as the requests had virtually

none of the earmarks of authenticity, undersigned counsel felt compelled not to

compromise the rights of Judith Patterson.

<div align="center">20</div>

## 5.    COUNSEL DID NOT MISREPRESENT ATTORNEY STATUS TO THE DISTRICT COURT.

The 10th Circuit has ruled that the filing of a timely notice of appeal pursuant to Fed.R.App.P. 3 transfers the matter from the district court to the court of appeals. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, 103 S.Ct. 400, 402, 74 L.Ed.2d 225 (1982) (per curiam); *Gryar v. Odeco Drilling, Inc.*, 674 F.2d 373, 375 (5th Cir. 1982). The district court is thus divested of jurisdiction. Any subsequent action by it is null and void. *Offshore Logistics Servs., Inc., v. Mutual Marine Office, Inc.*, 639 F.2d 1168, 1170 (5th Cir. Unit A Mar. 1981); *Taylor v. Wood*, 458 F.2d 15, 16 (9th Cir. 1972). In collateral matters not involved in the appeal, however, the district court retains jurisdiction. *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1550-51 (11th Cir.), cert. denied, ___ U.S. ___, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986); *Akerly v. Red Barn Sys., Inc.*, 551 F.2d 539, 543 (3d Cir. 1977).

Thus, when an interlocutory appeal is taken, the district court retains jurisdiction to proceed with matters not involved in that appeal. *Taylor v. Sterrett*, 640 F.2d 663, 667-68 (5th Cir. Unit A 1981). More important to counsel, courts have found certain matters to be collateral to a final judgment. See, e.g., *Haas v.*

*Pittsburgh Nat'l Bank*, 495 F. Supp. 815, 817 (W.D.Pa. 1980); see also *Keasler v.*

*United States*, 585 F. Supp. 825, 833-34 (E.D.Ark. 1984), aff'd, 766 F.2d 1227

(8th Cir. 1985). For example, even after a timely notice of appeal is filed, a district

court may retain jurisdiction to determine the propriety and amount of attorney's

fees. *Cox*, 784 F.2d at 1550-51. See also that *Garcia v. Burlington Northern R.*

*Co.*, 818 F.2d 713 (10th Cir. 1987).

The only jurisdiction this Court has involves issues not related to the appeal.

If this Court relies upon jurisdiction to "amend" the sentence currently briefed on

appeal at the 10th Circuit, it should explain the basis for a finding of "substantial

assistance" authorizing the Court's action.

Sometimes, a defendant may be pleased to have a reduction of sentence,

even after obtaining competent counsel. At other times, a reduction of sentence

may amount to nothing more than a fraud practiced upon an unsophisticated

person, a sham to trick the individual into giving up important legal rights.

Undersigned counsel cannot allow himself to be made party to any frauds upon a

court or a client, regardless of anyone's wishes. Undersigned counsel made an

oath to uphold justice without regard to considerations personal to himself. Our

legal system was founded upon honesty and the unflagging commitment to the

rule of law.

Counsel does not believe this Court has jurisdiction to decide who

represents Judy Patterson on appeal to the 10th Circuit. Further, just because

Judith Patterson would not want counsel to be involved in any appeal, does not

take away counsel's responsibility and obligation under the 10th Circuit rules.

Although the Notice of Appeal was filed in the District Court, the appeal itself is

governed by the United States Court of Appeals Rules. Neither the government

nor this Court can change the jurisdiction of the Court of Appeals.

## 6.    NO RESTRAINING ORDER IS REQUIRED UNDER THE CIRCUMSTANCES OF THIS CASE.

The Court suggests that a restraining order may be required to prevent

undersigned counsel from representing client on issues of appeal. No restraining

order is needed. Once the issues herein are addressed to the Court's satisfaction

with all pertinent facts being revealed to the Court and under oath, undersigned

counsel has no problem withdrawing from any representation upon the proper

request of Judith Patterson. Withdrawal would have been speedily effectuated if

Ms. Patterson had simply called and confirmed her understanding of the legal

issues, and her desire to retain new counsel.

As such, Counsel respectfully requests the Court conclude the Order for

Rule to Show Cause, and counsel requests a due process hearing, as stated earlier,

as needed to resolve all issues in this matter.

Respectfully Submitted,

Jerold W. Barringer
Attorney at Law
102 S. Pine St., P.O. Box 213
Nokomis, IL 62075
(217) 563-2646

24

UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                )
    -vs-                        )    No. 03 CR 55 EA
                                )
EDDY PATTERSON and JUDY PATTERSON )
                                )
        Defendants,             )

**FILED**
OCT 0 8 2004
Phil Lombardi, Clerk
U.S. DISTRICT COURT

**DECLARATION OF JEROLD W. BARRINGER**

I, Jerold W. Barringer, declare that I am a licensed attorney in the State of Illinois. I am licensed to practice in the United States District Court for the Central and Southern Divisions in Illinois, the Western District of Michigan, the 7th, 8th and 10th Circuit Courts of Appeal, and I have been authorized for a limited purpose to previously practice in the District Court of Nebraska, the District Court of North Dakota, the D.C. District Court, the Southern District of Iowa, the Northern District of Oklahoma, and the Western District of Arkansas.

I have been the attorney for Judy Patterson involving all criminal matters out of the Northern District of Oklahoma for 4 1/2 years. I was first hired to represent Judy Patterson on or about March 16, 2000. I have represented Judy Patterson from the moment she was indicted, and in fact before that indictment concerning filing tax returns, until whenever it is determined that I was fired.

I filed Judy Patterson's Notice of Appeal and I also filed her brief with the 10th Circuit on or about July 26, 2004. I was contacted by the U.S. Attorney's Office in Tulsa, OK by Kevin Danielson on or about August 14, 2004, regarding the government's request for a 30 day extension to file their brief in the appeal of Judy Patterson.

Though I agreed with the extension, I did not agree that Judy Patterson should remain in jail waiting on the government to address issues presented in light of the recent decision in *Blakely v. Washington*, 124 S.Ct. 2531 (June, 2004) regarding "judge found

facts". It appeared to me that there was a substantial likelihood the appeal would result in a reduction of sentence regarding this Court's imposition of a "tax loss" at a minimum. This is especially true in light of Agent Donna Meadors' exhibits showing that Judy Patterson owed no more than $1,400.00 for all four years of the conviction. By my saying that Donna Meadors prepared the exhibits, in no way suggests that I believe it would be appropriate for the District Court to find the fact of any amount of tax loss.

I did receive a letter dated August 15, 2004, on or about August 28, 2004, from a "Debra Lyons" which purported to direct me to not make any further representations for Judy Patterson. This letter directed that I send all the files to William Widell. The letter did not mention anything about the appeal already filed. I contacted William Widell thinking he was going to take over the appeal, and he informed me that he had not spoken to Judy Patterson since shortly after the date of sentencing, March 23, 2004.

I asked William Widell why Judy Patterson had directed me to send her file to him, and he said he did not know why because again he had not spoken with Judy Patterson. On or about September 2 or 3, 2004, I spoke with William Widell once I became aware that Judy Patterson was resentenced on September 1, 2004. Mr. Widell informed me that on August 30, 2004, he received a call from Steven Knorr, Mr. Patterson's new attorney, who directed Mr. Widell to contact Doug Horn, and that Doug Horn would tell Mr. Widell what was going on.

Mr. Widell informed me on this call that Mr. Horn faxed him a rule 35(b) motion which to this day I have not received. Mr. Widell said he would fax the motion to me, but the fax never came. Mr. Widell stated that he had gone to the hearing on September 1, 2004, and agreed to waive the motion for stay that I had filed. I asked Mr. Widell to ask Judy Patterson to give me a call so that we could talk about the issues in the case.

On or about September 8, 2004, I again spoke with William Widell, who was then with Judy Patterson while she met with the probation department. I again asked him to ask Judy Patterson to give me a call, since he was the only one who knew where she was

that I also knew. He said he would leave the message with Judy Patterson. I have received no call to this date.

I asked him if he knew anything about any assistance Judy Patterson gave the government warranting the 35(b) motion and the departure. He said it was some deal Mr. Patterson had worked out with the government. I was told that Doug Horn had threatened to re-indict Mr. Patterson on new charges if Mr. Patterson raised any *Blakely* or *Apprendi* issues for appeal, which of course is exactly what I had just filed three weeks before on behalf of Judy Patterson.

I filed the amended notice of appeal out of abundance of caution. I decided that it would be far easier to withdraw the new notice of appeal, than it would be to file any pleadings out of time, since the appellate brief had already been on file with the 10th Circuit for 40 days. With Judy Patterson's best interest in mind and heart, I filed it.

I still remain curious how this Court believes it had jurisdiction to amend its order once that order was appealed to the 10th Circuit, because Mr. Widell informed me that he did not believe that Judy Patterson did or even could provide substantial assistance to the prosecution. Further, I believe, based upon my attorney-client relationship with Judy Patterson, that she could not provide substantial assistance to the prosecution to warrant a Rule 35(b) motion. That motion, and Judy Patterson's desire to escape from the legal proceedings thereafter, while giving up substantial legal rights, are why this Rule to Show Cause has arisen.

I declare under the penalty of perjury, pursuant to 28 U.S.C. Sec. 1746(1) that the foregoing is true and correct to the best of my knowledge and belief.

Jerold W. Barringer



**FILED**

OCT 08 2004

Phil Lombardi, Clerk
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                                           PLAINTIFF

v.                                            Case No. 03CR 55 EA

EDDY PATTERSON and
JUDITH PATTERSON                                                                    DEFENDANTS

### AFFIDAVIT OF OSCAR STILLEY

STATE OF Arkansas   )
                    )ss
County of Sebastian )

Before the undersigned, a Notary Public, duly qualified and acting in and for said County

and State, appeared Oscar Stilley, satisfactorily proven to be the affiant herein, who stated the

following under oath:

1.      I am over the age of eighteen years, of sound mind, and have personal knowledge of all

matters set forth within this affidavit.

2.      I received from Debra Lyons a fax dated July 27, 2004, to which was attached a copy of a

letter purportedly from Judith Patterson.

3.      I called Ms. Lyons and asked her if she had witnessed the signature. My log of the event

states: "Review fax from Debra Lyons, she says she sent the fax on behalf of her mother, would

not discuss whether she had witnessed the signature, she hung up on me."

4.      I was suspicious of the document, as it had not originated from the prison at which Judith

1



Patterson was confined. Furthermore, Ms. Lyons was very hostile, and refused to provide reasonable assurances that the faxed document was genuine.

5.    I caused to be made two phone calls, one on the 29th and one on August 10, 2004, attempting to speak with Ms. Patterson and confirm whether or not she had written the letter. I had already called for her on July 26th, 2004, and knowing the speed of communications in prison, felt it a useless act to call the day after a previous call.

6.    Judy Patterson has always spoken kindly and in a pleasant tone, in any conversations with me. She has always returned calls made under circumstances that I knew the message would be received.

7.    Ms. Patterson knew that I was not her attorney of record for any of her criminal matters, but nonetheless asked me to respond to some legal questions she had. While she had always shown a very high regard for Mr. Barringer, at times she felt more comfortable asking me about various details, but always with the understanding that Mr. Barringer was her attorney and would give her legal advice and maintain sufficient communication that she was well informed of her case.

8.    Ms. Patterson told me that she definitely wanted to do an appeal, scant days before the notice of appeal was filed. She has never stated to me in any oral communication that she is or was dissatisfied with the appeal.

9.    I still do not believe that the purported letter from Ms. Patterson, faxed to me July 27, 2004, has the genuine signature of Judith Patterson. She has never confirmed to me that she wrote that letter. The lack of a notarization, on a document containing a place for a notarization, is simply further indicia that photocopies of documents purporting to bear the signature of Ms.

Patterson are not to be trusted.

10.     Steven Knorr told me in telephone conversations that he was fully aware that he could

have obtained the immediate liberty of Eddy Patterson on a Blakely motion, the maximum legal

sentence having already been served.  Steven Knorr said that the government was threatening to

reindict on supposedly slightly different charges, if Eddy Patterson exercised his legal rights and

obtained his immediate liberty.

11.     I have read the above and foregoing statements and swear or affirm that they are true and

correct to the best of my knowledge and belief.

Further Affiant sayeth not.

IN WITNESS WHEREOF, I hereunto set my hand this October 7, 2004.

_____

Oscar Stilley, Affiant

Subscribed to on oath or affirmation before me this October 7, 2004.

```
SHARON D. RUSSELL
Sebastian County
My Commission Expires
October 7, 2013
```

_____                    _____

My commission expires:                                    Notary Public





IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                              Case No. 03CR 55 EA

EDDY PATTERSON and
JUDITH PATTERSON                                                  DEFENDANTS

### AMENDED AND SUPPLEMENTAL
### AFFIDAVIT OF OSCAR STILLEY

STATE OF Arkansas )
                  )ss
County of Sebastian )

Before the undersigned, a Notary Public, duly qualified and acting in and for said County

and State, appeared Oscar Stilley, satisfactorily proven to be the affiant herein, who stated the

following under oath:

1.      I am over the age of eighteen years, of sound mind, and have personal knowledge of all

matters set forth within this affidavit.

2.      I received from Debra Lyons a fax dated July 27, 2004, to which was attached a copy of a

letter purportedly from Judith Patterson.

3.      I called Ms. Lyons and asked her if she had witnessed the signature. My log of the event

states: "Review fax from Debra Lyons, she says she sent the fax on behalf of her mother, would

not discuss whether she had witnessed the signature, she hung up on me."

1



4.    I was suspicious of the document, as it had not originated from the prison at which Judith

Patterson was confined.  Furthermore, Ms. Lyons was very hostile, and refused to provide

reasonable assurances that the faxed document was genuine.

5.    I caused to be made two phone calls, one on the 29th and one on August 10, 2004,

attempting to speak with Ms. Patterson and confirm whether or not she had written the letter.  I

had already called for her on July 26th, 2004, and knowing the speed of communications in

prison, felt it a useless act to call the day after a previous call.

6.    Judy Patterson has always spoken kindly and in a pleasant tone, in any conversations with

me.  She has always returned calls made under circumstances that I knew the message would be

received.

7.    Ms. Patterson knew that I was not her attorney of record for any of her criminal matters,

but nonetheless asked me to respond to some legal questions she had.  While she had always

shown a very high regard for Mr. Barringer, at times she felt more comfortable asking me about

various details, but always with the understanding that Mr. Barringer was her attorney and would

give her legal advice and maintain sufficient communication that she was well informed of her

case.

8.    Ms. Patterson told me that she definitely wanted to do an appeal, scant days before the

notice of appeal was filed.  She has never stated to me in any oral communication that she is or

was dissatisfied with the appeal.

9.    I still do not believe that the purported letter from Ms. Patterson, faxed to me July 27,

2004, has the genuine signature of Judith Patterson.  She has never confirmed to me that she

wrote that letter.  The lack of a notarization, on a document containing a place for a notarization,

2

is simply further indicia that photocopies of documents purporting to bear the signature of Ms.

Patterson are not to be trusted.

10.    Steven Knorr told me in telephone conversations that he was fully aware that he could

have obtained the immediate liberty of Eddy Patterson on a Blakely motion, the maximum legal

sentence having already been served. Steven Knorr said that the government was threatening to

reindict on supposedly slightly different charges, if Eddy Patterson exercised his legal rights and

obtained his immediate liberty.

11.    Eddy Patterson attended a session of the grand jury to give testimony concerning the

suggestion that was not compliant with certain unidentified tax laws. At the time of this visit,

client's husband was also represented by a law firm of Hall Estill located in Tulsa, Oklahoma,

concerning certain securities matters. I was never informed that the government intended to ask

any questions unrelated to tax matters. To my knowledge, the attorneys at Hall Estill were also

unaware of the plan to suprise Eddy Patterson with questions on security matters. Government

attorneys asked Eddy Patterson numerous questions about the securities matters, although Eddy

Patterson had not been given opportunity to consult with counsel on these issues prior to

questioning before the grand jury.

12.    After the questioning before the grand jury, Mr. Horn, Mrs. Nelson and certain SEC staff

attorneys, asked to visit with me and Mr. Patterson in a waiting room where I was directed to

remain during grand jury proceedings. Mr. Horn approached me to a close and uncomfortable

proximity, and with a very angry and hostile voice accused me of representing Mr. Patterson in

such a manner that Mr. Patterson would go to prison what would likely amount to a life

sentence. Mr. Horn pointedly and angrily informed Mr. Patterson that he had better get other

legal counsel lest he suffer a sentence amounting to a life sentence.

13.     I have read the above and foregoing statements and swear or affirm that they are true and correct to the best of my knowledge and belief.

Further Affiant sayeth not.

IN WITNESS WHEREOF, I hereunto set my hand this October 13, 2004.


Oscar Stilley, Affiant


Subscribed to on oath or affirmation before me this October 13, 2004.

MARCUS COKER
Crawford County
My Commission Expires
October 7, 2013

My commission expires: _____        Notary Public

## IN THE DISTRICT COURT OF TULSA COUNTY
## STATE OF OKLAHOMA

EDDY L. PATTERSON and )
JUDITH R. PATTERSON, )
)
        Plaintiffs, ) Case No. _CJ 2005 07343_
)
v. ) **JURY TRIAL DEMANDED**
) DEBORAH C. SHALLCROSS
LINDSEY K. SPRINGER, individually, )
and LINDSEY K. SPRINGER, d/b/a ) DISTRICT COURT
BONDAGE BREAKERS MINISTRIES, ) **F I L E D**
OSCAR STILLEY, and JEROLD W. )
BARRINGER, individuals, ) DEC 1 5 2005
)
        Defendants. ) SALLY HOWE SMITH, COURT CLERK
STATE OF OKLA. TULSA COUNTY

### PETITION

**COME NOW** the Plaintiffs, by and through their attorneys, The Richardson Law Firm, by Richard

D. Marrs and E. Diane Hinkle, and for their causes of action and claims against the Defendants, allege and

state as follows:

### JURISDICTION AND VENUE

1.   At all times pertinent hereto, Plaintiffs, Eddy L. Patterson ("Eddy Patterson") and Judith R.

Patterson ("Judith Patterson"), husband and wife, were residents of Tulsa County, Oklahoma.

2.   Upon information and belief, Defendant, Lindsey K. Springer ("Defendant Springer"), is a

resident of Creek County, Oklahoma, and may be served with summons within Creek County, Oklahoma.

3.   Upon information and belief, Defendant, Lindsey K. Springer, d/b/a Bondage Breakers

Ministries, is located in Sapulpa, Oklahoma, and may be served with summons by serving Lindsey

Springer, since he does business as Bondage Breakers Ministries.

4.   Upon information and belief, Defendant, Oscar Stilley ("Defendant Stilley"), is a resident of

Ft. Smith, Arkansas, is licensed to practice law in Oklahoma and Arkansas, and may be served with

summons at 5111 Rogers Ave., Suite 520, Ft. Smith, Arkansas 72903.

5.   Upon information and belief, Defendant, Jerold W. Barringer ("Defendant Barringer"), is a

resident of Illinois, is licensed to practice law in Illinois and may be served with summons at the Barringer

Law Office, 102 South Pine Street, Nokomis, Illinois 62075.

6.   The events alleged herein occurred primarily in Tulsa County, Oklahoma, and all Defendants

are either residents of, have conducted and/or are conducting business in Tulsa County, Oklahoma.

7.   The District Court in and for Tulsa County, State of Oklahoma, has personal and subject matter

jurisdiction, and venue is proper in this Court.

## FACTS PERTAINING TO ALL CLAIMS

Plaintiffs incorporate by reference Paragraphs 1 through 7 as if fully set out herein, and

further allege, as follows:

8.   On December 16, 2003, a criminal jury sitting in the United States District Court for the

Northern District of Oklahoma returned guilty verdicts against Eddy and Judith Patterson for felony counts

of conspiracy to defraud the United States, fraud and false statements, filing false federal income tax returns,

and willful failure to file federal income tax returns. The sentences handed down against Eddy and Judith

Patterson included time in federal correctional facilities. Judith Patterson served five (5) months of an 18-

month sentence before being released after a reduction in sentence. Eddy Patterson remains incarcerated.

9.   Prior to being indicted by a federal grand jury, Eddy and Judith Patterson were hard-working

United States citizens, had achieved the American dream of financial success, and had never been in

criminal trouble. In 1996, after having read Richard E. Clark's book, *Never Fear the IRS Again*, which

proselytizes not paying federal individual income taxes, Eddy Patterson stopped paying individual federal

income taxes and became a tax protester. Judith Patterson allowed Eddy to handle all tax matters and

followed Eddy Patterson's advice. Once the United States Internal Revenue Service ("IRS") began

collection proceedings, Eddy Patterson consulted Richard E. Clark and requested help. Richard E. Clark

told Eddy Patterson to contact Defendant Springer in Sapulpa, Oklahoma, who Richard E. Clark advised

was experienced in these types of matters.        Eddy Patterson contacted Defendant Springer who

introduced Eddy and Judith Patterson to Defendants Stilley and Barringer, both attorneys at law. Eddy

Patterson was advised by all Defendants that he should "un-volunteer" from paying taxes to the IRS and

allow Defendants Springer, Stilley and Barringer to represent and advise them as how to avoid paying taxes

with no civil or criminal exposure. In keeping with their advice, Eddy and Judith Patterson retained the

Defendants to represent their legal and financial interests and paid them large sums of money to represent

them.

        10.    The Pattersons did not pay their income taxes for the years 1996, 1997, 1998, and 1999

relying upon the advice of Springer, Stilley and Barringer that, if criminal charges were filed, they would

never be convicted nor would they ever go to prison. As a result of the Pattersons un-volunteering from

compliance with the Internal Revenue Code, and accepting the advice and guidance of all Defendants, the

Pattersons were indicted by a federal grand jury in 2002, and convicted of tax evasion and related offenses

in December 2003. Following indictment, Defendant Stilley represented Eddy Patterson as legal counsel,

and Defendant Barringer represented Judith Patterson. Defendant Springer, although not an attorney,

continued to provide legal and other advice to the Pattersons and worked in coordination with Defendants

Stilley and Barringer. Defendant Springer received payments for legal fees from Eddy Patterson which

were marked as contributions to his ministry. Defendants Stilley and Barringer also received large sums

of money as payment for legal fees.

11. In addition to billing the Pattersons for substantial legal fees, Defendants made unconditional

promises to the Plaintiffs that they would never be convicted and nor would they ever go to prison.

Defendant Springer advised the Pattersons that "God sent us" to do God's will and that paying federal

income tax was unconstitutional and wrong. The Pattersons sincerely believed that they had done nothing

wrong or illegal based on the representations made by Defendants Springer, Stilley and Barringer. Stilley

and Barringer <u>guaranteed</u> the Plaintiffs that if indicted, they would be acquitted and never serve any time

in prison. After the convictions, the Pattersons learned the truth that they had been deceived and

defrauded. The Pattersons lost their freedom, their wealth, their success, and their lifestyle.

## COUNT I

## <u>LEGAL MALPRACTICE</u>

Plaintiffs incorporate by reference Paragraphs 1 through 11 as if fully set out herein, and

further allege, as follows:

12. During legal proceedings against the Pattersons in federal court pursuant to felony

indictments, Defendant Stilley and Defendant Barringer were licensed attorneys, and admitted to practice

in the United States District Court for the Northern District of Oklahoma. Defendant Stilley acted as legal

counsel for Eddy Patterson, and Defendant Barringer acted as legal counsel for Judith Patterson at all times

up to, and including, the criminal convictions. The legal representation of each attorney was later terminated

by Eddy Patterson and Judith Patterson. Both Defendant Stilley and Defendant Barringer committed legal

malpractice, and but for the malpractice of Defendants Stilley and Barringer, the Pattersons would not have

been convicted and/or been incarcerated. Plea offers were made by the prosecution to Defendants Stilley

and Barringer, who each had a duty to convey the offers to their respective clients; however, those offers

were never conveyed to their clients, Eddy Patterson and Judith Patterson and had they been conveyed,

the Pattersons would not have been convicted and/or been incarcerated.

13.    After Judith Patterson terminated Defendant Barringer's services as her attorney, Defendant

Barringer continued to represent to the court that he was Judith Patterson's attorney, and filed a notice of

appeal purportedly on Judith Patterson's behalf. As a result, the judge ordered Defendant Barringer to

show cause as to why he should not be held in contempt of court. The ruling on the contempt is pending.

14.    Both Defendants Stilley and Barringer assisted Defendant Springer in the unauthorized

practice of law. Springer was permitted to participate in the proceedings to such an extent that Springer

was making the ultimate decisions that should have been made by the Pattersons as clients; however, the

Pattersons were denied the opportunity. Furthermore, Defendant Springer made strategic decisions, and

conducted the litigation as "lead counsel." Defendants Stilley and Barringer committed malpractice by

taking orders from Defendant Springer, who was not their client, not a lawyer, and who was not acting in

the best interests of the Pattersons.

15.    Throughout the time in which Stilley and Barringer were representing Eddy and Judith

Patterson's legal interest, Defendant Springer was acting as an agent, servant and/or employee of

Defendants Stilley and Barringer.

16.    Because of the malpractice of Defendants Stilley and Barringer, Plaintiffs are entitled to

damages in excess of $10,000.00.

## COUNT II

## FRAUD AND DECEIT

Plaintiffs incorporate by reference Paragraphs 1 through 15 as if fully set out herein, and further allege, as follows:

16. Defendants, and each of them, made false representations of material fact to the Pattersons. Defendants knew that these positive assertions were false. Defendants intended for the Pattersons to act upon these false assertions, which they did, to their detriment. Defendants conspired to defraud the Pattersons of their money by reassuring them with false promises, including promises that they would never be convicted and or go to prison and such promises were made with the intent to deprive the Plaintiffs of their money and to obtain the Plaintiffs' money by charging excessive attorney fees. Defendants Stilley and Barringer failed to communicate plea offers to the Pattersons, which was deceitful and the plea offers were not conveyed because the Defendants wanted to obtain the Plaintiffs' money by charging excessive attorney fees.

17. Defendants' acts and omissions were done with the intent of inducing the Plaintiffs to alter their position to one of substantial risk and injury, for which they have suffered compensable damages in excess of $10,000.00.

## COUNT III

## CIVIL RICO

Plaintiffs incorporate by reference Paragraphs 1 through 17 as if fully set out herein, and further allege, as follows:

18. Defendants engaged in a pattern of racketeering activity designed to exert undue influence over the Plaintiffs and extort money from them. The pattern of activity included a plan to challenge the

Internal Revenue Code of the United States, and establish legal precedent, at Plaintiffs' expense.

Defendants used the United States mail and the telephone to carry on their pattern of racketeering activities.

Defendants sent billing invoices to the Plaintiffs through the United States mail. These billing invoices were

part of Defendants' racketeering activities and plan to bilk Plaintiffs out of their money. Furthermore,

Defendants used the telephone to communicate with each other to expedite their fraudulent scheme.

Defendants, Stilley and Barringer, billed Eddy and Judith Patterson for numerous telephone calls to

Defendant, Lindsey Springer, who was being paid for "running the show." The conduct of Defendants, and

each of them, was in violation of the United States Code governing Racketeer Influenced and Corrupt

Organizations.

19. Plaintiffs' business and property were harmed as a result of Defendants' activities, for which

Plaintiffs are entitled to damages in excess of $10,000.00.

## PUNITIVE DAMAGES

Plaintiffs incorporate by reference Paragraphs 1 through 19 as if fully set out herein, and

further allege, as follows:

20. Defendants acted with reckless disregard for the rights of the Plaintiffs. Plaintiffs suffered

actual damages as a result for which Defendants should be punished. For the reasons above-stated,

Plaintiffs seek punitive damages in excess of $10,000.00.

## PRAYER

**WHEREFORE**, premises considered, Plaintiffs pray for judgment against the Defendants, jointly

and severally, for actual damages and punitive damages, costs of court, attorney's fees, and such other and

further relief to which Plaintiffs may be entitled.

7

Respectfully submitted,

Richard D. Marrs, OBA# 5705
E. Diane Hinkle, OBA# 14744
The Richardson Law Firm
6555 S. Lewis, Suite 200
Tulsa, OK 74136-3414
(918) 492-7674
(918) 493-1925 Facsimile
**Attorneys for Plaintiffs**

I, Sally Howe Smith, Court Clerk, for Tulsa County, Oklahoma, hereby certify that the foregoing is a true, correct and full copy of the instrument herewith set out as appears on record in the Court Clerk's Office of Tulsa County, Oklahoma, this

JUL 0 8 2008

By _____
Deputy

8

Case 4:03-cr-00055-CVE   Document 98  Filed in USDC ND/OK on 10/22/2003   Page 1 of 6
Case 4:09-cr-43   Document 36-10   Filed 04/13/2009   Page 1 of 6
Appellate Case: 10-5057   Document: 01018464267   Date Filed: 07/26/2010   Page: 353



# IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No.  03-CR-55-EA |
| | ) |
| EDDY PATTERSON and | ) |
| JUDITH PATTERSON, | ) |
| | ) |
| Defendants. | ) |

**FILED**

OCT 2 2 2003

Phil Lombardi, Clerk
U.S. DISTRICT COURT

### UNITED STATES' SECOND NOTICE OF INTENT
### TO INTRODUCE RULE 404(b) EVIDENCE
### AND BRIEF IN SUPPORT

The United States, by United States Attorney, David E. O'Meilia, and Assistant

United States Attorney, Melody Noble Nelson, for its Second Notice of Intent to Introduce

Federal Rules of Evidence Rule 404(b) evidence and Brief in Support states:

<u>Notice of Evidence</u>

The United States hereby files Notice with the Court that it intends to introduce Rule

404(b) evidence at trial.  The United States will introduce testimony by two witnesses, Dale

Watts and Richards Washburne.  The testimony will consist generally of the witnesses'

knowledge about the 1979 investigation and subsequent Indictment in Dallas County, Texas

charging Defendant Eddy Patterson and Dale Watts with theft over $10,000.00 for false

invoices sold to Richards Capital, a company owned by Richards Washburne. False invoices

were created by Mr. Watts and Defendant Eddy Patterson and sold to Richards Capital.  In

some instances, the same false invoices were sold several times to Richards Capital.  In other

instances, invoices were created without any work being done. The indictment was subsequently dismissed. The United States offers this evidence to prove intent, knowledge and lack of mistake.

## Argument

Federal Rules of Evidence 404 prohibits the admission of evidence of other crimes, wrongs or acts to demonstrate the bad character. However, Fed. R. Evid. 404(b) allows such evidence for other approved purposes including, identity, plan, opportunity, motive, intent, lack of mistake or knowledge. In determining if the evidence is admissible under Fed. R. Evid. 404(b), courts apply the four considerations set out in *Huddleston v. United States*, 485 U.S. 681 919 (1988). Those considerations are:

(1)   the evidence must be offered for a proper purpose;
(2)   the evidence must be relevant;
(3)   the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and
(4)   pursuant to Fed. R. Evid. 105, the trial court shall, upon request, instruct the jury the evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*Huddleston*, 485 U.S. at 691.

## I.   The 404(b) evidence is offered for proper purpose

Defendant Eddy Patterson is charged in Counts 20-27 of the Indictment with various securities violations in connection with the inclusion of false invoices into the financial statements of NESCO, a Tulsa based publicly traded corporation, in 2000 and 2001. These false invoices caused the financial condition of NESCO to be overinflated and led to the bankruptcy of the corporation in 2001. It is anticipated the evidence at trial will show

Case 4:03-cr-00055-CVE    Document 98  Filed in USDC ND/OK on 10/22/2003    Page 3 of 6
Case 4:09-cr-43    Document 36-10    Filed 04/13/2009    Page 3 of 6
Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 355

Defendant Eddy Patterson, then Chief Executive Officer of NESCO, and the NESCO Comptroller had false invoices created and entered into NESCO's 2000 and 2001 financial documents, causing substantial overstatement of the corporation's accounts receivables. At the time of the false invoices, a private company was in negotiations to purchase NESCO.

The 404(b) evidence of the previous false invoices is offered to prove Defendant Eddy Patterson had the intent and knowledge of the falsifying of invoices. In addition, should Defendant Eddy Patterson's defense be mistake, the evidence will be used to show lack of mistake.

## II.  The evidence is relevant

Federal Rules of Evidence 404 states: "'Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less  probable than it would be without the evidence."

Evidence of previous false invoices is relevant to show Defendant Eddy Patterson knew how to prepare false invoices and how to do it in such a way that it would not be detected by accounting records.    In addition, the creation of the 1979 false invoices are relevant to show Defendant Eddy Patterson had knowledge of false invoicing and therefore, was in a better position to recognize such practices when they were a part of NESCO's accounting practice.

Although there is a time lapse between the Richards Capital false invoicing and the charged acts, the Tenth Circuit has held, "[t]here is no absolute rule regarding the number of years that can separate offenses. Rather, the court applies a reasonableness standard and examines the fact and circumstances of each case." *United States v. Franklin*, 704 F.2d

Case 4:03-cr-00055-CVE     Document 98  Filed in USDC ND/OK on 10/22/2003     Page 4 of 6
Appellate Case: 10-5057     Document: 01018464267     Date Filed: 07/26/2010     Page: 356
Case 4:09-cr-43     Document 36-10     Filed 04/13/2009     Page 4 of 6

1183, 1189 (10th Cir. 1983).  *See, United States v, Massey*, 48 F.3d 1560, 1571-1572 (10th Cir. 1995).

The similarity between the Richards Capital incident and the acts charged in the indictment are striking.   Both incidents involved Defendant Eddy Patterson using another individual as a "front person".  Both incidents involve falsifying invoices for the financial gain of the two companies Defendant Eddy Patterson had an interest in.   In addition, in the realm of white collar criminal prosecutions, it is not unusual for periods of time to pass between criminal acts.  The near prosecution of the 1979 invoicing scheme seems to have deterred Defendant Eddy Patterson until NESCO's financial problems and negotiations to sell put Defendant Eddy Patterson and the Comptroller in a position to inflate the financial records.

### III.  The probative value of the act substantial outweighs any potential for unfair prejudice

In determining if the probative value of the evidence substantially outweighs any potential for unfair prejudice, the Tenth Circuit has stated:

> Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.

*United States v. Rodriguez*, 192 F.2d 946, 951 (10th Cir. 1999).

While 1979 false invoicing scheme is prejudicial to Defendant Eddy Patterson, it is not substantially prejudicial to the level that it outweighs its probative value.   The Government must prove at trial that Defendant Eddy Patterson was aware of and participated

Case 4:03-cr-00055-CVE    Document 98  Filed in USDC ND/OK on 10/22/2003    Page 5 of 6
Case 4:09-cr-43    Document 36-10    Filed 04/13/2009    Page 5 of 6
Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 357

in the actions of his co-conspirator in NESCO. The 1979 false invoicing is important because is evidence that Defendant Eddy Patterson had previously employed a false invoicing scheme.

## IV.  Upon request, the Court can instruct the jury the evidence is to be considered only for the proper purpose

Should Defendant Eddy Patterson request, the court will give a limiting instruction directing the jury that the 404(b) evidence may only be considered for the limited purpose of establishing Defendant Eddy Patterson's intent, knowledge and lack of mistake of the charged securities violations.

## Conclusion

Therefore, based upon the four considerations identified in *Huddleston*, this proffered evidence is properly admissible in the trial.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney

Melody Noble Nelson, OBA #16467
Assistant United States Attorney
333 West 4th Street, Ste 3460
Tulsa, OK 74103
918/581-7463

## CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of October, 2003, I caused to be mailed a

true and correct copy of the above and foregoing document to the following with proper

postage prepaid:

Jerold Barringer
Post Office Box 213
Nokomis, Illinois   62075

William Widell, Jr.
403 South Cheyenne Avenue
Penthouse
Tulsa, Oklahoma 74103

Oscar Stilley
5111 Rogers Avenue
Suite 520
Fort Smith, Arkansas 72903

Assistant United States Attorney

FILED

APR 16 2003

~~SEALED~~

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| EDDY PATTERSON and | ) |
| JUDITH PATTERSON, | ) |
| | ) |
| Defendant. | ) |

Case No. **03CR 55C**

**UNDER SEAL**

**INDICTMENT**

[18 U.S.C. §371: Conspiracy;
26 U.S.C. §7206(1): False Return;
26 U.S.C. §7203: Failure to File Return;
26 U.S.C. § 7201: Evade or defeat Tax;
18 U.S.C. §1014: False Statement on Loan
Documents;
18 U.S.C. §2: Aiding and Abetting and
Causing a Criminal Act;
18 U.S.C. § 982: Criminal Forfeiture;
15 U.S.C. §78j(b): Securities Fraud; and
18 U.S.C. §1001: False Statement]

## THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to the Indictment:

1.      Defendant EDDY L. PATTERSON (hereafter "EDDY PATTERSON") was

the Chief Executive Officer and one of the founders of National Environmental Service

Company (hereafter "NESCO").    As of December 31, 2000, Defendant EDDY

PATTERSON owned 3,019,658 shares of NESCO stock, constituting over 30% of the

company's outstanding shares at that time.

2.      Defendant JUDITH RAY PATTERSON (hereafter "JUDITH PATTERSON")

was the wife of EDDY PATTERSON.  During various times from in or about 1996 to in or

about December, 2001, Defendant JUDITH PATTERSON was employed in an

administrative capacity at Moore Funeral Homes in Tulsa, Oklahoma.

3.      NESCO, based in Tulsa, Oklahoma, was a corporation publicly traded on the

National Association of Securities Dealers Automated Quotations System (hereafter

"NASDAQ") market with division facilities in many states.  NESCO installed fuel tanks for

gas stations and convenience stores and conducted site clean-up and fuel management.

NESCO employed approximately 225 individuals and had offices in more than ten states.

NESCO had shareholders throughout the United States, including in the Northern District

of Oklahoma and on November 25, 2001 filed for bankruptcy reorganization pursuant to

Chapter 11 of the United States Bankruptcy Code, Case Number 01-5321-M filed in the

United States Bankruptcy Court, Northern District of Oklahoma.

4.      As a public company, NESCO was required to file annual financial reports

on Form 10-KSB with the United States Securities and Exchange Commission ("SEC").

NESCO's Forms 10-KSB contained its audited financial statements for each fiscal year,

including statements of revenue and net income certified by NESCO's external auditor.

NESCO's fiscal year was contemporaneous with the calendar year.  On March 5, 2001,

Defendant EDDY PATTERSON, as NESCO's Chairman and CEO, signed its Form 10-KSB

for the fiscal year ended December 31, 2000 and filed with the SEC on or about April 2,

2001.

5.      NESCO retained Tullis and Taylor as external auditors to audit its internal

financial records.  The financial statements contained in NESCO's Form 10-KSB were

reviewed and relied upon by NESCO's external auditor in preparing its audit of NESCO's

-2-

2000 fiscal year.  Before the auditor completed its audit of NESCO's fiscal year 2000

financial statements, Defendant EDDY PATTERSON signed and provided letters to the

external auditor dated March 2, 2001, and March 26, 2001.  Each of these letters attested to

the accuracy of the information contained in NESCO's internally prepared financial records

and represented that no material information had been misstated or omitted.  Based in part

on Defendant EDDY PATTERSON'S representations in those letters, the external auditor

certified  NESCO's financial statements for the fiscal year 2000 conformed to generally

accepted accounting principles.

6.      NESCO was also required to file with the SEC quarterly financial reports on

Form 10-QSB.  NESCO's Forms 10-QSB contained unaudited financial statements for the

company, including statements of revenue and net income for the relevant quarterly period.

On or about May 15, 2001, NESCO filed with the SEC its Form 10-QSB for the first quarter

of 2001, which ended March 31, 2001.  Defendant EDDY PATTERSON was NESCO's

chairman and CEO at the time the company filed its Form 10-QSB for the first quarter of

2001.

7.      Citizen Bank, now known as Gold Bank, Security Bank and Bank of Oklahoma

are financial institutions within the meaning of Title 18, United States Code, Section 20.

-3-

## COUNT ONE

### [18 U.S.C. §371]

8.     From in or about March, 1996, and continuing through the year 2000, in the

Northern District of Oklahoma and elsewhere, defendants, EDDY PATTERSON and

JUDITH PATTERSON did unlawfully, willfully, and knowingly conspire, combine,

confederate, and agree with each other to defraud the United States Department of Treasury,

Internal Revenue Service, by impeding, impairing, obstructing, and defeating the lawful

functions of the Internal Revenue Service in the ascertainment, computation, assessment, and

collection of the taxes owing on income derived.

### Manner and Means

Defendants EDDY PATTERSON and JUDITH PATTERSON used the following

manner and means to achieve the object of their conspiracy:

9.     It was part of the conspiracy that in 1996 and continuing to 2000, Defendants

EDDY PATTERSON and JUDITH PATTERSON would fail to file personal income tax

returns, in order to avoid payment of their lawful tax liability.

10.     It was further a part of the conspiracy that in June 1997 Defendants EDDY

PATTERSON and JUDITH PATTERSON would file amended personal, jointly filed income

tax returns for the years 1993 and 1995.   In order to obtain a refund of the 1993 and 1995

taxes the Defendants, EDDY PATTERSON and JUDITH PATTERSON, had previously paid

to the United States, the Defendants amended their 1993 and 1995 personal, jointly filed

-4-

income tax return in June 1997 to fraudulently reflect they had no income during 1993 and 1995.

11.     Defendants EDDY PATTERSON and JUDITH PATTERSON  hired an accountant in the Northern District of Oklahoma to prepare federal income tax returns and knowing the returns were required by law to be filed, the Defendants, EDDY PATTERSON and JUDITH PATTERSON, failed to file the returns and pay the taxes due thereon.

12.     On or about June 27, 1996, Defendant EDDY PATTERSON submitted documents to the Internal Revenue Service Center in Austin, Texas, claiming the Internal Revenue Service did not have jurisdiction over him.

13.     On or about January 26, 1998, Defendant JUDITH PATTERSON submitted documents with the Internal Revenue Service Center in Austin, Texas claiming the Internal Revenue Service did not have jurisdiction over her.

14.     From on or about 1996 to 2000 Defendants EDDY PATTERSON and JUDITH PATTERSON instructed individuals at their respective places of employment to stop withholding Federal income taxes from their Form W-2 wages.

15.     During the years 1995, 1999 and 2000, Defendant JUDITH PATTERSON submitted false Forms W-4 to her employer, Moore Funeral Homes.  The 1995 W-4 submitted by Defendant JUDITH PATTERSON falsely and fraudulently claimed she had nine exemptions.  The 1999 and 2000 Forms W-4 claimed she was exempt from all federal income tax withholdings.

-5-

## Overt Acts

In furtherance of the conspiracy, Defendants EDDY PATTERSON and JUDITH PATTERSON committed the following fraudulent acts:

16.     On or about August 7, 1995, in the Northern District of Oklahoma Defendant JUDITH PATTERSON instructed a Moore Funeral Homes payroll employee to stop withholding federal income tax from Defendant JUDITH PATTERSON'S check.

17.     On or about August 9, 1995, in the Northern District of Oklahoma, Defendant JUDITH PATTERSON submitted to Moore Funeral Homes her Form W-4 falsely stating she had nine exemptions.

18.     Beginning on or about 1996 and continuing into 1998 in the Northern District of Oklahoma, on a yearly basis Defendant EDDY PATTERSON instructed a payroll employee at NESCO to stop withholding federal income taxes from his wages.

19.     From in or about 1999 to the end of 2000 in the Northern District of Oklahoma, Defendant EDDY PATTERSON instructed the payroll department at NESCO to omit to withhold federal income taxes from Defendant EDDY PATTERSON's wages.

20.     On or about June 11, 1997, Defendants EDDY PATTERSON and JUDITH PATTERSON prepared and filed a false Amended joint U.S. Individual Income Tax Return for the tax year 1993, seeking a refund in the amount of $23,633.00.

-6-

21.    On or about June 11, 1997, Defendants EDDY PATTERSON and JUDITH PATTERSON prepared and filed a false Amended Joint U.S. Individual Income Tax Return for the tax year 1995, seeking a refund in the amount of $24,683.00.

22.    On or about March 14, 1996 Defendant EDDY PATTERSON submitted a letter to the Internal Revenue Service, Austin, Texas, asserting he was not a citizen of the United States, that he was a non-taxpayer, and claiming the Internal Revenue Service did not have jurisdiction over him.        23.        On or about June 27, 1996 Defendant EDDY PATTERSON submitted a letter to the Internal Revenue Service, Austin, Texas, asserting he was not a citizen of the United States, that he was a non-taxpayer, and claiming the Internal Revenue Service did not have jurisdiction over him.

24.    On or about January 26, 1998, Defendant JUDITH PATTERSON submitted a letter to the Internal Revenue Service, Austin, Texas, asserting she was not a citizen of the United States, she was a non-taxpayer and the Internal Revenue Service did not have jurisdiction over her.

25.    On or about March 3, 1999 in the Northern District of Oklahoma, Defendant JUDITH PATTERSON completed a Form W-4, on which she falsely claimed she was exempt from federal income tax withholdings. Defendant JUDITH PATTERSON submitted the false Form W-4 to her employer, Moore Funeral Homes which caused Moore Funeral Homes to reduce or eliminate the amount of federal income tax to withhold from Defendant JUDITH PATTERSON's wages.

-7-

26.     On or about February 7, 2000 in the Northern District of Oklahoma, Defendant

JUDITH PATTERSON gave Moore Funeral Homes another false W-4 form stating she was

exempt from federal income tax withholding.  Moore Funeral Homes used the false Form W-

4 to determine the amount of federal income tax to withhold from Defendant JUDITH

PATTERSON's wages.

All in violation of Title 18 United States Code Section 371.

## COUNT TWO

[26 U.S.C. §7206(1)
18 U.S.C. §2(a) and (b)]

27.     The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

28.     On or about June 11, 1997 in the Northern District of Oklahoma, Defendants,

EDDY PATTERSON and JUDITH PATTERSON, aiding and abetting each other, willfully

made, subscribed and caused to be made and subscribed, an Amended U.S. Individual

Income Tax Return, Form 1040X, Married Filing Joint, for the year 1993, verified by a

written declaration under the penalties of perjury which was filed with the Internal Revenue

Service. The Defendants knew that said Amended Return was not true and correct as to

every material matter contained therein. The false amended tax return stated the following:

a.     Adjusted gross income was $0.00. (Line 3, Form 1040X)

b.     Taxable income was $0.00. (Line 7, Form 1040X)

c.     Refund to be received was $23,633.00. (Line 23, Form 1040X)

whereas the Defendants EDDY PATTERSON and JUDITH PATTERSON then knew and

well believed the true and correct entries should have been:

a.     Adjusted gross income was $147,296.00.

b.     Taxable income was $73,974.00.

c.     Total tax plus penalties owed $23,633.00.

Thus the Defendants, EDDY PATTERSON and JUDITH PATTERSON knew and

believed the 1993 U.S. Individual Income Tax Return signed by the Defendants and filed on

July 1, 1994, was true and correct and the above described Amended Form 1040X was false,

all in violation of Title 26, United States Code, Section 7206(1) and Title 18, United States

Code, Section 2 (a) and (b).

-10-

## **COUNT THREE**

[26 U.S.C. §7206(1)
18 U.S.C. §2(a) and (b)]

29.     The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

30.     On or about June 11, 1997, in the Northern District of Oklahoma, Defendants,

EDDY PATTERSON and JUDITH PATTERSON, aiding and abetting each other, willfully

made, subscribed and caused to be made and subscribed, an Amended U.S. Individual

Income Tax Return, Form 1040X, Married Filing Joint, for the year 1995, verified by a

written declaration made under the penalties of perjury which was filed with the Internal

Revenue Service. The Defendants knew that said amended return was not true and correct

as to every material matter contained therein. The false amended tax return stated the

following:

    a.      Adjusted gross income was $0.00. (Line 1, Form 1040X)

    b.      Taxable income was $0.00. (Line 5, Form 1040X)

    c.      Refund to be received was $24,683.00 (Line 22, Form 1040X)

whereas the Defendants EDDY PATTERSON and JUDITH PATTERSON then knew and

well believed the true and correct entries were:

    a.      Adjusted gross income was $331,969.00.

    b.      Taxable income was $140,149.00.

-11-

c.      Total tax plus penalties owed $24,683.00.

Thus the Defendants, EDDY PATTERSON and JUDITH PATTERSON knew and

believed the 1995 U.S. Individual Income Tax Return signed by them and filed on October

21, 1996 was true and correct and the above described Amended Form 1040X was false, all

in violation of Title 26, United States Code, Section 7206(1) and Title 18, United States

Code, Section 2(a) and (b).

# COUNT FOUR

[26 U.S.C. §7203]

31.     The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

32.     During the calendar year 1996, Defendant JUDITH PATTERSON resided in

the Northern District of Oklahoma and earned gross income of approximately $17,000.00.

By reason of such gross income she was required by law, following the close of the calendar

year 1996 and on or before August 15, 1997, to make an income tax return to the District

Director of the Internal Revenue Service or other proper officer of the United States stating

specifically the items of her gross income and any deductions and credits to which she was

entitled. Well knowing and believing all of the foregoing, Defendant JUDITH PATTERSON

did willfully fail to make an income tax return to the Internal Revenue Service, or to any

other proper officer of the United States, all in violation of Title 26, United States Code,

Section 7203.

-13-

## COUNT FIVE

### [26 U.S.C. §7203]

33.     The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

34.     During the calendar year 1998 Defendant JUDITH PATTERSON resided in

the Northern District of Oklahoma and earned gross income of approximately $4,000.00. By

reason of such gross income she was required by law, following the close of the calendar

year 1998 and on or before April 15, 1999, to make an income tax return to the District

Director of the Internal Revenue Service or other proper officer of the United States stating

specifically the items of her gross income and any deductions and credits to which she was

entitled. Well knowing and believing all of the foregoing, Defendant JUDITH PATTERSON

did willfully fail to make an income tax return to the Internal Revenue Service, or to any

other proper officer of the United States, all in violation of Title 26, United States Code,

Section 7203.

-14-

## COUNT SIX

[26 U.S.C. §7203]

35.     The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

36.     During the calendar year 1999 Defendant JUDITH PATTERSON resided in

the Northern District of Oklahoma and earned gross income of approximately $22,000.00.

By reason of such gross income she was required by law, following the close of the calendar

year 1999 and on or before August 15, 2000, to make an income tax return to the District

Director of the Internal Revenue Service or other proper officer of the United States stating

specifically the items of her gross income and any deductions and credits to which she was

entitled. Well knowing and believing all of the foregoing, Defendant JUDITH PATTERSON

did willfully fail to make an income tax return to the Internal Revenue Service, or to any

other proper officer of the United States, all in violation of Title 26, United States Code,

Section 7203.

-15-

## COUNT SEVEN

[26 U.S.C. §7203]

37.    The allegations of the Introduction of this indictment are incorporated in this

Count by reference.

38.    During the calendar year 2000 Defendant JUDITH PATTERSON resided in

the Northern District of Oklahoma and earned gross income of approximately $25,500.00.

By reason of such gross income she was required by law, following the close of the calendar

year 2000 and on or before October 15, 2001, to make an income tax return to the District

Director of the Internal Revenue Service or other proper officer of the United States stating

specifically the items of her gross income and any deductions and credits to which she was

entitled. Well knowing and believing all of the foregoing, Defendant JUDITH PATTERSON

did willfully fail to make an income tax return to said District Director or the Internal

Revenue Service, or to any other proper officer of the United States, all in violation of Title

26, United States Code, Section 7203.

-16-

## COUNT EIGHT

[26 U.S.C. §7201]

39.     The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

40.     During the calendar year 1996 in the Northern District of Oklahoma,

Defendant, EDDY PATTERSON, did willfully attempt to evade and defeat the income tax

due and owing by him to the United States of America for the calendar year of 1996 when

Defendant EDDY PATTERSON earned gross income of approximately $138,880.00.  By

reason of such gross income he was required by law, following the close of the calendar year

of 1996 and on or before August 15, 1997, to make an income tax return to the Internal

Revenue Service or other proper officer of the United States, stating specifically the items

of his gross income and any deductions and credits to which he was entitled.   Defendant,

EDDY PATTERSON, well knowing and believing all of the foregoing, did willfully fail to

file an income tax return with the Internal Revenue Service, or with any other proper officer.

In addition, Defendant, EDDY PATTERSON, caused zero or minimal federal income tax

to be withheld from his Form W-2 wages during calendar year 1996.  Defendant EDDY

PATTERSON'S failure to file a 1996 income tax return and failure to have federal income

tax withheld from his Form W-2 wages during 1996 resulted in Defendant EDDY

PATTERSON willfully evading or defeating his tax liability of approximately $6,067.00, all

in violation of Title 26, United States Code, Section 7201.

-17-

## COUNT NINE

[26 U.S.C. §7201]

41.     The allegations of the Introduction of this Indictment are incorporated in this Count by reference.

42.     During the calendar year 1997 in the Northern District of Oklahoma, the Defendant, EDDY PATTERSON, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year of 1997 when Defendant EDDY PATTERSON earned gross income of approximately $385,100.00. By reason of such gross income he was required by law, following the close of the calendar year of 1997 and on or before April 15, 1998 to make an income tax return to the Internal Revenue Service or other proper officer of the United States, stating specifically the items of his gross income and any deductions and credits to which he was entitled. Defendant, EDDY PATTERSON, well knowing and believing all of the foregoing, did willfully fail to file an income tax return with the Internal Revenue Service, or with any other proper officer. In addition, Defendant, EDDY PATTERSON, caused zero or minimal federal income tax to be withheld from his W-2 wages during calendar year 1997. Defendant EDDY PATTERSON's failure to file a 1997 income tax return and failure to have federal income tax withheld from his W-2 wages during 1997 resulted in Defendant EDDY PATTERSON willfully evading or defeating his tax liability of approximately $37,555.00, all in violation of Title 26, United States Code, Section 7201.

-18-

## COUNT TEN

[26 U.S.C. §7201]

43.     The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

44.     During the calendar year 1998 in the Northern District of Oklahoma, the

Defendant, EDDY PATTERSON, did willfully attempt to evade and defeat the income tax

due and owing by him to the United States of America for the calendar year of 1998 when

Defendant EDDY PATTERSON earned gross income of approximately $634,565.00.  By

reason of such gross income he was required by law, following the close of the calendar year

of 1998 and on or before April 15, 1999, to make an income tax return to the Internal

Revenue Service or other proper officer of the United States, stating specifically the items

of his gross income and any deductions and credits to which he was entitled.   Defendant,

EDDY PATTERSON, well knowing and believing all of the foregoing, did willfully fail to

file an income tax return with the Internal Revenue Service, or with any other proper officer.

In addition, Defendant EDDY PATTERSON, caused zero or minimal federal income tax to

be withheld from his W-2 wages during calendar year 1998.   Defendant EDDY

PATTERSON's failure to file a 1998 income tax return and failure to have federal income

tax withheld from his W-2 wages during 1998 resulted in Defendant EDDY PATTERSON

willfully evading or defeating his tax liability of approximately $74,901.00, all in violation

of Title 26, United States Code, Section 7201.

-19-

## COUNT ELEVEN

[26 U.S.C. §7201]

45.    The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

46.    During the calendar year 1999 in the Northern District of Oklahoma, the

Defendant, EDDY PATTERSON, did willfully attempt to evade and defeat the income tax

due and owing by him to the United States of America for the calendar year of 1999 when

Defendant EDDY PATTERSON earned gross income of approximately $329,431.00.  By

reason of such gross income he was required by law, following the close of the calendar year

of 1999 and on or before August 15, 2000 to make an income tax return to the Internal

Revenue Service or other proper officer of the United States, stating specifically the items

of his gross income and any deductions and credits to which he was entitled.   Defendant,

EDDY PATTERSON, well knowing and believing all of the foregoing, did willfully fail to

file an income tax return with the Internal Revenue Service, or with any other proper officer.

In addition, Defendant EDDY PATTERSON, caused zero or minimal federal income tax to

be withheld from his W-2 wages during calendar year 1999.    Defendant EDDY

PATTERSON's failure to file a 1999 income tax return and failure to have federal income

tax withheld from his W-2 wages during 1999 resulted in Defendant EDDY PATTERSON

willfully evading or defeating his tax liability of approximately $48,618.00, all in violation

of Title 26, United States Code, Section 7201.

-20-

## COUNT TWELVE

[26 U.S.C. §7201]

47.     The allegations of the Introduction of this Indictment are incorporated in this Count by reference.

48.     During the calendar year 2000 in the Northern District of Oklahoma, the Defendant, EDDY PATTERSON, did willfully attempt to evade and defeat the income tax due and owing by him to the United States of America for the calendar year of 2000 when Defendant EDDY PATTERSON earned gross income of approximately $295,131.00.  By reason of such gross income he was required by law, following the close of the calendar year of 2000 and on or before October 15, 2001, to make an income tax return to the Internal Revenue Service or other proper officer of the United States, stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Defendant EDDY PATTERSON, well knowing and believing all of the foregoing, did willfully fail to file an income tax return with the Internal Revenue Service, or with any other proper officer. In addition, Defendant EDDY PATTERSON, caused zero or minimal federal income tax to be withheld from his W-2 wages during calendar year 2000.   Defendant EDDY PATTERSON'S failure to file a 2000 income tax return and failure to have federal income tax withheld from his W-2 wages during 2000 resulted in Defendant EDDY PATTERSON willfully evading or defeating his tax liability of approximately $28,158.00, all in violation of Title 26, United States Code, Section 7201.

-21-

## COUNT THIRTEEN

[18 U.S.C. §1014]

49.    The allegations of the Introduction of this indictment are incorporated in this Count by reference.

50.    From on or about August 16, 1999 through on or about September 8, 1999, in the Northern District of Oklahoma, Defendant EDDY PATTERSON, knowingly made a material false statement for the purpose of influencing the action of what was then known as Citizen's Bank of Tulsa, now known as Gold Bank, a financial institution within the meaning of Title 18, United States Code, Section 20, in connection with an application for a three million and fifty-nine dollar and 46 cents ($3,000,059.46) loan from Citizen's Bank of Tulsa.    The material false statement was that Defendant EDDY PATTERSON purposefully failed to reveal on his personal financial statement given to Citizen's Bank of Tulsa, that he owed federal income tax when in truth and in fact, as the defendant well knew, he owed and had not paid any federal income taxes for the tax years 1996 and 1997 and according to income tax forms prepared by Defendant EDDY PATTERSON's accountant, Defendant EDDY PATTERSON owed $42,518.00 in federal taxes for these years, all in violation of Title 18, United States Code, Section 1014.

-22-

## COUNT FOURTEEN

[18 U.S.C. §1014]

51.    The allegations of the Introduction of this Indictment are incorporated in this Count by reference.

52.    On or about April 24, 2000 in the Northern District of Oklahoma, Defendant, EDDY PATTERSON, knowingly made a material false statement for the purpose of influencing the action of Security Bank, a financial institution within the meaning of Title 18, United States Code, Section 20, in connection with an application for a three hundred thousand and fifty-nine dollar and 46 cents ($300,059.46) revolving line of credit from Security Bank. The material false statement was that Defendant EDDY PATTERSON fraudulently failed to reveal on his personal financial statement given to Security Bank, that he owed federal income tax, when in truth and in fact, as Defendant EDDY PATTERSON well knew, he owed and had not paid any federal income taxes for the years of 1996, 1997 or 1998 and according to income tax forms prepared by Defendant EDDY PATTERSON's accountant, Defendant EDDY PATTERSON owed $116,553.00 in federal taxes for these years, all in violation of Title 18, United States Code, Section 1014.

-23-

## COUNT FIFTEEN

[18 U.S.C. §1014]

53.     The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

54.     From on or about April 24, 2000 and continuing to on or about November 10,

2000 in the Northern District of Oklahoma, Defendant, EDDY PATTERSON, knowingly

made a material false statement for the purpose of influencing the action of Security Bank,

a financial institution within the meaning of Title 18, United States Code, Section 20, in

connection with an application for a nine hundred sixty thousand dollar ($960,000.00) loan

from Security Bank. The material false statement was that Defendant EDDY PATTERSON

fraudulently failed to reveal on his personal financial statement given to Security Bank, he

owed federal income tax when in truth and in fact, as Defendant EDDY PATTERSON well

knew, he owed and had not paid any federal income taxes for the years of 1996, 1997,1998

and 1999 and according to income tax forms prepared by Defendant EDDY PATTERSON's

accountant, Defendant EDDY PATTERSON owed $169,374.00 in federal taxes for these

years, all in violation of Title 18, United States Code, Section 1014.

-24-

## COUNT SIXTEEN

[18 U.S.C. §1014]

55.    The allegations of the Introduction of this Indictment are incorporated in this Count by reference.

56.    Between on or about April 10, 2001 and June 4, 2001 in the Northern District of Oklahoma, Defendant EDDY PATTERSON, knowingly made a material false statement for the purpose of influencing the action of Bank of Oklahoma, a financial institution within the meaning of Title 18, United States Code, Section 20, in connection with an application for a four hundred thousand dollar ($400,000.00) loan from Bank of Oklahoma. The material false statement was that Defendant EDDY PATTERSON falsely stated he owed $21, 600.00 in taxes on his personal financial statement given to Bank of Oklahoma, when in truth and in fact, as Defendant EDDY PATTERSON well knew, he owed and had not paid any federal income taxes for the years of 1996, 1997, 1998 and 1999 and according to income tax forms prepared by Defendant EDDY PATTERSON's accountant, Defendant EDDY PATTERSON owed $165,562.00 in federal taxes for these years all in violation of Title 18 United States Code Section 1014.

## COUNT SEVENTEEN

[18 U.S.C. §1014]

57.     The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

58.     On or about April 10, 2001 and June 19, 2001 in the Northern District of

Oklahoma, Defendant EDDY PATTERSON, knowingly made a material false statement for

the purpose of influencing the action of Bank of Oklahoma, a financial institution within the

meaning of Title 18, United States Code, Section 20, in connection with an application for

a six hundred thousand dollar ($600,000.00) loan from Bank of Oklahoma.  The material

false statement was that Defendant EDDY PATTERSON  stated he owed $21,600.00 in

taxes on his personal financial statement given to Bank of Oklahoma, when in truth and in

fact, as Defendant EDDY PATTERSON well knew, he owed and had not paid any federal

income taxes for the years of 1996, 1997, 1998 and 1999 and according to income tax forms

prepared by Defendant EDDY PATTERSON's accountant, Defendant EDDY PATTERSON

owed $165,562.00 in federal taxes for those years all in violation of Title 18 United States

Code Section 1014.

-26-

## COUNT EIGHTEEN

[18 U.S.C. §1014]

59.    The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

60.    Between on or about April 10, 2001 and on or about July 16, 2001  in the

Northern District of Oklahoma, Defendant EDDY PATTERSON, knowingly made a material

false statement for the purpose of influencing the action of Bank of Oklahoma, a financial

institution within the meaning of Title 18, United States Code, Section 20, in connection with

an application for a one hundred and fifty thousand dollar loan ($150,000.00) from Bank of

Oklahoma.  The material false statement was that Defendant EDDY PATTERSON falsely

stated, he owed $21,600.00 in taxes, on his personal financial statement given to Bank of

Oklahoma, when in truth and in fact, as Defendant EDDY PATTERSON well knew, he

owed and had not paid any federal income taxes for the years of 1996, 1997, 1998 and 1999

and according to income tax forms prepared by Defendant EDDY PATTERSON's

accountant, Defendant EDDY PATTERSON owed $165,562.00 in federal taxes for these

years in violation of Title 18 United States Code Section 1014.

-27-

## COUNT NINETEEN

[18 U.S.C. § 982, 18 U.S.C. § 1014]

61.     The allegations of the Introduction of this Indictment are incorporated in this

Count by reference.

62.     As a result of committing one or more of the foregoing loan and credit

application fraud offenses alleged in Counts Thirteen through Eighteen of this Indictment,

Defendant EDDY PATTERSON shall forfeit to the United States pursuant to 18 U.S.C. §

982, any property constituting, or derived from, proceeds obtained directly or indirectly, as

a result of the loan and credit application fraud offenses:

**MONEY JUDGMENT:**

A sum of money equal to five million, two hundred and eighty
thousand, two hundred and sixty-five dollars and no cents
($5,280,265.00) in United States Currency representing
proceeds obtained as a result of the loan and credit application
fraud offenses, for which the Defendant EDDY PATTERSON
is liable.

If the above-described forfeitable property, as a result of any act or omission of the

Defendant:

A.     cannot be located upon the exercise of due diligence;

B.     has been transferred or sold to, or deposited with, a third person;

C.     has been placed beyond the jurisdiction of the Court;

D.     has been substantially diminished in value; or

E.     has been commingled with other property which cannot be subdivided
without difficulty,

-28-

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as adopted by 18 U.S.C.

§ 982(b) to seek forfeiture, as a substitute asset of any other property, real or personal,

including financial accounts and investments, of said Defendants up to the value of the above

forfeitable property, all in accordance with Title 18, United States Code, Section 982, and

Rule 32.2 of the Federal Rules of Criminal Procedure.

## COUNT TWENTY

[15 U.S.C. §§78j(b) and 78ff and 17 C.F.R. § 240.10b-5]

63.    The allegations of the Introduction of this Indictment are incorporated in this Count by reference.

64.    Beginning on or about January 19, 2001 and continuing to on or about August 16, 2001, in the Northern District of Oklahoma and elsewhere, Defendant EDDY PATTERSON and others, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, the mails, and the facilities of national securities exchanges, did use and employ manipulative and deceptive devices and contrivances in connection with the purchase and sale of securities issued by NESCO, in violation of Title 17, Code of Federal Regulations, Section 240.10b-5, by: (a) employing devices, schemes, and artifices to defraud; (b) making and causing NESCO to make untrue statements of material fact and omitting to state facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon the purchasers of NESCO securities.

65.    The object and purpose of Defendant EDDY PATTERSON'S scheme to defraud was to falsely inflate NESCO's financial statements for fiscal year 2000 and the first quarter 2001, thereby maintaining and increasing the value of his NESCO stock and increasing the likelihood that private investors would invest large sums of money into NESCO.

-30-

66.     In furtherance of the scheme, beginning on or about January 19, 2001, Defendant EDDY PATTERSON grossly overstated NESCO's earnings by causing the entry into NESCO's company books and records of 28 false invoices totaling $2,153,986 in the fourth quarter of 2000 and one invoice totaling $183,385 in the first quarter of 2001. At EDDY PATTERSON's direction, these false invoices were included in NESCO's financial statements and resulted in overstatements to NESCO's pretax income for those periods of 400% and 175%, respectively. NESCO included these false figures in its Form 10-KSB for the year ended December 31, 2000 and in its Form 10-QSB for the first quarter of 2001. Defendant EDDY PATTERSON signed NESCO's fiscal year 2000 Form 10-KSB.

67.     The fraudulent invoices reflected false accounts receivable that were not due to NESCO or billable to its customers. At Defendant EDDY PATTERSON's direction, the resulting fictitious revenue and net income were included in NESCO's fiscal year 2000 financial statements.

68.     The false internal financial statements prepared at Defendant EDDY PATTERSON'S direction were subsequently provided to NESCO's external auditor for use in preparing its audit of NESCO's fiscal year 2000 financial results. Further, on or about March 2, 2001, Defendant EDDY PATTERSON signed NESCO's initial management representation letter to its external auditor, stating all financial information provided to the auditor in connection with the fiscal year 2000 audit was factually accurate. Defendant EDDY PATTERSON affirmed this representation in a second letter to the external auditor

-31-

signed on or about March 26, 2001. Further, Defendant EDDY PATTERSON included, or

caused to be included, the false audited financial statements in NESCO's Form 10-KSB,

which he signed on or about March 5, 2001 and caused to be filed with the Commission on

or about April 2, 2001.

69.     In furtherance of the scheme, in April 2001, Defendant EDDY PATTERSON

ordered the creation of an additional false invoice in the amount of $183,385 for services that

had not been performed by NESCO. The invoice was dated March 31, 2001 and recorded

in NESCO's accounts receivable for the first quarter of fiscal year 2001. Although a notation

on the invoice read "construction and repair," no work had been performed and it had not

been sent to a customer.

70.     In or about July 2001 individuals within NESCO became aware of the creation

and recording of false invoices. On or about August 16, 2001, NESCO compelled Defendant

EDDY PATTERSON to resign his positions and issued a Form 8-K and a press release

disclosing the financial overstatements. On or about August 21, 2001, NESCO filed with the

SEC restatements of its Form 10-KSB for the fiscal year 2000 and Form 10-QSB for the first

quarter of 2001.

As part of the scheme to defraud, Defendant EDDY PATTERSON engaged in the following

acts:

        a.     caused NESCO to record false invoices as revenue and net income for

the fiscal year 2000 in violation of generally accepted accounting principles;

-32-

b.      caused NESCO to record false invoices and previously inflated and retained receivables for fiscal year 2000 as revenue and net income for the first quarter of 2001 in violation of generally accepted accounting principles; and

c.      made and caused to be made materially false and misleading statements to NESCO's external auditors, officers and employees, the SEC, and the investing public regarding NESCO's revenue, net income and receivables for the fiscal year 2000 and the first quarter of 2001.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff and Title 17, Code of Federal Regulations, Section 240.10b-5 and Title 18, United States Code, Section 2.

## COUNT TWENTY-ONE

[15 U.S.C. § 78ff, 17 C.F.R. § 240.13b2-2(a)
and 18 U.S.C. §2(b)]

71.     The allegations of the Introduction of this Indictment and Count Twenty are

incorporated in this Count by reference.

72.     On or about April 2, 2001, in the Northern District of Oklahoma and elsewhere,

Defendant EDDY PATTERSON, willfully and knowingly, directly and indirectly, made and

caused others to make materially false and misleading statements in a form 10-KSB filed by

NESCO with the SEC. Specifically, NESCO's Form 10-KSB for the fiscal year 2000, signed

by Defendant EDDY PATTERSON on or about March 5, 2001 and filed with the SEC on

or about April 2, 2001, contained the false and misleading statements as alleged in Count

Twenty of this Indictment.

All in violation of Title 15, United States Code, Section 78ff; Title 17, Code of the

Federal Regulations, Section 240.13b2-2(a) and Title 18, United States Code, Section 2(b).

-34-

## COUNT TWENTY-TWO

[15 U.S.C. § 78ff and 17 C.F.R. § 240.13b2-2(a)]

73.   The allegations of the Introduction and of Count Twenty of this Indictment are incorporated in this Count by reference.

74.       On or about May 15, 2001, in the Northern District of Oklahoma and elsewhere, Defendant EDDY PATTERSON, willfully and knowingly, directly and indirectly, made and caused others to make materially false and misleading statements in a form 10-QSB filed by NESCO with the SEC.  Specifically, NESCO's Form 10-QSB for the first quarter of 2001, filed with the SEC on or about May 15, 2001, contained the false and misleading statements as alleged in Count Twenty of this Indictment.

All in violation of Title 15, United States Code, Section 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-2(a) and Title 18, United States Code, Section 2.

-35-

## COUNT TWENTY-THREE

[15 U.S.C. § 78ff and 17 C.F.R. § 240.13b2-2(b)]

75.     The allegations of the Introduction and Count Twenty of this Indictment are incorporated in this Count by reference.

76.     On or about March 2, 2001, Defendant EDDY PATTERSON, in a management representation letter provided to NESCO's external auditor and signed by Defendant EDDY PATTERSON, Defendant EDDY PATTERSON falsely attested to the accuracy of the information contained in internal financial records provided to the external auditor in connection with its fiscal year 2000 audit of NESCO and falsely stated that no material information contained therein had been misstated or omitted.

All in violation of Title 15, United States Code, Section 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-2(b); and Title 18, United States Code, Section 2.

-36-

## COUNT TWENTY-FOUR

[15 U.S.C. § 78ff and 17 C.F.R. § 240.13b2-2(b)]

77.   The allegations of the Introduction and Count Twenty of this Indictment are incorporated in this Count by reference.

78.   On or about March 26, 2001, in the Northern District of Oklahoma and elsewhere, Defendant EDDY PATTERSON, willfully and knowingly, directly and indirectly, omitted to state, and caused others to omit to state, material facts necessary to make statements to an accountant not misleading in connection with the preparation or filing of a document and report required to be filed with the SEC.  Specifically, Defendant EDDY PATTERSON, in a second management representation letter provided to NESCO's external auditor on or about March 26, 2001 and signed by Defendant EDDY PATTERSON on that date, Defendant EDDY PATTERSON falsely attested to the accuracy of the information contained in the internal financial records provided to the auditor in connection with its fiscal year 2000 audit of NESCO and falsely stated that no material information contained therein had been misstated or omitted.

All in violation of Title 15, United States Code, Section 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-2(b); and Title 18, United States Code, Section 2.

-37-

## COUNT TWENTY-FIVE

[18 U.S.C. § 1001 and §2]

79.     The allegations of the Introduction and County Twenty of this Indictment are incorporated in this Count by reference.

80.     On or about April 2, 2001, in the Northern District of Oklahoma and elsewhere, Defendant EDDY PATTERSON, willfully and knowingly, directly and indirectly, made materially false and fraudulent statements and representations in a Form 10-KSB filed by NESCO with the SEC, a part of the executive branch of the government of the United States. Specifically, in the fourth quarter of 2000 Defendant EDDY PATTERSON made false, fictitious, and fraudulent statements and representations by causing the entry into NESCO's company books and records of 28 false invoices totaling $2,153,986, which were used in the preparation of the Form 10-KSB filed by NESCO with the SEC.

All in violation of Title 18, United States Code, Sections 1001 and 2.

-38-

## COUNT TWENTY-SIX

[18 U.S.C. § 1001 and § 2]

81.    The allegations of the Introduction and Count Twenty of this Indictment are incorporated in this Count by reference.

82.    On or about May 15, 2001, in the Northern District of Oklahoma and elsewhere, Defendant EDDY PATTERSON, willfully and knowingly, directly and indirectly, made materially false and fraudulent statements and representations in a Form 10-QSB filed by NESCO with the SEC, a part of the executive branch of the government of the United States. Specifically, in the first quarter of 2001 Defendant EDDY PATTERSON made the false, fictitious, and fraudulent statements and representations by causing the entry into NESCO's company books and records of 28 false invoices totaling $2,153,986 in the fourth quarter of 2000 and one invoice totaling $183,385 in the first quarter of 2001, which were used in the preparation of the Form 10-QSB filed by NESCO with the SEC.

All in violation of Title 18, United States Code, Sections 1001 and 2.

-39-

## COUNT TWENTY-SEVEN

[15 U.S.C. §§ 78m(b)(2)(A), 78(m)(b)(5), and 78ff,
and 17 C.F.R. § 240.13b2-1]

83.   The allegations of the Introduction and Count Twenty of this Indictment are incorporated in this Count by reference.

84.   Between on or about January 19, 2001, and August 16, 2001, in the Northern District of Oklahoma and elsewhere, Defendant EDDY PATTERSON, willfully and knowingly, directly and indirectly, falsified and caused other NESCO employees to falsify books, records, and accounts that were required under Section 13(b)(2)(A) of the Securities Exchange Act of 1934 to accurately and fairly reflect the transactions of NESCO. Specifically, Defendant EDDY PATTERSON caused NESCO to recognize revenue and net income resulting from falsified invoices created at his direction and concealed material information from external auditors regarding those false invoices for the purpose of falsifying NESCO's books, records, and accounts relating to the fiscal year 2000 and the first quarter of 2001.

All in violation of Title 15, United States Code, Section 78(b)(2)(A), 78m(b)(5), and 78ff; Title 17, Code of Federal Regulations, Section 240.13b2-2(a); and Title 18, United States Code, Section 2.

A TRUE BILL

DAVID E. O'MEILIA
United States Attorney

_Melode Noble Nelson_
Assistant United States Attorney

_[signature]_
Foreman

-40-

August 25, 2000

Case 4:09-cr-43    Document 36-12    Filed 04/13/2009    Page 1 of 1
ate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Pag

Mr. Lindsay Springer
5147 S. Harvard No. 116
Tulsa, OK 74135

Re: Donation

Dear Lindsay:

Please find enclosed our donation check hopefully as an encouragement to you to continue your fight against the anti constitutional issues endorsed, encouraged and policed by our government. If we had more Christians standing up for God's laws and for the rights of the American people, this would once again be a country of the people, by the people and for the people, endowed and blessed by its Creator.

Thank you for being willing to suffer persecution to do that which is right. In closing please don't forget to call Eric Lynch to discuss the issues he is working on.

Sincerely in Christ,

Eddy Patterson

EP/
enc

Not

DISTRICT COURT OF THE UNITED STATES
FOR NORTHERN DISTRICT OF OKLAHOMA

Eddy L. Patterson          )
                           )
and                        )
                           )
Judy R. Patterson          )     99CV0814H (J)
          Plaintiffs       )
                           )          CASE NO. _____
                           )
v.                         )
                           )
JAY BRYCE, REVENUE OFFICER )     F I L E D
and DISTRICT DIRECTOR,     )
INTERNAL REVENUE SERVICE   )     SEP 2 9 1999
          DEFENDANTS       )
                                 Phil Lombardi, Clerk
                                 U.S. DISTRICT COURT

PETITION TO QUASH REQUEST FOR
MEETING AND MOTION FOR WRIT OF
MANDAMUS TO BE GIVEN TO JAY
BRYCE AND THE INTERNAL REVENUE
SERVICE TO ESTABLISH CLAIM
AGAINST PLAINTIFFS

(1) Now comes Eddy L. Patterson and Judy R. Patterson, Plaintiffs,
with petition to quash request for meeting and motion for writ
of mandamus be given to the Internal Revenue Service to file
a UCC-1 to establish their claim before any meeting can be
requested. In addition, Plaintiffs request the court to
include in the mandamus and order for the Defendants to
furnish Plaintiffs with a written statement, signed under
penalty of perjury, giving the Plaintiffs the section from the
Internal Revenue Code (Title 26) that makes the Plaintiffs
liable for the 1040 tax and the implementing regulation from
26 CFR that gives this section the force of law.

(2) This court has jurisdiction to hear and determine this cause
of action pursuant to 26 USC Section 7402(a). In addition, 28
USC Section 1340 gives original jurisdiction of civil actions
arising under internal revenue acts and 28 USC Sections 1361
and 1391(e) gives district courts original jurisdictions of
actions in nature of mandamus to compel officer or employee of
the United States to perform duty owed to Plaintiff. Davis v.
Federal Deposit Insurance Corporation D.C. Colo. 1974, 369
F.S. pp. 277.

(3) JAY BRYCE, REVENUE OFFICER, sent letter dated July 15, 1999 to
Plaintiffs scheduling a meeting for August 9, 1999 at 9:00 am
(EXHIBIT A).

(4) Meeting was rescheduled to September 9, 1999 due to
conflicting schedules.

(5) Plaintiffs sent certified letter on September 6, 1999 (EXHIBIT
B) to JAY BRYCE informing him that the Internal Revenue
Service did not have a claim against Plaintiffs because the
Internal Revenue Service had not filed a UCC-1 with County
Clerk, Tulsa, Oklahoma to establish their claim (EXHIBIT C).

(6) Plaintiffs also challenged jurisdiction of Internal Revenue
Service over them by stating there was no section in the

1

Internal Revenue Code that made them liable for the individual income tax (1040 Tax).

(7) JAY BRYCE, REVENUE OFFICER sent letter dated September 13, 1999 (EXHIBIT D), in reply to Plaintiffs letter of September 6, 1999, but did not answer any of the Plaintiff's questions raised in that letter. In fact, Defendant omitted a material fact in his letter when he said the United States Code (USC) is the law of the land. It is only the law of the land if implementing regulations give the sections of the USC the force of the law, in most cases. See CALIFORNIA BANKERS ASSOCIATION v. SHULTZ, 416 U.S. 21(1974) and UNITED STATES v. MERSKY ET AL, 361 U.S. 431 (1960).

(8) It is a principal of law that one must have a claim to pursue collection of an obligation and under the rules and regulations of the Uniform Commercial Code (UCC), one must file a UCC-1 to establish that claim.

(9) Because the Internal Revenue Service has not established a claim against Plaintiffs by filing a UCC-1 with County Clerk, Tulsa, Oklahoma, Plaintiffs pray that this court will quash request for meeting until Defendant files a UCC-1 and in conjunction with this order, issue writ of mandamus to JAY BRYCE, REVENUE OFFICER, and to the Internal Revenue Service to file a UCC-1 to establish claim and furnish Plaintiffs with a written statement, signed under penalty of perjury, giving Plaintiffs the section from 26 USC and the implementing regulation from 26 CFR that makes Plaintiffs liable for 1040 tax.

Respectfully Submitted,

Eddy J. Patterson
11245 S. 67th E. Court
Bixby, Oklahoma 74008
(918) 299-7064

Judy E. Patterson
11245 S. 67th E. Court
Bixby, Oklahoma 74008
(918) 299-7064

2

*Accepted For Value*

Internal Revenue Service
District Director

Department of the Treasury
INTERNAL REVENUE SERVICE
1645 S 101ST EAST AVENUE, 5226
TULSA, OK 74128
Taxpayer Identification Number:
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

Date: 08/03/1999

Place of Appointment:
Address shown above.
Date: 09/07/1999
Time: 09:00 AM
Contact Telephone Number:
(918) [581-7060] [251]
Person to Contact:
JAY BRYCE

EDDY L & JUDY R PATTERSON
12331 E 60TH ST
TULSA, OK 74146-6902

      We have scheduled a meeting with you for the reason(s) stated below.

      We have no record of receiving the following tax returns and want
to discuss this matter with you:

      Form Number:                          Tax Period Ended:

            1040                              12/31/1996
            1040                              12/31/1997
            1040                              12/31/1998

      You should bring signed returns and visit our office on the date and
at the time your meeting is scheduled.  If you cannot come to this meeting,
you should call our office immediately and reschedule your appointment.

      If you do not do either one, a summons may be issued requiring you
to produce certain books, papers, records, or other relevant material.
Under section 7210 of the Internal Revenue Code, anyone who is summoned to
testify or appear and to produce books, accounts, or other relevant material,
but who does not do so and is convicted, will be fined up to $1,000,
imprisoned for up to a year, or both, and will be charged prosecution costs.

      We would appreciate your cooperation.

                                    Sincerely yours,


                                    Richard R. Auby
                                    District Director

Internal Revenue Service
District Director

Date: 08/03/1999


EDDY L & JUDY R PATTERSON
12331 E 60TH ST
TULSA, OK 74146-6902

Department of the Treasury
INTERNAL REVENUE SERVICE
1645 S 101ST EAST AVENUE, 5226
TULSA, OK 74128
Taxpayer Identification Number:
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

Place of Appointment:
Address shown above.
Date: 09/07/1999
Time: 09:00 AM
Contact Telephone Number:
(918) [581-7060] [251]
Person to Contact:
JAY BRYCE

We have scheduled a meeting with you for the reason(s) stated below.

We have no record of receiving the following tax returns and want to discuss this matter with you:

| Form Number: | Tax Period Ended: |
|---|---|
| 1040 | 12/31/1996 |
| 1040 | 12/31/1997 |
| 1040 | 12/31/1998 |

You should bring signed returns and visit our office on the date and at the time your meeting is scheduled. If you cannot come to this meeting, you should call our office immediately and reschedule your appointment.

If you do not do either one, a summons may be issued requiring you to produce certain books, papers, records, or other relevant material. Under section 7210 of the Internal Revenue Code, anyone who is summoned to testify or appear and to produce books, accounts, or other relevant material, but who does not do so and is convicted, will be fined up to $1,000, imprisoned for up to a year, or both, and will be charged prosecution costs.

We would appreciate your cooperation.

Sincerely yours,


Richard R. Auby
District Director

Exhibit G

# N O T I C E

September 6, 1999                     CERTIFIED MAIL RETURN RECEIPT REQ

Mr. Jay Bryce
Internal Revenue Service
1645 S. 101st E. Ave
Tulsa, Ok 74128

RE:  EDDY L PATTERSON & JUDY R. PATTERSON

Dear Mr. Bryce:

We have received your letter of 7/15/99 scheduling a meeting with us. We are required and determined to abide by the law. Therefore, before we can meet with you there are several key concerns which must be addressed by your office.

We hereby give NOTICE to you, JAY BRYCE, REVENUE OFFICER that;

(1)  The INTERNAL REVENUE SERVICE operates under the Rules and Regulations of the UNIFORM COMMERCIAL CODE, (UCC).

(2)  The INTERNAL REVENUE SERVICE has not filed a UCCI with the state of Oklahoma to establish their claim against us (see certified document from officer of County Clerk, Tulsa, Oklahoma, Exhibit I).

(3)  There is no section in the INTERNAL REVENUE CODE that makes us liable for the Individual Income Tax. Section I only says TAX IMPOSED. Section 1.1-1 26 CFR, states that Section I of the code imposes an income tax on every individual whom is a citizen or resident of the United States. A Regulation only clarifies a statute, it cannot change a statute. Section I in the Code makes no mention of an individual whom is a citizen or resident of the United States. In addition, Section 1.1-1 26 CFR is not shown in the CFR Index Authority as the implementing regulation, (See Exhibit II).

(4)  Section 7605 – Time and Place of Examination. There is no implementing regulation shown for this section in the CFR Index Authorities for Title 26 (See Exhibit III). The 301.7605 Regulation in 26 CFR is an administrative and procedural Regulation and has no force of law (See 26 CFR Part 601-102).

(5)  Section 7609 (See Exhibit 3) Special Procedures for Third-Party Summons, there is no implementing regulation for this section shown in CFR Index Authorities for 26 CFR.

We need answers to these concerns and must receive complying documents before we can meet with you.

YOU HAVE TEN (10) DAYS WITH WHICH TO COMPLY FROM RECEIPT OF THIS CERTIFIED LETTER, UCC 1-204, UNLESS YOU REQUEST AN EXTENSION OF TIME.

A lack of response on your part means a fault exists, UCC 1-201(16), creating fraud through material misrepresentation which vitiates all forms, contracts, agreements, etc., expressed or implied from the beginning, UCC 1-103.

Mr. Jay Bryce
Internal Revenue Service
September 4, 1999
Page 2


ALL RIGHTS RESERVED WITHOUT PREJUDICE, UCC 1-207.


Eddy L. Patterson                     Judy R. Patterson
SS NO. 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                    SS NO. 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


cc:  District Director

PATTERSON, EDDY LYNN
PATTERSON, JUDITH RAY
11245 S. 67TH E. COURT
BIXBY, OK 74008
Debtor(s)  (Last Name First)  and address(es)

EDDY LYNN PATTERSON
Z 11245 S. 67TH E. COURT
BIXBY, OK 74008
Party requesting information or copies (Name and Address)

State of Oklahoma
Tulsa Oklahoma
FILED
JOAN HASTINGS
Tulsa County Clerk

08/18/99  10:11:54
RCPT 370234

For Filing Officer Use

Filing officer please furnish certificate showing whether there is on file as of _____ 19___ at ____ M any presently effective financing statement naming the above named debtor(s) and any statement of assignment thereof, and if there is, giving the date and hour of filing of each such statement and the name(s) and address(es) of each secured party(ies) therein. Enclosed is uniform fee of $5.00.

[X] INFORMATION REQUEST:

[ ] COPY REQUEST:

Filing officer please furnish exact copies of each page of financing statements and statements of assignment listed below, at the rate of $1.00 each, which are on file with your office. Enclosed is $ _____ fee for copies requested. In case any of said statements contain more than one page the undersigned agrees to pay the sum of $1.00 for each additional page.

Date _____

(Signature of Requesting Party)

| File No. | Date and Hour of Filing | Name(s) and Address(es) of Secured Party(ies) |
|---|---|---|
| 9903672 | 08/18/99 | EDDY LYNN PATTERSON, Z11245 S 67TH E ACT, BIXBY, OK 74 |
| 9903673 | 08/18/99 | JUDITH RAY PATTERSON, Z11245 S 67TH E CT, BIXBY, OK 740 |

CERTIFICATE: The undersigned filing officer hereby certifies that

[ ] the above listing is a record of all presently effective financing statements and statements of assignment which name the above debtor(s) and which are on file in my office as of _____ 19 ____ at ____ M.

[ ] the attached _____ pages are true and exact copies of all available financing statements or statements of assignment listed in above request.

Additional fee requested $ _____

AUGUST 18, 1999
Date

_Lou Freeman_
Signature of Filing Officer

TO BE RETURNED WITH COPIES OR INFORMATION    FORM UCC-i – Copyright© 1988 by BURKHART'S Legal Forms – 2648 E. 11th Street, Tuls

EXHIBIT I

EXHIBIT II

## CFR Index

**26 U.S.C.—Continued**

| | CFR |
|---|---|
| 150n | 26 Part 11 |
| 151 | 25 Part 31 |
| 152—157 | 26 Part 31 |
| 170—172 | 34 Part 410 |
| 454—458 | 25 Part 31 |
| 456 | 25 Part 31 |
| 458c | 25 Part 274 |
| 4584 | 25 Part 274 |
| 469—465 | 25 Part 193 |
| 471 | 25 Part 193 |
| 472 | 25 Part 179 |

**26 U.S.C.—Continued**

| | CFR |
|---|---|
| 2005 | 25 Part 33 |
| 2006 | 25 Part 39 |
| 2010 | 26 Part 39 |
| 2011 | 25 Part 38 |
| 2013 | 25 Part 39 |
| 2101 et seq | 25 Part 279 |

**26 U.S.C. (1986 I.R.C.)—Continued**

| | CFR |
|---|---|
| 63 | 26 Part 1, 31 |
| 67 | 26 Part 1 |
| 72 | 26 Part 1, 35 |
| 83 | 26 Part 1 |

**26 U.S.C. (1986 I.R.C.)—Continued**

| | CFR |
|---|---|
| 414—415 | 26 Part 1, 31 |

CFR Index

766

767

Authorities

Exhibit 44

EXHIBIT C

PATTERSON, EDDY LYNN
PATTERSON, JUDITH RAY
11245 S. 67TH E. COURT
BIXBY, OK 74008

Debtor(s) (Last Name First) and address(es)

EDDY LYNN PATTERSON
Z 11245 S. 67TH E. COURT
BIXBY, OK 74008

Party requesting information or copies (Name and Address)

State of Oklahoma
Tulsa Oklahoma
FILED
JOAN HASTINGS
Tulsa County Clerk

08/18/99   0111154
RCPT   373204

For Filing Officer Use

Filing officer please furnish certificate showing whether there is on file as of _____ 19____ at _____ M. any presently effective financing statement naming the above named debtor(s) and any statement of assignment thereof, and if there is, giving the date and hour of filing of each such statement and the name(s) and address(es) of each secured party(ies) therein. Enclosed is uniform fee of $5.00

[X] INFORMATION REQUEST:

[ ] COPY REQUEST:

Filing officer please furnish exact copies of each page of financing statements and statements of assignment listed below, at the rate of $1.00 each which are on file with your office. Enclosed is $ _____ fee for copies requested. In case any of said statements contain more than one page the undersigned agrees to pay the sum of $1.00 for each additional page.

Date _____

(Signature of Requesting Party)

| File No. | Date and Hour of Filing | Name(s) and Address(es) of Secured Party(ies) |
|---|---|---|
| 9903672 | 08/18/99 | EDDY LYNN PATTERSON, Z11245 S 67TH E ACT, BIXBY, OK 740 |
| 9903673 | 08/18/99 | JUDITH RAY PATTERSON, Z11245 S 67TH E CT, BIXBY, OK 7400 |
| | | |

CERTIFICATE: The undersigned filing officer hereby certifies that

[ ] the above listing is a record of all presently effective financing statements and statements of assignment which name the above debtor(s) and which are on file in my office as of _____ 19____ at _____ M.

[ ] the attached _____ pages are true and exact copies of all available financing statements or statements of assignment listed in above request.

Additional fee requested _____

AUGUST 18, 1999
Date

Lou Freeman
Signature of Filing Officer

TO BE RETURNED WITH COPIES OR INFORMATION   FORM UCC-4 – Copyright© 1988 by BURKHART'S Legal Forms – 2648 E. 11th Street, Tulsa

*Accepted For Value*



# The Department of Treasury
# Internal Revenue Service

Date: 9-13-99

Eddy L. & Judy R. Patterson
1245 South 67th E. Ct.
Bixby, Oklahoma  74008

Revenue Officer, Jay Bryce
Employee # 73-2702
1645 S. 101st E. Ave. #226
Tulsa, Oklahoma  74128
918-581-7060 x251

In reponse to your letter, dated September 6, 1999, enclosed is further information that will address you concerns. After reviewing the enclosed information, call to reschedule your appointment.

Revenue Officer, Jay Bryce

## PROVISION TO LEVY AND COLLECT TAX

The 16th Amendment to the United States Constitution provides that the
Congress shall have the power to levy and collect taxes on income, from
whatever source derived, without apportionment among the several states, and
without regard to any census or orientation.

Some people have contended that:
   a) The tax laws are unconstitutional because the 16th Amendment was
      not properly ratified, or;
   b) The State of Ohio was not properly a State at the time of
      ratification of the 16th Amendment; therefore, the amendment is
      not valid and income tax is unconstitutional.

The 16th Amendment was ratified by 40 States, including Ohio, and a
proclamation was issued in 1913.  Shortly thereafter, two other States
also ratified it.  Under Article V of the U.S. Constitution, in order
for an amendment to be valid, three-fourths of the States must ratify
it.  There were enough States ratifying this amendment, even without
Ohio's ratification, to validate the amendment.

Sample supportive case law:  Porth v. Broderick, 214 F.2d 925 (10th
Circuit, 1954);  United States v. Porth, 426 F.2d 519 (10th Circuit,
1970), certiorari denied, 400 U.S. 824;  United States v. Whitesel,
543 F.2d 1176 (6th Circuit, 1976), certiorari denied, 431 U.S. 967.

## UNITED STATES LAW

The United States Code (USC) is the law of the land, which is written by
Congress.  Title 26 of the USC is the Internal Revenue Code (IRC), and
sections of that law are usually cited as "26 USC xxxx" or "IRC xxxx" (where
"xxxx" is the specific section).

Here are some code sections of interest, each with its title and a brief
description of its provision:

IRC 7801 -- AUTHORITY OF THE DEPARTMENT OF THE TREASURY
     Provides the administration and enforcement of the IRC be performed by,
     or under the supervision of, the Secretary of the Treasury.

IRC 7802 -- COMMISSIONER OF INTERNAL REVENUE...
     Provides for such a Commissioner, whose duties and powers are prescribed
     by the Secretary of the Treasury.

                          -- more --

Page 2

IRC    1 -- TAX IMPOSED
     Imposes an income tax on individuals, based on taxable income.

IRC   61 -- GROSS INCOME DEFINED
     Defines "gross income" as "all income from whatever source derived."

IRC   63 -- TAXABLE INCOME DEFINED
     Defines "taxable income" as "gross income minus the deductions allowed by
     this chapter."

IRC 6011 -- GENERAL REQUIREMENT OF RETURN, STATEMENT, OR LIST
     Requires any person liable for any tax imposed by the IRC to file a
     return "according to the forms and regulations prescribed by the
     Secretary."

IRC 6012 -- PERSONS REQUIRED TO MAKE RETURNS OF INCOME
     Requires, among others, "every individual having for the taxable year
     gross income which equals or exceeds the exemption amount..." to file a
     return.  (Note: The "exemption amount" is what we generally refer to as
     our "personal exemption" -- which, for 1992, in most cases, is $2,300.)

IRC 6072 -- TIME FOR FILING INCOME TAX RETURNS
     Prescribes April 15 as the filing deadline for returns based on the
     calendar year, January 1 through December 31.

IRC 6091 -- PLACE FOR FILING RETURNS OR OTHER DOCUMENTS
     Prescribes any return be filed in the IRS district where the taxpayer
     lives, or at the IRS service center serving the IRS district.  (Note: The
     IRS Oklahoma City District encompasses the entire State of Oklahoma; and,
     most Oklahomans file their returns by mailing them to the IRS Service
     Center in Austin, Texas.)

IRC 6151 -- TIME AND PLACE FOR PAYING TAX SHOWN ON RETURNS
     Requires payment of tax to be made "at the time and place fixed for
     filing the return."

PENALTIES

There are penalties provided for under the IRC for noncompliance with the
various parts of the law.  For example:

IRC 6651(a)(1) for failure to file a return or pay tax

                         -- more --

Page 3

IRC 6702 for filing a frivolous income tax return  (Note: a frivolous income
    tax return is one in which the "substantial correctness" of the
    self-assessment cannot be determined, or the return indicates the
    self-assessment is substantially incorrect, and such conduct is due to a
    frivolous position on the laws, or a desire (which appears on the
    purported return) to delay or impede the administration of Federal income
    tax laws.)

IRC 7201 for tax evasion (criminal)

IRC 7203 for willful failure to file or pay tax (criminal)

IRC 7206 for fraud (criminal)


A FINAL NOTE

In the case of McKee v. Commissioner of Internal Revenue, 85 TC 9248 (1984),
the Federal judge stated the following in his concluding remarks after
sustaining the Government's imposition of the "frivolous return penalty":

    "The federal taxation system depends on correct self-assessments by all
    taxpayers.  Tax returns are not vehicles for expressing personal,
    religious, or other beliefs.  The Internal Revenue Service is not the
    appropriate forum for expressing concern over government spending
    policies.  Congress has found that unauthorized and unfounded tax
    protestations on returns significantly impugn the efficiency and
    integrity of the tax system and, for deterrent purposes, should be levied
    with substantial penalties."

                    #    #    #    #    #

# ATTACHMENTS TO THIS DOCUMENT ARE NOT SCANNED

# SEE ORIGINAL CASE FILE

# HARVARD

# LAW REVIEW.

VOL. XII.          JANUARY 25, 1899.          NO. 6

## THE STATUS OF OUR NEW TERRITORIES.[1]

WHAT extent of territory do the United States of America comprise? In order to answer this question intelligently, it is necessary to ascertain the meaning of the term "United States."

First. — It is the collective name of the States which are united together by and under the Constitution of the United States; and, prior to the adoption of that Constitution, and subsequently to the Declaration of Independence, it was the collective name of the thirteen States which made that Declaration, and which, from the time of the adoption of the Articles of Confederation to that of the adoption of the Constitution, were united together by and under the former. This, moreover, is the original, natural, and literal meaning of the term. Between the time of the first meeting of the Continental Congress, and that of the Declaration of Independence, the term "United Colonies" came into general use,[2] and, upon in-

---

[1] The following article was already planned, and in part written, when the writer first learned of Mr. Randolph's intention to furnish an article on the same general subject for the January number of this Review. While, therefore, the writer desires to acknowledge the material assistance which he has derived from Mr. Randolph's article, he entirely disclaims any intention to answer it, or to criticise it.

[2] It first occurs in the Journal of the Continental Congress, under date of June 7, 1775, vol. I. (ed. of 1777), p. 114 ["Resolved, that Thursday, the 20th of July next, be observed throughout the twelve United Colonies, as a day of humiliation, fasting, and prayer"]; and, from that time to the date of the Declaration of Independence, its use is very frequent. It occurs three times in the commission issued to Washington as commander-in-chief (p. 122), six times in the articles of war (pp. 133, 137, 138, 139, 140), and twice in the Declaration of the United Colonies of North America, under date of July 6, 1775, setting forth the causes and necessity of their taking up arms

dependence being declared, as the thirteen colonies became the thirteen States, the term was of course changed to "United States." In the Declaration of Independence both terms are used.[1] When the Articles of Confederation were framed, "United States of America" was declared to be the name and style of the confederation created by those articles.[2] This, however, had no other effect than to confirm the existing practice, and to increase the use of the term in the sense which it had already acquired; and accordingly, during the whole period of the Confederation, "United States" meant the same as "the thirteen United States," and the primary reason for using either term was to save the necessity of enumerating the thirteen States by name.

Indeed, the Articles of Confederation were merely an agreement between the thirteen States in their corporate capacity, or, more correctly, an agreement by each of the thirteen States with all the others. There were, therefore, thirteen parties to the confederation, and no more, and the people of the different States as individuals had directly no relations with it. Accordingly, it was the States in their corporate capacity that voted in the Continental Congress, and not the individual members of the Congress; and hence the voting power of a State did not at all depend upon the number of its delegates in Congress, and in fact each State was left to determine for itself, within certain limits, how many delegates it would send.[3] Hence also each State had the same voting power.[4] Even the style of the Continental Congress was "The United States in

---

(pp. 143, 145). Sometimes the number of United Colonies was specified, and sometimes it was not. The colony of Georgia did not unite with the other twelve, and so was not represented by delegates in Congress, until the thirteenth of September, 1775 (p. 197). Prior to that date, therefore, the term used was either the United Colonies, or the twelve United Colonies, while after that date it was either the United Colonies, or the thirteen United Colonies.

While this term was making its way to the front, it had a competitor (which was even earlier in the field), in the term "Continent" or "Continental," which was also much used during the war of the Revolution. Perhaps an attentive study of the Journal of Congress would show that "Continent" or "Continental" was not precisely synonymous with United Colonies or United States, but it certainly was very nearly so.

[1] "United Colonies" is used once, namely, in the concluding paragraph, and "United States" is used twice, namely, in the title and in the concluding paragraph.

[2] Art. I.

[3] By the fifth article of Confederation, no State was to be represented by less than two delegates, nor by more than seven.

[4] Namely, each State had one vote.   (Fifth Article of Confederation.)

Congress assembled," — not (as the present style would suggest) "The Delegates of the United States in Congress assembled"; and if the style had been "The Thirteen United States in Congress assembled," the meaning would have been precisely the same.

Evidence to the same effect, as to the sense in which the term "United States" was used prior to the time of the adoption of the Constitution, is furnished by the treaties made during the period of the Confederation. Thus, the Treaty of Alliance made with France, February 6, 1778, begins:[1] "The Most Christian King and the United States of North America, namely, New Hampshire," etc. (enumerating the thirteen States). So the Treaty of Amity and Commerce, made with France the same day, begins:[2] "The Most Christian King and the thirteen United States of North America, New Hampshire," etc. So the Treaty of Amity and Commerce made with Holland, October 8, 1782, begins:[3] "Their High Mightinesses, the States-General of the United Netherlands, and the United States of America, namely, New Hampshire," etc. So the Treaty of Amity and Commerce made with Sweden, April 3, 1783, begins:[4] "The King of Sweden and the thirteen United States of North America, namely, New Hampshire," etc. Lastly, the Definitive Treaty of Peace with England, September 3, 1783, by which our independence was established, after a recital, proceeds thus:[5] "Art. 1. His Britannic Majesty acknowledges the said United States, namely, New Hampshire, &c., to be free, sovereign, and independent States; that he treats with them as such; and relinquishes all claims to the government, propriety, and territorial rights."

With the adoption of the Constitution there came a great change; for the Constitution was not an agreement, but a law, — a law, too, superior to all other laws, coming as it did from the ultimate source of all laws, namely, the people, and being expressly declared by them to be the supreme law of the land.[6] At the same time, however, it neither destroyed nor consolidated the States, nor even affected their integrity; and, though it was established by the people of the United States; yet it was not established by them as one people, nor was its establishment a single act; but, on the contrary, its establishment in each State was the act of

---

[1] 8 U. S. Stats. 6.  [2] Page 12.
[3] Page 32.  [4] Page 60.
[5] Page 80.  [6] Art. 6, sect. 2.

the people of that State; and if the people of any State had finally refused to ratify and adopt it, the consequence would have been that that State would have ceased to be one of the United States. Indeed, the Constitution and the Articles of Confederation differ from each other, in respect to the source of their authority, in one particular only, namely, that, while the former proceeded from the people of each State, the latter proceeded from the Legislature of each State. In respect to their effect and operation also, the two instruments differ from each other in one particular only, namely, that, while the Articles of Confederation merely imposed an obligation upon each State, in its corporate and sovereign capacity, in favor of the twelve other States, the Constitution binds as a law, not each *State*, but all persons and property in each State. These differences, moreover, fundamental and important as they undoubtedly are, do not, nor does either of them, at all affect either the meaning or the use of the term "United States"; and, therefore, the conclusion is that the meaning which that term had the day after Independence was declared, it still retains, and that this is its natural and literal meaning.

Regarded, then, as simply the collective name of all the States, do the United States comprise territory? Directly, they certainly do not; indirectly, they do comprise the territory of the forty-five States, and no more. That they comprise this territory only indirectly, appears from the fact that such territory will always be identical with the territory of all the States in the aggregate, — will increase as that increases, and diminish as that diminishes.

Secondly. — Since the adoption of the Constitution, the term "United States" has been the name of a sovereign, and that sovereign occupies a position analogous to that of the personal sovereigns of most European countries. Indeed, the analogy between them is closer, at least in one respect, than at first sight appears; for a natural person who is also a sovereign has two personalities, one natural, the other artificial and legal, and it is the latter that is sovereign. It is as true, therefore, of England (for example) as it is of this country, that her sovereign is an artificial and legal person (*i. e.*, a body politic and corporate), and, therefore, never dies. The difference between the two sovereigns is, that, while the former consists of a single person, the latter consists of many persons, each of whom is a member of the body politic. In short, while the former is a corporation sole, the latter is a corporation aggregate.

Who, then, are those persons of whom the United States as a body politic consists, and who constitute its members? Clearly they must be either the States in their corporate capacity, *i. e.,* artificial and legal persons, or the citizens of all the States in the aggregate; and it is not difficult to see that they are the former. Indeed, the latter do not form a political unit for any purpose. The citizens of each State form the body politic of that State, and the States form the body politic of the United States. The latter, therefore, consisted at first of the original thirteen States, just as the Confederation did; but, as often as a new State was admitted, a new member was received into the body politic, — which, therefore, now consists of forty-five members. It will be seen, therefore, that, while the United States, in its second sense, signifies the body politic created by the Constitution, in its first sense it signifies the members of that body politic in the aggregate. A consequence is that, while in its first sense the term "United States" is always plural, in its second sense it is in strictness always singular.

The State of New York furnishes a good illustration of the two senses in which the term "United States" is used under the Constitution; for the style of that State, as a body politic, is "The People of the State of New York," and the members of that body politic are the citizens of the State. The term "people," therefore, in that State, means, first, all the citizens of the State in the aggregate (*i. e.,* the members of the body politic), and, secondly, the body politic itself; and while in the former sense it is plural, in the latter sense it is singular.

The term "United States" is used in its second sense whenever it is used for the purpose of expressing legal or political relations between the United States and the particular States, or between the former and foreign sovereigns or states, or legal relations between the former and private persons, while it is used in its first and original sense whenever it is desired to designate the particular States collectively, either as such or as members of the body politic of the United States. It is also used in that sense whenever it is used to designate the territory of all the States in the aggregate.

As a substitute for the term "United States," when used in its second sense, the term "Union" is often employed. The original difference between "United States" and "Union" was that, while the former was concrete, the latter was abstract; and hence it is

that the latter cannot be substituted for the former when used in its original sense.[1]

When used in its second sense, it is plain that the term "United States" has no reference to extent of territory, either directly or indirectly. Regarded as a body politic, the United States may and does own territory, and may be and is a sovereign over territory, but to speak of its constituting or comprising territory would be no less absurd than to predicate the same thing of a personal sovereign, though the absurdity would be less obvious.

Thirdly. — Since the treaty with England of September 3, 1783, the term "United States" has often been used to designate all territory over which the sovereignty of the United States extended. The occasion for so using the term could not of course arise until the United States acquired the sovereignty over territory outside the limits of any State, and they first acquired such territory by the treaty just referred to. For, although, as has been said, that treaty was made with each of the thirteen States, yet, in fixing the boundaries, the thirteen States were treated as constituting one country, England not being interested in the question how that country should be divided among the several States. Moreover, the boundaries established by the treaty embraced a considerable amount of territory in the Northwest to which no State had any separate claim, and which, therefore, belonged to the United States; and the territory thus acquired was enlarged from time to time by cessions from different States, until at length it embraced the entire region within the limits of the treaty, and west of Pennsylvania, Virginia, North Carolina, and Georgia, as the western boundaries of those States were afterwards established, with the exception of the territory now constituting the State of Kentucky. Then followed in succession the acquisitions from France, Spain, Texas, and Mexico. Out of all the territory thus acquired, twenty-eight great States have been from time to time carved; and yet there has never been a time, since the date of the treaty before referred to, when the United States had not a considerable amount of territory outside the limits of any State.

---

[1] The term "Union" is used three times in the Constitution, namely, in Art. 1, sect. 8, subsect. 15 [Congress shall have power "to provide for calling forth the militia to execute the laws of the Union, suppress insurrections, and repel invasions"]; in Art. 2, sect. 3 [the President "shall from time to time give to the Congress information of the state of the Union," &c.]; and in Art. 4, sect. 3, subsect. 1 ["new States may be admitted by the Congress into this Union"].

It is plain, therefore, that for one hundred and fifteen years there has been more or less need of some word or term by which to designate as well the Territories of the United States as the States themselves; and such word or term ought, moreover, to have been one signifying directly not territory, but sovereignty, sovereignty being the only thing that can be predicated alike of States and Territories. The same need was long since felt by England as well as by other European countries, and the word "empire" was adopted to satisfy it; and perhaps we should have adopted the same word, if we had felt the need of a new word or term more strongly. Two peculiarities have, however, hitherto characterized the territory held by the United States outside the limits of any State: first, such territory has been virtually a wilderness; secondly, it has been looked upon merely as material out of which new States were to be carved just as soon as there was sufficient population to warrant the taking of such a step; and hence the need of a single term which would embrace territories as well as States has not been greatly felt. At all events, no such new term has been adopted; and hence "United States" is the only term we have had to designate collectively either the States alone, or the States and Territories; and accordingly, while it has always been used for the former of these two purposes, it has also frequently been used for the latter.

It is very important, however, to understand that the use of the term "United States" to designate all territory over which the United States is sovereign, is, like the similar use of the word "empire" in England and other European countries, purely conventional; and that it has, therefore, no legal or constitutional significance. Indeed, this use of the term has no connection whatever with the Constitution of the United States, and the occasion for it would have been precisely the same if the Articles of Confederation had remained in force to the present day, assuming that, in other respects, our history had been what it has been.

The conclusion, therefore, is that, while the term "United States" has three meanings, only the first and second of these are known to the Constitution; and that is equivalent to saying that the Constitution of the United States as such does not extend beyond the limits of the States which are united by and under it, — a proposition the truth of which will, it is believed, be placed beyond doubt by an examination of the instances in which the term "United States" is used in the Constitution.

Its use first occurs in the preamble,[1] in which it is used twice. The first time it is plainly used in its original sense, *i. e.,* as the collective name of the States which should adopt it. If the words had been "We, the people of the thirteen[2] United States respectively," the sense in which "United States" was used would have been precisely the same. Nor is there any doubt that it is used in the same sense at the end of the preamble. Of course there is a very strong presumption that when a constitution is made by a sovereign people, it is made exclusively for the country inhabited by that people, and exclusively for that people regarded as a body politic, and so having perpetual succession; and the same thing is true, *mutatis mutandis,* of a constitution made by the people of several sovereign States united together for that purpose. The preamble, however, does not leave it to presumption to determine for what regions of country and what people the Constitution of the United States was made; for it expressly declares that its purposes and objects are, first, to form a more perfect union (*i. e.,* among the thirteen States, or as many of them as shall adopt it). Then follow four other objects which, though in terms indefinite as to their territorial scope, are by clear implication limited to the same States;[3] and lastly its purpose and object are

---

[1] "We the People of the United States, in order to form a more perfect Union, establish justice, insure domestic tranquillity, provide for the common defence, promote the general welfare, and secure the blessings of Liberty to ourselves and our posterity, do ordain and establish this Constitution for the United States of America."

[2] To have stated the number of States in the preamble would, however, have been inconvenient, because it was uncertain, when the Constitution was framed, how many States would adopt it. It was provided by Art. 7 that, as soon as it was adopted by nine States, it should become binding upon the States adopting it, nine being within a fraction of three-fourths of the whole, and the assent of nine States having been required by the Articles of Confederation for the doing of all acts of prime importance. (See Art. 9, last paragraph but one, and Arts. 10 and 11.) In fact, only eleven States participated in the first election of Washington as President, and only that number was represented in Congress during the first session of the first Congress.

[3] Moreover, the usage of the times furnishes positive proof that the terms "common defence" and "general welfare" were used in the preamble with exclusive reference to the thirteen States; for the words "common" and "general" were familiarly used to distinguish what concerned the United States from what concerned the several States as such, and that too at a time when "United States" could not possibly mean anything else than the thirteen United States. Thus, the 3d Article of Confederation provides as follows: "The said States hereby severally enter into a firm league of friendship with each other, for their 'common' defence, the security of their liberties, and their mutual and 'general' welfare." So also the 5th Article contains the following: "For the more convenient management of the 'general' interest of the United States, delegates shall be annually appointed . . . to meet in Congress." So also in

declared to be to secure the blessings of liberty to the people by whom it is ordained and established, and their successors; for, though the word used is "posterity," it is clearly not used with literal accuracy, but in the sense of "successors." According to the preamble, therefore, the Constitution is limited to the thirteen States which were united under the Articles of Confederation; and it is by virtue of Art. 4, sect. 3, subsect. 1,[1] and in spite of the preamble, that new States have been admitted upon an equal footing with the original thirteen.

In the phrases, "Congress of the United States,"[2] "Senate of the United States,"[3] "President of the United States," or "Vice President of the United States,"[4] "office under the United States,"[5] "officers of the United States,"[6] "on the credit of the United States,"[7] "securities and current coins of the United States,"[8] "service of the United States,"[9] "government of the United States,"[10] "granted by the United States,"[11] "Treasury of the United States,"[12] "Constitution of the United States,"[13] "army and navy of the United States,"[14] "offences against the United States,"[15] "judicial power of the United States,"[16] "laws of the United States,"[17] "controversies to which the United States shall be a party,"[18] "treason against the United States,"[19] "territory or other property belonging to the

---

the 7th Article are the words: "When land forces are raised by any State for the 'common' defence," etc. So in the 8th Article are the words: "All charges of war, and all other expenses that shall be incurred for the 'common' defence or 'general' welfare, and allowed by the United States in Congress assembled, shall be defrayed out of a 'common' treasury." Lastly, the 9th Article contains the following: "The United States in Congress assembled shall have authority to appoint such other committees and civil officers as may be necessary for managing the 'general' affairs of the United States under their direction."

[1] See *supra*, page 370, note 1.   [2] Art. 1, sect. 1; Art. 1, sect. 2, subsect. 3.

[3] Art. 1, sect. 3, subsect. 1.

[4] Art. 1, sect. 3, subsects. 4, 5, and 6; Art. 2, sect. 1, subsects. 1 and 8; 12th Amendment; 14th Amendment, sect. 2; Art. 1, sect. 7, subsects. 2 and 3.

[5] Art. 1, sect. 3, subsect. 7; Art. 1, sect. 9, subsect. 8; Art. 2, sect. 1, subsect. 2; Art. 6, subsect. 3; 14th Amendment, sect. 3; Art. 1, sect. 6, subsect. 2.

[6] Art. 2, sect. 2, subsect. 2, sect. 3, sect. 4; Art. 6, subsect. 3; 14th Amendment, sect. 3.

[7] Art. 1, sect. 8, subsect. 2.   [8] Art. 1, sect. 8, subsect. 6.

[9] Art. 1, sect. 8, subsect. 16; Art. 2, sect. 2, subsect. 1.

[10] Art. 1, sect. 8, subsects. 17 and 18; Art. 2, sect. 1, subsect. 3; 12th Amendment.

[11] Art. 1, sect. 9, subsect. 8.

[12] Art. 1, sect. 10, subsect. 2; Art. 1, sect. 6, subsect. 1.

[13] Art. 2, sect. 1, subsect. 8; 14th Amendment, sect. 3.

[14] Art. 2, sect. 2, subsect. 1.   [15] Art. 2, sect. 2, subsect. 1.

[16] Art. 3, sect. 1; 11th Amendment.

[17] Art. 3, sect. 2, subsect. 1; Art. 6, subsect. 2.

[18] Art. 3, sect. 2, subsect. 1.   [19] Art. 3, sect. 3, subsect. 1.

*HARVARD LAW REVIEW.*

United States,"[1] "claims of the United States,"[2] "the United States shall guarantee,"[3] "shall be valid against the United States,"[4] "under the authority of the United States,"[5] "court of the United States,"[6] "delegated to the United States,"[7] "public debt of the United States,"[8] "insurrection or rebellion against the United States,"[9] "shall not be denied or abridged by the United States,"[10] "neither the United States nor any State shall assume or pay,"[11] the term "United States" is used in its second sense.[12] It seems also to be used in the same sense in the phrase, "citizen of the United States;"[13] for it is only as a unit, a body politic, and a sovereign, that the United States can have citizens, — not as the collective name of forty-five States. In the phrase, "common

[1] Art. 4, sect. 3, subsect. 2.

[2] Art. 4, sect. 3, subsect. 2.

[3] Art. 3, sect. 4.

[4] Art. 6, subsect. 1.

[5] Art. 6, subsect. 2.

[6] 7th Amendment.

[7] 10th Amendment.

[8] 14th Amendment, sect. 4.

[9] 14th Amendment, sect. 4.

[10] 15th Amendment.

[11] 14th Amendment, sect. 4.

[12] As the second sense in which the term "United States" is used in the Constitution had no existence prior to the time of the adoption of the Constitution, it follows that, whenever the Articles of Confederation use the term in such phrases as any of those enumerated above or in similar phrases, they use it (as they do in all cases) in its original sense. Instances will be found in Art. 4 ["no imposition, duties, or restriction shall be laid by any State on the property of the United States or either of them"], Art. 5 ["nor shall any delegate hold any office under the United States," etc.], Art. 6 ["nor shall any person holding any office of profit or trust under the United States or any of them accept of any present," etc.], Art. 9 ["no State shall be deprived of territory for the benefit of the United States;" "nor ascertain the sums and expenditures necessary for the defence and welfare of the United States or any of them;" "in the service of the United States;" "Congress of the United States;" "on the credit of the United States;" "at the expense of the United States"], Art. 11 ["Canada acceding to this confederation, and joining in the measures of the United States, shall be admitted into, and entitled to all the advantages of, this Union"], Art. 12 ["shall be deemed and considered as a charge against the United States, for payment and satisfaction whereof the said United States and the public faith are hereby solemnly pledged"], and Art. 13 ["Congress of the United States"].

In most cases, however, in which the term "United States," in its second sense, or the term "Congress" or "Congress of the United States," would be used in the Constitution, the phrase "United States in Congress assembled" is used in the Articles of Confederation. That phrase occurs in those articles a great number of times, and, whenever it occurs, "United States" is used in its original sense. This is clearly brought out by the following words in Art. 5: "Each State shall maintain its own delegates in any meeting of the States;" also by the following words in Art. 10: "the voice of nine States in the Congress of the United States assembled;" and also by the following words in Art. 12: "before the assembling of the United States [not the delegates of the United States] in pursuance of the present confederation."

[13] Art. 1, sect. 2, subsect. 2; Art. 1, sect. 3, subsect. 3; Art. 2, sect. 1, subsect. 5; 14th Amendment, sects. 1 and 2; 15th Amendment, sect. 1.

defence and general welfare of the United States,"[1] it seems to be used in its first or original sense, especially as "common defence" and "general welfare" are taken from the preamble.[2]  Certainly there is no pretence for saying it is used in its third sense.  In the phrase, "throughout the United States,"[3] there is believed to be no doubt that it is used in its original sense,[4] though it may be claimed that it is used in its third sense.[5]  That it is used in its original sense in one instance is certain;[6] and when the same phrase is used in different parts of the Constitution, a strong presumption arises that it is always used in the same sense.

In the phrase, "resident within the United States,"[7] there can be no doubt that "United States" is used in its original sense, the meaning being the same as if the words had been, "resident in one or more of the United States."

The phrase, "one of the United States," affords a good instance of the use of "United States" in its original sense.[8]

In the phrase, "shall not receive any other emolument from the United States or any of them,"[9] it is certain that "United States" is used in its second sense, though it is also certain that the draughtsman supposed he was using it in its original sense.[10]

---

[1] Art. 1, sect. 8, subsect. 1.          [2] See *supra*, page 372, and notes 1 and 3.

[3] Art. 1, sect. 8, subsects. 1 and 4; Art. 2, sect. 1, subsect. 3.

[4] It has been seen (*supra*, p. 365, n. 2) that the first time the term "United Colonies" occurs in the Journal of Congress, it is in the phrase, "throughout the twelve United Colonies."  The phrase, "throughout the United States" is also used in two instances in the 9th Article of Confederation ["the United States in Congress assembled shall have the sole and exclusive right and power of fixing the standard of weights and measures throughout the United States . . . establishing or regulating Post Offices *from one State to another* throughout all the United States"], in neither of which can it possibly have any other meaning than throughout the thirteen United States.  Can any reason then be given for supposing that the authors of the Constitution attached a wholly different meaning to the same phrase, namely, "throughout all the territory within the sovereignty of the United States"?  It is believed that there cannot; and yet the question depends entirely upon intention.  For the reader should bear in mind the fact that, while the term "United States" may have its second meaning in the Constitution, though it was previously used in the same phrase with its original meaning (and that, too, without any change of intention), it cannot, in the Constitution or elsewhere, have its third meaning, in a phrase in which it had previously had its first meaning, without a corresponding change of intention.

[5] See *infra*, page 381.

[6] Art. 2, sect. 1, subsect. 4 ["The Congress may determine the time of choosing the electors, and the day on which they shall give their votes; which day shall be the same throughout the United States"].          [7] Art. 2, sect. 1, subsect. 5.

[8] Art. 2, sect. 1, subsect. 7.          [9] 11th Amendment.

[10] At page 374, note 12, will be found an extract from the 4th Article of Confedera-

In the phrase, "all persons born or naturalized in the United States,"[1] it seems clear that "United States" is used in its original sense; for, first, it is either used in that sense or in its third sense, and, as the latter is not a constitutional or legal sense, there is a presumption that the term is not used in that sense in an amendment of the Constitution; secondly, it is declared that the same persons shall be citizens of the State in which they reside, and this shows that the authors of the amendment contemplated only States, for, if they had contemplated Territories as well, they certainly would have said "citizens of the State or Territory in which they reside"; thirdly, the whole of the 14th Amendment had reference exclusively to the then late war, and was designed to secure its results, — in particular to secure to persons of African descent certain political rights, and to take from the States respectively in which they might reside the power to deprive them of those rights. Moreover, the amendment consists mainly of prohibitions, and these are all (with a single exception which need not be mentioned) aimed exclusively against the States. It was no part of the object of the amendment to restrain the power of Congress (which its authors did not distrust), and hence there was no practical reason for extending its operation to Territories, in which all the power resided in Congress. What is the true meaning of "United States" in the phrase under consideration is certainly a question of great moment, for on its answer depends the question whether all persons hereafter born in any of our recently acquired islands will be by birth citizens of the United States.

The foregoing comprise all the instances but one in which the term "United States" is used either in the original Constitution,

---

tion, in which occurs the phrase, "the United States or either of them," and also an extract from the 6th Article, in which occurs the phrase, "the United States or any of them;" and, while these phrases are perfectly correct where they stand, yet a transfer to the Constitution of the passages containing them would have made the same phrases incorrect, as such transfer would have changed the meaning of "United States." On the other hand, a transfer to the Constitution of an extract in the same note from Art. 9, containing the same phrase, would, it seems, have caused no change in the meaning of "United States," and hence the phrase in question would have been correct, notwithstanding such transfer.

[1] 14th Amendment, sect. 1: ["All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."]

or in any of its amendments.  The other instance is found in the
13th Amendment,[1] — in which "United States" is plainly used in
its original sense, if the words which follow it are to have any
meaning; and yet, if the authors of that amendment had under-
stood that the term "United States," when used in the Constitution
to express extent of territory, had its third meaning, they would have
omitted the words, "or any place subject to their jurisdiction."

If a broader view be taken of the Constitution and its amend-
ments, it will be found that the only portions of it which indicate
the slightest intention to extend their operation beyond the limits
of the States, are the clause authorizing the admission of new States,[2]
the clause providing for the government of territories,[3] and the 13th
Amendment.

The Constitution of the United States, like other constitutions,
is mainly occupied with the creation and organization of the
three great departments of government, — the legislative, the ex-
ecutive, and the judicial.  Accordingly, the first three articles,
comprising about six-sevenths of the whole, are entirely occupied
with these three departments respectively.  The last three sections
of Art. 1 (namely, the 8th, 9th, and 10th Sections) are, however,
peculiar to the Constitution of the United States as a federal con-
stitution, and will, therefore, be excluded from view for the present.
Of the remainder of Art. 1, and of the whole of Arts. 2 and 3, it
may be affirmed that not one word in either has any reference or
any application to any territory outside the limits of the States.
As to Arts. 1 and 2, the correctness of this view has never been
questioned, and, as to Art. 3, its correctness is established by the
uniform practice of the legislative department[4] of the govern-

---

[1] ["Neither slavery nor involuntary servitude, except as a punishment for crime,
whereof the party shall have been duly convicted, shall exist within the United States
or any place subject to their jurisdiction."]

[2] See *supra*, page 370, note 1.

[3] Art. 4, sect. 3, subsect. 2.

[4] For example, the entire judicial power in the Territories has always been vested
by Congress in one set of courts, regardless of the dual system which exists in all the
States by virtue of Art. 3 of the Constitution.  Moreover, these courts have always
been termed Territorial courts (not United States courts), and have always been so re-
garded; the statutes by which they have been created and governed are wholly separate
and distinct from those creating and governing the courts of the United States within the
States; their judges have generally held office only for a term of four years, whereas
all judges appointed under Art. 3 of the Constitution hold office during good behavior;
and originally there was no appeal from any Territorial court to the Supreme Court.

ment, and by a uniform course of decisions in the judicial department.[1]

A distinction must, however, be made between those articles of the Constitution by which the several departments of the government were respectively created and organized, and those departments themselves; for the reasoning which is applicable to the former is not necessarily applicable to the latter, nor is the same reasoning necessarily applicable to all of the latter. It does not follow, because a department of the government is created and organized by the Constitution with reference solely to a given territory, that, therefore, the power of that department and its sphere of action are limited to that territory. It may or may not be true, and it may be true of one department, and not true of another department. In fact, it is true of the judicial department, but it is not true of either the legislative or the executive department. How is it, then, that one of these three departments can differ so materially from the other two, when no such difference is indicated by the Constitution, which created and organized them all? It is because the difference depends, not upon the Constitution, but upon the nature of the departments themselves. The legislative and executive departments are sovereign in their nature, and, therefore, their power and sphere of action are co-extensive with the sovereignty of the United States, of which sovereignty they constitute the vital part, — of which, in fact, they constitute all that has been delegated. It is by them alone that the sovereignty of the United States can, without changing or overthrowing the present Constitution, either speak or act, *i. e.*, either declare its will, or execute that will when declared. The judicial department, on the other hand, is not the depositary of any portion of the sovereign power; its function is simply to judge; it cannot even enforce its own judgments; without the support of both the legislative and executive departments it could have no existence, other than theoretical, since the latter alone can appoint judges, and the former alone can provide them with salaries. It is true that the judicial department sometimes disregards what the legislative department has declared to be the sovereign will; but that is not because of the nature of the judicial office, — it is rather in spite

---

[1] Seré *v.* Pitot, 6 Cr. 332; Am. Ins. Co. *v.* Canter, 1 Pet. 511; Benner *v.* Porter, 9 How. 235; Clinton *v.* Englebrecht, 13 Wall. 434; Reynolds *v.* U. S., 98 U. S. 145; The City of Panama, 101 U. S. 453; McAllister *v.* U. S., 141 U. S. 174.

of it; it is not because it is the function of the judicial department to sit in judgment upon the action of the legislative department, but because the judicial department has held that it cannot do otherwise than disregard an act of the legislative department which is in violation of the Constitution, without itself incurring the guilt of violating the Constitution, and also (it may be added) because the legislative department and the people have acquiesced in that view.

While, therefore, the power of the legislative and executive departments is co-extensive with the sovereignty, the judicial department can exercise only such jurisdiction as has been delegated to it; and hence its jurisdiction would still be limited to the original thirteen States, had not the Constitution provided for the admission of new States.

There is, therefore, no room for any question as to where either the legislative, the executive, or the judicial power in our new territories resides; for the legislative power clearly resides in the Congress of the United States, and the executive power in the President of the United States; and the power of establishing the judicial department also resides in Congress, though Congress cannot itself exercise the power belonging to that department. In the legislative and executive departments, therefore, is vested all the sovereign power in our new territories that has been delegated by the people; and the real question is in what character, and subject to what limitations, if any, do they hold this power. Does Congress (for example) hold the legislative power there as it does in the States, *i. e.*, subject to all the limitations and restrictions imposed by the Constitution; or does it hold that power in the new territories without any other limitation than that imposed by the 13th Amendment, namely, that it shall not establish slavery in any of them; or does the truth lie somewhere between these two extremes? And this brings us to the question whether the limitations and restrictions imposed upon Congress by the Constitution are operative outside the States. These limitations and restrictions are found chiefly in the 8th and 9th sections of Art. 1, and in the first ten Amendments.

The 8th Section of Art. 1 owes its existence entirely to the fact that the Constitution of the United States, while it is a true constitution, and creates a true sovereign, is yet a federal constitution. By it the people of each State vested a portion of the sovereignty

of that State in the new sovereign created by the Constitution, *i. e.,* they made a partition of the sovereignty of the State between the State and the United States, and the 8th section of Art. 1 contains that partition.  The mode of making it was by granting to the new sovereign those branches of sovereignty which are enumerated in the respective subsections of Section 8.  That section, therefore, so far as regards its main object and scope, can have no application to any territory beyond the limits of the several States, for no partition was to be made of the sovereignty over any such territory.  A strong presumption, therefore, arises that no part of the section was intended to extend beyond the limits of the States, as it cannot be supposed that any incidental objects were intended to have a more extensive operation than the main object.

What were the incidental objects of the section?  One was to provide security that the United States, in exercising those branches of sovereignty which had been granted to it, should treat all the States alike; for, if no such security were provided, a majority of States might at any time combine to oppress a minority.  Accordingly, subsection 1 having granted to Congress the power "to lay and collect taxes, duties, imposts, and excises," it is added "but all duties, imposts, and excises shall be uniform throughout the United States."  So, also, subsection 4 grants to Congress the power to establish an "uniform" rule of naturalization, and "uniform" laws on the subject of bankruptcies "throughout the United States."  Reasons have already been given for believing that the term "United States," in both these subsections, is used in its original sense; and we now find another argument, in favor of the same view, in the scope and object of Section 8.  As it would be absurd to hold that the grant of power in these subsections had any reference to territories as distinguished from States, since Congress has full legislative powers in the territories without any grant from the States, so it would be absurd to hold that the limitation of the power has a more extensive operation than the power itself.  Moreover, if all other arguments fail, it is at least true that those subsections contain nothing whatever to overthrow the presumption in favor of their being limited in their operation to the States.

There is a *dictum* by Chief Justice Marshall, in Loughborough *v.* Blake,[1] which is opposed to the view insisted upon in this article.

---

[1] 5 Wheat. 317.

Case 4:09-cr-43   Document 36-14   Filed 04/13/2009   Page 17 of 28
Case: 10-5057   Document: 01018464267   Date Filed: 07/26/2010

It is, however, only a *dictum*, as the learned Chief Justice himself admits. The circumstances of the case were these. Jan. 9, 1815, Congress passed an Act [1] laying an annual direct tax of $6,000,000 upon the United States, which sum it proceeded to apportion among the eighteen then existing States. Feb. 27, 1815, Congress passed another Act,[2] which in effect extended the first Act to the District of Columbia. The plaintiff having refused to pay his share of the tax imposed upon the District by the second Act, claiming that the Act was unconstitutional, his property was seized, and he brought trespass against the officer making the seizure. The plaintiff's claim admitted of a very short answer, namely, that by Art. 1 of the Constitution, Section 8, subsection 17, Congress had all the power within the District that it had in any State *plus* the power of the legislature of that State, and, therefore, had an unqualified power of taxation. Still, the Chief Justice thought it desirable (for what reason is not very apparent) to show that Congress also had the power to impose the tax under the same grants of power by which it was authorized to pass the first Act. Accordingly, he said, first, the power given to Congress to lay and collect taxes was in terms without limitation as to place; secondly, the power to lay and collect taxes had the same extent as to place as the power to lay and collect duties, imposts, and excises; thirdly, the latter power was required to be exercised uniformly throughout the United States, and it could not be so exercised unless it extended throughout the United States; and this brought him to the question, what was meant by "United States" in the phrase, "throughout the United States." "Does this term," said he,[3] "designate the whole or any particular portion of the American Empire? Certainly this question can admit of but one answer. It is the name given to our great republic, which is composed of States and Territories. The District of Columbia, or the territory west of the Missouri, is not less within the United States than Maryland or Pennsylvania." If this *dictum* be taken as simply giving one of the meanings of the term "United States," and without reference to the Constitution, its correctness cannot be questioned; but it seems not to have occurred to its learned author that, while the meaning which he attributed to the term was one of its meanings, it had other meanings also;

---

[1] C. 21, 3 Stats. 164.      [2] C. 60, 3 Stats. 216.
[3] 5 Wheat. 319.

that it had been used in another sense in the first[1] of the two
Acts of Congress which gave rise to the litigation in question, and
that his argument, therefore, required him to show that the mean-
ing which he attributed to the term, rather than one of the others,
was its true meaning in the clause of the Constitution upon which
he was commenting.

Perhaps it will not be thought unreasonable to place against the
*dictum* in question the *dictum* of Webster in another case,[2] also
decided by Chief Justice Marshall. It is true that he was arguing
for a client; but then it was not his habit, even as counsel, to
state propositions of law which he did not believe to be true, and
the truth of which he was not prepared to maintain. He said:[3]
"What is Florida? It is no part of the United States. How can
it be? How is it represented? Do the laws of the United States
reach Florida? Not unless by particular provisions. The Terri-
tory and all within it are to be governed by the acquiring power,
except where there are reservations by the treaty. . . . Florida
was to be governed by Congress as she thought proper. What has
Congress done? She might have done anything, — she might
have refused a trial by jury, and refused a legislature. . . . Does
the law establishing the court at Key West come within the re-
strictions of the Constitution of the United States? If the Con-
stitution does not extend over this territory, the law cannot be
inconsistent with the national Constitution." It may be added
that the decision was in Webster's favor, that not a word was said
by the Chief Justice in disapproval of the passage just quoted, that
Loughborough *v.* Blake was not cited either by counsel or judge,
that it has seldom been cited by any member of the court by which
it was decided, and that the *dictum* under consideration has, it is
believed, never been so cited.

One other observation may be made upon Loughborough *v.*
Blake, namely, that the District of Columbia differs materially
from a Territory, that the former is within the limits of a State,
was once a part of a State, and, therefore, the Constitution once

---

[1] Which enacts (sect. 1) "that a direct tax of $6,000,000 be and is hereby annually
laid upon the United States, and the same shall be and is hereby apportioned to the
States respectively in manner following: To the State of New Hampshire $193,586.74,"
etc. (enumerating the eighteen then existing States). Plainly, therefore, "United
States" is here used in its original sense.

[2] Am. Ins. Co. *v.* Canter, 1 Pet. 511.      [3] 1 Pet. 538.

extended over it; and it may not be easy to show that it has ever ceased to extend over it.

The object of the 9th Section of Art. 1 is to prohibit Congress from doing certain things which it would otherwise have had the power to do under the several grants in the 8th section. Its object was, therefore, the same as that of the limitations contained in Section 8, and hence it would be as irrational to give Section 9 a more extensive operation, in respect to territory, than Section 8 has as it would be to give to the limitations upon the power of Congress imposed by Section 8 upon the grants contained in that section a more extensive operation than the grants themselves have.

An examination of the different subsections of Section 9 (other than subsection 1, which, having ceased to be operative, may be passed over) will lead to the same conclusion. Thus, subsection 2 provides that the writ of *Habeas Corpus* shall not be suspended, except under special circumstances; subsection 3, that no bill of attainder or *ex post facto* law shall be passed; subsection 4, that all "capitation or other direct" taxes which shall be laid shall be apportioned among the States according to the respective numbers of their inhabitants, *i. e.*, shall neither be laid upon property without reference to State lines, nor apportioned among the States according to their property;[1] subsection 5, that no tax or duty shall be laid on articles exported *from any State;* subsection 6, that no preference shall be given by any regulation of commerce or revenue to the ports of one State over those of another, and that no vessel bound to or from one State shall be obliged to enter, clear, or pay duties in another; subsection 7, that no money shall be drawn from the Treasury but in consequence of appropriations made by law, and a regular statement and account of the receipts and expenditures of all public money shall be published from time to time; and subsection 8, that no title of nobility shall be granted by the United States, and that no person holding any office of trust or profit under them shall accept of any present, emolument, office, or title from any King, Prince, or foreign State.

Of these seven subsections, no one discloses any intention to make it operative over a greater extent of territory than any of the others, and it must, therefore, be assumed that the intention was,

---

[1] By Article 8 of the Confederation, the amount of money required by Congress to be raised, from time to time, was to be apportioned among the States according to the aggregate value of the land in the States respectively, exclusive of crown lands.

in that respect, the same as to all; and hence it follows that they must all receive the same construction, in respect to the extent of territory over which they shall be operative, at least so far as their construction in that respect depends upon intention.   Moreover, subsections 5 and 6 show conclusively upon their face that they are to be operative only within the States, and subsection 4 shows the same intention with sufficient clearness.   Subsection 4 has also the same *raison d'être* as the limitations in subsections 1 and 4 of Section 8, *i. e.*, it was designed to secure a minority of wealthy States against the risk of having the whole burden of government thrown upon them by the less wealthy majority; and, therefore, it is absurd to suppose that it was intended to be operative in territories, — which were never to have any voice in Congress, and as to which, therefore, no such precaution was necessary.

Subsection 8 of Section 9 is more doubtful as to the territorial extent of its operation than any other part of the Constitution, — not because of any intention that can be justly attributed to its authors, but because of the language in which it happens to be couched.   Thus, it provides in effect, that no title of nobility shall ever be granted by the United States as a sovereign, and that no person holding office under the sovereignty of the United States shall accept any present, etc.   Fortunately, however, this subsection is of little importance, and any doubt that may exist as to its true construction, as it arises from accident, can have no influence upon the construction of other parts of the Constitution.

In respect to the first ten Amendments of the Constitution, it seems scarcely necessary to say more than to refer briefly to the circumstances under which they were adopted.   They were proposed by the first Congress and at its first session, and were a concession to the party which had opposed the adoption of the Constitution, and which had thus far prevented its ratification by two of the States, namely, Rhode Island and North Carolina.   Some of the States also which had ratified it, had done so only because they had been induced to believe that it would be amended at the earliest opportunity.

In respect to the nature and objects of the amendments adopted, it may be said that they are in the nature of a bill of rights, *i. e.*, they were designed still further to limit and restrict the powers of the new government under the grants contained in the first three articles of the Constitution, and especially those contained in the

Case 4:09-cr-43    Document 36-14    Filed 04/13/2009    Page 21 of 28
Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010

8th section of Art. 1. It would be very surprising, therefore, if they should disclose any intention to extend their operation beyond the limits of the States; and in fact they do not disclose any such intention. If any doubt exists as to the extent of territory over which any of them are operative, it is only as to the 1st Amendment,[1] and it arises, not from any doubt as to the intention of its authors, but from the same cause as in subsection 8 of Section 9 of Art. 1. As to the remaining first ten Amendments, the utmost that can be said against the view now urged is that the language in which they are couched is so broad and general as to make them susceptible of an indefinite extension in respect to territory; but that is far from being sufficient to overcome the presumption which exists in favor of their being limited to the States. Moreover, it is as true of the first ten Amendments as it is of the 9th Section of Art. 1, that the intention of their authors was the same as to all of them, so far as regards the extent of territory over which they were to be operative; and yet it is certain that some of them are limited in their operation to the States. Thus, the 6th Amendment provides that all criminal trials shall be by a jury of the "State and district" in which the crime shall have been committed;[2] and by "district" is here meant either an entire State or a subdivision of a State. So the 7th Amendment perpetuates the right to trial by jury in common-law actions, and declares that no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law. It is assumed, therefore, that the common law of England will be the law of the land in every place where this amendment will be operative. Moreover, the operation of the amendment is expressly limited to courts of the United States, *i. e.*, courts exercising some portion of the judicial power conferred upon the United States by Art. 3 of the Constitution; and it is only within the States, as has been seen,[3] that such power can be exercised, or such courts can exist. Lastly, the 10th Amendment provides that the powers not delegated to the United States by the Constitution (*i. e.*, in its first three articles), nor prohibited by it to the States (*i. e.*, in Section 10

---

[1] "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances."

[2] U. S. *v.* Dawson, 15 How. 467.    [3] See *supra*, page 378.

of Art. 1), are reserved to the States respectively or to the people (*i. e.*, the people of the respective States); and there could not well be a stronger proof that the sole object of the first ten amendments was to limit the power of the United States in and over the several States. Nor should the fact be lost sight of that these ten amendments as a whole are so peculiarly and so exclusively English that an immediate and compulsory application of them to ancient and thickly settled Spanish colonies would furnish as striking a proof of our unfitness to govern dependencies, or to deal with alien races, as our bitterest enemies could desire.

It may be added that Art. 3, Section 2, subsection 3, is of the same nature as the first ten Amendments; and yet that subsection is limited, like the 7th Amendment, to the courts of the United States, and so to the several States, and that, too, not only for reasons applicable to the whole of Art. 3, but because it is expressly provided that all trials for crimes shall be held in the State where the crime was committed; and though it is added that, when not committed in any State, the trial shall be at such place as Congress by law directs, yet a crime not committed in a State can come within that subsection only when it is committed on the high seas, or in some place which is without an organized government, and so without the means of administering justice.[1]

It must be admitted that the provisions, both of the original Constitution and of the amendments, securing the right of trial by jury, have several times been subjects of discussion in the Supreme Court, and that opinions have been expressed by members of that court that these provisions extend to Territories. But, in the recent case of the American Publishing Co. *v.* Fisher,[2] the question was treated as still an open one; and though, in the still more recent case of Thompson *v.* Utah,[3] the court professedly decided that the provisions in question extended to the former territory of Utah, yet it seems clear that the question was not involved in the decision. The only question directly involved was whether the clause in the constitution of Utah, providing that persons accused of felonies not capital should be tried by a jury of eight persons, was *ex post facto* as to a felony committed while

---

[1] See U. S. *v.* Jones, 137 U. S. 202; Cook *v.* U. S., 138 U. S. 157, 181. It seems clear also that the Constitution intended that Congress, in directing the place of trial of a crime not committed in any State, should select a place within the limits of some State, as otherwise the trial could not be in a United States court.

[2] 166 U. S. 464.                    [3] 170 U. S. 343.

Case 4:09-cr-43    Document 36-14    Filed 04/13/2009    Page 23 of 28
Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010

Utah was a territory, and, therefore, inoperative; and that question was decided in the affirmative, and for the reason that the law of the Territory, as it was when the crime was committed, required any person accused of such a crime to be tried by a jury of twelve persons. But, if such was the law of the Territory, it seems to have been immaterial how it was established, — whether by the Constitution of the United States, or by Act of Congress, or by Act of the territorial legislature; and, in fact, such was the law of the Territory by virtue of an Act of the territorial legislature,[1] and therefore it was not necessary for the accused to invoke the aid of the Constitution of the United States.[2]

It may aid us in determining the status of our new territories to inquire what their status would be, if the United States, instead of being a confederation of States, were a single State, organized substantially as our several States are, or if it were a monarchy, either absolute or constitutional.

The mere acquisition by one country (A, for example) of the sovereignty over another country (B, for example) produces no other legal effect upon the latter than to give it a new sovereign, and consequently to substitute the legislature and the chief executive of A for those of B; but A and B will still be in strictness foreign to each other, each having its own government, laws, and institutions; and though the legislature and chief executive of each will be the same, yet they will act in an entirely different capacity when acting for B from that in which they act when acting for A.[3] If any greater change than this is wrought, it will be because A has done something more to B than to acquire the sovereignty over her. She may do with B whatever she pleases, assuming the sovereignty which she has acquired over her to be absolute. She may (for example) incorporate B so completely with A that B's own government, institutions, and laws will cease to

---

[1] See 170 U. S. 345. Moreover, by the Act of Sept. 9, 1850, c. 51, s. 17 (9 Stats. 435, 458), for organizing the Territory of Utah, it was enacted as follows: "The Constitution and laws of the United States are hereby extended over and declared to be in force in said Territory of Utah, so far as the same, or any provision thereof, may be applicable." And though it was not within the power of Congress to extend the Constitution over territory to which it did not extend by its own force, yet Congress could give it the effect of a statute in such territory, and that was the effect of this provision.

[2] In Am. Ins. Co. *v.* Canter, 1 Pet. 511, 538, Webster, *arguendo*, said Congress had the power to refuse trial by jury to the Territory of Florida. See *supra*, page 382.

[3] Hence, no statute made by the legislature of A as such will affect B, unless it expressly declare that it shall extend to B. See *supra*, page 382.

exist, and even she herself will cease to exist as a separate country; or A may keep the two countries entirely separate and distinct, and yet reduce the inhabitants of B to a condition of servitude. But if B be incorporated with A, or the inhabitants of B be reduced to a condition of servitude, it will not be because of the acquisition by A of the sovereignty over B, but because of the action taken by A consequent upon the acquisition of such sovereignty. If, indeed, A have a written constitution, by which her government was created and organized, and under which it acts, and the powers of such government are subject to limitations imposed by the constitution, and such limitations are made by the constitution to apply to all future acquisitions of territory, and so are applicable to B, of course it will follow that the government of A will be subject to the same limitations when acting for B as when acting for A; and A can get rid of these limitations, in respect either to herself or B, only by changing or overthrowing her constitution.

Does, then, the fact that the United States is a confederation of States make any difference? It is conceived that it makes no difference whatever as to the foregoing principles; but it does suggest two observations which affect their application: first, that, as all the limitations imposed upon the United States by the Constitution have reference primarily to the States, and owe their existence primarily to the fact that the sovereignty over the territory of each State is divided between the State and the United States, there is a strong presumption that such limitations have no application to territory which is subject to no State sovereignty, and in which the United States can exercise all the power which can be exercised within a State either by the State or by the United States; secondly, that there is but one known mode of incorporating newly acquired territory into the United States, namely, by admitting it as a State.

Much confusion of ideas has been caused as to the effect of the acquisition of new territory by the United States, by the constant use of the word "annexation," — a word which has no constitutional or legal meaning. It first came into general use in connection with the agitation for and against the acquisition of Texas. Whether its use was by design or accident may not be certain. The acquisition of Texas was peculiar in this, namely, that it was the first instance (as it is still the only instance) of the acquisition of foreign territory by admitting it as a State. For this reason, the

word "admission" may have been thought objectionable, that word
having become associated with the practice of admitting as States
territory already within the sovereignty of the United States. The
acquisition of Texas was peculiar also in another respect, namely,
that it was the acquisition of an independent State with her own
consent. In this respect, the case of Hawaii is similar to that of
Texas; and this may account for the fact that Hawaii was acquired
by the process (so called) of annexation.[1] But, however this may
be, the mode in which Hawaii was acquired, does not at all affect
her *status* when acquired, nor make it different from that of the
Spanish islands which have been acquired by conquest and by
treaty with Spain.

What has been the practice of Congress in respect to those
branches of legislation which the Constitution[2] requires to be uni-
form throughout the United States, and does such practice indicate
that Congress has held itself bound by the Constitution to make
such legislation uniform throughout all territory within the sover-
eignty of the United States? First, the undoubted fact that there
has been hitherto no want of uniformity in the taxes, duties, im-
posts, and excises laid and collected by Congress, nor in the rules
of naturalization, or the laws on the subject of bankruptcies, estab-
lished by Congress, proves nothing; for there has not hitherto been
the slightest reason why legislation upon each of these subjects
should not be uniform throughout all the territory over which it
extended; nor have there been even two opinions upon the ques-
tion. Secondly, the earliest legislation respecting duties upon
imports and tonnage[3] was limited in its operation to the States.
This, however, may not have involved any constitutional question,
as it did not follow that there was to be "free trade" between the
territories and foreign countries, but rather that foreign goods
could not enter the territories at all, for want of any ports of entry.[4]

---

[1] Another point of similarity between Texas and Hawaii is, that both were acquired
by joint resolution. The resolution of March 1, 1845, by which Texas was acquired (5
Stats. 797) is entitled, "Joint Resolution for annexing Texas to the United States;"
but neither the verb "annex," nor the noun "annexation," occurs in the resolution itself.
The resolution of July 7, 1898, by which Hawaii was acquired, is entitled, "Joint Reso-
lution to provide for annexing the Hawaiian Islands to the United States;" and the
resolution itself declares "that the said Hawaiian Islands and their dependencies be,
and they are hereby annexed as a part of the territory of the United States, and are
subject to the sovereign dominion thereof."

[2] Art. 1, sec. 8, subsects. 1 and 4.

[3] Acts of July 31, 1789, ch. 5 (1 Stats. 29), and Aug. 4, 1790, ch. 57 (1 Stats. 145).

[4] There was, however, early legislation imposing excise duties, and this was also

The earliest legislation respecting naturalization[1] and bankruptcy[2] was also limited in its operation to the States; and it seems that this was in violation of the Constitution, if "United States," as used in Art. 1, Section 8, subsection 4, includes the territories; for a consequence was that no person residing in a territory could be naturalized, and that neither any debtor residing in a territory, nor the creditors of any such debtor, could have the benefit of the bankrupt law. Thirdly, all naturalization acts except the first, and all bankrupt acts except the first, have been extended to the territories, but it by no means follows that Congress regarded itself as bound by the Constitution so to extend them. So also the Act of March 2, 1799,[3] to regulate the collection of duties on imports and tonnage, was extended to the then existing territories, *i. e.*, the latter were divided into collection districts; and this is true also of all similar acts which have since been passed, and of all territories which have since been acquired; and, if Congress had not taken this course, it must have either prohibited the importation of foreign goods into territories, or it must have admitted all foreign goods free of duty, or it must have established for the territories a revenue system of their own. Moreover, there were many reasons in favor of the course adopted, and none in favor of either of the other three: First, all the different parcels of territory acquired by the United States from time to time (with the unimportant exception of Alaska) were contiguous either to existing States or to territory previously acquired; secondly, none of them differed more widely from the States in soil and climate than the States differed from each other; thirdly, they were all virtually without inhabitants and were expected to be peopled by immigrants from the States, from the British Islands, and from Western Europe; fourthly, they were all expected, at an early day, to be formed into States, and as such to be admitted into the Union; fifthly, none of them produced (to any extent) dutiable articles which, if admitted into the United States free of duty, would either deprive the government of revenue, or compete with home products, or produce both of these effects; sixthly, they all bordered upon navi-

---

limited to the States. See Act of March 3, 1791, ch. 81 (1 Stats. 199). It seems, therefore, that such legislation was in violation of Art. 1 of the Constitution, Sec. 8, subsect. 1, if "United States," as used in that subsection, includes territories, as no excise duties were imposed upon the latter.

[1] Act of March 26, 1790, ch. 29, 1 Stats. 103.

[2] Act of April 4, 1800, ch. 19, 2 Stats. 19.     [3] 1 Stats. 627.

gable waters through which the products of all foreign countries could easily be imported into them, and, if admitted free of duty, could be smuggled thence into the States.[1]

With the acquisition of Hawaii and the Spanish islands, however, all these conditions are radically changed. None of these islands have been acquired with a view to their being admitted as States, and it is to be sincerely hoped that they never will be so admitted, *i. e.*, that they will never be permitted to share in the government of this country, and especially to be represented in the United States Senate. Their agricultural capabilities are very great, their products enter almost wholly into commerce, and all or nearly all of them are dutiable under our tariff. Some of them consist of articles from which the government raises a great amount of revenue, and most of them, if admitted free of duty, will compete ruinously with home products of the same kind. Lastly, none of these islands are manufacturing countries, nor are likely to become such, and none of them import articles which compete with their home products, and, therefore, duties should be levied on articles imported into them only for purposes of revenue.

The strongest possible reasons, therefore, exist for abandoning totally, in respect to our new territories, the practice which has hitherto prevailed of extending to territories the revenue system of the United States, and for giving to each of them a revenue system of its own.[2] This is required as well in justice to them as in justice to this country; for, while the admission of sugar and tobacco, for example, from those islands into this country free of duty, would ruin the producers of those articles in this country, and would make it necessary for the government to resort to new and oppressive modes of raising revenue, the extension to those islands of our tariff on imports would compel their people to buy

---

[1] On the 14th of August, 1848, the then military governor of California wrote to the War Department as follows: "If all customs were withdrawn, and the ports thrown open free to the world, San Francisco would be made the depot of all the foreign goods in the North Pacific, to the injury of our revenue and the interests of our own merchants." See Cross *v.* Harrison, 16 How. 164, 183.

[2] Congress seems to have taken it for granted that the revenue system of the United States was to be extended to the Hawaiian Islands; for the resolution by which those islands were acquired declares that "until legislation shall be enacted extending the United States customs laws and regulations to the Hawaiian Islands, the existing customs relations of the Hawaiian Islands with the United States and other countries shall remain unchanged."

392                    *HARVARD LAW REVIEW.*

imported articles, not as their interests, but as our interests, dictate.

If we are to undertake the government of dependent countries, with any hope of gaining credit for ourselves, we must enter upon the task with a single eye to promoting the interests of the people governed, and we must content ourselves with such material advantages as may accrue to us incidentally from a faithful discharge of our duty. Does the Constitution of the United States prevent our attempting such a rôle? If it does, one will be driven to the conclusion that the authors of that instrument were either less successful in saying what they meant, or else were less sagacious and far-sighted, than they have had the reputation of being.

*C. C. Langdell.*

---

### N O T E.

THE numerous editions of the Constitution of the United States vary somewhat in their mode of dividing the different sections into paragraphs, and in numbering the paragraphs. For example, in Art. 1, Section 9, some editions print in one paragraph the matter which, in the preceding article, is treated as constituting subsections 5 and 6; and this, of course, changes the numbering of the remaining paragraphs. So in Art. 2, Section 1, some editions do not number the third paragraph, it having been superseded by the 12th Amendment. Some editions also print and number the form of oath at the end of the section as a separate paragraph. In the preceding article the third paragraph is regarded as numbered, and the form of oath is not regarded as a separate paragraph; and hence the section is referred to as containing eight subsections.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

      Plaintiff,

v.                             Case No. 09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

      Defendants.

MOTION TO UNSEAL AFFIDAVIT AND TRANSCRIPT OF MEETING ON
SEPTEMBER 15, 2005

Lindsey Kent Springer ("Springer"), by limited special appearance, and not

a general appearance, moves this 28 U.S.C. § 116(a) United States District Court to

ORDER the unsealing of the affidavit Melody Noble Nelson declared she tendered

to Magistrate Frank H. McCarthy in order to obtain the purported search warrant

that Brian Shern, 10 other Special Agents, and Nelson and Horn by phone, relied

upon to enter into Springer's Fourth Amendment protected home location on

September 16, 2005.   Without this affidavit no probable cause could have existed

for the issuance of any such warrant even if it was issued by an authorized State

Court.   Springer also seeks the transcript or whatever recording made of the ex

parte meeting between Nelson and the Honorable Magistrate Judge Frank H.

McCarthy.   This motion is filed simultaneously with a Motion for Protective Order

and Motion to Unseal certain docket entries in 03-CR-55E.  Springer consulted with

1

Mr. Snoke and he determined the Court was going to give it to Springer anyway.

BACKGROUND

In 1993, Springer announced publicly that his God had asked him in 1992 to help rid the Earth of the Internal Revenue Service. This mission would be named Bondage Breaker's Ministries. Sometime thereafter, the revenuers learned of Springer's public admissions regarding his mission and not long after trouble for Springer ensued.

Springer has been under criminal investigation by the United States since at least 1997 and maybe even earlier than that date.

On September 15, 2005, at 4:01 P.M. Melody Noble Nelson presented an affidavit of Special Agent Brian Shern to U.S. Magistrate Judge Frank H. McCarthy ("Judge McCarthy"), to purportedly show probable cause why Judge McCarthy should sign his name on a "search warrant" which sought to search Springer's Home location located within the State of Oklahoma and not within any territorial limits Congress could confer on U.S. Magistrate's within its 28 U.S.C. § 116 territorial jurisdiction. See Exhibit 1, Declaration of Melody Noble Nelson in 06-156.

Article III, Section 2, Clause 3 requires that "[t]he Trial of all Crimes . . . shall be held in the State where the said Crimes shall have been committed." Art. III, § 2, cl. 3. Its command is reinforced by the Sixth Amendment's requirement that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been

2

committed." United States v. Rodriquez-Moreno, 526 U.S. 275, 278 (1999) "Thus, the 6th Amendment provides that all criminal trials shall be by a jury of the 'State and district' in which the crime shall have been committed; and by 'district' is here meant either an entire State or a subdivision of a State." See Harvard Law Review, Vol. XII, # 6, page 385 (1.25.1899)("The status of our new territories.) Springer attached this review to his Motion to Unseal and does not reproduce it as an exhibit with this Motion to save resources. See also U.S. v Dawson, 56 U.S. (15 Howard) 467, 487-488 (1856)

Although Rule 41 is in the Federal Rules of Criminal Procedure, Springer was denied the affidavit of Shern or any other declarant by Judge McCarthy saying "If the investigation results in a criminal prosecution, access to those materials may be sought in those proceedings." See Exhibit 1, pg. 42 therein.

Springer needs the affidavit for the purpose of preparing a motion pursuant to Franks v. Deleware, 438 U.S. 154, 155 (1978). As more fully demonstrated in both Springer's Motion for Protective Order and Motion to Unseal certain docket entries in 03-CR-55E, Nelson, Horn, Meadors and Shern, relied heavily upon their deal with Eddy Patterson. Although the Rule 35(b) attached to Springer's Motion to Unseal reveals a finding Mrs. Patterson gave substantial assistance to the United States prior to September 1, 2004, the exact opposite is in fact true. See declaration of Jerold Barringer attached to Springer's Motion to Unseal, Exhibit 5.

Furthermore, the information Meadors obtained from Springer by way of her

3

6700 assault was under a limited use basis and only for the purposes to determine whether any tapes for sale on the internet from Springer speaking in 1995 were resulting in any 6700 violations.  As Springer learned later, there was nothing to trigger a 6700 investigation of Springer. That was a front unlawfully orchestrated by Nelson, Horn, Meadors, David Reed and Michael Gregory.  No delegation of authority existed for anything Meadors was attempting to accomplish.

CONCLUSION

Lindsey Kent Springer requests this Court to enter an order unsealing any affidavit presented to Judge McCarthy relied to find probable cause in his issuance of his warrant dated September 15, 2005, and the transcript of any such ex parte meeting between Judge McCarthy and Melody Noble Nelson as declared by Nelson in case 06-156

Respectfully Submitted

/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

4

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's Motion

to Unseal Affidavit and Transcript  was served by way of ECF System on April 13,
2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature

5

## IN THE UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LINDSEY K. SPRINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-CV-156-GKF-FHM |
| | ) | |
| DOUGLAS HORN, Individually; MELODY | ) | |
| NOBLE NELSON, Individually; BRIAN | ) | |
| SHERN, Individually; 10 UNKNOWN | ) | |
| AGENTS OF THE INTERNAL REVENUE | ) | |
| SERVICE, Individually; and OTHERS | ) | |
| UNKNOWN, Individually, | ) | |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF MELODY NOBLE NELSON

I, MELODY NOBLE NELSON, declare that:

1. I am presently employed as an Assistant Attorney General in the Oklahoma Attorney General's Office in Tulsa, Oklahoma, where I prosecute criminal and civil cases in the Patient Abuse and Medicaid Fraud Division of our office. I am one of the defendants in the above-captioned civil action.

2. This Declaration is being executed in support of the individual federal defendants' motion for summary judgment in the above-captioned civil action.

3. Except where specifically noted to the contrary, I have personal knowledge of the facts set forth in this Declaration, and, if called upon to testify to said facts, could do so competently.

4. I have read, and am familiar with, the allegations of the Bivens Complaint in this case.

2871148.1

5. I graduated from the University of Central Arkansas with a degree in Accounting in 1985, and from the University of Arkansas Law School in 1988. After passing the bar and obtaining my license to practice law in Arkansas, I was employed as a civil litigator at the firm of Crockett and Brown, P.A., in Little Rock, Arkansas, between July of 1988 and June of 1990. I was employed by the Pulaski County Prosecuting Attorney's Office between June of 1990 and December of 1992. I was admitted to the Texas Bar and served as an Assistant District Attorney for Bowie County, Texas, between April of 1993 and November of 1994. Between March of 1995 (when I was admitted to the Oklahoma Bar) and November of 2001, I served as an Assistant Attorney General for the State of Oklahoma.

6. From approximately December of 2001 until July of 2006, I served as an Assistant United States Attorney for the Northern District of Oklahoma in Tulsa, Oklahoma, where I prosecuted individuals for violations of federal law. In July of 2006, I left my job as an Assistant United States Attorney to return to my previous employment as an Assistant Attorney General for the State of Oklahoma.

### The investigation into the activities of Lindsey K. Springer and the search warrant for the search of his residence

7. While I was an Assistant United States Attorney for the Northern District of Oklahoma, I was assigned to a case involving an investigation by the Internal Revenue Service into the activities of the plaintiff, Lindsey K. Springer, for alleged violations of Title 26, United States Code (including, but not limited to, section 7201 of the Internal Revenue Code). As part of this investigation, I prepared a search warrant for the search of the plaintiff's residence in Kellyville, Oklahoma. On or about September 15, 2005, I presented the search warrant and the

-2-

2871148.1

supporting declaration of IRS Special Agent Brian M. Shern to United States Magistrate Judge

Frank H. McCarthy, who signed the search warrant and authorized the search of Springer's

residence.

8. A copy of the search warrant signed by Magistrate Judge McCarthy is attached to the

"Movant's Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search

Warrant (2) The Application for the Search Warrant and (3) Return of Certain Property Either

Not Items Listing in Search Warrant or Clearly Not Subject to Seizure" filed by Springer in In

the Matter of the Search of Premises Known as 25757 South 201st West Avenue, Kellyville,

Oklahoma, Case No. 05-SM-1 (N.D. Okla.) (hereinafter, "the Movant's Motion"). A true and

correct copy of the Movant's Motion, including Exhibits 1 and 2 thereto (the search warrant

issued by Magistrate Judge McCarthy on September 15, 2005, and the Inventory Listing of All

Items Seized at Search Warrant Site, respectively), is attached to this Declaration as Exhibit 1.

9. Listed among the items to be seized in paragraph 2 of Attachment B to the search

warrant (Exhibit 1 to this Declaration) for Springer's residence were "[c]urrency and monetary

instruments including cashier's checks, receipts of cashier's checks, money orders, traveler's

checks, and other monetary instruments."

**The search of Lindsey Springer's residence on September 16, 2005**

10. The search of Springer's residence pursuant to the search warrant authorized by

Magistrate Judge McCarthy took place on September 16, 2005. I was not present for the search

of the plaintiff's residence by IRS Special Agent Brian Shern and other IRS Special Agents.

11. I have never traveled to Springer's residence in Kellyville, Oklahoma.

12. On the morning of the execution of the search warrant at Springer's residence on

-3-                                          2871148.1

September 16, 2005, I received a telephone call from Supervisory Special Agent William R. Taylor, who was one of the Agents who was involved in the search of Springer's residence. During this conversation, Agent Taylor informed me that approximately $19,000 in U.S. currency had been discovered in the search of Springer's residence. I, along with Douglas Horn (the Chief of the Criminal Division of the United States Attorney's Office for the Northern District of Oklahoma) and Agent Taylor, determined that the currency should be seized pursuant to the search warrant signed by Magistrate Judge McCarthy as potential evidence of one or more violations of Title 26, United States Code, by Lindsey K. Springer.

13. On the afternoon of September 16, 2005, I received a telephone call from Supervisory Agent Taylor, who informed me that although they had thought they had about $19,000 in cash, the actual amount, as counted at a bank, was $17,000. I asked Agent Taylor if any Agent was ever alone with the cash, and he replied "no." I asked Agent Taylor to document who had been around the money, and what had happened.

### Subsequent contacts with Lindsey Springer

14. Shortly after the execution of the search warrant at Springer's residence on September 16, 2005, Lindsey Springer began to call me at my office at the United States Attorney's Office in Tulsa, Oklahoma. In several instances, Springer left messages for me at my office. All of the messages concerned the return of the currency and car titles.

15. IRS Special Agent Brian Shern called and told me that Lindsey Springer was calling him about the return of the currency and car titles. I told Agent Shern to refer Springer to me.

16. During the telephone conversations that I had with Lindsey Springer, he asked me to recuse myself from his case, which I declined to do. Springer also requested the return of the

-4-

2871148.1

currency and car titles. Because I believed that the law did not require me to do so, I told him that I would not return the currency or car titles.

17. Springer informed me by telephone that he would file something with the Court for the return of the currency and car titles. I informed Springer that the currency and car titles would be returned to him if the Court ordered the Government to do so. I also asked him to stop calling me and to put any of his requests or concerns in writing. I did this for two reasons. First, Springer was the target of an investigation, and I was uncomfortable with discussing matters with him over the telephone. Second, based on prior experience with Springer, I was concerned that anything I said to him might be taken out of context.

### Springer's Rule 41 motion

18. On September 23, 2005, one week after the execution of the search warrant at his residence, Springer filed his "Movant's Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant (2) The Application for the Search Warrant and (3) Return of Certain Property Either Not Items Listing in Search Warrant or Clearly Not Subject to Seizure" in In the Matter of the Search of Premises Known as 25757 South 201st West Avenue, Kellyville, Oklahoma, Case No. 05-SM-1 (ND Okla.). The "Movant's Motion" sought the disclosure of the supporting declaration of IRS Agent Brian Shern (as well as any other supporting materials) and the return of the currency and car titles that were seized pursuant to the search warrant. A true and correct copy of the "Movant's Motion," together with all materials filed in support of that motion, is attached to this Declaration as Exhibit 1.

19. I prepared and filed the United States of America's Response to Movant's Motion for Copy of Sworn Testimony, Application for Search Warrant and Return of Certain Seized Items

-5-

2871148.1

(the "Response") that was filed with the Court on October 5, 2005. A true and correct copy of the Response is attached to this Declaration as Exhibit 2.

20. In an Order entered on October 28, 2005, Magistrate Judge McCarthy denied Springer's request for copies of the materials and/or testimony considered in connection with the issuance of the search warrant and the application for the search warrant. The Court also denied without prejudice Springer's motion for the return of the seized currency and car titles. A true and correct copy of the October 28, 2005 Order is attached to this Declaration as Exhibit 3.

21. After the denial of the Movant's Motion, Assistant United States Attorney Douglas Horn and myself made the decision to return the currency and the car titles that were seized pursuant to the search warrant to Springer. It is my recollection that Agent Shern went to Springer's residence in January of 2006 and gave him a Treasury check in the amount of $17,000.

22. I did not steal any money from the plaintiff in this civil action, or enter into any agreement or conspiracy with Assistant United States Attorney Douglas Horn or any IRS Special Agent, or anyone else, to steal any money from Lindsey Springer.

23. I did not, individually or in conjunction with any other party or individual, "cover up" or attempt to "cover up" any alleged discrepancy between the amount of currency shown on the "Inventory Listing of All Items Seized at Search Warrant Site" ("Approximately $19,000.00 in U.S. Currency") and the $17,000.00 amount shown on the Treasury Check tendered to the plaintiff, Lindsey K. Springer, in January of 2006. I opposed the "Movant's Motion," as described in paragraph 18, above, because of my good-faith belief that Springer had not demonstrated that he would suffer irreparable harm or injury (as he was required to do under

<div align="center">-6-</div>

2871148.1

Rule 41 of the Federal Rules of Criminal Procedure) if the money and car titles seized from his

residence on September 16, 2005, were not returned to him immediately, and for the other

reasons set forth in the United States' response to Springer's motion for the return of seized

items.

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

//

-7-

2871148.1

## CERTIFICATION

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct.

Executed on November 27th, 2007.

_Melody Noble Nelson_

MELODY NOBLE NELSON

2871148.1

CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that service of the forgoing **DECLARATION** was filed

with the Clerk of the court electronically today, July 14, 2008, such that a service copy was sent

by way of the electronic filing system to the plaintiff and all counsel who have arranged for

electronic service of filings

*/s/ Robert D. Metcalfe*
ROBERT D. METCALFE DC #423163
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Ben Franklin Station
Washington, D.C.  20044

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

**FILED**

SEP 2 3 2005

Phil Lombardi, Clerk
U.S. DISTRICT COURT

In the Matter of the Search of

SEALED

"Premises known as
25758 South 201st West Avenue
Kellyville, Oklahoma"

SEP 2 2 2005

US ATTORNEY
N. D. OKLAHOMA

Case No

## MOVANT'S MOTION FOR (1) COPY OF ALL SWORN TESTIMONY COURT CONSIDERED IN ISSUANCE OF SEARCH WARRANT (2) THE APPLICATION FOR THE SEARCH WARRANT AND (3) RETURN OF CERTAIN PROPERTY EITHER NOT ITEMS LISTED IN SEARCH WARRANT OR CLEARLY NOT SUBJECT TO SEIZURE.

Lindsey K. Springer (hereinafter referred to as "movant"), moves the

District Court for an order (1) directing the release to movant of all sworn

testimony the Court considered in its finding of probable cause to issue the search

warrant on September 15, 2005 regarding the search of the property known as

"25758 South 201st West Avenue, Kellyville, Oklahoma; and (2) directing release

of the "application" which the Court considered in reviewing the affidavit and

issuing the Search Warrant, and (3) directing certain currency and documents be

returned immediately to movant and the property known as "25758 South 201st

West Avenue, Kellyville, Oklahoma".

1

**EXHIBIT**

1

Without the sworn testimony attached to the warrant or without the warrant making reference to the facts that support the finding of probable cause, the warrant violates the Fourth Amendment Rights of movant. Likewise seizing currency can in no way be evidence of any crimes under section 7201 or 7203 for the years 2000 to present. And finally, without seeing the affidavit and application, Movant is unable to make an exhaustive list of the seized property being outside the scope of the warrant and issues revealed therein, and at the conducted search, but certainly two vehicle titles wherein said vehicles are in need or registration can in no way be within any of the four listed reasons for issuance of a Search Warrant under Rule 41(c).

Currency derived from the cashing of a check in September 2005 is not "evidence of a crime". It is not contraband or fruits of a crime or otherwise illegally possessed. It is not property intended to be used to commit a crime and 41(c)(4) does not apply. There are no facts to support the seizure of the currency.

Vehicle titles are not evidence of a crime, nor contraband, fruits of a crime, illegally possessed, property designed for use, intended use or used in committing a crime. They were also not listed on the overbroad Search Warrant specifically or in some general way as to intend to be within its reach. There are no facts to support the seizure of these titles.

2

## BACKGROUND

On September 15, 2005, this Court issued a "Search Warrant" (hereinafter referenced as "warrant") directing Brian M. Shern ("hereinafter referred to as Serving Agent") and any Authorized Officer of the United States to "search on or before 9-25-2005 the premises known as 25758 South 201st West Avenue, Kellyville, Oklahoma". *Exhibit 1*

On September 16, 2005, Brian M. Shern and several other employees of the Criminal Investigation Division of the Internal Revenue Service, served said warrant upon movant at the property known as "25758 South 201st West Avenue, Kellyville, Oklahoma"

On September 16, 2005, Brian M. Shern tendered to movant an "Inventory Listing of all items Seized at Search Warrant Site" (hereinafter referred to as "seized property"). *Exhibit 2*

I.    MOTION TO RELEASE ALL SWORN TESTIMONY THE COURT
      CONSIDERED IN FINDING PROBABLE CAUSE TO ISSUE SEARCH
      WARRANT.

Federal Rules of Criminal Procedure Rule 41 authorize this Court to issue a warrant to an officer authorized to execute it. *See Rule 41(e)(1) 2005 Edition.* The warrant may only be issued for the purpose of gathering evidence of a crime,

3

for contraband, fruits of crime, or other items illegally possessed, for property designed for use, intended for use, or use in committing a crime, or for a person to be arrested or for whom is unlawfully restrained. *See Rule 41(c)(1) through (4).*

The Attachment "B" labeled "ITEMS TO BE SEIZED" states "Based on the foregoing, I respectfully submit that there is probable cause to believe that the following items, which constitute evidence of violations of Title 26, United States Code Sections 7201 and 7203, will be found at the location described in Attachment A in individual and business names including, but not limited to Lindsey Springer, Oscar Stilley, and Bondage Breakers Ministries.   All the items to be seized as referenced below are for the year beginning January 1, 2000, through the execution of the warrant including the following...:"

"The Fourth Amendment protects the individual's privacy in a variety of settings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home - a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their . . . houses . . . shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Payton v. New York*, 445 U.S.

4

573, 585, 589-90, 100 S.Ct. 1371, 1379, 1381-82, 63 L.Ed.2d 639 (1980)

(alterations in original) (citations omitted). See also *U.S. v. Dahlman*, 13 F.3d

1391 (10th Cir. 1993)

The Fourth Amendment provides that "no Warrants shall issue, but upon

probable cause, supported by Oath or affirmation, and particularly describing the

place to be searched, and the persons or things to be seized." *U.S. Const. amend.*

*IV; United States v. Mesa-Rincon*, 911 F.2d 1433, 1436 (10th Cir. 1990); see also

*U.S. v. Janus Industries*, 48 F.3d 1548 (10th Cir. 1995)

The Supreme Court has stated that "probable cause is a fluid concept -

turning on the assessment of probabilities in particular factual contexts - not

readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*,

462 U.S. 213, 232, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983). "The task of the

issuing magistrate is simply to make a practical, common-sense decision whether,

given all the circumstances set forth in the **affidavit** before him . . . there is a fair

probability that contraband or evidence of a crime will be found in a particular

place." Id. at 238, 103 S.Ct. at 2332; see also *Janus* **supra**.

The particularity requirement of the Fourth Amendment "prevents a

`general, exploratory rummaging in a person's belongings,' *Coolidge v. New*

*Hampshire*, 403 U.S. 443, 467 [91 S.Ct. 2022, 2038, 29 L.Ed.2d 564] (1971) and

5

`"makes general searches ... impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant."'" *United States v. Leary*, 846 F.2d 592, 600 (10th Cir. 1988) (quoting *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 512, 13 L.Ed.2d 431 (1965)). It "`ensures that a search is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.'" *United States v. Leary*, 846 F.2d at 600 (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir. 1985)); see also *United States v. Sullivan*, 919 F.2d at 1424; *United States v. Mesa-Rincon*, 911 F.2d at 1440. *U.S. v. Wicks*, 995 F.2d 964 (10th Cir. 1993)

It has been held that if "[T]he face of the warrant does not show the "facts" referred to, but they are contained in the affidavit used to support the request for the warrant which was attached to and served with the warrant" that this procedure "thus informed of the reasons for the search and its purposes". The affidavit was incorporated into the warrant, and we shall not require that the facts stated in the affidavit be recited again on the face of the warrant when they are served together. See *Clay v. United States*, 246 F.2d 298 (5th Cir.).

Clearly, the warrant dated September 15, 2005, is clearly in violation of the fourth amendment and the rights of movant. It attaches no affidavit and makes no

6

reference to any facts derived from any affidavit.   It uses the boiler phrase "there is probable cause" and lists two code sections from "Title 26 United States Code".

Movant enquired as to who the USAS was and movant was told it was Mrs. Melody Noble Nelson of the United States Attorney's Office in the Northern District of Oklahoma )(hereinafter referenced as "ASUA").

Movant asked to see the "affidavit" referenced in the infirm warrant and was denied.  Movant asked if the affidavit was on site and was told that anymore questions regarding the warrant would have to be addressed to the ASUA. Movant enquired the ASUA for the affidavit and was denied access to it.

Movant telephoned the chambers of the Honorable Magisrate Judge for the United States District Court Frank H McCarthy and was informed to make a request for said affidavit.   LET THERE BE NO MISTAKE ABOUT THIS. THIS IS MOVANT'S REQUEST FOR THE AFFIDAVIT THAT WAS RELIED UPON BY THE HONORABLE JUDGE TO FIND "PROBABLE CAUSE".   The affidavit was not attached to the warrant and the warrant makes no specific reference to the facts claimed to  support the warrant.

When reviewing a warrant, "we read together all properly incorporated or referenced components of the warrant, including the attached application and affidavit." *United States v. Occhipinti*, 998 F.2d 791, 799 (10th Cir. 1993).

<div align="center">7</div>

See also *U.S. v. Callwood*, 66 F.3d 1110 (10th Cir. 1995)

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the **factual** and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Id., at 175. Our observation in *United States v. Cortez*, 449 U.S. 411, 418 (1981), regarding "particularized suspicion," is also applicable to the probable-cause standard. *Illinois v. Gates*, 462 U.S. 213, 231 (1983)

As early as *Locke v. United States*, 7 Cranch 339, 348 (1813), Chief Justice Marshall observed, in a closely related context: "[T]he term `probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under _circumstances which warrant suspicion_."

Movant respectfully requests this Court to release to movant all sworn or affirmed testimony the Court relied upon in issuing the warrant dated September 15, 2005 at 4:01 pm.

II.   MOVANT REQUESTS THIS COURT TO RELEASE THE APPLICATION MADE BY THE GOVERNMENT SEEKING SAID WARRANT TO SEARCH.

Based upon that absolute right of Movant to be served with a warrant that

8

satisfies the Fourth Amendment, Movant respectfully request this Court direct the release of any/all applications relied upon to obtain the warrant dated September 15, 2005 to Movant.

III.   MOVANT REQUESTS THIS COURT DIRECT THE RETURN OF THE CURRENCY TAKEN PURSUANT TO THE WARRANT AS WELL AS DOCUMENTS TAKEN THAT WERE NOT PURSUANT TO THE WARRANT.

### A.   The Currency

On September 16, 2004, the Service Agent served upon Movant a deficient warrant which did not attach any affidavit under the Fourth Amendment requirements nor did it reference any facts within the warrant referencing the affidavit it claims probable cause was found to support.

The warrant directed that all "currency" be seized and any "money orders", "cashier checks", and "traveler's checks" and other "monetary instruments". There is nothing in the warrant itself that justifies the Government holding or maintaining the "currency" taken from Movant.   This currency was received through a local financial institution from the cashing of a check made payable to Movant and there is no way that this cashing could in any way relate to "violations of Title 26, United States Code Sections 7201 and 7203.

Movant requested U.S. Assistant Attorney Melody Noble Nelson agree to

9

return the seized currency and she informed Movant "not at this time".

Since there is no fact alleged in the warrant nor could there be any that would not be easily contradicted justifying the seizure of currency from Movant's home, nor is there any due process given to take such currency from Movant, Movant respectfully request this Court issue an order returning the currency to Movant immediately.

### B.  THE VEHICLE TITLES

There is nothing contained within the warrant that would direct the Service Agent to seize vehicle titles recently purchased by Movant.  The warrant is very ambiguous in this regard as it only mentions "documents related to the purchase and sale or other vehicles or machinery."   The Government can simply take copies of these documents but tender the originals back to Movant.   When asked for these to be returned to Movant U.S. Assistant Attorney Mrs. Melody Noble Nelson responded that she would give copies to Movant but not the originals. Movant then asked why and Mrs. Nelson responded that Movant had other vehicles and did not need these titles.

The warrant says the alleged probable cause violated sections are section 7201 and 7203.   There is nothing in either of these two sections that a grand jury maintaining the original titles of two vehicles would need to continue their

· 10

investigation.    The only reason the currency and the titles are attempting to be maintained is because of an end run around section 6330(e) by the seizing of property belonging to Movant.    Mrs. Nelson is fully aware those vehicles cannot be licenced correctly or tagged without the titles to the vehicles.    She was also informed that the only collection issues between Movant and the IRS are under stay in Oklahoma City pursuant to section 6330(e).    Mrs. Nelson responded that that case was civil and her case is criminal.

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the **factual** and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Id., at 175. Our observation in *United States v. Cortez*, 449 U.S. 411, 418 (1981), regarding "particularized suspicion," is also applicable to the probable-cause standard. *Illinois v. Gates*, 462 U.S. 213, 231 (1983)

As early as *Locke v. United States*, 7 Cranch 339, 348 (1813), Chief Justice Marshall observed, in a closely related context: "[T]he term `probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under *circumstances which warrant suspicion*."

There can be no suspicion let alone condemnation regarding vehicle titles.

11

The vehicle titles have nothing to do with section 7201 nor section 7203. They do not change whether the money given to Movant that acquired them was excludable under section 102 of the Internal Revenue Code.

Since the warrant did not contain any alleged facts which would authorize the seizure of the two titles taken and no affidavit attached explaining the need for the seizure of the titles, Movant respectfully request this Court issue an order directing the return of the two original titles to Movant immediately.

IV.    CONCLUSION

Movant respectfully request this Court release a copy of the application and all sworn testimony it relied upon to find probable cause regarding the Search Warrant issued on September 15, 2005 as well as order the return of the currency seized and the titles seized on September 16, 2005 by the Service Agent.

Respectfully Submitted

Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

12

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT a true and correct copy of Movant's MOTION FOR (1) COPY OF ALL SWORN TESTIMONY COURT CONSIDERED IN ISSUANCE OF SEARCH WARRANT (2) THE APPLICATION FOR THE SEARCH WARRANT AND (3) RETURN OF CERTAIN PROPERTY EITHER NOT ITEMS LISTED IN SEARCH WARRANT OR CLEARLY NOT SUBJECT TO SEIZURE was mailed to

U.S. Attorney Office
Attn.  Mrs. Melody Noble Nelson
110 West 7th St., Suite 300
Tulsa, Oklahoma 74119
918-382-2700

U.S. Department of Justice
Robert D. Metcalfe
Tax Division, Trial Section
555 4th Street, N.W. Room 8921C
Washington D.C. 2001
202-307-6525

Signature of Server

13

# United States District Court

_____ NORTHERN _____    District of    _____ OKLAHOMA _____

In the Matter of the Search of    **SEARCH WARRANT**
(Name, address or brief description of person, property or premises to be searched)

Premises known as:    Case No. _    _____
25758 South 201st West Avenue
Kellyville, Oklahoma

To: Brian M. Shern and any Authorized Officer of the United States:

Affidavit(s) having been made before me by Brian M. Shern, who has reason to believe that on the premises known as

    SEE ATTACHMENT A – LOCATION TO BE SEARCHED, ATTACHED HERETO AND MADE A PART HEREOF
    BY REFERENCE

in the Northern District of Oklahoma, there is now concealed certain property, namely

    SEE ATTACHMENT B – ITEMS TO BE SEIZED, ATTACHED HERETO AND MADE A PART HEREOF BY
    REFERENCE

I am satisfied that the affidavit(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

YOU ARE HEREBY COMMANDED to search on or before    *9-25-05*    _____
                                                         Date
(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search (in the daytime — 6:00 A.M. to 10:00 P.M.) and if the person or property to be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to Magistrate Judge Frank H. McCarthy as required by law.

*9-15-05*    *4:01 PM*           at                    Tulsa, Oklahoma
_____    _____
Date and Time Issued

Frank H. McCarthy, U.S. Magistrate Judge    *Frank H McCarthy*
_____    _____
Name and Title of Judicial Officer    Signature of Judicial Officer

AO 93 (Rev. 5/85) Search Warrant

## RETURN

| Date Warrant Received | Date and Time Warrant Executed | Copy of Warrant and Receipt for Items Left With |
|---|---|---|
| | | |

INVENTORY MADE IN THE PRESENCE OF

INVENTORY OF PERSON OR PROPERTY TAKEN PURSUANT TO THE WARRANT

## CERTIFICATION

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this _____ day of _____, 20_____.

_____     _____
U.S. Judge or Magistrate                                      Date

**ATTACHMENT A**

**LOCATION TO BE SEARCHED**

Two-story residence and curtilage, surrounding outbuildings, appurtenances, buses, automobiles, and property (including locked containers) of LINDSEY SPRINGER located at 25758 SOUTH 201ST WEST AVENUE, KELLYVILLE, OKLAHOMA, 74039, more specifically described as follows:

A two-story residence located on the west side of South 201st West Avenue. The entrance of the residence faces northeast. The residence is made of reddish-brown colored brick with light colored grayish siding covering the majority of the front of the residence. The door and windows of the residence are white. There is an unattached two-car garage and two small outbuildings that are perpendicular to the residence and face southeast. South 201st West Avenue is not identified with a street sign. It is 1.2 miles west of the turnpike gate on State Highway 33, which can be accessed from exit number 211 off the Turner Turnpike, headed westbound from Sapulpa. Adjacent to the entrance of South 201st West Avenue from State Highway 33 is a gray mailbox on a wooden post with the numbers "12244". The residence located at 25758 South 201st West Avenue is approximately one quarter-mile on South 201st West Avenue from this mailbox.

Attached is a map showing the location of the residence, a satellite photograph of the residence and surrounding area, and some photographs of the residence and the mailbox adjacent to the road leading up to the residence.

Page 1 of 5









Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 476



# ATTACHMENT B

## ITEMS TO BE SEIZED

Based on the foregoing, I respectfully submit that there is probable cause to believe
that the following items, which constitute evidence of violations of Title 26, United
States Code Sections 7201 and 7203, will be found at the location described in
Attachment A in individual and business names including, but not limited to
LINDSEY SPRINGER, OSCAR STILLEY, and BONDAGE BREAKERS
MINISTRIES. All of the items to be seized as referenced below are for the year
beginning January 1, 2000 through the execution of the warrant including the
following:

1. Client billing records, fee schedules, contracts for employment, estimates for
   services, filed court documents, and correspondence (opened and unopened)
   relating to the above referenced items;

2. Currency and monetary instruments including cashier's checks, receipts of
   cashier's checks, money orders, traveler's checks, and other monetary
   instruments;

3. Bank records including bank statements, deposit tickets, cancelled checks, debit
   and credit memos, records of wire transfers, and records of safe deposit box
   rental and entry, financial statements, and correspondence (open and unopened)
   with banks and financial institutions;

4. Financial records including tax returns, documents relating to the preparation of
   his tax returns, documents related to the purchase and sale of automobiles or

other vehicles or machinery, documentation of business expenses,

documentation of other expenses, documentation of personal expenditures, and

credit card records;

5. Financial statement records including books, ledgers, notations, memoranda,

cash receipts and disbursements journals, general journals, accounts receivable

and payable ledgers, general ledgers, balance sheets, profit and loss statements,

and income distribution statements;

6. Loan records from any source whatsoever and payments relating thereto, as well

as loan applications, financial statements, and documents related to the

attainment of loans;

7. Address and/or telephone records reflecting names, addresses, and/or telephone

numbers;

8. Property records including documents related to the purchase and sale of real

estate;

9. Records of mailbox or drop box rentals;

10. Records of storage rentals;

11. Rental or lease agreements of real property, autos, electronics, equipment, and

machinery;

12. As used above, the terms records, documents, or statements include records,

documents, or statements created, modified, or stored in any form.

13. In searching for data capable of being read, stored or interpreted by a computer,

law enforcement personnel executing this search warrant will employ the

following procedure:

a. Upon securing the premises, law enforcement personnel trained in searching and seizing computer data (the "computer personnel") will make an initial review of any computer equipment and storage devices to determine whether these items can be searched on-site in a reasonable amount of time and without jeopardizing the ability to preserve the data.

b. If the computer equipment and storage devices cannot be searched on-site in a reasonable amount of time, then the computer personnel will determine whether it is practical to copy the data during the execution of the search in a reasonable amount of time without jeopardizing the ability to preserve the data.

c. If the computer personnel determine it is not practical to perform an on-site search or make an on-site copy of the data within a reasonable amount of time, then the computer equipment and storage devices will be seized and transported to an appropriate law enforcement laboratory for review. The computer equipment and storage devices will be reviewed by appropriately trained personnel in order to extract and seize any data that falls within the list of items to be seized set forth herein.

d. In searching the data, the computer personnel may examine all of the data contained in the computer equipment and storage devices to view their precise contents and determine whether the data falls within the items to be seized as set forth herein. In addition, the computer personnel may search for and attempt to recover "deleted," "hidden" or encrypted data to

determine whether the data falls within the list of items to be seized as set forth herein.

e.  If the computer personnel determine that the data does not fall within any of the items to be seized pursuant to this warrant or is not otherwise legally seized, the government will return these items within a reasonable period of time not to exceed 60 days from the date of seizure unless further authorization is obtained from the court.

14. In order to search for data that is capable of being read or interpreted by a computer, law enforcement personnel will need to seize the following items, subject to the procedures set forth above:

a.  Any computer equipment and storage device capable of being used to commit, further or store evidence of the offense listed above;

b.  Any computer equipment used to facilitate the transmission, creation, display, encoding or storage of data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices, and optical scanners;

c.  Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, and personal digital assistants;

d.  Any documentation, operating logs and reference manuals regarding the operation of the computer equipment, storage devices or software;

e.  Any applications, utility programs, compilers, interpreters, and other

software used to facilitate direct or indirect communication with the

computer hardware, storage devices or data to be searched;

f.  Any physical keys, encryption devices, dongles and similar physical items

that are necessary to gain access to the computer equipment, storage

devices or data; and

g.  Any passwords, password files, test keys, encryption codes or other

information necessary to access the computer equipment, storage devices

or data.



IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

IN THE MATTER OF THE SEARCH OF    )
                                  )
PREMISES KNOWN AS                 )
25758 SOUTH 201ST WEST AVENUE     )    **SEALED** CASE NO.
KELLYVILLE, OKLAHOMA              )

UNITED STATES OF AMERICA'S RESPONSE TO MOVANT'S
MOTION FOR COPY OF SWORN TESTIMONY,
APPLICATION FOR SEARCH
WARRANT AND RETURN OF CERTAIN SEIZED ITEMS

The United States, by its Assistant United States Attorney Melody Noble Nelson,

requests that the Court deny Movant's Motion, based on the following arguments and

authorities.

I.    **The Application for Search Warrant and Sworn Testimony in support of the
      Application should remained sealed.**

Movant, Lindsey Springer, requests release of all sworn testimony and the application

considered by this Court in issuing the search warrant served upon him at the property known

as "25758 South 201st West Avenue, Kellyville, Oklahoma". This information should not

be provided to Movant because the United States has a compelling government interest

justifying the sealing of the search warrant affidavits until the conclusion of the investigation.

"[There is] no right of access to search warrant materials while a pre-indictment

investigation is under way." *Times Mirror Co. v. United States*, 873 F.2d 1210, 1211 (9th Cir.

1989). Although there is a common law right of access to court documents, this presumption

has not applied to materials properly under seal. *In the Matter of the Search of 1638 E. 2nd*

EXHIBIT

2

#215

Volume I - VII of III - 482

*Street, Tulsa Oklahoma v. United States*, 993 F.3d 773, 775 (10th Cir. 1993) (internal

citations omitted.) "[T]here is no right of access to documents which have traditionally been

kept secret for important policy reasons." *Times Mirror Co.* at 873 F.2d 1219.

This search warrant was issued only after an ex parte application by the Government

and in camera consideration by this Court. This Court determined sufficient reason existed

to keep the warrant materials under seal. "The process of disclosing information to a neutral

magistrate to obtain a search warrant [therefore] has always been considered an extension

of the criminal investigation itself. It follows that the information disclosed to the magistrate

in support of the warrant request is entitled to the same confidentiality accorded to other

aspects of the criminal investigation." *Times Mirror Co.*, 873 F.2d at 1214. The Court, in

*Times Mirror Co.*, recognized the importance that search warrant materials remain

inaccessible while a pre-indictment investigation is ongoing. *See, Matter of the Search of

Flower Aviation of Kansas, Inc.* 789 F. Supp. 366, 368 (D.Kan. 1992).

Often, a party providing information for an affidavit for a search warrant is protected

by the "informer's privilege". Under this privilege, "the state is normally entitled to refuse

to disclose the identity of the person who has furnished information relating to an

investigation of a possible violation of law." *Hoffman v. Reali*, 973 F.2d 980, 987 (1st Cir.

1992). However, this privilege is not absolute. If the party seeking disclosure makes a

proper showing of need, the privilege will give way. It will yield when " the identification

of the informant or of a communication is essential to a balanced measure of the issues and

2

Case 4:09-cr-43    Document 37-2    Filed 04/13/2009    Page 37 of 44

the fair administration of justice. The party opposing the privilege may overcome it upon showing his need for the information outweighs the government's entitlement to the privilege." *Doe v. Local 1942, IBEW*, 870 F.2d 368, 372-73 (7th Cir. 1989).

Movant has not established that his need for the affidavit or for sworn testimony is essential to fair justice. As of the date of this Response, Movant is not the subject of a criminal indictment. At this early stage of the investigation, the Government's need to protect informers outweighs Movant's need for the information. The informers' privilege is stronger since Movant's motion is civil in nature and the constitutional guarantees assured to criminal defendants are inapplicable. *See, Matter of Search of 1638 E. 2nd Street, Tulsa, Okl.*, 993 F.2d 773,775 (10th Cir. 1993) citing *Doe*, 870 F.2d at 372.

Movant has failed to allege any facts that would warrant unsealing the affidavit in a ongoing investigation case where the government is asserting an informer privilege.

## II.  Movant is not entitled to the return of the cash and car title seized during the execution of the search warrant.

Movant has requested this Court order the Government return cash and a car title seized pursuant to the search warrant executed at his property. Requests for return of property taken pursuant a search warrant are governed by FED. R. CRIM. P. 41(g). Rule 41(g) provides,

> A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return. The motion must be filed in the district where the property was seized. The court must receive evidence on any factual issue necessary to decide the motion. If it grants the motion, the court must return the property to the movant, but may impose

3

reasonable conditions to protect access to the property and its use in later proceedings.

Actions for return of property are governed by equitable principles which should be undertaken with "caution and restraint." *Floyd v. United States*, 860 F.2d 999, 1003 (10th Cir. 1988).[1]   Therefore, a district court may assume jurisdiction over a preindictment Rule 41(g) motion if a movant demonstrates that being deprived of actual possession of the seized property causes irreparable injury and must be otherwise without adequate remedy at law. *Floyd* at 860 F.2d 1003.   However, "the mere threat of imminent indictment does not establish irreparable injury as required for a motion under Rule 41(e)." *Blinder , Robinson & Co. v. United States (In re Matter of Search of 6455 South Yosemite, Englewood, Colo.)*, 897 F.2d 1549, 1557 (10th Cir. 1990).

Movant fails to establish that he will be irreparably harmed if the money and title are not returned to him immediately.   In addition, this evidence is needed to continue the investigation.

The elements of 26 U.S.C. § 7201 are 1) the existence of a tax deficiency, 2) an affirmative act constituting an evasion or attempted evasion of the tax, and 3) the defendant acted willfully. *United States v. Townsend*, 31 F.3d 262, 266 (5th Cir. 1994) citing *Sansone v. United States* 380 U.S. 343, 351 (1965), *United States v. Wisenbaker*, 14 F.3d 1022, 1024

---

[1]Effective December 1, 2002, Rule 41 was amended and reorganized.  What was formerly Rule 41(e) was changed to Rule 41(g) with minor stylistic changes.  Most of the cases cited by the Government were decided prior to the amendment and reorganization.  Therefore, the cited opinions will refer to Rule 41(e) instead of Rule 41(g).

4

(5th Cir. 1994). Dealing in cash has been held as evidence of an affirmative act for purposes

of tax evasion, 26 U.S.C. § 7201. *See, United States v. Daniel*, 956 F.2d 540, 543 (6th Cir.

1992). Therefore, the cash seized from Movant's home may constitute evidence should the

Government file criminal charges against Movant.

Movant requests his car title be returned. However, Movant has failed to allege how

the Government's retention of his car title will cause him irreparable harm. Movant currently

has four automobiles and two motor homes in his possession, therefore, he will have

transportation even if he does not have the original title to his new Lexus automobile.

In addition, evidence that shows any act taken by Movant in order to mislead or

conceal funds from the Government to avoid paying taxes could be used as an affirmative

act constituting evasion. *See, United States v. Voigt*, 89 F.3d 1050, 1090 (3rd Cir. 1996).

Accordingly, the title of Movant's recent car purchase is important as potential evidence

should the Government file charges.

Movant has not established that he will be irreparably harmed if his cash and car title

are not returned to him. Further, the cash and car title are needed in the event the

Government files criminal charges in this case. Therefore, the Government requests the

Court deny his request for return of his property.

**Conclusion**

Movant is not entitled to the affidavit and sworn statements in support of search

warrant sealed by this Court. The Government's interest in its ongoing investigation and the

5

protection of its informants outweigh Movant's interest in the affidavit and sworn statements

in support of search warrant.

In addition, Movant has failed to establish irreparable harm if his cash and car title are

not returned. Therefore, his Motion for return of these items should be denied.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney

MELODY NOBLE NELSON, OBA #16467
Assistant United States Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119-1013
(918)382-2700

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of October, 2005, I served the foregoing
document by postage paid U.S. Mail, who are not registered participants of the ECF
System:

Lindsey K. Springer
5147 South Harvard, #116
Tulsa, Oklahoma 74135

MELODY NOBLE NELSON

6



Received

OCT 3 1 2005

# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

In the Matter of the Search of

"Premises known as
25758 South 201st West Avenue
Kellyville, Oklahoma"

) SEALED Case No.
)
)    [UNDER SEAL]
)

## ORDER

Movant's Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance

of Search Warrant (2) The Application for the Search Warrant and (3) Return of Certain

Property Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure, is

before the Court for consideration. The motion concerns a search warrant issued in an on-

going criminal investigation. The application for the warrant and the affidavit in support of

the application were ordered sealed by the Court.

Movant asserts that the warrant was served on him at the address listed on the

warrant and that he was provided with an inventory of the items seized pursuant to the

warrant. Movant contends he is entitled to the application for the warrant and the sworn

testimony the Court considered in issuing the warrant because without that information the

warrant violates Movant's Fourth Amendment rights and also because he needs the

information to determine if items outside the scope of the warrant were seized. Movant

also contends that there was no basis for the seizure of currency and car title(s) and seeks

their return.

Initially the Court notes that Movant's motion fails to establish his lawful personal

interest in the property searched or the items seized which provides an independent basis

to deny the motion. Even assuming that Movant has a lawful personal interest, the law

EXHIBIT

3

does not support the relief requested. There is no right to access to the application or affidavit in support of a search warrant during an on-going investigation. *Matter of Search of 1638 E. 2nd Street, Tulsa, Okl.*, 993 F.2d 773 (10th Cir. 1993); *Times Mirror Co. v. U.S.*, 873 F.2d 1210 (9th Cir. 1989). If the investigation results in a criminal prosecution, access to those materials may be sought in those proceedings. Movant's motion is DENIED as to (1)Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant, and (2) The Application for the Search Warrant.

Movant's request for the return of the seized currency and car title(s) is also insufficient. Such motions are best deferred until the completion of the criminal investigation unless irreparable harm will occur during the delay. *First Nat. Bank of Tulsa v. U.S. Dept. of Justice*, 965 F.2d 217 (10th Cir. 1989). Here, Movant has not only failed to establish his lawful personal interest in the seized items, he has also failed to establish irreparable harm. The motion for the return of the currency and the car title(s) is, therefore, DENIED WITHOUT PREJUDICE.[1]

SO ORDERED this 28th day of October, 2005.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

---

[1] If any subsequent proceedings arise concerning the currency or car title(s) the Government should address why its interests would not be fully met by making copies of the items for use in its investigation and returning these apparently non-contraband items to the lawful owner.

2

Case 4:09-cr-43   Document 37-2   Filed 04/13/2009   Page 43 of 44
Appellate Case: 10-5057   Document: 01018464267   Date Filed: 07/26/2010   Page: 490
Case                    *SEALED*   Document 301   Filed in USDC ND/OK on 07/20/2006   Page 1 of 2

# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

In the Matter of the Search of        )
                                      )   Case No.
"Premises known as                    )
25758 South 201st West Avenue         )
Kellyville, Oklahoma"                 )   [UNDER SEAL]

## ORDER

The Motion to Unseal Documents [Dkt. 285] filed by the United States is before the

Court for decision. A response to the motion [Dkt. 286] was filed by Mr. Lindsey Springer.

The motion requests that the Court unseal: Movant's Motion for (1) Copy of All Sworn

Testimony Court Considered in Issuance of Search Warrant (2) the Application for the

Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search

Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the United States of America's

Response to Movant's Motion for Copy of Sworn Testimony, Application for Search

Warrant and Return of Certain Seized Items [Dkt. 215]; and the Court's Order of October

28, 2005 [Dkt. 227], for use in a civil case, Case No. 06-CV-156-TCK-FHM.

After consideration of the papers on file, the Court concludes that the motion should

be granted as set forth herein. The documents sought to be unsealed were served on the

United States and Mr. Springer so they are aware of the contents of those documents and

making the documents available for use in the pending civil case, No. 06-CV-156-TCK-

FHM, would not jeopardize any ongoing investigation.

The Court, therefore, GRANTS the United State's Motion to Unseal Documents [Dkt.

285] to the following extent: Both the United States and Mr. Springer are hereby

authorized to publicly disclose, including public filings in Case No. 06-CV-156-TCK-FHM,

c/USA & Springer

the Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant (2) the Application for the Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the United States of America's Response to Movant's Motion for Copy of Sworn Testimony, Application for Search Warrant and Return of Certain Seized Items [Dkt. 215]; and the Court's Order of October 28, 2005 [Dkt. 227].

The Court Clerk for the United States District Court for the Northern District of Oklahoma is hereby authorized to provide to the United States and to Mr. Springer copies of the Motion for (1) Copy of All Sworn Testimony Court Considered in Issuance of Search Warrant (2) the Application for the Search Warrant and (3) Return of Certain Property Either Not Items Listed in Search Warrant or Clearly Not Subject to Seizure [Dkt. 198]; the United States of America's Response to Movant's Motion for Copy of Sworn Testimony, Application for Search Warrant and Return of Certain Seized Items [Dkt. 215]; and the Court's Order of October 28, 2005 [Dkt. 227]. The Court Clerk is also directed to provide a copy of this Order to the United States and to Mr. Springer.

However, the Court will not order the Court Clerk to unseal the documents in the Court's filing system as the documents are filed in the general sealed grand jury file.

SO ORDERED this  20th  day of  JULY , 2006.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 09-CR-043-SPF |
| | ) |
| LINDSEY KENT SPRINGER, and | ) |
| OSCAR AMOS STILLEY, | ) |
| | ) |
| Defendants. | ) |

## UNOPPOSED MOTION FOR LIMITED UNSEALING OF SEARCH WARRANT AFFIDAVIT AND MATERIALS FROM CASE 03-CR-00055-CVE

COMES NOW, the United States of America, by and through its attorneys, David E. O'Meilia, United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke, Assistant United States Attorney, and Charles A. O'Reilly, Trial Attorney, United States Department of Justice, and moves this Honorable Court to issue its Order directing that, pursuant to the Protective Order issued by the Court (Doc. 26), the Government may disclose to the Defendants (and to their advisory counsel) the probable cause affidavit and application in "the matter of the Premises Known as 25758 South 201st West Avenue, Kellyville, Oklahoma" (Case No. 05-SM-1), and the sealed materials from *United States v. Eddy Lynn Patterson and Judith Ray Patterson*, 03-CR-00055-CVE. By electronic email received this date, Defendants Springer and Stilley advised that they did not oppose the Government's proposed motion.

This motion is made to ensure that the Government can comply with its pre-trial discovery obligations.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney


*/s/ Kenneth P. Snoke*
KENNETH P. SNOKE, OBA #08437
Assistant United States Attorney
CHARLES A. O'REILLY, CBA #160980
Trial Attorney
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of April, 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lindsey K. Springer
Pro Se Defendant

Robert Scott Williams
Stand-by Counsel for Defendant Springer

Oscar A. Stilley
Pro Se Defendant

C. Robert Burton, IV
Stand-by Counsel for Defendant Stilley

 /s/ Kenneth P. Snoke
Assistant United States Attorney

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Case No. 09-CR-043-SPF** |
| | ) |
| **LINDSEY KENT SPRINGER, and** | ) |
| **OSCAR AMOS STILLEY,** | ) |
| | ) |
| **Defendants.** | ) |

### NOTICE RE GOVERNMENT MOTION FOR LIMITED UNSEALING OF SEARCH WARRANT AFFIDAVIT AND MATERIALS FROM CASE 03-CR-00055-CVE

COMES NOW, the United States of America, by and through its attorneys, David E. O'Meilia, United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke, Assistant United States Attorney, and Charles A. O'Reilly, Trial Attorney, United States Department of Justice, to advise this Honorable Court that, subsequent to the Government's filing of Unopposed Motion for Limited Unsealing of Search Warrant Affidavit and Materials from Case 03-CR-00055CVE (Docket #39), Defendant Lindsey Springer sent an electronic mail communication received at 3:42 p.m. today (Attachment A) stating his apparent objection to the Government's Unopposed Motion for Limited Unsealing of Search Warrant Affidavit and Materials from Case 03-CR-00055-CVE.

By previous electronic mails received earlier on this date from Defendants Springer and Oscar Stilley, Defendants each advised that they did not oppose the Government's proposed motion.  Attachment B.  This notice is made to advise the Court that Defendants' earlier acquiescence to the Government's proposed motion appears to have been rescinded.

Respectfully submitted,

DAVID E. O'MEILIA
United States Attorney

*/S/ Charles A. O'Reilly*
KENNETH P. SNOKE, OBA #08437
Assistant United States Attorney
CHARLES A. O'REILLY, CBA #160980
Trial Attorney, United States Department of Justice
110 West 7th Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

2

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th day of April, 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lindsey K. Springer
Pro Se Defendant

Robert Scott Williams
Stand-by Counsel for Defendant Springer

Oscar A. Stilley
Pro Se Defendant

C. Robert Burton, IV
Stand-by Counsel for Defendant Stilley

/S/ Charles A. O'Reilly
Assistant United States Attorney

3

**Hall, Kathie (USAOKN)**

| | |
|---|---|
| **From:** | Lindsey Springer [lindsey@mindspring.com] |
| **Sent:** | Wednesday, April 15, 2009 3:42 PM |
| **To:** | Hall, Kathie (USAOKN); oscar@oscarstilley.com |
| **Cc:** | robtBurton@aol.com; law@trsvlaw.com; Snoke, Ken (USAOKN) |
| **Subject:** | Re: Motions |
| **Attachments:** | ole0.bmp |

Dear Ms. Hall, Lindsey Springer here.  I would not agree to keep something unsealed private.   I will agree to keep something sealed private.   The trial of this case will be a public trial and I will always side on unsealed means public and sealed means private. As you know I have not agreed to your terms on Doc # 25 or the Court's Order # 26.  I plan on filing objection eventually.  I need the information of both the affidavit, exparte hearing, and the Patterson sealed documents to present a Motion for a Franks Hearing.  If the Court asks me to file that under seal I will.  If not, then it will be a public document. Thank you

----- Original Message -----
**From:** Hall, Kathie (USAOKN)
**To:** lindsey@mindspring.com ; oscar@oscarstilley.com
**Cc:** robtBurton@aol.com ; law@trsvlaw.com ; Snoke, Ken (USAOKN)
**Sent:** Wednesday, April 15, 2009 11:06 AM
**Subject:** Motions

# Mr. Springer and Mr. Stilley:

We have decided to also incorporate the "Patterson" material in the Motion to Unseal Search Warrant Affidavit that we are preparing to file today, therefore the Judge may rule on both matters at once.  The unsealing of both of these matters would be subject to the Protective Order (Doc. No. 26).

Again, please advise your approval, or disapproval, by return email to me as soon as possible.

Thank you.

*Kathie M. Hall, ACP*

Legal Assistant, Criminal Division

UNITED STATES ATTORNEY'S OFFICE

110 West Seventh Street, Suite 300

Tulsa, Oklahoma   74119

918.382.2700   X3338

918.560.7954   Fax



*This communication is intended for the sole use of the individual to whom it is addressed. This communication is confidential and may contain information that is privileged and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone and return the communication at the address above via the U.S. Postal Service. Thank you.*

**Hall, Kathie (USAOKN)**

| | |
|---|---|
| **From:** | Oscar Stilley [oscar@oscarstilley.com] |
| **Sent:** | Wednesday, April 15, 2009 11:39 AM |
| **To:** | lindsey@mindspring.com; Hall, Kathie (USAOKN) |
| **Cc:** | robtBurton@aol.com; law@trsvlaw.com; Snoke, Ken (USAOKN); O'Reilly, Charles A. (TAX) |
| **Subject:** | U.S. v. Springer, Stilley, Case No. 09-CR-043-SPF, motion to unseal |

I agree with Lindsey.

Oscar Stilley

os

Oscar Stilley, Attorney at Law¹
7103 Race Track Loop
Fort Smith, AR 72916
(479) 996.4109 phone
(479) 996.3409 fax
oscar@oscarstilley.com
www.oscarstilley.com

IMPORTANT: The information contained in this email message is intended only for the individual/entity named herein. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and destroy all originals and copies of this message. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege.  Footnote 1:  [Suspended from Arkansas courts pending disbarment, principally for the alleged offense of criticizing the government. Suspended in some but not all other jurisdictions to which Attorney is admitted. Ask for details, it's complicated.]

---

**From:** lindsey@mindspring.com [mailto:lindsey@mindspring.com]
**Sent:** Wednesday, April 15, 2009 11:05 AM
**To:** Hall,Kathie (USAOKN); Oscar Stilley
**Cc:** robtBurton@aol.com; law@trsvlaw.com; Snoke,Ken (USAOKN); O'Reilly,Charles A. (TAX)
**Subject:** Re: U.S. v. Springer, Stilley, Case No. 09-CR-043-SPF

Dear Ms. Kathie Hall, thanks for the heads up.  You are cleared to email me.  Also, I have already filed a Motion to Unseal and would guess your filing no opposition would be appropriate.  You do whatever you wish but sounds like your motion and my motion are the same.  I am asking for the transcript of the exparte meeting with Ms. Nelson and Magistrate McCarthy dated 9.15.05. along with the affidavit.  I would not have any opposition to your motion as well.   Hope you have a good day.  Lindsey Springer

-----Original Message-----
From: "Hall, Kathie (USAOKN)"
Sent: Apr 15, 2009 9:39 AM
To: lindsey@mindspring.com, oscar@oscarstilley.com
Cc: robtBurton@aol.com, law@trsvlaw.com, "Snoke, Ken (USAOKN)" , "O'Reilly, Charles A. (TAX)"
Subject: U.S. v. Springer, Stilley, Case No. 09-CR-043-SPF

# Mr. Springer and Mr. Stilley:

# We are planning to file a *Motion to Unseal Search Warrant Affidavit* and *Proposed Order* this date, regarding the search warrant affidavit and

1

ATTACHMENT B

application in the "matter of the Premises Known as 25758 South 201st West Avenue, Kellyville, Oklahoma" case number 05-SM-1.

We assume that you will have no objection to this filing.  Please advise your approval, or disapproval, by return email.

Thank you.

*Kathie M. Hall, ACP*

Legal Assistant, Criminal Division

UNITED STATES ATTORNEY'S OFFICE

110 West Seventh Street, Suite 300

Tulsa, Oklahoma   74119

918.382.2700   X3338

918.560.7954   Fax



*This communication is intended for the sole use of the individual to whom it is addressed.  This communication is confidential and may contain information that is privileged and exempt from disclosure under applicable law.  If you are not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately by telephone and return the communication at the address above via the U.S. Postal Service.  Thank you.*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,            )
                                     )
                  Plaintiff,         )
                                     )
v.                                   )        Case No.  09-CR-043-SPF
                                     )
LINDSEY KENT SPRINGER,               )
OSCAR AMOS STILLEY,                  )
                                     )
                  Defendants.        )

## ORDER FOR MOTION HEARING

Before the court is the United States' Unopposed Motion for Limited Unsealing of Search Warrant Affidavit and Materials from Case 03-CR-00055-CVE, filed on April 15, 2009 (doc. no. 39).

The motion is set for hearing on April 22, 2009, at 10:00 a.m., in Courtroom #4.

DATED April 16, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p008.wpd

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.   09-CR-043-SPF** |
| | ) | |
| **LINDSEY KENT SPRINGER,** | ) | |
| **OSCAR AMOS STILLEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## UNITED STATES' CONSOLIDATED RESPONSE TO DEFENDANTS' PRETRIAL MOTIONS

The United States of America, by and through its attorneys, David E. O'Meilia,

United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke,

Assistant United States Attorney, and Charles A. O'Reilly, Trial Attorney, United States

Department of Justice, hereby responds in opposition to Defendant Lindsey Kent

Springer's pretrial motions dated March 18, 2009: Motion for, and Memorandum in

Support of Motion for, In Camera Review of Fifth Amendment Proffer (Docket #6 and

#7); Motion for Bill of Particulars (Docket #8).  The Government also responds in

opposition to Defendant Springer's Motion for Clarification with Respect to Specific

Legal Authority for Appointment of Judge in Trial of Instant Case (Docket #30), Motion

for Protective Order Pending Resolution of Prospective *Franks* Hearing (Docket #35),

and to Defendant Oscar Amos Stilley's Motion for Bill of Particulars (Docket #33).

Finally, the Government responds to Defendants' Motions for Electronic Access

(Docket #5 and #28), and Defendant Springer's Motion to Unseal in 03-CR-55E

(Docket #36) and Motion to Unseal Affidavit and Transcript of Meeting on September

15, 2005 (Docket #37).

    A.    <u>Motions for Electronic Access - Docket #5 and #28</u>

By Order dated March 30, 2009, Magistrate Judge Cleary found that Defendant

Springer and Stilley each waived legal representation and elected to proceed pro se.

However, despite this order, each defendant in pleadings continues to assert that he is

appearing before the Court "by limited special appearance, and not a general appearance."

Defendant Stilley explains the rationale for his "limited special appearance" as being

done because he is challenging jurisdiction, and questions who the plaintiff is in this

matter.  Docket #33, fn. 1.

The United States is uncertain what significance Defendants allege by their

apparent limitations on appearance, but would ask the Court to ascertain whether or not

each Defendant is appearing before the Court.

The Court has already granted Defendants' motions for electronic access.  The

Government has no opposition Defendants continued electronic access, so long as

Defendants Springer and Stilley continue to represent themselves.  However, the

Government does request that the Court conduct a *Faretta* inquiry to satisfy itself with

respect to Defendants' pro se representation.

-2-

B.    Motion for In Camera Review of Fifth Amendment Proffer
            (Docket #6 and #7)

Defendant Springer's Motion for In Camera Review of Fifth Amendment Proffer,

and Memorandum in support thereof, appears to be an assertion that the Fifth Amendment

of the United States Constitution "protects [him] from having to answer the charges

alleged against him in the charges dated March 10, 2009."  Defendant's Memorandum in

Support of Motion for In Camera Review of Fifth Amendment Proffer [Document #7],

p.14.  Defendant also appears to be asserting that these same Fifth Amendment

protections sanction Defendant's failure to file federal income tax returns.  To the extent

Defendant makes these assertions, each is frivolous.  The Government also opposes

Defendant's request to be heard in camera.

With respect to having a Fifth Amendment right not to file, this position has been

universally rejected by Courts.  It is not criminal to earn income; therefore, the

requirement to file a federal income tax return does not compel an individual to testify

against oneself, in violation of the Fifth Amendment of the United States Constitution.

Defendant Springer's citations notwithstanding, in *United States v. Sullivan*, the Supreme

Court held that the privilege against compulsory self-incrimination is not a defense to

-3-

prosecution for the complete failure or refusal to file a tax return.  274 U.S. 259, 263

(1927).  The Court, stated, however, that the privilege could be claimed against specific

disclosures sought on a return:

> If the form of return provided called for answers that the defendant was
> privileged from making he could have raised the objection in the return, but
> could not on that account refuse to make any return at all.

The Court further stated, "It would be an extreme if not an extravagant application of the

Fifth Amendment to say that it authorized a man to refuse to state the amount of his

income because it had been made in crime." *Id*. at 263-64; see *Garner v. United States*,

424 U.S. 648, 650 (1976).

C.  <u>Motion for Clarification with Respect to Specific Legal Authority for
Appointment of Judge in Trial of Instant Case (Docket #30)</u>

By this motion, Defendant Springer appears to challenge the authority of District

Court Judge Stephen P. Friot to conduct the trial of this matter.  Title 28, United States

Code Section 292(b) provides that the Chief Judge of the Tenth Circuit "may, in the

public interest, designate and assign temporarily any district judge of the circuit to hold a

district court in any district within the circuit."

The Government directs Defendant Springer's attention to the Designation of

District Judges for Service in Other Districts Within the Tenth Circuit order dated

December 30, 2008, signed by the Honorable Robert H. Henry, Chief Judge, United

States Court of Appeals for the Tenth Circuit.  This order designates and assigns the

Honorable District Judge Stephen P. Friot to the Northern District of Oklahoma.

-4-

Attachment A.  The Government opposes Defendant Springer's apparent assertion that the Honorable District Court Judge Friot cannot try this case.

>    D.    Motions For Bill of Particulars (Docket # 8 and #33)

Plaintiff opposes Defendants' Motions For Bill of Particulars, especially where, as here, made prior to any attempt at discovery.[1]  Defendant Springer's Motion for Bill of Particulars (which Defendant Stilley incorporates "as if set forth word for word . . ."), covers two broad areas of inquiry.  The first requests information related to the grand jury that returned the Indictment.  The second area of inquiry covers the indictment itself.

The function of a bill of particulars is very limited as to both scope and purpose.  The motion for a bill of particulars is addressed to the sound discretion of the trial court, and the trial court's ruling thereon will not be disturbed in the absence of an abuse of that discretion.  *Wong Tai v. United States*, 273 U.S. 77 (1927); *United States v. Ivy*, 83 F.3d 1266, 1281 (10th Cir. 1996); *United States v. Kunzman*, 54 F.3d 1522, 1526 (10th Cir. 1995); *United States v. Barbieri*, 614 F.2d 715, 719 (10th Cir. 1980).

With respect to Defendants' challenge to the grand jury, the bill of particulars is not the appropriate vehicle for his challenge the grand jury panel.[2]  Through his Motion

---

[1]    Defendant Springer filed his Motion for Bill of Particulars, which Defendant Stilley joined, prior to arraignment.  Defendant Stilley filed his Motion for Bill of Particulars prior to examining discovery, which was made available April 10, 2009.  As of the date the Government filed this response, neither Defendant had obtained the discovery made available.

[2]    Defendant Springer separately challenged the grand jury selection process in Case No. 09-MC-01, filed in District Court, and Tenth Circuit Case No. 09-5017, each of which presently are sealed.

-5-

for Bill of Particulars, Defendant Springer asks the Court to sanction a fishing expedition into the grand jury impanelment. Section 1867 of Title 28 of the United States Code provides that Section 1867 is:

> (e) . . . the exclusive means by which a person accused of a Federal crime, the Attorney General of the United States or a party in a civil case may challenge any jury on the ground that such jury was not selected in conformity with the provisions of this title. Nothing in this section shall preclude any person or the United States from pursuing any other remedy, civil or criminal, which may be available for the vindication or enforcement of any law prohibiting discrimination on account of race, color, religion, sex, national origin or economic status in the selection of persons for service on grand or petit juries.

Section 1867 further provides, in relevant parts:

> (a)     In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

> (d)     Upon motion filed under subsection (a), (b), or (c) of this section, containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk, if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury, the court shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title.

With respect to Defendant Springer's request for a bill of particulars respecting the

Indictment, it is well established that a bill of particulars is only appropriate in a limited

number of cases where a defendant has not been adequately informed of the nature of the

charges against him, thus barring him from making a reasonable defense and from

protecting himself against a second prosecution for the same basic offense.  In cases

where the defendant has been apprised of the basic nature of the case against him prior to

trial, however, a bill of particulars should not be granted.  *United States v. Ivy*, *supra*, at

1281, *quoting United States v. Levine,* 983 F.2d 165, 166-67 (10th Cir. 1992); *United*

*States v. Barbieri, supra*; *United States v. Addonizio*, 451 F.2d 49, 58-60 (3rd Cir.), *cert.*

*denied*, 405 U.S. 936 (1972).

It is definitely not the function or purpose of a bill of particulars to compel the

government to disclose, in advance of trial, the evidence by which it will attempt to prove

the charges alleged in the indictment.  *United States v. Ivy, supra; United States v. Levine,*

*supra; United States v. Barbieri, supra*.  The charges in the indictment are clear.

As succinctly stated by Judge Frank in *United States v. Lebron,* 222 F.2d 531, 535-

36 (2d Cir.), *cert. denied*, 350 U.S. 876 (1955), in ruling against the granting of a bill of

particulars:

> Surprise and prejudice are claimed in the judge's denial of motions for bills
> of particulars.  The indictment, however, was sufficiently specific to apprise
> defendants of the nature of the charge against them and to permit them to
> prepare to adequately for trial.  The defendants in the various questions
> were, in effect, making an effort to obtain from the government a statement

-7-

of its evidence . . . . [T]hat practice is not required by the Federal Rules of Criminal Procedure.  Rule 7(f) . . . .

It is important to bear in mind that one of the basic reasons that a bill of particulars is not favored by the courts is because the government would be required to strictly adhere to the answers filed in response to a motion for a bill of particulars, should a response be ordered.  This would work a substantial hardship on the government during the presentation of its case, and could well mean that the length of the trial would be extended.  The Tenth Circuit has taken the position that a variance in proof from a bill of particulars, causing prejudice to a defendant, can cause a reversal.  *United States v. Francisco*, 575 F.2d 815 (10th Cir. 1978); *United States v. Buzzard*, 540 F.2d 1383 (10th Cir. 1978)

The Defendants have been very adequately informed of the nature of the charges against them so that they can prepare an intelligent defense, and also guard against any subsequent prosecution for the same acts.

The Indictment in this case, coupled with the routine discovery, will provide the Defendants with a plethora of information detailing the precise nature of the charges against them.  *See United States v. Ivy, supra; United States v. Sturmoski*, 971 F.2d 452 (10th Cir. 1992); *United States v. Barbieri, supra*.

The Defendants are charged in this case with conspiring to defraud the Internal Revenue Service and with tax evasion with respect to Defendant Springer's federal income taxes for the years 2000, 2003 and 2005.  Defendant Springer is also charged with

-8-

willfully failing to file his 2002 and 2004 federal income tax returns.  Since Defendant

Stilley practiced as a criminal defense attorney for more than a decade, until being

suspended from practice by the Supreme Court of Arkansas in 2007, and Defendant

Springer has assisted in the defense of numerous criminal tax cases during the past

decade, it is inconceivable that either would need a bill of particulars to understand what

is requested in Defendant Springer's motion.  For example, it is clear that Defendants

understand the terms "income", "earned", "filed", "return", "lawful government

functions", "others", etc.

Similarly, it is clear that Defendants understand what collectible coins are, what

the term "required by law" means, and that the law requires individuals who earn above a

specified amount of income to file a tax return each year.  Most of what Defendants

request is a "hodgepodge of tax protestor rhetoric, irrelevant platitudes, unsupported

assertions and legalistic gibberish."  *See Depew v. United States*, 50 F.Supp.2d 1009,

1014 (D. Colo. 1999).  As the district court judge stated recently in *United States v.*

*McCumber*, 2009WL700618 (D.Kan. March 17, 2009) (citations omitted):

> The purpose of a bill of particulars is to inform the defendant of the charges
> against him with sufficient precision to allow him to prepare his defense.  A
> bill of particulars is not necessary if the indictment sets forth the elements
> of the offense charged and sufficiently apprised the defendant of the
> charges' against him.  A bill of particulars is not a discovery device to
> obtain the government's evidence; instead, it is a device used to obtain the
> theory of the government's case where the indictment is too vague.
> Furthermore, where the government has provided discovery in abundance,
> defendants cannot assert that a bill of particulars is necessary because
> review of the documents would be copious or burdensome to conduct.

-9-

E.    Motion for Protective Order Pending Resolution
        of Prospective Franks Hearing (Docket #35)

Defendant Springer moves this Court[3] "to direct the United States Attorney's

Office for the Northern part of the United States' Oklahoma District to be temporarily

prohibited from releasing certain discovery at issue in this Court's Order dated April 2,

2008, docket  # 26, relating to the illegal search of Springer's Home location, pending the

outcome of any future Franks hearing pursuant to the Supreme Court's holding in Franks

v. Deleware [sic], 438 U.S. 154, 155 (1978) [footnote omitted]." Docket #35.

The crux of this motion appears to be that defendant Springer does not want the

Government to provide discovery to his co-defendant, Oscar Stilley, because defendant

Springer envisions, filing a motion to suppress the fruits of a search of his residence that

took place on September 16, 2005, pursuant to a federal search warrant.

Although defendant Springer admits, in his motion, that he has been offered

discovery by the Government in the case (as of April 10, 2009), he has not taken

advantage of that offer as of the date of this reply.  Nor has defendant Springer,

apparently, seen the affidavit and application for the search warrant issued on September

15, 2005.  By separate motion (Docket #39) the Government has moved for the limited

unsealing of that affidavit for purposes of providing it to the defendants in this case.

---

[3]Defendant Springer refers to the Court as "this 28 U.S.C. §116(a) United States District
Court."

Despite having no knowledge of the affidavit's contents, defendant Springer says

> There is no question that Meadors, Nelson, Horn and Shern,
> with others possibly, obtained the search warrant on
> September 15, 2005, with false and misleading testimony and
> affidavit(s). [Motion (doc. 35) at p.9]

Defendant Springer admits that he has not seen the affidavit for the search warrant, yet he contends that there were falsities in it, and says that he anticipates filing a motion to suppress the evidence taken in that search (presumably under the authority of *Franks v. Delaware*, 438 U.S. 154 (1978).  However, no such motion has been filed, and this motion pertains only to  whether or not the Government should be restrained from providing discovery to defendant Springer's co-defendant, Oscar Amos Stilley.

Defendant Springer does not indicate, in his motion, whether co-defendant Stilley agrees with this motion.  Both defendants, having requested discovery, were offered discovery (in CD/DVD form) as of April 10, 2009.  Irrespective of whether defendant Springer files a motion to suppress that evidence some time in the future, the Government believes that co-defendant Oscar Stilley is entitled to the discovery items being provided. Defendants Springer and Stilley are jointly charged in this Indictment with conspiracy, and defendant Stilley is also charged with aiding and abetting defendant Springer's tax evasion.  Therefore, it would appear that defendant Stilley is entitled to see the discovery–including items taken in the search of co-defendant Springer's residence pursuant to the search warrant on September 16, 2005–even if this Court should subsequently grant defendant Springer's yet to be filed motion to suppress the fruits of

-11-

that search. Defendant Springer has cited no authority abrogating the duty of the

Government under Rule 16, Federal Rules of Criminal Procedure and *Brady v. Maryland*,

373 U.S. 83 (1963), and progeny, to provide discovery to co-defendant Stilley.  Further,

even if defendant Springer's suppression motion is made, and is successful, those items

could be utilized in evidence, against co-defendant Stilley because he would not have

"standing" to suppress them.  *See:  Rakas v. Illinois*, 439 U.S. 128, 148 - 150 (1978);

*United States v. Beckstead*, 500 F.3d 1154, 1162-63 (10th Cir. 2007), *citing United States*

*v. Ladeaux*, 454 F.3d 1107, 1172 (10th Cir. 2006); *United States v. De Luca*, 269 F.3d

1128, 1131 (10th Cir 2001); *United States v. Hernandez*, 57 F.3d 895, 898 (10th cir. 1995);

and *United States v. Jones*, 44 F.3d 860, 871 (10th Cir. 1995).  Accordingly, defendant

Stilley has the right to see these items of discovery.

    For the foregoing reasons, the Government believes that no order should now be

issued directing the United States to cease turning over discovery to co-defendant Oscar

Stilley (or to defendant Springer, for that matter) pending a prospective motion to

suppress the fruits of the search, pursuant to a search warrant, of the residence of

defendant Springer on September 16, 2005.  To grant such an order would only delay the

trial in the case, and no doubt would provide a basis for defendants later claiming that the

Government withheld exculpatory or other discoverable evidence from co-defendant

Stilley, if not from defendant Springer.

-12-

F.   Motion to Unseal in 03-CR-55E (Docket #36)

Defendant Springer seeks to unseal the following docket entries in *United States v. Patterson*, 03-CR-55EA: 169, 173, 180, 181, 182, 183, 186, 188, 196 and 197.

Defendant Springer also seeks to unseal the transcript of the Sentencing Hearing.  After conferring with Assistant U.S. Attorney Douglas Horn, the United States sought the Court's authorization to provide the defendants with all sealed entries from *United States v. Patterson*, 03-CR-55EA, consistent with the Court's Protective Order (Docket #26) by Motion dated April 15, 2009.  Docket #39 and #40.

G.   Motion to Unseal Affidavit and Transcript of Meeting
       on September 15, 2005 (Docket # 37)

Defendant Springer seeks to unseal the affidavit submitted with the search warrant subsequently authorized by the Honorable Magistrate Judge Frank H. McCarthy.  As indicated by the Government's Motion for Limited Unsealing dated April 15, 2009 (Docket #39), the Government joins Defendant's motion to unseal the affidavit, subject to the restrictions imposed by Protective Order dated April 2, 2009 (Docket #26).  Docket #39 and #40.

The Government opposes Defendant's motion in so far as it attempts to unseal "the transcript or whatever recording made of the ex parte meeting between [Assistant U.S. Attorney Melody Noble] Nelson and the Honorable Magistrate Judge Frank H. McCarthy."  Defendant's Motion to Unseal Affidavit (Docket #37), p.1.  Defendant

-13-

provides no basis for disclosing this material, and the request is outside the Government's discovery obligations.

H.    <u>Conclusion</u>

For the foregoing reasons, the following motions should be denied: Defendant Springer's Motion for In Camera Review of Fifth Amendment Proffer (Docket #6 and #7); Defendants' Motions for Bill of Particulars (Docket #8 and #33); Defendant Springer's Motion for Clarification with Respect to Specific Legal Authority for Appointment of Judge in Trial of Instant Case (Docket #30); Defendant Springer's Motion for Protective Order Pending Resolution of Prospective Franks Hearing (Docket #35). With respect to Defendant Springer's Motion to Unseal in 03-CR-55E (Docket #36) and Motion to Unseal Affidavit and Transcript of Meeting on September 15, 2005 (Docket #37), should be denied as moot, in part, and otherwise denied.

Respectfully submitted,

DAVID E. O'MEILIA
UNITED STATES ATTORNEY


 /s/ Charles A. O'Reilly
CHARLES A. O'REILLY, CBA NO. 160980
Trial Attorney, Dept. of Justice
KENNETH P. SNOKE, OBA NO. 8437
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma  74119
(918) 382-2700

-14-

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of April 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lindsey Kent Springer
Defendant

Oscar Amos Stilley
Defendant

Robert Williams
Standby Counsel assigned to Lindsey Kent Springer

Charles Robert Burton, IV
Standby Counsel assigned to Oscar Amos Stilley.


*/s/ Charles A. O'Reilly*_____
Trial Attorney, Dept. of Justice

-15-

FILED

DEC 30 2008

ROBERT D. DENNIS, CLERK
U.S. DIST. COURT, WESTERN DIST. OF OKLA.
BY_____ DEPUTY

DOCKETED

# DESIGNATION OF DISTRICT JUDGES
## FOR SERVICE IN OTHER DISTRICTS
### WITHIN THE TENTH CIRCUIT

Misc # 23

Pursuant to the provisions of Title 28, United States Code § 292(b), I designate and assign the following United States District Judges in the Tenth Circuit to hold court in the districts listed opposite their names, from January 1, 2009, through December 31, 2009, and for any time in advance to prepare for the trial of cases, or as may be required to complete unfinished business:

James H. Payne – Western District of Oklahoma

Frank H. Seay – Northern and Western Districts of Oklahoma

Ronald A. White – Northern and Western Districts of Oklahoma

Claire V. Eagan – Eastern and Western Districts of Oklahoma

Gregory K. Frizzell – Eastern and Western Districts of Oklahoma

Terence C. Kern – Eastern and Western Districts of Oklahoma

Robin J. Cauthron – Eastern and Northern Districts of Oklahoma

Timothy D. DeGiusti – Eastern and Northern Districts of Oklahoma

Stephen P. Friot – Eastern and Northern Districts of Oklahoma

Joe Heaton – Eastern and Northern Districts of Oklahoma

Timothy Leonard – Eastern and Northern Districts of Oklahoma

Vicki Miles-LaGrange – Eastern and Northern Districts of Oklahoma

David L. Russell – Eastern and Northern Districts of Oklahoma

ATTACHMENT "A"

Lee R. West – Eastern and Northern Districts of Oklahoma

Copies of this designation shall be furnished to the designee Judge and Chief Judges and Clerks of the respective Districts.

12 - 30 - 2008
Date

Robert H. Henry, Chief Judge
United States Court of Appeals for
the Tenth Circuit

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

United States of America,

                              Plaintiff,        Case Number: 09-CR-043-SPF

vs.                                             Proceeding: Motion Hearing

Lindsey Kent Springer, Oscar Amos Stilley,      Date: 4-22-2009
                              Defendant(s).     Court Time: 10:00 a.m.

### MINUTE SHEET

Stephen P. Friot, U.S. District Judge        P. Lynn, Deputy Clerk        Tracy Washbourne, Reporter

Counsel for Plaintiff: Ken Snoke, Charles O'Reilly

Counsel for Defendants: Pro Se (Scott Williams, Robert Burton Stand By)


Minutes: Case called for Motion Hearing and Scheduling Conference.   Faretta colloquy made.
Discovery discussed.  Court approves pro se Defendants to bring in laptop computers if desired.
Motions addressed:

- #30 Motion for Clarification of Authority Granted.

- #39 Motion for limited unsealing of 03-cr-55 granted in part, denied in part, #36 Motion to unseal
  03-cr-55 granted in part, denied in part. All sealed materials in 03cr55 subject to protective order
  (doc #26). Govt to deliver legible copies of sealed documents which Govt asserts are not
  discoverable to Judge in OKC and detailed log of same (to include description of nature of
  document, date of document and identity of any signatories thereto) to Defendants by 4/30/09. Govt
  to produce discoverable sealed materials to Defendants with probable cause affidavit by 4/30/09.

- #37 Motion to unseal affidavit and transcript granted in part as to Affidavit of Agent Brian Shern,
  denied in part as to record of meeting, without prejudice.

- #35 Motion for Protective Order argued and taken under advisement.  Government's production of
  documents is stayed with respect to materials seized at Springer's house.  Springer is granted until
  4/27/09 to Reply in support of Motion #35.

- #6 Motion for in camera review of 5th amendment proffer argued and denied.

- #8 Motion for Bill of Particulars (Springer) and #33 Motion for Bill of Particulars (Stilley) argued
  and both denied without prejudice.

(Continued)

09-CR-43-SPF 4/22/09 Minutes continued

Scheduling discussed.

• Defendants to request R16(a)(1)(G) expert summary by 4/29/09

• Motions to Dismiss - any theory - 5/15/09, Response 6/1/09

• Motion to Suppress or for Franks hearing 6/1/09, Response 6/15/09

• Motion for Bill of Particulars 6/15/09, Response 7/1/09

• **Hearing on Motion for Franks issue and/or Suppress, if necessary, 7/9/09 at 9:00 am**

• Motion for Relief under R14 (sever) 8/3/09, Response 8/17/09

• Notice under R12.2 (Mental) 5/15/09

• Proposed Jury Instructions and Verdict forms (both sides) 8/3/09, Responses 8/17/09

• Motions to dismiss on any basis that could not have been reasonably anticipated or factually supported as of 5/15/09 to be filed by 8/3/09, Response 8/17/09

• Notice of Intent to use R404(b) Evidence 9/10/09, Response 9/21/09

• Motions in Limine 9/21/09, Response 10/5/09

• Trial Briefs, Agreed summary of Indictment (or separate proposed summaries), Motion under R17(b) (subpoena at government expense) 9/21/09

• **Pretrial Conference 10/21/09 at 10:00**

• **Trial set 10/26/09 at 9:30** and time excludable under Speedy Trial Act.

| Court Time |
| --- |
| 9:55-12:15 |
| 1:05-2:05 |
| 2:10-2:30 |
| 3'40" |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

      Plaintiff,

v.                       Case No. 09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

      Defendants.

SPRINGER'S REPLY TO UNITED STATES OPPOSITION TO PROTECTIVE ORDER

Lindsey K. Springer ("Springer") files his reply to the United States Attorney's Response in opposition to Springer's Motion for Protective Order pending certain disclosures otherwise sealed along with an opportunity to file an adequate Franks Motion. This Motion is about Springer's rights and return of the material.

Springer filed a Motion for Return of Property with the District Court in 05-SM-1 on December 1, 2008, which was placed under seal. In that Motion Springer sought the return of the property taken illegally from him through the purported search warrant dated September 15, 2005.

The United States Attorney argued in response to Springer's Rule 41 Motion that the proper place to obtain the property back was in a subsequent Motion to Suppress in the event an indictment was issued. Rule 12(b)(3)(C) of the Federal Rules of Criminal Procedure allows for a Motion to Suppress but does not otherwise address the return of the illegally obtained material, otherwise not contraband, to

1

the person seeking suppression and return of the lawfully possessed material.

Rule 41, prior to its current form, addressed this issue in part.  In Isaacs v. U.S., 283 F.2d 587, 590 (10th Cir. 1960) the 10th Circuit said Rule 41(e) Fed.Rules Crim.Proc., 18 U.S.C.A. provided:

> "A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized **for the return of the property and to suppress for use as evidence anything so obtained on the ground that** (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. **If the motion is granted the property shall be restored unless otherwise subject to lawful detention** and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

The United States Attorney agrees that the "change in the designation of this rule from Rule 41(e) to Rule 41(g) in 2003, did not change the wording or intent of the rule."  See Peloro v. U.S. 488 F. 3d 163, 172-173n.9 (3rd Cir. 2007) See Sealed Opposition in 05-SM-1 dated January 29, 2009, pg. 6.

The "fruit of the poisonous tree" doctrine is most often associated with violations of the Fourth Amendment's prohibition of unreasonable searches and seizures. *See Wong* Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). It prohibits at trial the use of evidence obtained directly or indirectly through

2

an unlawful search or seizure. *Id.* at 484, 83 S.Ct. 407. In that context, the exclusionary rule is necessary to "make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person." *Id.* Stated another way, "**[t]he rule is calculated to prevent**, not to repair. **Its purpose is to deter** — to compel respect for the constitutional guaranty in the only effectively available way — by removing the incentive to disregard it." *Brown v. Illinois*, 422 U.S. 590, 599-600, 95 S.Ct. 2254, 45 L. Ed.2d 416 (1975). Accordingly, the exclusionary rule as it applies to the Fourth Amendment is broad and witnesses and evidence (including confessions), no matter how probative, discovered only as a result of a Fourth Amendment violation, must be excluded from evidence. *Wong Sun*, 371 U.S. at 485-86, 83 S.Ct. 407; *Oregon v. Elstad*, 470 U.S. 298, 306, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). See U.S. v. Pettigrew, 468 F.3d 626, 534 (10th Cir. 2006)

The United States Attorney argues, even though it may be prohibited from using the Fourth and Fifth Amendment violations it levied against Springer, prospectively against Springer, it may utilize the illegally seized material against Oscar Stilley. The United States Attorney cites to several cases in support of its theory. None of the cases are on point. Each case involved the finding of contraband. The material taken from the home where Springer lives is not alleged to be contraband.

In Franks v. Deleware, 438 U.S. 154, 155 (1978) the Supreme Court held that where the defendant makes a substantial preliminary showing that a false

statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, **the search warrant must be voided and the fruits of the search excluded** to the same extent as if probable cause was lacking on the face of the affidavit.

In Rakas v. Illinois, 439 U.S. 128, 130 (1978)[1] the Supreme Court did not consider "the issue of probable cause" and therefore gave "a brief description of the events leading to the search of the automobile...."  What was found in the car at issue in Rakas was contraband and would not have been returned to him suppressed or not.  "At their trial, the prosecution offered into evidence a sawed-off rifle and rifle shells that had been seized by police during a search of an automobile in which petitioners had been passengers. Neither petitioner is the owner of the automobile and neither has ever asserted that he owned the rifle or shells seized."  Id. at 129 So, probable cause not at issue in Rakas and no person claimed ownership of property.

---

[1]First case cited by the Government in opposition to a protective order.

4

In U.S. v. Ladeaux, 454 F.3d 1107, 1172 (10th Cir. 2006)[2] the issue decided involved whether detention may lead to a fourth amendment violation regarding a request by police to role up windows and turn on and open air vents of a car. Both cocain and marihuana were eventually found in the searched car. These items were in fact contraband and would not be returned no matter what the disposition of the property for trial purposes.

In Trupiano v. United States, 334 U.S. 699 (1948) the Supreme Court stated that "It follows that it was error to refuse petitioners' motion to exclude and suppress the property which was improperly seized. **But since this property was contraband, they have no right to have it returned to them**." 334 U.S. at 710. "We are of the opinion that Congress, in abrogating property rights in such goods, merely intended to aid in their forfeiture and thereby prevent the spread of the traffic in drugs rather than to abolish the exclusionary rule formulated by the courts in furtherance of the high purpose of the Fourth Amendment. See In re Fried, 161 F.2d 453 (1947). United States v. Jeffers, 342 U.S. 48, 53-54 (1951)("'no property rights shall exist' in contraband goods")

Since the evidence illegally seized was contraband the respondent was not entitled to have it returned to him. It being his property, for purposes of the exclusionary rule, he was entitled on motion to have it suppressed as evidence on

---

[2]Third cases cited by the Government in opposition to protection order request.

his trial. Id.

Black's Law, Sixth Edition defines "contraband" as property which is "unlawful to produce or possess. Things and objects outlawed."

In *United States v. Beckstead*, 500 F.3d 1154, 1162-63 (10th Cir. 2007)[3] Beckstead claimed that the Government deprived him of due process because officers immediately seized and destroyed the methamphetamine lab components and related chemicals found at Morris' apartment and in Beckstead's car. Nothing in Beckstead, if seized illegally, could have ever been ordered returned to anyone. Beckstead also challenged the violations of his fourth amendment rights. Had he prevailed, and not waived these issues, he would never have been entitled to the contraband being returned to him. Officers in plain view noticed glass for cooking drugs by looking in the window of his car. Probable cause existed here regardless of any other issue and no warrant was needed.

*United States v. Hernandez*, 57 F.3d 895, 898 (10th Cir. 1995)[4] is clearly not on point. Hernandez lacked standing because he would not identify who loaned him the car that he claimed standing for protection under the fourth amendment.

In *United States v. De Luca*, 269 F.3d 1128, 1131 (10th Cir 2001)[5] the 10th Circuit dealt with whether a passenger in a car had fourth amendment right after being

─────────────

[3]Second case cited by the Government in opposition to protection order.

[4]Fifth case cited.

[5]Fourth case cited.

6

detained while an otherwise illegal search was taking place.   In overruling the District Court, the split panel decided De Luca had no fourth amendment rights in his detention.  The dissent in DeLuca on this issue shows the deep division amongst those learned in the law.   However, this case again involves a automobile stop where contraband was found.

United States v. Jones, 44 F.3d 860, 871 (10th Cir. 1995) likewise involves a car and 200 kilos of cocain.  No matter what, this property would never be returned no matter what the outcome of suppression might be.

The Supreme Court has recognized a liberty interest in personal security in cases involving the fourth amendment right to be free from unreasonable searches and seizures, Boyd v. United States, 116 U.S. 616, 630, 6 S.Ct. 524, 532, 29 L.Ed. 746 (1886); see also Gouled v. United States, 255 U.S. 298, 303-04, 41 S.Ct. 261, 262-63, 65 L.Ed. 647 (1921); see also Hilliard v. City and County of Denver, 930 F.2d 1516 (10th Cir. 1991)

The Fourth Amendment protects the citizen against unlawful searches and seizures. The Fifth Amendment secures him from compulsory testimony against himself. And these constitutional provisions are to be liberally construed to prevent impairment of the safeguards which they provide. Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647; Gilbert v. United States, 10 Cir., 144 F.2d 568; See Gilbert v. U.S., 163 F.2d 325, 326 (10th Cir. 1947)

In Gouled v. United States, 255 U.S. 298, 309, the Court said that search

7

warrants:

"may not be used as a means of gaining access to a man's house or office and papers solely for the purpose of making search to secure evidence to be used against him in a criminal or penal proceeding. . . ." The Court derived from Boyd v. United States, supra, the proposition that warrants "may be resorted to only when a primary right to such search and seizure may be found in the interest which the public or the complainant may have in the property to be seized, or in the right to the possession of it, or when a valid exercise of the police power renders possession of the property by the accused unlawful and provides that it may be taken," 255 U.S., at 309; that is, when the property is an instrumentality or fruit of crime, or contraband. Since it was "impossible to say, on the record . . . that the Government had any interest" in the papers involved "other than as evidence against the accused . . .," "to permit them to be used in evidence would be, in effect, as ruled in the Boyd Case,[6] to compel the defendant to become a witness against himself." Id., at 311. See Warden v. Hayden, 387 U.S. 294, 302 (1967)

The moment the Government tenders to Mr. Stilley papers and records unlawfully taken from the home Springer lives in, Springer's Fourth and Fifth Amendments are violated even before any future trial.

A search under the Fourth Amendment "occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Whether an individual has a constitutionally protected reasonable expectation of privacy in an object or place is a two-fold inquiry: (1) whether the individual has manifested a subjective expectation of privacy in the object or place to be searched and (2) whether that expectation is one society is prepared to recognize as reasonable.

---

[6]Boyd v. United States, 116 U.S. 616, 630 (1886)

*United States v. Hatfield* 333 F.3d 1189, 1195 (10th Cir.2003). "[T]he burden of establishing a legitimate expectation of privacy is on the party claiming a Fourth Amendment violation, and we have applied that same rule to a claimed invasion of the curtilage." *United States v. Cavely*, 318 F.3d 987, 994 (10th Cir.2003) (citation omitted). It is well-settled an individual has a reasonable expectation of privacy in the interior of one's home and its curtilage. *Kyllo v. United States*, 533 U.S. 27, 34, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001); *Oliver v. United States*, 466 U.S. 170, 180, 104 S.Ct. 1735, 80 L.Ed.2d 214 (1984); *see also Hatfield*, 333 F.3d at 1196 ("[P]rivacy in the interior of a home and its curtilage are at the core of what the Fourth Amendment protects. . . ."). See  Reeves v. Churchich, 484 F.3d 1244, 1254 (10th Cir. 2007)

Giving Mr. Stilley copies of what was taken from the home Springer lives in would be as much an invasion of Springer's privacy as the United States Attorney's usage of that same material against Springer himself.  The United States never had the legal right to search or seize non contraband from the home Springer lives in. Springer had an expectation of privacy and It logically follows that rewarding the United States Attorneys with sharing that illegal seizure for their benefit of prosecuting Stilley is not what the law provides.  Neither Mr. Stilley or the United States Attorney have any right to the material unlawfully taken from Springer on September 16, 2005.  Until that issue is finally determined this Court should extend its protective order.

The Supreme Court has held that "capacity to claim the protection of the

9

Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." Rakas, supra, at 143. See also Rawlings v. Kentucky, 448 U.S. 98, 106 (1980). The text of the Amendment suggests that its protections extend only to people in "their" houses. Minnesota v. Carter, 525 U.S. 83, 88-89 (1998)

There can be no doubt that expectation exists in the home Springer lived in for purposes of the protective order currently in place by this Court. Maintaining the status quo injures neither the United States Attorney or Mr. Stilley in regard to distribution of such evidence. On the other hand, allowing the United States Attorney to distribute material unlawfully seized from Springer, thereby using such private papers, books and other recorded information, renders the Fourth and Fifth Amendment meaningless.

Once the Court determines the seized material was seized without probable cause and in violation of the Fourth and Fifth Amendment, and since the material is not contraband, the only thing left is for the Court to direct said material returned, the original and all copies, to Springer. There would be nothing available to tender to Mr. Stilley. Springer would most certainly not agree to the material's usage.

Respectfully Submitted

/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

10

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Springer's Reply to United

States Opposition to Protective Order was served by way of ECF System on April 27,

2009, to:

Kenneth P. Snoke,

Charles O'Reilly,

Oscar Stilley

/s/ Lindsey K. Springer
Signature

11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA,   )
                            )
            Plaintiff,       )
                            )
v.                          )    Case No.  09-CR-043-SPF
                            )
LINDSEY KENT SPRINGER,      )
OSCAR AMOS STILLEY,         )
                            )
           Defendants.      )

## ORDER

The court has preliminarily reviewed defendant Springer's Reply to United States' Opposition to Protective Order (doc. no. 44, filed on April 27, 2009).  The court desires to have the benefit of the government's response to the contentions made by defendant Springer in his reply.  Accordingly, the government is **DIRECTED** to file a surreply, not later than May 11, 2009, addressing the contentions set forth in the reply.

DATED April 30, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p009.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

      Plaintiff,

v.                                                                Case No. 09-CR-043 SPF

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

      Defendants.

SPRINGER'S REQUEST FOR SUMMARY PURSUANT FEDERAL RULES
CRIMINAL PROCEDURE RULE 16(a)(1)(G)

      Lindsey K. Springer ("Springer") requests the United States of America provide Springer a written summary as required by Fed.R.Crim.Pr. 16(a)(1)(G) of any testimony that the government intends to use under Rule 702, 703 and 706 of the Federal Rules of Evidence during its case in chief at trial.

      Respectfully Submitted

      /s/ Lindsey K. Springer
      Lindsey K. Springer
      5147 S. Harvard, # 116
      Tulsa, Oklahoma 74135
      918-748-5539/955-8225(cell)

1

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Springer's Request for Summary Pursuant to Fed.R.Crim.Pr. 16(a)(1)(G) was served by way of ECF System on April 30, 2009, to:

Kenneth P. Snoke,

Charles O'Reilly,

Oscar Stilley

/s/ Lindsey K. Springer
Signature

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## UNITED STATES' SURREPLY TO DEFENDANT SPRINGER'S MOTION FOR PROTECTIVE ORDER PENDING PROSPECTIVE FRANKS HEARING

The United States of America, by and through its attorneys, David E. O'Meilia, United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke, Assistant United States Attorney, and Charles A. O'Reilly, Trial Attorney, United States Department of Justice, hereby files its surreply in opposition to Defendant's Motion for Protective Order Pending Prospective Franks Hearing (Docket #35) [hereinafter Defendant's Motion for Protective Order] and Defendant's Reply to United States' Opposition to Protective Order (Docket #44) [hereinafter Defendant's Reply].

Defendant Springer's filings make unsubstantiated allegations that the material seized pursuant to the search warrant was "illegally obtained." Defendant's assertions are false. Defendant's next premise appears to be that illegally seized evidence, that is not itself contraband, falls outside the requirement that a person have standing to object to a search in order to trigger the exclusionary rule.

From these faulty premises, Defendant Springer leaps to the unsupported conclusion that "[o]nce the Court determines the seized material was seized without probable cause and in violation of the Fourth and Fifth Amendment [sic], and since the material is not contraband, the only thing left is for the Court to direct said material returned, the original and all copies, to Springer." (Defendant's Reply, p. 10). Defendant is wrong. The Court should order that the material seized from Defendant Springer be made available for discovery by Defendant Stilley.

A.    Seized Materials "Non-Contraband" Status is Irrelevant

Defendant appears to assert that the fact that the material was seized is not contraband distinguishes this case from those cited by the Government, and thus mandates its return. This assertion is specious and without legal support. As an initial matter, the first case cited by the United States in its opposition to Defendant's Motion for Protective Order, *Rakas v. Illinois*, involved the seizure of both contraband (a sawed-off shotgun) and non-contraband (rifle shells). 439 U.S. 128 (1978). The Supreme Court drew no distinction between the shotgun and rifle shells for suppression purposes. Numerous cases have allowed the introduction against third parties of illegally seized evidence that was not contraband. *See: United States v. Salvucci*, 448 U.S. 83 (1980) (defendant, charged with unlawful possession of stolen mail (non-contraband) seized by police during search of an apartment rented by defendant's mother, lacked "standing" or even "automatic standing" to contest the search); *California v. Greenwood*, 486 U.S. 35 (1988) (defendants did not have "standing," i.e. an

-2-

expectation of privacy, in (contraband and non-contraband) evidence found and seized by police from defendants' garbage, which they had placed in opaque bags outside their house for collection by trash collector); *United States v. Dunning*, 312 F.3d 528, 531-32 (1st Cir. 2002) (defendant had no expectation of privacy in letters sent and delivered to girlfriend of defendant, seized in search of girlfriend's (parents') home); *United States v. Short*, 181 F.3d 620, 623 (5th Cir. 1999) (defendant lacked standing to challenge seizure of 3 cellular telephones from another person's vehicle, after defendant had been removed, as a passenger, from the vehicle.

In *United States v. Payner*, 447 U.S. 727, 729 (1980), the Supreme Court reversed the District Court's decision to suppress evidence–a loan guarantee agreement–that the government obtained through "a flagrantly illegal search of a bank officer's briefcase." 447 U.S. 727, 729 (1980). The District Court had ruled that, although the illegal search did not violate respondent's Fourth Amendment rights, the inherent supervisory power of the federal courts required it to exclude evidence tainted by the illegal search. In reversing, the Supreme Court did not consider the fact that the loan guarantee agreement was not contraband to be of any consequence.

Defendant Springer relies on language in *Gouled v. United States*, 255 U.S. 298 (1921), in an attempt to distinguish the cases cited by the United States in its Response. The problem with relying upon (and quoting at some length) a 1921 case, even an United States

-3-

Supreme Court case like *Gouled*, is that it has subsequently been abrogated on this issue of law.

In *Warden v. Hayden*, 387 U.S. 294 (1967), the Supreme Court, after quoting the exact language cited by defendant Springer (Doc. 44, p. 8), rejected *Gouled*'s limitations on seizing "mere evidence," in light of intervening decisions, statutes and rules since *Gouled*, and found that there was no Fourth Amendment reason to distinguish intrusions to secure "mere evidence"from intrusions to secure "<u>contraband</u>"or fruits of a crime, when looking at the legality of searches and the admission of items seized. (387 U.S. at 300-310). Nor is the Fifth Amendment implicated by the seizure, and the subsequent use in evidence at trial, of "mere evidence" such as documents–even those previously written by a defendant–since there was no "compulsion" to write the documents in the first place, and no testimonial interest to be protected. *See: Fisher v. United States*, 425 U.S. 391, 401 (1976), citing *United States v. Nobles*, 422 U.S. 225, 233 n.7 (1975).

B.    Material Seized Pursuant to an Invalid Warrant Admissible <u>Against Defendant Without Standing to Object to the Search</u>

The United States reiterates that there is no evidence that the search of Defendant Springer's home was illegal. The search was legal. However, assuming for the sake of argument that the search was invalid, the United States remains obligated to turn over discoverable material to Defendant Stilley, and materials obtained pursuant to a presumed

-4-

illegal search are admissible against Defendant Stilley with respect to both the conspiracy and tax evasion charges.

A defendant must have standing to challenge the admission of illegally obtained evidence; a defendant has standing only if his own constitutional rights were violated. *United States v. Salvucci*, 448 U.S. at 86-87; *see also Rakas v. Illinois*, 439 U.S. at 134. Courts have consistently denied standing to defendants protesting a search of documents not in their possession. *See, e.g. United States v. Dunning*, 312 F.3d 528, 532 (1st Cir. 2002); *United States v. Gordon*, 168 F.3d 122, 1228 (10th Cir. 1999); *United States v. King*, 55 F.3d 1193, 1196 (6th Cir. 1995).

In *Rakas*, the Supreme Court reformulated the issue of standing under the Fourth Amendment. *Rakas* concluded that the "Court's long history of insistence that Fourth Amendment rights are personal in nature has already answered many . . . traditional standing inquiries, and we think that the definition of those rights is more properly placed within the purview of substantive Fourth Amendment law rather than within that of standing." *Id.* at 140. Because the issue of standing is "invariably intertwined" with substantive Fourth Amendment analysis, the most logical inquiry focuses solely on a particular defendant's rights under the Fourth Amendment. *Id.* at 139. The Court must determine "whether the challenged search or seizure violated the Fourth Amendment rights of [the] criminal defendant who seeks to exclude the evidence...." *Id.* at 140, 99 S.Ct. at 429. It is immaterial if evidence sought to be introduced against a defendant was obtained in violation of someone

else's Fourth Amendment rights. Fourth Amendment rights are personal and cannot be asserted vicariously. See *id*.

The exclusionary rule is an extraordinary remedy whose reach is strictly circumscribed. "[T]he supervisory power [of the courts] does not authorize a federal court to suppress otherwise admissible evidence on the ground that it was seized unlawfully from a third party not before the court. Our Fourth Amendment decisions have established beyond any doubt that the interest in deterring illegal searches does not justify the exclusion of tainted evidence at the instance of a party who was not the victim of the challenged practices." *United States v. Payner*, 447 U.S. at 735, citing *Rakas v. Illinois, supra*, 439 U.S. at 137; *Alderman v. United States*, 394 U.S. 165, 174-75 (1969).

> The troublesome question of whether a co-defendant whose Fourth Amendment rights have not been violated has standing to suppress evidence illegally seized from a co-defendant has been authoritatively answered by the Supreme Court in *Alderman v. United States* [citations omitted]. The Court in that case in the majority opinion held that the exclusionary rule of *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652, and *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R. 933, extends only to a party from whom the evidence was illegally obtained and squarely holds that evidence illegally obtained from one defendant is not excludable against a co-defendant whose constitutional rights have not been violated by the search and seizure.

*Standard Oil Co. v. State of Iowa*, 408 F.2d 1171, 1174 (8th Cir. 1969).

C.    <u>Illegally Obtained Evidence Admissible Against Defendant</u>

Defendant asserts, without support, "[o]nce the Court determines the seized material was seized without probable cause and in violation of the Fourth and Fifth Amendment [sic],

-6-

and since the material is not contraband, the only thing left is for the Court to direct said material returned, the original and all copies, to Springer." Defendant's Reply, p. 10). Again, Defendant Springer is mistaken.

"The exclusionary rule does not proscribe the use of illegally seized evidence in all proceedings or against all persons." *In re Search of Office of Tylman*, 245 F.3d 978, 981 (7th Cir. 2001), citing *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Illegally obtained evidence can be used in grand jury investigations. *United States v. Calandra*, 414 U.S. 338, 349-52 (1974); *United States v. Salazar*, 323 F.3d 852, 856 (10th Cir. 2003). Illegally seized evidence can also used to impeach a defendant's testimony. *See: Michigan v. Harvey*, 494 U.S. 344, 346 (1990); *Oregon v. Hass*, 420 U.S. 714 (1975); *Harris v. New York*, 401 U.S. 222 (1971); and, more recently, *Kansas v. Ventris*, ____ U.S. _____, 2009 WL 1138842 (April 29, 2009). Thus, defendant Springer's assumption that all materials are to be returned along with copies, even if the items taken in the search are suppressed, is unfounded.

D.   Conclusion

For the foregoing reasons, Defendant's motion should be denied, and the Court should authorize the Government to provide co-defendant Stilley with discovery seized from

-7-

defendant Springer in order to ensure that defendant Stilley has ample opportunity to review the evidence and to prepare for trial.

Respectfully submitted,

DAVID E. O'MEILIA
UNITED STATES ATTORNEY

/s/ Kenneth P. Snoke
KENNETH P. SNOKE
Assistant United States Attorney
Special Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma 74119
(918) 382-2700

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lindsey Kent Springer
Defendant

Oscar Amos Stilley
Defendant

Robert Williams
Standby Counsel assigned to Lindsey Kent Springer

Charles Robert Burton, IV
Standby Counsel assigned to Oscar Amos Stilley.

/s/ Kenneth P. Snoke
Kenneth P. Snoke
Assistant United States Attorney

-8-

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )     **Case No.**    **09-CR-043-SPF** |
| | ) |
| **LINDSEY KENT SPRINGER,** | ) |
| **OSCAR AMOS STILLEY,** | ) |
| | ) |
| **Defendants.** | ) |

## MOTION TO RESCHEDULE THE HEARING ON MOTION
## FOR FRANKS ISSUE AND/OR SUPPRESS

The United States of America, by and through its attorneys, David E. O'Meilia,

United States Attorney for the Northern District of Oklahoma, and Kenneth P. Snoke,

Assistant United States Attorney, and Charles A. O'Reilly, Trial Attorney, United States

Department of Justice, hereby files this Motion to Reschedule the Hearing on Motion for

Franks Issue and/or Suppress.  Defendants Lindsey K. Springer and Oscar A. Stilley notified

the United States through electronic mail communication that they did not oppose the

proposed motion (see Attachments).  The United States requests that the Court reschedule

the hearing to the week following the July 9, 2009, hearing date, or as soon thereafter as

possible.

Following the hearing held April 22, 2009, the Court issued its scheduling order with

respect to this case.  The dates announced did not conflict with the calendars of the attorneys

nor with those of the defendants.  However, it has been brought to the attention of the

attorneys for the United States that two potential witnesses, Internal Revenue Service Special

Agents Brian Shern and Donna Meadors, each have prepaid family vacations scheduled for

the week of July 6 through July 10, 2009.[1]   Special Agent Shern will be a witness for the

United States if such a hearing is held, and Special Agent Meadors may be called as a

witness by the United States and/or the defendants.   Both of these individuals are available

during the week of July 13th.   Requiring the hearing to be held on July 9 will result in not

just the two witnesses missing their vacations and losing their deposits; seven other

individuals who are scheduled to accompany the witnesses on their respective vacations

would need to forego these trips.

---

[1]      IRS Special Agent Meadors is scheduled to leave on July 2, 2009; IRS Special
Agent Shern is scheduled to leave on July 5, 2009.

-2-

In the interest of justice, and to ensure that all relevant evidence is available to be presented with a minimum of inconvenience to the Court, witnesses, and the parties, the United States requests that the Court reschedule the Hearing on Motion for <u>Franks</u> Issue and/or Suppress to a date on or after July 13, 2009.

Respectfully submitted,

DAVID E. O'MEILIA
UNITED STATES ATTORNEY


*/s/ Charles A. O'Reilly*
CHARLES A. O'REILLY, CBA NO. 160980
Trial Attorney, Dept. of Justice
KENNETH P. SNOKE, OBA NO. 8437
Assistant United States Attorney
110 West Seventh Street, Suite 300
Tulsa, Oklahoma  74119
(918) 382-2700

-3-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 8th day of May, 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Lindsey Kent Springer
Defendant

Oscar Amos Stilley
Defendant

Robert Williams
Standby Counsel assigned to Lindsey Kent Springer

Charles Robert Burton, IV
Standby Counsel assigned to Oscar Amos Stilley.


*/s/ Kenneth P. Snoke*
Assistant United States Attorney

-4-

**Hall, Kathie (USAOKN)**

| | |
|---|---|
| **From:** | Lindsey Springer [lindsey@mindspring.com] |
| **Sent:** | Tuesday, May 05, 2009 7:07 PM |
| **To:** | Hall, Kathie (USAOKN) |
| **Subject:** | Re: Joint Motion to Cointinue Hearing Date |
| **Attachments:** | ole1.bmp |

Ms. Hall, I have no opposition to this Motion.   Thank you, Lindsey Springer

----- Original Message -----
**From:** Hall, Kathie (USAOKN)
**To:** lindsey@mindspring.com
**Sent:** Tuesday, May 05, 2009 4:54 PM
**Subject:** Joint Motion to Cointinue Hearing Date

# Mr. Springer

Here is a copy of the revised motion incorporating your agreement that a date after July 9, 2009, would be agreeable for the hearing, if necessary. Please let us know if this  is still okay.

Oscar Stilley indicated agreement, but did not want to be a joint movant, so we revised the motion.

<<Springer et al Joint Motion to Continue Hearing Date.WPD>>

*Kathie M. Hall, ACP*

Legal Assistant, Criminal Division

UNITED STATES ATTORNEY'S OFFICE

110 West Seventh Street, Suite 300

Tulsa, Oklahoma   74119

918.382.2700    X3338

918.560.7954   Fax



*This communication is intended for the sole use of the individual to whom it is addressed. This communication is confidential and may contain information that is privileged and exempt from disclosure under applicable law. If you are not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify the sender immediately by telephone and return the communication at the address above via the U.S. Postal Service. Thank you.*

**Hall, Kathie (USAOKN)**

| | |
|---|---|
| **From:** | Oscar Stilley [oscar@oscarstilley.com] |
| **Sent:** | Thursday, May 07, 2009 2:04 PM |
| **To:** | Hall, Kathie (USAOKN) |
| **Cc:** | Lindsey Springer |
| **Subject:** | RE: Joint Motion to Continue Hearing Date |
| **Attachments:** | image001.png |

No objection, thank you.

Oscar

Oscar Stilley, Attorney at Law[1]
7103 Race Track Loop
Fort Smith, AR 72916
(479) 996.4109 phone
(479) 996.3409 fax
oscar@oscarstilley.com
www.oscarstilley.com

IMPORTANT: The information contained in this email message is intended only for the individual/entity named herein. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by telephone and destroy all originals and copies of this message. Receipt by anyone other than the intended recipient is not a waiver of any attorney-client or work product privilege.  Footnote 1:  [Suspended from Arkansas courts pending disbarment, principally for the alleged offense of criticizing the government. Suspended in some but not all other jurisdictions to which Attorney is admitted. Ask for details, it's complicated.]

**From:** Hall, Kathie (USAOKN) [mailto:Kathie.Hall@usdoj.gov]
**Sent:** Tuesday, May 05, 2009 4:57 PM
**To:** Oscar Stilley
**Subject:** Joint Motion to Continue Hearing Date

## Mr. Stilley

## Per your May 1, 2009, e-mail here is the revised Motion made only by the Government.  Please let us know if this is acceptable.

<<Springer et al Joint Motion to Continue Hearing Date.WPD>>

*Kathie M. Hall, ACP*

Legal Assistant, Criminal Division

UNITED STATES ATTORNEY'S OFFICE

110 West Seventh Street, Suite 300

Tulsa, Oklahoma   74119

918.382.2700   X3338

918.560.7954   Fax



*This communication is intended for the sole use of the individual to whom it is addressed.  This communication is confidential and may contain information that is privileged and exempt from disclosure under applicable law.  If you are not the intended recipient or the employee or agent responsible for delivering the communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the sender immediately by telephone and return the communication at the address above via the U.S. Postal Service.  Thank you.*

2

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CR-043-SPF |
| | ) | |
| LINDSEY KENT SPRINGER, | ) | |
| OSCAR AMOS STILLEY, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the court is plaintiff's motion to continue the hearing which had previously been set for July 9, 2009. *See* minute sheet dated April 22, 2009 (doc. no. 43). The court notes that the motion requests that the hearing be rescheduled to the week after the July 9, 2009 hearing date, or as soon thereafter as possible. The court also notes that specific inquiry was made at the April 22 hearing as to whether there were any problems with the July 9 date. The government responded: "The government is fine with that, Your Honor."

Due to the realities of the schedule in this case, and due also to other schedule commitments, it is not possible to delay the hearing to the week following the week in which the hearing was originally scheduled (or thereafter). Accordingly, the hearing on any <u>Franks</u> motion which may require a hearing, or on any other motion to suppress, is hereby reset for July 2, 2009 at 9:00 a.m.

DATED May 12, 2009.

_____
STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

09-0043p011.wpd

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                      Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

SPRINGER'S FIRST MOTION TO DISMISS
GRAND JURY INDICTMENT FOR LACK OF VENUE

Lindsey Kent Springer, files this First Motion to Dismiss the document labeled "INDICTMENT" dated March 10, 2009, pursuant to Fed.R.Crim.Pr. 12, based upon (1) the "Grand Jury" pursuant to 28 U.S.C. § 1861 policy, lacks venue over the claims made in the indictment, (2) this 28 U.S.C. § 116 United States District Court created by Congress for the territory over which its sovereignty extends known as "Oklahoma" lacks jurisdiction and venue because Austin Texas and Washington D.C. are not located within anyone's interpretation of the boundaries set by Congress for section 116, (3) this 28 U.S.C. § 116 Court created by Congress lacks jurisdiction and venue because Tulsa, Oklahoma is not identified by Congress at 26 U.S.C. § 6091 or any place else within the Judicial Power of this Court, (4) this 28 U.S.C. § 116 Court lacks territorial jurisdiction over the place where the crimes are said to have occurred, and (5) that this 28 U.S.C. § 116 Court created by Congress

1

lacks any judicial power under Article III of the Constitution.

Springer has filed a Memorandum of Law in Support of this First Motion to Dismiss.

CONCLUSION

This 28 U.S.C. § 116 United States District Court should issue an order in Lindsey Kent Springer's favor that (1) the "Grand Jury" pursuant to 28 U.S.C. § 1861 policy, lacks venue over the claims made in the indictment, (2) this 28 U.S.C. § 116 United States District Court created by Congress for the territory over which its sovereignty extends known as "Oklahoma" lacks jurisdiction and venue because Austin Texas and Washington D.C. are not located within anyone's interpretation of the boundaries set by Congress for section 116, (3) this 28 U.S.C. § 116 Court created by Congress lacks jurisdiction and venue because Tulsa, Oklahoma is not identified by Congress at 26 U.S.C. § 6091, (4) this 28 U.S.C. § 116 Court lacks territorial jurisdiction over the place where the crimes are said to have occurred, and (5) that this 28 U.S.C. § 116 Court created by Congress lacks any judicial power under Article III of the Constitution.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
        5147 S. Harvard, # 116
        Tulsa, Oklahoma 74135
        918-748-5539/955-8225(cell)

2

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Memorandum of Law in Support of his First Motion To Dismiss  was ecf'd on May

15, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley



/s/ Lindsey K. Springer
Signature

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

MEMORANDUM OF LAW IN SUPPORT OF SPRINGER'S FIRST MOTION TO DISMISS
GRAND JURY INDICTMENT FOR LACK OF VENUE

      Lindsey Kent Springer, files this Memorandum of Law in support of his First
Motion to Dismiss the document labeled "INDICTMENT" dated March 10, 2009,
based upon (1) the "Grand Jury" pursuant to 28 U.S.C. § 1861 policy, lacks venue
over the claims made in the indictment, (2) this 28 U.S.C. § 116 United States District
Court created by Congress for the territory over which its sovereignty extends
known as "Oklahoma" lacks jurisdiction and venue because Austin Texas and
Washington D.C. are not located within anyone's interpretation of the boundaries
set by Congress for section 116, (3) this 28 U.S.C. § 116 Court created by Congress
lacks jurisdiction and venue because Tulsa, Oklahoma is not identified by Congress
at 26 U.S.C. § 6091 or any place else within the Judicial Power of this Court, (4) this
28 U.S.C. § 116 Court lacks territorial jurisdiction over the place where the crimes are
said to have occurred, and (5) that this 28 U.S.C. § 116 Court created by Congress

<div align="center">1</div>

lacks any judicial power under Article III of the Constitution.

**A.    SUMMARY OF CHARGES FOR THIS MOTION TO DISMISS FOR LACK OF VENUE**

Count One alleges Springer and Stilley entered into an agreement to violate Title 18 U.S.C. Section 371 "in the Northern District and elsewhere" with the agreed objective to "impede, impair, obstruct and defeat the lawful government functions of the Internal Revenue Service, an agency of the United States, in the ascertainment, computation, assessment and collection of revenue, that is, federal individual income taxes."  See Indictment, page 2, paragraph 9.

Count Two, Three and Four, allege "in the Northern District and elsewhere" Springer had "substantial income" "owing" "income taxes," failed to "file United States Individual Income Tax Returns as required by law and committing various affirmative acts" "all in violation of Title 26 U.S.C. Section 7201."   These Counts allege Stilley aided Springer in Springer's alleged attempt to violate section 7201.

Count Five and Six allege something totally different than Counts One, Two, Three and Four.   Counts Five and Six allege a violation of Title 26, section 7203. These two Counts allege Springer was required by law to make an income tax return to one of three places: First, "the Internal Revenue Service Center at Austin, Texas"; Second,  with a person "assigned to receive returns" at the local office of the Internal Revenue Service, at Tulsa, Oklahoma; and Third, "to another Internal Revenue Service Office permitted by the Commissioner of the Internal Revenue," specifically stating the items of gross income and any deduction Springer was

2

entitled.

## B.    LEGAL AUTHORITY INVOLVING VENUE OVER CRIMES AGAINST UNITED STATES RELATED TO INCOME TAX CHARGES BY GRAND JURY

The alleged crimes in Counts One through Six are specific intent crimes. Denbo v. U.S. 988 F.2d 1029 (10th Cir. 1993)("we're talking about criminal intent in the one area [sections 7201 and 7203]")

"Ordinarily criminal prosecutions must be brought in the district in which the **offense was committed**, and federal income tax returns must, by statute, be filed in the place of legal residence of the taxpayer or at a service center serving **that district**, 26 U.S.C. § 6091 (b) (1) (A) (i) and (ii), or the principal place of business of the taxpayer." The prosecution "must then establish beyond a reasonable doubt that the defendant's residence in this, a tax case, was [Oklahoma City]. **This is essential to establish jurisdiction and venue**. United States v. Brewer, 486 F.2d 507, 509 (10th Cir. 1973) [1]

The requirement concerning the place of filing of the individual income tax returns is provided ONLY in 26 U.S.C.A. § 6091(b)(1)(A) for persons other than

---

[1]The 10th Circuit cited to all these cases in support of its holding: United States v. Gorman, 393 F.2d 209, 213-214 (7th Cir.), cert. denied, 393 U.S. 832, 89 S.Ct. 102, 21 L.Ed.2d 103 (1968); Yarborough v. United States, 230 F.2d 56, 58-59 (4th Cir.), cert. denied, 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487 (1956); Bowles v. United States, 73 F.2d 772, 773-774 (4th Cir. 1934), cert. denied, 294 U.S. 710, 55 S.Ct. 506, 79 L.Ed. 1245 (1935); United States v. Commerford, 64 F.2d 28, 32-33 (2d Cir.), cert. denied, 289 U.S. 759, 53 S.Ct. 792, 77 L.Ed. 1502 (1933). See also United States v. Lombardo, 241 U.S. 73, 36 S.Ct. 508, 60 L.Ed. 897 (1915); Weaver v. United States, 298 F.2d 496 (5th Cir. 1962).

3

corporations. It prescribes the place of filing as "in the internal revenue district in which is located the legal residence or principal place of business of the person making the return. . . ." U.S. v. Taylor, 828 F.2d 630, 634-635 (10th Cir. 1987) The federal statute and regulations lay down the rule as a matter of federal law. Id.

"Internal Revenue Districts" no longer exist and have not existed since the latter part of 1999.  These places were done away with by the Restructuring and Reform Act of 1998 (RRA of 1998).  See section 1001 of the RRA of 1998 directing reorganization.[2]  Likewise, as of 1999, there were no persons employed as "district directors" or "directors" over the servicing center servicing any "internal revenue districts."  See Exhibit 1 ("Regulations also remove all references to IRS district director or service center director, as these positions no longer exist within the IRS. The offices of the district director and service center director were eliminated by the IRS reorganization implemented pursuant to the IRS Reform and Restructuring Act of 1998.")

In a criminal case, the government bears the burden of proving proper venue by a preponderance of the evidence. United States v. Netz, 758 F.2d 1308, 1312 (8th Cir. 1985). Venue properly lies in the judicial district where an offense occurred. Fed.R.Crim.P. 18; United States v. Marchant, 774 F.2d 888, 891 (8th Cir. 1985), cert. denied, 475 U.S. 1012, 106 S.Ct. 1190, 89 L.Ed.2d 305 (1986)..

---

[2]At hearing the District Court asked Springer for the citation of law which led to the evisceration of District Directors and Internal Revenue Districts.

4

Prosecution are required to be "instituted in a district court with jurisdiction over violations of 26 U.S.C. § 7203 and in which venue was proper. See: 18 U.S.C. § 3231 (jurisdiction of district court over offenses against laws of the United States); 26 U.S.C. §§ 6012, 6091, and 7203 (substantive offense and venue of its commission)"; United States v. Rice, 659 F.2d 524, 526 (5th Cir. 1981).

"Article III of the Constitution generally requires that the trial of any crime be held in the state where the crime was committed. U.S. Const. Art. III, § 2, cl. 3. The Sixth Amendment further requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. v. Cryar, 232 F.3d 1318 (10th Cir. 2000) "Thus, the 6th Amendment provides that all criminal trials shall be by a jury of the 'State and district' in which the crime shall have been committed; and by 'district' is here meant either an entire State or a subdivision of a State." Harvard Law Review, Vol. XII, # 6, (1.25.1899) 365, 385; See also U.S. v. Dawson, 56 U.S. 15 How. 467, 488 (1853) ("A crime, therefore, committed against the laws of the United States **out of the limits of a state** is not local, but may be tried at such place as Congress shall designate by law. This furnishes an answer to the argument against the jurisdiction of the court as it respects venue, trial in the county, and jury from the vicinage, as well as in respect to the necessity of particular or fixed districts before the offense."

The Supreme Court said in United States v. Williams, 504 U.S. 36, 47 (1992)

"[R]ooted in long centuries of Anglo-American history," Hannah v. Larche, 363 U.S. 420, 490 (1960) (Frankfurter, J., concurring in result), the **grand jury** is mentioned in the Bill of Rights, but not in the body of the Constitution. **It has not been textually assigned**, therefore, **to any of the branches described in the first three Articles. It "`is a constitutional fixture in its own right**.'" United States v. Chanen, 549 F.2d 1306, 1312 (CA9 1977) (quoting Nixon v. Sirica, 159 U.S. App. D.C. 58, 70, n. 54, 487 F.2d 700, 712, n. 54 (1973)), cert. denied, 434 U.S. 825 (1977). In fact, the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. See Stirone v. United States, 361 U.S. 212, 218 (1960); Hale v. Henkel, 201 U.S. 43, 61 (1906); G. Edwards, The Grand Jury 28-32 (1906). Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length."

The Grand Jury created by 28 U.S.C. § 1861 can have only the power its creator can give it.   Congress has no general criminal judicial power and absolutely no power to enact "grand jury" legislation.  In fact, Congress only has the power to pick the place for trial when the alleged acts are not committed within any State. See Article III, Section 2, Clause 3.  "A crime, therefore, committed against the laws of the United States out of the limits of a state is not local, but may be tried at such place as Congress shall designate by law."  U.S. v. Dawson, 56 U.S. 15 How. 467, 488 (1853)

6

The only allegation in the Grand Jury words as to Count One, Two, Three, and Four, are "in the Northern District of Oklahoma, and elsewhere." Count Five and Six alleged in "in the Northern District of Oklahoma, and elsewhere, with the added words "Austin, Texas," "Tulsa, Oklahoma," and "Commissioner of Internal Revenue."

**1.    THE 28 U.S.C. § 1861 POLICY GRAND JURY LACKED VENUE OVER CLAIMS IN THEIR INDICTMENT AS TO EACH COUNT.**

### a.    COUNT ONE, TWO, THREE AND FOUR

As to Count One, as also applicable to Counts Two, Three and Four, these charges suffer from a lack of venue. Each are premised upon the requirement to "file a United States Individual Income Tax Return as required by law."[3] See Indictment, paragraph 6 (Count One)[4], 41 (Count Two),43 (Count Three) and 45 (County Four). There were no internal revenue districts, no district directors, and no other claims in Counts One, Two, Three and Four, that would identify any venue for such requirements being within the Northern District of Oklahoma and the jurisdiction of this Court. 26 U.S.C. § 6091 clearly provides by statute all individual's requested to provide information to the Secretary of the Treasury are directed to

––––––––––––––––––––

[3] Since the Grand Jury does not allege Springer was required by law "or regulation" this Court must only construe this Motion challenging venue under the "required by law" as section 6091 clearly demonstrates. Even if this Court were drawn to the regulations, and it should not, under 6091 those regulations say the same thing as section 6091 for the years 2000 through 2005 tax years.

[4] Paragraph 6 in Count One is realleged in each of the Counts Two through Six. This paragraph alleges Springer has not provided information to the Internal Revenue Service on any "individual income tax return" since the "late 1980s."

provide such information either to the district director over the internal revenue district where they live or to the service center servicing such internal revenue district.   U.S. v. Taylor, 828 F.2d 630, 634-635 (10th Cir. 1987)

Count One, Two, Three and Four,  as a matter of law, fails to allege an offense that occurred within the United States Judicial District of Oklahoma, in its Northern District, because no District Directors and no Internal Revenue Districts specifically existed from at least the year 2000 through 2009 requiring Springer to do anything therein.

### b.     COUNT ONE, FIVE AND SIX

The Government takes no exception with the fact Austin, Texas is not within the venue of any Grand Jury sitting in the "Northern District of Oklahoma" pursuant to 28 U.S.C. § 1861.  The Commissioner of Internal Revenue is likewise in Washington D.C. and outside any such reach of Congress' Northern District of Oklahoma.  This leaves Tulsa, Oklahoma and Tulsa is not even mentioned in any Federal Law or Regulation as the place where any "U.S. Individual Income Tax Return" is required to be made or filed pursuant to 26 U.S.C. 7203, and as applicable to 18 U.S.C. § 371.[5]  Tulsa, Oklahoma is also not any place where the legal "collection" of taxes is to occur by the District Director for any one living in "Kelleyville, Oklahoma."

Although "Treasury regulations establish voluntary compliance as the general

---

[5]If the "object" of the conspiracy is a misdemeanor only then any punishment, if convicted under section 371, cannot exceed that of the substantive misdemeanor.

8

method of income tax collection, Congress gave the Secretary of the Treasury the power to enforce the income tax laws through involuntary collection. See, e.g., 26 U.S.C. § 6301 et seq."  United States v. Tedder, 787 F.2d 540, 542-543 (10th Cir. 1986)

Treasury regulations promulgated under the Commissioner's general authority at 26 U.S.C.  7805(a) to "prescribe all needful rules and regulations" are owed "less deference than a regulation issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision." Rowan Cos., Inc. v. United States, 452 U.S. 247, 253, 101 S.Ct. 2288,  68 L.Ed.2d 814 (1981); see also McKinney v. Comm'r, 732 F.2d 414, 417 (10th Cir. 1983). See also COX v. C.I.R., 514 F.3d 1119, 1123-1124 (10th Cir. 2008)

The Secretary of the Treasury implements his specific grant of authority at 26 U.S.C. § 6301 by promulgating  26 CFR 301.6301.  This regulation section is entitled "**301.6301–1 Collection authority.**"  From the Year 2000 through the return of the indictment in this case, the prescribed "method" of tax collection was to be "collected by the district directors of the internal revenue":

> The taxes imposed by the internal revenue laws **shall be collected by district directors of internal revenue**. See, however, section 6304, relating to the collection of certain taxes under the provisions of the Tariff Act of 1930 (19 U.S.C. ch. 4).

As demonstrated above, there are no "district directors" nor any "internal revenue districts" since at least 1999.  See Exhibit 1 referenced specifically above.

The Fifth Amendment requires no person be held to answer or trial unless on

9

indictment of a properly gathered Grand Jury. Midland Asphalt Corp v. United States, 489 U.S. 794, 802 (1989)  The Sixth Amendment directs all "juries" be derived from the State and district where the crime is alleged to have occurred.  Harvard Law Review, Vol. XII, # 6, (1.25.1899) 365, 385; See also U.S. v. Dawson, 56 U.S.  15 How. 467, 488 (1853) The Tenth Amendment prohibits the United States from exercising any  power limited to their exclusive jurisdiction within the exclusive jurisdiction of any State, including the State of Oklahoma. *Kansas v.* United States, 214 F.3d 1196, 1198 (10th Cir. 2000).

Count One, Five and Six,  as a matter of law, fails to allege an offense that occurred within the United States Judicial District of Oklahoma, in its Northern District, because no District Directors and no Internal Revenue Districts specifically existed from at least the year 2000 through 2009 requiring Springer to do anything therein.

**2.    THIS 28 U.S.C. § 116  UNITED STATES DISTRICT OF OKLAHOMA COURT CREATED BY CONGRESS LACKS JURISDICTION AND VENUE BECAUSE AUSTIN TEXAS AND WASHINGTON D.C.  ARE NOT WITHIN ANYONE'S INTERPRETATION OF THE BOUNDARIES SET BY CONGRESS AT 28 U.S.C. § 116.**

As more fully set fourth above in Section 2, 28 U.S.C. § 116 does not encompass the area of Austin Texas or Washington D.C.  Accordingly, this Court lacks venue over Counts One, Two, Three, Four, Five and Six, under the Fifth Amendment, Sixth Amendment, Tenth Amendment, Article III, Section 2, Clause 3, 28 U.S.C. § 3231, 28 U.S.C. § 3232, and Federal Rules of Criminal Procedure 18 as to

10

any allegations of any alleged crime being committed in either Austin Texas or Washington, D.C.

"Where Congress is not explicit, 'the locus delicti must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" Travis, 364 U.S. at 635 (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)). United States v. Wiles, 102 F.3d 1043, 1065 (10th Cir. 1996) Venue in federal criminal prosecutions is a question of fact which the government must prove.  Wilkett v. United States, 655 F.2d 1007, 1011 (10th Cir. 1981), cert. denied, 454 U.S. 1142 (1982). In Anderson, the Supreme Court compared the cases holding that "when an omission to act is the crime, the venue is the jurisdictional locality where the act should have been performed." Id. at 705

The Crime in Anderson was determined to be committed at Fort Lewis when "for the first time he declined to go forward as he was required to do. This refusal was his crime. It took place at Fort Lewis." Id. at 706.   The United States District Court in the Western District had territorial Jurisdiction over the "crime" alleged to have occurred at Fort Lewis because Fort was within the United States' territorial jurisdiction.

The claims against Springer in Counts One, Two, Three, Four, Five and Six, involve the requirement Springer was by law to provide information to the Internal Revenue Service on an U.S. Individual Income Tax Return for years 2000, 2002, 2003 2004 and 2005.  Since there are no district directors and no internal revenue districts,

11

it is impossible for the Government to prove there was any requirement to provide

information by Springer to anyone, for purposes of a crime under 18 U.S.C. § 371,

and under Title 26, Sections 7201 and 7203.

3.    **THIS 28 U.S.C. § 116 UNITED STATES DISTRICT OF OKLAHOMA COURT
CREATED BY CONGRESS LACKS JURISDICTION AND VENUE BECAUSE
TULSA OKLAHOMA IS NOT A PLACE IDENTIFIED WITHIN 26 U.S.C. § 6091
WHERE ANY INFORMATION SPRINGER IS ALLEGED TO HAVE BEEN
REQUIRED TO REPORT WAS REQUIRED TO BE REPORTED.**

26 U.S.C. § 6091 does not identify Tulsa Oklahoma and furthermore directs

that Title 26 requires only the "return" at issue be "filed" in the "internal revenue

district" over which the legal residence of the taxpayer is located.  This section goes

on to identify the "service center" over such "internal revenue district."  No where

in Counts One, Two, Three, Four, Five and Six, is the identification of the "internal

revenue district" alleged to establish the locus delecti being in Tulsa, Oklahoma.

See U.S. v. CRYAR, 232 F.3d 1318, 1321 (10th Cir. 2000) quoting United States v.

Cabrales, 524 U.S. 1, 6-7 (1998) ("stating that the 'locus delicti' [of the charged

offense] must be determined from the nature of the crime alleged and the location

of the act or acts constituting it")

Accordingly, this Court lacks venue over Counts One, Two, Three, Four, Five

and Six under the Fifth Amendment, Sixth Amendment, Tenth Amendment, Article

III, Section 2, Clause 3, 28 U.S.C. § 3231, 28 U.S.C. § 3232, and Federal Rules of

Criminal Procedure 18, because venue in Tulsa, Oklahoma over those claims is

improper as there are no district directors or internal revenue districts encompassing

12

Tulsa, Oklahoma.

4. **THIS 28 U.S.C. § 116 COURT CREATED BY CONGRESS LACKS TERRITORIAL JURISDICTION OVER THE PLACE THE ALLEGED CRIMES ARE SAID TO HAVE OCCURRED.**

28 U.S.C. § 116 is the establishment by Congress of "Judicial Districts" and Congress was given no criminal judicial power to use such "districts" to hold trial of any offense unless said offense occurred outside the territorial limits of any State. U.S. v. Dawson, 56 U.S. 15 How. 467, 488 (1853)("A crime, therefore, committed against the laws of the United States **out of the limits of a state** is not local, but may be tried at such place as Congress shall designate by law. )

Article III of the Constitution generally requires that the trial of any crime be held in the state where the crime was committed. U.S. Const. Art. III, § 2, cl. 3. The Sixth Amendment further requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." U.S. v. Cryar, 232 F.3d 1318 (10th Cir. 2000) "Thus, the 6th Amendment provides that all criminal trials shall be by a jury of the 'State and district' in which the crime shall have been committed; and by 'district' is here meant either an entire State or a subdivision of a State**."** Harvard Law Review, Vol. XII, # 6, (1.25.1899) 365, 385.

This Court lacks territorial jurisdiction over the claims presented by the United States Department of Justice to the 28 U.S.C. § 1861 Policy Grand Jury claims and are instituted in violation of Fifth Amendment, Sixth Amendment, Tenth

13

Amendment, Article III, Section 2, Clause 3, 28 U.S.C. § 3231, 28 U.S.C. § 3232, and Federal Rules of Criminal Procedure 18.

5. **THIS 28 U.S.C. § 116 COURT CREATED BY CONGRESS LACKS SUBJECT MATTER JURISDICTION, JURISDICTION, AND VENUE, PURSUANT TO ARTICLE III, SECTION 2, CLAUSE 3 OVER GRAND JURY CLAIMS**.

Article III of the Constitution generally requires that the trial of any crime be held in the State where the crime was committed. U.S. Const. Art. III, § 2, cl. 3. U.S. v. Cryar, 232 F.3d 1318, 1320 (10th Cir. 2000) The Sixth Amendment further requires that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." Id.

Our determination of venue raises matters that touch closely the fair administration of criminal justice and public confidence in it, on which it ultimately rests. These are important factors in any consideration of the effective enforcement of the criminal law. They have been adverted to, from time to time, by eminent judges; and Congress has not been unmindful of them. Questions of venue in criminal cases, therefore, are not merely matters of formal legal procedure. They raise deep issues of public policy in the light of which legislation must be construed. Id. 1321

In United States v. Johnson, 323 U.S. 273, 275 (1944) "Fed.R.Crim.P. 18 reinforces these directives: '[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was

14

Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 570

committed.'"

When a "statute" "does not contain a specific venue provision" "the place at which the crime was committed `must be determined from the nature of the crime alleged and the location of the act or acts constituting it.'" United States v. Medina-Ramos, 834 F.2d 874, 876 (10th Cir. 1987) (quoting United States v. Anderson, 328 U.S. 699, 703 (1946)) (emphasis added); see United States v. Rodriguez-Moreno, 526 U.S. 275, 279 (1999) ("In performing this inquiry, a court must initially identify the conduct constituting the offense (the nature of the crime) and then discern the location of the commission of the criminal acts."); United States v. Cabrales, 524 U.S. 1, 6-7 (1998) (stating that the "`locus delicti' [of the charged offense] must be determined from the nature of the crime alleged and the location of the act or acts constituting it").

There is nothing in 18 U.S.C. § 371, 26 U.S.C. § 7201 or § 7203 that identifies any nexus for a United States venue.   There is no claim the acts constituting the "crimes" occurred within the channels of interstate commerce within this 28 U.S.C. § 116 Judicial District.

Any trial of the claims made by the 28 U.S.C. § 1861 Grand Jury is to take place "in the State" and not within the territorial jurisdiction of the United States. Congress' only power to pick the place for any "trial" is when it is alleged that none of the facts giving rise to the "said crimes" occurred within "any State."  See Article III, Section 2, Clause 3.

15

In another case styled USA v. Springer, 08-278, the District Court stated in an order that in 28 U.S.C. § 116 Congress "dividing up the State of Oklahoma" into 3 "judicial districts."  Congress has no judicial power to divide the State of Oklahoma up regarding any alleged criminal acts occurring within the territorial limits of the State named Oklahoma.

In Clawson v. United States, 114 U.S. 477, 5 S.Ct. 949 (1885) before Utah became a State and at a time where it was a U.S. territory, expressed in the words of Chief Justice MARSHALL, speaking of the law as it then existed, said: 'It has been justly observed that no act of congress directs grand juries, or defines their powers. By what authority, then, are they summoned, and whence do they derive their powers? The answer is that the laws of the United States have erected courts which are invested with criminal jurisdiction. This jurisdiction they are bound to exercise, and it can only be exercised through the instrumentality of grand juries. They are, therefore, given by a necessary and indispensable implication. But how far is this implication necessary and indispensable? The answer is obvious. Its necessity is co-extensive with that jurisdiction to which it is essential." at 954-955

Congress has no "territorial" criminal jurisdiction alive in the State of Oklahoma and most certainly no enumerated power to divide the State of Oklahoma up into 3 exclusive territorial places.

16

CONCLUSION

This 28 U.S.C. § 116 United States District Court should issue an order in Lindsey Kent Springer's favor that (1) the "Grand Jury" pursuant to 28 U.S.C. § 1861 policy, lacks venue over the claims made in the indictment, (2) this 28 U.S.C. § 116 United States District Court created by Congress for the territory over which its sovereignty extends known as "Oklahoma" lacks jurisdiction and venue because Austin Texas and Washington D.C. are not located within anyone's interpretation of the boundaries set by Congress for section 116, (3) this 28 U.S.C. § 116 Court created by Congress lacks jurisdiction and venue because Tulsa, Oklahoma is not identified by Congress at 26 U.S.C. § 6091, (4) this 28 U.S.C. § 116 Court lacks territorial jurisdiction over the place where the crimes are said to have occurred, and (5) that this 28 U.S.C. § 116 Court created by Congress lacks any judicial power under Article III of the Constitution.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Memorandum of Law in Support of his First Motion To Dismiss  was ecf'd on May

15, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature

18

# IRS Notice of Proposed Rulemaking (REG-118886-06) Clarifying Section 6411 Regulations by Cross-Reference to Temporary Regulations (T.D. 9355)

**Section 6411**
**Section 6402**

These rules are scheduled to be published in the *Federal Register* dated Aug. 27, 2007.

**DEPARTMENT OF THE TREASURY**

**Internal Revenue Service**

**26 CFR Part 1**

**[REG-118886-06]**

**RIN 1545-BF65**

**Clarification to Section 6411 Regulations**

**AGENCY:** Internal Revenue Service (IRS), Treasury.

**ACTION:** Notice of proposed rulemaking by cross-reference to temporary regulations.

**SUMMARY:** In the Rules and Regulations section of this issue of the **Federal Register**, the IRS is issuing temporary regulations relating to the computation and allowance of the tentative carryback adjustment under section 6411 of the Internal Revenue Code. Those temporary regulations clarify that for purposes of allowing the tentative adjustment, the IRS may credit or reduce the tentative adjustment by an assessed tax liability, whether or not that tax liability was assessed before the date the application for tentative carryback is filed, and other unassessed liabilities in certain other circumstances. Those regulations also remove all references to IRS district director or service center director, as these positions no longer exist within the IRS. The offices of the district director and service center director were eliminated by the IRS reorganization implemented pursuant to the IRS Reform and Restructuring Act of 1998. The text of the temporary regulations serves as the text of these proposed regulations.

**DATES:** Written and electronic comments and requests for a public hearing must be received by November 26, 2007.

**ADDRESSES:** Send submissions to: CC:PA:LPD:PR (REG-118886-06), room 5203, Internal Revenue Service, PO Box 7604, Ben Franklin Station, Washington, DC 20044. Submissions may be hand-delivered Monday through Friday between the hours of 8 a.m. and 4 p.m. to CC:PA:LPD:PR (REG-118886-06), Courier's Desk, Internal Revenue Service, 1111 Constitution Avenue, NW., Washington, DC, or sent electronically via the Federal eRulemaking Portal at *www.regulations.gov* (IRS REG-118886-06).

**FOR FURTHER INFORMATION CONTACT:** Concerning the proposed regulations, Cynthia A. McGreevy, (202) 622-4910; concerning submissions of comments, Richard Hurst, (202) 622-7180 (not toll-free numbers).

**SUPPLEMENTARY INFORMATION:**

**Background and Explanation of Provisions**

These proposed regulations clarify the Income Tax Regulations (26 CFR part 1) under section 6411 relating to the computation and allowance of the tentative carryback adjustment. The tentative allowance is computed pursuant to §1.6411-2 but applied pursuant to §1.6411-3. These regulations clarify that for purposes of computing the allowance, the Commissioner will not consider amounts to which the taxpayer and the Commissioner are in disagreement. For purposes of applying the allowance, however, the Commissioner may credit or reduce the tentative adjustment by any assessed tax liabilities, unassessed liabilities determined in a statutory notice of deficiency, unassessed liabilities identified in a proof of claim filed in a bankruptcy proceeding, and other unassessed liabilities in rare and unusual circumstances. Regarding unassessed liabilities determined in a statutory notice of deficiency, see Rev. Rul. 2007-51. Regarding unassessed liabilities identified in a proof of claim filed in a bankruptcy proceeding, see Rev. Rul. 2007-52. See §601.601(d)(2). The IRS plans to adopt procedures requiring IRS National Office review prior to a credit or reduction of the tentative adjustment by an unassessed liability that constitutes a rare and unusual circumstance.

In the Rules and Regulations section of this issue of the **Federal Register**, the IRS is issuing temporary regulations relating to the computation and allowance of the tentative carryback adjustment under section 6411 of the Internal Revenue Code. The text of those temporary regulations also serves as the text of these proposed regulations. The preamble to the temporary regulations explains the temporary regulations and these proposed regulations.

**Proposed Effective Date**

These proposed amendments to §§1.6411-2 and 1.6411-3 apply with respect to applications for tentative refund filed on or after the date these rules are published as final regulations in the **Federal Register**. No implication is intended concerning whether or not a rule to be adopted in these regulations is applicable law for applications filed prior to that date.

**Special Analyses**

It has been determined that this notice of proposed rulemaking is not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. It also has been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to these regulations, and because these regulations do not impose a collection of information on small entities, the provisions of the Regulatory Flexibility Act (5 U.S.C. chapter 6) do not apply. Pursuant to section 7805(f) of the Internal Revenue Code, these regulations have been submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on their impact on small business.

**Comments and Requests for a Public Hearing**

Before these proposed regulations are adopted as final regulations, consideration will be given to any electronic and written comments (a signed original and eight (8) copies) that are submitted timely to the IRS. The IRS and Treasury Department specifically request comments on the clarity of the proposed regulations and how they can be made easier to understand. All comments will be available for public inspection and copying. A public hearing may be scheduled if requested in writing by a person who timely submits comments. If a public hearing is scheduled, notice of the date, time, and place for the hearing will be published in the **Federal Register.**

**Drafting Information**

The principal author of these regulations is Cynthia A. McGreevy of the Office of the Associate Chief Counsel (Procedure and Administration).

**List of Subjects in 26 CFR Part 1**

Income taxes, Reporting and recordkeeping requirements.

**Proposed Amendments to the Regulations**

Accordingly, 26 CFR part 1 is proposed to be amended as follows:

PART 1--INCOME TAXES

Paragraph 1. The authority citation for part 1 continues to read in part as follows:

Authority: 26 U.S.C. 7805 * * *

Par. 2. Section 1.6411-2 is revised to read as follows:

*§1.6411-2 Computation of tentative carryback adjustment.*

(a) [The text of proposed §1.6411-2(a) is the same as the text of §1.6411-2T(a) published elsewhere in this issue of the **Federal Register**].

(b) [The text of proposed §1.6411-2(b) is the same as the text of §1.6411-2T(b) published elsewhere in this issue of the **Federal Register**].

* * * * *

Par. 3. Section 1.6411-3 is revised to read as follows:

*§1.6411-3 Allowance of adjustments.*

(a) [The text of proposed §1.6411-3(a) is the same as the text of §1.6411-3T (a) published elsewhere in this issue of the **Federal Register**].

(b) [The text of proposed §1.6411-3(b) is the same as the text of §1.6411-3T (b) published elsewhere in this issue of the **Federal Register**].

(c) [The text of proposed §1.6411-3(c) is the same as the text of §1.6411-3T (c) published elsewhere in this issue of the **Federal Register**].

(d) [The text of proposed §1.6411-3(d) is the same as the text of §1.6411-3T (d) published elsewhere in this issue of the **Federal Register**].

* * * * *

Kevin M. Brown,

Deputy Commissioner for Services and Enforcement.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

               Plaintiff,

                             Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

               Defendants.

SPRINGER'S SECOND MOTION TO DISMISS RAISING PUBLIC PROTECTION

Lindsey Kent Springer ("Springer"), files this Second Motion to Dismiss the

document labeled "INDICTMENT" dated March 10, 2009, pursuant to Fed.R.Crim.Pr.

12, based upon the "complete defense"[1] provided pursuant to Title 44, Section

3512 and their regulations.

A Memorandum and accompanying exhibits is filed simultaneously with this

Motion.

CONCLUSION

Lindsey Kent Springer respectfully requests this Court dismiss each Count of

the Grand Jury indictment dated March 10, 2009, based upon the "complete

---

[1]In an unpublished order dated May 1, 2007, a panel of judges concluded
Springer could not raise the PRA as a Plaintiff and that it can only be raised as a
complete defense. *See Springer v. Internal Revenue Serv., ex rel. United States*,
2007 WL 1252475, at * 13 (10th Cir. May 1, 2007)

1

defense" under 44 U.S.C. § 3512(b), from being penalized, as mandated by 44

U.S.C. § 3512(a), and as hold he cannot be subject to any penalty for failure to

provide information on Form 1040 for 2000, 2002, 2003, 2004 and 2005, due to the

fact such information collection requests did not display any compliance with 5

C.F.R. §§ 1320.9 and 1320.8(b)(3), at the time or times required by law, and that

the approval of OMB # 1545-0074 was contingent upon the information required

by such application to be displayed along with such approval number on "it"

per the certification contained in the Form 83I for 1998, 2001 and 2004, to be

valid, and that no such compliance is displayed on any Form 1040 for the years

at issue in the Grand Jury indictment.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

2

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Memorandum of Law in Support of his Second  Motion To Dismiss  was ecf'd on

May  15, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


<u>/s/ Lindsey K. Springer</u>
Signature

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                    Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

MEMORANDUM OF LAW IN SUPPORT OF SPRINGER'S SECOND
MOTION TO DISMISS RAISING PUBLIC PROTECTION

Lindsey Kent Springer ("Springer"), files this Memorandum of Law in support of his Second Motion to Dismiss the document labeled "INDICTMENT" dated March 10, 2009, based upon the "complete defense"[1] provided pursuant to Title 44, Section 3512 and their regulations.

## A.    SUMMARY OF CHARGES IN COUNTS ONE THROUGH SIX

Each of the Six Counts in the Grand Jury Indictment rely heavily on the presumption that Springer was required to provide information regarding "income"[2]

---

[1]In an unpublished order dated May 1, 2007, a panel of judges concluded Springer could not raise the PRA as a Plaintiff and that it can only be raised as a complete defense.  *See Springer v. Internal Revenue Serv., ex rel. United States*, 2007 WL 1252475, at * 13 (10th Cir. May 1, 2007)

[2]The term "income" is not defined by Congress and at the heart of the DOJ's push is whether income in the form of gifts under section 102 was "gross income" the receipt of which required some form of reporting by Springer.

1

to the Internal Revenue Service on either an "individual income tax return" or a "United States Individual Income Tax Return."  See Parag. 6, 41,43,45,47 and 49.

**B.   LEGAL ARGUMENT IN FAVOR OF DISMISSAL PURSUANT TO VIOLATIONS OF THE PAPERWORK REDUCTION ACT AND CERTAIN RELEVANT REGULATIONS.**

The Supreme Court has made clear that tax forms such as the 1040 are information collection requests within the meaning of the Paperwork Reduction Act of 1980. *Dole v. United Steelworkers of America*, 494 U.S. 26, 33 (1990) ("Typical information collection requests include tax forms, medicare forms, financial loan applications, job applications, questionnaires, compliance reports, and tax or business records. "The PRA has a public liability provision stating, "[n]otwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information . . . if the collection of information does not display a valid control number."44 U.S.C. § 3512(a). Lewis v. CIR, 523 F.35 1272, 1274

Section 3512 actually reads:

**Public protection:**

(1).  Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this chapter if--

(a) **the collection of information does not display a valid control number assigned by the Director in accordance with this chapter**; or

(b) the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.

(2)**.  The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the**

2

**agency administrative process or judicial action applicable thereto**.

The PRA, 44 U.S.C. §§ 3501-20, precludes the imposition of any penalty against a person for "failing to comply with a collection of information" if either (1) it "does not display a valid control number" or (2) the agency fails to alert the person that he or she "is not required to respond to the collection of information unless it displays a valid control number." 44 U.S.C. § 3512(a). A § 3512(a) defense may be raised at any time. *See id.* § 3512(b). Tax forms are covered by the PRA. *See Dole v. United Steelworkers of Am.*, 494 U.S. 26, 33, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990). Mr. Chisum contends that "[s]ince there was no proof that Form 1040 was a lawful form under the [PRA], the trial court erred in failing to grant [his] request [at the sentencing hearing] to dismiss the indictment." Aplt. Br. at 29. **But the PRA only protects a person from failing to file information.** It does not protect one who files information which is false." *Collins*, 920 F.2d at 630 n. 13 (internal quotation marks omitted). The charges against Mr. Chisum were predicated on the filing of false information, **not the failure to file**. He is therefore not entitled to relief. U.S. v. Chisum, 502 F.3d 1237, 1244 (10th Cir. 2007)

Footnote 13 in U.S. v. Collins, 920 F.2d 619 (10th Cir. 1990) cited above by the Chisum Panel states:

> [fn13] In United States v. Weiss, 914 F.2d 1514, 1520-22 (2d Cir. 1990), the Second Circuit held that the Paperwork Reduction Act did not preclude prosecution for filing false medicare and Medicaid claims, despite the fact that the forms in question did not contain OMB control numbers. Distinguishing Smith, where defendants were prosecuted for

3

failure to file a Plan of Operations with the Forest Service, the Second Circuit reasoned that the Act "`**only protects a person from penalties for failing to files information It does not protect one who files information which is false.**'" Id. at 1522 (quoting Funk, The Paperwork Reduction Act: Paperwork Reduction Meets Administrative Law, 24 Harv.J. on Legis. 1, 77 n. 411 (1987)) (emphasis in original). We recognize that because defendant was charged with tax evasion and not failure to file tax returns, he technically was not being prosecuted for failure to provide information. Had defendant's tax evasion been effectuated through the filing of falsified tax returns, Weiss would dictate that no Paperwork Reduction Defense would be available to him. **But because the provision of information in 1040 forms is inexorably linked to the statutory requirement to pay taxes, and defendant failed to file such forms, the Paperwork Reduction Act was applicable to such conduct.**

There can be no doubt that whether the Form 1040 complied with the Paperwork Reduction Act of 1995 is a complete defense and can be raised at any time.  Equally, there can be no doubt that this complete defense applies whether the charges are willful failure to file, tax evasion, or conspiracy which includes and hinges upon a "failure to provide information" component.

**C.    THE FORM 1040 FOR EACH CALENDER YEAR 2000, 2002, 2003, 2004 and 2005 DO NOT COMPLY WITH THE CERTIFICATION MADE BY INTERNAL REVENUE SERVICE IN OBTAINING APPROVAL NUMBER OMB # 1545-0074.**

In order for any Agency to obtain approval to gather information from the public using any "form" they "must formulate a plan for tabulating the information in a useful manner. Agencies are also required to minimize the burden on the public to the extent practicable. See 44 U.S.C. § 3507(a) (1) (1982 ed. and Supp. V). In addition, the Act institutes a second layer of review by OMB for new paperwork requirements. **After an agency has satisfied itself that an instrument for collecting**

4

**information - termed an "information collection request" - is needed, the agency must submit the request to OMB for approval**. See 44 U.S.C. § 3507(a)(2) (1982 ed., Supp. V)

The Paperwork Reduction "Act prohibits any federal agency from adopting regulations which impose paperwork requirements on the public unless the information is not available to the agency from another source within the Federal Government. See *Dole v. United Steelworkers of Am.*, 494 U.S. 26, 32, 110 S.Ct. 929, 108 L.Ed.2d 23 (1990)

In Center for Safety v. National HWY TRAF., 244 F.3d 144, 148 (D.C. Cir. 2001) a Panel of the D.C. Circuit held that a request by NHTSA "was not enforceable as a result of the Paperwork Reduction Act and, therefore, we find that the submissions cannot be considered mandatory."   The Regulations drafted by the Office of Management and Budget are promulgated at 5 C.F.R. 1320.  See Lewis at 1277 "OMB has promulgated regulations relating to the PRA. See generally 5 C.F.R. part 1320. These regulations may to some extent be inconsistent with 44 U.S.C. § 3512. See 5 C.F.R. § 1320.5."  U.S. v. Smith, 866 F.2d 1092, 1099 (9th Cir. 1989); See Collins, 631 ("prosecution for failure to file a Plan of Operations with the Forest Service barred under § 3512 of the Act because the filing requirement was imposed pursuant to an information collection request which lacked an OMB control number).

The Application by the Internal Revenue Service to obtain approval to seek

5

information on Form 1040 is referred to as Form 83-I.  The regulations encompassing the Paperwork Reduction Act submissions is found at 5 C.F.R. §§ 1300-1399. Relevant for this Motion is 5 C.F.R. 1320.9

**Section 1320.9 Agency certifications for proposed collections of information.**

As part of the agency submission to OMB of a proposed collection of information, the agency (through the head of the agency, the Senior Official, or their designee) **shall certify (and provide a record supporting such certification**) that the <u>**proposed collection of information**</u>—

(a) Is necessary for the proper performance of the functions of the agency, including that the information to be collected will have practical utility;

(b) Is not unnecessarily duplicative of information otherwise reasonably accessible to the agency;

(c) Reduces to the extent practicable and appropriate the burden on persons who shall provide information to or for the agency, including with respect to small entities, as defined in the Regulatory Flexibility Act (5 U.S.C. 601(6)),the use of such techniques as:

(1) Establishing differing compliance or reporting requirements or timetables that take into account the resources available to those who are to respond;

(2) The clarification, consolidation, or simplification of compliance and reporting requirements; or

(3) An exemption from coverage of the collection of information, or any part thereof;

(d) **Is written using plain, coherent, and unambiguous terminology and is understandable to those who are to respond**;

(e) Is to be implemented in ways consistent and compatible, to the

6

maximum extent practicable, with the existing reporting and recordkeeping practices of those who are to respond;

(f) **Indicates for each recordkeeping requirement the length of time persons are required to maintain the records specified**;

(g) **Informs potential respondents of the information called for under § 1320.8(b)(3);**

(h) Has been developed by an office that has planned and allocated resources for the efficient and effective management and use of the information to be collected, including the processing of the information in a manner which shall enhance, where appropriate, the utility of the information to agencies and the public;

(i) Uses effective and efficient statistical survey methodology appropriate to the purpose for which the information is to be collected; and

(j) To the maximum extent practicable, uses appropriate information technology to reduce burden and improve data quality, agency efficiency and responsiveness to the public

In short, the "certification" requires that the request Form be **"written using plain, coherent, and unambiguous terminology and is understandable to those who are to respond."** Furthermore, it must "**Indicates for each recordkeeping requirement the length of time persons are required to maintain the records specified.**" And, it must **Inform "potential respondents of the information called for under § 1320.8(b)(3)."** None of these requirements have bee met on Form 1040.

Attached to this Memorandum is each "U.S. Individual Income Tax" Form 1040 for year 2000 through 2005, with the exception of 2001. See Exhibit 1,2,3,4 and 5. Each of these forms display 1545-0074.

7

Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 587

The Certification made by the Internal Revenue Service in obtaining OMB # 1545-0074, contained a promise that "it" would contain the following under 5 C.F.R. 1320.9(d), (f) and (g).

1320.8(b)(3) provides:

(3) Informs and provides reasonable notice to the potential persons to whom the collection of information is addressed of—

(i) The reasons the information is planned to be and/or has been collected;

(ii) The way such information is planned to be and/or has been used to further the proper performance of the functions of the agency;

(iii) An estimate, to the extent practicable, of the average burden of the collection (together with a request that the public direct to the agency any comments concerning the accuracy of this burden estimate and any suggestions for reducing this burden);

(iv) Whether responses to the collection of information are voluntary, required to obtain or retain a benefit (citing authority), or mandatory (citing authority);

(v) The nature and extent of confidentiality to be provided, if any (citing authority); and

(vi) The fact that an agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid OMB control number.

The Form 1040 and OMB # 1545-0074 affix to one another for years 2000, 2002, 2003, 2004 and 2005, by way of Internal Revenue Service certifying or promising to provide the information listed in 5 C.F.R. § 1320.8(b)(3), as listed in 5 C.F.R. § 1320.9,

8

including (d), (f) and (g) on Form 1040. The 83I application for 1998, 2001[3] and 2004, are attached as Exhibit 6,7 and 8, respectively.  The 83I refers to the word "it" to explain the certification.   For instance, the Internal Revenue Service certifies that the "collection of information encompassed by this request" contains the following: a) it is necessary; b) it avoids; c) it reduces; d) it uses; e) its implementation; f) it indicates; g) it informs; h) it was developed.  It it it!  See Exhibit 6, pg. 2, Exhibit 7, pg. 5 and Exhibit 8, pg. 2.

OMB does not approve Form 1040 by looking at the form and confirming "it" contains the requirements of 5 C.F.R. 1320.8(b)(3).  How could they?  Anyone who looks at "it" can tell "it" does not contain any of the information required by 5 C.F.R. 1320.8(b)(3) for years 2000, 2002, 2003, 2004 and 2005.  Compare Exhibit 1,2,3,4 and 5 attached hereto.  There would otherwise be no need for the certification if the form is approved by OMB by reviewing "it."

Furthermore, there is no reference to any "instruction booklet" that contains the requirements of 5 C.F.R. § 1320.8(b)(3) on Form 1040 for any of the years at issue in the Grand Jury indictment dated March 10, 2009.  In fact there is no mention of any specific place these requirements can be found anywhere on Form 1040.

---

[3]Applications are for 3 year periods with Form 83Cs required to amend during the 3 year period.  In 1995 there was no application whatsoever.  For the year 2005 Form, Internal Revenue Service decided to abort their 212 different request Forms displaying separate approval numbers and since January 2006, to present, display 1545-0074 on all 212 Forms, including the Form 1040 at issue in Counts One and Four.  The First 83I filed by the IRS was for 1998, 1999 and 2000.

9

As is plain to see, to get OMB to "assign" approval number 1545-0074 to the Internal Revenue Service, the service had to "certify" its Form displaying 1545-0074 would contain the requirements of 5 C.F.R. § 1320.8(b)(3).   Springer has diligently sought such compliant request form and after careful review at IRS.gov, no such Form displaying 1545-0074 containing the information "it" is required to display could be located at any public place.

The Government presented no valid Form 1040 to the Grand Jury to obtain the "indictment" in this case and the Government has no Form 1040 that complies with 5 C.F.R. §§ 1320.9 and 1320.8(b)(3) to present to any Jury or this Court to consider whether Springer was required to provide any information to the Internal Revenue Service on any non-compliant request Form.

Because the Form 1040 for 2000, 2002, 2003, 2004 and 2005, does not comply with 5 C.F.R. §§ 1320.9 and 1320.8(b)(3), the Form 1040 ("the collection of information") does not display a valid control number **assigned by the Director in accordance with this chapter** because it does not display what Internal Revenue Service certified to OMB that it would display when the Internal Revenue Service presented their 83I for "assignment" and to which OMB premised approval for 1545-0074 upon such certification.

Since the Form 1040 for the years in question does not comply with the certification Internal Revenue Service agreed to when it obtained purported approval of 1545-0074 from OMB, and because had no certification been

10

presented no approval would have been given for any number, whatsoever, 44

U.S.C. § 3512(b), and the relevant case law cited above, directs the "public

provision" is a "complete defense" to the charges that Springer failed to provide

information on any U.S. Individual Income Tax Form 1040 to the Agency assigned

1545-0074.

CONCLUSION

Lindsey Kent Springer respectfully requests this Court dismiss each Count of

the Grand Jury indictment dated March 10, 2009, based upon the "complete

defense" under 44  U.S.C. § 3512(b), from being penalized, as mandated by 44

U.S.C. § 3512(a),  and as hold he cannot be subject to any penalty for failure to

provide information on Form 1040 for 2000, 2002, 2003, 2004 and 2005, due to the

fact such information collection requests did not display any compliance with 5

C.F.R. §§ 1320.9 and 1320.8(b)(3), at the time or times required by law, and that

the approval of OMB # 1545-0074 was contingent upon the information required

by such application to be displayed along with such approval number on "it"

per the certification contained in the Form 83I for 1998, 2001 and 2004, to be

valid,  and that no such compliance is displayed on any Form 1040 for the years

at issue in the Grand Jury indictment.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

11

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Memorandum of Law in Support of his Second  Motion To Dismiss  was ecf'd on

May  15, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature

12

Form **1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** 2000 (99) IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2000, or other tax year beginning , 2000, ending , 20 | OMB No. 1545-0074

**Label**

(See instructions on page 19.)

**Use the IRS label.** Otherwise, please print or type.

L A B E L   H E R E

Your first name and initial | Last name | Your social security number

If a joint return, spouse's first name and initial | Last name | Spouse's social security number

Home address (number and street). If you have a P.O. box, see page 19. | Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 19.

▲ **Important!** ▲
You **must** enter your SSN(s) above.

**Presidential Election Campaign** (See page 19.)

Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? . . . ▶

| | You | | Spouse |
|---|---|---|---|
| | ☐ Yes ☐ No | | ☐ Yes ☐ No |

**Filing Status**

Check only one box.

1 ☐ Single
2 ☐ Married filing joint return (even if only one had income)
3 ☐ Married filing separate return. Enter spouse's social security no. above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 19.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (year spouse died ▶ ). (See page 19.)

**Exemptions**

6a ☐ **Yourself.** If your parent (or someone else) can claim you as a dependent on his or her tax return, **do not** check box 6a . . . . . . . . . . . . . . . . . . . .

b ☐ **Spouse** . . . . . . . . . . . . . . . . . . . . . . . . . . .

c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 20) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

If more than six dependents, see page 20.

No. of boxes checked on 6a and 6b

No. of your children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 20)

Dependents on 6c not entered above

Add numbers entered on lines above ▶

d Total number of exemptions claimed

**Income**

**Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.**

If you did not get a W-2, see page 21.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

7 Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . . | 7 |
8a **Taxable** interest. Attach Schedule B if required . . . . . . . | 8a |
b Tax-exempt interest. **Do not** include on line 8a . . . | 8b |
9 Ordinary dividends. Attach Schedule B if required . . . . . . . | 9 |
10 Taxable refunds, credits, or offsets of state and local income taxes (see page 22) . | 10 |
11 Alimony received . . . . . . . . . . . . . . . . . . | 11 |
12 Business income or (loss). Attach Schedule C or C-EZ . . . . . . | 12 |
13 Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13 |
14 Other gains or (losses). Attach Form 4797 . . . . . . . . . . | 14 |
15a Total IRA distributions | 15a | b Taxable amount (see page 23) | 15b |
16a Total pensions and annuities | 16a | b Taxable amount (see page 23) | 16b |
17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 |
18 Farm income or (loss). Attach Schedule F . . . . . . . . . . | 18 |
19 Unemployment compensation . . . . . . . . . . . . . . | 19 |
20a Social security benefits | 20a | b Taxable amount (see page 25) | 20b |
21 Other income. List type and amount (see page 25) . . . . . . . . . . . . . . | 21 |
22 Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 |

**Adjusted Gross Income**

23 IRA deduction (see page 27) . . . . . . . | 23 |
24 Student loan interest deduction (see page 27) . . . | 24 |
25 Medical savings account deduction. Attach Form 8853 . | 25 |
26 Moving expenses. Attach Form 3903 . . . . . | 26 |
27 One-half of self-employment tax. Attach Schedule SE | 27 |
28 Self-employed health insurance deduction (see page 29) | 28 |
29 Self-employed SEP, SIMPLE, and qualified plans . . | 29 |
30 Penalty on early withdrawal of savings . . . . | 30 |
31a Alimony paid  b Recipient's SSN ▶ | 31a |
32 Add lines 23 through 31a . . . . . . . . . . . . . . . . . | 32 |
33 Subtract line 32 from line 22. This is your **adjusted gross income** . . . . . . ▶ | 33 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 56. | Cat. No. 11320B | Form **1040** (2000)

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 34 | Amount from line 33 (adjusted gross income) | 34 | |
| | 35a | Check if: ☐ **You** were 65 or older, ☐ Blind; ☐ **Spouse** was 65 or older, ☐ Blind. Add the number of boxes checked above and enter the total here ▶ **35a** | | |
| **Standard Deduction for Most People** | b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 31 and check here ▶ **35b** ☐ | | |
| | 36 | Enter your **itemized deductions** from Schedule A, line 28, **or standard deduction** shown on the left. **But** see page 31 to find your standard deduction if you checked any box on line 35a or 35b or if someone can claim you as a dependent | 36 | |
| Single: $4,400 | 37 | Subtract line 36 from line 34 | 37 | |
| Head of household: $6,450 | 38 | If line 34 is $96,700 or less, multiply $2,800 by the total number of exemptions claimed on line 6d. If line 34 is over $96,700, see the worksheet on page 32 for the amount to enter | 38 | |
| Married filing jointly or Qualifying widow(er): $7,350 | 39 | **Taxable income.** Subtract line 38 from line 37. If line 38 is more than line 37, enter -0- | 39 | |
| | 40 | **Tax** (see page 32). Check if any tax is from **a** ☐ Form(s) 8814  **b** ☐ Form 4972 | 40 | |
| | 41 | Alternative minimum tax. Attach Form 6251 | 41 | |
| Married filing separately: $3,675 | 42 | Add lines 40 and 41 ▶ | 42 | |

| | | | | |
|---|---|---|---|---|
| | 43 | Foreign tax credit. Attach Form 1116 if required | 43 | |
| | 44 | Credit for child and dependent care expenses. Attach Form 2441 | 44 | |
| | 45 | Credit for the elderly or the disabled. Attach Schedule R | 45 | |
| | 46 | Education credits. Attach Form 8863 | 46 | |
| | 47 | Child tax credit (see page 36) | 47 | |
| | 48 | Adoption credit. Attach Form 8839 | 48 | |
| | 49 | Other. Check if from **a** ☐ Form 3800  **b** ☐ Form 8396  **c** ☐ Form 8801  **d** ☐ Form (specify) | 49 | |
| | 50 | Add lines 43 through 49. These are your **total credits** | 50 | |
| | 51 | Subtract line 50 from line 42. If line 50 is more than line 42, enter -0- | 51 | |

| | | | | |
|---|---|---|---|---|
| **Other Taxes** | 52 | Self-employment tax. Attach Schedule SE | 52 | |
| | 53 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 53 | |
| | 54 | Tax on IRAs, other retirement plans, and MSAs. Attach Form 5329 if required | 54 | |
| | 55 | Advance earned income credit payments from Form(s) W-2 | 55 | |
| | 56 | Household employment taxes. Attach Schedule H | 56 | |
| | 57 | Add lines 51 through 56. This is your **total tax** ▶ | 57 | |

| | | | | |
|---|---|---|---|---|
| **Payments** | 58 | Federal income tax withheld from Forms W-2 and 1099 | 58 | |
| | 59 | 2000 estimated tax payments and amount applied from 1999 return | 59 | |
| If you have a qualifying child, attach Schedule EIC. | 60a | **Earned income credit (EIC)** | 60a | |
| | b | Nontaxable earned income: amount ▶  and type ▶ | | |
| | 61 | Excess social security and RRTA tax withheld (see page 50) | 61 | |
| | 62 | Additional child tax credit. Attach Form 8812 | 62 | |
| | 63 | Amount paid with request for extension to file (see page 50) | 63 | |
| | 64 | Other payments. Check if from **a** ☐ Form 2439 **b** ☐ Form 4136 | 64 | |
| | 65 | Add lines 58, 59, 60a, and 61 through 64. These are your **total payments** ▶ | 65 | |

| | | | | |
|---|---|---|---|---|
| **Refund** | 66 | If line 65 is more than line 57, subtract line 57 from line 65. This is the amount you **overpaid** | 66 | |
| | 67a | Amount of line 66 you want **refunded to you** ▶ | 67a | |
| Have it directly deposited! See page 50 and fill in 67b, 67c, and 67d. | ▶ b | Routing number    ▶ c Type: ☐ Checking ☐ Savings | | |
| | ▶ d | Account number | | |
| | 68 | Amount of line 66 you want **applied to your 2001 estimated tax** ▶ | 68 | |

| | | | | |
|---|---|---|---|---|
| **Amount You Owe** | 69 | If line 57 is more than line 65, subtract line 65 from line 57. This is the **amount you owe**. For details on how to pay, see page 51 ▶ | 69 | |
| | 70 | Estimated tax penalty. Also include on line 69 | 70 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See page 19.

Keep a copy for your records.

| Your signature | Date | Your occupation | Daytime phone number |
|---|---|---|---|
| | | | |
| Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation | May the IRS discuss this return with the preparer shown below (see page 52)? ☐ Yes ☐ No |

**Paid Preparer's Use Only**

| Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code ▶ | | EIN | |
| | | Phone no. (    ) | |

Form **1040** (2000)

Form **1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** 2002    (99)   IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2002, or other tax year beginning _____, 2002, ending _____, 20 ____   OMB No. 1545-0074

## Label

(See instructions on page 21.)

**Use the IRS label.** Otherwise, please print or type.

L A B E L   H E R E

| Your first name and initial | Last name | Your social security number |
| If a joint return, spouse's first name and initial | Last name | Spouse's social security number |

Home address (number and street). If you have a P.O. box, see page 21.   Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 21.

▲ **Important!** ▲

You **must** enter your SSN(s) above.

**Presidential Election Campaign**
(See page 21.)

Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund?   ▶

You   □ Yes   □ No
Spouse   □ Yes   □ No

## Filing Status

Check only one box.

1  □ Single
2  □ Married filing jointly (even if only one had income)
3  □ Married filing separately. Enter spouse's SSN above and full name here. ▶
4  □ Head of household (with qualifying person). (See page 21.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5  □ Qualifying widow(er) with dependent child (year spouse died ▶ _____ ). (See page 21.)

## Exemptions

6a  □ **Yourself.** If your parent (or someone else) can claim you as a dependent on his or her tax return, **do not** check box 6a

b  □ **Spouse**

c  Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 22) |
|---|---|---|---|
| | | | □ |
| | | | □ |
| | | | □ |
| | | | □ |
| | | | □ |

If more than five dependents, see page 22.

No. of boxes checked on 6a and 6b

No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 22)

Dependents on 6c not entered above

Add numbers on lines above ▶

d  Total number of exemptions claimed

## Income

**Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.**

If you did not get a W-2, see page 23.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

7  Wages, salaries, tips, etc. Attach Form(s) W-2   | 7 |
8a  Taxable interest. Attach Schedule B if required   | 8a |
b  Tax-exempt interest. **Do not** include on line 8a   | 8b |
9  Ordinary dividends. Attach Schedule B if required   | 9 |
10  Taxable refunds, credits, or offsets of state and local income taxes (see page 24)   | 10 |
11  Alimony received   | 11 |
12  Business income or (loss). Attach Schedule C or C-EZ   | 12 |
13  Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ □   | 13 |
14  Other gains or (losses). Attach Form 4797   | 14 |
15a  IRA distributions   | 15a |   b Taxable amount (see page 25)   | 15b |
16a  Pensions and annuities   | 16a |   b Taxable amount (see page 25)   | 16b |
17  Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E   | 17 |
18  Farm income or (loss). Attach Schedule F   | 18 |
19  Unemployment compensation   | 19 |
20a  Social security benefits   | 20a |   b Taxable amount (see page 27)   | 20b |
21  Other income. List type and amount (see page 29)   | 21 |
22  Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶   | 22 |

## Adjusted Gross Income

23  Educator expenses (see page 29)   | 23 |
24  IRA deduction (see page 29)   | 24 |
25  Student loan interest deduction (see page 31)   | 25 |
26  Tuition and fees deduction (see page 32)   | 26 |
27  Archer MSA deduction. Attach Form 8853   | 27 |
28  Moving expenses. Attach Form 3903   | 28 |
29  One-half of self-employment tax. Attach Schedule SE   | 29 |
30  Self-employed health insurance deduction (see page 33)   | 30 |
31  Self-employed SEP, SIMPLE, and qualified plans   | 31 |
32  Penalty on early withdrawal of savings   | 32 |
33a  Alimony paid   b Recipient's SSN ▶   | 33a |
34  Add lines 23 through 33a   | 34 |
35  Subtract line 34 from line 22. This is your **adjusted gross income**   ▶   | 35 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 76.   Cat. No. 11320B   Form **1040** (2002)

Form 1040 (2002)    Page **2**

| | | | | |
|---|---|---|---|---|
| **Tax and Credits** | 36 | Amount from line 35 (adjusted gross income) . . . . . . . . . . | 36 | |
| | 37a | Check if: ☐ **You** were 65 or older, ☐ Blind; ☐ **Spouse** was 65 or older, ☐ Blind. | | |
| **Standard Deduction for—** | | Add the number of boxes checked and enter the total here ▶ 37a ☐ | | |
| • People who checked any box on line 37a or 37b **or** who can be claimed as a dependent, see page 34. | b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 34 and check here . . . . . ▶ 37b ☐ | | |
| | 38 | **Itemized deductions** (from Schedule A) **or** your **standard deduction** (see left margin) . | 38 | |
| | 39 | Subtract line 38 from line 36 . . . . . . . . . . . . . . | 39 | |
| | 40 | If line 36 is $103,000 or less, multiply $3,000 by the total number of exemptions claimed on line 6d. If line 36 is over $103,000, see the worksheet on page 35 . . . . | 40 | |
| • All others: | 41 | **Taxable income.** Subtract line 40 from line 39. If line 40 is more than line 39, enter -0- . | 41 | |
| Single, $4,700 | 42 | **Tax** (see page 36). Check if any tax is from: a ☐ Form(s) 8814   b ☐ Form 4972 . . | 42 | |
| Head of household, $6,900 | 43 | **Alternative minimum tax** (see page 37). Attach Form 6251 . . . . . . | 43 | |
| | 44 | Add lines 42 and 43 . . . . . . . . . . . . . . . . ▶ | 44 | |
| Married filing jointly or Qualifying widow(er), $7,850 | 45 | Foreign tax credit. Attach Form 1116 if required . . . . | 45 | | |
| | 46 | Credit for child and dependent care expenses. Attach Form 2441 | 46 | | |
| | 47 | Credit for the elderly or the disabled. Attach Schedule R . . | 47 | | |
| Married filing separately, $3,925 | 48 | Education credits. Attach Form 8863 . . . . . . . | 48 | | |
| | 49 | Retirement savings contributions credit. Attach Form 8880 . . | 49 | | |
| | 50 | Child tax credit (see page 39) . . . . . . . . . | 50 | | |
| | 51 | Adoption credit. Attach Form 8839 . . . . . . . . | 51 | | |
| | 52 | Credits from:  a ☐ Form 8396   b ☐ Form 8859 . . | 52 | | |
| | 53 | Other credits. Check applicable box(es):  a ☐ Form 3800 | | | |
| | | b ☐ Form 8801  c ☐ Specify _____ | 53 | | |
| | 54 | Add lines 45 through 53. These are your **total credits** . . . . . . . . . | 54 | |
| | 55 | Subtract line 54 from line 44. If line 54 is more than line 44, enter -0- . . . . ▶ | 55 | |
| **Other Taxes** | 56 | Self-employment tax. Attach Schedule SE . . . . . . . . . . . | 56 | |
| | 57 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 57 | |
| | 58 | Tax on qualified plans, including IRAs, and other tax-favored accounts. Attach Form 5329 if required | 58 | |
| | 59 | Advance earned income credit payments from Form(s) W-2 . . . . . . . | 59 | |
| | 60 | Household employment taxes. Attach Schedule H . . . . . . . . . | 60 | |
| | 61 | Add lines 55 through 60. This is your **total tax** . . . . . . . . ▶ | 61 | |
| **Payments** | 62 | Federal income tax withheld from Forms W-2 and 1099 . . | 62 | | |
| | 63 | 2002 estimated tax payments and amount applied from 2001 return | 63 | | |
| If you have a qualifying child, attach Schedule EIC. | 64 | **Earned income credit (EIC)** . . . . . . . . . | 64 | | |
| | 65 | Excess social security and tier 1 RRTA tax withheld (see page 56) | 65 | | |
| | 66 | Additional child tax credit. Attach Form 8812 . . . . | 66 | | |
| | 67 | Amount paid with request for extension to file (see page 56) | 67 | | |
| | 68 | Other payments from:  a ☐ Form 2439  b ☐ Form 4136  c ☐ Form 8885 | 68 | | |
| | 69 | Add lines 62 through 68. These are your **total payments** . . . . . . ▶ | 69 | |
| **Refund** | 70 | If line 69 is more than line 61, subtract line 61 from line 69. This is the amount you **overpaid** | 70 | |
| Direct deposit? See page 56 and fill in 71b, 71c, and 71d. | 71a | Amount of line 70 you want **refunded to you** . . . . . . . ▶ | 71a | |
| | ▶ b | Routing number ⎸⎸⎸⎸⎸⎸⎸⎸⎸  ▶ c Type: ☐ Checking ☐ Savings | | |
| | ▶ d | Account number ⎸⎸⎸⎸⎸⎸⎸⎸⎸⎸⎸⎸⎸⎸⎸⎸ | | |
| | 72 | Amount of line 70 you want **applied to your 2003 estimated tax** ▶ | 72 | | |
| **Amount You Owe** | 73 | **Amount you owe.** Subtract line 69 from line 61. For details on how to pay, see page 57 ▶ | 73 | |
| | 74 | Estimated tax penalty (see page 57) . . . . . . . | 74 | | |

| **Third Party Designee** | Do you want to allow another person to discuss this return with the IRS (see page 58)? ☐ **Yes.** Complete the following. ☐ **No** |
|---|---|
| | Designee's name ▶ _____  Phone no. ▶ ( )  Personal identification number (PIN) ▶ ⎸⎸⎸⎸⎸ |

**Sign Here**
Joint return? See page 21.
Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Your signature | Date | Your occupation | Daytime phone number ( ) |
|---|---|---|---|
| Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation | |

**Paid Preparer's Use Only**

| Preparer's signature ▶ | | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| Firm's name (or yours if self-employed), address, and ZIP code | ▶ | | EIN | |
| | | | Phone no. ( ) | |

Form **1040** (2002)

Form **1040**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** 2003 (99) IRS Use Only—Do not write or staple in this space.

| | |
|---|---|
| For the year Jan. 1–Dec. 31, 2003, or other tax year beginning , 2003, ending , 20 | OMB No. 1545-0074 |

## Label

(See instructions on page 19.)

**Use the IRS label.** Otherwise, please print or type.

L A B E L   H E R E

Your first name and initial | Last name | **Your social security number**

If a joint return, spouse's first name and initial | Last name | **Spouse's social security number**

Home address (number and street). If you have a P.O. box, see page 19. | Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 19.

▲ **Important!** ▲

You **must** enter your SSN(s) above.

**Presidential Election Campaign**
(See page 19.)

Note. Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? . . . ▶

You: ☐ Yes ☐ No   Spouse: ☐ Yes ☐ No

## Filing Status

Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 20.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child. (See page 20.)

## Exemptions

6a ☐ **Yourself.** If your parent (or someone else) can claim you as a dependent on his or her tax return, **do not** check box 6a . . . . . . . . .

b ☐ **Spouse** . . . . . . . . . . . .

c Dependents:

| (1) First name   Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4)✔ if qualifying child for child tax credit (see page 21) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

If more than five dependents, see page 21.

No. of boxes checked on 6a and 6b [ ]
No. of children on 6c who:
• lived with you [ ]
• did not live with you due to divorce or separation (see page 21) [ ]
Dependents on 6c not entered above [ ]
Add numbers on lines above ▶ [ ]

d Total number of exemptions claimed . . . . . . . . . . . . . . . . . .

## Income

**Attach Forms W-2 and W-2G here. Also attach Form(s) 1099-R if tax was withheld.**

If you did not get a W-2, see page 22.

Enclose, but do not attach, any payment. Also, please use Form 1040-V.

7 Wages, salaries, tips, etc. Attach Form(s) W-2 . . . . . . . . | 7 |
8a **Taxable** interest. Attach Schedule B if required . . . . . . . | 8a |
b **Tax-exempt** interest. **Do not** include on line 8a . . . | 8b |
9a Ordinary dividends. Attach Schedule B if required . . . . . . | 9a |
b Qualified dividends (see page 23) . . . . . . | 9b |
10 Taxable refunds, credits, or offsets of state and local income taxes (see page 23) | 10 |
11 Alimony received . . . . . . . . . . . . . . . | 11 |
12 Business income or (loss). Attach Schedule C or C-EZ . . . . . | 12 |
13a Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13a |
b If box on 13a is checked, enter post-May 5 capital gain distributions | 13b |
14 Other gains or (losses). Attach Form 4797 . . . . . . . . | 14 |
15a IRA distributions . . | 15a | b Taxable amount (see page 25) | 15b |
16a Pensions and annuities | 16a | b Taxable amount (see page 25) | 16b |
17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17 |
18 Farm income or (loss). Attach Schedule F . . . . . . . . | 18 |
19 Unemployment compensation . . . . . . . . . . | 19 |
20a Social security benefits | 20a | b Taxable amount (see page 27) | 20b |
21 Other income. List type and amount (see page 27) . . . . . . | 21 |
22 Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22 |

## Adjusted Gross Income

23 Educator expenses (see page 29) . . . . . | 23 |
24 IRA deduction (see page 29) . . . . . . . | 24 |
25 Student loan interest deduction (see page 31) . . . | 25 |
26 Tuition and fees deduction (see page 32) . . . . | 26 |
27 Moving expenses. Attach Form 3903 . . . . . | 27 |
28 One-half of self-employment tax. Attach Schedule SE . | 28 |
29 Self-employed health insurance deduction (see page 33) | 29 |
30 Self-employed SEP, SIMPLE, and qualified plans . . | 30 |
31 Penalty on early withdrawal of savings . . . . | 31 |
32a Alimony paid   b Recipient's SSN ▶ | 32a |
33 Add lines 23 through 32a . . . . . . . . . . . . . . . . | 33 |
34 Subtract line 33 from line 22. This is your **adjusted gross income** . . . . . . ▶ | 34 |

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 77.   Cat. No. 11320B   Form **1040** (2003)

Form 1040 (2003)  Page **2**

## Tax and Credits

**Standard Deduction for—**

- People who checked any box on line 36a or 36b **or** who can be claimed as a dependent, see page 34.
- All others:

Single or Married filing separately, $4,750

Married filing jointly or Qualifying widow(er), $9,500

Head of household, $7,000

| | | |
|---|---|---|
| 35 | Amount from line 34 (adjusted gross income) | **35** |
| 36a | Check if: ☐ **You** were born before January 2, 1939, ☐ Blind. ☐ **Spouse** was born before January 2, 1939, ☐ Blind. } Total boxes checked ▶ 36a | |
| b | If you are married filing separately and your spouse itemizes deductions, or you were a dual-status alien, see page 34 and check here . . . . ▶ 36b ☐ | |
| 37 | **Itemized deductions** (from Schedule A) **or** your **standard deduction** (see left margin) | **37** |
| 38 | Subtract line 37 from line 35 | **38** |
| 39 | If line 35 is $104,625 or less, multiply $3,050 by the total number of exemptions claimed on line 6d. If line 35 is over $104,625, see the worksheet on page 35 | **39** |
| 40 | **Taxable income.** Subtract line 39 from line 38. If line 39 is more than line 38, enter -0- | **40** |
| 41 | **Tax** (see page 36). Check if any tax is from: **a** ☐ Form(s) 8814  **b** ☐ Form 4972 | **41** |
| 42 | **Alternative minimum tax** (see page 38). Attach Form 6251 | **42** |
| 43 | Add lines 41 and 42 . . . . . . . . . . . . ▶ | **43** |
| 44 | Foreign tax credit. Attach Form 1116 if required . . . | 44 | |
| 45 | Credit for child and dependent care expenses. Attach Form 2441 | 45 | |
| 46 | Credit for the elderly or the disabled. Attach Schedule R . . | 46 | |
| 47 | Education credits. Attach Form 8863 . . . . . . | 47 | |
| 48 | Retirement savings contributions credit. Attach Form 8880 . . | 48 | |
| 49 | Child tax credit (see page 40) . . . . . . . . | 49 | |
| 50 | Adoption credit. Attach Form 8839 . . . . . . . | 50 | |
| 51 | Credits from: **a** ☐ Form 8396  **b** ☐ Form 8859 . . | 51 | |
| 52 | Other credits. Check applicable box(es): **a** ☐ Form 3800  **b** ☐ Form 8801  **c** ☐ Specify _____ | 52 | |
| 53 | Add lines 44 through 52. These are your **total credits** | **53** |
| 54 | Subtract line 53 from line 43. If line 53 is more than line 43, enter -0-. ▶ | **54** |

## Other Taxes

| | | |
|---|---|---|
| 55 | Self-employment tax. Attach Schedule SE . . . . . | **55** |
| 56 | Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | **56** |
| 57 | Tax on qualified plans, including IRAs, and other tax-favored accounts. Attach Form 5329 if required | **57** |
| 58 | Advance earned income credit payments from Form(s) W-2 . | **58** |
| 59 | Household employment taxes. Attach Schedule H . . . . | **59** |
| 60 | Add lines 54 through 59. This is your **total tax** . . . ▶ | **60** |

## Payments

If you have a qualifying child, attach Schedule EIC.

| | | |
|---|---|---|
| 61 | Federal income tax withheld from Forms W-2 and 1099 . . | 61 | |
| 62 | 2003 estimated tax payments and amount applied from 2002 return | 62 | |
| 63 | **Earned income credit (EIC)** . . . . . . . . | 63 | |
| 64 | Excess social security and tier 1 RRTA tax withheld (see page 56) | 64 | |
| 65 | Additional child tax credit. Attach Form 8812 . . . . | 65 | |
| 66 | Amount paid with request for extension to file (see page 56) | 66 | |
| 67 | Other payments from: **a** ☐ Form 2439 **b** ☐ Form 4136 **c** ☐ Form 8885 | 67 | |
| 68 | Add lines 61 through 67. These are your **total payments** . ▶ | **68** |

## Refund

Direct deposit? See page 56 and fill in 70b, 70c, and 70d.

| | | |
|---|---|---|
| 69 | If line 68 is more than line 60, subtract line 60 from line 68. This is the amount you **overpaid** | **69** |
| 70a | Amount of line 69 you want **refunded to you** . . . . ▶ | **70a** |
| ▶ b | Routing number | ▶ c Type: ☐ Checking ☐ Savings |
| ▶ d | Account number | |
| 71 | Amount of line 69 you want **applied to your 2004 estimated tax** ▶ | 71 | |

## Amount You Owe

| | | |
|---|---|---|
| 72 | **Amount you owe.** Subtract line 68 from line 60. For details on how to pay, see page 57 ▶ | **72** |
| 73 | Estimated tax penalty (see page 58) . . . . . . | 73 | |

## Third Party Designee

Do you want to allow another person to discuss this return with the IRS (see page 58)? ☐ **Yes.** Complete the following. ☐ **No**

Designee's name _____    Phone no. ( )    Personal identification number (PIN) _____

## Sign Here

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Joint return? See page 20. Keep a copy for your records.

Your signature | Date | Your occupation | Daytime phone number ( )

Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation

## Paid Preparer's Use Only

Preparer's signature _____ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code _____ | EIN | Phone no. ( )

Form **1040** (2003)

Form **1040**  Department of the Treasury—Internal Revenue Service
**U.S. Individual Income Tax Return**  **2004**  (99)  IRS Use Only—Do not write or staple in this space.

For the year Jan. 1–Dec. 31, 2004, or other tax year beginning , 2004, ending , 20   OMB No. 1545-0074

## Label
(See instructions on page 16.)

**Use the IRS label.** Otherwise, please print or type.

Your first name and initial | Last name | Your social security number

If a joint return, spouse's first name and initial | Last name | Spouse's social security number

Home address (number and street). If you have a P.O. box, see page 16. | Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 16.

▲ **Important!** ▲
You **must** enter your SSN(s) above.

**Presidential Election Campaign** (See page 16.)

**Note.** Checking "Yes" will not change your tax or reduce your refund.
Do you, or your spouse if filing a joint return, want $3 to go to this fund? ▶
You ☐ Yes ☐ No  Spouse ☐ Yes ☐ No

## Filing Status
Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 17.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (see page 17)

## Exemptions

6a ☐ **Yourself.** If someone can claim you as a dependent, **do not** check box 6a
b ☐ **Spouse**

c Dependents:

| (1) First name    Last name | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 18) |
|---|---|---|---|
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |
| | | | ☐ |

If more than four dependents, see page 18.

d Total number of exemptions claimed

Boxes checked on 6a and 6b
No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 18)
Dependents on 6c not entered above
Add numbers on lines above ▶

## Income

**Attach Form(s) W-2 here. Also attach Forms W-2G and 1099-R if tax was withheld.**

If you did not get a W-2, see page 19.

Enclose, but do not attach, any payment. Also, please use **Form 1040-V.**

7 Wages, salaries, tips, etc. Attach Form(s) W-2 | 7
8a **Taxable** interest. Attach Schedule B if required | 8a
b **Tax-exempt** interest. **Do not** include on line 8a | 8b
9a Ordinary dividends. Attach Schedule B if required | 9a
b Qualified dividends (see page 20) | 9b
10 Taxable refunds, credits, or offsets of state and local income taxes (see page 20) | 10
11 Alimony received | 11
12 Business income or (loss). Attach Schedule C or C-EZ | 12
13 Capital gain or (loss). Attach Schedule D if required. If not required, check here ▶ ☐ | 13
14 Other gains or (losses). Attach Form 4797 | 14
15a IRA distributions | 15a | b Taxable amount (see page 22) | 15b
16a Pensions and annuities | 16a | b Taxable amount (see page 22) | 16b
17 Rental real estate, royalties, partnerships, S corporations, trusts, etc. Attach Schedule E | 17
18 Farm income or (loss). Attach Schedule F | 18
19 Unemployment compensation | 19
20a Social security benefits | 20a | b Taxable amount (see page 24) | 20b
21 Other income. List type and amount (see page 24) | 21
22 Add the amounts in the far right column for lines 7 through 21. This is your **total income** ▶ | 22

## Adjusted Gross Income

23 Educator expenses (see page 26) | 23
24 Certain business expenses of reservists, performing artists, and fee-basis government officials. Attach Form 2106 or 2106-EZ | 24
25 IRA deduction (see page 26) | 25
26 Student loan interest deduction (see page 28) | 26
27 Tuition and fees deduction (see page 29) | 27
28 Health savings account deduction. Attach Form 8889 | 28
29 Moving expenses. Attach Form 3903 | 29
30 One-half of self-employment tax. Attach Schedule SE | 30
31 Self-employed health insurance deduction (see page 30) | 31
32 Self-employed SEP, SIMPLE, and qualified plans | 32
33 Penalty on early withdrawal of savings | 33
34a Alimony paid  b Recipient's SSN ▶ | 34a
35 Add lines 23 through 34a | 35
36 Subtract line 35 from line 22. This is your **adjusted gross income** ▶ | 36

**For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 75.**  Cat. No. 11320B  Form **1040** (2004)

| | | | |
|---|---|---|---|
| **Tax and Credits** | 37 | Amount from line 36 (adjusted gross income) . . . . . . . . . . . | 37 | |

**Tax and Credits**

38a Check { □ **You** were born before January 2, 1940, □ Blind. } Total boxes
if: { □ **Spouse** was born before January 2, 1940, □ Blind. } checked ► 38a

b If your spouse itemizes on a separate return or you were a dual-status alien, see page 31 and check here ► 38b □

**Standard Deduction for—**

• People who checked any box on line 38a or 38b or who can be claimed as a dependent, see page 31.

• All others:

Single or Married filing separately, $4,850

Married filing jointly or Qualifying widow(er), $9,700

Head of household, $7,150

39 Itemized deductions (from Schedule A) **or** your **standard deduction** (see left margin) . | 39
40 Subtract line 39 from line 37 . . . . . . . . . . . . . . . . | 40
41 If line 37 is $107,025 or less, multiply $3,100 by the total number of exemptions claimed on line 6d. If line 37 is over $107,025, see the worksheet on page 33 . . . . | 41
42 **Taxable income.** Subtract line 41 from line 40. If line 41 is more than line 40, enter -0- | 42
43 **Tax** (see page 33). Check if any tax is from: **a** □ Form(s) 8814  **b** □ Form 4972 . . | 43
44 **Alternative minimum tax** (see page 35). Attach Form 6251 . . . . | 44
45 Add lines 43 and 44 . . . . . . . . . . . . . . . . ► | 45

46 Foreign tax credit. Attach Form 1116 if required . . | 46
47 Credit for child and dependent care expenses. Attach Form 2441 | 47
48 Credit for the elderly or the disabled. Attach Schedule R . | 48
49 Education credits. Attach Form 8863 . . . . | 49
50 Retirement savings contributions credit. Attach Form 8880 . | 50
51 Child tax credit (see page 37) . . . . . | 51
52 Adoption credit. Attach Form 8839 . . . . | 52
53 Credits from: **a** □ Form 8396  **b** □ Form 8859 . | 53
54 Other credits. Check applicable box(es): **a** □ Form 3800
   **b** □ Form 8801  **c** □ Specify _____ | 54
55 Add lines 46 through 54. These are your **total credits** . . . . | 55
56 Subtract line 55 from line 45. If line 55 is more than line 45, enter -0- . . ► | 56

**Other Taxes**

57 Self-employment tax. Attach Schedule SE . . . . . . . . . | 57
58 Social security and Medicare tax on tip income not reported to employer. Attach Form 4137 | 58
59 Additional tax on IRAs, other qualified retirement plans, etc. Attach Form 5329 if required | 59
60 Advance earned income credit payments from Form(s) W-2 . . . . . | 60
61 Household employment taxes. Attach Schedule H . . . . . . . | 61
62 Add lines 56 through 61. This is your **total tax** . . . . . . ► | 62

**Payments**

63 Federal income tax withheld from Forms W-2 and 1099 . | 63
64 2004 estimated tax payments and amount applied from 2003 return | 64
65a **Earned income credit (EIC)** . . . . . . | 65a
b Nontaxable combat pay election ► | 65b

*If you have a qualifying child, attach Schedule EIC.*

66 Excess social security and tier 1 RRTA tax withheld (see page 54) | 66
67 Additional child tax credit. Attach Form 8812 . . . | 67
68 Amount paid with request for extension to file (see page 54) | 68
69 Other payments from: **a** □ Form 2439 **b** □ Form 4136 **c** □ Form 8885 | 69
70 Add lines 63, 64, 65a, and 66 through 69. These are your **total payments** . . ► | 70

**Refund**

Direct deposit? See page 54 and fill in 72b, 72c, and 72d.

71 If line 70 is more than line 62, subtract line 62 from line 70. This is the amount you **overpaid** | 71
72a Amount of line 71 you want **refunded to you** . . . . . . . ► | 72a
b Routing number �Ⓑ  ► **c** Type: □ Checking  □ Savings
d Account number
73 Amount of line 71 you want **applied to your 2005 estimated tax** ► | 73

**Amount You Owe**

74 **Amount you owe.** Subtract line 70 from line 62. For details on how to pay, see page 55 ► | 74
75 Estimated tax penalty (see page 55) . . . . | 75

**Third Party Designee**

Do you want to allow another person to discuss this return with the IRS (see page 56)? □ **Yes.** Complete the following. □ **No**

Designee's name ►         Phone no. ► ( )         Personal identification number (PIN) ►

**Sign Here**

Joint return? See page 17.

Keep a copy for your records.

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Your signature         Date         Your occupation         Daytime phone number ( )

Spouse's signature. If a joint return, **both** must sign.         Date         Spouse's occupation

**Paid Preparer's Use Only**

Preparer's signature         Date         Check if self-employed □         Preparer's SSN or PTIN

Firm's name (or yours if self-employed), address, and ZIP code ►         EIN         Phone no. ( )

Form
**1040A**

Department of the Treasury—Internal Revenue Service

**U.S. Individual Income Tax Return** (99) **2005**    IRS Use Only—Do not write or staple in this space.

OMB No. 1545-0074

**Label**
(See page 18.)

**Use the IRS label.**

Otherwise, please print or type.

L A B E L   H E R E

Your first name and initial

Last name

**Your social security number**

If a joint return, spouse's first name and initial

Last name

**Spouse's social security number**

Home address (number and street). If you have a P.O. box, see page 18.    Apt. no.

City, town or post office, state, and ZIP code. If you have a foreign address, see page 18.

▲ You **must** enter your SSN(s) above. ▲

**Presidential Election Campaign** ▶ Check here if you, or your spouse if filing jointly, want $3 to go to this fund (see page 18)  ▶  ☐ You  ☐ Spouse

Checking a box below will not change your tax or refund.

**Filing status**

Check only one box.

1 ☐ Single
2 ☐ Married filing jointly (even if only one had income)
3 ☐ Married filing separately. Enter spouse's SSN above and full name here. ▶
4 ☐ Head of household (with qualifying person). (See page 19.) If the qualifying person is a child but not your dependent, enter this child's name here. ▶
5 ☐ Qualifying widow(er) with dependent child (see page 19)

**Exemptions**

6a ☐ **Yourself.** If someone can claim you as a dependent, **do not** check box 6a.

b ☐ **Spouse**

| c Dependents: | | (2) Dependent's social security number | (3) Dependent's relationship to you | (4) ✓ if qualifying child for child tax credit (see page 21) |
|---|---|---|---|---|
| (1) First name | Last name | | | |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |
| | | | | ☐ |

If more than six dependents, see page 21.

**d** Total number of exemptions claimed.

Boxes checked on 6a and 6b

No. of children on 6c who:
• lived with you
• did not live with you due to divorce or separation (see page 22)

Dependents on 6c not entered above

Add numbers on lines above ▶

**Income**

**Attach Form(s) W-2 here. Also attach Form(s) 1099-R if tax was withheld.**

If you did not get a W-2, see page 24.

Enclose, but do not attach, any payment.

7  Wages, salaries, tips, etc. Attach Form(s) W-2.    7

8a  **Taxable** interest. Attach Schedule 1 if required.    8a
b  **Tax-exempt** interest. **Do not** include on line 8a.    8b

9a  Ordinary dividends. Attach Schedule 1 if required.    9a
b  Qualified dividends (see page 25).    9b

10  Capital gain distributions (see page 25).    10

11a  IRA distributions.    11a    **11b** Taxable amount (see page 25).    11b

12a  Pensions and annuities.    12a    **12b** Taxable amount (see page 26).    12b

13  Unemployment compensation and Alaska Permanent Fund dividends.    13

14a  Social security benefits.    14a    **14b** Taxable amount (see page 28).    14b

15  Add lines 7 through 14b (far right column). This is your **total income.** ▶  15

**Adjusted gross income**

16  Educator expenses (see page 28).    16
17  IRA deduction (see page 28).    17
18  Student loan interest deduction (see page 31).    18
19  Tuition and fees deduction (see page 32).    19
20  Add lines 16 through 19. These are your **total adjustments.**    20

21  Subtract line 20 from line 15. This is your **adjusted gross income.** ▶  21

For Disclosure, Privacy Act, and Paperwork Reduction Act Notice, see page 58.    Cat. No. 11327A    Form **1040A** (2005)

Appellant's Case: 10-5057     Document: 01018464267     Date Filed: 07/26/2010     Page: 601

| **Tax, credits, and payments** | 22 | Enter the amount from line 21 (adjusted gross income). | 22 | |
|---|---|---|---|---|
| | 23a | Check if: { **You** were born before January 2, 1941, ☐ Blind { **Total boxes** **Spouse** was born before January 2, 1941, ☐ Blind } **checked** ▶ 23a | | |
| | b | If you are married filing separately and your spouse itemizes deductions, see page 32 and check here ▶ 23b ☐ | | |

**Standard Deduction for—**

• People who checked any box on line 23a or 23b **or** who can be claimed as a dependent, see page 32.

• All others:

Single or Married filing separately, $5,000

Married filing jointly or Qualifying widow(er), $10,000

Head of household, $7,300

| | 24 | Enter your **standard deduction** (see left margin). | 24 | |
|---|---|---|---|---|
| | 25 | Subtract line 24 from line 22. If line 24 is more than line 22, enter -0-. | 25 | |
| | 26 | If line 22 is over $109,475, or you provided housing to a person displaced by Hurricane Katrina, see page 33. Otherwise, multiply $3,200 by the total number of exemptions claimed on line 6d. | 26 | |
| | 27 | Subtract line 26 from line 25. If line 26 is more than line 25, enter -0-. This is your **taxable income.** ▶ | 27 | |
| | 28 | **Tax,** including any alternative minimum tax (see page 34). | 28 | |
| | 29 | Credit for child and dependent care expenses. Attach Schedule 2. | 29 | |
| | 30 | Credit for the elderly or the disabled. Attach Schedule 3. | 30 | |
| | 31 | Education credits. Attach Form 8863. | 31 | |
| | 32 | Retirement savings contributions credit. Attach Form 8880. | 32 | |
| | 33 | Child tax credit (see page 38). Attach Form 8901 if required. | 33 | |
| | 34 | Adoption credit. Attach Form 8839. | 34 | |
| | 35 | Add lines 29 through 34. These are your **total credits.** | 35 | |
| | 36 | Subtract line 35 from line 28. If line 35 is more than line 28, enter -0-. | 36 | |
| | 37 | Advance earned income credit payments from Form(s) W-2. | 37 | |
| | 38 | Add lines 36 and 37. This is your **total tax.** ▶ | 38 | |
| | 39 | Federal income tax withheld from Forms W-2 and 1099. | 39 | |
| | 40 | 2005 estimated tax payments and amount applied from 2004 return. | 40 | |

If you have a qualifying child, attach Schedule EIC.

| | 41a | **Earned income credit (EIC).** | 41a | |
|---|---|---|---|---|
| | b | Nontaxable combat pay election.   41b | | |
| | 42 | Additional child tax credit. Attach Form 8812. | 42 | |
| | 43 | Add lines 39, 40, 41a, and 42. These are your **total payments.** ▶ | 43 | |

| **Refund** | 44 | If line 43 is more than line 38, subtract line 38 from line 43. This is the amount you **overpaid.** | 44 | |
|---|---|---|---|---|

Direct deposit? See page 53 and fill in 45b, 45c, and 45d.

| | 45a | Amount of line 44 you want **refunded to you.** ▶ | 45a | |
|---|---|---|---|---|
| | ▶ b | Routing number | ▶ c Type: ☐ Checking ☐ Savings | |
| | ▶ d | Account number | | |
| | 46 | Amount of line 44 you want **applied to your 2006 estimated tax.** | 46 | |

| **Amount you owe** | 47 | **Amount you owe.** Subtract line 43 from line 38. For details on how to pay, see page 54. ▶ | 47 | |
|---|---|---|---|---|
| | 48 | Estimated tax penalty (see page 54). | 48 | |

| **Third party designee** | Do you want to allow another person to discuss this return with the IRS (see page 55)? ☐ **Yes.** Complete the following. ☐ **No** |
|---|---|

Designee's name ▶          Phone no. ▶ (    )          Personal identification number (PIN)

**Sign here**

Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and accurately list all amounts and sources of income I received during the tax year. Declaration of preparer (other than the taxpayer) is based on all information of which the preparer has any knowledge.

Joint return? See page 18.

Keep a copy for your records.

| Your signature | Date | Your occupation | Daytime phone number (    ) |
|---|---|---|---|
| Spouse's signature. If a joint return, **both** must sign. | Date | Spouse's occupation | |

| **Paid preparer's use only** | Preparer's signature ▶ | Date | Check if self-employed ☐ | Preparer's SSN or PTIN |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code ▶ | | EIN | |
| | | | Phone no. (    ) | |

Form **1040A** (2005)

# PAPERWORK REDUCTION ACT SUBMISSION

Please read the instructions before completing this form. For additional forms or assistance in completing this form, contact your agency's Paperwork Clearance Officer. Send three copies of this form, the collection instrument to be reviewed, the Supporting Statement, and any additional documentation to Office of Information and Regulatory Affairs, Office of Management and Budget, Docket Library, Room 10102, 725 17th Street NW, Washington, DC 20503.

| | |
|---|---|
| **1. Agency/Subagency originating request**<br>**Department of the Treasury/IRS** | **2. OMB control number**<br>a. 1545 -0074    b. ___ None |

**3. Type of information collection (check one)**

- a. ___ New collection
- b. _X_ Revision of a currently approved collection
- c. ___ Extension of a currently approved collection
- d. ___ Reinstatement, without change, of a previously approved collection for which approval has expired
- e. ___ Reinstatement, with change, of a previously approved collection for which approval has expired
- f. ___ Existing collection in use without an OMB control number

For b-f, note item A2 of Supporting Statement instructions

**4. Type of review requested (check one)**

- a. _X_ Regular submission
- b. ___ Emergency - approval requested by: 10 /01 / 98
- c. ___ Delegated

**5. Small entities**
Will this information collection have a significant economic impact on a substantial number of small entities?
___ Yes        _X_ No

**6. Requested expiration date**
a. ___ Three years from approval date
b. _X_ Other Specify: 9 / 2001

RECEIVED
SEP 16 1998
OIRA DOCKET LIBRARY

**7. Title:** U.S. Individual Income Tax Return

**8. Agency form number (s) (if applicable):** Form 1040 and Schedules A, B, C, C-EZ, D, D-1, E, EIC, F, H, R, and SE AY

**9. Keywords:** Personal Income Taxes, Tax Return

**10. Abstract:** These forms are used by individuals to report their income tax liability. The data is used to verify that the items reported on the forms are correct, and also for general statistical use.

| | |
|---|---|
| **11. Affected public (Mark primary with "P" and all others that apply with "X")**<br>a. _P_ Individuals or households    d. ___ Farms<br>b. ___ Business or other for-profit   e. ___ Federal Gov.<br>c. ___ Not-for-profit institutions    f. ___ State, Local or Tribal Gov. | **12. Obligation to respond (Mark primary with "P" and all others that apply with "X")**<br>a. ___ Voluntary<br>b. ___ Required to obtain or retain benefits<br>c. _P_ Mandatory |

| | |
|---|---|
| **13. Annual reporting and recordkeeping hour burden**<br>a. Number of respondents        71,877,464<br>b. Total annual responses        276,493,973<br>  1. Percentage of these responses<br>    collected electronically    6%<br>c. Total annual hours requested    1,211,582,312<br>d. Current OMB inventory        1,143,129,008<br>e. Difference            +68,453,304<br>f. Explanation of difference<br>  1. Program change (+, -)    +38,595,728<br>  2. Adjustment (+, -)        +29,857,576 | **14. Annual reporting and recordkeeping cost burden (in thousands of dollars)**<br>a. Total annualized capital/startup costs _____<br>b. Total annual costs (O&M)        _____<br>c. Total annualized cost requested    _____<br>d. Current OMB inventory        _____<br>e. Difference            _____<br>f. Explanation of difference<br>  1. Program change        _____<br>  2. Adjustment        _____ |

| | |
|---|---|
| **15. Purpose of information collection (Mark primary with "X")**<br>a. ___ Application for benefits    e. ___ Program planning or Mgmt<br>b. ___ Program evaluation    f. ___ Research<br>c. ___ General purpose statistics    g. _P_ Regulatory or compliance<br>d. ___ Audit | **16. Frequency of recordkeeping or reporting (check all that apply)**<br>a. _X_ Recordkeeping    b. ___ Third party disclosure<br>c. _X_ Reporting<br>  1. ___ On occasion    2. ___ Weekly    3. ___ Monthly<br>  4. ___ Quarterly    5. ___ Semi-annually   6. _X_ Annually<br>  7. ___ Biennially    8. ___ Other (describe) _____ |

| | |
|---|---|
| **17. Statistical methods**<br><br>Does this information collection employ statistical methods?<br><br>_____ Yes    _X_ No | **18. Agency contact (person who can best answer questions regarding the content of this submission)**<br><br>Name: Martha Brinson<br>Phone: 202-622-5200 |

OMB 83-I                                10/95

Case 1:09-cr-43    Document 54-7    Filed 05/15/2009    Page 2 of 22
Appellate Case: 10-5037    Document 01004421    Date Filed: 07/26/2010    Page: 603

On behalf of this Federal agency, I certify that the collection of information encompassed by this request complies with 5 CFR 1320.9.

**NOTE:** The text of 5 CFR 1320.9, and the related provisions of 5 CFR 1320.8 (b) (3), appear at the end of the instructions. *The certification is to be made with reference to those regulatory provisions as set forth in the instructions.*

The following is a summary of the topics, regarding the proposed collection of information, that the certification covers:

    **(a)**   It is necessary for the proper performance of agency functions;

    **(b)**   It avoids unnecessary duplication;

    **(c)**   It reduces burden on small entities;

    **(d)**   It uses plain, coherent, and unambiguous terminology that is understandable to respondents;

    **(e)**   Its implementation will be consistent and compatible with current reporting and recordkeeping practices;

    **(f)**   It indicates the retention periods for recordkeeping requirements;

    **(g)**   It informs respondents of the information called for under 5 CFR 1320.8 (b) (3):

        **(i)**   Why the information is being collected;

        **(ii)**   Use of information;

        **(iii)**   Burden estimate;

        **(iv)**   Nature of response (voluntary, required for a benefit, or mandatory);

        **(v)**   Nature and extent of confidentiality; and

        **(vi)**   Need to display currently valid OMB control number;

    **(h)**   It was developed by an office that has planned and allocated resources for the efficient and effective management and use of the information to be collected (see note in Item 19 of the instructions);

    **(i)**   It uses effective and efficient statistical survey methodology; and

    **(j)**   It makes appropriate use of information technology;

*If you are unable to certify compliance with any of these provisions, identify the item below and explain the reason in Item 18 of the Supporting Statement.*

| | |
|---|---|
| Signature of Program Official    *G. Shear* <br> Garrick R. Shear, IRS Reports Clearance Officer | Date   9/15/98 |
| Signature of Senior Official or designee <br> *Dale Ann Moore*     Departmental Reports Management Officer | Date <br> 9/16/98 |

OMB 83-I

10/95

**DEPARTMENT OF THE TREASURY**

Submission for OMB review; comment request

**September 16, 1998**

The Department of Treasury has submitted the following public information collection

requirement(s) to OMB for review and clearance under the **Paperwork Reduction Act of 1995,**

**Public Law 104-13**. Copies of the submission(s) may be obtained by calling the Treasury Bureau

Clearance Officer listed. Comments regarding this information collection should be addressed to

the OMB reviewer listed and to the Treasury Department Clearance Officer, Department of the

Treasury, Room 2110, 1425 New York Avenue, NW., Washington, DC 20220.

**DATES:** Written comments should be received on or before **[insert date 30 days after**

**publication in the Federal Register]** to be assured of consideration.

**INTERNAL REVENUE SERVICE (IRS)**

OMB Number:   1545-0074

Form Number:   IRS Form 1040 and Schedules A, B, C, C-EZ, D, D-1, E, EIC, F,

H, J, R, and SE

Type of Review:   Revision

Title:   U.S. Individual Income Tax Return

Description:   These forms are used by individuals to report their income tax liability. The data is

used to verify that the items reported on the forms are correct, and also for general

statistical use.

Respondents: Individuals or households

Estimated Number of Respondents/Recordkeepers:   71,877,464

Estimated Burden Hours Per Respondent/Recordkeeper:   Varies

## Supporting Statement for Form 1040

**IRS Forms 1040 and 1040-V, and Schedules A, B, C, C-EZ, D, D-1, E, EIC, F, H, J, R, and SE**

1.  CIRCUMSTANCES NECESSITATING COLLECTION OF INFORMATION
IRC sections 6011 & 6012 of the Internal Revenue Code require individuals to prepare and file income tax returns annually. **Form 1040**, and related schedules, are used by individuals to report their income subject to tax and compute their correct tax liability.

**Form 1040-V** is used by taxpayers making a payment with their return.

**Schedule A** is used to claim itemized deductions (medical and dental expenses, taxes, interest, contributions, casualty or theft losses, and miscellaneous deductions) allowed by IRC sections 67, 163, 164, 165, 170, 211, 212, 213, 217, and 222, and to figure the overall limitation on itemized deductions required by IRC section 68.

**Schedule B** is used to report interest and/or ordinary dividend income over $400 and ownership or signature authority for foreign accounts and trusts. (Public law 91-508, IRC section 61.)

**Schedules C and C-EZ** are used to report gross income, expenses, and net profit or loss from operating a business or profession as a sole proprietorship. (IRC section 61.)

**Schedules D and D-1** are used to report and summarize capital gains and losses. (IRC sections 1201-1233.)

**Schedule E** is used to report and summarize income from rents, royalties, partnerships, S corporations, estates, trusts, REMICS, etc. (IRC section 61.)

**Schedule EIC** is used to identify qualifying children for the earned income credit. The form is required by Congress in the committee reports for section 11111 of OBRA 90, amending IRC section 32. The form will allow IRS to determine that valid qualifying children are being claimed, and will also be used for statistical purposes.

**Schedule F** is used to report gross income, expenses, and net profit or loss from farming. (IRC section 61.)

**Schedule H** is used by household employers to report household employment taxes.  (IRC section 3510.)

**Schedule J** is used by taxpayers with farm income to figure their tax using income averaging. (IRC section 1301.)

**Schedule R** is used to help verify that the taxpayer is entitled to the credit for the elderly or the disabled, that it is properly computed, and also for general statistical use.

## Supporting Statement for Form 1040

**Schedule SE** is used by self-employed individuals and employees of electing churches and qualified church-controlled organizations to figure any self-employment tax. (IRC sections 1404 and 1402.)

**2. USE OF DATA**
The data on Form 1040 and its schedules will be used in computing the tax liability and in determining that the items claimed are properly allowable. It is also used for general statistical use.

**3. USE OF IMPROVED INFORMATION TECHNOLOGY TO REDUCE BURDEN**
Approximately 6% of Forms 1040 are filed electronically.

**4. EFFORTS TO IDENTIFY DUPLICATION**
We have attempted to eliminate duplication within the agency wherever possible.

**5. METHODS TO MINIMIZE BURDEN ON SMALL BUSINESSES OR OTHER SMALL ENTITIES**
Not applicable.

**6. CONSEQUENCES OF LESS FREQUENT COLLECTION ON FEDERAL PROGRAMS OR POLICY ACTIVITIES**
Not applicable.

**7. SPECIAL CIRCUMSTANCES REQUIRING DATA COLLECTION TO BE INCONSISTENT WITH GUIDELINES IN 5 CFR 1320.5(d)(2)**
Not applicable.

**8. CONSULTATION WITH INDIVIDUALS OUTSIDE OF THE AGENCY ON AVAILABILITY OF DATA, FREQUENCY OF COLLECTION, CLARITY OF INSTRUCTIONS AND FORMS, AND DATA ELEMENTS**
Periodic meetings are held between IRS personnel and representatives of the American Bar Association, the National Society of Public Accountants, the American Institute of Certified Public Accountants, and other professional groups to discuss tax law and tax forms. During these meetings, there is an opportunity for those attending to make comments regarding Form 1040. In addition, we receive comments from other interested outside groups and from individuals. In response to the Federal Register Notice dated July 7, 1998, we received no comments during the comment period regarding Form 1040 and its schedules.

**9. EXPLANATION OF DECISION TO PROVIDE ANY PAYMENT OR GIFT TO RESPONDENTS**
Not applicable.

**10. ASSURANCE OF CONFIDENTIALITY OF RESPONSES**
Generally, tax returns and tax return information are confidential as required by 26 U.S.C. 6103.

**Supporting Statement for Form 1040**

### 11. JUSTIFICATION OF SENSITIVE QUESTIONS
Not applicable.

### 12. ESTIMATED BURDEN OF INFORMATION COLLECTION

| Form | Responses | Time per Response | Adjustments | Program Change | Burden |
|------|-----------|-------------------|-------------|----------------|--------|
| 1040 | 71,877,464 | 8.75 | 21,092,598 | 20,844,465 | 628,927,810 |
| Student Loan W/S | 4,000,000 | 0.60 | 0 | 2,400,000 | 2,400,000 |
| Child credit W/S | 10,000,000 | 1.63 | 0 | 16,300,000 | 16,300,000 |
| Exemption W/S | 3,679,650 | 0.32 | 0 | 0 | 1,177,488 |
| AMT Worksheet | 4,000,000 | 0.42 | 0 | 0 | 1,680,000 |
| EIC Worksheet | 7,185,349 | 1.46 | 637,568 | 0 | 10,490,610 |
| Form 1040-V OTC | 7,000,000 | 0.21 | 0 | 0 | 1,470,000 |
| pre-printed | 13,000,000 | 0.13 | 0 | 0 | 1,690,000 |
| Sch A | 34,007,717 | 4.23 | 4,187,544 | 0 | 143,852,643 |
| Worksheet | 3,432,289 | 0.36 | 0 | 0 | 1,235,624 |
| Sch B | 31,725,690 | 1.22 | (1,192,262) | (2,855,312) | 38,705,342 |
| Sch C | 16,421,458 | 9.75 | 2,629,800 | 0 | 160,109,216 |
| Part IV | 5,155,718 | 0.56 | 76,693 | 0 | 2,887,202 |
| Sch C-EZ | 2,187,621 | 1.72 | 392,101 | 0 | 3,762,708 |
| Sch D | 15,792,487 | 4.43 | 2,183,334 | 0 | 69,960,717 |
| Part IV--CGDs | 4,671,253 | 1.41 | 43,411 | (93,425) | 6,586,467 |
| Loss Worksht | 2,298,088 | 0.43 | 0 | 0 | 988,178 |
| Sch. D (line 25) Worksheet | 500,000 | .89 | 0 | 445,000 | 445,000 |
| Sch D-1 | 2,542,402 | 1.01 | 0 | 0 | 2,567,826 |
| Sch E | 14,472,883 | 5.82 | 967,552 | 0 | 84,232,179 |
| Sch EIC | 5,471,614 | 0.46 | 99,708 | 0 | 2,516,942 |
| Sch F--Parts 1&2 | 2,244,008 | 6.22 | (128,878) | 0 | 13,957,730 |
| Sch F--Parts 2&3 | 12,035 | 6.44 | 19,481 | 0 | 77,505 |
| Schedule H | 288,680 | 2.64 | (1,138,685) | 0 | 762,115 |
| Schedule J | 1,000,000 | 1.31 | 0 | 1,310,000 | 1,310,000 |
| Schedule J (95 Capital Gain Worksheet) | 250,000 | .49 | 0 | 122,500 | 122,500 |

## Supporting Statement for Form 1040

| | | | | | |
|---|---|---|---|---|---|
| Schedule J (96 Capital Gain Worksheet | 250,000 | .49 | 0 | 122,500 | 122,500 |
| Schedule R | 137,223 | 1.53 | (139,975) | 0 | 209,951 |
| Sch SE--Short | 12,011,238 | 0.96 | 56,934 | 0 | 11,530,788 |
| Sch SE--Long | 879,106 | 1.71 | 70,652 | 0 | 1,503,271 |
| TOTALS | 276,493,973 | | 29,857,576 | 38,595,728 | 1,211,582,312 |

Estimates of the annualized cost to respondents for the hour burdens shown above are not available at this time.

12. **Burden Estimation** (continued). We are asking for continued approval of these regulations that are associated with Form 1040. Please continue to assign OMB number 1545-0074 to these regulations:

1.23-5
1.31.2
1.37-2 and 3
1.41-4
1.41-4A
1.43-2
1.44A-3
1.52-4
1.61-15
1.63-1
1.64(c)6
1.71-1
1.72
1.79-2 and 3
1.83-2 thru 5
1.105
1.151-1
1.152-4 and 4T
1.162-24
1.163-10T
1.166-10
1.170
1.170A
1.172
1.180-2
1.182-6
1.190-3
1.213-1
1.215-1

## Supporting Statement for Form 1040

1.254-1
1.265-1
1.274-5T and 6T
1.280A-3
1.280F-3T
1.302-4
1.307-2
1.333-1
1.351-3
1.383-1
1.442-1
1.446-1
1.451-5 thru 7
1.454-1
1.461-1
1.466-1
1.551-4
1.612-4
1.642(c)-5 and 6
1.702-1
1.706-1
1.736-1
1.743-1
1.751-1
1.852-7 and 9
1.931-1
1.935-1
1.1012-1
1.1041-1T
1.1081-11
1.1101-4
1.1211-1
1.1212-1
1.1231-2
1.1232-3
1.1248-7
1.1251-2
1.1254-1 and 3
1.1304-1 thru 5
1.1311(a)-1
1.1383-1
1.1385-1
1.1402(a)-2,5,11,15,
16 1.1402(c)-2
1.1402(e)-(2)-1
1.1402(f)-1
1.6001-1
1.6060-1
1.6072-1
1.6107-1
1.6109-1 and 2

## Supporting Statement for Form 1040

```
1.6011-1
1.6012-1
1.6013-1, 6, 7
1.6017-1
1.6060-1
1.6072-1
1.6107-1
1.6109-1
1.6151-1
1.6695-1
1.6696-1
1.9100-1
5c.0
7.0
16A.126-2
18.1-7
31.6011(a)-1 and 7
301.6110-3 and 5
301.6316-4 thru 6
301.6361-1 and 3
301.6501
301.6501(d)
301.6905-1
301.7216-2
```

The following are citations to 26 U.S.C.:

```
61
72
79
83
126
162(h)
170
172(b), (c), (h)
180
182
265
301
307
317
318
331
332
351
403
454
518(c)(18) 551
613(g)
642(c)
735
736
```

## Supporting Statement for Form 1040

852
857
1012
1034(i)
1037
1081
1101
1232A
6011
6012
6061
6107
7216

## Supporting Statement for Form 1040

**13.** <u>ESTIMATED TOTAL ANNUAL COST BURDEN TO RESPONDENTS</u>
As suggested by OMB, our Federal Register Notice dated July 7, 1998,
requested public comments on estimates of cost burden that are not
captured in the estimates of burden hours, i.e., estimates of capital
or start-up costs and costs of operation, maintenance, and purchase
of services to provide information. However, we did not receive any
response from taxpayers on this subject. As a result, estimates of
these cost burdens are not available at this time.

**14.** <u>ESTIMATED ANNUALIZED COSTS TO THE FEDERAL GOVERNMENT</u>
The primary cost to the government consists of the cost of printing
these forms. We estimate that the cost of printing Form 1040 and its
schedules, including the tax packages, is $15,000,000.

**15.** <u>REASONS FOR CHANGE IN BURDEN</u>

### Major Changes to Form 1040

**a.** We added line 24 for the student loan interest deduction to
reflect new Internal Revenue Code section 221. To make room for
this line, we removed the extra blank line on line 21. We will
not create a new form for figuring this deduction; it will be
figured in a worksheet in the instructions.

**b.** We added line 44 for education credits (the Hope and lifetime
learning credits) allowed by section 25A, figured on Form 8863.

**c.** We added line 43 for the child tax credit allowed by new
section 24. It will be figured in a worksheet in the
instructions. We added line 60, in the payments section, for the
additional (refundable) amount of the credit, which is figured on
Form 8812. The supplemental credit is allowed by section 32(n).

We revised line 6c, column (4), to allow taxpayers to indicate
which dependents qualify for the child tax credit (one of the
requirements is that the child **must** be a dependent). This will
prevent taxpayers from having to enter again on Form 8812 the
name and SSN of the dependent children. This removes the
information previously in column (4) regarding the number of
months the dependent lived in the taxpayer's home. However, this
information is still collected on Schedule EIC, and we therefore
believe that the benefits from revising column (4) outweigh the
loss of the number of months information for non-EIC dependents.
This change will not affect the burden.

**d.** To make room for the three new lines on page 2, we moved the
standard deduction amounts to the margin.

**e.** We added "if required" on line 46 to reflect that Form 1116
is not required in all cases for 1998 (new section 904(j)).

**Supporting Statement for Form 1040**

**Instructions for Form 1040**

**GENERAL CHANGES**

We increased the point size and leading of the text in the instructions.  We held several focus groups, and this was the most common suggestion we received about our instructions.  The number of pages has increased substantially, but we believe this has made the instructions much easier for taxpayers to use.

**Deletions from the Instructions**
**(using old page numbers of the 1040 instructions)**

**Page 6**
We deleted **What's New for 1997?** and **What To Look for in 1998** and replaced it with a more detailed **What's New for 1998?**.

**Page 9**
We removed the information about the old 1099-DIV.

**Page 11**
We deleted instructions for old line 6c, column (4)

**Page 16**
We deleted the old IRA worksheet, and the text on Married filing separately to reflect changes made to section 219(g)

**Page 17**
We deleted the TIP on long-term care insurance for the self-employed health insurance deduction because it is no longer new and is uncommon.

**Page 18**
We deleted the requirement to attach a statement if completely blind, partially blind, or permanently partially blind, to reduce taxpayer burden.  We found we were not making much use of these statements.

**Page 19**
We revised instructions for the Tax Table and Tax Rate to reflect new Schedule J (section 1301).

**Additions to the Instructions**
**(using new page numbers of the 1040 instructions)**

**Page 6**
We deleted information on 1997 and 1998, and replaced it with more detailed information about new items for 1998.

**Page 10**
We added information about new Form 1098-E and revised Form 1099-DIV.

**Supporting Statement for Form 1040**

**Page 12**
We added text telling taxpayers to enter their SSNs on a joint return
in the same order as they did the previous year.  This prevents
possible processing errors when the SSNs are reversed from one year
to the next.  We also added text telling taxpayers that their SSN(s)
are no longer on the mailing label, and therefore must be entered on
the return.  We also relocated ATIN text from old page 6 here.

**Page 13**
We added instructions for revised line 6c, column (4).

**Page 16**
We added text on Roth IRA rollovers, new for 1998, and excess
contributions to an IRA, based on information that such contributions
are now occurring more frequently.

**Page 19**
We added a bullet item to state that Roth and Education IRAs are not
eligible for a deduction (only traditional IRAs are eligible).

**Page 20**
We added a new IRA worksheet to reflect the fact that a taxpayer who
does not participate in an employer retirement plan but whose spouse
does can now take an IRA deduction at higher income levels (section
219(g)).

**Page 21**
We added instructions and a worksheet for new line 24, student loan
interest deduction (section 221).

**Page 22**
We revised the blindness instructions to remove the requirement to
attach a statement if completely blind, partially blind, or
permanently partially blind, to reduce taxpayer burden.  We found we
were not making much use of these statements.

**Page 23**
We added 1 line to the Standard Deduction Worksheet for Dependents  to
reflect the change to section 63(c)(5).  We also pre-printed the new
additional standard deduction amount.

**Page 24**
We added revised instructions for the Tax Table and Tax Rate
Schedules, and new instructions for Schedule J, to reflect new
Schedule J (section 1301).

**Pages 25, 26, and 27**
We added text and two worksheets for new line 43 to reflect the child
tax credit allowed by new section 24.

## Supporting Statement for Form 1040

**Page 27**
We added instructions for new line 44, to reflect Form 8863 (section 25A). We added instructions for line 46 to reflect the new de minimis rule for filing Form 1116 (new section 904(j)).

The above changes will result in a program change increase of 39,544,465 hours for Form 1040.

We received better filing figures and we are requesting an adjustment increase of 21,730,166 hours for Form 1040.

### Schedules A&B and Instructions

There are no changes to Schedule A.

We removed lines 7 through 10 of Schedule B. The amount of ordinary dividends from box 1 of Form 1099-DIV will be entered on line 5 instead of the amount of gross dividends from the 1997 Form 1099-DIV, box 1a. It will therefore no longer be necessary to enter the amount of capital gain distributions and nontaxable distributions and subtract the total of those amounts from the total gross dividends. Capital gain distributions will be reported only on Schedule D. Nontaxable distributions will not be reported on the return, as we do not need them to compute tax.

**Page A-1**
We added text on long-term care premiums, as suggested by the AICPA.

**Page A-2**
We added text on real estate taxes shown on a settlement statement, as suggested by the AICPA.

**Page B-1**
We revised the text on tax-exempt interest and amortizable bond premium, for consistency with other text and to reduce the amount of text. We also revised the first paragraph of the line 5 instructions to reflect the changes made to Schedule B.

The above change will result in a program change decrease of 2,855,312 hours for Schedule B.

We received better filing figures and we are requesting an adjustment increase of 4,187,544 hours for Schedule A and an adjustment decrease of 1,192,262 hours for Schedule B.

## Supporting Statement for Form 1040

### Schedules C and C-EZ and Instructions

We revised line **B** on both forms to accommodate a new six-digit
business code, requested by SOI.

We added the new codes to pages C-8 and C-9 of the instructions for
Schedule C and also added information under **A Change To Note** alerting
taxpayers to the new codes.

We received better filing figures and we are requesting an adjustment
increase of 2,706,493 hours for Schedule C and an adjustment increase
of 392,101 hours for   Schedule C-EZ.

### Schedules D and D-1 and Instructions

We revised the footnote on page 1 of Schedule D and page 2 of
Schedule D-1, to remove references to the 1997 effective date.   We
also revised the text on Schedule D, line 29, for clarity, based on
taxpayer feedback.

We deleted the instructions for line 25 and replaced them with a
worksheet, at the suggestion of the AICPA.   We added a chart (page 7)
to show taxpayers who receive only capital gain distributions (about 5
million taxpayers) how to report the amounts reported to them on   Form
1099.

    The above changes will result in a program change increase of
351,575 hours for Schedule D due to the worksheet.   We received
better filing figures and we are requesting an adjustment increase of
2,226,745 hours for Schedule D.

### Schedule E Instructions

We added a note on page E-6, at the request of Chief Counsel.   There
were no major changes to Schedule E.

We received better filing  figures and we are requesting an adjustment
increase of 967,552 hours for Schedule E.

## Supporting Statement for Form 1040

### Schedule F

We revised line **B** to accommodate a new six-digit code, requested by
SOI. We also added information under **Changes To Note** alerting
taxpayers to the new codes and giving them information about new
Schedule J, Farm Income Averaging.

We received better filing figures and we are requesting an adjustment
decrease of 109,397 hours for Schedule F.

### Schedule J

We created new Schedule J to implement section 1301 of the Code, as
added by section 933(a) of Public Law 105-34.

This will result in a program change increase of 1,555,000 hours for
Schedule J.

### Schedule R

We deleted the physician's statement from the form and moved it to
the instructions, because we are no longer using it.  This will not
affect the burden.

We received better filing figures and we are requesting and adjustment
decrease of 139,975 hours.

### Supporting Statement for Form 1040

### All other Schedules and Instructions

**Form 1040-V** and **Schedules A, E, EIC, H,** and **SE,** and the instructions for **Schedules B, H,** and **SE** have no major changes.

We received better filing figures for Schedule EIC and we are requesting an adjustment increase of 99,708 hours.

We received better filing figures for Schedule H and we are requesting and adjustment decrease of 1,138,685 hours.

We received better filing figures for Schedule SE and we are requesting an adjustment increase of 127,586 hours for Schedule SE.

TOTAL PROGRAM CHANGE AND NET ADJUSTMENT FOR ALL FORMS AND SCHEDULES

The above changes for Form 1040, schedules, and payment voucher and their instructions will result in a net program change increase of 38,595,728 hours.

We received better filing figures and we are requesting a net adjustment increase of 29,857,576 hours.

**16.** PLANS FOR TABULATION, STATISTICAL ANALYSIS, AND PUBLICATION
Not applicable.

**17.** REASONS WHY DISPLAYING THE OMB EXPIRATION DATE IS INAPPROPRIATE
See attachment.

**18.** EXCEPTIONS TO THE CERTIFICATION STATEMENT ON OMB FORM 83-I
Not applicable.

Note: The following paragraph applies to all collections of information in this submission:

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless the collection of information displays a valid OMB control number. Books or records relating to a collection of information must be retained as long as their contents may become material in the administration of any internal revenue law. Generally, tax returns and tax return information are confidential, as required by 26 U.S.C. 6103.

## DEPARTMENT OF THE TREASURY

Submission for OMB review; comment request

**November 4, 1998**

The Department of Treasury has submitted the following public information collection requirement(s) to OMB for review and clearance under the **Paperwork Reduction Act of 1995, Public Law 104-13.** Copies of the submission(s) may be obtained by calling the Treasury Bureau Clearance Officer listed. Comments regarding this information collection should be addressed to the OMB reviewer listed and to the Treasury Department Clearance Officer, Department of the Treasury, Room 2110, 1425 New York Avenue, NW., Washington, DC 20220.

**DATES:** Written comments should be received on or before **[insert date 30 days after publication in the Federal Register]** to be assured of consideration.

## INTERNAL REVENUE SERVICE (IRS)

OMB Number:   1545-0074

Form Number:   IRS Form 1040 and Schedules A, B, C, C-EZ, D, D-1, E, EIC, F, H, J, R, and SE

Type of Review:   Revision

Title:   U.S. Individual Income Tax Return

Description:   These forms are used by individuals to report their income tax liability. The data is used to verify that the items reported on the forms are correct, and also for general statistical use.

Respondents:   Individuals or households

2

Estimated Number of Respondents/Recordkeepers:    71,877,464

Estimated Burden Hours Per Respondent/Recordkeeper:

| Form/Schedule | Recordkeeping | Learning about the law or the form | Preparing the form | Copying, assembling, and sending the form to the IRS | Totals |
|---|---|---|---|---|---|
| Form 1040 | 3 hr., 34 min. | 2 hr., 13 min. | 4 hr., 30 min. | 7 min. | 10 hr., 57 min. |
| Schedule A | 2 hr., 32 min. | 26 min. | 1 hr., 10 min. | 27 min. | 4 hr., 35 min. |
| Schedule B | 33 min. | 8 min. | 11 min. | 20 min. | 1 hr., 12 min. |
| Schedule C | 6 hr., 26 min. | 1 hr., 11 min. | 2 hr., 6 min. | 35 min. | 10 hr., 18 min. |
| Schedule C-EZ | 46 min. | 4 min. | 34 min. | 20 min. | 1 hr., 4 min. |
| Schedule D | 1 hr., 11 min. | 2 hr., 7 min. | 2 hr., 39 min. | 1 hr., 3 min. | 4 hr., 10 min. |
| Schedule D-1 | 13 min. | 1 min. | 11 min. | 35 min. | 1 hr., 0 min. |
| Schedule E | 2 hr., 52 min. | 1 hr., 7 min. | 1 hr., 16 min. | 35 min. | 5 hr., 10 min. |
| Schedule EIC | ---------- | 2 min. | 5 min. | 20 min. | 27 min. |
| Schedule F: Cash Method Accrual Method | 4 hr., 2 min. 4 hr., 22 min. | 36 min. 25 min. | 1 hr., 14 min. 1 hr., 19 min. | 20 min. 20 min. | 6 hr., 12 min. 6 hr., 26 min. |
| Schedule H | 46 min. | 30 min. | 48 min. | 35 min. | 1 hr., 35 min. |
| Schedule J | 20 min. | 8 min. | 1 hr., 8 min. | 41 min. | 2 hr., 17 min. |
| Schedule R | 20 min. | 15 min. | 22 min. | 35 min. | 1 hr., 32 min. |
| Schedule SE: Short Long | 20 min. 26 min. | 13 min. 22 min. | 11 min. 34 min. | 14 min. 20 min. | 58 min. 1 hr., 2 min. |

Frequency of Response: Annually

Estimated Total Reporting/Recordkeeping Burden:  1,211,582,312 hours

3

Clearance Officer:        Garrick Shear (202) 622-3869

Internal Revenue Service

Room 5571

1111 Constitution Avenue, N.W.

Washington, DC 20224

OMB Reviewer:        Alexander T. Hunt (202) 395-7860

Office of Management and Budget

Room 10226, New Executive Office Building

Washington, DC 20503

Lois K. Holland

Departmental Reports

Management Officer

**BILLING CODE: 4830-01**

## DEPARTMENT OF TRANSPORTATION

### Research and Special Programs Administration

### Issuance of Advisory Bulletin

**AGENCY:** Research and Special Programs Administration, (RSPA), DOT.

**ACTION:** Notice; issuance of advisory bulletin.

**SUMMARY:** We are issuing this advisory bulletin to owners and operators of Hazardous Liquid and Natural Gas Pipelines. The bulletin advises the industry about the potential for damage to pipeline facilities caused by the passage of Hurricane Georges.

**ADDRESSES:** This document can be viewed on our home page at: http://ops.dot.gov.

**FOR FURTHER INFORMATION CONTACT:** Linda Daugherty, (202) 366–4577.

**SUPPLEMENTARY INFORMATION:**

### I. Background

The purpose of this Notice is to advise all operators of natural gas and hazardous liquid pipelines located in offshore waters of the Gulf of Mexico of recurring safety problems that may be resulting from the passage of Hurricane Georges. Operators should be advised that we have received several reports of damage to pipeline facilities, particularly in the area bounded, East of the Mississippi River and West of Mobil Bay.

Several mudslides in this area may have exposed pipelines which could pose a safety threat to the crews of fishing vessels in shallow coastal waters and to other marine operations in shipping lanes and deeper offshore waters. Extensive onshore flooding may also have exposed or weakened facilities. We are working with the Minerals Management Service, the Coast Guard, and the Army Corps of Engineers to address the potential hazards of exposed or weakened pipeline facilities in areas affected by Hurricane Georges. This Notice reminds operators of offshore pipelines that may have been affected by flooding of Federal pipeline safety requirements. We are advising pipeline operators of similar problems that may occur in inland navigable waterways. Also, we are advising the commercial fishing industry of the potential of unburied offshore pipelines by sending this Notice to Louisiana Shrimp Association, Texas Shrimp Association, Southeastern Fisheries Association, National Fish Meal & Oil Association, and Concerned Shrimpers of America. Pipeline operators or mariners aware of any damage or

exposure to a portion of a submerged pipeline should report that information to the appropriate US Coast Guard District. The Coast Guard has issued a radio advisory to vessel operators operating in or near the mouth of the Mississippi and an advisory in its Notice to Mariners.

### II. Advisory Bulletin (ADB–98–3)

*To:* Owners and Operators of Hazardous Liquid and Natural Gas Pipelines.

*Subject:* Recurring safety problems which may be resulting from the passage of Hurricane Georges.

*Purpose:* We are advising all operators of natural gas and hazardous liquid pipelines located in offshore waters and other areas that may have been impacted by flooding due to the passage of Hurricane Georges. The recent passage of Hurricane Georges and major storms may have contributed to the exposure or instability of pipelines in the vicinity of the Gulf of Mexico.

*Advisory:* On October 1, 1998, a 10-inch pipeline located in the Gulf of Mexico south of the Mississippi River, in an unstable mudslide area with a water depth of 108 feet, ruptured and released an estimated 3,700 barrels of crude oil. Other reported incidents include pipeline exposures and natural gas and hazardous liquid releases.

Our pipeline regulations require operators to patrol their lines periodically for the presence of unusual operating and maintenance conditions and to take corrective action if conditions are unsafe. Because this patrolling is generally done using aircraft, pipelines exposed or damaged on the seafloor can not be visually detected. It is likely that some pipelines located in the area of Hurricane Georges' impact are exposed or damaged. It is important to note that if a pipeline operator has knowledge that its pipeline is exposed or otherwise presenting a danger to the public or the environment, 49 CFR sections 192.613 and 192.703 applicable to gas pipeline operators, and 49 CFR section 195.401 applicable to hazardous liquid pipeline operators would require the operator to take steps to mitigate the hazard. Additionally, 49 CFR sections 192.612(b) and 195.413(b) require that, if upon notification by any person, an operator discovers that a pipeline it operates is exposed on the seabed or constitutes a hazard to navigation, it shall promptly notify the National Response Center (1–800–424–8802) with the geographic coordinates of that pipeline, mark the location of the pipeline in accordance with 64 CFR, and within six months of discovery, place the pipeline so that the top of the

pipe is 36 inches below the seabed for normal excavation or 18 inches for rock excavation.

In view of the above, pipeline operators should consider taking the following actions regarding the natural gas and hazardous liquid pipelines located in areas impacted by Hurricane Georges.

1. Identify and caution persons who normally engage in commercial fishing, shrimping, and other marine vessel operations in shallow coastal waters where Hurricane Georges may have affected a pipeline. Submerged offshore pipelines may have become unprotected on the ocean floor. Marine vessels operating in water depths comparable to a vessel's draft or when operating bottom dragging equipment can be damaged and their crews endangered by an encounter with a submerged pipeline. The pipeline company's public education and damage prevention programs may be used to facilitate this notification process. Pipeline operators may want to consider a joint public education effort in areas of common concern.

2. Identify and caution marine vessel operators in offshore shipping lanes and other offshore areas where Hurricane Georges may have affected a pipeline that deploying fishing nets or anchors, and dredging operations may damage the pipeline, their vessels, and endanger their crews. The pipeline company's public education and damage prevention programs may be used to facilitate this notification process. Pipeline operators may want to consider a joint public education effort in areas of common concern.

3. Identify and correct any conditions on the pipeline that could violate pipeline safety requirements, and the terms and conditions of the pipeline's Corps of Engineers permit.

Issued in Washington, D.C. on November 5, 1998.

**Richard B. Felder,**
*Associate Administrator for Pipeline Safety.*
[FR Doc. 98–30279 Filed 11–10–98; 8:45 am]
BILLING CODE 4910–60–P

## DEPARTMENT OF THE TREASURY

### Submission for OMB Review; Comment Request

November 4, 1998.

The Department of the Treasury has submitted the following public information collection requirement(s) to OMB for review and clearance under the Paperwork Reduction Act of 1995, Public Law 104–13. Copies of the

submission(s) may be obtained by calling the Treasury Bureau Clearance Officer listed. Comments regarding this information collection should be addressed to the OMB reviewer listed and to the Treasury Department Clearance Officer, Department of the Treasury, Room 2110, 1425 New York Avenue, NW., Washington, DC 20220.

**DATES:** Written comments should be received on or before December 14, 1998 to be assured of consideration.

**Internal Revenue Service (IRS)**

✓ *OMB Number:* 1545–0074.

*Form Number:* IRS Form 1040 and Schedules A, B, C, C–EZ, D, D–1, E, EIC, F, H, J, R, and SE.

*Type of Review:* Revision.

*Title:* U.S. Individual Income Tax Return.

*Description:* These forms are used by individuals to report their income tax liability. The data is used to verify that the items reported on the forms are correct, and also for general statistical use.

*Respondents:* Individuals or households.

*Estimated Number of Respondents/ Recordkeepers:* 71,877,464.

*Estimated Burden Hours Per Respondent/Recordkeeper:*

| Form/schedule | Recordkeeping | Learning about the law or the form | Preparing the form | Copying, assembling, and sending the form to the IRS | Totals |
|---|---|---|---|---|---|
| Form 1040 | 3 hr., 34 min | 2 hr., 13 min | 4 hr., 30 min | 7 min | 10 hr., 57 min. |
| Schedule A | 2 hr., 32 min | 26 min | 1 hr., 10 min | 27 min | 4 hr., 35 min. |
| Schedule B | 33 min | 8 min | 11 min | 20 min | 1 hr., 12 min. |
| Schedule C | 6 hr., 26 min | 1 hr., 11 min | 2 hr., 6 min | 35 min | 10 hr., 18 min. |
| Schedule C–EZ | 46 min | 4 min | 34 min | 20 min | 1 hr., 4 min. |
| Schedule D | 1 hr., 11 min | 2 hr., 7 min | 2 hr., 39 min | 1 hr., 3 min | 4 hr., 10 min. |
| Schedule D–1 | 13 min | 1 min | 11 min | 35 min | 1 hr., 0 min. |
| Schedule E | 2 hr., 52 min | 1 hr., 7 min | 1 hr., 16 min | 35 min | 5 hr., 10 min. |
| Schedule EIC | | 2 min | 5 min | 20 min | 27 min. |
| Schedule F: | | | | | |
|   Cash Method | 4 hr., 2 min | 36 min | 1 hr., 14 min | 20 min | 6 hr., 12 min. |
|   Accrual Method | 4 hr., 22 min | 25 min | 1hr., 19 min | 20 min | 6 hr., 26 min. |
| Schedule H | 46 min | 30 min | 48 min | 35 min | 1 hr., 35 min. |
| Schedule J | 20 min | 8 min | 1 hr., 8 min | 41 min | 2 hr., 17 min. |
| Schedule R | 20 min | 15 min | 22 min | 35 min | 1 hr., 32 min. |
| Schedule SE: | | | | | |
|   Short | 20 min | 13 min | 11 min | 14 min | 58 min. |
|   Long | 26 min | 22 min | 34 min | 20 min | 1 hr., 2 min. |

*Frequency of Response:* Annually.

*Estimated Total Reporting/ Recordkeeping Burden:* 1,211,582,312 hours.

*Clearance Officer:* Garrick Shear, (202) 622–3869, Internal Revenue Service, Room 5571, 1111 Constitution Avenue, N.W., Washington, DC 20224.

*OMB Reviewer:* Alexander T. Hunt, (202) 395–7860, Office of Management and Budget, Room 10226, New Executive Office Building, Washington, DC 20503.

**Lois K. Holland,**

*Departmental Reports Management Officer.*

[FR Doc. 98–30183 Filed 11–10–98; 8:45 am]

**BILLING CODE 4830–01–P**

---

**DEPARTMENT OF THE TREASURY**

**Office of the Comptroller of the Currency**

**Federal Reserve System**

**Federal Deposit Insurance Corporation**

**Agency Information Collection Activities: Discontinuance**

**AGENCIES:** Office of the Comptroller of the Currency (OCC), Treasury; Board of Governors of the Federal Reserve System (Board); and Federal Deposit Insurance Corporation (FDIC).

**ACTION:** Discontinuance of information collection.

**SUMMARY:** Notice is hereby given of the discontinuance by the OCC, the Board, and the FDIC (the "agencies") of an information collection, the "Monthly Consolidated Foreign Currency Report of Banks in the United States" (FFIEC 035). Banks will no longer be required to complete this report after the December 31, 1998 report date.

**DATES:** The final date as of which the FFIEC 035 will be collected is December 31, 1998.

**FOR FURTHER INFORMATION CONTACT:** Additional information may be requested from any of the agency clearance officers or the Office of Management and Budget (OMB) Desk Officer whose names appear below.

*OCC:* Jessie Gates, OCC Clearance Officer, or Camille Dixon, (202) 874–5090, Legislative and Regulatory Activities Division, Office of the Comptroller of the Currency, 250 E Street, SW, Washington, DC 20219.

*Board:* Mary M. McLaughlin, Chief, Financial Reports Section, (202) 452–3829, Division of Research and Statistics, Board of Governors of the Federal Reserve System, 20th and C Streets, NW, Washington, DC 20551. Telecommunications Device for the Deaf (TDD) users may contact Diane Jenkins, (202) 452–3544, Board of Governors of the Federal Reserve System, 20th and C Streets, NW, Washington, DC 20551.

*FDIC:* Steven F. Hanft, FDIC Clearance Officer, (202) 898–3907, Office of the Executive Secretary, Federal Deposit Insurance Corporation, 550 17th Street NW, Washington, DC 20429.

*OMB:* Alexander T. Hunt, OMB Desk Officer, (202) 395–7860, Office of Information and Regulatory Affairs, Office of Management and Budget, New Executive Office Building, Room 3208, Washington, DC 20503.

**SUPPLEMENTARY INFORMATION:**

**Discontinuance of the Following Report**

*Title:* Monthly Consolidated Foreign Currency Report of Banks in the United States.

*Form number:* FFIEC 035.

*Frequency of Response:* Monthly.

*Affected Public:* Businesses or other for-profit.

*For OCC:*

*OMB Number:* 1557–0156.

*Estimated Number of Respondents:* 29.

*Estimated Average Hours per Response:* 12.68 burden hours.

NOTICE OF OFFICE OF MANAGEMENT AND BUDGET ACTION

Case 4:09-cr-43    Document 54-8    Filed 05/15/2009    Page 1 of 5
Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 624

Lois K. Holland                                    10/03/2001
IT Policy and Management Office
Department of the Treasury
1425 New York Avenue NW.
Room 2110
Washington, DC  20220


In accordance with the Paperwork Reduction Act, OMB has
taken the following action on your request for approval of
a revision of an information collection received on 08/20/2001.

TITLE:    US Individual Income Tax Return

AGENCY FORM NUMBER(S):    1040,SCHA,SCHB,SCHC,SCHC-EZ,SCHD,
                          SCHD-1,SCHE,EIC,SCHF

ACTION : Approved
OMB NO.: 1545-0074
EXPIRATION DATE:  10/31/2004

| BURDEN | RESPONSES | BURDEN HOURS | BURDEN COSTS |
|--------|-----------|--------------|--------------|
| Previous | 276,493,973 | 1,393,882,763 | 0 |
| New | 402,915,352 | 1,455,489,837 | 0 |
| Difference | 126,421,379 | 61,607,074 | 0 |
| Program Change | | 19,011,704 | 0 |
| Adjustment | | 42,595,370 | 0 |

TERMS OF CLEARANCE:
    This approval covers the amendment,dated 9/27/01, to the
    original submission. The agency is not required to display
    the expiration date.




NOTE: The agency is required to display the OMB control
      number and inform respondents of its legal
      significance (see 5 CFR 1320.5(b)).

_____
OMB Authorizing Official      Title

Donald R. Arbuckle            Deputy Administrator, Office of
                              Information and Regulatory Affairs
_____
Sent electronically, 10/03/2001 15:04:59

TITLE     : US Individual Income Tax Return


ACTION TAKEN: Approved

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CHANGES FROM AGENCY SUBMISSION:

EXPIRATION DATE: NO CHANGE

BURDEN HOURS                          BURDEN COSTS

Responses            402,915,352    NO CHANGE         $
Burden Hours       1,455,489,837
Hours Diff            61,607,074
  Hrs pgm chg         19,011,704

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

NEW TERMS OF CLEARANCE:
    This approval covers the amendment, dated 9/27/01, to the
    original submission.  The agency is not required to display the
    expiration date.

NOTES: _____
_____
_____
_____
_____
_____
_____
_____


SIGNATURES AND DATES:            DESK OFFICER        OIRA

                                 _____    _____

                                 DATE: _____    DATE: 10/7/01

OMB Number : 1545-0074
REVIEW TYPE : Regular
I . C. TYPE : Revision

RECEIVED: 08/20/2...
DUE DATE: 10/19/2001

Appellate Case: 09-cr-43    Document 54-8    Filed 05/26/2009 ex man  Page 3 of 5
Appellate Case: 10-5037    Document: 01018464267    Date Filed: 07/26/2010    Page: 626

AGENCY    : Department of the Treasury
SUBAGENCY : Internal Revenue Service
------------------------------------------------------------

TITLE: US Individual Income Tax Return

AGENCY FORM NUMBER(S): 1040,SCHA,SCHB,SCHC,SCHC-EZ,SCHD,SCHD-1,SCHE
                       EIC,SCHF

KEYWORDS: PERSONAL INCOME TAXES
          TAX RETURN

ABSTRACT: Form 1040 and schedules are used by individuals to report their
          income tax liability.  The data is used to verify that the
          items reported on the forms are correct, and also for general
          statistical use.

OBLIGATION TO RESP: P Mandatory                SMALL ENTITIES: No
                                               STATISTICAL METHODS: No

AFF PUB: P Individuals or households       PURPOSE: P Reg or compliance

REQUIREMENTS: Recordkeeping
              Reporting frequency:
                 Annually

------------------------------------------------------------

| | CURRENT RECORD | REQUEST |
|---|---|---|
| EXPIRATION DATE: | 09/30/2001 | 3 Yrs |
| ANNUAL HOUR BURDEN: | | |
| Number of respondents | 71,877,464 | 71,097,253 |
| Total annual responses | 276,493,973 | 401,291,352 |
| % Collected electronically | 6 % | 50 % |
| Burden Hours | 1,393,882,763 | 1,454,784,038 |
| Difference | | 60,901,275 |
| Explanation of Difference | | |
| 1. Program Change | | 18,305,905 |
| 2. Adjustment | | 42,595,370 |

------------------------------------------------------------

| | CURRENT RECORD | REQUEST |
|---|---|---|
| ANNUAL COST BURDEN: | | |
| Capital/Startup Costs | 0 | 0 |
| Annual Costs (O&M) | 0 | 0 |
| Total Annualized Cost | 0 | 0 |
| Difference | | 0 |
| Explanation of difference | | |
| 1. Program change | | 0 |
| 2. Adjustment | | 0 |

------------------------------------------------------------

LAST ACTION: Correction                LAST ACTION DATE: 09/27/2000

'STING TERMS OF CLEARANCE: NONE

# PAPERWORK REDUCTION ACT SUBMISSION

Case 4:09-cr-43   Document 54-8   Filed 05/15/2009   Page 4 of 5

Please read the instructions before completing this form. For additional forms or assistance in completing this form, contact your agency's Paperwork Clearance Officer. Send two copies of this form, the collection instrument to be reviewed, the Supporting Statement, and any additional documentation to: Office of Information and Regulatory Affairs, Office of Management and Budget, Docket Library, Room 10102, 725 17th Street NW Washington, DC 20503.

**1. Agency/Subagency originating request**

Department of the Treasury
Internal Revenue Service

**2. OMB control number**

a. 1 5 4 5 — 0 0 7 4

b. ___ None

**3. Type of information collection** *(check one)*
a. ___ New collection
b. X Revision of a currently approved collection
c. ___ Extension of a currently approved collection
d. ___ Reinstatement, without change, of a previously approved collection for which approval has expired
e. ___ Reinstatement, with change, of a previously approved collection for which approval has expired
f. ___ Existing collection in use without an OMB control number

*For b-f, note item A2 of Supporting Statement instructions*

**4. Type of review requested** *(check one)*
a. X Regular
b. ___ Emergency - Approval requested by: 09/20/01
c. ___ Delegated

**5. Small entities**
Will this information collection have a significant economic impact on a substantial number of small entities? ___ Yes X No

**6. Requested expiration date**
a. X Three years from approval date   b. ___ Other Specify: /

**7. Title** U.S. Individual Income Tax Return

**8. Agency form number(s)** *(if applicable)* Forms 1040 and Schedules A, B, C, C-EZ, D,D-1, E, EIC, F, H, J, R, and SE

**9. Keywords** 'personal income taxes, tax return'

**10. Abstract** Form 1040 and schedules are used by individuals to report their income tax liability. The data is used to verify that the items reported on the forms are correct, and also for general statistical use.

**11. Affected public** *(Mark primary with "P" and all others that apply with "X")*
a. P Individuals or households   d. ___ Farms
b. ___ Business or other for-profit   e. ___ Federal Government
c. ___ Not-for-profit institutions   f. ___ State, Local or Tribal Government

**12. Obligation to respond** *(Mark primary with "P" and all others that apply with "X")*
a. ___ Voluntary
b. ___ Required to obtain or retain benefits
c. P Mandatory

**13. Annual reporting and recordkeeping hour burden**
a. Number of respondents   71,097,253
b. Total annual responses   401,291,352
  1. Percentage of these responses collected electronically   50.6 %
c. Total annual hours requested   1,454,784,038
d. Current OMB inventory   1,393,882,763
e. Difference   +60,901,275
f. Explanation of difference
  1. Program change   +18,305,905
  2. Adjustment   + 42,595,370

**14. Annual reporting and recordkeeping cost burden** *(in thousands of dollars)*
a. Total annualized capital/startup costs
b. Total annual costs (O&M)
c. Total annualized costs requested
d. Current OMB inventory
e. Difference
f. Explanation of difference
  1. Program change
  2. Adjustment

**15. Purpose of information collection** *(Mark primary with "P" and all others that apply with "X")*
a. ___ Application for benefits   e. ___ Program planning or management
b. ___ Program evaluation   f. ___ Research
c. ___ General purpose statistics   g. P Regulatory or compliance
d. ___ Audit

**16. Frequency of recordkeeping or reporting** *(check all that apply)*
a. X Recordkeeping   b. ___ Third party disclosure
c. X Reporting
  1. ___ On occasion   2. ___ Weekly   3. ___ Monthly
  4. ___ Quarterly   5. ___ Semi-annually   6. X Annually
  7. ___ Biennially   8. ___ Other (describe)

**17. Statistical methods**
Does this information collection employ statistical methods?
___ Yes   X No

**18. Agency contact** *(person who can best answer questions regarding the content of this submission)*
Name: Carol Savare
Phone: (202) 622-3945

OMB 83-I

10/95

Appellate Case: 10-5057    Document: 01018464267    Date Filed: 07/26/2010    Page: 628

On behalf of this Federal agency, I certify that the collection of information encompassed by this request complies with 5 CFR 1320.9.

NOTE:  The text of 5 CFR 1320.9, and the related provisions of 5 CFR 1320.8(b)(3), appear at the end of the instructions. *The certification is to be made with reference to those regulatory provisions as set forth in the instructions.*

The following is a summary of the topics, regarding the proposed collection of information, that the certification covers:

    (a) It is necessary for the proper performance of agency functions;

    (b) It avoids unnecessary duplication;

    (c) It reduces burden on small entities;

    (d) It uses plain, coherent, and unambiguous terminology that is understandable to respondents;

    (e) Its implementation will be consistent and compatible with current reporting and recordkeeping practices;

    (f) It indicates the retention periods for recordkeeping requirements;

    (g) It informs respondents of the information called for under 5 CFR 1320.8(b)(3):

        (i)    Why the information is being collected;

        (ii)   Use of information;

        (iii)  Burden estimate;

        (iv)  Nature of response (voluntary, required for a benefit, or mandatory);

        (v)   Nature and extent of confidentiality; and

        (vi)  Need to display currently valid OMB control number.

    (h) It was developed by an office that has planned and allocated resources for the efficient and effective management and use of the information to be collected (see note in Item 19 of the instructions);

    (i) It uses effective and efficient statistical survey methodology; and

    (j) It makes appropriate use of information technology.

If you are unable to certify compliance with any of these provisions, identify the item below and explain the reason in Item 18 of the Supporting Statement.

| Signature of Program Official<br><br>Garrick R. Shear, IRS Reports Clearance Officer | *G. Shear* | Date<br>8/16/01 |
| Signature of Senior Official or Designee<br><br>*Lois K. Holland* | Departmental Reports Management Officer | Date<br>AUG 1 6 2001 |

OMB 83-I                                       10/95

# NOTICE OF OFFICE OF MANAGEMENT AND BUDGET ACTION

Lois K. Holland                                           09/14/2004
Treasury PRA Clearance Officer
TD Forms Manager
Department of the Treasury
1750 Pennsylvania Avenue NW.
Room 11000
Washington, DC  20220

In accordance with the Paperwork Reduction Act, OMB has
taken the following action on your request for approval of
a revision of an information collection received on 08/03/2004.

TITLE:   U.S. Individual Income Tax Return

AGENCY FORM NUMBER(S):   1040,SCHEDULES-A-B-C,
                         SCHEDULES-C-EZ,SCHEDULES-D-D-1,
                         SCHEDULES-E-EIC,SCHEDULES-F-H-J,
                         SCHEDULES-R-SE

ACTION : Approved without change
OMB NO.: 1545-0074
EXPIRATION DATE:  09/30/2007

| BURDEN: | RESPONSES | HOURS | COSTS($,000) |
|---|---|---|---|
| Previous | 407,904,173 | 1,568,462,184 | 0 |
| New | 410,469,223 | 1,553,904,635 | 0 |
| Difference | 2,565,050 | -14,557,549 | 0 |
| Program Change | | -47,389,057 | 0 |
| Adjustment | | 32,831,508 | 0 |

TERMS OF CLEARANCE: None

NOTE: The agency is required to display the OMB control
      number and inform respondents of its legal
      significance (see 5 CFR 1320.5(b)).

_____
OMB Authorizing Official    Title

Donald R. Arbuckle              Deputy Administrator, Office of
                                Information and Regulatory Affairs
_____

Sent electronically, 09/14/2004 18:02:07

# PAPERWORK REDUCTION ACT SUBMISSION

Please read the instructions before completing this form. For additional forms or assistance in completing this form, contact your agency's Paperwork Clearance Officer. Send two copies of this form, the collection instrument to be reviewed, the Supporting Statement, and any additional documentation to: Office of Information and Regulatory Affairs, Office of Management and Budget, Docket Library, Room 10102,725 17th Street NW Washington, DC 20503.

**1. Agency/Subagency originating request**

Department of the Treasury
Internal Revenue Service

**2. OMB control number**  b. ___ None

a. 1 5 4 5 — 0 0 7 4

*RECEIVED AUG 03 2004 OIRA / RECORDS Management Center*

**3. Type of information collection** *(check one)*
a. ___ New collection
b. X Revision of a currently approved collection
c. ___ Extension of a currently approved collection
d. ___ Reinstatement, without change, of a previously approved collection for which approval has expired
e. ___ Reinstatement, with change, of a previously approved collection for which approval has expired
f. ___ Existing collection in use without an OMB control number

*For b-f, note item A2 of Supporting Statement instructions*

**4. Type of review requested** *(check one)*
a. X Regular
b. ___ Emergency - Approval requested by: __/__/__
c. ___ Delegated

**5. Small entities**
Will this information collection have a significant economic impact on a substantial number of small entities? ___ Yes X No

**6. Requested expiration date**
a. X Three years from approval date  b. ___ Other  Specify: __/__

**7. Title**  U.S. Individual Income Tax Return

**8. Agency form number(s)** *(if applicable)*  Forms 1040 and Schedules A, B, C, C-EZ, D,D-1, E, EIC, F, H, J, R, and SE

**9. Keywords**  'personal income taxes, tax return'

**10. Abstract**  Form 1040 and schedules are used by individuals to report their income tax liability. The data is used to verify that the items reported on the forms are correct, and also for general statistical use.

**11. Affected public** *(Mark primary with "P" and all others that apply with "X")*
a. P Individuals or households  d. ___ Farms
b. ___ Business or other for-profit  e. ___ Federal Government
c. ___ Not-for-profit institutions  f. ___ State, Local or Tribal Government

**12. Obligation to respond** *(Mark primary with "P" and all others that apply with "X")*
a. ___ Voluntary
b. ___ Required to obtain or retain benefits
c. P Mandatory

**13. Annual reporting and recordkeeping hour burden**
a. Number of respondents  78,863,011
b. Total annual responses  410,469,223
  1. Percentage of these responses collected electronically  74 %
c. Total annual hours requested  1,553,904,635
d. Current OMB inventory  1,568,462,184
e. Difference  -14,557,549
f. Explanation of difference
  1. Program change  -47,389,057
  2. Adjustment  +32,831,508

**14. Annual reporting and recordkeeping cost burden** *(in thousands of dollars)*
a. Total annualized capital/startup costs _____
b. Total annual costs (O&M)  _____
c. Total annualized costs requested  _____
d. Current OMB inventory  _____
e. Difference  _____
f. Explanation of difference
  1. Program change  _____
  2. Adjustment  _____

**15. Purpose of information collection** *(Mark primary with "P" and all others that apply with "X")*
a. ___ Application for benefits  e. ___ Program planning or management
b. ___ Program evaluation  f. ___ Research
c. ___ General purpose statistics  g. P Regulatory or compliance
d. ___ Audit

**16. Frequency of recordkeeping or reporting** *(check all that apply)*
a. X Recordkeeping  b. ___ Third party disclosure
c. X Reporting
  1. ___ On occasion  2. ___ Weekly  3. ___ Monthly
  4. ___ Quarterly  5. ___ Semi-annually  6. X Annually
  7. ___ Biennially  8. ___ Other (describe) _____

**17. Statistical methods**
Does this information collection employ statistical methods?
___ Yes  X No

**18. Agency contact** *(person who can best answer questions regarding the content of this submission)*
Name:  Carol Savage
Phone:  (202) 622-3945

OMB 83-I

10/95

## 19. Certification for Paperwork Reduction Act Submissions

On behalf of this Federal agency, I certify that the collection of information encompassed by this request complies with 5 CFR 1320.9.

NOTE:  The text of 5 CFR 1320.9, and the related provisions of 5 CFR 1320.8(b)(3), appear at the end of the instructions.  *The certification is to be made with reference to those regulatory provisions as set forth in the instructions.*

The following is a summary of the topics, regarding the proposed collection of information, that the certification covers:

    (a) It is necessary for the proper performance of agency functions;

    (b) It avoids unnecessary duplication;

    (c) It reduces burden on small entities;

    (d) It uses plain, coherent, and unambiguous terminology that is understandable to respondents;

    (e) Its implementation will be consistent and compatible with current reporting and recordkeeping practices;

    (f) It indicates the retention periods for recordkeeping requirements;

    (g) It informs respondents of the information called for under 5 CFR 1320.8(b)(3):

        (i)    Why the information is being collected;

        (ii)   Use of information;

        (iii)  Burden estimate;

        (iv)  Nature of response (voluntary, required for a benefit, or mandatory);

        (v)   Nature and extent of confidentiality; and

        (vi)  Need to display currently valid OMB control number.

    (h) It was developed by an office that has planned and allocated resources for the efficient and effective management and use of the information to be collected (see note in Item 19 of the instructions);

    (i) It uses effective and efficient statistical survey methodology; and

    (j) It makes appropriate use of information technology.

If you are unable to certify compliance with any of these provisions, identify the item below and explain the reason in Item 18 of the Supporting Statement.

| | Date |
|---|---|
| Signature of Program Official | 8/2/04 |
| Glenn P. Kirkland, IRS Reports Clearance Officer | |
| Signature of Senior Official or Designee | Date |

OMB 83-I

10/95

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

    Plaintiff,

        Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

    Defendants.


SPRINGER'S THIRD MOTION TO DISMISS PURSUANT TO CIR v DUBERSTEIN HOLDING

   Lindsey Kent Springer ("Springer"), ), files this Third Motion to Dismiss the document labeled "INDICTMENT" dated March 10, 2009, pursuant to Fed.R.Crim.Pr. 12, because no "trier of fact" has made any determination any income received by Springer was anything other than a "gift" pursuant to 26 U.S.C. § 102 and Commissioner v. Duberstiein, 363 U.S. 278, 288 (1960).

   A Memorandum is filed simultaneously in support of this Motion.

CONCLUSION

   Lindsey Kent Springer requests this Court to enter an order dismissing Counts One, Two, Three, Four, Five and Six, for failure to allege an offense under 18 U.S.C. § 371, 26 U.S.C. §§ 7201 and 7203, because the moneys allegedly given to Springer is prohibited from being determined by the trier of fact on whether a substantial tax deficiency exists as a crime, or some other liability to report information or not

1

impede the ascertainment, at the same time the trier of fact is determining whether

the money given Springer was in fact a gift.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

2

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Memorandum of Law in Support of his Third  Motion To Dismiss  was ecf'd on

May  15, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature

3

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                    Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.


MEMORANDUM OF LAW IN SUPPORT OF SPRINGER'S THIRD
MOTION TO DISMISS PURSUANT TO CIR v DUBERSTEIN HOLDING

Lindsey Kent Springer ("Springer"), files this Memorandum of Law in support of his Third Motion to Dismiss the document labeled "INDICTMENT" dated March 10, 2009, because no "trier of fact" has made any determination any income received by Springer was anything other than a "gift" pursuant to 26 U.S.C. § 102 and Commissioner v. Duberstiein, 363 U.S. 278, 288 (1960).

**A.**     **SUMMARY OF THE CHARGES RELATED TO THIS MOTION**

Springer is not alleged by the Grand Jury to have any post high school education whatsoever.   The Grand Jury alleges Springer established Bondage Breaker's Ministries to receive income from several sources and it appears the theory is that instead of the income Springer received being a "gift," the United States Department of Justice has somehow convinced their 7th Grand Jury the money given Springer was "payment" for "services."  No other theory is alleged in

1

the March 10, 2009 Grand Jury indictment.  The question of liability associated with the receipt of such gifts is squarely at issue in each Count of the Grand Jury indictment.

**B.      LEGAL ARGUMENT IN FAVOR OF DISMISSAL**

 "The conclusion whether a transfer amounts to a 'gift' is one that must be reached on consideration of all the factors."  Commissioner v. Duberstiein, 363 U.S. 278, 288 (1960) "Specifically, the trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability."  Id.

"The exclusion of property acquired by gift from gross income under the federal income tax laws was made in the first income tax statute passed under the authority of the Sixteenth Amendment, and has been a feature of the income tax statutes ever since. The meaning of the term 'gift' as applied to particular transfers has always been a matter of contention. Specific and illuminating legislative history on the point does not appear to exist. Analogies and inferences drawn from other revenue provisions, such as the estate and gift taxes, are dubious. See Lockard v. Commissioner, 166 F.2d 409. The meaning of the statutory term has been shaped largely by the decisional law."  Duberstein at 284

Title 26, Sections "101-121, specifically exclude certain receipts from "gross income," including, for example, gifts and inheritances." Rudolph v. United States, 370 U.S. 269, 273 (1962) "Single transactions, it is well known, may be susceptible to

2

different, and inconsistent, theories of taxation." United States v. Dalm, 494 U.S. 596, 598 (1990)

In Commissioner v. Duberstein, 363 U.S. 278 (1960), the Court held that the principal criterion for identifying a gift under the applicable provision of the Internal Revenue Code was the intent or motive of the donor - "one that inquires what the basic reason for his conduct was in fact." Id., at 286. Resolution of that issue determined the ultimate issue of whether a gift had been made. Both issues were held to be questions of fact subject to the clearly-erroneous rule. Pullman-Standard v. Swint, 456 U.S. 273, 288 (1982)

There is another reason why Duberstein controls and that is because Congress does not direct any money received by way of gift be reported as such giving the Internal Revenue Service three yeas to pass on whether they agree with the characterization that the gift or gifts received were in fact gifts. There is no form for the recipient to report receiving such gifts to the Internal Revenue Service. There are no forms promulgated by the Secretary regarding Title 26, Section 102 required by the recipient.

In Rogers v. Hill, 289 U.S. 582, 591-592, the Supreme Court held, following the dissenting opinion in the court below, that a bonus payment having no relation to the value of services for which it is given is in reality a gift in part. Certainly, where all the facts and circumstances in the case, including the express stipulation of the parties, clearly show the making and the intent to make a gift, it cannot be

3

converted into a payment for services by inaccurately describing it, in the consummating resolutions, as a bonus.  Bogardus v. CIR, 302 U.S. 34, 42 (1937)

## C.    EACH COUNT OF INDICTMENT INVOLVES QUESTION OF LIABILITY AND CANNOT BE REACHED BY TRIER OF FACT DECIDING WHETHER MONEY RECEIVED BY SPRINGER WAS IN FACT A "GIFT" OR NOT.

_____  "The conclusion whether a transfer amounts to a 'gift' is one that must be reached on consideration of all the factors."  Commissioner v. Duberstein, 363 U.S. 278, 288 (1960) "Specifically, the trier of fact must be careful not to allow trial of the issue whether the receipt of a specific payment is a gift to turn into a trial of the tax liability."  Id.

Whether the liability is alleged that Springer was prohibited from impeding lawful functions of the IRS in the computation, ascertainment, assessment or collection of taxes, or whether he is alleged to be "required by law" to provide information to the Internal Revenue Service on a U.S. Individual Income Tax Form 1040, or whether the alleged claims are that Springer owed a tax deficiency for years 2000, 2003 and 2005, based upon some newly concluded construction of gifts Springer is alleged to have received, each of the alleged crimes in each Count rely almost solely upon whether the money received by Springer triggered a "liability" Springer was then required to report or pay.

Before any determination can be made as to whether Springer has some liability to report or pay, a determination must be made as to whether money received by Springer was excludable from gross income as a "gift" or includable

4

as "gross income."

Duberstein holds that the question as to whether money given Springer is a "gift" or otherwise, must be decided by a non criminal trial first, and is NOT to be decided in a trial determining any tax liability or tax consequence.[1]

The elements of a § 7201 violation are an affirmative act constituting an evasion or attempted evasion **of the tax**, willfullness, and the **existence of a substantial tax deficiency**. Sansone v. United States, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); United States v. Swallow, 511 F.2d 514, 519 (10th Cir.), cert. denied, 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66 (1975). The failure to file a tax return is insufficient to establish the affirmative act necessary for a § 7201 conviction. Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943). A tax evasion prosecution must be commenced within six years after the commission of the offense.  U.S. v. Payne, 978 F.2d 1177 (10th Cir. 1992)

Because a tax deficiency is an essential element of the crime of tax evasion, Sansone, 380 U.S. at 343, 85 S.Ct. at 1004; Swallow, 511 F.2d at 514, the statute of limitations did not begin to run on Defendant's § 7201 violations until Defendant incurred a tax deficiency. See United States v. Kafes, 214 F.2d 887, 890 (3d Cir.) (tax evasion offense not complete until defendant's tax payment became due), cert. denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954).

---

[1]

It is interesting that Tax Evasion in theory is prohibiting the "attempt" as a way around imprisonment for debt, yet the entire term of imprisonment is premised upon how much " tax loss" the Government can prove beyond a reasonable doubt.

The Supreme Court has held that the elements of Internal Revenue Code ("I.R.C.") § 7201, the provision criminalizing the evasion of taxes, include the existence of a "tax deficiency." While § 7201 does not describe "tax deficiency," it is defined elsewhere in the IRC as the amount by which the tax exceeds the tax reported on the return plus the amounts previously assessed as a tax deficiency. The IRC specifically excludes interest from being treated as tax for purposes of deficiency procedures.  The Sentencing Guidelines also exclude interest and penalties in assessing the penalty for tax evasion.  Although the deficiency procedures are separate from the criminal liability provisions, we are persuaded that the definition of "tax liability" excluding penalties and interest extends to § 7201. We decline to assume a broader meaning for a "tax deficiency" under § 7201 than under the deficiency proceedings provision, especially when § 7201 attaches criminal liability to the debt owed.  U.S. v. Wright, 211 F.3d 233, 236 (5th Cir. 2000)

In Williams v. CIR, 627 F.2d 1032 (10th Cir. 1980) the 10th Circuit "recognized that intent is the controlling factor" and said that , "primary weight in this area must be given to the conclusions of the trier of fact."  See also Christiansen v. CIR, 843 F.2d 418 (10th Cir. 1988) ("This focus on the external features of the transaction serves as an expedient for any more intensive inquiry into the motives of the payor.")

The Grand Jury Indictment in each Count ignores the holding of Commissioner v. Duberstein, 363 U.S. 278, 288 (1960).  The trier of fact in this case cannot decide whether and to what extent money given to Springer was or wasn't

6

a gift, while also decide, as a result of that decision, whether there is a tax deficiency or tax liability as a result of any such decision, regarding the money given as gift to Springer.   Likewise, there has been no "deficiency" determination as defined pursuant to 26 U.S.C. §§ 6211, 6212 and 6213 ("the deficiency proceedings provision.")[quoting U.S. v. Wright, 211 F.3d 233, 236 (5th Cir. 2000)]

CONCLUSION

Lindsey Kent Springer requests this Court to enter an order dismissing Counts One, Two, Three, Four, Five and Six, for failure to allege an offense under 18 U.S.C. § 371, 26 U.S.C. §§ 7201 and 7203, because the moneys allegedly given to Springer is prohibited from being determined by the trier of fact on whether a substantial tax deficiency exists as a crime, or some other liability to report information or not impede the ascertainment, at the same time the trier of fact is determining whether the money given Springer was in fact a gift.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

7

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Memorandum of Law in Support of his Third  Motion To Dismiss  was ecf'd on

May  15, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature

8

N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                        Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

SPRINGER'S FOURTH  MOTION TO DISMISS REGARDING
SUBSTANTIAL TAX DEFICIENCY ELEMENT

Lindsey Kent Springer ("Springer"), files this Fourth Motion to Dismiss the

document labeled "INDICTMENT" dated March 10, 2009, pursuant to Fed.R.Crim.Pr.

12, because no amount of "gross income" is alleged nor any "substantial tax

deficiency" was specifically alleged as a result of the gross income theory.  Also,

no specific provision which any theory of a substantial tax liability could be

defended by Springer is alleged.  Boulware v. U.S., 06-1509 (U.S. 3-3-2008) 128 S.Ct.

1168 And finally, there is no allegation in any Count as to the "source" of the

income alleged that would justify the theory of triggering  the requirement to

provide such information to the Internal Revenue Service on any U.S. Individual

Income Tax Form.

A memorandum is filed simultaneously herewith.

1

CONCLUSION

Lindsey Kent Springer requests dismissal of Counts One, Two, Three, Four, Five and Six , because the Grand Jury did not allege and specify the "source" of any gross income or the amount of "gross income" that it derived the purported "substantial" tax deficiency claims for Counts Two, Three and Four, and to which the "requirement to provide information" is alleged to have been triggered by the receipt of such alleged gross income for Counts One (impeding functions), and Two, Three, Four, Five and Six.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

2

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Fourth  Motion To Dismiss  was ecf'd on May  15, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature

3

N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

                    Plaintiff,

                                        Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

                    Defendants.

MEMORANDUM OF LAW IN SUPPORT OF SPRINGER'S FOURTH
MOTION TO DISMISS REGARDING SUBSTANTIAL TAX DEFICIENCY ELEMENT

        Lindsey Kent Springer ("Springer"), files this Memorandum of Law in support

of his Fourth Motion to Dismiss the document labeled "INDICTMENT" dated March

10, 2009, because no amount of "gross income" is alleged nor any "substantial tax

deficiency" was specifically alleged as a result of the gross income theory.  Also,

no specific provision which any theory of a substantial tax liability could be

defended by Springer is alleged.  Boulware v. U.S., 06-1509 (U.S. 3-3-2008) 128 S.Ct.

1168 And finally, there is no allegation in any Count as to the "source" of the

income alleged that would justify the theory of triggering  the requirement to

provide such information to the Internal Revenue Service on any U.S. Individual

Income Tax Form.

**A.      SUMMARY OF COUNT ONE, TWO, THREE, FOUR, FIVE, AND SIX.**

        The Grand Jury alleges in Count One Springer misrepresented the "source

1

and nature" of Springer's income.  The Grand Jury alleges in Count Two, Three and Four, a "substantial tax deficiency" was owed by Springer for years 2000, 2003 and 2005 but commits to no amount of "gross income" or any "amount" which would be considered the alleged "substantial deficiency."   Count Five and Six merely allege Springer's Gross Income was "in excess" of either $ 7700 or $ 15,900 triggering some requirement to provide information theory.  At no time does the Grand Jury ever allege the "source and nature" of the "gross income."

**B.     LEGAL ARGUMENT IN FAVOR OF DISMISSAL.**

The elements of a § 7201 violation are an affirmative act constituting an evasion or attempted evasion **of the tax**, willfullness, and the **existence of a substantial tax deficiency**. Sansone v. United States, 380 U.S. 343, 351, 85 S.Ct. 1004, 1010, 13 L.Ed.2d 882 (1965); United States v. Swallow, 511 F.2d 514, 519 (10th Cir.), cert. denied, 423 U.S. 845, 96 S.Ct. 82, 46 L.Ed.2d 66 (1975). The failure to file a tax return is insufficient to establish the affirmative act necessary for a § 7201 conviction. Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943). A tax evasion prosecution must be commenced within six years after the commission of the offense.  U.S. v. Payne, 978 F.2d 1177 (10th Cir. 1992)

Because a tax deficiency is an essential element of the crime of tax evasion, Sansone, 380 U.S. at 343, 85 S.Ct. at 1004; Swallow, 511 F.2d at 514, the statute of limitations did not begin to run on Defendant's § 7201 violations until Defendant incurred a tax deficiency. See United States v. Kafes, 214 F.2d 887, 890 (3d Cir.) (tax

<div align="center">2</div>

evasion offense not complete until defendant's tax payment became due), cert.

denied, 348 U.S. 887, 75 S.Ct. 207, 99 L.Ed. 697 (1954).    There is no criminal tax

evasion without a tax deficiency.  Boulware v. U.S., 06-1509 (U.S. 3-3-2008) 128 S.Ct.

1168

The Sixteenth Amendment, of course, allows for the imposition of taxes on

income (though not other items) without regard to apportionment among the

States or to any census or enumeration Hill v. Kemp, 478 F.3d 1236, n.13 (10th Cir.

2007)   In O'Gilvie v. United States, 66 F.3d 1550, 1555 (10th Cir. 1995), the 10th Circuit

stated that "the language of § 61(a) of the Internal Revenue Code - '[e]xcept as

otherwise provided in this subtitle, gross income means all income from whatever

source derived' - precluded the application of exceptions from gross income not

specifically appearing in the subtitle."  St. Charles Inv.Co. V. CIR, 232 F.3d 773, 776-

777 (10th Cir. 2000)

**C.    COUNTS TWO, THREE, FOUR, FIVE AND SIX FAIL TO ALLEGE AMOUNT OF GROSS
OR TAXABLE INCOME NOR DO COUNTS TWO, THREE AND FOUR,  ALLEGE THE
AMOUNT OF THE TAX DEFICIENCY OR LIABILITY.**

In this case Counts Two, Three, Four, Five and Six suffer from alleging any

amount of gross income nor do either Counts Two, Three or Four, allege the

"substantial deficiency." Springer asked the Government whether all money given

Springer not specifically alleged in Counts Two, Three and Four, were conceded as

"gifts" to which the Government did not have any definite answer.

There is no doubt gifts are not included within the calculation of gross

3

income.    There is likewise no doubt Springer received numerous gifts.    The

controversy here is where the Government wishes to prove money given Springer

was not intended as gifts but from some other reason.

In this case the Government shows how abusive the Grand Jury system can

be.  It convinced a Grand Jury a tax deficiency exists without every having the

Grand Jury allege what that tax deficiency is or how it was derived for Counts Two,

Three and Four.  And for all Counts "gross income" was somehow determined

without reference to any amount whatsoever.

The problem this creates shows the Government could shift its theory at trial

and attempt to demonstrate a certain transaction was not a gift wholly unrelated

to any transaction they apparently convinced a Grand Jury was, in fact, not a gift.

The United States has had 4 plus years to get their theory together and

Counts Two, Three, Four, Five and Six, fail to allege the amount of "gross income"

and Counts Two, Three and Four, fail to allege the "tax deficiency" amount

element under the circumstances of this case.

**D.    COUNT ONE, TWO, THREE, FOUR, FIVE AND SIX, FAIL TO ALLEGE THE "SOURCE"
       OF THE ALLEGED INCOME.**

The Sixteenth Amendment allows for imposition of a tax on income from

certain "sources" without regard to apportionment among the States or to any

census or enumeration Hill v. Kemp, 478 F.3d 1236, n.13 (10th Cir. 2007)   In O'Gilvie

v. United States, 66 F.3d 1550, 1555 (10th Cir. 1995), the 10th Circuit stated that in the

language of § 61(a) of the Internal Revenue Code - gross income means "all

4

income from whatever source derived." St. Charles Inv.Co. V. CIR, 232 F.3d 773, 776-777 (10th Cir. 2000)   These words mean in order to allege "gross income" present sufficient to trigger the "in excess" theory alleged by the Grand Jury throughout the indictment, the "source" of that gross income must be alleged.

In Singer v. United States, 3 Cir., 58 F.2d 74, 75, the court concluded "that the indictment did not inform the defendant with sufficient particularity to enable him to prepare his defense without surprise and embarrassment; and that the greatly exaggerated allegations in respect to amounts, the confusion, and the interruptions in an effort to unravel the facts, all considered together, prejudiced him." Rose v. U.S., 128 F.2d 622, 624 (10th Cir. 1942)

In each Count in the indictment of this case, we have no allegation of any amounts, no allegation of any "source," of any gross income, leaving Springer to simply guess as to which money given by which persons over the last umpteen years the Government intends to argue was not a gift and what was a gift.

Although donative intent "is not an essential element in the application of the gift tax," the presence of donative intent suggests that a gift has been made. Estate of Davenport v. CIR, 184 F.3d 1176, 1181 (10th Cir. 1999) "[T]he general and longstanding rule in federal tax cases [is] that although state law creates legal interests and rights in property, federal law determines whether and to what extent those interests will be taxed." United States v. Irvine, 511 U.S. 224, 238 (1994); see also Autin v. Commissioner, 109 F.3d 231, 233 (5th Cir. 1997) ("No court considering

5

federal taxation problems has challenged the premise that state law determines the nature of the property right; federal law's task is to determine the appropriate tax treatment when such property rights are transferred."). However, in federal taxation cases, state law controls only to the extent that certain statutory provisions of the federal revenue laws make their application dependent on state law. Davenport at 1181

To constitute a valid gift under Oklahoma law, the donor must be competent to make a gift. See In re Estate of Hoyle, 866 P.2d 451, 453 (Okla. Ct. App. 1993) (citing Davis v. National Bank of Tulsa, 353 P.2d 482, 486 (Okla. 1960)); Frazier v. Oklahoma Gas & Elec. Co., 63 P.2d 11, 13 (Okla. 1936). In addition, there must be donative intent, delivery of the gift, and the "donor must strip himself of all ownership and dominion over the subject matter." In re Estate of Rolater, 542 P.2d 219, 222 (Okla. Ct. App. 1975); see Stinchcomb v. Stinchcomb (In re Estate of Stinchcomb), 674 P.2d 26, 30 (Okla. 1983).  Davenport, at 1182

"Whether a particular exchange generated secular or religious benefits to the taxpayer was irrelevant, for under § 170 "[i]t is the structure of the transaction, and not the type of benefit received, that controls." Hernandez v. CIR, 490 U.S. 680, 688 (1989)

"The House and Senate Reports on the 1954 tax bill, for example, both define 'gifts' as payments 'made with no expectation of a financial return commensurate with the amount of the gift.' S. Rep. No. 1622, 83d Cong., 2d Sess., 196 (1954); H. R.

6

Rep. No. 1337, 83d Cong., 2d Sess., A44 (1954)." Hernandez, at 690

If the Scientologist,`price' were deemed to make participation in their religious services a material, financial, or economic benefit such that the Staples' payments were not contributions, then `the passing of the collection plate in church would make the church service a commercial project.' See Murdock v. Pennsylvania, 319 U.S. 105, 111, 63 S.Ct. 870, 874, 87 L.Ed. 1292 (1943). Staples v. Commissioner, 821 F.2d 1324 (8th Cir. 1987)

In ascertaining whether a given payment was made with "the expectation of any quid pro quo," S. Rep. No. 1622, supra, at 196; H. Rep. No. 1337, supra, at A44, the IRS has customarily examined the external features of the transaction in question. Quid pro quo is defined in Black's Law, Sixth Edition, as "what for what or something for something."

There is nothing in discovery provided that answers the question as to what the "source" of the income is that the Grand Jury alleges triggered certain duties in the Internal Revenue Code of Springer, as alleged in Counts One through Six, nor does the discovery identify the amount of "gross income" from these sources the Government intends to prove was something for something instead of a gift and what that something was or is.

CONCLUSION

Lindsey Kent Springer requests dismissal of Counts One, Two, Three, Four, Five and Six , because the Grand Jury did not allege and specify the "source" of any

gross income or the amount of "gross income" that it derived the purported "substantial" tax deficiency claims for Counts Two, Three and Four, and to which the "requirement to provide information" is alleged to have been triggered by the receipt of such alleged gross income for Counts One (impeding functions), and Two, Three, Four, Five and Six.

> Respectfully Submitted
> /s/ Lindsey K. Springer
> Lindsey K. Springer
> 5147 S. Harvard, # 116
> Tulsa, Oklahoma 74135
> 918-748-5539/955-8225(cell)

8

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Memorandum of Law in Support of his Fourth  Motion To Dismiss  was ecf'd on

May  15, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


<u>/s/ Lindsey K. Springer</u>
Signature

9

N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

UNITED STATES OF AMERICA

        Plaintiff,

                        Case No. 09-CR-043-SPF

v.

LINDSEY KENT SPRINGER,
OSCAR AMOS STILLEY

        Defendants.

SPRINGER'S FIFTH MOTION TO DISMISS CLAIMING PRIVILEGE OF SILENCE

Lindsey Kent Springer ("Springer"), files this Fifth Motion to Dismiss the document labeled "INDICTMENT" dated March 10, 2009, pursuant to Fed.R.Crim.Pr. 12, because all claims in the Grand Jury indictment are brought in violation of Springer's Fifth Amendment Right not to be compelled in any criminal case to be a witness against himself, as construed by the Supreme Court.[1]

A memorandum is filed simultaneously in support of this Motion.

CONCLUSION

Lindsey Kent Springer respectfully requests this Court to dismiss Counts One, Two, Three, Four, Five, and Six, on the grounds of the pervasive nature of protesting against the Internal Revenue Service, heavily regulated,  and the United States

---

[1]Springer is mindful of the length of this brief and has shortened it considerably without appearing to affect its intent.

1

Department of Justice control over that Agency, coupled with its stated mission to

vigorously pursue protestors, and that Springer, since at least 1992, was labeled by

the Internal Revenue Service as such, along with there being no way Springer could

have even placed his name on ay form or said anything on any Government blank

without that "said" bringing Springer into danger of the criminal tax code, including

the fact Springer has been under criminal investigation by the IRS since at least

1995.

Respectfully Submitted
/s/ Lindsey K. Springer
Lindsey K. Springer
5147 S. Harvard, # 116
Tulsa, Oklahoma 74135
918-748-5539/955-8225(cell)

2

CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Lindsey Kent Springer's

Memorandum of Law in Support of his Fifth  Motion To Dismiss  was ecf'd on

May  15, 2009, to:


Kenneth P. Snoke,
Charles O'Reilly,
Oscar Stilley


/s/ Lindsey K. Springer
Signature


3